**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | **CASE NO.** |
| Plaintiffs, | |
| v. | **FILED UNDER SEAL** |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | |
| Defendants, and | |
| DANIEL BLUMKIN, et al., | |
| Relief Defendants. | |

**DECLARATION OF VANESSA BUCHKO UNDER FEDERAL RULE OF CIVIL PROCEDURE 65(b) IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, OTHER EQUITABLE RELIEF, AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND *EX PARTE* MOTION TO TEMPORARILY SEAL THE ENTIRE FILE, INCLUDING DOCKET**

**(FILED UNDER SEAL)**

I, VANESSA BUCHKO, declare as follows:

1.        I am an attorney employed by and representing Plaintiff, the Consumer Financial Protection Bureau (Bureau), in this case. I am licensed to practice law and am an attorney in good standing in the District of Columbia, and I am an inactive attorney in the state of Florida. I am appearing in this matter under Local Rule 83.1(d). My business address is Consumer Financial Protection Bureau, 1700 G Street, N.W., Washington, DC 20552. The facts set forth in

1

this declaration are based on my personal knowledge or information made known to me in the course of my official duties.

2.      Under Federal Rule of Civil Procedure 65(b)(1), Plaintiffs are applying for an *ex parte* Temporary Restraining Order with Asset Freeze, Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue (TRO Application). Plaintiffs are also applying *ex parte* to temporarily seal the entire file, including the docket. Along with these applications, under Rule 65(b)(1), Plaintiffs are also applying for an order waiving the requirement to notify the opposing parties of the TRO Application.

3.      Plaintiffs have not attempted to provide notice to the Defendants, nor should notice be required, for the reasons set forth in this declaration. The necessity for this emergency hearing was not caused by Plaintiffs' lack of diligence, but rather has been brought about by the circumstances of this case and the nature of Defendants' conduct.

4.      The evidence set forth in the Plaintiffs' Memorandum in Support of their *ex parte* Application for a Temporary Restraining Order with Asset Freeze, Other Equitable Relief, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue (TRO Memo) and in the accompanying declarations and exhibits shows that Defendants have engaged in a concerted course of illegal conduct in connection with the provision of debt-relief services, in violation of: (a) the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6102(c), 6105(d); (b) its implementing regulation, the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; and (c) Sections 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5536(a), 5564, 5565, in connection with the marketing and sale of debt-relief services.

5. There is good cause to believe that the Court's ability to provide effective final relief to consumers may be irreparably compromised if this matter is not temporarily sealed. There is good cause to believe that the same harm would occur if the Defendants received advance notice of the Plaintiffs' *ex parte* TRO Application (or other papers) before the Court can enter an Order on the Plaintiffs' Application. Specific facts to support this conclusion are laid out below.

6. Defendants' actions strongly suggest that they may conceal or misappropriate assets and destroy evidence if given notice of this action before the Court can enter an Order. *See* TRO Memo § V.F.2.

7. Defendants use a multi-layered array of corporate shells and interrelated companies to facilitate the movement of ill-gotten gains, obfuscate their true corporate identity, and otherwise shield themselves from regulatory scrutiny or legal accountability for their unlawful scheme. *See* TRO Memo §§ IV.A., IV.C., & V.B.

8. Defendants' debt-relief scheme is carried out through two principals: Ryan Sasson and Jason Blust (Individual Defendants). Sasson owned, operates, or controls a series of interrelated corporate entities that operate as a common enterprise (Common Enterprise). *See* TRO Memo §§ V.B. & V.C. Blust controls or operates a series of non-party façade law firms (Façade Firms) that mask the common enterprise from consumers, law enforcement, and regulators. *See* TRO Memo §§ III.B.1., III.B.2., V.B., & V.C. The Common Enterprise can be further sub-divided into two groups: (1) the Strategic Financial Solutions entities, namely, StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC (f/k/a Pioneer Client Services, LLC), Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC, T Fin, LLC, Versara Lending, LLC, and Strategic Family, Inc.

(collectively, SFS) and (2) the SFS subsidiaries, namely, Anchor Client Services, LLC (now known as CS 1 PAAS Services, LLC), Bedrock Client Services, LLC, Boulder Client Services, LLC, Canyon Client Services, LLC, Carolina Client Services, LLC, Great Lakes Client Services, LLC, Guidestone Client Services, LLC, Harbor Client Services, LLC, Heartland Client Services, LLC, Monarch Client Services, LLC (now known as CS 2 PAAS Services, LLC), Newport Client Services, LLC, Northstar Client Services, LLC, Option 1 Client Services, LLC, Pioneer Client Servicing, LLC, Rockwell Client Services, LLC, Royal Client Services, LLC, Stonepoint Client Services, LLC, Summit Client Services, LLC (now known as CS 3 PAAS Services, LLC), and Whitestone Client Services, LLC (collectively, Client Services Subsidiaries), that operate behind the Façade Firms to provide debt-relief services. These entities were owned (until the reorganization via an Employee Stock Ownership Plan) and are currently operated or controlled by the Individual Defendant Sasson. *See* TRO Memo §§ III.B.2., V.B., & V.C.

### Defendants' Banking History

9.      As described in more detail in the Plaintiffs' TRO Memo, Defendants' financial habits demonstrate their ability to immediately dissipate and hide assets if given notice of this action. Defendants' bank accounts are a financial labyrinth, and money appears to flow between them freely and in large sums. *See* TRO Memo § V.B. For example, between October 2017 and December 2020, an account held by Defendant Strategic NYC, LLC shows incoming transfers totaling approximately $73,000,000 from at least 9 different Client Services Subsidiaries and SFS entities and outbound transfers totaling approximately $96,600,000 to at least 8 different SFS entities. *Id.*

10. Furthermore, the Individual Defendants have taken tens of millions from SFS over the last 7 years. *See* TRO Memo §§ III.B.3., V.D., & V.F.2.b. For example, between October 2016 and September 2017, SFS transferred over $3,400,000 to Duke Enterprises, LLC (an entity controlled by Sasson) from an SFS account where Sasson was the signatory. *See* TRO Memo §§ III.B.3. & V.F.2.b. And between May 2018 and March 2020, Strategic Family, Inc. transferred in aggregate over $63,000,000 to Relief Defendants Duke Enterprises, LLC, Twist Financial, LLC (controlled by Daniel Blumkin), and Blaise Investments, LLC (controlled by Ian Behar). *Id.* Similarly, between December 2019 and April 2021, Relief Defendant Lit Def Strategies, which is controlled by Jason Blust, received over $30,000,000 from Façade Firms associated with 18 Client Services Subsidiaries and transferred $36,000,000 to the Blust Family Trust. *See* TRO Memo §§ V.D. & V.F.2.b.

11. Defendants' financial tactics further demonstrate the ease and regularity with which they move funds, and their ability to dissipate and hide assets if given notice of this action. Defendants have a track record of changing banks, making it difficult to find their assets. *See* TRO Memo § V.D. Between July 2018 and June 2021, Defendants moved the banking operations of the Client Services Subsidiaries and other SFS entities three times—from Valley Bank, f/k/a Bank Leumi, to Key Bank, and then again to a different bank—closing the accounts in the prior bank shortly after each move. *Id*.

**Previous Actions Against Defendants and Related Entities and Individuals**

12. Moreover, as discussed below, Defendants have a history of evading state authorities and disregarding court orders. Despite attention from multiple state and local law enforcement authorities and regulators, Defendants have continued their debt-relief scheme in violation of local, state, and federal consumer financial laws.

13.     On August 12, 2016, Jason Blust and Pioneer Legal Services entered into an Agreed Order permanently enjoining them from directly or indirectly providing debt-resolution services in the District of Kansas. Order, *In re Moore*, No. 15-22417, ECF No.63 (Bankr. D. Kan. Aug. 12, 2016). On June 27, 2018, the U.S. Bankruptcy Trustee for Kansas filed a complaint alleging that Blust violated that order by forming Façade Firm Royal Legal Group, LLC, which provided debt-relief services in the District of Kansas. Complaint, *U.S. Trustee Lashinsky v. Blust*, No. 18-06046, ECF No.1 (Bankr. D. Kan. 2018).  On August 16, 2018, Jason Blust entered into a stipulated judgment with the United States Bankruptcy Trustee for the District of Kansas in which Blust paid a fine and again agreed to a permanent injunction enjoining him from providing debt-relief services in the District of Kansas. Judgment, *U.S. Trustee Lashinsky v. Blust*, No. 18-06046, ECF No.17 (Bankr. D. Kan. 2018).

14.     In 2021, the North Carolina State Bar Disciplinary Hearing Commission held a hearing regarding the license of Daniel Rufty, an attorney at Façade Firm Carolina Legal Services. The Commission issued a finding of fact that Jason Blust "started or helped start various law firms . . . in multiple states with the goal of convincing debtors struggling to pay their bills to hire one of the [Façade Firms] to negotiate reduced payoff amounts with the debtor's creditors." *The North Carolina State Bar v. Daniel S. Rufty*, 20 DHC 17, Consent Order of Discipline (N.C. State Bar Apr. 8, 2021), at 2.

15.     Most recently, on July 26, 2022, the City of Chicago filed a lawsuit against Defendant Strategic Financial Solutions, LLC, and Façade Firm Monarch Legal Group. The complaint alleges "Monarch Legal and Strategic Financial Solutions jointly run a fraudulent 'debt resolution' program that preys on Chicagoans struggling with debt" and charge "significant up-front fees before performing any work to settle consumers' debt." Complaint at 1, 35, *City of*

*Chicago v. Burnette Legal Group*, No. 2022-CH-07197 (Ill. Cir. Ct., Cook Cnty.). On September

8, 2023, the Illinois state court denied Defendant Monarch Legal Group's motion to dismiss.

Decision, *City of Chicago v. Burnette Legal Group*, No. 2022-CH-07197 (Ill. Cir. Ct., Cook

Cnty.).

      16.     Sasson and Blust are also former employees of Legal Helpers Debt Resolution,

LLC ("Legal Helpers"), a debt-relief firm that was sued and eventually shut down as a result of

actions by the Attorneys General of Illinois, North Carolina, West Virginia, and Wisconsin.

Complaint, ¶52. The Attorneys General alleged that Legal Helpers charged unlawful up-front

fees, failed to reduce consumers' debts as promised, and attempted to avoid advance-fee bans by

recruiting attorneys to act as fronts for the business. Compl., *Illinois v. Legal Helpers Debt

Resol.*, LLC, No. 2011 CH 00286 (Sangamon Cty., Ill. Mar. 2, 2011); Compl., *Wisconsin v.

Legal Helpers Debt Resol.*, LLC, No. 2013 CX 11 (Dane Cty., Wis. June 12, 2013); Compl.,

*North Carolina v. Legal Helpers Debt Resol., LLC*, No. 14CV006409 (Wake Cty., N.C. May 15,

2014); Compl., *West Virginia v. Legal Helpers Debt Resol., LLC*, No. 13-C-2330 (Kanawha

Cty., W. Va. Dec. 20, 2013).

      17.     The actions by the Illinois and North Carolina Attorneys General resulted in

consent judgments enjoining Legal Helpers from engaging in debt relief in their respective states.

Judgment, *Illinois v. Legal Helpers Debt Resol., LLC*, No. 2011 CH 00286 (Sangamon Cty., Ill.

July 2, 2012); Judgment, *North Carolina v. Legal Helpers Debt Resol., LLC*, No. 14CV006409

(Wake Cty., N.C. Sept. 29, 2014).

      18.     The North Carolina consent judgment also enjoined the principals of the firm

from engaging in debt relief and entered judgments in the amounts of $1,533,000 and $122,000

against Legal Helpers and the individual defendants, respectively. *Id.*

19.     The Wisconsin Attorney General's action and the West Virginia Attorney General's action resulted in judgments for $12,272,000 and $135,000, respectively, and settlement agreements enjoining Legal Helpers and the principals of the firm from engaging in debt relief in Wisconsin and West Virginia. Judgment, *Wisconsin v. Legal Helpers Debt Resol.*, *LLC*, No. 2013 CX 11 (Dane Cty., Wis. Feb. 15, 2016); Settlement Agreement, *Wisconsin v. Legal Helpers Debt Resol., LLC*, No. 2013 CX 11 (Dane Cty., Wis. May 13, 2016); Judgment, *West Virginia v. Legal Helpers Debt Resol., LLC*, No. 13-C-2330 (Kanawha Cty., W.Va. June 2, 2014).

20.     Despite these orders from around the country enjoining the company and the principals from engaging in debt relief, former employees Sasson and Blust have created a new debt-relief operation that continues to charge advance fees behind a web of law firms.

21.     Defendants' dishonest and fraudulent behavior demonstrates a likelihood that they will dissipate or conceal assets or destroy or conceal evidence of their fraudulent conduct if they are given advance notice of Plaintiffs' request for temporary relief.

**Request for *Ex Parte* Relief**

22.     In federal courts, an *ex parte* TRO is appropriate to serve the "underlying purpose of preserving the status quo and preventing irreparable harm." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). In this circuit, it is appropriate for district courts to issue *ex parte* TROs where there is a likelihood of asset transfer or dissipation. *See, e.g.*, *FTC v. Campbell Cap. LLC*, No. 18-CV-1163-LJV-MJR, 2018 WL 5781458, at *5 (W.D.N.Y. Oct. 24, 2018), *report and recommendation adopted sub nom. FTC v. Campbell Cap. LLC*, No. 18-CV-1163, 2018 WL 5776354 (W.D.N.Y. Oct. 25, 2018); *FTC v. 4 Star Resolution LLC*, No. 15-CV-112-WMS (W.D.N.Y. Feb. 10, 2015), ECF

No. 29 (granting *ex parte* TRO with asset freeze, temporary receiver, financial reporting, immediate access, and expedited discovery in action against debt collectors); *FTC v. Vantage Point Servs., LLC*, No. 15-CV-0006-WMS (W.D.N.Y. Jan. 5, 2015), ECF No. 11 (same); *FTC v. Fed. Check Processing, Inc.*, No. 14-CV-0122-WMS (W.D.N.Y. Feb. 24, 2014), ECF No. 11 (same).

23.     Indeed, federal courts in this district and others have granted *ex parte* TROs in other federal law enforcement actions:

- *FTC v. Nat'l Check Registry, LLC*, No. 14-cv-490-A (W.D.N.Y. June 24, 2014), ECF No. 14 (granting *ex parte* TRO with asset freeze, temporary receiver, financial reporting, immediate access, and expedited discovery);

- *CFPB v. Consumer Advocacy Ctr. Inc. d/b/a Premier Student Loan Ctr.*, No. 8:19-cv-01998-JVS-JDE (C.D. Cal. Oct. 21, 2019), ECF No. 7 (sealed) (granting *ex parte* TRO with asset freeze, appointment of receiver, and other equitable relief, and order to show cause why a preliminary injunction should not issue);

- *CFPB v. Richard F. Moseley, Sr.*, No. 4:14-cv-00789-DW (W.D. Mo. Sept. 9, 2014), ECF No. 8 (granting *ex parte* motion to seal filings and granting TRO with asset freeze, temporary receiver, expedited discovery, and order to show cause why a preliminary injunction should not issue);

- *FTC v. Navestad*, No. 6:09-cv-63299-MAT-JWF (W.D.N.Y. June 25, 2009), ECF No. 7 (granting *ex parte* TRO with asset freeze, temporary receiver, financial reporting, immediate access, and expedited discovery);

- *CFPB v. Harper*, No. 9:14-cv-80931-JIC (S.D. Fla. July 16, 2014), ECF No. 13 (granting *ex parte* motion to seal filings and granting *ex parte* TRO with asset freeze and temporary receiver);

- *CFPB v. Jalan*, No. 8:12-cv-02088-AG-AN (C.D. Cal. Dec. 4, 2012), ECF No. 14 (granting *ex parte* motion to seal and *ex parte* TRO with asset freeze, temporary receiver, and expedited discovery); and

- *CFPB v. Gordon*, No. 2:12-cv-06147-RSWL-MRW (C.D. Cal. July 18, 2012), ECF No. 12 (granting *ex parte* motion to seal and *ex parte* TRO with asset freeze, temporary receiver, and expedited discovery).

### Request to Seal This Matter

24.    In addition to seeking temporary injunctive relief on an *ex parte* basis, Plaintiffs also asks that this matter be placed under seal until five days after the TRO is issued, or until all Defendants have been served, whichever occurs first. Absent the seal order, it is likely that Defendants may learn of the action before they are served with a TRO. Thus, the seal order is necessary to prevent the likely dissipation or concealment of assets and destruction of documents by Defendants.

25.    As a federal agency, Bureau's enforcement activity is closely watched and subject to frequent media coverage. We anticipate that any Bureau court filings will attract media attention. Indeed, there are websites that regularly track and publicize Bureau actions. *See, e.g.*, www.consumerfinancemonitor.com. Additionally, news reporters check district court filings for matters of interest, and outlets like the Buffalo News have published multiple stories on SFS. (Ridder Decl., ¶11h). If the file in this matter is not sealed, the fact that the Bureau has filed this action may therefore come to the attention of, and be published in, a newspaper or on the

internet, and Defendants may learn of the issuance of the requested TRO before they have been served and before the requested asset freeze has been effectuated.

26.     Based on the foregoing, there is good cause to believe that immediate and irreparable damage to the Plaintiffs' ability to obtain effective final relief for consumers, including monetary redress or restitution, is likely to occur unless the Plaintiffs' TRO Application is heard and any TRO is issued without notice to Defendants and unless the file in this matter is sealed until five days after the TRO is issued or until all Defendants have been served, whichever occurs first.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of January, 2024.

_____
Vanessa Buchko
Counsel for Plaintiff
Consumer Financial Protection Bureau
E-mail: vanessa.buchko@cfpb.gov
Phone: 202-435-9593
1700 G Street NW
Washington, DC 20552