**DECLARATION OF P████ G████**

As provided by 28 U.S.C. § 1746, I, P███ G███, declare as follows:

1. My name is P███ G███. I am a United States citizen over 18 years of age. I live in █████, North Carolina. The following facts are known to me personally, and if called as a witness, I could and would competently testify to them.

2. In or about June 2020, I searched the internet looking into debt consolidation loans. My husband and I are music teachers, and we lost all of our private clients during the pandemic, which caused us a lot of financial stress. We were in our early to mid-60s at the time. I came across an advertisement for a company called Snowbird, which said that it could help with debt consolidation by giving us a bill consolidation loan. When I looked into it further, Snowbird referred us to a company called Finance Solutions.

3. I contacted Finance Solutions, which had a website at www.financesolutions.org, and someone named Daniel Harada with Finance Solutions contacted us. In response to our inquiry about a debt consolidation loan, Mr. Harada sent us an email on or about June 24, 2020, asking for information about our debts, saying that "[w]e can approve you via email using a soft pull" and asking us to provide a date of birth "by the end of the day." The signature block on Mr. Harada's email read: "Daniel Harada, Senior Financial Consultant, Finance Solutions." His email was listed as dharada@financesolutions.org, and his office phone number was listed as 646-859-2904. A true and accurate copy of Mr. Harada's emails to us on or about that date are attached as **Attachment A**.

4. We responded to Mr. Harada's questions, but he then told us we did not qualify for a debt consolidation loan. Without prompting from my husband and me, Mr. Harada then

1

asked if he could give our contact information to "Carolina Legal Services" (CLS). I said yes, and we were soon in e-mail and phone contact with people who said they were with CLS.

5.    A representative of CLS told us that CLS was experienced in reducing consumers' debts and that they could reduce our debts significantly by negotiating reduced settlements with our creditors. My husband and I were very concerned about getting our debts lowered, and I liked that CLS was a law firm with attorneys who could represent us, which is what the CLS representative told us. At the time my husband and I had a little over $44,000 in credit card debts. CLS represented that they could settle our debts for a lot less, and with their fees, we would pay approximately $31,560, and that CLS would handle everything for us. CLS told us that the debt reduction program would take about two and a half years. This sounded like what we needed, and we trusted that they were trying to help us, so my husband and I agreed to sign up for the program with CLS.

6.    On or about June 26, 2020, a notary named Angela Latham came to our home with a "Client Retainer Agreement" with CLS and another contract with "Global Client Solutions" (Global) for us to sign. Ms. Latham represented that she was with CLS. We had not seen these contracts before this appointment. At the appointment, Ms. Latham said our credit scores would go down as a result of entering into the program; we asked her how much they would drop, but she could not answer our questions. Still, based on our earlier telephone discussions with Mr. Harada and a CLS representative and the representations they had made about the effectiveness of the program, we went forward; and we signed and dated everything here at our house. After we finished signing, Ms. Latham only left us with a piece of paper stating we could cancel within 36 hours. I later printed our contracts off of a website that CLS representatives gave me. A true and accurate copy of our contracts are attached as **Attachment**

**B**. On page three of the contract with CLS, it states that our "Law Firm Contact" is "Daniel Harada." I thought Mr. Harada was with Finance Solutions not CLS but this was not entirely clear to me.

7.     My husband and I started with fourteen unsecured credit card debts in the program with CLS, but we subsequently removed two creditors, thus ending up enrolling twelve credit card debts in the program. (The balance with one creditor was so low, we simply paid it off. Another creditor was military related and CLS told us they could not enroll it in the program.) We began making bi-monthly payments of $438.34 to CLS, which we understood would be placed in an account with Global to accumulate to pay our creditors.

8.     At the time we entered the program, we signed a form to give power of attorney to CLS. We were instructed by CLS not to have any more contact with our creditors. We were advised by CLS to let them handle everything for us. CLS also instructed us to forward all correspondence from our creditors to CLS. On June 29, 2020, a few days after the notary came to our house, Mr. Harada emailed us, directing us to cancel any autopay payments we had with our creditors and to change our contact information with our creditors to a phone number that he gave us. He also instructed us to contact him in the future if we had questions. A true and accurate copy of Mr. Harada's email is attached as **Attachment C**.

9.     After we enrolled, occasionally we would receive a letter from CLS advising us of an upcoming "check in call." The CLS representatives who talked with us on these periodic "check in calls" were not able to answer any specific questions regarding our progress in the program but said they would pass the information on to the attorney assigned to our account. Whenever I called CLS with questions, I was always put on hold. I was instructed to use e-mail

in corresponding with them, which I did. I never spoke with an attorney during this process or while we were in the program.

10.     From July 2020 through April 2021, we made 21 payments of $438.34 to CLS totaling $9,205.14. During that time, CLS only paid off one of our creditors. Specifically, CLS settled with Citibank for $544.53 down from $1,055.80, and we understand from CLS's records that Citibank was paid $544.53 on that account.

11.     In about April or May 2021, we received a letter from an attorney with CLS, Daniel Rufty. In the letter he said that his law license was being suspended by the North Carolina State Bar effective in May 2021. At that time our bank drafts by Global stopped.

12.     On or about May 5, 2021, we received a check from Global of $1,984.76, which was all that was left in our account after having paid in $9,205 into the program. Thus, in summary, after being in CLS's program for almost a year, we lost approximately $6,675 of our money (specifically, the $9,205 we paid in, less the amount paid to Citibank, and the refund of $1,984 we received from Global). We now assume all that lost money went to fees, since none of our creditors were paid, with the exception of the one settlement with Citibank.

13.     Shortly after we received the notification that Mr. Rufty's license would be suspended on May 12, 2021, we began getting visits from the Harnett County Sheriff, who delivered on three separate occasions, a Civil Summons. I took it upon myself to go to the courthouse to inquire as to what we should do. I was advised by the clerk at the Harnett County courthouse to try to contact the plaintiff creditor(s) and negotiate a payment plan. I did this for our accounts with American Express, Bank of America, and Alaska Bank of America, the three that we received a summons for. I then contacted some of our other creditors to begin negotiations before possibly receiving a summons.

4

14.    All of this significantly reduced our credit scores, which dropped approximately 200 points.  Around the time we enrolled, a CLS representative had advised us that our credit scores would drop, but the CLS representative could not give us a guesstimate of how far.  If we had known much our scores would drop, and how much money we would lose in the program, we would never have gone forward with the program.

15.    In 2021 we had to file a 1099-C form with the IRS because we did not pay the full amount of the Citibank debt, and Citibank reported the remainder of our debt as cancelled.  This was a surprise to us and cost us more money.  No one from CLS told us that that there could be tax consequences from participating in this program.

16.    Since May of 2021, we have been working on paying down our debts to our creditors on our own.  We are making some progress.  We have paid off three of our debts.  I am working with five more creditors now.  We will deal with the remaining creditors in the future.

17.    I would never enter a program such as this again knowing what I know now.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on this ___12th___ day of ___May___, 2023.


_____

██████ █████████

███████, North Carolina 28390



----- Forwarded Message -----
**From:** Daniel Harada <dharada@financesolutions.org>
**To:** ███████@bellsouth.net" ███████@bellsouth.net>
**Sent:** Wednesday, June 24, 2020 at 05:36:11 PM EDT
**Subject:** SD3681BEFDB: Let's Discuss Your Debt Inquiry



# Regarding Your Recent Loan Inquiry

Dear M█████ G██████,

I've tried contacting you from my direct line, 646-859-2904, in regard to your loan inquiry in the amount of $49,900.00.

Are you available for a quick phone call today? Email me a time that works for you.

I look forward to speaking with you soon!

Best,

**Daniel Harada**
Financial Consultant
dharada@financesolutions.org
646-859-2904

Office Hours: M-F 10 AM - 8 PM ET

1



Read our privacy policy.
If you do not wish to receive future messages from Finance Solutions, access this link.

© Finance Solutions   |   711 Third Avenue, 6th Floor, New York, NY 10017   |   All rights reserved
© Finance Solutions | 711 Third Avenue, 6th Floor, New York, NY 10017 | All rights reserved



----- Forwarded Message -----
**From:** P█ G█ ████@bellsouth.net>
**To:** Daniel Harada <dharada@financesolutions.org>
**Sent:** Wednesday, June 24, 2020 at 08:29:10 PM EDT
**Subject:** Re: Debt Consolidation Loan--Snowbird Partners--M█ G█

Hi Daniel
The best time for us tomorrow would likely be around 11:00 am or after 7:30 pm
Thank you
P█ G█

On Jun 24, 2020, at 5:47 PM, Daniel Harada <dharada@financesolutions.org> wrote:

Hi P█!

Thank you so much for the clarification. That makes much more sense. We will go ahead and finish up the analysis which should be complete by the morning.

Additionally, I am sorry you were financially impacted by covid-19! Such a crazy time to be living through but I hope at the very least you guys have remained healthy! Now it's just time to get your finances healthy as well.

I look forward to following up tomorrow. Currently I have availability between 10-12pm and 5:30-8pm EST. Please let me know when you may have 10-15 minutes available tomorrow and I will go ahead and schedule us in!

Best regards,

Daniel

**Daniel Harada**
Senior Financial Consultant
**Office:** (646) 859-2904

1

**Email:** dharada@financesolutions.org

**From:** P█ G█████ ███████ @bellsouth.net>
**Sent:** Wednesday, June 24, 2020 5:29 PM
**To:** Daniel Harada <dharada@financesolutions.org>
**Subject:** Re: Debt Consolidation Loan--Snowbird Partners--M███ G████

Sorry we missed your call - and yes, I am P███ (F█████) M██ wife. My husband and I are both private music teachers (currently teaching via zoom) so we were unable to take your call.

But we do thank you for the email !

M██ DOB is █████

P█████ DOB is █████

In answer to your questions

1. Yes joint  as many of the bills we want to pay off are in both our names

2. Paying minimum thanks to COVID

3. Currently no monthly savings

4. Waited too long to do this. And COVID has made it worse

5. Once these are paid off we may want to sell our house in GA (we rent in NC) and purchase somewhere else.

6. Accelerate getting out of debt

Thanks for your time

P█████ G████

On Jun 24, 2020, at 5:08 PM, Daniel Harada <dharada@financesolutions.org> wrote:

Good evening M██,

Hope this message finds you well. I tried to follow up with you at the number you provided █████████ in regards to your consolidation inquiry, however, the voicemail said "P███". I am not sure if this is a

2

spouse, family member, or maybe an input error of the phone number. If the number is incorrect, please let me know as soon as possible and I will update it!

We can **approve you via email** using a soft pull, which will not affect your credit rating---please provide your **date of birth** by the end of the day.

Can you please answer the following questions as well just to verify.

1. Is the debt here joint **or** all in your name?
2. Are you paying the minimum payments **or** over double the minimums?
3. When you pay these payments plus all your other expenses, do you have savings at the end of each month?
4. Did anything change recently in your life or finances that made you want to consolidate now?
5. Are you looking to make any major purchases in the next two to four years? (i.e- house, car, large appliances, remodel, move, etc.)
6. What are you looking to accomplish through the consolidation? (ex: lower payments so that you can save for retirement / shorter term so you can accelerate getting out of debt)

I look forward to speaking to you soon!

Best regards,

Daniel

**Daniel Harada**
Senior Financial Consultant
**Office:** (646) 859-2904
**Email:** dharada@financesolutions.org

3



Services of:
Daniel Rufty Legal, PLLC
3440 Toringdon Way
Suite 205
Charlotte, NC 28277

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

This document is a legally binding agreement confirming that you ("Client") and Carolina Legal Services ("CLS") wish to form an Attorney / Client relationship.

Pursuant to this Agreement's terms, CLS will assist you with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program. In return for CLS's services, you agree to pay specific amounts to CLS, as specified in this Agreement and its enclosures.

Client is retaining CLS to help resolve specific debts that Client cannot reasonably satisfy according to existing terms. These specific debts are listed in this Agreement.

Client must pay as agreed for CLS to operate as contemplated in this Agreement.  The law firm puts   in place a customized strategy based on the individual client and their debts in order to effectuate the goals of the law firm's representation. Following this strategy, CLS's ability to resolve the proposed debt load is projected to take a number of months and an amount of payments listed in this document. A variance from this strategy, including Client's failure to make timely payments, will directly affect CLS's ability to perform as agreed.

CLS holds itself to a standard of minimum results even though Creditors are under no obligation to negotiate with you, CLS, or anyone else. CLS takes this risk in exchange for Client's promise not to unreasonably withhold consent when presented with offers to settle debts.

The specifics of CLS and Client's responsibilities and expectations with regard to this relationship are discussed in this Agreement in the following order:

## 1. LEGAL SERVICES CLS PROVIDES

## 2. FEES AND COSTS OF SERVICES PROVIDED

## 3. CLS'S PERFORMANCE STANDARD

## 4. TERMINATION OF REPRESENTATION

## 5. FURTHER IMPORTANT TERMS AND DISCLOSURES

## 6. ARBITRATION AGREEMENT

## 7. CLASS ACTION WAIVER

**Following the Attorney / Client Agreement are various notices, disclosures, schedules, lists, and authorizations related to this Agreement's terms. All enclosed documents are material to CLS's representation of Client, and are incorporated into this Agreement.**

2

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# Client Information

| CLIENT | | |
|---|---|---|
| Full Name: | DOB: | SSN: |
| M██ G████ | ████████ | ████████ |
| Address: | City | State, Zip Code: |
| ███████ | ██████ | NC    28390 |
| Home Phone: | Cell Phone: | Email Address: |
| ████████ | | |

| CO-CLIENT | | |
|---|---|---|
| Full Name: | DOB: | SSN: |
| ██ G████ | ██ 1957 | ████████ |
| Address: | City | State, Zip Code: |
| ██████ | ██████ | NC |
| Home Phone: | Cell Phone: | Email Address: |
| | | |

**PROPOSED PROGRAM INFORMATION**

| Total Unsecured Debt: | *Estimated Program Length (months): |
|---|---|
| $44,208.00 | 36 |
| Date of First Payment: | Program's Payment Amount: |
| 7/5/2020 | $876.67 |
| *Estimated Total Payments: | Law Firm Contact: |
| $31,560.08 | Daniel Harada |

\* - The estimates provided above are just that – good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 1. LEGAL SERVICES CLS PROVIDES

CLS's services are performed by a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform. CLS will perform the various services described in this section.

## 1.1. Debt Analysis

CLS will review Client's personal hardship and other debt circumstances and formulate a plan to negotiate improved terms.

## 1.2. Negotiate and Resolve Client Debt

CLS will represent Client in the negotiation and resolution of the unsecured debts listed in the Creditor List enclosed with this Agreement.  Representation related to any debt is governed by the promises and limitations discussed throughout this Agreement.

## 1.3. Litigation Defense Services

CLS will advise and represent Clients in their defense of litigation initiated by creditors or collectors to recover debts listed in this Agreement.  CLS attorneys are immediately notified of litigation, and may  be assigned to address any litigation served on Client after the effective date of this Agreement. Litigation services are further conditioned and limited by other terms of this Agreement, circumstances of practicality, and jurisdictional rules.

## 1.4. Services Outside Scope of Representation

CLS's services are limited to those specifically listed above. This means that CLS will not provide accounting, financial planning, or tax advice. CLS does not engage in credit repair or credit reporting. CLS does not attempt to resolve debts on which a judgment has been obtained. Bankruptcy services, and defense or prosecution of any debt not listed in this agreement are outside the scope of representation. Further, CLS cannot guarantee that creditor or collector harassment will cease at any point in the representation. However, under some circumstances, CLS may take appropriate legal action against creditors or collectors engaged in illegal activity.

## 1.5. Work Performed by Contracted Parties

Carolina Legal Services may contract work relating to this Agreement to third parties for such tasks including, but not limited to customer service and debt negotiations. CLS attorneys will supervise all third-party entities to ensure contracted services comply with CLS's rules and regulations.

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

## 1.6. Litigation Defense Services

Creditors and/or debt collectors may file lawsuit(s) against Client in order to collect non-payment of owed debt(s). CLS will provide Litigation Defense Services in the event the client receives a Summons and Complaint. The Litigation Defense Services will include work done in court and/or negotiations out of court. CLS's Litigation Defense Services and limitations include:

### Services

1. CLS will receive, review, and analyze any summons, complaint, petition, application, or other operative pleading the client has received.

2. CLS will evaluate potential legal defenses to the Plaintiff creditor's suit.

3. CLS will review, analyze, and counsel Client regarding collection activity and debt restructuring associated with the litigated debt.

4. CLS will engage with the Plaintiff or its hired legal counsel on Client's behalf to negotiate a resolution of the litigation.

5. CLS's attorneys may determine that a valid defense exists to the law suit, or that the suit is defective in some way favorable to Client. This determination varies by jurisdiction, current legal trends, and the personal knowledge of the local attorney.

6. If CLS's assigned attorney determines that Client is likely to gain a favorable result through continued defense of the litigation, he or she will prepare and file responsive pleadings on the Client's behalf, appear at subsequent court proceedings, and continue defense through various stages of litigation, including trial, if prudent.

7. If CLS determines in its sole discretion that it does not have a good faith basis to assert a defense to the litigation on Client's behalf, CLS will communicate this determination to the Client and discuss alternative potential strategies for resolving the litigation. In such cases, CLS's strategy may include, but would not be limited to, engaging in out of court negotiations directly with the creditor. No fees for Litigation Defense Services will be charged if CLS determines it cannot provide a defense to the litigation.

### Conditions and Limitations

1. All pages of any summons, complaint, exhibits, petitions, and/or other pleadings served to the client must be submitted to CLS.

2. All lawsuit paperwork must be submitted to CLS no less than fifteen (15) days prior to the lawsuit response date, or immediately upon the client's receipt of lawsuit paperwork.

3. If the litigation is in a State that permits less than fifteen (15) days' notice, all lawsuit paperwork must be submitted no less than seven (7) days prior to lawsuit response date.

4. All lawsuit paperwork must be submitted to Carolina Legal Services at their fax number **1-855-250-6072** or email address **cs@CarolinaLegalServices.com**

5. The "Retainer Fee," outlined in the enclosed Payment and Fee schedule, must be paid in full, or payments must be current on any agreed payment plan specific to the "Retainer Fee" in order for CLS to provide Litigation services.

6. CLS is not required to provide Litigation Services on any lawsuit of which the Client had knowledge prior the execution of this Agreement with CLS. Knowledge of a lawsuit is typically determined by service of process (delivery of a legal complaint to a party being sued).

7. CLS will not provide Litigation Services related to debts which are not included in this Agreement, or any attachments or amendments to this agreement made prior to Client's knowledge of the lawsuit.

5

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

## 1.7. Conditions of this Agreement's Effectiveness

a. This Agreement does not take effect, and CLS has no obligation to provide any services, until both Client and CLS have executed a copy of this Agreement and such copy is delivered to both Parties.

b. Further, this agreement does not take effect until Client has paid the initial payment of the flat fee retainer as set forth in the payment schedule enclosed, and the payment has cleared.

## 1.8. Assistance in Dealing with Difficult Creditors

It is important to understand that CLS cannot force a creditor to negotiate your debt. Although CLS will not accept a debt into the program from creditors it knows will not negotiate debts, there are times when a creditor that has negotiated with CLS in the past may refuse to negotiate a debt. In such instances, the CLS attorneys or negotiators may require your assistance in participating in the negotiation process. CLS personnel will provide you with the information you will need in order to contact your creditor directly in an effort to reach a satisfactory settlement. If CLS cannot successfully negotiate a debt for you, even with your assistance, it will refund to you the portion of your fees associated with that debt.

## 1.9. Timing and Amount of Settlement Offers

CLS will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt, whether on a lump-sum or installment basis, may be made, with such factors as the creditor's settlement policies, the rate of account accretion, the size of each debt and how close a debt may be to charge-off. Some creditors prefer that they not be contacted until you have accumulated sufficient funds in your Dedicated Account to allow a negotiated resolution within their historic norms. While settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt.

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 2. FEES AND COSTS OF SERVICES PROVIDED

CLS's fees are payable according to the following terms.  All fees are charged on a flat fee basis according to the Payment Schedule enclosed with this Agreement. The estimated total fees for CLS's services are $ 12598.52  including the Retainer Fee, Monthly Legal Administration Fees and Service Costs described below.

## 2.1. Retainer Fee and Monthly Legal Administration Fees

a. Client will initially pay CLS $995.00 as a Retainer Fee.

b. The Retainer Fee shall be paid on a monthly basis over_____9_____months. The first ____4____ payments shall be___$75.00___, thereafter payments will be__$50.00___ and a final payment of $95.00.

c. In addition, Client shall pay an ongoing monthly flat Legal Administration Fee of $ 89.00 for debt review, debt resolution plan analysis and structuring, supervision of and participation in creditor negotiations, pre-litigation settlement support, and the Litigation Defense Services described in Section 1.6 of this Agreement. The estimated total Legal Administration Fee is $ 3,204.00 based on CLS' estimate that it will take a total of ___36___ months to settle Client's debt.

d. Client shall be responsible for Legal Administration Fees for all months Client remains active with CLS.

## 2.2. Service Cost – Related Services

In addition to the legal services provided by CLS, there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of CLS's attorneys. These services are provided at a cost equal to ___19%___ of Client's total scheduled debt (hereinafter referred to as Service Cost). The Service Cost shall be paid by Client to CLS in equal consecutive monthly payments in the amount of ___$233.33___ per month, totaling __$8,399.52_.

CLS has a non-exclusive reciprocal referral agreement with independent contractors to provide these services under CLS's direct supervision. Representatives of such independent contractors cannot   and will not provide any legal advice to the Client, and any such advice will only be communicated to Client by CLS. Although these services are performed under CLS's supervision, a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services, and communications between Client and the independent contractor representatives might not be protected by attorney-client privilege.

## 2.3. Application Client of Funds

All funds paid by Client will be saved in a Dedicated Account that is owned by Client and held by a third party dedicated account holder (See Dedicated Account Agreement) for use in making payments toward any settlements negotiated paying CLS's fees under the terms of this Agreement.

**All funds in Client's Dedicated Account shall remain under Client's control at all times, and may be withdrawn by Client at any time without penalty. If Client notifies CLS or the third party dedicated account holder of a request to withdraw their funds, Client shall be entitled to receive all funds in the Dedicated Account, other than any funds that have previously been earned by CLS under the terms of this Agreement, within seven (7) business days of such request.**

It is strongly recommended that Client retain all funds available for settlement payments and fees to allow CLS the greatest ability to effectively represent Client under the terms of this Agreement.

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

### 2.4. Method of Payment

Under this Agreement, Client agrees:

a. to have Client's initial flat fee retainer and subsequent fees and costs as outlined above based on the attached Payment Schedule to be automatically drafted by Client's third party dedicated account holder from Client's bank account into an authorized Federal Deposit Insurance Corporation ("FDIC") insured bank account held in Client's name (the "Dedicated Account") with Client's first payment to start on _7/5/2020____, and thereafter each month on the__5th__ day; and

b. to have Client's payments of Service Cost and settlement savings fund payments based on the attached Payment Schedule to be automatically drafted from Client's bank account into the Dedicated Account held in Client's name with Client's first payment to start on 7/5/2020   and thereafter each month on the__5th__ day.

### 2.5. Early Program Completion and Pre-Payment of Program Fees

If CLS resolves all debts listed in this Agreement before the scheduled date of Client's final Service Cost payment, Client must continue to make all payments for the Service Cost and Retainer outlined in this Agreement. However, Client will not be responsible for any Legal Administration Fees following the date that a settlement agreement is entered on the final listed debt. Client can pay off their program early with no pre-payment penalties.

### 2.6. Costs of Litigation Services – Court Costs and Trial Preparation Costs

a. Client must pay all costs associated with Litigation Services, including the payment of any court filing fees or any other court-imposed costs associated with the litigation. These costs vary by jurisdiction. CLS will NOT advance such costs. Client acknowledges that failing to timely pay necessary costs may have adverse consequences, including but not limited to entry of judgment against Client in the litigation.

b. If a litigated matter proceeds to trial, Client shall also be required to pay the costs associated with CLS's trial preparation, which the parties hereby agree in advance shall be set at three hundred fifty dollars ($350.00) per trial (the "Trial Costs"). Trial Costs commonly include but are not limited to, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, travel costs including parking, mileage, transportation, meals, and hotel costs, investigation expenses, and other similar items. The Trial Costs must be paid sixty (60) days before the scheduled trial date unless otherwise agreed upon by CLS and the Client. The Client shall not be responsible for, and shall be refunded the Trial Costs if the litigation is settled at least thirty (30) days before  the trial date.

### 2.7. Additional Fees

Client may be responsible for additional processing fees. Such fees may include: Payment Plan Change Fees ($19.95), Adding/Removing Debts ($25.00), Renegotiation Fee ($299.00), Settlement Payment Fees ($10.00), and Banking Changes ($25.00).

### 2.8. Increases in Balances of Accounts Subject to Representation

a. Client acknowledges and agrees that Client will not continue to incur any additional debt on any accounts subject to this Agreement, other than late fees, interest, and penalties.

b. Client's program fees, program length, and draft amounts may increase due to any additional balances incurred by Client.

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 3. CLS'S PERFORMANCE STANDARD

CLS has a set Performance Standard for each debt enrolled in the Debt Resolution Program. CLS sets a target debt reduction of minimally thirty-five percent (35%) of amount owed on the debt at the time the Agreement is executed. If CLS is unable to meet this target debt reduction, CLS will refund the share of all CLS fees & costs for work on this individual debt.

## 3.1. Terms and Conditions Affecting Performance Standard:

a. Client must be in complete compliance and cooperation with CLS under the terms of this agreement.

b. Client's payments must be current under the Service Cost obligations and cannot default on payments to Creditors pursuant to settlement of any listed debt.

c. Client may not be entitled to a refund if Client is unwilling or unable to accept a proposed settlement at a reduction of thirty-five percent (35%) of enrolled debt at time that settlement is secured by CLS.

d. If CLS is unable to settle Client's listed debts, the refund shall be calculated on a pro rata basis as to Service Cost paid per each individual debt.

e. The Performance Standard does NOT apply to any enrolled debt that becomes subject to a lawsuit during representation. Client will be required to notify CLS of any lawsuit, at which time the Performance Standard will cease to apply, and Litigation Services will commence.

## 3.2. Performance Standard Does Not Apply to the Following Types of Debt:

a. Any debt with a balance transfer or cash advance which occurs within six months of enrollment;

b. Any debt with a balance of less than one-thousand dollars ($1,000.00) at the time of this Agreement's execution;

c. Any debt which is subject to a lawsuit at the time of this Agreement's execution;

d. Debts being garnished, or subject to voluntary garnishment are also excluded from this provision;

e. Any debt with a credit union. CLS will endeavor to settle such debts on behalf of Client on the best terms possible, but cannot guarantee that such settlements will meet the Performance Standard.

f. Debts that are charged off or written off by a creditor or become uncollectable, as a result of CLS's strategy, shall be considered approved settlements. As an approved settlement, these debts will not be subject to any refund.

g. Client must complete all payments as listed and hereafter amended in order to provide CLS with the opportunity to settle all enrolled debt on the Creditor Listing enclosed. Any refund may be disqualified if Client terminates representation prior to completion of payments contemplated in this Agreement.

## 3.3. Bankruptcy and Other Alternatives

CLS may discuss alternative legal routes in the event of changing circumstances on any enrolled debt(s), such as Chapter 7 & 13 Bankruptcies.

## 3.4. Should Client Default on Negotiated Settlement Terms

CLS is not required to renegotiate any debts that enter default after CLS has arranged payment terms, and those terms were agreed to by Client. Client may request CLS renegotiate such debt, and will be subject to an additional fee of two-hundred-ninety-nine dollars ($299.00) per renegotiation at the client's expense. Client must also comply with following terms for renegotiation(s):

a. The Representation Standard provision only applies to the balance of enrolled debt, not accounting for payments made on initial settlement prior to default.

b. Renegotiation may result in the settlement amount increasing.

**Client understands & agrees they are not entitled to any refunds under the Performance Standard if any of the above terms are not met.**

9

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 4. TERMINATION OF REPRESENTATION

## 4.1. Termination by Client

Client may terminate this Agreement at any time, and for any reason. Should Client terminate this Agreement before all debts subject to the representation are resolved, all savings and unearned fees in Client's Dedicated Account will be refunded to the Client.

## 4.2. Termination by CLS

This Agreement may be terminated by CLS at any time for good cause, and upon reasonable notice to Client. In addition, subject to any applicable legal and ethical standards governing CLS's right to withdraw representation, CLS may withdraw from representing Client in any litigation under the terms of this Agreement either with Client's consent, or with the permission of the court in which such litigation is pending.

## 4.3. Definition of "Good Cause" for Termination by CLS

a **Client's Failure to Cooperate with CLS.** Client must cooperate and comply with all reasonable requests by CLS and its agents in connection with the services to be performed under this Agreement, including requests for information and documentation, responses to settlement offers, and matters related to any litigation. Client acknowledges and agrees that failure to cooperate with CLS is grounds for CLS to terminate this Agreement and/or to withdraw from representation of Client in any litigation associated with the Client's failure to cooperate.

b. **Failure to Pay Fees and Costs.** If Client fails to pay the legal fees and Service Costs required under the terms of this Agreement, CLS may terminate this Agreement and withdraw from representation of Client in any litigation associated with this Agreement.

c. **Failure to Pay Costs of Litigation.** In the event that Client fails to pay any of the court filing fees or other fees or costs associated with the litigation of a listed debt, CLS will not be responsible for acting in response to the lawsuit until such time as the fees or costs associated with the filing have been received by CLS. Moreover, Client agrees and acknowledges that the failure to pay the three hundred fifty dollar ($350.00) Trial Costs associated with a trial in a timely manner shall constitute sufficient grounds for CLS to withdraw from representing Client in connection with the lawsuit.

d. **Failure to Follow CLS's Advice on Reasonable Settlements.** Client agrees and acknowledges that CLS has an obligation to Client as both a counselor and as an advocate, and that the underlying purpose of the Representation is to negotiate settlement of Client's debts. In the event that CLS negotiates a reasonable settlement offer and advises the Client to accept, Client agrees that he or she shall not unreasonably withhold consent to accept the offer. Client acknowledges and agrees that it is unreasonable to withhold consent on a settlement offer when Client has no valid defense to the litigation claims at issue or when the settlement offer is within CLS's Standard of Performance. If Client refuses to consent to a reasonable settlement offer, Client agrees that CLS may withdraw from representing the Client in any litigation associated with the settlement offer at issue.

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

### 4.4. Withdrawal from Representation of Client in Litigation

In the event that CLS is entitled to withdraw from any litigation for whatever reason, Client agrees to execute any documents necessary to effectuate this withdrawal, including, without limitation, the execution of a substitution of attorney document that relieves CLS as counsel in the litigation. If Client fails to execute any necessary documents, CLS may request the court to be relieved as Client's attorney in that particular matter. Client acknowledges and agrees that CLS's withdrawal from any specific litigation does not necessarily terminate Client's entire Agreement with CLS for any other litigation or for any other services falling within the scope of this Agreement. Notwithstanding CLS's withdrawal and without regard to the reasons for the withdrawal, Client will remain obligated to pay CLS for any services performed up to and including when CLS delivers its withdrawal notice to Client or CLS receives a court order authorizing its withdrawal.

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 5. FURTHER IMPORTANT TERMS AND DISCLOSURES

## 5.1. Client's Responsibilities to CLS

a. In consideration of CLS's experienced counselling, work out a feasible monthly payment plan based on the total amount of debt to be modified, which contemplates all fees and costs to CLS as well as funds to deposit for use in settling debts on which CLS represents Client. The Payment Schedule is enclosed;

b. Provide CLS with accurate and complete information relating to any Client's finances and the state of Client's financial hardship as documented in the attached Hardship and Budget Information statement.

c. Provide CLS accurate and complete information and documents relating to any debts subject to CLS's representation. These documents must identify each debt by creditor's name, current account balances, and account numbers. CLS is under no obligation to verify the information supplied by Client;

d. Forward all correspondence from creditors and collection agencies as soon as possible, but no longer than five (5) days from receipt;

e. Make all payments according to the Payment Schedule;

f. Refrain from discussing debts with creditors or collection agencies when contacted;

g. Notify CLS in writing of any settlement offers you receive, including all of the terms and conditions of the offer;

h. Be willing and able to aid in negotiations when necessary, and understand that your level of involvement will not affect the terms of this Agreement, but may affect the speed and effectiveness of CLS's efforts;

i. Respond timely to all requests or communications from CLS or its representatives, and promptly provide CLS with any change of address or other contact information;

j. Make timely and complete payments on settlements negotiated by CLS and approved by Client.

## 5.2. Client's Authorizations

Client Authorizes CLS to:

a. To disclose information regarding Client's financial condition or status to any creditors and collectors in connection with effective representation;

b. To hold itself out as Client's representative to any party seeking to collect the debts listed in this Agreement's Creditor Listing;

c. To engage creditors and collectors to negotiate reduction of the debts listed in this Agreement's Creditor Listing;

d. To provide Client's bank account information to the third party dedicated account holder in order to facilitate the establishment of the Dedicated Account for Client. This authority shall remain effective until cancelled by Client in writing. Client will provide CLS with a voiced check or savings deposit slip with respect to Client's bank account.

## 5.3. Client Acknowledgments

Client Acknowledges and agrees that:

a. The Payment Schedule is based on previous settlement averages achieved and calculated by CLS. Accordingly, the actual amount paid into the program may vary. More or less funding may be required to settle all represented debts;

b. The program's contemplated duration is an estimate based on full and timely payment each month as listed in the Payment Schedule. Any variation of payments, as well as many other factors, can affect the length of the program;

c. CLS will deduct monthly Legal Administration fees through the duration of Client's participation in the debt resolution program;

d. The success of CLS's representation on any particular debt may vary based on a number of factors, including your ongoing ability to make timely deposits to your Dedicated Account, the willingness of your creditors to negotiate settlements of your debt and other factors that are outside CLS's control;

e. Your participation in the program may result in you being subject to collections. Creditors may still contact you regarding debts subject to this Agreement. However, you should notify CLS of harassment, as there may be steps CLS can take to prevent or rectify illegal harassment;

f. Any reduction in the amount owed by Client may be considered a taxable event. You should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf;

g. The fees and costs paid to CLS are compensation for the services described in the Scope of Engagement and the funds deposited into your Dedicated Account are for the purpose of saving funds for settling your accounts with creditors. Until you authorize and approve any such settlements, no payments of any kind, including any monthly minimum payments will be made to your creditors on the accounts, except those that are subject to CLS's Settlement Pre-Authorization form which states that

CLS shall make all reasonable efforts to obtain your

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

approval for any settlement offer obtained on your behalf. In the event CLS cannot contact you after making reasonable efforts, you authorize CLS to proceed with any settlement resulting in a savings of 50% or more of your debt;

h. CLS will refund the entire portion of any unused retainer fees for services that have not yet been rendered in the event you terminate CLS's representation;

i. The amount you owe to your creditors or collectors may increase due to the accrual of late fees, interest and penalties on the accounts while enrolled in the program;

j. Your participation in the program will likely have an adverse effect on your credit worthiness and may result in you being sued by creditors or debt collectors;

k. You should not incur any new or additional debt and should refrain from using or obtaining credit during the CLS debt resolution representation. You understand and agree that all credit cards or lines of credit shall be closed and that no additional credit cards or lines of credit should be applied for during the CLS debt resolution representation. You understand and acknowledge that you may keep credit cards out the program for emergency purposes only. These credit cards should not be from the same issuing bank as any accounts you entered into the CLS debt resolution representation;

l. No debts listed in this Agreement have been secured by any personal or real property.

m. Active, inactive, or former military personnel understand that his/her military rank, pay, and/or benefits may be adversely affected by delinquent debt accounts and/or a decreased credit rating and CLS Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

n. Individuals with, or who are seeking Security Clearance, including military members, contractors and consultants, understand that his or her Security Clearance may be adversely affected by delinquent debt accounts and/or a decreased credit rating and CLS Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

### 5.4. Voluntary Participation

Client understands that participation in CLS's program is voluntary and you may, upon written request, cancel CLS's services at any time prior to the original estimated conclusion date of the program.

Client also agrees that:

a. Early termination may prevent CLS from providing all services outlined herein and CLS will not be responsible for any unresolved accounts upon cancellation.

b. In the event of any early termination of this Agreement, all Service Costs, Legal Administration Fees, Banking Fees, and Other Fees shall be considered earned and are non- refundable.

c. Upon termination of this Agreement, any funds held in your Dedicated Account, less any amounts paid or owed in the form of fees and settlement payments, shall be remitted to you by paper check or ACH transfer.

d. CLS will not collect any additional fees that have not previously become due after the termination date.

e. With CLS's permission, you may re-enroll Client Debts after termination. Any re-enrollment shall be at CLS's sole discretion and is subject to a Reactivation Fee in the amount of two hundred ninety-nine dollars ($299.00).

### 5.5. Skipped Drafts

a. In the event Client requests to skip a monthly draft, Client shall notify CLS at least five (5) business days prior to the scheduled draft.

b. Client will continue to be charged any applicable monthly Legal Administration service costs, retainer fees and any banking fees for any skipped months.

c. An additional month shall be added onto the Client's program to make up for each month Client skips a draft.

d. CLS may deny a Skip Request and/or limit the number of approved Skipped Drafts if CLS determines it is in the client's best interest to continue drafting Client's monthly payment. Reasons for denying a Skip Request may include, but are not limited to, a resulting inability to negotiate and settle debts, potential acceleration of litigation and the default of active settlements

 Initial: ___

# CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

## 5.6. Extension of Representation

a. Subject to the terms of the Performance Standard, in the event Client's debts are not fully settled at the end of the estimated program timeframe, CLS will automatically extend Client's program and continue to draft Client's monthly payment unless Client notifies CLS in writing that Client does not wish to extend representation. Any fees due during the extension will be reduced by 50%.

b. Client shall remain responsible for the monthly Legal Administration Fees during any extended representation period.

## 5.7. Additional Disclosures & Disclaimers

a. There are other remedies/solutions available for clients to relieve themselves of their debt burdens. Those remedies include bankruptcy and consumer credit counseling.

b. Declaring bankruptcy may discharge or allow a court-imposed repayment plan for the majority of Client's debts. However, this will be reflected as a permanent record on a Client's credit report for up to 10 years. CLS will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change, or Client requests such consultation. There are no additional fees required from Client for such consultation and preliminary advice regarding bankruptcy.

c. Consumer credit counseling may have less impact on a Client's credit rating than bankruptcy and reduce interest rates on current debts, but it generally requires re-payment of most-to-all of Client's existing debt and not provide significant monthly payment relief.

## 5.8. Confidentiality of Client Information

CLS agrees that any information provided by Client to CLS and/or its independent contractors will be kept confidential and only be used in providing the services delineated in CLS' Privacy Policy and in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties in order to (a) streamline the negotiation process, and (b) enhance Client's opportunities for settlement offers with Client's various creditors Client agrees and acknowledges that such disclosures will be made with Client's express consent and will not require any additional consent or consultation by Client before such disclosures are made.

## 5.9. Counterparts

This agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single document. Signatures delivered by facsimile or by email in PDF format shall be effective.

## 5.10.  Privacy Policy

Client agrees to receive notices and disclosures regarding Client's privacy information and rights in connection with this Agreement, including any future changes to the terms of CLS' Privacy Policy, by electronic means, including but not limited to by email, by links to the Privacy Policy, and/or by reviewing current and future updated notices, disclosures and policies posted on CLS' website.

## 5.11.  Authorization to Obtain Credit Report

Client agrees that CLS and its independent contractors may, from time to time during Client's engagement with CLS, obtain and review Client's credit report as necessary or appropriate to evaluate Client's current financial situation and perform the legal services on Client's behalf.

## 5.12.  Entire Agreement

This Agreement is the entire agreement between the parties. All prior negotiations and discussions are superseded by this Agreement. CLS has made no representations other than those expressly set forth in this Agreement, and neither Party has relied upon any representations or promises other than those expressly set forth herein.

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

# 6. ARBITRATION AGREEMENT

Any controversy, claim or dispute between Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which Client lives in accordance with the Federal Arbitration Act pursuant to the substantive laws of the state of Client's residence.

Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, agree that the arbitration shall be administered by the American Arbitration Association ("AAA") or in the event of its unavailability, an arbitration service with substantially similar rules, pursuant to its rules and procedures, and a single arbitrator shall be selected to preside by the arbitration service. Any award rendered by the arbitrator shall be final and binding, but subjection to review in accordance with applicable statutes governing arbitration awards. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction. If Client, on the one hand, or CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, fails to comply with the arbitrator's award, the injured party may petition the applicable court for enforcement.

Any arbitration of any controversy, claim or dispute between Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action. **This class action waiver precludes Client from participating in or being represented in any class or representative action regarding a controversy, claim or dispute.** Client waives the right to arbitrate any controversy, claim or dispute between Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative.

Client and CLS shall share the arbitration costs (filing, administration and arbitration fees) equally up to $1,000. If the arbitration costs exceed $1,000, CLS will pay Client's share of arbitration costs in excess of $1,000. In all circumstances, each of CLS and Client shall bear their own attorneys' fees and costs.

**Binding arbitration means that both Client and CLS give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Client and CLS give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can be appealed, that discovery may be severely limited by the arbitrator, and that certain remedies such as statutory injunctions and fee shifting which may be available in a court of law may not be available. In addition, under the terms of this Agreement, Client also gives up the right to bring any claims on a consolidated or class basis in the arbitration.**

In the event Client, on the one hand, or CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, brings suit against the other party in federal, state or local court instead of proceeding with arbitration, or unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. The provisions of this Arbitration Agreement section shall survive any termination of this Agreement.

## CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

**NOTICE:  This agreement contains provisions requiring arbitration of fee disputes.  Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements.  Arbitration proceedings are ways to resolve disputes without use of the court system.  By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury.  These are important rights that should not be given up without careful consideration.**

**Please consult with independent legal counsel of your choice prior to signing this Agreement as the Class Action Waiver contained herein affects your rights.  Please do not sign this Agreement if you do not understand these limitations.**



*Initial:*

CAROLINA LEGAL SERVICES / CLIENT RETAINER AGREEMENT

## 7.    CLASS ACTION WAIVER

Any court proceedings (whether before a judge or jury) of any controversy, claim or dispute between Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action). THIS CLASS ACTION WAIVER PRECLUDES CLIENT FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CONTROVERSY, CLAIM OR DISPUTE. Client waives the right to litigate in court any controversy, claim or dispute between Client, on the one hand, and CLS, any of its attorneys, and/or any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative, or to act as a private attorney general.  The provisions of this Class Action Waiver section shall survive any termination of this Agreement.

**Please consult with independent legal counsel of your choice prior to signing this Agreement as the Class Action Waiver contained herein affects your rights.  Please do not sign this Agreement if you do not understand these limitations.**



*Initial:*

I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of CLS and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against CLS.

Agreed to this 26ᵗʰ day of June , 20 20

_____
Signature of Client

_____
Signature of Co-Client

_____
Signature of CLS

CAROLINA LEGAL SERVICES / SETTLEMENT AUTHORIZATION

# Client's Authorization for Settlement

CLS shall make all reasonable efforts* to obtain Client's approval for any settlement offer obtained on Client's behalf. In the event CLS, cannot contact Client after making reasonable efforts, Client authorizes CLS to proceed with any settlement resulting in a savings of 45% or more of the Client's debt at the time of settlement.

Furthermore, I/we direct Global Client Solutions to release the funds from my/our Special Purpose Savings Account to the creditor, per the terms of a settlement agreement negotiated in accordance with the terms of this authorization.

<u>This form may be revoked** by Client at any time upon written notice to CLS.</u>



Client Name _____    Date 6/26/2020

Co_____    Date 6/26/2020

*Reasonable efforts can include phone call(s), email(s), fax(es), and standard mail.

**Client can revoke such authorization at any time before any settlement payments are processed.

## CAROLINA LEGAL SERVICES / POWER OF ATTORNEY

# Power of Attorney

I/We, __M█ C█████__ , __F███ G█████__ ,

Located at __█ █████████████__ ,

In the City of __████████__ , State of __NC__ Zip __28390__ ,

hereby appoint the Carolina Legal Services("CLS") as my/our attorney-at-law to do the acts described in this Power of Attorney. CLS (and/or its designees) is hereby authorized to act as my/our attorney and to fully represent me/us in any litigation or negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owning in my/our name. Litigation representation includes attendance at required court hearings, if applicable.

I/We authorize CLS to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize CLS to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on 26 June, 2020.



Cl█████ ██████ture

Co-Client Signature

Client Social Security Number

Co-Client Social Security Number

State of __N C__ County of __Harnett__

The foregoing instrument was acknowledged by me this 26th day of June, 20 20

by: __M█ G████ ████__ who is/are personally known by me or who

has/have produced: __Drivers License__ as identification and who did not take an oath.

Notary Public: __Ayela C Latham__

Angela C. Latham
NOTARY PUBLIC
Cumberland County
North Carolina
My Commission Expires November 6, 2024

iii

CAROLINA LEGAL SERVICES / CREDITOR LISTING

# Creditor Listing

| Creditor / Collection Agency | Account Number | Balance | Account Holder(s) | Last Payment Date |
|---|---|---|---|---|
| CAPITAL ONE | | $3,631.00 | Applicant | |
| BK OF AMER | | $6,122.00 | Applicant | |
| SYNCB/PPMC | | $5,749.00 | Applicant | |
| CAPITAL ONE | | $3,605.00 | Co-Applicant | |
| CAPITAL ONE | | $2,956.00 | Co-Applicant | |
| BK OF AMER | | $2,135.00 | Co-Applicant | |
| BESTEGG | | $518.00 | Co-Applicant | |
| | | | | |
| SEARS/CBNA | | $794.00 | Co-Applicant | |
| SYNCB/LOW | | $7,979.00 | Co-Applicant | |
| WF BANK NA | | $1,897.00 | Joint Account | |
| MERRICK BK | | $1,007.00 | Co-Applicant | |
| CITI | | $1,357.00 | Applicant | |
| FTB/GREENSKY | | $1,390.00 | Joint Account | |
| AMEX | | $5,068.00 | Applicant | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Debt Owed: $ | |

## Payment Schedule

**Client Name:** M▬▬C▬▬▬                                        **Date:**    6/26/2020

### DEBT RESOLUTION PROGRAM

| Total Amount of Debt | | | $44,208.00 | Estimated Settlements: | | | $18,567.36 |
|---|---|---|---|---|---|---|---|
| Service Cost Percentage | | | 19% | | | | |
| Estimated Total Fees & Settlements | | | $31,560.08 | TOTAL ESTIMATED SAVINGS | | | $12,647.92 |
| Draft Number | Retainer Fee | Service Cost | Settlement Reserves | Legal Administration Fee | Banking Fees | Total Draft | Draft Due Date |
| 1 | $75.00 | $233.33 | $74.56 | $44.50 | $10.95 | $438.34 | 7/5/2020 |
| 2 | $75.00 | $233.33 | $85.51 | $44.50 | $0.00 | $438.34 | 7/20/2020 |
| 3 | $75.00 | $233.33 | $74.56 | $44.50 | $10.95 | $438.34 | 8/5/2020 |
| 4 | $75.00 | $233.33 | $85.51 | $44.50 | $0.00 | $438.34 | 8/20/2020 |
| 5 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 9/5/2020 |
| 6 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 9/20/2020 |
| 7 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 10/5/2020 |
| 8 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 10/20/2020 |
| 9 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 11/5/2020 |
| 10 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 11/20/2020 |
| 11 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 12/5/2020 |
| 12 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 12/20/2020 |
| 13 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 1/5/2021 |
| 14 | $60.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 1/20/2021 |
| 15 | $50.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 2/5/2021 |
| 16 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 2/20/2021 |
| 17 | $60.00 | $233.33 | $99.56 | $44.50 | $10.95 | $438.34 | 3/5/2021 |
| 18 | $50.00 | $233.33 | $110.51 | $44.50 | $0.00 | $438.34 | 3/20/2021 |
| 19 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 4/5/2021 |
| 20 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 4/20/2021 |
| 21 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 5/5/2021 |
| 22 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 5/20/2021 |
| 23 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 6/5/2021 |
| 24 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 6/20/2021 |
| 25 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 7/5/2021 |
| 26 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 7/20/2021 |
| 27 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 8/5/2021 |
| 28 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 8/20/2021 |
| 29 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 9/5/2021 |
| 30 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 9/20/2021 |
| 31 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 10/5/2021 |
| 32 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 10/20/2021 |
| 33 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 11/5/2021 |
| 34 | | $233.33 | $160.51 | $44.50 | $0.00 | $438.34 | 11/20/2021 |
| 35 | | $233.33 | $149.56 | $44.50 | $10.95 | $438.34 | 12/5/2021 |
| 36 | | $232.97 | $160.87 | $44.50 | $0.00 | $438.34 | 12/20/2021 |
| 37 | | | $382.89 | $44.50 | $10.95 | $438.34 | 1/5/2022 |
| 38 | | | $393.84 | $44.50 | $0.00 | $438.34 | 1/20/2022 |
| 39 | | | $382.89 | $44.50 | $10.95 | $438.34 | 2/5/2022 |
| 40 | | | $393.84 | $44.50 | $0.00 | $438.34 | 2/20/2022 |
| 41 | | | $382.89 | $44.50 | $10.95 | $438.34 | 3/5/2022 |
| 42 | | | $393.84 | $44.50 | $0.00 | $438.34 | 3/20/2022 |
| 43 | | | $382.89 | $44.50 | $10.95 | $438.34 | 4/5/2022 |
| 44 | | | $393.84 | $44.50 | $0.00 | $438.34 | 4/20/2022 |
| 45 | | | $382.89 | $44.50 | $10.95 | $438.34 | 5/5/2022 |
| 46 | | | $393.84 | $44.50 | $0.00 | $438.34 | 5/20/2022 |
| 47 | | | $382.89 | $44.50 | $10.95 | $438.34 | 6/5/2022 |
| 48 | | | $393.84 | $44.50 | $0.00 | $438.34 | 6/20/2022 |
| 49 | | | $382.89 | $44.50 | $10.95 | $438.34 | 7/5/2022 |
| 50 | | | $393.84 | $44.50 | $0.00 | $438.34 | 7/20/2022 |
| 51 | | | $382.89 | $44.50 | $10.95 | $438.34 | 8/5/2022 |
| 52 | | | $393.84 | $44.50 | $0.00 | $438.34 | 8/20/2022 |

**Settlement Reserves above is only an estimate of the amount needed for settlement.**

Client Signature  ▬▬▬▬▬            Co-Client Signature  ▬▬▬▬▬

Print Name  M▬▬▬▬            Print Name  ▬▬▬▬▬

Date  6/26/2020            Date  6/26/2020

**Payment Schedule**

**Client Name:** M████(████       **Date:**    6/26/2020

## DEBT RESOLUTION PROGRAM

| Total Amount of Debt | | | $44,208.00 | Estimated Settlements: | | | $18,567.36 |
|---|---|---|---|---|---|---|---|
| Service Cost Percentage | | | 19% | | | | |
| Estimated Total Fees & Settlements | | | $31,560.08 | TOTAL ESTIMATED SAVINGS | | | $12,647.92 |
| Draft Number | Retainer Fee | Service Cost | Settlement Reserves | Legal Administration Fee | Banking Fees | Total Draft | Draft Due Date |
| 53 | | | $382.89 | $44.50 | $10.95 | $438.34 | 9/5/2022 |
| 54 | | | $393.84 | $44.50 | $0.00 | $438.34 | 9/20/2022 |
| 55 | | | $382.89 | $44.50 | $10.95 | $438.34 | 10/5/2022 |
| 56 | | | $393.84 | $44.50 | $0.00 | $438.34 | 10/20/2022 |
| 57 | | | $382.89 | $44.50 | $10.95 | $438.34 | 11/5/2022 |
| 58 | | | $393.84 | $44.50 | $0.00 | $438.34 | 11/20/2022 |
| 59 | | | $382.89 | $44.50 | $10.95 | $438.34 | 12/5/2022 |
| 60 | | | $393.84 | $44.50 | $0.00 | $438.34 | 12/20/2022 |
| 61 | | | $382.89 | $44.50 | $10.95 | $438.34 | 1/5/2023 |
| 62 | | | $393.84 | $44.50 | $0.00 | $438.34 | 1/20/2023 |
| 63 | | | $382.89 | $44.50 | $10.95 | $438.34 | 2/5/2023 |
| 64 | | | $393.84 | $44.50 | $0.00 | $438.34 | 2/20/2023 |
| 65 | | | $382.89 | $44.50 | $10.95 | $438.34 | 3/5/2023 |
| 66 | | | $393.84 | $44.50 | $0.00 | $438.34 | 3/20/2023 |
| 67 | | | $382.89 | $44.50 | $10.95 | $438.34 | 4/5/2023 |
| 68 | | | $393.84 | $44.50 | $0.00 | $438.34 | 4/20/2023 |
| 69 | | | $382.89 | $44.50 | $10.95 | $438.34 | 5/5/2023 |
| 70 | | | $393.84 | $44.50 | $0.00 | $438.34 | 5/20/2023 |
| 71 | | | $382.89 | $44.50 | $10.95 | $438.34 | 6/5/2023 |
| 72 | | | $393.44 | $44.50 | $0.00 | $437.94 | 6/20/2023 |

Settlement Reserves above is only an estimate of the amount needed for settlement

Client Signature ▓▓▓▓▓▓▓          Co-Client Signature ▓▓▓▓▓▓▓

Print Name  M████ G████          Print Name ▓▓▓▓ G▓▓▓

Date    6-26-2020                Date    6-26-2020

CAROLINA LEGAL SERVICES / ELECTRONIC COMMUNICATION VERIFICATION

# Electronic Communication Verification

Please print your email address on the line below:

 @ gmail.com

You will receive an email of the Letter of Engagement and other documents executed today in the next three (3) business days. In case you do not receive an emailed copy, due to faulty address or lack of email address provided above, you will still receive copies of these documents with your Welcome Package. The Welcome Package will be mailed to you once your first payment has cleared.

Please initial here to indicate you understand the above terms of email delivery:



CAROLINA LEGAL SERVICES / HARDSHIP AND BUDGET INFORMATION

# Hardship and Budget Information

### Reason for Hardship

- Temporary Loss of Work
- Loss of Job
- Medical Problems
- Personal Injury
- Divorce

- Company Reduced Hours
- Pay Cut
- Disability
- Loss of Spouses Income
- ■ Other _____

Please Briefly Explain Hardship:  --High Interest

### BUDGET ANALYSIS

(All information should be on a monthly basis)

| | | | |
|---|---|---|---|
| Client Net Monthly Income | $6,250.00 | Funds Available | $ 2,269.00 |
| Co-Client Net Monthly Income | $0.00 | | |
| Total Income | $6,250.00 | | |

| | | | |
|---|---|---|---|
| Mortgage/Rent | $1,167.00 | Clothing | $ |
| Homeowners Insurance | $ | Utilities | $ 500.00 |
| Life Insurance | $350.00 | Telephone | $ 400.00 |
| Medical Care | $ | Auto Loans | $ 344.00 |
| Child Care / Support / Alimony | $ | Auto Other | $ 210.00 |
| Cable TV / Satellite | $0.00 | Auto Insurance | $ 170.00 |
| Entertainment | $0.00 | Education | $ |
| Gym / Health | $ | Student Loans | $ |
| Back Taxes | $ | Misc. / Other | $ |
| Food | $800.00 | **Total Expenses** | $ 3,981.00 |

*By executing this agreement, you are representing that you have considered these other options and further, that you have provided us with accurate information, including your financial information and the state of your financial hardship as documented in your hardship statement.*

CAROLINA LEGAL SERVICES / BANKRUPTCY INFORMATION & ELECTION OF SERVICES

# Bankruptcy vs Debt Negotiation and Election of Services

### Bankruptcy and Debt Negotiation

CLS is a full-service debt resolution law firm which provides services including debt negotiation and restructuring and bankruptcy services. The following provides information about these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

### Bankruptcy

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy: Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged, such as your house or car, and are expected to repay debts in three to five years, and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments; however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

CLS is a debt relief agency under the United States Bankruptcy Code Sections 527 (a) and (b), and we are required to provide the following information and notice:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide—

(1) The written notice required under section 342(b) (1); and

(2) To the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that—

(A) All information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) Current monthly income, the amounts specified in section 707(b) (2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b) (2)), are required to be stated after reasonable inquiry; and

(D) Information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

### IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

The following information will help you to understand what must be done in a routine bankruptcy case and will help you to evaluate how much assistance you may need. Although bankruptcy can be complex, many cases are routine.

CAROLINA LEGAL SERVICES / Disclaimer – Settlement of Credit Union Accounts

# Disclaimer – Settlement of Credit Union Accounts

This confirms my/our understanding and acknowledgement that, in the experience of CLS, credit union debt accounts are often resolved for higher settlement amounts, meaning that such debts may cost me/us more to settle and result in smaller reductions from the debt amounts at the time of enrollment. For this reason, credit union debt accounts are excluded from CLS's Performance Standard in Section 3 of the Agreement and CLS provides no assurance that such debts will be settled for any amount.

I/we acknowledge that my current credit union account(s) that are to be enrolled into the program are NOT cross-collateralized with any other credit union obligation(s). I/we understand that in the event it is later determined that any enrolled credit union account is cross-collateralized with any other credit union obligation that any enrolled credit union account(s) would be removed from the program and become my sole obligation to be resolve in the manner I see fit.

Further, I/we acknowledge that CLS would thereby have no obligations to represent me regarding these accounts whether ongoing or in the future.



Client Signature          Co-Client Signature

M██ C████s _____ Date 6/26/2020     F██ G███ _____ Date 6/26/2020

Client Name            Co-Client Name

## CAROLINA LEGAL SERVICES / BANKRUPTCY INFORMATION & ELECTION OF SERVICES

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with the preparation of your chapter 13 plan and with the confirmation hearing on your plan which will take place before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code (other than chapter 7 or chapter 13), you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

**Debt Negotiation**

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, CLS will contact your unsecured creditors in writing to notify them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer CLS to attempt debt negotiation as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives, including those outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt resolution options and have determined that debt negotiation by CLS is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed all debt resolution options available to me including doing nothing, filing for bankruptcy and consumer credit counseling, and elect to pursue debt negotiation services with CLS, subject to my ability to request other alternatives, based on changes in my financial circumstances.**



Client _____    Date 6/26/2020

Co-Client _____    Date 6/26/2020

x

CAROLINA LEGAL SERVICES / Disclaimer – Settlement of Student Loan Accounts

# Disclaimer – Settlement of Private Student Loan Accounts

This confirms my/our understanding and acknowledgement that, in Carolina Legal Services' experience, private student loan accounts may cost me/us more to settle and result in a smaller reduction from the debts at the time of enrollment. For this reason, private student loan accounts are excluded from Carolina Legal Services Performance Standard in Section 3 of the Agreement and Carolina Legal Services provides no assurance that such debts will be settled for any amount. I/we acknowledge that my private student loan account(s) that are to be enrolled into the program are NOT cross-collateralized with any other obligations with the same lending institution, are unsecured, and are not federally-backed loans. I/we understand that in the event it is later determined that any enrolled private student loan account does not meet the criteria above, Carolina Legal Services shall have the right to remove such account from the program and the removed account shall become my sole obligation to be resolved in the manner I see fit. I/we acknowledge that Carolina Legal Services would thereby have no obligations to represent me regarding any removed accounts whether ongoing or in the future.

Furthermore, I/we understand private student loan accounts tend to have significantly higher average enrolled balances than those of traditional unsecured credit obligations. Accordingly, I/we understand that private student loan accounts may require a longer period of time to resolve when compared to my/our other enrolled accounts.



Client Signature: _____   Co-Client Signature: _____ Date: 6-26-2020

Client Name: M___ C_____   Co-Client Name: F_____ G_____

# AUTHORIZATION TO COMMUNICATE AND NEGOTIATE WITH CREDITORS AND COLLECTION AGENCIES

I (We) authorize Carolina Legal Services. ("LEGAL SERVICES") including its agents and representatives, to take the following actions:

1. Communicate with my (our) creditors, including but not limited to any agent, representative or third-party collection agency or law firm, and discuss any and all details of my (our) financial situation, all for the purpose of negotiating settlements of my (our) debt obligations; and

2. Obtain records, debt validations, credit reports and support for the debts allegedly owed on my (our) behalf.

I (we) affirm that all of the information that I (we) have or will provide to LEGAL SERVICES is accurate, timely and correct. I expressly acknowledge that 1) LEGAL SERVICES is a law firm that has been retained to provide me with legal advice and/or representation,

The recipient of this Authorization, whether by original, photo copy, facsimile or electronic copy is specifically authorized and instructed by the undersigned party(ies) to contact or receive communications from LEGAL SERVICES or employees, regarding any of the purposes listed herein.

Client Name: __M___G_____

Date: __6/26/2020__

SSN#_____

Signature: _____

Co-Client Name : __F___G____

Date: __6/26/2020__

SSN#_____

Signature: _____

CAROLINA LEGAL SERVICES / ELECTRONIC PAYMENT AUTHORIZATION

# Electronic Payment Authorization

By signing below, I authorize the CLS Legal (CLS) (or their designees) to process debit entries from my checking, savings, or other FDIC-insured bank account. This authority shall remain effective until cancelled by me in writing, at least five (5) business days prior to my scheduled payment due date. I understand there will be a twenty-five dollar ($25) cost automatically charged to my account for any non-sufficient funds (NSF) transactions. **I will provide CLS with a voided check or savings deposit slip.**

Name on Account (Please Print): M⬛ G⬛

Please transfer payments directly from my Checking account, Savings account, or Other account.

Bank Name: Wells Fargo

Bank Address: P.O. Box 6995

City: Portland                St: OR Zip: 97228-6995

Bank Phone #: 800-869-3557

**Routing # ⬛⬛⬛ | Account # ⬛⬛⬛

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

⬛⬛⬛                    M⬛ G⬛            6/26/2020
Authorized Signature on Account          Printed Name              Date

Attach Voided Check or Savings Deposit Slip Here

## CAROLINA LEGAL SERVICES / AFFIDAVIT OF COMPLIANCE

## Affidavit of Compliance

I, _Angela C Latham_ as representative affiliated with and under contract to Carolina Legal Services, Daniel Rufty Legal, PLLC (CLS), in my role as a Member, Partner, Employee or Independent Contractor of CLS, confirm that I have conducted a personal and face-to-face presentation with M█ G█████ (Client's Full Legal Name) to review Client's file and present all relevant information regarding CLS' representation of Client, as it relates to CLS' Client Retainer Agreement to provide legal representation on behalf of Client , including debt resolution and financial workout services. I can confirm that Client has executed the Client Retainer Agreement on this date and such execution has taken place in my presence following my in-person meeting with Client. This Affidavit of Compliance establishes a written record to verify compliance with any and all applicable local, state or federal laws or regulations (collectively the "Applicable Laws"), including, but not limited, to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-08, and the Telemarketing Sales Rule, as amended, 16 C.F.R. Part 310; 75 Fed. Reg. 48458, 48522.

The following subjects were reviewed with Client in writing and, where appropriate, orally or in response to questions regarding such representation:

1)  That debt resolution which alters the terms of payment of unsecured debt might have a negative effect on Client's credit and that CLS does not clean up, fix, or repair credit. The program may result in Client being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest.

2)  That the scope of CLS' representation of Client is specifically limited to the following:
    a.  Determine which specific debt resolution option is most appropriate for Client, including an initial review of their budget, income and debt;
    b.  Review Client's current unsecured debt burden and thereafter negotiate and attempt to negotiate settlements with Client's creditors in an effort to modify or restructure Client's current unsecured debt;
    c.  Provide litigation defense as outlined in the Letter of Engagement.

3)  A full review of all fees and costs associated with the representation of the Client.

4)  That CLS maintains a Performance Guarantee for each individual account entered by Client into the CLS debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties, cost and late fees, as outlined further in the Terms and Conditions of the Engagement Letter. In the event that CLS does not meet this minimum standard for a particular account, it shall refund the pro rata share of all fees and costs paid to CLS for such work and CLS shall settle that individual account for Client at no additional cost. Exceptions to the minimum Performance Standard include: client skipping or defaulting on plan and/or settlement payments, Client's failure to accept a proposed settlement of at least a thirty-five percent (35%) reduction of an enrolled debt, any enrolled debts that become subject to a lawsuit during representation, any debts with a balance transfer or cash advance within six months of enrollment, any debts with a balance of less than $1,000 at time of this Agreement's execution, any debts with a credit union and any debt being garnished or subject to voluntary garnishment.

5)  Client has been advised that the attorney or paralegal who conducted the initial meeting with Client limits their scope of representation or presentation to that initial meeting and review of the Client's file. The Client was made aware that the actual supervising attorney for their file may be a different attorney of the law firm who is licensed in their state.

6)  A full review of the arbitration provision, including the fact that, by electing to go to arbitration, both parties are waiving certain rights, including the right to a trial in a court of law.

7)  Client has been advised of and given an opportunity to review CLS' Privacy Policy.

**Names of all attendees:** M█ G███ & P████ G████ & Angela Latham

**Start Time:** 4:10 pm          **End Time:** 5:10 pm

**Location of Meeting:** ████████████████████████ NC 28390

Have any materials been provided or presented to the attendees in addition to the Enrollment Documents, the Face to Face Script, and the Face to Face Power Point Presentation? (NO) YES **(Circle One)**
If so, indicate here and scan/upload all such additional documents or materials: _____

**I affirm the above statements are true and accurate.**

Executed on this Date: 26 June 2020

Representative on behalf of CLS:
Name: Angela C Latham
Signature: Angela C Latham
**I affirm the above statements are true and accurate.**
Client Name: M█ G████     Signature: _____
P████ G████

xv



## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

**I.** This **Dedicated Account Agreement and Application ("Agreement")** contains the terms, conditions, and disclosures that apply to your dedicated account ("Account"). By signing this Agreement or using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms and conditions set forth herein, including the requirement to arbitrate any dispute with Global Client Solutions, LLC ("Global") according to the terms of the **"ARBITRATION OF DISPUTE"** provision in paragraph XVII on page 2 of this Agreement. You are directed to read the **"ARBITRATION OF DISPUTE"** provision in paragraph XVII on page 2 of this Agreement carefully, as you are giving up your right to bring a lawsuit before a judge or jury in a court of law. If you have any questions that you do not believe are addressed in this Agreement, you can and should call, email, or write Global at the number or addresses shown at the end of this Agreement. Please review this Agreement carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you" and "your" mean you and any other party who you authorize to use your Account.

**II.** **Purpose, Nature and Use of the Account:** Your Account is a dedicated account that you can use in connection with the debt settlement program you have undertaken. Global is not a party to your debt settlement program and does not participate in the negotiation of your debts. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is a Federal Deposit Insurance Corporation ("FDIC") insured sub-account within a master custodial account maintained at a bank designated or selected by Global. The bank is not a party to your debt settlement program and does not participate in the negotiation of your debts, and is an intended third-party beneficiary of this Agreement, including the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. Additionally, you authorize Global to transfer your Account to another FDIC insured institution under the existing terms. Global will provide written notice to you of such change. Any such notice, and any other written notice that is provided for in this Agreement, will be sent to you at either the physical address you have provided in the application portion of this Agreement and/or the email address you establish with Global. If an email address is not provided to Global, all notices will be sent to you at the physical address you provided in the application portion of this Agreement. Your Account may not be used for any illegal purpose.

**III.** **Passcodes / Passwords:** You will be provided with a four-digit passcode (your "Passcode") that will enable you to access your Account via the telephone and to identify yourself when contacting a customer support representative. You will also be provided with an initial Internet password (your "Password") that will enable you to access your Account via the Internet. You may change your Password at any time for security purposes and you are encouraged to do so from time to time. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account.

**IV.** **Telephonic / Electronic Communications:** You authorize Global to accept and act upon any instruction received from you or authorized by you under this Agreement concerning your Account, where you have communicated that instruction or authorization by telephone, facsimile, email or other electronic means using a telephone keypad or computer. Use of your Passcode, Password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signatures in Global and National Commerce Act and other applicable laws.

**V.** **Authorizing and Initiating Transactions:** In this Agreement you authorize certain transactions involving your Account. Unless you direct otherwise in writing, Global may also act on those instructions that you conveyed to your Sponsor, as defined in the application portion of this Agreement, and such instructions may be acted on without further confirmation. From time to time, you may change those instructions and/or give other instructions to initiate deposits to or disbursements from your Account by contacting Global's Customer Support. In any event, you must always provide a reasonable period of time to act on your instructions. All deposits to your Account will be authorized and initiated pursuant to your instructions, and all disbursements from your Account will be authorized and

initiated pursuant to your instructions provided your Account contains sufficient funds to cover the amount of the disbursement. However, neither Global, nor any service provider to Global shall be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Global's sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of such instructions. Global shall not be responsible for any late payment fee, penalty or other charge levied by any of your creditors, for any failure of any of your creditors to accept a proposal for settlement or honor a settlement; or for any other adverse action taken by your creditor or any other party. Global shall not be liable for any consequences or damages you may claim resulting from Global acting on your instructions.

**VI.** **Fees and Charges:** The "SCHEDULE OF FEES AND CHARGES" identifies the fees and charges you are obligated to pay Global in connection with this Agreement and your Account; and you agree that these fees and charges may be deducted directly from your Account. The fees and charges in the "SCHEDULE OF FEES AND CHARGES" are the only fees associated with Global's services and your Account. The Monthly Service Charge for the first month in which your Account is established will not be prorated and will be deemed earned in full as of the day the Account is established, e.g., if your Account is established on the 15th day of a month, the Monthly Service Charge for such month shall be earned as of that day. Thereafter, the Monthly Service Charge will be deemed earned in full on the first day of each calendar month during which your Account remains open. Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee. You expressly acknowledge that Global may increase the fees and charges associated with your Account at any time, and that you will be provided with written notice at least thirty (30) days' prior to such increase. Global shall not be responsible for any other fees and/or charges that you may incur arising from or related to your debt settlement program.

**VII.** **Termination of Agreement / Account Closure:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global's Customer Support. The written notice must provide Global with the following information:

1. Your full name and current address;
2. Your Account number;
3. The date of the request; and
4. Your request to close your Account.

Please provide Global with sufficient time to process the request. In addition, Global may suspend, cancel or terminate this Agreement and your Account at any time without notice for inactivity, or if your Program has been terminated or is no longer being managed, if your Account is improperly maintained or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.

**VIII.** **Monthly Statements:** You will receive your first monthly statement by mail showing your Account activity and balance by mail. Thereafter, monthly statements will be available online, and may be accessed using your login information and Password. Should you desire to continue receiving a paper statement via the United States Postal Service, please contact Global's Customer Support and make a request to receive mailed paper statements. You may obtain balance and transaction information by using your Passcode to access your Account over the telephone, by using your Password to log into Global's website, or by calling Global's Customer Support. You agree to review each of your statements carefully and to report any erroneous, improper, or unauthorized transactions promptly.

**IX.** **Non-Interest Account:** Your Account is a non-interest bearing Account.

**X.** **Unauthorized Transactions and Customer Responsibility:** You should never share your Passcode or Password(s) with anyone and should keep your Account information and papers in a secure place. If you believe someone has transferred or may transfer money from your Account without your permission, contact Global's Customer Support immediately.



XI.    **FDIC Insurance:** The funds in your Account will be FDIC insured up to a maximum of $250,000.00.   The insured amount may increase or decrease and is subject to limits set and reset by the FDIC from time to time.

XII.    **Incomplete Transactions:** Neither Global nor any service provider to Global shall be liable for failing to complete a transaction due to insufficient funds in your Account; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any bank, or the directive of any regulatory authority.

XIII.    **Error Resolution Procedures:** In the event of potential errors or questions concerning specific transactions involving your Account, you must call or write Global's Customer Support no later than sixty (60) days after the transaction in question appears on your monthly statement.  Furthermore, at the very minimum you must provide Global with the following information:

1.    Your full name and Account number;
2.    The date and amount of the transaction;
3.    The type of transaction and a description of the suspected error (please explain as clearly as possible why you believe there is an error or why you need additional information); and
4.    The dollar amount of the suspected error.

If you provide the information over the phone, you may be asked and required to provide it again in writing within ten (10) business days.  Global will inform you of the results of the investigation of the suspected error within ten (10) business days after you submit the information and any error will be promptly corrected.  However, if Global requires more time to investigate the suspected error, it may take up to an additional thirty (30) days to complete the investigation.  If Global determines that there is no error, you will be provided with a written explanation within three (3) business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

XIV.    **Creditor Disputes:** *You understand and agree that Global is not a party to your debt settlement program, and does not participate in the negotiation of your debts. This Agreement is separate and independent of any contractual obligations you may have with your creditors or debt settlement provider.  Accordingly, you hereby expressly acknowledge that Global does not have any involvement in or responsibilities of any kind or nature with respect to your contractual agreement with your creditors or your debt settlement provider, your debt settlement program or the results that you may or may not achieve from your participation in a debt settlement program.  Furthermore, you hereby expressly acknowledge that any representation, statement, or obligation made by your debt settlement provider or made in connection with your debt settlement program is not made on Global's behalf, and does not and cannot bind Global.  Finally, you expressly acknowledge that Global shall not be liable for any actions taken by, or conduct of, your debt settlement provider in connection with your debt settlement program.  You hereby agree to indemnify Global, and hold Global, its parent and subsidiaries, directors, officers, shareholders, and employees harmless from any damages (including attorneys' fees) resulting from the breach of any of the above warranties.*

XV.    **Garnishment Acknowledgement:** In the event that a creditor of yours moves to garnish funds in your Account, *you expressly acknowledge that Global will answer the garnishment and comply with any writ issued by the Court in accordance with the applicable state law.  Furthermore, you expressly acknowledge that Global will not be responsible for challenging or raising a defense to the garnishment on your behalf.* You specifically agree to indemnify and hold Global harmless from any loss, liability, obligation, damage, cost and expense resulting from a creditor's attempt to garnish and/or hold Global liable for any judgment against you.

XVI.    **Governing Law:** This Agreement shall be governed by the laws of the state where you reside, except that the state's rules or statutes governing arbitration procedures shall not apply.  If any part of this Agreement is declared void or unenforceable, such provision(s) shall be deemed severed from this Agreement, and the remainder of this Agreement shall remain in full force and effect.  This Agreement may be modified to the extent necessary to give such force and effect to the remaining provisions.  No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder, shall be construed as a waiver of such performance, right, or remedy, as the case may be.

XVII.    **ARBITRATION OF DISPUTE – IMPORTANT NOTICE WAIVING YOUR RIGHT TO BRING A CLAIM BEFORE A JUDGE OR JURY IN COURT:** In the event of any controversy between the parties, including, but not limited, to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the determination of the validity, scope or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration.  This arbitration provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and not by any state rule or statute governing arbitration.  Arbitration under this provision will be conducted in either the county in which the consumer resides or the closest metropolitan county.  **THE PARTIES AGREE THAT ARBITRATION WILL BE BEFORE A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS OR MASS ACTION.  FURTHERMORE, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS.** The Arbitration will be administered by: The Judicial Arbitration Mediation Services ("JAMS"), 1920 Main Street, Suite 300, Irvine, CA 92614 (www.jamsadr.com); or the American Arbitration Association ("AAA"), 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org); or another nationally known consumer arbitration service on which the parties will agree to use.  The Arbitration will be administered according to the arbitration service's fee schedule and the service's current applicable rules and procedures except: *1) that the parties expressly waive the applicability of any rule governing class or mass action; 2) that the parties agree to have an in-person final hearing; and 3) that the parties agree that any specific arbitration procedure provided for herein will apply to the arbitration proceeding.  The arbitrator – who must be either a retired judge or an experienced attorney - must be neutral and independent and must comply with the selected arbitration service's code of ethics.  Additionally, the arbitrator will be guided by the Federal Rules of Evidence and "governing substantive" law.* The arbitrator's award is final and binding on all parties.  The parties may move to confirm or vacate the award in a court of competent jurisdiction in accordance with the provisions of the FAA.  The parties will bear their own attorneys' fees unless such fees are expressly provided for by applicable law.  If the arbitrator determines that reasonable attorneys' fees are to be awarded under applicable law, the parties agree that the arbitrator will also determine the amount of reasonable attorneys' fees to be awarded.  In the event a party fails to proceed with arbitration, fails to comply with the arbitrator's award or unsuccessfully challenges the arbitrator's award, the other party is entitled to any costs and expenses incurred, including a reasonable attorneys' fee for having to compel arbitration or defend or enforce the award.

*What is Binding Arbitration?  Binding Arbitration is an alternative dispute resolution process where both parties give up certain legal rights to bring a claim in court.  Binding Arbitration means: (1) that both parties give up their right to a trial in court before a judge or jury; (2) that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of appealable issues expressly provided for in the FAA, 9 U.S.C. § 16; and (3) that discovery may be severely limited by the arbitrator, and if the arbitrator allows full discovery, the arbitrator may not exceed the discovery limitations provided by the Federal Rules of Civil Procedure.  I UNDERSTAND THAT I MAY OPT-OUT OF THE TERMS OF THE "ARBITRATION OF DISPUTE" PROVISION BY PROVIDING GLOBAL NOTICE IN WRITING WITHIN THIRTY (30) DAYS OF SIGNING THE AGREEMENT.  I understand that the notice must be sent to Global's Customer Support using certified mail or sent by electronic mail to the addresses provided in this Agreement.  If I do not timely opt-out, I agree to the terms of the "ARBITRATION OF DISPUTE" provision.*

*I acknowledge that I have read, understood, and agree to abide by the terms of the arbitration provision set forth above, and fully understand that arbitration replaces the right of either party to go to court and replaces the right to have a judge or jury hear of decide either party's dispute or claims.*



SIGNATURE:



Initial:

**XVIII.    PRIVACY POLICY:** Global may collect personal information that you provide: (1) in the application portion of this Agreement; (2) in any updated information you may provide from time to time; and (3) as part of the transactions processed through your Account. A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding this Agreement's Privacy Policy, please contact Global's Customer Support.

    a.   **Collection / Use of Personal Information:** Collection of your personal information is designed to protect access to your Account and to assist in providing you with the products and services you have requested. All personal information collected and stored by Global, or on its behalf, is used for specific business purposes: (1) to protect and administer your Account and initiate your authorized transactions; (2) to assist in the design or improvement of products and services; (3) to identify additional products or services offered by Global and/or its affiliated companies that may meet your needs; and (4) to comply with state and federal banking regulations. Only approved and authorized personnel will have access to such information. To further protect your information, auditing mechanisms are in place to identify anyone who may have accessed and in any way modified your personal information.

    b.   **Maintenance of Accurate Information:** You may update your personal information online, at any time, by using your Password to log into Global's website or by contacting Global's Customer Support. To ensure that Global is able to protect your Account and verify your information, it is in your best interests to maintain accurate and current any records concerning your personal information.

    c.   **Limited Access to Personal Information:** Access to your personal information is limited to only those personnel with a business reason for accessing such information. In addition, all personnel are trained and educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personal information.

    d.   **Third-Party Disclosure Restrictions:** All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disclosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

    e.   **Sharing of Information:** You authorize Global to share certain information with your debt settlement provider and any third party to the extent necessary to administer your Account in accordance with your instructions and authorization. *You expressly acknowledge that Global does not maintain records of any documents or information associated with your debt settlement program.*

**XIX.    USA Patriot Act Compliance:** As required by the USA Patriot Act, you authorize Global to take reasonable and practical measures to verify the accuracy of the information you have provided in the application portion of this Agreement, as well as to verify your identity by, including and without limitation, securing or accessing your credit report, and/or obtaining any other information about you in order to assist in combating terrorism and preventing Global's system and the banking system from being used for money laundering or other impermissible, illegal purposes.

**XX.    Limitation of Liability:** Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary, or punitive damages, or an amount in excess of the fees and charges Global receives from you as set forth in this Agreement. Moreover, under no circumstances shall Global ever be liable for the conduct or contractual obligations of a third party, including, but not limited to, the debt settlement provider.

**XXI.    English Language Governs:** The terms of this Agreement and the products and services we provide are governed by the English language. As a courtesy, Global has made this Agreement available in languages other than English. If there is any difference in meaning between the English and non-English version of any of our documents, including this Agreement, the English version will apply to your Account and is available to you upon request.

**XXII.    Merger Clause:** This Agreement contains the complete and final understanding between the parties. Any prior oral statements, representations, or agreements are superseded by this Agreement.

**XXIII.    Customer Support Information:**

**Correspondence Address:**  4343 S. 118th E. Avenue, Suite 220
                             Tulsa, OK 74146
**Telephone:**    (800) 398-7191
**Fax:**    (866) 355-8228
**Website Address:** www.globalclientsolutions.com
**Email:** customersupport@globalclientsolutions.com

Note: Global will provide you with a welcome packet subsequent to the execution of this Agreement that will contain deposit instructions applicable to those customers who choose to send in deposits.

Initials

## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

I hereby apply for and agree to establish a non-interest bearing dedicated account ("Account") to be administered at a bank selected by Global Client Solutions LLC ("Global") for the purpose of accumulating funds to repay my debts in connection with a debt settlement program of my own choosing (my "Program") that is managed by the organization responsible for administering the Program ("Sponsor"). **I understand that Global is not a party to my Program and does not participate in the management of my Program.** I understand that this Agreement is subject to a customer identification program, as required by the USA Patriot Act and other applicable laws, and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of a driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account. **Furthermore, I understand that the Account is governed by the terms of this Agreement and that I am bound by all of its terms and conditions, including the binding arbitration provision located in paragraph XVII on page 2 of this Agreement in which I expressly give up my right to bring an action in a court before a judge or jury.**

**ACCOUNT OWNERSHIP, CONTROL AND USE:** I understand that the Account, when established in accordance with this Agreement, will be my sole and exclusive property; that only I (or authorized contact, if any) may authorize deposits to and creditor payments from my Account; and that only I may withdraw funds from and/or close my Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to my Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Account. In this regard, I hereby authorize payment from my Account of the fees and charges provided for in this Agreement. Should I designate an authorized contact, such designation allows for confirmation of Account information and for receipt of messages regarding my Account to the designee. **PERMISSION TO SHARE DATA:** I hereby grant permission for the bank, Global and the Sponsor to share information regarding my Account and my Program with one another and with any other party to the extent necessary to facilitate the transactions I authorize on my Account, and acknowledge that sharing information among these parties is essential to the administration of my Account. I understand that the Agreement provides additional information relating to my privacy rights.

| Applicant: First Name (Please print clearly) | MI | Last Name | | Social Security # | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|---|
| M | C | | | | 1954 |

| Authorized Contact (optional): First Name | MI | Last Name | | Social Security # | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|---|
| P | G | | | | 1957 |

| Mailing Address | City | State | Zip Code |
|---|---|---|---|
| | | NC | 28390 |

| Physical Address (if different from mailing address) | City | State | Zip Code |
|---|---|---|---|
| | | NC | 28390 |

| Home Phone No. | Cell Phone No. | Email Address |
|---|---|---|
| | | |

Challenge Question / Answer (for future ID purposes)

| Sponsor | Sponsor's Global Account Number (if known) |
|---|---|
| | |

| Applicant's Signature | Date |
|---|---|
| | 6-26-2020 |

### AUTHORIZATION TO DEBIT BANK ACCOUNT
Applicant's Financial Institution Information

| Bank Name | Routing Number[1] | Account Number[2] |
|---|---|---|
| Wells Fargo | | |

| Bank Address | City | State | Zip Code |
|---|---|---|---|
| P.O. Box 6995 | Portland | OR | 97228-699 |

| Name (as it appears on check) |
|---|
| M C |

| Address (as it appears on check) | City | State | Zip Code |
|---|---|---|---|
| | | NC | 28390 |

[1] Routing Number is the 9-digit number appearing in the bottom left corner of your check.
[2] Account Number is to the right of the Routing Number and before the Check Number.

| Amount of Debit | Day of Debit | |
|---|---|---|
| $ $876.67 | On or after the | 5 | day of each month until further notice. |

I hereby authorize Global to initiate debit entries to my checking account (or ☐ savings account) at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, for the purpose of transferring funds to my Account. I represent that my Primary Bank Account exists; that I own it; and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I may incur a charge as set forth in the Schedule of Fees and Charges if any attempted debit is not immediately honored when presented; and that the financial institution providing my Primary Bank Account may also assess a charge if this occurs. In addition, I understand that I may subsequently designate another account for this purpose by contacting Global's Customer Support; that I may also change the corresponding amounts and dates from time to time in that manner; and that the representations I made above about my Primary Bank Account will apply to any other account that I designate.

This authorization shall remain in full force and effect until I give a written termination notice to Global that affords it a reasonable period of time to act on it. Any such notice, and any other written notice that is provided for in this Agreement, shall be sent to Global's Customer Support at the addresses set forth in the Agreement.

| Applicant's Signature Authorizing Global to Debit Applicant's Primary Bank Account | Date |
|---|---|
| | 6-26-2020 |

### SCHEDULE OF FEES AND CHARGES

| | |
|---|---|
| Monthly Service Charge | $10.95 |
| **Premium Deposit Services** | |
| Incoming Wire Transfer | $10.00 |

**Disbursement Fees**

| | |
|---|---|
| ACH Payment | $2.00 |
| Global Direct Pay Fee | $2.00 |
| Outgoing Wire Transfer | $15.00 |
| Manual Check Payment | $4.00 |
| 2nd Day Delivery | $12.00 |
| Overnight Delivery | $20.00 |
| Phone Pay Fee | $1.50 |
| Stop Pay | $17.50 |

*3:00 pm Central Time Cutoff

### CUSTOMER SUPPORT

Any questions or inquiries relating to your Account should be directed to Global's Customer Support. See paragraph XXIII of this Agreement for Global's correspondence address, Global's website address, and the toll-free number to Global's Customer Support. Please note that Global is not a party to your Program, and any questions relating to your Program should be addressed to your Sponsor, and not to Global.

Version 19 – GCS – B – S – 05.10.17

All fields required unless otherwise noted



----- Forwarded Message -----
**From:** Daniel Harada <dharada@financesolutions.org>
**To:** ████████@bellsouth.net <████████@bellsouth.net>
**Sent:** Monday, June 29, 2020 at 12:38:44 PM EDT
**Subject:** Autopay Revocation Form and Creditor Correspondence Number- F███ & M██ G███

Good afternoon F████

As promised, attached you can find the Autopay Revocation form provided by the firm just in case you have any difficulties turning off any type of autodrafts previously set up with creditors. Typically clients can just go online and simply uncheck the box or click cancel autopay.

If you do not have an online website to take off autopays or the option does not exist, then you can either email (template attached) or call directly (using the autopay revocation form as a script).

**Contact Information:**

Best egg : support@bestegg.com

Loan_Assistance@mybestegg.com

If you want to do things the old-fashioned way, you can also fill in your information on the autopay revocation form, print it out, and mail it to the creditors on autopay. I do not suggest this method since things do get lost in the mail and can take 5-7 business days to process.

Additionally, as we discussed, creditors may be inclined to contact you directly during the initial stage of enrollment as they are manually setting up their system. Please update your contact information with the creditor correspondence hotline set up by google. (929) 244-3677.

When you get a chance, simply log into the accounts online and update your contact information with the above. (Note: This number is specifically set up for your creditors. If you ever need to contact me, you have my direct contact information below in my signature!)

Please let me know if you need my assistance.

Have a nice day!

Best regards,

Daniel

**Daniel Harada**
Senior Financial Consultant
**Office:** (646) 859-2904
**Email:** dharada@financesolutions.org



*Hello,*

*With regard to my payments made by automatic withdrawal, I am requesting to exercise my right to stop payment of automatic withdrawals and revoke my prior authorization to do so.*

*Account#: (put account number here)*

*(First and Last Name)*

*Thank you,*

**Daniel Harada**
Financial Consultant
**Office:** (646) 859-2904
**Email:** dharada@financesolutions.org

**From:** Daniel Harada <dharada@financesolutions.org>
**Sent:** Tuesday, October 29, 2019 11:34 AM
**To:** Daniel Harada
**Subject:** NAME and ACCOUNT # -- Automatic Withdrawal

Hello,

With regard to my payments made by automatic withdrawal, I am requesting to exercise my right to stop payment of automatic withdrawals and revoke my prior authorization to do so.

Account#: (put account number here)

(First and Last Name)

Thank you,


**Daniel Harada**
Financial Consultant
**Office:** (646) 859-2904
**Email:** dharada@financesolutions.org

[Your Name]

[Your Address]

[DATE]

[Company Name]

[Company Address]

RE:     Revocation of authorization for debits

To Whom It May Concern:

In accordance with the Fair Debt Collection Practices Act, this is to inform you of my desire for you to please stop taking automatic payments from my bank account for payments to my account with your company.

My account number with your company is [xxx-xxxx]. I am writing to inform you that I am revoking authorization for you to debit my account via electronic funds transfer. Failure to comply with this request will result in a formal complaint filed against your company with the Consumer Financial Protection Agency.

This revocation applies to any and all future debits.

Sincerely,

[Your Name]

_____          _____

Signature                                    Date



| 09/25/2020 | Cleared | Admin Fee - 09/25/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
|---|---|---|---|---|---|
| 09/20/2020 | Cleared | Monthly Draft - 09/20/20 | Deposit | $438.34 | ACH Monthly Draft |
| 09/14/2020 | Cleared | Retainer Fee - 09/14/20 | Customer Fee | $75.00 | Retainer Fee |
| 09/14/2020 | Cleared | Service Fee - 09/14/20 | Customer Fee | $233.32 | Customer Fee - split |
| 09/14/2020 | Cleared | Admin Fee - 09/14/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 09/05/2020 | Cleared | Monthly Draft - 09/05/20 | Deposit | $438.34 | ACH Monthly Draft |
| 08/31/2020 | Cleared | Monthly Service Charge - 08/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 08/26/2020 | Cleared | Retainer Fee - 08/26/20 | Customer Fee | $50.00 | Retainer Fee |
| 08/26/2020 | Cleared | Service Fee - 08/26/20 | Customer Fee | $233.32 | Customer Fee - split |
| 08/26/2020 | Cleared | Admin Fee - 08/26/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 08/20/2020 | Cleared | Monthly Draft - 08/20/20 | Deposit | $438.34 | ACH Monthly Draft |
| 08/11/2020 | Cleared | Retainer Fee - 08/11/20 | Customer Fee | $75.00 | Retainer Fee |
| 08/11/2020 | Cleared | Service Fee - 08/11/20 | Customer Fee | $233.32 | Customer Fee - split |
| 08/11/2020 | Cleared | Admin Fee - 08/11/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 08/05/2020 | Cleared | Monthly Draft - 08/05/20 | Deposit | $438.34 | ACH Monthly Draft |
| 07/31/2020 | Cleared | Monthly Service Charge - 07/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 07/24/2020 | Cleared | Retainer Fee - 07/24/20 | Customer Fee | $75.00 | Retainer Fee |
| 07/24/2020 | Cleared | Service Fee - 07/24/20 | Customer Fee | $233.32 | Customer Fee - split |
| 07/24/2020 | Cleared | Admin Fee - 07/24/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 07/20/2020 | Cleared | Monthly Draft - 07/20/20 | Deposit | $438.34 | ACH Monthly Draft |
| 07/10/2020 | Cleared | Retainer Fee - 07/10/20 | Customer Fee | $75.00 | Retainer Fee |
| 07/10/2020 | Cleared | Service Fee - 07/10/20 | Customer Fee | $233.32 | Customer Fee - split |
| 07/10/2020 | Cleared | Admin Fee - 07/10/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 06/30/2020 | Cleared | Monthly Service Charge - 06/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 07/05/2020 | Cleared | Monthly Draft - 07/05/20 | Deposit | $438.34 | ACH Monthly Draft |
| 06/29/2020 | Cleared | Withdrawal | Withdrawal | $0.05 | ACH |



Log Out(/CarolinaLegal/Account/LogOff)    Change Password(/CarolinaLegal/Account/ChangePassword)

| | | 01/22/21 | | | |
|---|---|---|---|---|---|
| 01/22/2021 | Cleared | Retainer Fee- -7903562 - 01/22/21 | Customer Fee | $50.00 | Retainer Fee |
| 01/22/2021 | Cleared | Service Fee- -7903562 - 01/22/21 | Customer Fee | $233.32 | Customer Fee - split |
| 01/20/2021 | Cleared | Monthly Draft - 01/20/21 | Deposit | $438.34 | ACH Monthly Draft |
| 01/08/2021 | Cleared | Admin Fee 3- -7903562 - 01/08/21 | Customer Fee | $44.50 | Service Fee 17% |
| 01/08/2021 | Cleared | Retainer Fee- -7903562 - 01/08/21 | Customer Fee | $50.00 | Retainer Fee |
| 01/08/2021 | Cleared | Service Fee- -7903562 - 01/08/21 | Customer Fee | $233.32 | Customer Fee - split |
| 01/05/2021 | Cleared | Monthly Draft - 01/05/21 | Deposit | $438.34 | ACH Monthly Draft |
| 12/31/2020 | Cleared | Monthly Service Charge - 12/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 11/11/2020 | Cleared | Retainer Fee - 11/11/20 | Customer Fee | $50.00 | Retainer Fee |
| 11/11/2020 | Cleared | Service Fee - 11/11/20 | Customer Fee | $233.32 | Customer Fee - split |
| 11/11/2020 | Cleared | Admin Fee - 11/11/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 11/05/2020 | Cleared | Monthly Draft - 11/05/20 | Deposit | $438.34 | ACH Monthly Draft |
| 10/31/2020 | Cleared | Monthly Service Charge - 10/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 10/26/2020 | Cleared | Retainer Fee - 10/26/20 | Customer Fee | $50.00 | Retainer Fee |
| 10/26/2020 | Cleared | Service Fee - 10/26/20 | Customer Fee | $233.32 | Customer Fee - split |
| 10/26/2020 | Cleared | Admin Fee - 10/26/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 10/20/2020 | Cleared | Monthly Draft - 10/20/20 | Deposit | $438.34 | ACH Monthly Draft |
| 10/09/2020 | Cleared | Retainer Fee - 10/09/20 | Customer Fee | $50.00 | Retainer Fee |
| 10/09/2020 | Cleared | Service Fee - 10/09/20 | Customer Fee | $233.32 | Customer Fee - split |
| 10/09/2020 | Cleared | Admin Fee - 10/09/20 | Customer Fee | $44.50 | Admin Fee ($55) Mo 1-9 |
| 10/05/2020 | Cleared | Monthly Draft - 10/05/20 | Deposit | $438.34 | ACH Monthly Draft |
| 09/30/2020 | Cleared | Monthly Service Charge - 09/20 | Transaction Fee | $10.95 | Monthly Service Charge |
| 09/25/2020 | Cleared | Retainer Fee - 09/25/20 | Customer Fee | $50.00 | Retainer Fee |


CAROLINA
LEGAL SERVICES

Log Out(/CarolinaLegal/Account/LogOff)    Change Password(/CarolinaLegal/Account/ChangePassword)

| 11/20/2020 | Pending | Monthly Draft - 11/20/20 | Deposit | $438.34 | ACH Monthly Draft |

100 ▼ items per page                                    1 - 82 of 82 items

**Carolina Legal Services**

Address: 401 Suite B West Center St. Lexington, NC 27292
Phone: 1-855-250-8343
Fax: 1-855-250-6072
Email: CS@CarolinaLegalServices.com


CAROLINA
LEGAL SERVICES

Log Out(/CarolinaLegal/Account/LogOff)    Change Password(/CarolinaLegal/Account/ChangePassword)

| | | 04/07/21 | | | |
|---|---|---|---|---|---|
| 04/07/2021 | Cleared | Service Fee- -7903562 - 04/07/21 | Customer Fee | $233.32 | Customer Fee - split |
| 04/05/2021 | Cleared | Monthly Draft - 04/05/21 | Deposit | $438.34 | ACH Monthly Draft |
| 03/31/2021 | Cleared | Monthly Service Charge - 03/21 | Transaction Fee | $10.95 | Monthly Service Charge |
| 03/24/2021 | Cleared | Admin Fee 3- -7903562 - 03/24/21 | Customer Fee | $44.50 | Service Fee 17% |
| 03/24/2021 | Cleared | Service Fee- -7903562 - 03/24/21 | Customer Fee | $233.32 | Customer Fee - split |
| 03/20/2021 | Cleared | Monthly Draft - 03/20/21 | Deposit | $438.34 | ACH Monthly Draft |
| 03/09/2021 | Cleared | Admin Fee 3- -7903562 - 03/09/21 | Customer Fee | $44.50 | Service Fee 17% |
| 03/09/2021 | Cleared | Retainer Fee- -7903562 - 03/09/21 | Customer Fee | $50.00 | Retainer Fee |
| 03/09/2021 | Cleared | Service Fee- -7903562 - 03/09/21 | Customer Fee | $233.32 | Customer Fee - split |
| 03/05/2021 | Cleared | Monthly Draft - 03/05/21 | Deposit | $438.34 | ACH Monthly Draft |
| 02/28/2021 | Cleared | Monthly Service Charge - 02/21 | Transaction Fee | $10.95 | Monthly Service Charge |
| 02/24/2021 | Cleared | Admin Fee 3- -7903562 - 02/24/21 | Customer Fee | $44.50 | Service Fee 17% |
| 02/24/2021 | Cleared | Retainer Fee- -7903562 - 02/24/21 | Customer Fee | $50.00 | Retainer Fee |
| 02/24/2021 | Cleared | Service Fee- -7903562 - 02/24/21 | Customer Fee | $233.32 | Customer Fee - split |
| 02/20/2021 | Cleared | Monthly Draft - 02/20/21 | Deposit | $438.34 | ACH Monthly Draft |
| 02/09/2021 | Cleared | Admin Fee 3- -7903562 - 02/09/21 | Customer Fee | $44.50 | Service Fee 17% |
| 02/09/2021 | Cleared | Retainer Fee- -7903562 - 02/09/21 | Customer Fee | $50.00 | Retainer Fee |
| 02/09/2021 | Cleared | Service Fee- -7903562 - 02/09/21 | Customer Fee | $233.32 | Customer Fee - split |
| 02/05/2021 | Cleared | Monthly Draft - 02/05/21 | Deposit | $438.34 | ACH Monthly Draft |
| 01/31/2021 | Cleared | Monthly Service Charge - 01/21 | Transaction Fee | $10.95 | Monthly Service Charge |



# Ledger List

| Date | Status | Memo | Classification | Amount | Transaction Type |
|------|--------|------|----------------|--------|------------------|
| 05/05/2021 | Cleared | Monthly Draft - 05/05/21 | Deposit | $438.34 | ACH Monthly Draft |
| 04/30/2021 | Cleared | Monthly Service Charge - 04/21 | Transaction Fee | $10.95 | Monthly Service Charge |
| 04/22/2021 | Cleared | Service Fee- -7903562 - 04/22/21 | Customer Fee | $233.32 | Service Fee |
| 04/22/2021 | Cleared | Admin Fee 3- -7903562 - 04/22/21 | Customer Fee | $44.50 | Admin Fee ($89) Mo 10-22 |
| 04/20/2021 | Cleared | Monthly Draft - 04/20/21 | Deposit | $438.34 | ACH Monthly Draft |
| 04/19/2021 | Cleared | Manual Check Payment | Transaction Fee | $4.00 | Manual Check Payment |
| 04/19/2021 | Cleared | Credit Control LLC | Payment | $544.53 | Manual Check |
| 04/07/2021 | Cleared | Admin Fee 3- -7903562 - 04/07/21 | Customer Fee | $44.50 | Service Fee 17% |