# DECLARATION OF JOANNA COHEN
# PURSUANT TO 28 U.S.C. § 1746

I, Joanna Cohen, hereby state that I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify as follows:

1. I am a United States citizen over 18 years of age. I am an employee of the Consumer Financial Protection Bureau ("Bureau"). I have been an employee of the Bureau since June 20, 2021. Since June 2023, I have been a Financial and Program Analyst. My current duties include conducting financial and data analysis for the Bureau. I have a degree in Physics from Columbia University.

2. I was assigned to work on the Bureau's investigation of Strategic Financial Solutions, LLC that led to the lawsuit against:

Defendants

- Strategic Family, Inc.,
- StratFS, LLC (f/k/a Strategic Financial Solutions, LLC),
- Strategic Client Support, LLC (f/k/a Pioneer Client Services, LLC),
- Strategic CS, LLC,
- Strategic FS Buffalo, LLC,
- Strategic NYC, LLC,
- BCF Capital, LLC,
- T Fin, LLC,
- Strategic Consulting, LLC (f/k/a Consult America, LLC),
- Versara Lending, LLC (f/k/a Fusion Processing, LLC),

- Anchor Client Services, LLC (now known as CS 1 PaaS Services, LLC),

- Bedrock Client Services, LLC (f/k/a HCS, LLC),

- Boulder Client Services, LLC,

- Canyon Client Services, LLC,

- Carolina Client Services, LLC,

- Great Lakes Client Services, LLC,

- Guidestone Client Services, LLC,

- Harbor Client Services, LLC,

- Heartland Client Services, LLC,

- Monarch Client Services, LLC (now known as CS 2 PaaS Services, LLC),

- Newport Client Services, LLC,

- Northstar Client Services, LLC,

- Option 1 Client Services, LLC,

- Pioneer Client Servicing, LLC,

- Rockwell Client Services, LLC,

- Royal Client Services, LLC,

- Stonepoint Client Services, LLC,

- Summit Client Services, LLC (now known as CS 3 PaaS Services, LLC),

- Whitestone Client Services, LLC,

- Ryan Sasson, and

- Jason Blust (collectively, "Defendants"), and

<u>Relief Defendants</u>

- Daniel Blumkin,
- Albert Ian Behar,
- Strategic ESOP,
- Strategic ESOT,
- Twist Financial, LLC,
- Duke Enterprises, LLC,
- Blaise Investments, LLC,
- The Blust Family Irrevocable Trust Through Donald J. Holmgren, Trustee,
- Jaclyn Blust,
- Lit Def Strategies, LLC, and
- Relialit, LLC (collectively, "Relief Defendants").

3. Collectively, Strategic Family, Inc., StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC (f/k/a Pioneer Client Services, LLC), Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC, T Fin, LLC, Strategic Consulting, LLC (f/k/a Consult America, LLC), and Versara Lending, LLC (f/k/a Fusion Processing, LLC) are herein referred to as "SFS."

4. I understand from Bureau counsel that RAM Payment, LLC and related entity Account Management Systems, LLC (f/k/a Reliant Account Management, LLC) (collectively "RAM") is a payment processor that distributes consumer funds to pay service provider fees and creditor settlement payments for SFS's debt-relief program. I have reviewed the written reports

that RAM produced in response to the Bureau's Civil Investigative Demands (CIDs) dated July 25, 2019 and November 13, 2019, as well as the March 23, 2021 letter request (collectively, "RAM Data").

5. The RAM Data covers the time period January 1, 2016 to March 15, 2021 ("RAM Time Frame").

6. The RAM Data contains information on Bedrock Legal Group, Harbor Legal Group, Monarch Legal Group, Rockwell Legal Group, and Whitestone Legal Group (collectively, "RAM Façade Firms"). I understand from Bureau counsel that the RAM Façade Firms played a role in SFS's debt-relief program.

7. The RAM Data also has information on SFS's client services subsidiaries, including Bedrock Client Services, LLC, Harbor Client Services, LLC, Monarch Client Services, LLC, Rockwell Client Services, LLC, and Whitestone Client Services, LLC (collectively "SFS's RAM Client Services Subsidiaries"). I associated entries in the RAM Data for "Bedrock Client Support" with Bedrock Client Services, LLC.

8. The RAM Data includes data produced in response to the Bureau's March 23, 2021 letter request. The first request in the letter asks for consumer-level transactional data for a series of debt-relief service providers, including the RAM Façade Firms.

**Total Fees Paid to Defendants**

9. Bureau counsel asked me to identify in the RAM Data the total amount of fees received by Defendants from consumers who first enrolled in Defendants' debt-relief program during the RAM Time Frame.

10. In the RAM Data, I identified consumers associated with one of the RAM Façade Firms by examining the 'company_name' field. The data dictionary for the RAM Data defined 'company_name' as "RAM Name for the company (DBA)".

11. I removed any consumers whose enrollment date or first transaction took place outside the RAM Time Frame using the fields 'enroll_date' and 'first_activity_date'. The data dictionary defined the field 'enroll_date' as the "[d]ate and time . . . account was created for the client". The data dictionary defined the field 'first_activity_date' as the "[d]ate and time . . . of first activity on account." So, for example, if the 'enroll_date' or 'first_activity_date' were prior to January 1, 2016, I removed that consumer. Following these exclusions, the RAM Data contained information for 34,760 consumers enrolled in Defendants' debt-relief program via the RAM Façade Firms.

12. Having determined which consumers were enrolled in Defendants' debt-relief program, I needed to determine which transactions were fees. In order to determine if a given transaction was a fee, I used the 'payment_to_company' field. The data dictionary defines 'payment_to_company' as a "Y/N indicator of a fee paid to the company listed in the company name or one of its affiliates/contractors/subcontractors . . . ".

13. I excluded fees paid to RAM itself, which I identified as rows with 'RAM BOFI', 'RAM LLC' or 'RAM Payment LLC' in the field 'name'. The data dictionary defines the field 'name' as the "recipient name for the transaction (where it was paid or drafted)". I also excluded fees where the field 'return_refund' was marked as 'True', because the data dictionary defines the 'return_refund' field as a "Y/N indicator whether transaction was a refund/return to the borrower".

14. Following these exclusions, I summed up the remaining fees and calculated that consumers associated with the RAM Façade Firms paid $228,563,433.82 in fees ("Total SFS Fees").

15. Just because the consumer was associated with a RAM Façade Firm in the 'company_name' field, however, it does not mean that the RAM Façade Firm received the fees paid by that consumer.

16. In order to determine the recipient of each fee, I used the 'payment_to_company' and 'name' fields. If an entry is marked 'True' in the field 'payment_to_company', I made the assumption that the entity identified in the 'name' field received the fee.

17. The RAM Façade Firms only received 14% of the Total SFS Fees via direct transfer from RAM, totaling $32,034,773.10.

18. SFS's RAM Client Services Subsidiaries received 82% of the Total SFS Fees via direct transfer from RAM, totaling $188,059,411.50. In some instances, the name of the SFS RAM Client Services Subsidiary receiving fees did not match the name of the RAM Façade Firm associated with the consumer. For example, Harbor Client Services received over $2,000,000 in Total SFS Fees from consumers associated with Rockwell Legal Group.

19. Unidentifiable entities (e.g., "Operating", "Operations", "Reserve 22") received 4% of Total SFS Fees via direct transfer from RAM, totaling $8,287,726.73.

20. Versara Lending, LLC received a small percentage of Total SFS fees via direct transfer from RAM, totaling $181,522.49.

**Advance Fees Paid Before Any Settlement Payment**

21. Bureau counsel also asked me to identify in the RAM Data the amount of fees distributed to Defendants prior to a consumer making any settlement payment. To do this, I built on the steps used above to identify the Total SFS Fees. I then took steps to identify settlement payments by consumers.

22. I identified rows as settlement payments when the field 'settlement_payment' was marked as "True" and the field 'return_refund' was marked as "False." The field 'settlement_payment' is defined in the data dictionary as a "Y/N indicator whether transaction was a settlement payment".

23. I identified all consumers associated with a RAM Façade Firm who did not make a settlement payment during the RAM Time Frame. I summed all fees paid by these consumers, totaling $22,118,261.93.

24. For consumers associated with a RAM Façade Firm who made at least one settlement payment during the RAM Time Frame, I summed all fees where the payment date of the fee was prior to the payment date of the first settlement payment, based on the field 'payment_date'. The data dictionary defines 'payment_date' as "[d]ate and time . . . of the transaction". The total of fees paid prior to the first settlement payment was $90,472,647.27.

25. Based solely on the RAM Data, the sum of fees paid by consumers associated with a RAM Façade Firm prior to their first settlement payments was $112,590,909.20 ("Advance Fees").

26. As with Total SFS Fees, just because the consumer was associated with a RAM Façade Firm in the 'company_name' field does not mean that the RAM Façade Firm received

the fees paid by that consumer. As with Total SFS Fees, I used the 'payment_to_company' and 'name' fields to determine the recipient of each fee. If an entry is marked 'True' in the field 'payment_to_company,' I made the assumption that the entity identified in the 'name' field received the fee.

27. The RAM Façade Firm associated with the consumer only received 19% of the Advance Fees via direct transfer from RAM, totaling $21,552,149.66.

28. SFS's RAM Client Services Subsidiaries received 75% of the Advance Fees via direct transfer from RAM, totaling $84,956,678.18. In some instances, the name of the SFS RAM Client Services Subsidiary receiving fees did not match the name of the RAM Façade Firm associated with the consumer. For example, Harbor Client Services received $1,789,807.54 in Advance Fees from consumers associated with Rockwell Legal Group.

29. Unidentifiable entities (e.g., "Operating," "Operations," "Reserve 22") received 5% of Advance Fees via direct transfer from RAM, totaling $6,076,851.36.

30. Versara Lending, LLC received a small percentage of the Advance Fees via direct transfer from RAM, totaling $5,230.00.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 3, 2024 in Washington DC

JOANNA COHEN
Digitally signed by JOANNA COHEN
Date: 2024.01.03 21:27:42 -05'00'

Joanna Cohen