# DECLARATION OF WENDY L. PHIFER

As provided by 28 U.S.C. § 1746, I, Wendy L. Phifer, hereby declare as follows:

1. My name is Wendy L. Phifer. I am a United States citizen and over eighteen years of age. I reside in the State of Wisconsin.

2. I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would competently testify to them.

3. I am employed as a Paralegal by the Wisconsin Department of Justice.

4. On October 18, 2022, the Wisconsin Department of Financial Institutions ("WDFI") issued a subpoena to Global Client Solutions, LLC ("GCS"). A true and correct copy of the subpoena is attached hereto as **Exhibit 1**.

5. Between November 30, 2022, and December 20, 2023, GCS produced responsive correspondence and accompanying documents bates stamped as Global_WI_000001 through Global_WI_008490.

6. On January 4, 2023, true and accurate copies of the above-referenced correspondence and documents produced by GCS to WDFI in response to WDFI's subpoena were sent to the Consumer Financial Protection Bureau on an encrypted thumb drive via Federal Express Standard Overnight Delivery. A copy of the Federal Express package label is attached hereto as **Exhibit 2**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 2, 2024.

Wendy L Phifer

WENDY L. PHIFER

**State of Wisconsin**

*Department of Financial Institutions*

Tony Evers, **Governor** Cheryll Olson-Collins, **Secretary-designee**

October18, 2022

**VIA USPS**

**GLOBAL CLIENT SOLUTIONS, LLC**
c/o Global Holdings, LLC
Legal Department
4343 S. 118th Avenue, Suite 220
Tulsa, OK 74146

**RE: SERVICE OF SUBPOENA**
Matter: In re Strategic Financial Solutions, LLC

To the representative of GLOBAL:

On behalf of the Administrator for the State of Wisconsin, Department of Financial Institutions, Division of Banking, enclosed for service upon you, pursuant to applicable law including Wis. Stat. § 220.04(3), Wis. Stat. § 218.02(9)(c), and Wis. Admin. Code § DFI-Bkg 11.05, please find a subpoena for the production of information and documents. or appearance at deposition. in the above-referenced matter.

You can contact me with any questions at the address below, by phone at 608-220-3281, or by email at michael.gavigan@dfi.wisconsin.gov. Thank you in advance for your cooperation.

Sincerely,

Michael Gavigan

Michael Gavigan
Assistant Chief Legal Counsel

Enclosure



**Phifer Declaration Exhibit 1**

STATE OF WISCONSIN
DEPARTMENT OF FINANCIAL INSTITUTIONS
DIVISION OF BANKING
MADISON WI 53707-7857

| | |
|---|---|
| **In the Matter of:**<br><br>**STRATEGIC FINANCIAL SOLUTIONS, LLC** | **SUBPOENA TO APPEAR OR PRODUCE RECORDS** |

TO: **GLOBAL CLIENT SOLUTIONS, LLC**
c/o Global Holdings, LLC
Legal Department
4343 S. 118th Avenue, Suite 220
Tulsa, OK 74146

YOU ARE HEREBY REQUIRED to appear before Assistant Attorney General Lewis W. Beilin at the Wisconsin Department of Justice, 17 West Main Street in Madison, Wisconsin 53703 at 9:00 a.m. on November 7, 2022, to give evidence in the matter of the investigation of Strategic Financial Solutions, LLC.

**IN LIEU OF APPEARING AT THE DATE AND TIME IDENTIFIED ABOVE,** if you produce the documents and information identified in the **ADDENDUM** attached hereto, the State shall consider your obligations under this subpoena to have been fulfilled (see following pages).

Given under my hand this 18th day of October, 2022.

Michael Gavigan
Michael Gavigan
Assistant Chief Legal Counsel
Department of Financial Institutions
State Bar ID #1123206

## ADDENDUM

## DEFINITIONS

1. "**Global**" means Global Client Solutions and, as appropriate in context, its present and former owners, members, officers, directors, representatives, employees, agents, subsidiaries, affiliates, successors, and assigns.

2. "**Strategic**" means Strategic Financial Solutions, LLC, and as appropriate in context, its present and former owners (members), officers, directors, representatives, employees, and agents.

3. "**Sponsor Organization**" means Cornerstone Law, LLC, Great Lakes Law Firm, LLC, and/or any other debt settlement provider that contracted to provide services to Wisconsin consumers Mary Kaprelian, David Azarian, Michael Gruetzmacher, and/or Michael Gang.

4. "**Debt-Related Services**" means the provision, directly or indirectly, to debtors of debt-settlement, debt abatement, debt consolidation, and/or debt adjustment services, and/or the provision of accounting, IT, payment processing, paralegal, secretarial, and marketing services in support of others who provide debt-settlement, debt abatement, debt consolidation and/or debt adjustment services to debtors.

5. "**Wisconsin Resident Debtor**" means an individual to whom Debt-Related Services, as defined, have been provided, and who resided in Wisconsin at the time the individual entered into an agreement with Global and/or with the Sponsor Organization(s), or anyone acting on its behalf or in affiliation with it, for the provision of debt-related services.

6. As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context, and when the request is reasonably susceptible to more than one interpretation, it must be given the more expansive interpretation.

7. "Any" means any and all.

8. "Showing" and "reflecting" a given subject shall mean any document or communication that constitutes, evidences, contains, embodies, comprises, respects, relates to, concerns, touches upon, is incident to, identifies, states, refers to, deals with, comments on, responds to,

describes, involves or is in any way pertinent to that subject including but not limited to documents concerning the presentation of other documents.

9. "Person" shall mean an individual, partnership, corporation, association, or any other group however organized.

10. "Identify" means to give a reasonable, detailed description thereof. When referring to a person, it includes providing a present or last known address, telephone number, and, if previously or presently employed by you, it includes providing his or her title or position, any certification or specialized training held by the person, the address at which he or she was employed, the date he or she was hired and the date he or she was terminated, if applicable.

11. "Records" shall mean all written, printed, typed, electronic, recorded or graphic matter, photographic matter, sound reproductions, computer files, tapes, inputs or outputs, however, produced or reproduced or in any other matter from which information may be obtained, and drafts, non identical copies, file folders and jackets in which the documents are contained. Non identical copies refer to reproductions of the original document which have notations, markings, comments, or other material not appearing in the original.

## INSTRUCTIONS

1. Unless otherwise stated, the scope of this Subpoena relates to all actions or omissions of action relating to Wisconsin since January 1, 2017.

2. You must provide all responsive documents that you own, possess or have custody of, plus all other responsive documents that you can obtain from any person or public or private entity reasonably available to you.

3. All documents that are maintained in electronic format, must be produced in native format. You are directed either to produce the raw data along with codes and programs necessary for translating it into usable form by the Wisconsin Department of Justice, or to produce the information in a finished usable form listed below (in order of preference):

   a. Exported TIFF and Index files as produced by another third party software (i.e., Summation, Concordance, etc.) TIFF files should be searchable if at all possible.

b. Microsoft Office products. I.E., Microsoft Word files (.doc; .docx), Microsoft Excel files (.xls; xlsx), Microsoft PowerPoint files (.ppt; pptx), Microsoft Access database files (.mdb; mdbx). Microsoft Outlook files should be exported as .pst files.
c. Adobe Reader files (.pdf); searchable PDF is preferred.
d. Text files (.txt), Tagged Image Format files (.tiff)
e. Preferably such files will be no larger than 10MB each. Additionally, database and spreadsheet files may be submitted after conversion to ASCII delimited, comma-separated format, with field names as the first record. The supported data format for graphic images is TIFF in a compressed and unencrypted file.

4. If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

   a. the name of each author, sender, creator, and initiator of such document;
   b. the name of each recipient, addressee, or party for whom such document was intended;
   c. the date the document was created;
   d. the date(s) the document was in use;
   e. a detailed description of the content of the document;
   f. the reason it is no longer in your possession or control; and
   g. the documents' present whereabouts.

   If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

5. The documents produced shall be Bates-stamped and segregated to correspond with the number and subsection of the applicable request, and all responses shall clearly designate the Bates numbers of the documents responsive to each request, or sub-part of such request.

6. Identical copies of responsive documents **need** **not** be produced. However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, shall be produced.

7. If any responsive document is withheld under any claim of privilege, provide the following information for each document that you have withheld:

   a. the name of the author, writer, sender, creator , or initiator of such document;
   b. the name of each recipient, addressee, or party for whom such document was intended;
   c. the date of such document, or an estimate thereof if no date appears on the document;
   d. the general subject matter of the document; and
   e. the claimed grounds for withholding the document, including – but not limited to – the nature of any claimed privilege and grounds in support thereof.

8. All documents shall be provided along with a sworn affidavit of the person(s) responsible for compiling the response. A sample of the required affidavit is attached to this civil investigative demand.

**INFORMATION AND RECORDS DEMANDED**

1. Identify all current and former owners, officers, directors, and managers of Global, including: (i) the name, title, addresses and phone numbers of each; (ii) the inclusive dates of their ownership, affiliation or employment with Global; and (iii) a description of their responsibilities.

2. Describe Global's affiliation with Strategic and the Sponsor Organization(s), and what services Global provides to Strategic and the Sponsor Organization(s) in relation to Wisconsin Resident Debtors.

3. Produce a copy of the contract(s) and/or agreement(s) between Global and Strategic, and between Global and the Sponsor Organization(s), that includes or relates to services provided in connection with Wisconsin Resident Debtors.

4. Describe the services provided by Global to Wisconsin Resident Debtors pursuant to any contract(s) and/or agreement(s) with Strategic and with the Sponsor Organization(s), and how those services are provided.

5. Produce a sample copy of each form of the Dedicated Account Agreement and Application, and any addenda thereto, used in connection with the accounts of Wisconsin Resident Debtors. The term "Dedicated Account Agreement and Application" refers to any document in substantially the

same form as Exhibit A to this request, including any prior and subsequent versions of the document that Global used.

6. Produce an Excel spreadsheet that contains the following information for every Wisconsin Resident Debtor who has or had an account, whether active or inactive, with Global pursuant to a contract for Debt-Related Services with Strategic or the Sponsor Organization(s):

   a. The Wisconsin Resident Debtor's full name;
   b. The Wisconsin Resident Debtor's address, including street name and number, city, state, and zip code;
   c. The Wisconsin Resident Debtor's telephone number;
   d. The Wisconsin Resident Debtor's e-mail address;
   e. The date on which an account was established on behalf of The Wisconsin Resident Debtor;
   f. Name of the bank at which the account was established;
   g. Whether the Wisconsin Resident Debtor's account is active or inactive;
   h. If the account is active, the amount of the current reserve balance;
   i. If the account is closed, the date the account was closed.

7. For each Wisconsin Resident Debtor identified in your response to Request No. 6, provide an account ledger that shows the following information:

   a. Each and every debit by Global from the Wisconsin Resident Debtor's primary bank account, including the date, amount, and purpose of each such debit;
   b. All disbursements by Global from the Wisconsin Resident Debtor's account to the Sponsor Organization, including the date, amount, and purpose of each such disbursement;
   c. All disbursements by Global from the Wisconsin Resident Debtor's account to Strategic, including the date, amount, and purpose of each such disbursement;
   d. All disbursements by Global from the Wisconsin Resident Debtor's account to the Wisconsin Resident Debtor's creditors, including the date, amount, identity of payee, and purpose of each such disbursement;
   e. All disbursements by Global from the Wisconsin Resident Debtor's account to Global for Global's fees, including the date, amount, and purpose of each such disbursement;
   f. All disbursements by Global from the Wisconsin Resident Debtor's account to the bank at which the account is

established, including the date, amount, and purpose of each such disbursement;

g. All disbursements by Global from the Wisconsin Resident Debtor's account to any other person or entity, including the date, amount, identity of payee, and purpose of each such disbursement; and

h. All amounts refunded or disbursed to the Wisconsin Resident Debtor including the date, amount, and purpose of each such disbursement.

8. To the extent any glossary, key code, or other information is needed to interpret the disbursements and debits documented in your response to Request No. 7, provide such glossary, key code, or other information.

9. To the extent not already produced in response to Request No. 3, produce any and all contracts, agreements, fee-splitting arrangements, memoranda of understanding, authorizations, and/or requests that determined the amount of and whether and when Global made any of the disbursements identified in your response to Request No. 7.

10. Produce all communications between Global and the Sponsor Organization(s) relating to the establishment and ongoing provision of services by Global for the Sponsor Organization(s) and its/their customers, but excluding any communications that identify specific Wisconsin Resident Debtors.

11. Produce all communications between Global and Strategic relating to the establishment and ongoing provision of services related to Wisconsin Resident Debtors by Global for Strategic and its customers, but excluding any communications that identify specific Wisconsin Resident Debtors.

12. Identify all employees, agents, and contractors of Global who have entered Wisconsin to transact business with, or provide services to, any Wisconsin Resident Debtor.

# AFFIDAVIT

STATE OF ______________

COUNTY OF_____________

I, _________________________ (Print Name), a resident of ____________ (Print County) County, State of _________________(Print State) personally appearing before the Notary Public identified below, states upon oath and affirmation of belief and personal knowledge that:

1. The enclosed records have been produced in response to a subpoena dated _________ from Michael Gavigan, Assistant Chief Legal Counsel for the State of Wisconsin, Department of Financial Institutions.
2. The enclosed records are records of regularly conducted business activities of __________________[name of company]; and
3. The enclosed records were created at or near the time of the transactions recorded therein and thereafter maintained in the electronic records systems of __________________ [name of company].

____________________________________
SIGNATURE OF AFFIANT

Sworn and subscribed before me
this ___ day of __________, 2022.

_______________________________________
NOTARY PUBLIC, State of ______
My Commission Expires:______________

EXHIBIT A

GLOBAL
Client Solutions

## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

I. This Dedicated Account Agreement and Application ("Agreement") contains the terms, conditions, and disclosures that apply to your dedicated account ("Account"). By signing this Agreement or using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms and conditions set forth herein, including the requirement to arbitrate any dispute with Global Client Solutions, LLC ("Global") according to the terms of the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. You are directed to read the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement carefully, as you are giving up your right to bring a lawsuit before a judge or jury in a court of law. If you have any questions that you do not believe are addressed in this Agreement, you can and should call, email, or write Global at the number or addresses shown at the end of this Agreement. Please review this Agreement carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you" and "your" mean you and any other party who you authorize to use your Account.

II. **Purpose, Nature and Use of the Account:** Your Account is a dedicated account that you can use in connection with the debt settlement program you have undertaken. Global is not a party to your debt settlement program and does not participate in the negotiation of your debts. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is a Federal Deposit Insurance Corporation ("FDIC") insured sub-account within a master custodial account maintained at a bank designated or selected by Global. The bank is not a party to your debt settlement program and does not participate in the negotiation of your debts, and is an intended third-party beneficiary of this Agreement, including the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. Additionally, you authorize Global to transfer your Account to another FDIC insured institution under the existing terms. Global will provide written notice to you of such change. Any such notice, and any other written notice that is provided for in this Agreement, will be sent to you at either the physical address you have provided in the application portion of this Agreement and/or the email address you establish with Global. If an email address is not provided to Global, all notices will be sent to you at the physical address you provided in the application portion of this Agreement. Your Account may not be used for any illegal purpose.

III. **Passcodes / Passwords:** You will be provided with a four-digit passcode (your "Passcode") that will enable you to access your Account via the telephone and to identify yourself when contacting a customer support representative. You will also be provided with an initial Internet password (your "Password") that will enable you to access your Account via the Internet. You may change your Password at any time for security purposes and you are encouraged to do so from time to time. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account.

IV. **Telephonic / Electronic Communications:** You authorize Global to accept and act upon any instruction received from you or authorized by you under this Agreement concerning your Account, where you have communicated that instruction or authorization by telephone, facsimile, email or other electronic means using a telephone keypad or computer. Use of your Passcode, Password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signatures in Global and National Commerce Act and other applicable laws.

V. **Authorizing and Initiating Transactions:** In this Agreement you authorize certain transactions involving your Account. Unless you direct otherwise in writing, Global may also act on those instructions that you conveyed to your Sponsor, as defined in the application portion of this Agreement, and such instructions may be acted on without further confirmation. From time to time, you may change those instructions and/or give other instructions to initiate deposits to or disbursements from your Account by contacting Global's Customer Support. In any event, you must always provide a reasonable period of time to act on your instructions. All deposits to your Account will be authorized and initiated pursuant to your instructions, and all disbursements from your Account will be authorized and initiated pursuant to your instructions provided your Account contains sufficient funds to cover the amount of the disbursement. However, neither Global, nor any service provider to Global shall be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Global's sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of such instructions. Global shall not be responsible for any late payment fee, penalty or other charge levied by any of your creditors, for any failure of any of your creditors to accept a proposal for settlement or honor a settlement; or for any other adverse action taken by your creditor or any other party. Global shall not be liable for any consequences or damages you may claim resulting from Global acting on your instructions.

VI. **Fees and Charges:** The "SCHEDULE OF FEES AND CHARGES" identifies the fees and charges you are obligated to pay Global in connection with this Agreement and your Account; and you agree that these fees and charges may be deducted directly from your Account. The fees and charges in the "SCHEDULE OF FEES AND CHARGES" are the only fees associated with Global's services and your Account. The Monthly Service Charge for the first month in which your Account is established will not be prorated and will be deemed earned in full as of the day the Account is established, e.g., if your Account is established on the 15th day of a month, the Monthly Service Charge for such month shall be earned as of that day. Thereafter, the Monthly Service Charge will be deemed earned in full on the first day of each calendar month during which your Account remains open. Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee. You expressly acknowledge that Global may increase the fees and charges associated with your Account at any time, and that you will be provided with written notice at least thirty (30) days' prior to such increase. Global shall not be responsible for any other fees and/or charges that you may incur arising from or related to your debt settlement program.

VII. **Termination of Agreement / Account Closure:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global's Customer Support. The written notice must provide Global with the following information:

1. Your full name and current address;
2. Your Account number;
3. The date of the request; and
4. Your request to close your Account.

Please provide Global with sufficient time to process the request. In addition, Global may suspend, cancel or terminate this Agreement and your Account at any time without notice for inactivity, or if your Program has been terminated or is no longer being managed, if your Account is improperly maintained, or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.

VIII. **Monthly Statements:** You will receive your first monthly statement by mail showing your Account activity and balance by mail. Thereafter, monthly statements will be available online, and may be accessed using your login information and Password. Should you desire to continue receiving a paper statement via the United States Postal Service, please contact Global's Customer Support and make a request to receive mailed paper statements. You may obtain balance and transaction information by using your Passcode to access your Account over the telephone, by using your Password to log into Global's website, or by calling Global's Customer Support. You agree to review each of your statements carefully and to report any erroneous, improper, or unauthorized transactions promptly.

IX. **Non-Interest Account:** Your Account is a non-interest bearing Account.

X. **Unauthorized Transactions and Customer Responsibility:** You should never share your Passcode or Password(s) with anyone and should keep your Account information and papers in a secure place. If you believe someone has transferred or may transfer money from your Account without your permission, contact Global's Customer Support immediately.



[redacted]

**XI. FDIC Insurance:** The funds in your Account will be FDIC insured up to a maximum of $250,000.00. The insured amount may increase or decrease and is subject to limits set and reset by the FDIC from time to time.

**XII. Incomplete Transactions:** Neither Global nor any service provider to Global shall be liable for failing to complete a transaction due to insufficient funds in your Account; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any bank, or the directive of any regulatory authority.

**XIII. Error Resolution Procedures:** In the event of potential errors or questions concerning specific transactions involving your Account, you must call or write Global's Customer Support no later than sixty (60) days after the transaction in question appears on your monthly statement. Furthermore, at the very minimum you must provide Global with the following information:

1. Your full name and Account number;
2. The date and amount of the transaction;
3. The type of transaction and a description of the suspected error (please explain as clearly as possible why you believe there is an error or why you need additional information); and
4. The dollar amount of the suspected error.

If you provide the information over the phone, you may be asked and required to provide it again in writing within ten (10) business days. Global will inform you of the results of the investigation of the suspected error within ten (10) business days after you submit the information and any error will be promptly corrected. However, if Global requires more time to investigate the suspected error, it may take up to an additional thirty (30) days to complete the investigation. If Global determines that there is no error, you will be provided with a written explanation within three (3) business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

**XIV. Creditor Disputes:** ***You understand and agree that Global is not a party to your debt settlement program, and does not participate in the negotiation of your debts. This Agreement is separate and independent of any contractual obligations you may have with your creditors or debt settlement provider. Accordingly, you hereby expressly acknowledge that Global does not have any involvement in or responsibilities of any kind or nature with respect to your contractual agreement with your creditors or your debt settlement provider, your debt settlement program or the results that you may or may not achieve from your participation in a debt settlement program. Furthermore, you hereby expressly acknowledge that any representation, statement, or obligation made by your debt settlement provider or made in connection with your debt settlement program is not made on Global's behalf, and does not and cannot bind Global. Finally, you expressly acknowledge that Global shall not be liable for any actions taken by, or conduct of, your debt settlement provider in connection with your debt settlement program. You hereby agree to indemnify Global, and hold Global, its parent and subsidiaries, directors, officers, shareholders, and employees harmless from any damages (including attorneys' fees) resulting from the breach of any of the above warranties.***

**XV. Garnishment Acknowledgement:** In the event that a creditor of yours moves to garnish funds in your Account, *you expressly acknowledge that Global will answer the garnishment and comply with any writ issued by the Court in accordance with the applicable state law. Furthermore, you expressly acknowledge that Global will not be responsible for challenging or raising a defense to the garnishment on your behalf.* You specifically agree to indemnify and hold Global harmless from any loss, liability, obligation, damage, cost and expense resulting from a creditor's attempt to garnish and/or hold Global liable for any judgment against you.

**XVI. Governing Law:** This Agreement shall be governed by the laws of the state where you reside, except that the state's rules or statutes governing arbitration procedures shall not apply. If any part of this Agreement is declared void or unenforceable, such provision(s) shall be deemed severed from this Agreement, and the remainder of this Agreement shall remain in full force and effect. This Agreement may be modified to the extent necessary to give such force and effect to the remaining provisions. No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder, shall be

**XVII. ARBITRATION OF DISPUTE – IMPORTANT NOTICE WAIVING YOUR RIGHT TO BRING A CLAIM BEFORE A JUDGE OR JURY IN COURT:** In the event of any controversy between the parties, including, but not limited, to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the determination of the validity, scope or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration. This arbitration provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and not by any state rule or statute governing arbitration. Arbitration under this provision will be conducted in either the county in which the consumer resides or the closest metropolitan county. **THE PARTIES AGREE THAT ARBITRATION WILL BE BEFORE A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS OR MASS ACTION. FURTHERMORE, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS.** The Arbitration will be administered by: The Judicial Arbitration Mediation Services ("JAMS"), 1920 Main Street, Suite 300, Irvine, CA 92614 (www.jamsadr.com); or the American Arbitration Association ("AAA"), 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org); or another nationally known consumer arbitration service on which the parties will agree to use. The Arbitration will be administered according to the arbitration service's fee schedule and the service's current applicable rules and procedures *except: 1) that the parties expressly waive the applicability of any rule governing class or mass action; 2) that the parties agree to have an in-person final hearing; and 3) that the parties agree that any specific arbitration procedure provided for herein will apply to the arbitration proceeding. The arbitrator – who must be either a retired judge or an experienced attorney - must be neutral and independent and must comply with the selected arbitration service's code of ethics. Additionally, the arbitrator will be guided by the Federal Rules of Evidence and "governing substantive" law.* The arbitrator's award is final and binding on all parties. The parties may move to confirm or vacate the award in a court of competent jurisdiction in accordance with the provisions of the FAA. The parties will bear their own attorneys' fees unless such fees are expressly provided for by applicable law. If the arbitrator determines that reasonable attorneys' fees are to be awarded under applicable law, the parties agree that the arbitrator will also determine the amount of reasonable attorneys' fees to be awarded. In the event a party fails to proceed with arbitration, fails to comply with the arbitrator's award or unsuccessfully challenges the arbitrator's award, the other party is entitled to any costs and expenses incurred, including a reasonable attorneys' fee for having to compel arbitration or defend or enforce the award.

***What is Binding Arbitration? Binding Arbitration is an alternative dispute resolution process where both parties give up certain legal rights to bring a claim in court. Binding Arbitration means: (1) that both parties give up their right to a trial in court before a judge or jury; (2) that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of appealable issues expressly provided for in the FAA, 9 U.S.C. § 16; and (3) that discovery may be severely limited by the arbitrator, and if the arbitrator allows full discovery, the arbitrator may not exceed the discovery limitations provided by the Federal Rules of Civil Procedure. I UNDERSTAND THAT I MAY OPT-OUT OF THE TERMS OF THE "ARBITRATION OF DISPUTE" PROVISION BY PROVIDING GLOBAL NOTICE IN WRITING WITHIN THIRTY (30) DAYS OF SIGNING THE AGREEMENT. I understand that the notice must be sent to Global's Customer Support using certified mail or sent by electronic mail to the addresses provided in this Agreement. If I do not timely opt-out, I agree to the terms of the "ARBITRATION OF DISPUTE" provision.***

***I acknowledge that I have read, understood, and agree to abide by the terms of the arbitration provision set forth above, and fully understand that arbitration replaces the right of either party to go to court and replaces the right to have a judge or jury hear or decide either party's dispute or claims.***

SIGNATURE: [redacted]



[redacted]

construed as a waiver of such performance, right, or remedy, as the case may be.

XVIII. **PRIVACY POLICY:** Global may collect personal information that you provide: (1) in the application portion of this Agreement; (2) in any updated information you may provide from time to time; and (3) as part of the transactions processed through your Account. A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding this Agreement's Privacy Policy, please contact Global's Customer Support.

a. **Collection / Use of Personal Information:** Collection of your personal information is designed to protect access to your Account and to assist in providing you with the products and services you have requested. All personal information collected and stored by Global, or on its behalf, is used for specific business purposes: (1) to protect and administer your Account and initiate your authorized transactions; (2) to assist in the design or improvement of products and services; (3) to identify additional products or services offered by Global and/or its affiliated companies that may meet your needs; and (4) to comply with state and federal banking regulations. Only approved and authorized personnel will have access to such information. To further protect your information, auditing mechanisms are in place to identify anyone who may have accessed and in any way modified your personal information.

b. **Maintenance of Accurate Information:** You may update your personal information online, at any time, by using your Password to log into Global's website or by contacting Global's Customer Support. To ensure that Global is able to protect your Account and verify your information, it is in your best interests to maintain accurate and current any records concerning your personal information.

c. **Limited Access to Personal Information:** Access to your personal information is limited to only those personnel with a business reason for accessing such information. In addition, all personnel are trained and educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personal information.

d. **Third-Party Disclosure Restrictions:** All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disclosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

e. **Sharing of Information:** You authorize Global to share certain information with your debt settlement provider and any third party to the extent necessary to administer your Account in accordance with your instructions and authorization. ***You expressly acknowledge that Global does not maintain records of any documents or information associated with your debt settlement program.***

XIX. **USA Patriot Act Compliance:** As required by the USA Patriot Act, you authorize Global to take reasonable and practical measures to verify the accuracy of the information you have provided in the application portion of this Agreement, as well as to verify your identity by, including and without limitation, securing or accessing your credit report, and/or obtaining any other information about you in order to assist in combating terrorism and preventing Global's system and the banking system from being used for money laundering or other impermissible, illegal purposes.

XX. **Limitation of Liability:** Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary, or punitive damages, or an amount in excess of the fees and charges Global receives from you as set forth in this Agreement. Moreover, under no circumstances shall Global ever be liable for the conduct or contractual obligations of a third party, including, but not limited to, the debt settlement provider.

XXI. **English Language Governs:** The terms of this Agreement and the products and services we provide are governed by the English language. As a courtesy, Global has made this Agreement available in languages other than English. If there is any difference in meaning between the English and non-English version of any of our documents, including this Agreement, the English version will apply to your Account and is available to you upon request.

XXII. **Merger Clause:** This Agreement contains the complete and final understanding between the parties. Any prior oral statements, representations, or agreements are superseded by this Agreement.

XXIII. **Customer Support Information:**

**Correspondence Address:** 4343 S. 118th E. Avenue, Suite 220<br>Tulsa, OK 74146

**Telephone:** (800) 398-7191

**Fax:** (866) 355-8228

**Website Address:** www.globalclientsolutions.com

**Email:** customersupport@globalclientsolutions.com

Note: Global will provide you with a welcome packet subsequent to the execution of this Agreement that will contain deposit instructions applicable to those customers who choose to send in deposits.

 [redacted]

## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

I hereby apply for and agree to establish a non-interest bearing dedicated account ("Account") to be administered at a bank selected by Global Client Solutions LLC ("Global") for the purpose of accumulating funds to repay my debts in connection with a debt settlement program of my own choosing (my "Program") that is managed by the organization responsible for administering the Program ("Sponsor"). **I understand that Global is not a party to my Program and does not participate in the management of my Program.** I understand that this Agreement is subject to a customer identification program, as required by the USA Patriot Act and other applicable laws; and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of a driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account. **Furthermore, I understand that the Account is governed by the terms of this Agreement and that I am bound by all of its terms and conditions, including the binding arbitration provision located in paragraph XVII on page 2 of this Agreement in which I expressly give up my right to bring an action in a court before a judge or jury.**

**ACCOUNT OWNERSHIP, CONTROL AND USE:** I understand that the Account, when established in accordance with this Agreement, will be my sole and exclusive property; that only I (or authorized contact, if any) may authorize deposits to and creditor payments from my Account; and that only I may withdraw funds from and/or close my Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to my Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Account. In this regard, I hereby authorize payment from my Account of the fees and charges provided for in this Agreement. Should I designate an authorized contact, such designation allows for confirmation of Account information and for receipt of messages regarding my Account to the designee. **PERMISSION TO SHARE DATA:** I hereby grant permission for the bank, Global and the Sponsor to share information regarding my Account and my Program with one another and with any other party to the extent necessary to facilitate the transactions I authorize on my Account, and acknowledge that sharing information among these parties is essential to the administration of my Account. I understand that the Agreement provides additional information relating to my privacy rights.

| Applicant: First Name (Please print clearly) | MI | Last Name | Social Security # | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| **Authorized Contact (optional): First Name** | **MI** | **Last Name** | **Social Security #** | **Date of Birth (mm/dd/yyyy)** |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

| Mailing Address | City | State | Zip Code |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| **Physical Address (if different from mailing address)** | **City** | **State** | **Zip Code** |
| [redacted] | [redacted] | [redacted] | [redacted] |

| Home Phone No. | Cell Phone No. | Email Address |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

Challenge Question / Answer (for future ID purposes): [redacted]

| Sponsor | Sponsor's Global Account Number (if known) |
|---|---|
| [redacted] | [redacted] |

Applicant's Signature [redacted] Date [redacted]

### AUTHORIZATION TO DEBIT BANK ACCOUNT
### Applicant's Financial Institution Information

| Bank Name | Routing Number[1] | Account Number[2] | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | |
| **Bank Address** | **City** | **State** | **Zip Code** |
| [redacted] | [redacted] | [redacted] | [redacted] |
| **Name (as it appears on check)** | | | |
| [redacted] | | | |
| **Address (as it appears on check)** | **City** | **State** | **Zip Code** |
| [redacted] | [redacted] | [redacted] | [redacted] |

*[1] Routing Number is the 9-digit number appearing in the bottom left corner of your check.*
*[2] Account Number is to the right of the Routing Number and before the Check Number.*

Amount of Debit: $[redacted] On or after the Day of Debit: [redacted] day of each month until further notice.

I hereby authorize Global to initiate debit entries to my checking account (or ☐ savings account) at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, for the purpose of transferring funds to my Account. I represent that my Primary Bank Account exists; that I own it; and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I may incur a charge as set forth in the Schedule of Fees and Charges if any attempted debit is not immediately honored when presented; and that the financial institution providing my Primary Bank Account may also assess a charge if this occurs. In addition, I understand that I may subsequently designate another account for this purpose by contacting Global's Customer Support; that I may also change the corresponding amounts and dates from time to time in that manner; and that the representations I made above about my Primary Bank Account will apply to any other account that I designate.

This authorization shall remain in full force and effect until I give a written termination notice to Global that affords it a reasonable period of time to act on it. Any such notice, and any other written notice that is provided for in this Agreement, shall be sent to Global's Customer Support at the addresses set forth in the Agreement.

Applicant's Signature Authorizing Global to Debit Applicant's Primary Bank Account Date

[redacted] [redacted]

#### SCHEDULE OF FEES AND CHARGES

| | |
|---|---|
| Account Setup (one-time fee) | $0.00 |
| Monthly Service Charge | $10.95 |
| Dishonored/Returned Deposit Item | $0.00 |
| **Premium Deposit Services** | |
| Incoming Wire Transfer | $10.00 |
| **Disbursement Fees** | |
| ACH | $2.00 |
| DirectPay | $2.00 |
| Manual Check (USPS) | $4.00 |
| Pay by Phone | $1.50 |
| 2nd Day Delivery* | $12.00 |
| Overnight Delivery* | $20.00 |
| Wire Transfer | $15.00 |
| Stop payment order | $17.50 |

*3:00 pm Central Time Cutoff

#### CUSTOMER SUPPORT

Any questions or inquiries relating to your Account should be directed to Global's Customer Support. See paragraph XXIII of this Agreement for Global's correspondence address, Global's website address, and the toll-free number to Global's Customer Support. Please note that Global is not a party to your Program, and any questions relating to your Program should be addressed to your Sponsor, and not to Global.

Version 19 – GCS – B – S – 05.10.17

All fields required unless otherwise noted

ORIGIN ID:MSNA (608) 267-2162
LEWIS BEILIN
17 WEST MAIN STREET
DEPARTMENT OF JUSTICE
MADISON, WI 53703
UNITED STATES US

SHIP DATE: 04JAN23
ACTWGT: 0.50 LB
CAD: 255296752/INET4530

BILL SENDER

TO **CHERYL GOODWIN, DEPUTY CUSTODIAN**
**CFPB ENFORCEMENT EDISCOVERY**
**1700 G. STREET, NW**

**WASHINGTON DC 20553**
(608) 267-2162 REF:
INV:
PO: DEPT:

581J1/DB09/FE2D

FedEx Express

J224222101801uv

TRK# 0201 **7709 4365 9078**

**THU - 05 JAN 4:30P**
**STANDARD OVERNIGHT**

**XE WASA**

**20553**
DC-US **IAD**

---

**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.