UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., <br><br> Plaintiff, <br><br> v. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. <br><br> Defendants, and <br><br> DANIEL BLUMKIN, et al., <br><br> Relief Defendants. | Case No. 24-CV-40-LJV |

## THIRD-PARTY LAW FIRMS' MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure Rule 24(a) and (b), Anchor Law Firm, PLLC ("Anchor"), Law Offices of Amber Florio, PLLC ("Bedrock"), Boulder Legal Group, LLC ("Boulder"), Brandon Ellis Law Firm LLC, Clear Creek Legal, LLC, Credit Advocates Law Firm, JMS Industries, LLC ("Canyon"), Great Lakes Law Firm, LLC ("Great Lakes"), Leigh Legal Group, PLLC ("Greenstone"), The Brian A. Moore Law Firm LLC ("Guidestone"), Hailstone Legal Group, LLC ("Hailstone"), Hallock & Associates LLC ("Hallock"), Harbor Legal Group, LLC ("Harbor"), Henry Legal Group, LLP ("Heartland"), The Law Firm of Derek Williams, LLC ("Infinite"), Michel Law, LLC ("Level One") Moore Legal Group, LLC ("Meadowbrook"), Burnette Legal Group, LLC ("Monarch"), Greene Legal Group, LLC ("Newport"), Northstar Legal Group, LLC ("Northstar"), Gardner Legal, LLC ("Option 1"), Gustafson

1

Consumer Law Group, LLC, Pioneer Law Firm, P.C., Hodyno & Associates, PLLC ("Rockwell"), Royal Legal Group, LLC ("Royal"), Chinn Legal Group, LLC ("Slate"), The Law Office of Melissa Michel LLC ("Spring"), Donald Norris & Associates, PLLC ("Stonepoint"), The Sands Law Group, LLP ("Whitestone"), and WyoLaw, LLC ("Wyolaw" and collectively, the "Interested Law Firms") seek to intervene in this matter as of right or, in the alternative, by permission. In support of their motion, the Interested Law Firms state as follows:

### Introduction

The Consumer Financial Protection Bureau ("CFPB") is engaged in a back-door effort to unfairly put at least eighteen consumer advocacy law firms (*i.e.*, the Interested Law Firms) out of business, without actually suing the law firms. That is because the CFPB knows that it would not have a leg to stand on when it comes to the Interested Law Firms. What's more, the CFPB would not have received the sweeping temporary injunctive relief in the *Ex Parte* Temporary Restraining Order (TRO) [Dkt. 12] if it had sued the law firms, because such draconian relief would leave countless consumers unprotected and unrepresented -- consumers who have benefitted from the advocacy of the law firms.

As an end-run around that result, the CFPB simply sued the Interested Law Firms' administrative services providers and obtained temporary injunctive relief that wholly sidelines those administrative services providers. The firms' support staff have been locked out and sent home, frozen out of their systems, emails, phone lines, and other operational functions. Thus, the overall effect on the Interested Law Firms and their clients is no less devastating.

Indeed, the Interested Law Firms' ability to ensure adequate service and representation to what is collectively *thousands* of Interested Law Firm clients is severely hampered by tying the hands of the servicing entities. A few examples make the point:

- The Support Entities handle routine mail, email, and telephone communications for the Interested Law Firms. Those communications include things such as inquiries from clients about payment schedules, routine communications with creditors, and receipt and upload of collection notices and legal documents. The law firms are not situated to turn on a dime and begin handling those communications without warning. Thus, the Interested Law Firms would effectively go "dark" to both clients and creditors in the event of a shutdown.

- Interested Law Firm clients are instructed to scan and send all summonses and complaints in litigation matters by their creditors to the Support Entities. The Support Entities are charged with timely upload and delivery of such materials to the Interested Law Firms. If that function is not being filled, Interested Law Firm clients run the risk of having default judgments entered against them.

- The Support Entities also handle receipt of client approvals of settlement and the subsequent provision of payment instructions to the firms' respective payment processors. Cessation of such functions could result in thousands of clients defaulting on settlement plans reached by the Interested Law Firms with the clients' creditors. The firms collectively have approximately 129,000 active payment plans for about 75,000 different clients.

- Another roughly 4,900 settlements have been reached with clients' creditors, but not yet finalized (meaning, payment instructions set up and the first payment under those settlements not yet made or scheduled). Under those settlements, $29 million in debt will be compromised for $16 million (paid over time in term settlements). Thus, a failure to finalize the settlements could result in a $13 million loss to consumers.

Moreover, the Interested Law Firms have a professional duty to protect the confidential information of its clients. By allowing a receiver to take over the Support Entities, that confidential information is at a risk of being turned over to the

Plaintiffs or others. The Interested Law Firms have to be allowed to protect and safeguard those confidential materials, and to ensure that its clients are properly and adequately represented. Accordingly, the Interested Law Firms should be allowed to intervene in this matter as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, by permission under Rule 24(b)(2).

## Factual Background

### The Law Firms

The Interested Law Firms are consumer advocacy law firms that represent clients in various states across the country with significant debt who are looking for ways to reduce their debt burdens. The Interested Law Firms work with their respective clients and their creditors in an effort to restructure or compromise those debts, and they defend clients in collection actions in court. Over the past three years, the law firms have settled $1.9 billion in debt, resulting in nearly $1 billion in savings for their clients. This includes the following:

- 2021: law firm clients saved $273.1 million on 102,000 settlements.
- 2022: law firm clients saved $285.2 million on 108,000 settlements.
- 2023: law firm clients saved $358.9 million on 132,000 settlements.

As an example, Monarch, as of December 26, 2023, had served 6,980 clients with debt in the form of 52,527 credit cards for a total of $278 million in debt. Monarch has settled 28,136 claims resulting in, at least, $13 million of savings for the client (net of fees).

4

The owners[1] of the Interested Law Firms are attorneys who provide legal services to the firms' clients. Before an individual becomes a client with the firm, they speak to an attorney, who reviews their file and information. In addition, attorneys at the Interested Law Firms conduct frequent reviews of the files, analyze settlements, and handle litigation defense.

The vast majority of the Interested Law Firms are in various stages of wind-up. Indeed, the only Interested Law Firms that are currently taking on new clients are Great Lakes and Northstar. The remainder of the Interested Law Firms continue to serve their existing clients but are not accepting new clients. That continued service includes efforts to negotiate remaining debts, defense of pending litigation, and the administration of payment plans reached pursuant to settlement with the clients' creditors. As of the filing of this motion, the current client information for each firm is as follows:

| Firm | Year Formed | Accepting Clients? | Year Enrollment Stopped | No. Active Clients | No. Clients In Active Term Settlements | No. Debts in Active Term Settlements |
|---|---|---|---|---|---|---|
| Anchor | Feb. 2016 | N | Oct. 2018 | 329 | 1744 | 2458 |
| Bedrock | Feb. 2017 | N | Feb. 2018 | 194 | 1630 | 2535 |
| Boulder | Feb. 2016 | N | Oct. 2017 | 118 | 1460 | 2004 |
| Canyon | Mar. 2018 | N | Apr. 2020 | 1,504 | 2299 | 3663 |
| Great Lakes | Sep. 2018 | Y | n/a | 1,247 | 763 | 1274 |

---

[1] Depending on the business structure, the owners of the Interested Law Firms may be members (LLCs or PLLCs), shareholders (professional corporations), or partners (LLP).

| | | | | | | |
|---|---|---|---|---|---|---|
| Guidestone | Apr. 2021 | N | Dec. 2023 | 2,120 | 1294 | 2694 |
| Harbor | Mar. 2015 | N | Mar. 2017 | 1 | 733 | 997 |
| Heartland | Sep. 2019 | N | Dec. 2020 | 5,379 | 6222 | 8889 |
| Monarch | Jul. 2019 | N | Dec. 2021 | 2,771 | 3172 | 5564 |
| Newport | Oct. 2020 | N | Apr. 2022 | 5,377 | 6168 | 10703 |
| Northstar | Nov. 2019 | Y | n/a | 1,657 | 943 | 1770 |
| Option 1 | Mar. 2019 | N | Jan. 2020 | 1,561 | 2183 | 2907 |
| Pioneer | Apr. 2013 | N | Feb. 2017 | 0 | 1689 | 2110 |
| Rockwell | Oct. 2017 | N | Dec. 2018 | 700 | 3106 | 4712 |
| Royal | Mar. 2017 | N | May 2022 | 734 | 1283 | 2112 |
| Stonepoint | Nov. 2017 | N | Oct. 2021 | 1,197 | 1539 | 2331 |
| Summit | Aug. 2018 | N | Feb. 2020 | 1,325 | 2178 | 2804 |
| Whitestone | Jan. 2019 | N | Nov. 2020 | 1,598 | 2298 | 3697 |
| **TOTAL** | | | | | | |

### The Support Entities Provide Services to the Interested Law Firms and Their Clients

Each of the Interested Law Firms has contracted with certain Support Entities to provide certain non-legal and administrative support functions to facilitate its representation of clients. The Interested Law Firms cannot do this on their own. While the Interested Law Firms have attorneys and some employees to handle the legal services, they simply do not have the necessary in-house staff to handle the volume of administrative requests and tasks for the number of clients. Those Support Entities perform non-legal support services, such as addressing non-legal customer service issues, answering clients' non-legal questions, handling client's requests to

6

modify or change their payments to their dedicated account, basic interfacing with clients' creditors,[2] answering clients' non-legal questions, gathering documents from clients, maintaining client files, receipt and upload of legal process, and handling similar administrative tasks. The Support Entities that support the Interested Law Firms ("Support Entities") are:

| Firm | Original Support Entity |
|---|---|
| Anchor | Anchor Client Services, LLC |
| Bedrock | Bedrock Client Services, LLC |
| Boulder | Boulder Client Services, LLC |
| Canyon | Canyon Client Services, LLC |
| Carolina | Carolina Client Services, LLC |
| Great Lakes | Great Lakes Client Services, LLC |
| Guidestone | Guidestone Client Services, LLC |
| Harbor | Harbor Client Services, LLC |
| Heartland | Heartland Client Services, LLC |
| Monarch | Monarch Client Services, LLC |
| Newport | Newport Client Services, LLC |
| Northstar | Northstar Client Services, LLC |
| Option 1 | Option 1 Client Services, LLC |
| Pioneer | Pioneer Client Servicing, LLC |
| Rockwell | Rockwell Client Services, LLC |
| Royal | Royal Client Services, LLC |
| Stonepoint | Stonepoint Client Services, LLC |
| Summit | Summit Client Services, LLC |
| Whitestone | Whitestone Client Services, LLC |

One of the key tasks that the Support Entities handle is the receipt of communications and documents from the Interested Law Firm's clients. For example, when a client receives a communication from a creditor, settlement demands from creditors, or a summons/lawsuit filed by one of his creditors, the initial step typically

---

[2] The Support Entities' employees do not negotiate debts. All non-lawyer negotiators are employees of the respective law firm.

7

entails the client forwarding those documents to the support entity, so that it can be uploaded to the client's file for the Interested Law Firm's use.

Another major task handled by the Support Entities is processing settlements on behalf of the clients of the Interested Law Firms' clients. As indicated above, there are 129,000 active settlements that must be monitored and adjusted depending on the clients' particular circumstances. Further, there are thousands of settlements in progress that are scheduled to have their first payments due as early as January 14, 2024. A default of any these settlements exposes clients to lawsuits, default judgments, or garnishments.

As demonstrated above and as one of the Interested Law Firm's service providers, the Support Entities necessarily have confidential information about the Interested Law Firm's clients that are protected by the rules of professional responsibility in the various states and jurisdictions where the Interest Law Firms practice. *See, e.g.,* ABA Model Rules of Professional Conduct Rule 1.6, New York Rules of Professional Conduct Rule 1.6, Wisconsin Rules of Professional Conduct for Attorneys, Rule 1.6. That confidential information includes anything that arises out of the Interested Law Firm's representation, including the clients' names, personal information, retainer agreements, log notes, creditor information, creditor documents, creditor communications, ledgers, communications with the Interested Law Firm, and attorney communications. *See, e.g.,* ABA Model Rule 1.6.

### The Interested Law Firms Are Directly Involved In The Business Practices At Issue in the Complaint.

Throughout the complaint, the Plaintiffs assert a common theme that the Defendants' fees and their face-to-face meetings are improper. First, the fees are not received by the Support Entities as an initial matter. They are received by the Interested Law Firms. Second, the face-to-face meetings are conducted by paraprofessionals that are retained by the Interested Law Firms, which provides those third parties with training materials on how to handle the face-to-face meetings (a fact that has been known to the CFPB since 2020 when certain of the Interested Law Firms provided the CFPB with such materials in response to the CFPB's Civil Investigative Demand). Therefore, the Interested Law Firms – not the Support Entities – are directly responsible for the two practices that are being challenged and enjoined.

## Argument

### I. The Interested Law Firms Must Be Allowed to Intervene As a Matter of Right Under Fed. R. Civ. P. Rule 24 (a)(2)

The Interested Law Firms are directly involved and affected by this litigation. The *Ex Parte* TRO shut down the operations of the Support Entities, thereby crippling the Interested Law Firms' ability to fully serve their clients. Pursuant to Rule 24(a)(2), the Interested Law Firms have an absolute right to intervene in this action.

Rule 24(a)(2) provides that the Court "***must*** permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties

adequately represent that interest." To intervene as of right under Rule 24(a)(2), the Second Circuit Court of Appeals has established that a petitioner must:

> (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.

*In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal quotations omitted). The Law Firms meet this standard.

*First*, their motion is timely. The *Ex Parte* TRO was entered on January 11, 2024, and was enforced by the Receiver on Friday, January 12, 2024 (*i.e.*, the Friday going into a holiday weekend). Now, the Law Firms – just 4 days later – file the instant motion to intervene. There simply has been no delay. *Id.* (holding that timeliness depends on "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.") There can be no dispute that the Law Firm's Motion is timely.

*Second*, the Interested Law Firms have an interest in the action. An "interest" for purposes of Rule 24 must "be direct, substantial, and legally protectable." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). It cannot be remote or contingent upon the occurrence of additional events, such as a future judgment. *Id; see also Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prod., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984). Here, the issues involved in this matter directly affect the Interested Law Firm's business in

several respects. For one, the fee structure and face-to-face meetings that the Plaintiffs challenge are the Interested Law Firms' business practices. They retain the paraprofessionals for the Face-to-Face meetings, and they receive the fees. For another, the Interested Law Firms have a viable and direct interest in ensuring that they fulfill their professional duties to their clients. The *Ex Parte* TRO threatens the Law Firms' ability to continue to provide services to their clients, including, among other things, processing pending and new settlements, defending newly-served lawsuits, responding to client inquiries and communications, and maintaining client files and documents. The Interested Law Firms simply do not have the necessary in-house support staff to provide services to thousands of clients. Finally, the Interested Law Firms have an interest in ensuring that the clients' confidential information is maintained and not shared with any third parties, such as Plaintiffs. *See, e.g.,* ABA Model Rules of Professional Conduct Rule1.6, New York Rules of Professional Conduct Rule 1.6, Wisconsin Rules of Professional Conduct for Attorneys, Rule 1.6. Now that these materials are in the hands of the Receiver, the Interested Law Firms have no assurances that the confidentiality of these documents are being maintained and not being shared with Plaintiffs or other third parties.

*Third*, the foregoing interests will be impacted by the Court's decisions. They already have been. Since the entry of the *Ex Parte* TRO, the Interested Law Firms' abilities to represent its clients have already been hampered. For example, the Support Entities handle the processing of new settlements for the Interested Law Firms. Beginning January 14, 2024, there are about 4,400 settlements that need to

11

have their first payment made this month. Without the Support Entities, these settlements will not be effectuated in time, which will expose clients to defaulting on their settlement agreements, whereby they will be exposed to lawsuits, default judgments, or garnishments. And, this will only continue. The inability to have the Support Entities provide ongoing administrative support will result in significant harm to the Interested Law Firm and their clients, including but not limited to:

- Lack of communication with clients may lead to misunderstandings, delayed settlements, and increased frustration for clients and creditors,
- Failure to process payments timely may lead to missed opportunities for settlements and prolonged debt resolution.
- Failing to update client information may hinder negotiations or inappropriate settlements;
- Inability to provide creditors with powers of attorney creating obstacles to settlement negotiations;
- Lack of communication with attorneys may lead to delays in settlement agreements and hinder the overall debt resolution process; and
- Failure to review and forward mail may result in missing important documents or information, such as summons, notices of motions, and settlement offers.

In addition, the Court's grant of the *Ex Parte* TRO has exposed thousands of client files to production to third parties without their consent. *See, e.g.,* ABA Model Rules of Professional Conduct Rule 1.6, New York Rules of Professional Conduct Rule 1.6,

Wisconsin Rules of Professional Conduct for Attorneys, Rule 1.6. The Support Entities treated those materials as confidential. There is no guarantee that the Receiver will do the same, and he certainly should be prohibited from disclosing that client information to the Plaintiffs or any other third parties. And finally, any findings concerning the fee structure or face-to-face meetings directly affect how the Interested Law Firms conduct their practice, which will necessarily have an impact their clients, their attorneys and employees, and the law firms themselves.

*Fourth*, the Law Firm's interests are not adequately protected by any other parties to the litigation. This Court has held that "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Leslie v. Starbucks Corp.*, No. 22-CV-478 (JLS), 2022 WL 5434278, at *2 (W.D.N.Y. Oct. 7, 2022). As of now, the Support Entities have been taken over by a Receiver. There is no guarantee that the Support Entities will be able to adequately support the Interested Law Firms and its clients – and the Receiver has effectively stated that he has no intention of providing such support. As discussed above, the Interested Law Firms are bound to comply with the rules of professional conduct, which include ensuring that client materials are protected from disclosure. Indeed, the law firm and its attorneys are required to protect the confidentiality of client information, and for that reason alone the Interested Law Firms must be allowed to intervene in this matter.

## II. In Any Event, The Court May Permit The Interested Law Firms To Intervene Under Rule 24(b)(2).

The Court has the discretion to permit the Interested Law Firms to intervene under Rule 24(b)(2). Rule 24(b)(2) provides that "the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." The Second Circuit Court of Appeals has held:

> Permissive intervention is wholly discretionary with the trial court. The principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' The court also will consider whether the applicant will benefit by intervention. Other relevant factors include the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*U. S. Postal Serv. v. Brennan,* 579 F.2d 188, 191–92 (2d Cir. 1978).

Here, the claim is whether Defendants' fee structure and face-to-face procedures violate the TSR and other related laws. As described above, the Interested Law Firms are involved in both of those purported violations. Thus, the Interested Law Firms' have defenses that relate to the common questions of law of fact in the main action.

The Interested Law Firms also meet the other relevant factors. No prejudice or delay will result from allowing them to intervene. This motion to intervene is brought just mere days from the filing of this lawsuit and the entry of the *Ex Parte* TRO. The Interested Law Firms' participation in the lawsuit will likely expedite the matter as they may have witnesses and documents relevant to the issues in this case, which can now be requested directly through discovery request, instead of third party

subpoenas. Further as discussed above, the Interested Law Firms have viable and direct interests in this matter, which have been and will continue to be impacted by this litigation. Accordingly, the Court should permit the Interested Law Firms to intervene.

## Conclusion

For the foregoing reasons, the Interested Law Firms respectfully request that the Court grant them the right to intervene in this matter under Rule 24 (a)(2), or alternatively, by permission under Rule 24 (b)(2) and order any further relief that the Court deems necessary and just.

DATED: Buffalo, New York
January 16, 2024

*/s/ Terrence M. Connors*

Terrence M. Connors, Esq.
Randall D. White, Esq.
**CONNORS LLP**
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com
rdw@connorsllp.com
*Attorneys for Proposed Intervenors,*
*Anchor Law Firm, PLLC;*
*Bedrock Legal Group;*
*Boulder Legal Group, LLC;*
*Brandon Ellis Law Firm LLC;*
*Canyon Legal Group, LLC;*
*Chinn Legal Group, LLC;*
*Clear Creek Legal, LLC;*

15

*Credit Advocates Law Firm, LLC*
*Great Lakes Law Firm, LLC;*
*Greenstone Legal Group;*
*Guidestone Law Firm;*
*Gustafson Consumer Law Group, LLC;*
*Hailstone Legal Group, LLC;*
*Hallock and Associates LLC;*
*Harbor Legal Group, LLC;*
*Heartland Legal Group;*
*Leigh Legal Group, PLLC;*
*Level One Law;*
*Meadowbrook Legal Group;*
*Michel Law, LLC;*
*Monarch Legal Group;*
*Moore Legal Group, LLC;*
*Newport Legal Group;*
*Northstar Legal Group LLC;*
*Option 1 Legal;*
*Pioneer Law Firm P.C.;*
*Rockwell Legal Group;*
*Royal Legal Group LLC;*
*Spring Legal Group;*
*Slate Legal Group;*
*Stonepoint Legal Group;*
*The Law Firm of Derek Williams, LLC;*
*The Law Office of Melissa Michel LLC*
*Whitestone Legal Group;*
*Wyolaw, LLC*