# EXHIBIT 1



Services of: The Sands Law Group, LLP

10880 Wilshire Blvd.

Suite 1101

Los Angeles, CA 90024

WHITESTONE LEGAL GROUP                  CLIENT RETAINER AGREEMENT

This document is a legally binding agreement confirming that you ("Client") and Whitestone Legal Group ("Whitestone") wish to form an Attorney / Client relationship.

Pursuant to this Agreement's terms, Whitestone will assist you with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program. In return for Whitestone's services, you agree to pay specific amounts to Whitestone, as specified in this Agreement and its enclosures.

Client is retaining Whitestone to help resolve specific debts that Client cannot reasonably satisfy according to existing terms. These specific debts are listed in this Agreement.

Client must pay as agreed for Whitestone to operate as contemplated in this Agreement. The law firm puts in place a customized strategy based on the individual client and their debts in order to effectuate the goals of the law firm's representation. Following this strategy, Whitestone's ability to resolve the proposed debt load is projected to take a number of months and an amount of payments listed in this document. A variance from this strategy, including Client's failure to make timely payments, will directly affect Whitestone's ability to perform as agreed.

Whitestone holds itself to a standard of minimum results even though Creditors are under no obligation to negotiate with you, Whitestone, or anyone else. Whitestone takes this risk in exchange for Client's promise not to unreasonably withhold consent when presented with offers to settle debts.

The specifics of Whitestone and Client's responsibilities and expectations with regard to this relationship are discussed in this Agreement in the following order:

1. LEGAL SERVICES WHITESTONE PROVIDES

2. FEES AND COSTS OF SERVICES PROVIDED

3. WHITESTONE'S PERFORMANCE STANDARD

4. TERMINATION OF REPRESENTATION

5. FURTHER IMPORTANT TERMS AND DISCLOSURES

6. ARBITRATION AGREEMENT

7. CLASS ACTION WAIVER

**Following the Attorney / Client Agreement are various notices, disclosures, schedules, lists, and authorizations related to this Agreement's terms. All enclosed documents are material to Whitestone's representation of Client, and are incorporated into this Agreement.**

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

# Client Information

| CLIENT | | |
|---|---|---|
| *Full Name:* ███████████ | *DOB:* ██████ | *SSN:* ██████ |
| *Address:* ████████ | *City* ██████ | *State, Zip Code:* ██  ████ |
| *Home Phone:* ██████ | *Cell Phone:* | *Email Address:* ██████████ |

| CO-CLIENT | | |
|---|---|---|
| *Full Name:* | *DOB:* | *SSN:* |
| *Address:* | *City* | *State, Zip Code:* |
| *Home Phone:* | *Cell Phone:* | *Email Address:* |

**PROPOSED PROGRAM INFORMATION**

| | |
|---|---|
| *Total Unsecured Debt:* $42,253.64 | *\*Estimated Program Length (months):* 48 |
| *Date of First Payment:* 3/20/2019 | *Program's Payment Amount:* $657.46 |
| *\*Estimated Total Payments:* $31,557.72 | *Law Firm Contact:* Erica Korn |

\* - The estimates provided above are just that – good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

# 1. LEGAL SERVICES WHITESTONE PROVIDES

Whitestone's services are performed by a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform. Whitestone will perform the various services described in this section.

## 1.1.   Debt Analysis

Whitestone will review Client's personal hardship and other debt circumstances and formulate a plan to negotiate improved terms.

## 1.2.   Negotiate and Resolve Client Debt

Whitestone will represent Client in the negotiation and resolution of the unsecured debts listed in the Creditor List enclosed with this Agreement. Representation related to any debt is governed by the promises and limitations discussed throughout this Agreement.

## 1.3.   Services Outside Scope of Representation

Whitestone's services are limited to those specifically listed above.  This means that Whitestone will not provide accounting, financial planning, or tax advice.  Whitestone does not engage in credit repair or credit reporting. Whitestone does not attempt to resolve debts on which a judgment has been obtained. Bankruptcy services, and defense or prosecution of any debt not listed in this agreement are outside the scope of representation. Further, Whitestone cannot guarantee that creditor or collector harassment will cease at any point in the representation. However, under some circumstances, Whitestone may take appropriate legal action against creditors or collectors engaged in illegal activity.

## 1.4.   Work Performed by Contracted Parties

Whitestone Legal Group may contract work relating to this Agreement to third parties for such tasks including, but not limited to customer service and debt negotiations. Whitestone attorneys will supervise all third-party entities to ensure contracted services comply with Whitestone's rules and regulations.

## 1.5.   Litigation Defense

Whitestone will advise and represent Clients in their defense of litigation initiated by creditors or collectors to recover debts listed in this Agreement. Whitestone attorneys are immediately notified of litigation, and may be assigned to address any litigation served on Client after the effective date of this Agreement. Litigation services are further conditioned and limited by other terms of this Agreement, circumstances of practicality, and jurisdictional rules.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

## 1.6.   Litigation Defense: Services / Conditions and Limitations

Creditors and/or debt collectors may file lawsuit(s) against Client in order to collect non-payment of owed debt(s). Whitestone will provide Litigation Defense Services in the event the client receives a Summons and Complaint. The Litigation Defense Services will include work done in court and/or negotiations out of court. Whitestone's Litigation Defense Services and limitations include:

### Services

1. Whitestone will receive, review, and analyze any summons, complaint, petition, application, or other operative pleading the client has received.

2. Whitestone will evaluate potential legal defenses to the Plaintiff creditor's suit.

3. Whitestone will review, analyze, and counsel Client regarding collection activity and debt restructuring associated with the litigated debt.

4. Whitestone will engage with the Plaintiff or its hired legal counsel on Client's behalf to negotiate a resolution of the litigation.

5. Whitestone's attorneys may determine that a valid defense exists to the law suit, or that the suit is defective in some way favorable to Client. This determination varies by jurisdiction, current legal trends, and the personal knowledge of the local attorney.

6. If Whitestone's assigned attorney determines that Client is likely to gain a favorable result through continued defense of the litigation, he or she will prepare and file responsive pleadings on the Client's behalf, appear at subsequent court proceedings, and continue defense through various stages of litigation, including trial, if prudent.

7. If Whitestone determines in its sole discretion that it does not have a good faith basis to assert a defense to the litigation on Client's behalf, Whitestone will communicate this determination to the Client and discuss alternative potential strategies for resolving the litigation. In such cases, Whitestone's strategy may include, but would not be limited to, engaging in out of court negotiations directly with the creditor. No fees for Litigation Defense Services will be charged if Whitestone determines it cannot provide a defense to the litigation.

### Conditions and Limitations

1. All pages of any summons, complaint, exhibits, petitions, and/or other pleadings served to the client must be submitted to Whitestone.

2. All lawsuit paperwork must be submitted to Whitestone no less than fifteen (15) days prior to the lawsuit response date, or immediately upon the client's receipt of lawsuit paperwork.

3. If the litigation is in a State that permits less than fifteen (15) days' notice, all lawsuit paperwork must be submitted no less than seven (7) days prior to lawsuit response date.

4. All lawsuit paperwork must be submitted to Whitestone Legal Group at their fax number **866.489.8045** or email address **cs@whitestonelegalgroup.com.**

5. The "Retainer Fee," outlined in the enclosed Payment and Fee schedule, must be paid in full, or payments must be current on any agreed payment plan specific to the "Retainer Fee" in order for Whitestone to provide Litigation services.

6. Whitestone is not required to provide Litigation Services on any lawsuit of which the Client had knowledge prior the execution of this Agreement with Whitestone. Knowledge of a lawsuit is typically determined by service of process (delivery of a legal complaint to a party being sued).

7. Whitestone will not provide Litigation Services related to debts which are not included in this Agreement, or any attachments or amendments to this agreement made prior to Client's knowledge of the lawsuit.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

### 1.7.   Conditions of this Agreement's Effectiveness

a.   This Agreement does not take effect, and Whitestone has no obligation to provide any services, until both Client and Whitestone have executed a copy of this Agreement and such copy is delivered to both Parties.

b.   Further, this agreement does not take effect until Client has paid the initial payment of the flat fee retainer as set forth in the payment schedule enclosed, and the payment has cleared.

### 1.8.   Assistance in Dealing with Difficult Creditors

It is important to understand that Whitestone cannot force a creditor to negotiate your debt. Although Whitestone will not accept a debt into the program from creditors it knows will not negotiate debts, there are times when a creditor that has negotiated with Whitestone in the past may refuse to negotiate a debt. In such instances, the Whitestone attorneys or negotiators may require your assistance in participating in the negotiation process. Whitestone personnel will provide you with the information you will need in order to contact your creditor directly in an effort to reach a satisfactory settlement. If Whitestone cannot successfully negotiate a debt for you, even with your assistance, it will refund to you the portion of your fees associated with that debt.

### 1.9.   Timing and Amount of Settlement Offers:

Whitestone will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt, whether on a lump-sum or installment basis, may be made, with such factors as the creditor's settlement policies, the rate of account accretion, the size of each debt and how close a debt may be to charge-off. Some creditors prefer that they not be contacted until you have accumulated sufficient funds in your Dedicated Account to allow a negotiated resolution within their historic norms. While settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

## 2. FEES AND COSTS OF SERVICES PROVIDED

Whitestone's fees are payable according to the following terms. All fees are charged on a flat fee basis according to the Payment Schedule enclosed with this Agreement. The estimated total fees for Whitestone's services are $ 13295.19 including the Retainer Fee, Monthly Legal Administration Fees and Service Costs described below.

### 2.1.   Retainer Fee and Monthly Legal Administration Fees

a  Client will initially pay Whitestone $ 995.00 as a Retainer Fee.

b  The Retainer Fee shall be paid on a monthly basis over __9__ months. The first __2__ payments shall be __$150.00__, thereafter payments will be __$100.00__ and a final payment of __95.00__.

c  In addition, Client shall pay an ongoing monthly flat Legal Administration Fee of $ 89.00 for debt review, debt resolution plan analysis and structuring, supervision of and participation in creditor negotiations, pre-litigation settlement support, and the Litigation Defense Services described in Section 1.6 of this Agreement.  The estimated total Legal Administration Fee is $4,272.00 based on Whitestone's estimate that it will take a total of ____48____ months to settle Client's debt.

d  Client shall be responsible for Legal Administration Fees for all months Client remains active with Whitestone.

### 2.2.   Service Cost – Related Services

In addition to the legal services provided by Whitestone, there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of Whitestone's attorneys. These services are provided at a cost equal to ____19%____ % of Client's total scheduled debt (hereinafter referred to as Service Cost). The Service Cost shall be paid by Client to Whitestone in equal consecutive monthly payments in the amount of $ $364.92 per month, totaling $ $8,028.19.

Whitestone has a non-exclusive reciprocal referral agreement with independent contractors to provide these services under Whitestone's direct supervision. Representatives of such independent contractors cannot and will not provide any legal advice to the Client, and any such advice will only be communicated to Client by Whitestone. Although these services are performed under Whitestone's supervision, a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services, and communications between Client and the independent contractor representatives might not be protected by attorney- client privilege.

### 2.3.   Application Client of Funds

All funds paid by Client will be saved in a Dedicated Account that is owned by Client and held by a third party dedicated account holder (See Dedicated Account Agreement) for use in making payments toward any settlements negotiated paying Whitestone's fees under the terms of this Agreement.

**All funds in Client's Dedicated Account shall remain under Client's control at all times, and may be withdrawn by Client at any time without penalty. If Client notifies Whitestone or the third party dedicated account holder of a request to withdraw their funds, Client shall be entitled to receive all funds in the Dedicated Account, other than any funds that have previously been**

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

**earned by Whitestone under the terms of this Agreement, within seven (7) business days of such request.**

It is strongly recommended that Client retain all funds available for settlement payments and fees to allow Whitestone the greatest ability to effectively represent Client under the terms of this Agreement.

### 2.4.   Method of Payment

Under this Agreement, Client agrees:

a   to have Client's initial flat fee retainer and subsequent fees and costs as outlined above based on the attached Payment Schedule to be automatically drafted by Client's third party dedicated account holder from Client's bank account into an authorized Federal Deposit Insurance Corporation ("FDIC") insured bank account held in Client's name (the "Dedicated Account") with Client's first payment to start on 3/20/2019_____ , and thereafter each month on the _20th_ day; and

b   to have Client's payments of Service Cost and settlement savings fund payments based on the attached Payment Schedule to be automatically drafted from Client's bank account into the Dedicated Account held in Client's name with Client's first payment to start on 3/20/2019___ and thereafter each month on the _20th_ day.

### 2.5.   Early Program Completion and Pre-Payment of Program Fees

If Whitestone resolves all debts listed in this Agreement before the scheduled date of Client's final Service Cost payment, Client must continue to make all payments for the Service Cost and Retainer outlined in this Agreement. However, Client will not be responsible for any Legal Administration Fees following the date that a settlement agreement is entered on the final listed debt. Client can pay off their program early with no pre-payment penalties.

### 2.6.   Costs of Litigation Services – Court Costs and Trial Preparation Costs

a   Client must pay all costs associated with Litigation Services, including the payment of any court filing fees or any other court-imposed costs associated with the litigation. These costs vary by jurisdiction. Whitestone will NOT advance such costs. Client acknowledges that failing to timely pay necessary costs may have adverse consequences, including but not limited to entry of judgment against Client in the litigation.

b   If a litigated matter proceeds to trial, Client shall also be required to pay the costs associated with Whitestone's trial preparation, which the parties hereby agree in advance shall be set at three hundred fifty dollars ($350.00) per trial (the "Trial Costs"). Trial Costs commonly include but are not limited to, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, travel costs including parking, mileage, transportation, meals, and hotel costs, investigation expenses, and other similar items. The Trial Costs must be paid sixty (60) days before the scheduled trial date unless otherwise agreed upon by Whitestone and the Client. The Client shall not be responsible for, and shall be refunded the Trial Costs if the litigation is settled at least thirty (30) days before the trial date.

### 2.7.   Additional Fees

Client may be responsible for additional processing fees. Such fees may include: Payment Plan Change Fees ($19.95), Adding/Removing Debts ($25.00), Renegotiation Fee ($299.00), Settlement Payment Fees ($10.00), and Banking Changes ($25.00).

8

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

**2.8.   Increases in Balances of Accounts Subject to Representation**

a   Client acknowledges and agrees that Client will not continue to incur any additional debt on any accounts subject to this Agreement, other than late fees, interest, and penalties.

b   Client's program fees, program length, and draft amounts may increase due to any additional balances incurred by Client.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

# 3. WHITESTONE'S PERFORMANCE STANDARD

Whitestone has a set Performance Standard for each debt enrolled in the Debt Resolution Program. Whitestone sets a target debt reduction of minimally thirty-five percent (35%) of amount owed on the debt at the time the Agreement is executed. If Whitestone is unable to meet this target debt reduction, Whitestone will refund the share of all Whitestone fees & costs for work on this individual debt.

### 3.1.  Terms and Conditions Affecting Performance Standard:

a.  Client must be in complete compliance and cooperation with Whitestone under the terms of this agreement.

b.  Client's payments must be current under the Service Cost obligations and cannot default on payments to Creditors pursuant to settlement of any listed debt.

c.  Client may not be entitled to a refund if Client is unwilling or unable to accept a proposed settlement at a reduction of thirty-five percent (35%) of enrolled debt at time that settlement is secured by Whitestone.

d.  If Whitestone is unable to settle Client's listed debts, the refund shall be calculated on a pro rata basis as to Service Cost paid per each individual debt.

e.  The Performance Standard does NOT apply to any enrolled debt that becomes subject to a lawsuit during representation. Client will be required to notify Whitestone of any lawsuit, at which time the Performance Standard will cease to apply, and Litigation Services will commence.

### 3.2.  Performance Standard Does Not Apply to the Following Types of Debt:

a.  Any debt with a balance transfer or cash advance which occurs within six months of enrollment;

b.  Any debt with a balance of less than one-thousand dollars ($1,000.00) at the time of this Agreement's execution;

c.  Any debt which is subject to a lawsuit at the time of this Agreement's execution;

d.  Debts being garnished, or subject to voluntary garnishment are also excluded from this provision;

e.  Any debt with a credit union. Whitestone will endeavor to settle such debts on behalf of Client on the best terms possible, but cannot guarantee that such settlements will meet the Performance Standard.

f.  Debts that are charged off or written off by a creditor or become uncollectable, as a result of Whitestone's strategy, shall be considered approved settlements. As an approved settlement, these debts will not be subject to any refund.

g.  Client must complete all payments as listed and hereafter amended in order to provide Whitestone with the opportunity to settle all enrolled debt on the Creditor Listing enclosed. Any refund may be disqualified if Client terminates representation prior to completion of payments contemplated in this Agreement.

### 3.3.  Bankruptcy and Other Alternatives

Whitestone may discuss alternative legal routes in the event of changing circumstances on any enrolled debt(s), such as Chapter 7 & 13 Bankruptcies.

### 3.4.  Should Client Default on Negotiated Settlement Terms

Whitestone is not required to renegotiate any debts that enter default after Whitestone has arranged payment terms, and those terms were agreed to by Client. Client may request Whitestone renegotiate such debt, and will be subject to an additional fee of two-hundred-ninety-nine dollars ($299.00) per renegotiation at the client's expense. Client must also comply with following terms for renegotiation(s):

a.  The Representation Standard provision only applies to the balance of enrolled debt, not accounting for payments made on initial settlement prior to default.

b.  Renegotiation may result in the settlement amount increasing.

***Client understands & agrees they are not entitled to any refunds under the Performance Standard if any of the above terms are not met.***

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

# 4. TERMINATION OF REPRESENTATION

## 4.1.    Termination by Client

Client may terminate this Agreement at any time, and for any reason. Should Client terminate this Agreement before all debts subject to the representation are resolved, all savings and unearned fees in Client's Dedicated Account will be refunded to the Client.

## 4.2.    Termination by Whitestone

This Agreement may be terminated by Whitestone at any time for good cause, and upon reasonable notice to Client. In addition, subject to any applicable legal and ethical standards governing Whitestone's right to withdraw representation, Whitestone may withdraw from representing Client in any litigation under the terms of this Agreement either with Client's consent, or with the permission of the court in which such litigation is pending.

## 4.3.    Definition of "Good Cause" for Termination by Whitestone

a    **Client's Failure to Cooperate with Whitestone.** Client must cooperate and comply with all reasonable requests by Whitestone and its agents in connection with the services to be performed under this Agreement, including requests for information and documentation, responses to settlement offers, and matters related to any litigation. Client acknowledges and agrees that failure to cooperate with Whitestone is grounds for Whitestone to terminate this Agreement and/or to withdraw from representation of Client in any litigation associated with the Client's failure to cooperate.

b    **Failure to Pay Fees and Costs.** If Client fails to pay the legal fees and Service Costs required under the terms of this Agreement, Whitestone may terminate this Agreement and withdraw from representation of Client in any litigation associated with this Agreement.

c    **Failure to Pay Costs of Litigation.** In the event that Client fails to pay any of the court filing fees or other fees or costs associated with the litigation of a listed debt, Whitestone will not be responsible for acting in response to the lawsuit until such time as the fees or costs associated with the filing have been received by Whitestone. Moreover, Client agrees and acknowledges that the failure to pay the three hundred fifty dollar ($350.00) Trial Costs associated with a trial in a timely manner shall constitute sufficient grounds for Whitestone to withdraw from representing Client in connection with the lawsuit.

d    **Failure to Follow Whitestone's Advice on Reasonable Settlements.** Client agrees and acknowledges that Whitestone has an obligation to Client as both a counselor and as an advocate, and that the underlying purpose of the Representation is to negotiate settlement of Client's debts. In the event that Whitestone negotiates a reasonable settlement offer and advises the Client to accept, Client agrees that he or she shall not unreasonably withhold consent to accept the offer. Client acknowledges and agrees that it is unreasonable to withhold consent on a settlement offer when Client has no valid defense to the litigation claims at issue or when the settlement offer is within Whitestone's Standard of Performance. If Client refuses to consent to a reasonable settlement offer, Client agrees that Whitestone may withdraw from representing the Client in any litigation associated with the settlement offer at issue.

## 4.4.    Withdrawal from Representation of Client in Litigation

In the event that Whitestone is entitled to withdraw from any litigation for whatever reason, Client agrees to execute any documents necessary to effectuate this withdrawal, including, without limitation, the execution of a substitution of attorney document that relieves Whitestone as counsel in the litigation. If Client fails to execute any necessary documents, Whitestone may request the court to be relieved as Client's attorney in that particular matter. Client acknowledges and agrees that Whitestone's withdrawal from any specific litigation does not necessarily terminate Client's entire Agreement with Whitestone for any other litigation or for any other services falling within the scope of this Agreement. Notwithstanding Whitestone's withdrawal and without regard to the reasons for the withdrawal, Client will remain obligated to pay Whitestone for any services performed up to and including when Whitestone delivers its withdrawal notice to Client or Whitestone receives a court order authorizing its withdrawal.

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

# 5. FURTHER IMPORTANT TERMS AND DISCLOSURES

## 5.1.  Client's Responsibilities to Whitestone

a.  In consideration of Whitestone's experienced counselling, work out a feasible monthly payment plan based on the total amount of debt to be modified, which contemplates all fees and costs to Whitestone as well as funds to deposit for use in settling debts on which Whitestone represents Client. The Payment Schedule is enclosed;

b.  Provide Whitestone with accurate and complete information relating to any Client's finances and the state of Client's financial hardship as documented in the attached Hardship and Budget Information statement.

c.  Provide Whitestone accurate and complete information and documents relating to any debts subject to Whitestone's representation. These documents must identify each debt by creditor's name, current account balances, and account numbers. Whitestone is under no obligation to verify the information supplied by Client;

d.  Forward all correspondence from creditors and collection agencies as soon as possible, but no longer than five (5) days from receipt;

e.  Make all payments according to the Payment Schedule;

f.  Refrain from discussing debts with creditors or collection agencies when contacted;

g.  Notify Whitestone in writing of any settlement offers you receive, including all of the terms and conditions of the offer;

h.  Be willing and able to aid in negotiations when necessary, and understand that your level of involvement will not affect the terms of this Agreement, but may affect the speed and effectiveness of Whitestone's efforts;

i.  Respond timely to all requests or communications from Whitestone or its representatives, and promptly provide Whitestone with any change of address or other contact information;

j.  Make timely and complete payments on settlements negotiated by Whitestone and approved by Client.

## 5.2.  Client's Authorizations

Client Authorizes Whitestone to:

a.  To disclose information regarding Client's financial condition or status to any creditors and collectors in connection with effective representation;

b.  To hold itself out as Client's representative to any party seeking to collect the debts listed in this Agreement's Creditor Listing;

c.  To engage creditors and collectors to negotiate reduction of the debts listed in this Agreement's Creditor Listing;

d.  To provide Client's bank account information to the third party dedicated account holder in order to facilitate the establishment of the Dedicated Account for Client.  This authority shall remain effective until cancelled by Client in writing.  Client will provide Whitestone with a voided check or savings deposit slip with respect to Client's bank account.

## 5.3.  Client Acknowledgments

Client Acknowledges and agrees that:

a.  The Payment Schedule is based on previous settlement averages achieved and calculated by Whitestone. Accordingly, the actual amount paid into the program may vary. More or less funding may be required to settle all represented debts;

b.  The program's contemplated duration is an estimate based on full and timely payment each month as listed in the Payment Schedule. Any variation of payments, as well as many other factors, can affect the length of the program;

c.  Whitestone will deduct monthly Legal Administration fees through the duration of Client's participation in the debt resolution program;

d.  The success of Whitestone's representation on any particular debt may vary based on a number of factors, including your ongoing ability to make timely deposits to your Dedicated Account, the willingness of your creditors to negotiate settlements of your debt and other factors that are outside Whitestone's control;

e.  Your participation in the program may result in you being subject to collections. Creditors may still contact you regarding debts subject to this Agreement. However, you should notify Whitestone of harassment, as there may be steps Whitestone can take to prevent or rectify illegal harassment;

f.  Any reduction in the amount owed by Client may be considered a taxable event. You should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf;

g.  The fees and costs paid to Whitestone are compensation for the services described in the Scope of Engagement and the funds deposited into your Dedicated Account are for the purpose of saving funds for settling your accounts with creditors. Until you authorize and approve any such settlements, no payments of any kind, including any monthly minimum payments will be made to your creditors on

12

# WHITESTONE LEGAL GROUP

the accounts, except those that are subject to Whitestone's Settlement Pre-Authorization form which states that Whitestone shall make all reasonable efforts to obtain your approval for any settlement offer obtained on your behalf. In the event Whitestone cannot contact you after making reasonable efforts, you authorize Whitestone to proceed with any settlement resulting in a savings of 50% or more of your debt;

h. Whitestone will refund the entire portion of any unused retainer fees for services that have not yet been rendered in the event you to terminate Whitestone's representation;

i. The amount you owe to your creditors or collectors may increase due to the accrual of late fees, interest and penalties on the accounts while enrolled in the program;

j. Your participation in the program will likely have an adverse effect on your credit worthiness and may result in you being sued by creditors or debt collectors;

k. You should not incur any new or additional debt and should refrain from using or obtaining credit during the Whitestone debt resolution representation. You understand and agree that all credit cards or lines of credit shall be closed and that no additional credit cards or lines of credit should be applied for during the Whitestone debt resolution representation. You understand and acknowledge that you may keep credit cards out the program for emergency purposes only. These credit cards should not be from the same issuing bank as any accounts you entered into the Whitestone debt resolution representation;

l. No debts listed in this Agreement have been secured by any personal or real property.

m. Active, inactive, or former military personnel understand that his/her military rank, pay, and/or benefits may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Whitestone Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

n. Individuals with, or who are seeking Security Clearance, including military members, contractors and consultants, understand that his or her Security Clearance may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Whitestone Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

# CLIENT RETAINER AGREEMENT

 Initial: _____

## 5.4. Voluntary Participation

Client understands that participation in Whitestone's program is voluntary and you may, upon written request, cancel Whitestone's services at any time prior to the original estimated conclusion date of the program.

Client also agrees that:

a. Early termination may prevent Whitestone from providing all services outlined herein and Whitestone will not be responsible for any unresolved accounts upon cancellation.

b. In the event of any early termination of this Agreement, all Service Costs, Legal Administration Fees, Banking Fees, and Other Fees shall be considered earned and are non- refundable.

c. Upon termination of this Agreement, any funds held in your Dedicated Account, less any amounts paid or owed in the form of fees and settlement payments, shall be remitted to you by paper check or ACH transfer.

d. Whitestone will not collect any additional fees that have not previously become due after the termination date.

e. With Whitestone's permission, you may re-enroll Client Debts after termination. Any re-enrollment shall be at Whitestone's sole discretion and is subject to a Reactivation Fee in the amount of two hundred ninety-nine dollars ($299.00).

## 5.5. Skipped Drafts

a. In the event Client requests to skip a monthly draft, Client shall notify Whitestone at least five (5) business days prior to the scheduled draft.

b. Client will continue to be charged any applicable monthly Legal Administration service costs, retainer fees and any banking fees for any skipped months.

c. An additional month shall be added onto the Client's program to make up for each month Client skips a draft.

d. Whitestone may deny a Skip Request and/or limit the number of approved Skipped Drafts if Whitestone determines it is in the client's best interest to continue drafting Client's monthly payment. Reasons for denying a Skip Request may include, but are not limited to, a resulting inability to negotiate and settle

13

# WHITESTONE LEGAL GROUP

debts, potential acceleration of litigation and the default of active settlements.

## 5.6. Extension of Representation

a. Subject to the terms of the Performance Standard, in the event Client's debts are not fully settled at the end of the estimated program timeframe, Whitestone will automatically extend Client's program and continue to draft Client's monthly payment unless Client notifies Whitestone in writing that Client does not wish to extend representation. Any fees due during the extension will be reduced by 50%.

b. Client shall remain responsible for the monthly Legal Administration Fees during any extended representation period.

## 5.7. Additional Disclosures & Disclaimers

a. There are other remedies/solutions available for clients to relieve themselves of their debt burdens. Those remedies include bankruptcy and consumer credit counseling.

b. Declaring bankruptcy may discharge or allow a court-imposed repayment plan for the majority of Client's debts. However, this will be reflected as a permanent record on a Client's credit report for up to 10 years. Whitestone will discuss and advise Client as to the

# CLIENT RETAINER AGREEMENT

bankruptcy option, including fees and costs, at any time that Client's circumstances change, or Client requests such consultation. There are no additional fees required from Client for such consultation and preliminary advice regarding bankruptcy.

c. Consumer credit counseling may have less impact on a Client's credit rating than bankruptcy and reduce interest rates on current debts, but it generally requires re-payment of most-to-all of Client's existing debt and not provide significant monthly payment relief.

## 5.8. Confidentiality of Client Information

Whitestone agrees that any information provided by Client to Whitestone and/or its independent contractors will be kept confidential and only be used in providing the services delineated in Whitestone's Privacy Policy and in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties in order to (a) streamline the negotiation process, and (b) enhance Client's opportunities for settlement offers with Client's various creditors Client agrees and acknowledges that such disclosures will be made with Client's express consent and will not require any additional consent or consultation by Client before such disclosures are made.

## 5.9. Privacy Policy

**Client agrees to receive notices and disclosures regarding Client's privacy information and rights in connection with this Agreement, including any future changes to the terms of Whitestone's Privacy Policy, by electronic means, including but not limited to by email, by links to the Privacy Policy, and/or by reviewing current and future updated notices, disclosures and policies posted on Whitestone's website.**

## 5.10. Authorization to Obtain Credit Report

**Client agrees that Whitestone and its independent contractors may, from time to time during Client's engagement with Whitestone, obtain and review Client's credit report as necessary or appropriate to evaluate Client's current financial situation and perform the legal services on Client's behalf.**

## 5.11. Entire Agreement

**This Agreement is the entire agreement between the parties. All prior negotiations and discussions are superseded by this Agreement. Whitestone has made no representations other than those expressly set forth in this Agreement, and neither Party has relied upon any representations or promises other than those expressly set forth herein.**

WHITESTONE LEGAL GROUP          CLIENT RETAINER AGREEMENT

# 6. ARBITRATION AGREEMENT

Any controversy, claim or dispute between Client, on the one hand, and Whitestone and any of its third-party service providers, on the other hand, arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which Client lives in accordance with the Federal Arbitration Act pursuant to the substantive laws of the state of Client's residence.

Client, on the one hand, and Whitestone and its third-party service providers, on the other hand, agree that the arbitration shall be administered by the American Arbitration Association ("AAA") or in the event of its unavailability, an arbitration service with substantially similar rules and arbitrator rosters, pursuant to its rules and procedures, and a single arbitrator shall be selected to preside by the arbitration service. Any award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction. If Client, on the one hand, or Whitestone and any of its third-party service providers, on the other hand, fails to comply with the arbitrator's award, the injured party may petition the applicable court for enforcement.

Any arbitration of any controversy, claim or dispute between Client, on the one hand, and Whitestone and any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action. **This class action waiver precludes Client from participating in or being represented in any class or representative action regarding a controversy, claim or dispute.** Client waives the right to arbitrate any controversy, claim or dispute between Client, on the one hand, and Whitestone and any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative.

Client and Whitestone shall share the costs of the arbitration equally up to $1,000, including AAA's filing, administration and arbitration fees, but otherwise shall bear their own costs and attorneys' fees. If the arbitration costs exceed $1,000, Whitestone will pay Client's share of costs in excess of $1,000.

**Binding arbitration means that both Client and Whitestone give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Client and Whitestone give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can be appealed, that discovery may be severely limited by the arbitrator, and that certain remedies such as statutory injunctions and fee shifting which may be available in a court of law may not be available. In addition, under the terms of this Agreement, Client also gives up the right to bring any claims on a consolidated or class basis in the arbitration.**

In the event Client, on the one hand, or Whitestone and any of its third-party service providers, on the other hand, brings suit against the other party in federal, state or local court instead of proceeding with arbitration, or unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. The provisions of this Arbitration Agreement section shall survive any termination of this Agreement

WHITESTONE LEGAL GROUP                CLIENT RETAINER AGREEMENT

**PLEASE CONSULT WITH INDEPENDENT LEGAL COUNSEL OF YOUR CHOICE PRIOR TO SIGNING THIS AGREEMENT AS THE BINDING ARBITRATION REQUIREMENT AND CLASS ACTION WAIVER CONTAINED HEREIN AFFECT YOUR RIGHTS.  PLEASE DO NOT SIGN THIS AGREEMENT IF YOU DO NOT UNDERSTAND THESE LIMITATIONS.**

 Initial: _____

# CLASS ACTION WAIVER

Any court trial (whether before a judge or jury) of any controversy, claim or dispute between Client, on the one hand, and Whitestone and any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action). THIS CLASS ACTION WAIVER PRECLUDES CLIENT FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CONTROVERSY, CLAIM OR DISPUTE.  Client waives the right to litigate in court any controversy, claim or dispute between Client, on the one hand, and Whitestone and any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative, or to act as a private attorney general.  The provisions of this Class Action Waiver section shall survive any termination of this Agreement.

**PLEASE CONSULT WITH INDEPENDENT LEGAL COUNSEL OF YOUR CHOICE PRIOR TO SIGNING THIS AGREEMENT AS THE CLASS ACTION WAIVER CONTAINED HEREIN AFFECTS YOUR RIGHTS.  PLEASE DO NOT SIGN THIS AGREEMENT IF YOU DO NOT UNDERSTAND THESE LIMITATIONS.**

Initial: _____

WHITESTONE LEGAL GROUP                    CLIENT RETAINER AGREEMENT

**I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of Whitestone and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against Whitestone.**

Agreed to this _____ day of _____, 20_____

**Sign Here** _____

Signature of Client

**Sign Here** _____

Signature of Co-Client

_____

Signature of Whitestone

WHITESTONE LEGAL GROUP                    NOTICE OF RIGHT TO CANCEL

# Notice of Right to Cancel

Date of Transaction: _____3/7/2019_____

You may CANCEL this transaction, without Penalty or Obligation, including any agreements you signed at the in-person meeting with the Whitestone attorney and/or paralegal, for up to FIVE BUSINESS DAYS from the above date. If you cancel, you will not be obligated to make any payments to the law firm and any agreements or other documents that you signed will be null and void. To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to the address below NOT LATER THAN MIDNIGHT OF _____ (five business days after the Date of Transaction).

I HEREBY CANCEL THIS TRANSACTION.

Date: _____

Client's Signature: _____

Co-Client's Signature: _____

## **Please send to:**

Whitestone Legal Group, LLP
10880 Wilshire Blvd.
Suite 1101
Los Angeles, CA 90024

**(Sign and return this document only if you decide to <u>CANCEL</u> this transaction within five business days of the Date of Transaction shown above.)**

A

WHITESTONE LEGAL GROUP                    SETTLEMENT AUTHORIZATION

## Client's Authorization for Settlement

Whitestone shall make all reasonable efforts* to obtain Client's approval for any settlement offer obtained on Client's behalf. In the event Whitestone, cannot contact Client after making reasonable efforts, Client authorizes Whitestone to proceed with any settlement resulting in a savings of 50% or more of the Client's debt at the time of settlement.

Furthermore, I/we direct Global Client Solutions to release the funds from my/our Special Purpose Savings Account to the creditor, per the terms of a settlement agreement negotiated in accordance with the terms of this authorization.

<u>This form may be revoked** by Client at any time upon written notice to Whitestone.</u>



**Sign Here** _____          _____
                Signature of Client                    Date

**Sign Here** _____          _____
                Signature of Co-Client                 Date


*Reasonable efforts can include phone call(s), email(s), fax(es), and standard mail.

**Client can revoke such authorization at any time before any settlement payments are processed.

B

WHITESTONE LEGAL GROUP                              CREDITOR LISTING

# Creditor Listing

| Creditor / Collection Agency | Account Number | Balance | Account Holder(s) | Last Payment Date |
|---|---|---|---|---|
| ████████ | ████████ | $6,937.00 | Applicant | |
| ██ | ████████ | $7,744.00 | Applicant | |
| ███ | ████████ | $14,460.00 | Applicant | |
| ██ | ████████ | $872.64 | | |
| █████ | ███ | $12,240.00 | Applicant | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | **Total Debt Owed:** | $$42,253.64 |

C

# WHITESTONE LEGAL GROUP                    PAYMENT SCHEDULE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Amount of Debt** | | | $42,253.64 | | **Estimated Settlements:** | | $17,746.53 |
| **Service Cost Percentage** | | | 19% | | | | |
| **Estimated Total Fees & Settlements** | | | $31,557.72 | | **TOTAL ESTIMATED SAVINGS** | | $10,695.92 |
| **Month in Program** | **Retainer Fee** | **Service Cost** | **Settlement Reserves** | **Legal Admin Fee** | **Banking Fees** | **Total Draft** | **Draft Due Date** |
| 1 | $150.00 | $364.92 | $42.79 | $89.00 | $10.75 | $657.46 | 3/20/2019 |
| 2 | $150.00 | $364.92 | $42.79 | $89.00 | $10.75 | $657.46 | 4/20/2019 |
| 3 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 5/20/2019 |
| 4 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 6/20/2019 |
| 5 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 7/20/2019 |
| 6 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 8/20/2019 |
| 7 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 9/20/2019 |
| 8 | $100.00 | $364.92 | $92.79 | $89.00 | $10.75 | $657.46 | 10/20/2019 |
| 9 | $95.00 | $364.92 | $97.79 | $89.00 | $10.75 | $657.46 | 11/20/2019 |
| 10 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 12/20/2019 |
| 11 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 1/20/2020 |
| 12 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 2/20/2020 |
| 13 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 3/20/2020 |
| 14 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 4/20/2020 |
| 15 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 5/20/2020 |
| 16 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 6/20/2020 |
| 17 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 7/20/2020 |
| 18 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 8/20/2020 |
| 19 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 9/20/2020 |
| 20 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 10/20/2020 |
| 21 | | $364.92 | $192.79 | $89.00 | $10.75 | $657.46 | 11/20/2020 |
| 22 | | $364.87 | $192.84 | $89.00 | $10.75 | $657.46 | 12/20/2020 |
| 23 | | | $557.71 | $89.00 | $10.75 | $657.46 | 1/20/2021 |
| 24 | | | $557.71 | $89.00 | $10.75 | $657.46 | 2/20/2021 |
| 25 | | | $557.71 | $89.00 | $10.75 | $657.46 | 3/20/2021 |
| 26 | | | $557.71 | $89.00 | $10.75 | $657.46 | 4/20/2021 |
| 27 | | | $557.71 | $89.00 | $10.75 | $657.46 | 5/20/2021 |
| 28 | | | $557.71 | $89.00 | $10.75 | $657.46 | 6/20/2021 |
| 29 | | | $557.71 | $89.00 | $10.75 | $657.46 | 7/20/2021 |
| 30 | | | $557.71 | $89.00 | $10.75 | $657.46 | 8/20/2021 |
| 31 | | | $557.71 | $89.00 | $10.75 | $657.46 | 9/20/2021 |
| 32 | | | $557.71 | $89.00 | $10.75 | $657.46 | 10/20/2021 |
| 33 | | | $557.71 | $89.00 | $10.75 | $657.46 | 11/20/2021 |
| 34 | | | $557.71 | $89.00 | $10.75 | $657.46 | 12/20/2021 |
| 35 | | | $557.71 | $89.00 | $10.75 | $657.46 | 1/20/2022 |
| 36 | | | $557.71 | $89.00 | $10.75 | $657.46 | 2/20/2022 |
| 37 | | | $557.71 | $89.00 | $10.75 | $657.46 | 3/20/2022 |
| 38 | | | $557.71 | $89.00 | $10.75 | $657.46 | 4/20/2022 |
| 39 | | | $557.71 | $89.00 | $10.75 | $657.46 | 5/20/2022 |
| 40 | | | $557.71 | $89.00 | $10.75 | $657.46 | 6/20/2022 |
| 41 | | | $557.71 | $89.00 | $10.75 | $657.46 | 7/20/2022 |
| 42 | | | $557.71 | $89.00 | $10.75 | $657.46 | 8/20/2022 |
| 43 | | | $557.71 | $89.00 | $10.75 | $657.46 | 9/20/2022 |
| 44 | | | $557.71 | $89.00 | $10.75 | $657.46 | 10/20/2022 |
| 45 | | | $557.71 | $89.00 | $10.75 | $657.46 | 11/20/2022 |
| 46 | | | $557.71 | $89.00 | $10.75 | $657.46 | 12/20/2022 |
| 47 | | | $557.71 | $89.00 | $10.75 | $657.46 | 1/20/2023 |
| 48 | | | $557.35 | $89.00 | $10.75 | $657.10 | 2/20/2023 |
| 49 | | | | | | | |
| 50 | | | | | | | |
| 51 | | | | | | | |
| 52 | | | | | | | |

**Settlement Reserves above is only an estimate of the amount needed for settlement.**

Client Signature _____   [Sign Here]   Co-Client Signature _____   [Sign Here]

Print Name _____   Print Name _____

D

WHITESTONE LEGAL GROUP        ELECTRONIC COMMUNICATION VERIFICATION

## Electronic Communication Verification

Please print your email address on the line below:

████████████  _____

You will receive an email of the Letter of Engagement and other documents executed today in the next three (3) business days. In case you do not receive an emailed copy, due to faulty address or lack of email address provided above, you will still receive copies of these documents with your Welcome Package. The Welcome Package will be mailed to you once your first payment has cleared.

Please initial here to indicate you understand the above terms of email delivery:

**Initial Here**        Initial: _____  _____

E

WHITESTONE LEGAL GROUP        HARDSHIP AND BUDGET INFORMATION

# Hardship and Budget Information

## Reason for Hardship

| | |
|---|---|
| Temporary Loss of Work | Company Reduced Hours |
| Loss of Job | Pay Cut |
| Medical Problems | Disability |
| Personal Injury | Loss of Spouses Income |
| Divorce | ■ Other: _____ |

Please Briefly Explain Hardship: _

## BUDGET ANALYSIS                              (All information should be on a monthly basis)

| | | | |
|---|---|---|---|
| Client Net Monthly Income | $ 6,666.67 | Funds Available | $ 3,990.00 |
| Co-Client Net Monthly Income | $ 0.00 | | |
| Total Income | $ 6,666.67 | | |

| | | | |
|---|---|---|---|
| Mortgage/Rent | $ 1,874.00 | Household Items | $ |
| Home Owners Insurance | | Clothing | $ |
| Life Insurance | $ | Laundry/Dry Cleaning | $ |
| Medical Care | $ | Utilities | $ |
| Child Care / Support / Alimony | $ | Telephone | $ |
| Cable TV / Satellite | $ | Auto Loans | $ 675.00 |
| Charity / Donations | $ | Auto Other | $ 45.00 |
| Entertainment | $ | Auto Insurance | $ 83.00 |
| Gym / Health | $ | Education | $ 0 |
| Personal Care | $ | Student Loans | $ |
| Back Taxes | $ | Misc. / Other | $ |
| Food | $ | Total Expenses | $ 2,677.00 |

**By executing this agreement, you are representing that you have considered these other options and further, that you have provided us with accurate information, including your financial information and the state of your financial hardship as documented in your hardship statement.**

F

WHITESTONE LEGAL GROUP          BANKRUPTCY VS. DEBT NEGOTIATION

# Bankruptcy vs Debt Negotiation and Election of Services

## Bankruptcy and Debt Negotiation

Whitestone is a full-service debt resolution law firm which provides services including debt negotiation and restructuring and bankruptcy services. The following provides information about these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

## Bankruptcy

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy: Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged, such as your house or car, and are expected to repay debts in three to five years, and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments; however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

Whitestone is a debt relief agency under the United States Bankruptcy Code Sections 527 (a) and (b), and we are required to provide the following information and notice:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide—

(1)     The written notice required under section 342(b) (1); and

(2)     To the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that—
(A)     All information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B)     All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C)     Current monthly income, the amounts specified in section 707(b) (2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b) (2)), are required to be stated after reasonable inquiry; and

(D)     Information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

## IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

The following information will help you to understand what must be done in a routine bankruptcy case and will help you to evaluate how much assistance you may need. Although bankruptcy can be complex, many cases are routine.

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different

G

# WHITESTONE LEGAL GROUP

forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with the preparation of your chapter 13 plan and with the confirmation hearing on your plan which will take place before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code (other than chapter 7 or chapter 13), you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

# BANKRUPTCY VS. DEBT NEGOTIATION

**Debt Negotiation**

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, Whitestone will contact your unsecured creditors in writing to notify them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer Whitestone to attempt debt negotiation as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives, including those outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt resolution options and have determined that debt negotiation by Whitestone is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed all debt resolution options available to me including doing nothing, filing for bankruptcy and consumer credit counseling, and elect to pursue debt negotiation services with Whitestone, subject to my ability to request other alternatives, based on changes in my financial circumstances.**

**Sign Here** _____          _____
　　　　　　　Signature of Client                                        Date

**Sign Here** _____          _____
　　　　　　　Signature of Co-Client                                   Date

WHITESTONE LEGAL GROUP                    CREDIT UNION DISCLAIMER

## Disclaimer – Settlement of Credit Union Accounts

This confirms my/our understanding and acknowledgement that, in the experience of Whitestone, credit union debt accounts are often resolved for higher settlement amounts, meaning that such debts may cost me/us more to settle and result in smaller reductions from the debt amounts at the time of enrollment. For this reason, credit union debt accounts are excluded from Whitestone's Performance Standard in Section 2 of the Agreement and Whitestone provides no assurance that such debts will be settled for any amount.

I/we acknowledge that my current credit union account(s) that are to be enrolled into the program are NOT cross-collateralized with any other credit union obligation(s). I/we understand that in the event it is later determined that any enrolled credit union account is cross-collateralized with any other credit union obligation that any enrolled credit union account(s) would be removed from the program and become my sole obligation to be resolve in the manner I see fit.

Further, I/we acknowledge that Whitestone would thereby have no obligations to represent me regarding these accounts whether ongoing or in the future.



Client Signature                              Co-Client Signature

Client Name          Date          Co-Client Name          Date

WHITESTONE LEGAL GROUP                    STUDENT LOAN DISCLAIMER

# Disclaimer – Settlement of Private Student Loan Accounts

This confirms my/our understanding and acknowledgement that, in Whitestone Legal Group's experience, private student loan accounts may cost me/us more to settle and result in a smaller reduction from the debts at the time of enrollment. For this reason, private student loan accounts are excluded from Whitestone Legal Group Performance Standard in Section 2 of the Agreement and Whitestone Legal Group provides no assurance that such debts will be settled for any amount. I/we acknowledge that my private student loan account(s) that are to be enrolled into the program are NOT cross-collateralized with any other obligations with the same lending institution, are unsecured, and are not federally-backed loans. I/we understand that in the event it is later determined that any enrolled private student loan account does not meet the criteria above, Whitestone Legal Group shall have the right to remove such account from the program and the removed account shall become my sole obligation to be resolved in the manner I see fit. I/we acknowledge that Whitestone Legal Group would thereby have no obligations to represent me regarding any removed accounts whether ongoing or in the future.

Furthermore, I/we understand private student loan accounts tend to have significantly higher average enrolled balances than those of traditional unsecured credit obligations. Accordingly, I/we understand that private student loan accounts may require a longer period of time to resolve when compared to my/our other enrolled accounts.

_____  ◄ Sign Here     _____  ◄ Sign Here
Client Signature                                  Co-Client Signature

████████████████████        _____          _____          _____
Client Name                 Date                  Co-Client Name                   Date

WHITESTONE LEGAL GROUP         COMMUNICATION AUTHORIZATION

# AUTHORIZATION TO COMMUNICATE AND NEGOTIATE WITH CREDITORS AND COLLECTION AGENCIES

I (We) authorize Whitestone Legal Group. ("LAW FIRM") including its agents and representatives, to take the following actions:

1. Communicate with my (our) creditors, including but not limited to any agent, representative or third-party collection agency or law firm, and discuss any and all details of my (our) financial situation, all for the purpose of negotiating settlements of my (our) debt obligations; and

2. Obtain records, debt validations, credit reports and support for the debts allegedly owed on my (our) behalf.

I (we) affirm that all of the information that I (we) have or will provide to LAW FIRM is accurate, timely and correct. I expressly acknowledge that 1) LAW FIRM is a law firm that has been retained to provide me with legal advice and/or representation,

The recipient of this Authorization, whether by original, photo copy, facsimile or electronic copy is specifically authorized and instructed by the undersigned party(ies) to contact or receive communications from LAW FIRM or employees, regarding any of the purposes listed herein.

Client Name: █████████_____       Co-Client Name: _____

Date: _____       Date: _____

SSN#: ██████_____       SSN#: _____

Signature: _____ ◄Sign Here   Signature: _____ ◄Sign Here

K

WHITESTONE LEGAL GROUP                    POWER OF ATTORNEY

# Power of Attorney

I/We,_____,_____,

Located at_____,

In the City of_____, State of____ Zip_____,

hereby appoint the Whitestone Legal Group("Whitestone") as my/our attorney-at-law to do the acts described in this Power of Attorney. Whitestone (and/or its designees) is hereby authorized to act as my/our attorney and to fully represent me/us in any litigation or negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owning in my/our name. Litigation representation includes attendance at required court hearings, if applicable.

I/We authorize Whitestone to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize Whitestone to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on _____



_____                    _____
Client Signature                        Client Social Security Number

_____                    _____
Co-Client Signature                     Co-Client Social Security Number

State of_____ County of_____

The foregoing instrument was acknowledged by me this _____ day of _____, 20____

by: _____ who is/are personally known by me or who has/have

produced: _____ as identification and who did not take an oath.

Notary Public:_____

## WHITESTONE LEGAL GROUP                    AFFIDAVIT OF COMPLIANCE

# Affidavit of Compliance

I, _____ as representative affiliated with and under contract to Whitestone Legal Group, The Sands Law Group, LLP, in my role as a Member, Partner, Em███████████ntractor of Whitestone, confirm that I have conducted a personal and face-to-face presentation with _____████████████_____ (Client's Full Legal Name) to review Client's file and present all relevant information regarding Whitestone's representation of Client, as it relates to Whitestone's Client Retainer Agreement to provide legal representation on behalf of Client, including debt resolution and financial workout services. I confirm that Client has executed the Client Retainer Agreement on this date and such execution has taken place in my presence following my in-person meeting with Client. This Affidavit of Compliance establishes a written record to verify compliance with any and all applicable local, state or federal laws or regulations (collectively the "Applicable Laws"), including, but not limited, to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-08, and the Telemarketing Sales Rule, as amended, 16 C.F.R. Part 310; 75 Fed. Reg. 48458, 48522.

The following subjects were reviewed with Client in writing and, where appropriate, orally or in response to questions regarding such representation:

1) That debt resolution which alters the terms of payment of unsecured debt might have a negative effect on Client's credit and that Whitestone does not clean up, fix, or repair credit. The program may also result in Client being subject to collections or sued by creditors or debt collectors and may increase the amount of money the customer owes due to the accrual of fees and interest.

2) That the scope of Whitestone's representation of Client is specifically limited to the following:
   a. Determine which specific debt resolution option is most appropriate for Client, including an initial review of their budget, income and debt;
   b. Review Client's current unsecured debt burden and thereafter negotiate and attempt to negotiate settlements with Client's creditors in an effort to modify or restructure Client's current unsecured debt;
   c. Provide litigation defense as outlined in the Letter of Engagement.

3) A full review of all fees and costs associated with the representation of the Client.

4) That Whitestone maintains a Performance Guarantee for each individual account entered by Client into the Whitestone debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties, cost and late fees, as outlined further in the Terms and Conditions of the Engagement Letter. In the event that Whitestone does not meet this minimum standard for a particular account, it shall refund the pro rata share of all fees and costs paid to Whitestone for such work and Whitestone shall settle that individual account for Client at no additional cost. Exceptions to the minimum Performance Standard include: client skipping or defaulting on plan and/or settlement payments, Client's failure to accept a proposed settlement of at least a thirty-five percent (35%) reduction of an enrolled debt, any enrolled debts that become subject to a lawsuit during representation, any debts with a balance transfer or cash advance within six months of enrollment, any debts with a balance of less than $1,000 at time of this Agreement's execution, any debts with a credit union and any debt being garnished or subject to voluntary garnishment.

5) Client has been advised that the attorney or paralegal who conducted the initial meeting with Client limits their scope of representation or presentation to that initial meeting and review of the Client's file. The Client was made aware that the actual supervising attorney for their file may be a different attorney of the law firm who is licensed in their state.

6) A full review of the arbitration provision, including the fact that, by electing to go to arbitration, both parties are waiving certain rights, including the right to a trial in a court of law.

7) Client has been advised of and given an opportunity to review Whitestone's Privacy Policy.

**Names of all attendees:** _____

**Start Time:** _____ **End Time:** _____

**Location of Meeting:** _____

Have any materials been provided or presented to the attendees in addition to the Enrollment Documents, the Face to Face Script, and the Face to Face Power Point Presentation? _____    NO        YES        **(Circle One)**

If so, indicate here and scan/upload all such additional documents or materials: _____

**I affirm the above statements are true and accurate.**

Executed on this Date: _____

Representative on behalf of Whitestone:

Name: _____

Signature: _____

**I affirm the above statements are true and accurate.**

Client Name:___████████████_____ Signature:_____

Sign Here

M

WHITESTONE LEGAL GROUP   ACCOUNT INFORMATION AUTHORIZATION

# Account Information Authorization

I authorize Whitestone or its designee to provide my bank account information set forth below to the third party dedicated account holder in order to facilitate the establishment of my Dedicated Account.

Name on Account (Please Print): ███████████ _____

Bank Name: _____

Bank Address: _____

City:_____St:_____Zip: _____

Bank Phone #: _____

**Routing # |_____|___|___|___|___|___|___|___| Account # _____

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

_____          ████████████_____          _____
Authorized Signature on Account                    Printed Name                         Date

Attach Voided Check or Savings Deposit Slip Here

N



**ACCOUNT SERVICING AGREEMENT**
This Agreement sets forth the terms of the account management services offered to you by Reliant Account Management, LLC, Reliant Account Management Systems, both California limited liability companies.

RAM is in the business of processing payments to and from a trust account (including electronic and automatic transfers), making disbursements as directed, and providing on-line transaction and accounting information related thereto (collectively "Services"), for the users of debt settlement companies.  RAM is not an owner, employee, or partner of any debt settlement company, and provides the Services to Customer as an independent third party.

**APPOINTMENT**
Customer authorizes RAM to collect and deposit payments customer has agreed to make with Whitestone, (the "DSC"), and to initiate transfers from Customer's account indicated below at the depository financial institution named below, and to deposit and hold Customer's funds in a trust account established and serviced by RAM.  Customer agrees the trust account is non-interest bearing and may be located in California or any other state of RAM's choice.  Customer agrees that RAM will disburse from Customer's funds the then current service fees as stated below, and those of the DSC. Further, Customer agrees that RAM will disburse Customer's funds to pay Customer's creditors upon receipt of settlement instructions from the Customer or Customer's DSC. Customer may decline any disbursement to a creditor by notice three business days before the scheduled settlement payment. If Customer fails to notify RAM within that time, the disbursement will be automatically approved and RAM will make the settlement payment.  If Customer declines to disburse such settlement to the creditor, Customer understands that it may have changed their debt settlement agreement with Customer's DSC.  Customer may revoke this Appointment with a minimum of 5 banking days notice to RAM in the manner set forth below.  Customer acknowledges that the origination of Automatic Clearing House (ACH) transactions to my account must comply with the provisions of U.S. law.

**TRANSACTION, ACCOUNT INFORMATION, AND COMMUNICATIONS**
 Customer will be provided Internet access to Customer's account and transaction information.  Customer agrees that disclosures, accounting and transaction statements, disbursement verification, and any other communications may be distributed by electronic mail or through RAM'S website at www.RamServicing.com,. Customer acknowledges that Customer is able to electronically receive, download, and print such information and communications, unless Customer and RAM agree otherwise.  If Customer is unable to communicate electronically, Customer will notify RAM and reasonable alternative means of communication will be established.  Customer may provide notice to RAM at Reliant Account Management, LLC, P.O. Box 337, EAST IRVINE, CA  92650-0337 or fax at 949-859-1186.

**SERVICE FEES**
Customer authorizes RAM to charge the following fees for services rendered:
- Monthly Fee - $10.75

   *Other charges as applicable*
- Settlement Disbursement Fee (Overnight to Creditor/Pay By Phone) $10.00 ($3.00 which goes to RAM and $7.00 which goes to Whitestone Legal Group**)**
- NSF/Return Item $25.00 ($5.00 which goes to RAM and $20.00 which goes to Whitestone Legal Group)

**MISCELLANEOUS**
Customer agrees to indemnify and hold harmless, Ram, its officers, directors, agents, and employees, from any and all claims, demands, and damages arising out of a dispute between Customer and Whitestone Legal Group or creditors.

**DISPUTES**
Customer hereby agrees that any dispute arising between or among the parties shall be heard before a certified mediator with venue exclusively located in Orange County, California. Mediation may be attended telephonically or in person. In the event there is no resolution through mediation, any claim or dispute shall be submitted to arbitration with venue in Orange County, California and conducted in accordance with the commercial rules of the American Arbitration Association. Judgment upon any award may be entered into any court having jurisdiction. This AGREEMENT shall be governed by and interpreted in accordance with the Laws of the State of California. However, in the event of any litigation, venue shall be exclusively in Orange County, California, without reference of the rules of conflicts of laws there under, irrespective of the place of residence, or domicile, or business of the Parties hereto.
Customer understands that RAM may share information with its depository institutions, its affiliates, and with any other party
legally entitled to facilitate the transactions contemplated by this Agreement.
Customer authorizes RAM to initiate Automatic Clearing House (ACH) debits from my designated bank account as set forth below. I authorize RAM to debit my designated bank account according to the schedule of debits provided to RAM by me or on my behalf or as otherwise provided by agreement. Customer agrees that sufficient funds will be available in my designated account at least three (3) business days prior to the date of debit transfer. RAM is not liable to any person for not completing a transaction as a result of any limit on my designated bank account, or if a financial institution fails to honor any debit from such account. Customer agrees to notify RAM immediately if a scheduled debit will not or does not occur. Customer authorizes RAM to recover funds in the event of  an error in the event that a prior debit is returned for any reason, including non-sufficient funds.

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSITS (ACH DEBITS)**

I (we) hereby authorize RAM, to initiate debit entries to my (our) Checking Account / Savings Account (select one) indicated below at the depository financial institution named below, hereafter called DEPOSITORY, and to debit the same to such account. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. law.

This authorization is to remain in full force and effect until RAM has received written notification from me (or either of us) of its termination no fewer than three (3) days to afford COMPANY and DEPOSITORY a reasonable opportunity to act on it, or until the schedule of debits is completed.

**Customer One**

Name ▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮  Date of Birth

Street Address ▮▮▮▮▮▮▮  Phone Number ▮▮▮▮▮▮

City   State   Zip ▮▮▮▮▮▮   eMail Address ▮▮▮▮▮▮

**Customer Two**

Name _____  Date of Birth _____

Street Address _____  Phone Number _____

City   State   Zip _____  eMail Address _____

**Banking Information**

Bank Name _____  **$657.46**
First Draft Amount _____

City   State   Zip _____  **3/20/2019**
First Draft Date _____

Bank Name _____

Bank Routing Number _____
*(e.g. nine-digit ABA number)*

*Tip➡*  Your bank may have a separate routing number for ACH transactions. Please verify the routing number with your financial institution to prevent delays.

Bank Account Number _____

Type of Account (please check one) ☐ Checking ☐ Savings

Bank Account Holders Name _____

⑆ Routing Number ⑆   Account Number⑈   Check Number

*Note➡*  RAM may run a test of the ACH process (i.e. pre note) to be sure it is working properly. You may see a transaction on the account with a $0 charge.
I am the authorized signer, or otherwise have authority to act, this funding authorization on the account identified above.

Customer One Signature _____  Date _____   Customer Two Signature _____  Date _____