# EXHIBIT 5

UNITED STATES OF AMERICA
BEFORE THE CONSUMER FINANCIAL PROTECTION BUREAU

| | |
|---|---|
| In the Matter of:<br><br>**The Sands Law Group, LLP<br>(dba Whitestone Legal Group)** | **CIVIL INVESTIGATIVE DEMAND FOR<br>PRODUCTION OF DOCUMENTS AND<br>ANSWERS TO INTERROGATORIES** |

## RESPONSE TO CIVIL INVESTIGATIVE DEMAND

The Sands Law Group, LLP, dba Whitestone Legal Group ("Respondent"), which is represented by the undersigned law firm, responds to Interrogatory Nos. 1-11 and Request for Documents Nos. 1-5, promulgated by the Consumer Financial Protection Bureau (the "Bureau") in its March 11, 2020 Civil Investigative Demand ("CID") to Respondent, as follows:

### INTERROGATORY RESPONSES

1. List and describe Each step that a consumer must take to enroll in the Debt Relief Services that You offer, sell, or provide, including Each step that must occur during any in-bound telephone call, out-bound telephone call, and face-to-face sales presentation.

**RESPONSE:** Respondent is a law firm. To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients. A prospective client initially speaks to a representative of Whitestone Client Services, LLC ("WCS"), an unaffiliated company that is contracted with Respondent to provide administrative and support services. That representative will explain the general parameters of Respondent's debt settlement-related legal services, and will, if the prospective client is interested, obtain the prospective client's financial information to make an initial assessment of whether the prospective client fits within parameters established by Respondent. If that is the case, the representative reviews with the prospective client a script approved by Respondent that describes various aspects of Respondents' debt

settlement representation.  Respondent is producing a copy of its scripts for this call (and other calls).  After this call, the prospective client is asked to participate in a follow-up telephone call, without the representative participating, where the prospective client is asked to respond to a series of questions confirming that certain process steps, questions and explanations were provided by the representative.  In 2019, this call was converted to an automated format where the prospective client receives and responds to the questions via an IVR system.

If the prospective client wishes to proceed, WCS will schedule a face-to-face sales presentation with the prospective client.  That presentation is typically scheduled to occur at the prospective client's residence, or at a nearby location.  WCS, on behalf of Respondent, will typically contact a national mobile-notary provider (Respondent has contracts with several) who will find a state-licensed notary who can attend the face-to-face sales presentation.  The state-licensed notary is paid a flat fee for attending the presentation and his/her compensation is not based upon the prospective client's decision to purchase Respondent's services or the receipt of an executed agreement from the prospective client.

Respondent has provided the national mobile-notary providers with training materials, and the provider is instructed that no notary is permitted to participate in a presentation for Respondent unless and until the notary receives and reviews the training materials, and also takes (and passes) an online test, which is available at:

https://drive.google.com/open?id=19xnVoWMfrn2GJhTcQIkR757bnbad6NRP

[CONFIDENTIAL]; and

https://drive.google.com/open?id=1m4eHhclX7JPPSjOGqwDzBR56xU_Kxmpl

[CONFIDENTIAL].

The notary provider company is also provided with a complete copy of Respondent's

CONFIDENTIAL

retention agreement and enrollment materials, a copy of a separate agreement between the client and Reliant Account Management ("RAM"), a script that outlines the terms and conditions of Respondent's practice, as well as a printed PowerPoint presentation to show the prospective client. The provider is instructed to ensure that the notary has those materials and brings them to the presentation. The notary is also provided with an unsigned copy of Respondent's client retention agreement. During the face-to-face sales presentation, the notary is required to read from the script, to review the PowerPoint presentation with the prospective client (who initials each page/slide of the printed presentation), and also to review the retention agreement, enrollment materials, cancellation notice, and RAM agreement with the prospective client.

The notary is also trained and instructed that if the client has a question that goes beyond the notary's training or scripted materials, the notary must contact WCS, which will either answer the question, or, if the question involves a legal issue, WCS will forward the question to one of Respondent's attorneys to answer (please see also Respondent's responses to Interrogatory Nos. 7-8). At the conclusion of the face-to-face presentation, the notary is required to complete an affidavit attesting that he or she followed the appropriate procedures, and the prospective client is required to witness the notary's attestation.

Following the face-to-face sales presentation, the prospective client is contacted by one of Respondent's attorneys via telephone to confirm that the face-to-face sales presentation occurred, to respond to any questions the prospective client may have, to reiterate the salient points covered during the face-to-face sales presentation, and to assess the prospective client's suitability for debt settlement representation. At the conclusion of that telephone conference between attorney and prospective client, the prospective client is considered to be "approved" by the firm, but still does not become a client of Respondent unless and until he or she makes the first portion of his or her

CONFIDENTIAL

retainer payment into his or her dedicated account.   Respondent also refers the Bureau to the documents produced in response to this CID and to its response to Interrogatory No. 5.

2.  Describe the manner in which in-bound telephone calls are used in the marketing and sale of the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  When a prospective client chooses to contact Respondent via in-bound telephone call, Respondent accepts such in-bound telephone call and commences the process set forth in response to Interrogatory No. 1.

3.  Describe the manner in which out-bound telephone calls are used in the marketing and sale of the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:**  Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  When Respondent receives a lead about a person who has expressed interest in its services, a representative of WCS will place an out-bound telephone call to such prospective client to confirm that that he or she is indeed interested in learning more about Respondent's services.  If the prospective client confirms his/her interest, that will trigger the process set forth in response to Interrogatory No. 1.

4.  Describe Your use of face-to-face sales presentations with consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:**  Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Face-to-face presentations are made to all prospective clients and are one of several methods for providing information about Respondent's services to prospective clients (including the various calls, retention documents, and other information set forth in response to Interrogatory No. 1 and set forth in documents produced by Respondent).  During face-to-face sales presentations (as set forth in response to Interrogatory No. 1 and in the various materials produced in response to this CID), the notary provides the

**CONFIDENTIAL**

prospective client with a complete copy of Respondent's retainer agreement and, working from a presentation script created by Respondent, the notary: (1) presents information regarding Respondent's services using a printed copy of the PowerPoint slides; and (2) reviews the various sections and components of the client retainer agreement.  More specifically, during the course of a face-to-face sales presentation, the prospective client and notary cover the following subjects:

- The fact that debt resolution alters the terms of payment of unsecured debt and will likely have a negative effect on the prospective client's credit, and that Respondent's services do not include credit repair.
- That Respondent's services may result in the prospective client being subject to collections or sued by creditors or debt collectors and may increase the amount of money he or she owes to unsecured creditors due to the accrual of fees and interest.
- The scope of Respondent's legal representation of the prospective client, and the fact that such scope is specifically limited to the following services: (a) a determination of which specific debt resolution option is most appropriate for the client, including an initial review of his or her budget, income and debt; (b) negotiations and attempted negotiations of settlements with the prospective client's creditors in an effort to modify or restructure his or her current unsecured debt, after a more thorough review of the current unsecured debt burden; and (c) the provision of litigation defense to the prospective client as outlined in the Client Retainer Agreement.
- The total fees and costs associated with Respondent's representation of the prospective client.
- Respondent's performance guarantee.
- That the client will establish an account with Reliant Account Management (as described in the PowerPoint slide presentation, script, retainer agreement and enrollment documents), that the client owns and controls the dedicated account, that Respondent has no authority to exercise control over funds in that account, and that the client may withdraw from Respondent's representation at any time without penalty and receive all funds in the account other than those previously used for creditor settlements and any fees previously earned by Respondent under the terms of the client agreement.
- The fact that the representative who conducts the initial sales presentation with the consumer (*i.e.*, the face-to-face presentation) limits their involvement to that initial presentation and review of the prospective client's file and that an attorney from Respondent will be working on the prospective client's file if representation proceeds.

If, after receiving all the information and materials provided during the face-to-face presentation, the prospective client chooses to engage Respondent, the prospective client fills out, completes, and executes the client retainer agreement at the conclusion of the sales presentation.

CONFIDENTIAL

5. Identify all Persons who conducted face-to-face sales presentations with consumers who enrolled in the Debt Relief Services that You offer, sell, or provide. For Each Person You Identify, also provide the Person's employer at the time of the face-to-face sales presentation, the Person's job position at that time, and the number of face-to-face sales presentations the Person has conducted.

**RESPONSE:** Respondent is a law firm. To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients. Respondent is producing a list of persons who have conducted face-to-face presentations. That list is attached hereto as Exhibit 1.

6. Describe all training You provide to any Person who conducts face-to-face sales presentations with consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:** Respondent is a law firm. To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients. Respondent respectfully refers the Bureau to its response to Interrogatory No. 1, and further refers the Bureau to the training materials produced in response to the Bureau's document requests.

7. Describe the authority that Persons conducting face-to-face sales presentations have to answer a consumer's questions regarding the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:** Respondent is a law firm. To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients. The notaries who conduct the face-to-face sales presentations with prospective clients (as set forth in response to Interrogatory No. 1) have the authority to answer questions to the extent the answer to such question either is expressly provided in the face-to-face presentation script, training materials, or face-to-face presentation PowerPoint slides, or merely involves a scrivener matter with respect to Respondent's retainer agreement. The notary conducting the face-to-face sales presentation is instructed to

**CONFIDENTIAL**

contact a representative of WCS in the event the prospective client has questions that are not directly addressed in those written materials.

8. Describe any steps a Person conducting a face-to-face meeting must take if they are unable to answer a consumer's question regarding the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:**  Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  If, during a face-to-face sales presentation, a prospective client asks a question that requires an answer beyond the scope of the face-to-face presentation script, training materials, or PowerPoint slides or that involves more than a mere scrivening issue with the retainer agreement, the notary conducting the face-to-face sales presentation with that prospective client is required to contact WCS via telephone to obtain the answer.  If the answer involves a non-legal matter, WCS will provide additional information to the notary to allow them to respond to the prospective client; if the answer involves a legal matter, one of Respondent's attorneys will provide the answer.

9. Describe the services, if any, that Strategic Financial Solutions provides to You or to consumers who enroll in the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:**  Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Strategic Financial Solutions does not provide any services to Respondent.  However, Respondent does have a written agreement with WCS (which is a wholly-owned subsidiary of Strategic Financial Solutions) under which WCS provides (under the supervision of Respondent) certain administrative tasks associated with gathering information from prospective clients during the client intake process, compiling documents and information from clients during the course of representation by Respondent, and handling routine client communications.  WCS does not handle negotiations with creditors.  WCS

**CONFIDENTIAL**

also does not respond to legal questions and inquiries by clients.  Those are responded to by Respondent's attorneys.

      10. Describe the services, if any, that K2 Financial Management, LLC provides to You or to consumers who enroll in the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:**  Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  K2 Financial Management provides accounting, bookkeeping and banking-related services for Respondent.

      11. Provide for Each state the number of consumers who enrolled in the Debt Relief Services that You offer, sell, or provide.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent refers the Bureau to Exhibit 2 hereto.

## REQUEST FOR DOCUMENTS RESPONSES

      1.  Documents sufficient to show any policies and procedures governing face-to-face sales presentations made to consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide, including changes made to those policies and procedures during the Applicable Period.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent directs the Bureau to documents being produced with these responses.

      2.  Documents sufficient to show any policies and procedures relating to Your compliance with federal consumer protection laws, including the Telemarketing Sales Rules, 16 C.F.R. Part 310, and including changes made to those policies and procedures during the Applicable Period.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent directs the Bureau to documents being produced with these responses.

**CONFIDENTIAL**

3. Documents sufficient to show training provided to any Person who conducts face-to-face sales presentations with consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide, including changes made to training materials during the Application Period.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent directs the Bureau to documents being produced with these responses.

4. Documents sufficient to show all scripts, job-aids, or presentation aides related to face-to-face sales presentations with consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide, changes made to those materials during the Applicable Period.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent directs the Bureau to documents being produced with these responses.

5. Documents sufficient to show any agreements or contracts between You and Persons who conduct face-to-face sales presentations with consumers in the offering or sale of the Debt Relief Services that You offer, sell, or provide, including changes made to those policies and procedures during the Applicable Period.

**RESPONSE:** Respondent is a law firm.  To the extent Respondent provides "debt relief services" it does so in the context of providing legal services to its clients.  Respondent directs the Bureau to documents being produced with these responses.

Dated: May 26, 2020

/s/ Timothy D. Elliott
Timothy D. Elliott
Brian J. Murray
RATHJE WOODWARD LLC
300 E. Roosevelt Road, Suite 300
Wheaton, Illinois 60187
Tel: (630) 668-8500
telliott@rathjewoodward.com
bmurray@rathjewoodward.com
*Counsel for The Sands Law Group, LLP (dba Whitestone Legal Group)*

**CONFIDENTIAL**