

1700 G Street NW, Washington, D.C. 20552

January 23, 2024

Hon. Michael J. Roemer
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagra Square
Buffalo, NY 14292

Re: *CFPB et al. v. StratFS LLC et al.*, No. 24-cv-40

Dear Judge Roemer:

Plaintiffs the Consumer Financial Protection Bureau (CFPB) and People of the State of New York, by Letitia James, Attorney General of the State of New York, write to oppose the Defendants' and Intervenors' requests to enter a one-sided protective order, to permit the expansive discovery prematurely served on Plaintiffs' without authorization, and to modify the TRO entered by Judge Vilardo. As explained below, Defendants' and Intervenors' January 23, 2024 letter contains significant omissions and distortions and does not establish a proper basis for the relief sought. Each of their requests should be denied.

1. <u>Defendants' and Intervenors' request for a protective order is premature.</u>

Defendants' and Intervenors' request for a protective order is premature, and the product of racing to this court to request entry of a one-sided and inadequate protective order rather than engaging in serious discussion with Plaintiffs on the issue.

Defendant Sasson and Relief Defendants Blumkin and Behar are the only parties who raised the issue of a stipulated protective order with Plaintiffs, and they did so for the first time yesterday late Monday, January 22, after failing to produce their Court-ordered financial disclosures pursuant to section IV of the TRO on the day they had previously agreed to do so. Plaintiffs had a call with counsel for Defendants Sasson, Blumkin, and Behar on January 19, 2024, and agreed to extend the deadline for them to provide disclosures until January 26, except for Attachment A for Defendant Sasson and Attachment B for his company Duke Enterprises, both of which Sasson's counsel agree to provide by January 22. In the late afternoon on January 22, however, counsel for Sasson, Blumkin, and Behar sent Plaintiffs an email informing them that they would not be providing the Court-ordered disclosures unless Plaintiffs immediately agreed to a overbroad stipulated protective order. *See* Ex 1. Among other things, that order would make confidential any "financial information," information related to "wages and income[,] benefits[,] employe evaluations," and other categories of information, and makes any such materials presumptively required to be filed under seal. *But see Blom, ASA v. Pictometry Int'l Corp*., No.

10-CV-6607L, 2011 WL 13210083, at *1 (W.D.N.Y. July 19, 2011) (presumption that matters filed in court should be filed publicly, and blanket requests to seal documents are disfavored); *Imig, Inc. v. Omi Elec. Appliance Compay Co.*, No. 16-cv-0628, 2021 WL 9628853, at *1 (E.D.N.Y. Jan. 11, 2021) (court should make the determination to seal documents on the basis of a careful, document-by-document review).

Notably, Defendants fail to mention that Plaintiffs committed to "treat these documents with the requisite sensitivity pending entry of a formal protective order," and agreed that the parties "will eventually need a stipulated protective order in this case." Plaintiffs further advised counsel for Sasson, Blust, and Behar that they would "send a counterproposal when time permits." Ex. 1. Defendants did not discuss this issue further with Plaintiffs before asking the Court to enter an overbroad protective order with no input from Plaintiffs.

Plaintiffs stand ready to negotiate on appropriate terms for a proposed order. Given the number of parties involved in this matter—including not just the CFPB but also seven independent state attorneys general's offices and multiple categories of Defendants and Intervenors—Plaintiffs were unable to agree to Defendants' proposed order and complete negotiations on appropriate language for a protective order on Defendants' preferred timeline. Indeed, Plaintiffs are all government agencies and offices who are bound by a variety of statutory provisions and policies governing privacy, confidentiality, and the disclosure of documents and information, *see, e.g.*, 12 C.F.R. Part 1070, N.Y. Pub. Off. L. Art. 6 (FOIL), and a number of the provisions in the protective order Defendants and Intervenors ask the Court to enter fails to account for such legal obligations. For example, the CFPB cannot agree to a consent order, such as the one submitted by Defendants and Intervenors, that unlawfully contradicts statutory requirements to make affirmative disclosures to the Attorney General of the United States under 12 U.S.C. § 5566. New York similarly cannot agree to entry of a protective order that contravenes its disclosure obligations under FOIL.

Plaintiffs remain willing to work with the parties to this matter to prepare a joint proposed protective order to submit to the Court over the coming days. Accordingly, Plaintiffs respectfully request that the Court allow the parties until January 30, 2024, to attempt to reach agreement on and submit a joint proposed protective order, or if negotiations are unsuccessful, to file proposed orders for the Court's consideration.

    2.   <u>Defendants' and Intervenors' request for expedited discovery is overbroad and illogical.</u>

The TRO unambiguously only provides for limited expedited discovery on certain topics, namely: "(1) the Assets of the Asset-Freeze Defendants; (2) location of Documents; (3) the identities of injured Consumers; (4) information related to Defendants use of third-party notaries; and (5) compliance with this Order." (ECF No. 12 at 39-41.) Despite this limitation, on the evening of Monday, January 22, and on Tuesday, January 23, without any legal basis to do so or permission from the Court, counsel for the Intervenor Firms served broad merits discovery on Plaintiffs and issued third-party subpoenas, demanding expansive document production and interrogatories not relevant to the pending preliminary injunction hearing, and that improperly seek plaintiffs' internal investigation information, which is neither relevant nor within the scope of discovery in Rule 26(b)(1) because it is privileged or work product protected material. Further, the requests seeks discovery not limited to the topics in the TRO by including a demand to Plaintiffs to "[p]roduce all documents obtained by you from any other party or subpoena

recipient in discovery in this case." Since Plaintiffs built their case with records obtained from third-parties, this request essentially seeks all documents in Plaintiffs' possession relating to this matter. Plaintiffs asked counsel for the Intervenor Firms to withdraw their unauthorized subpoena and discovery requests. They failed to respond.

While counsel for Defendants Sasson, Blumkin, and Behar made some effort to seek agreement before unilaterally serving Plaintiffs with legally unauthorized discovery requests, their requests are equally overbroad. They asked Plaintiffs to consent to them serving discovery requests relating "to the allegations and arguments expressly referenced in the Complaint, Motion for TRO, and supporting declarations." Given that this is essentially full merits discovery, Plaintiffs declined and instead informed them that "[i]f you have focused requests relating to the topics upon which the Court has permitted Plaintiffs to take limited expedited discovery, please let me know what those request are and we will consider them." They did not respond with any such requests. And they did not seek permission from the Court to take discovery. Instead, on the evening of January 23, 2024, they too served unauthorized subpoenas for testimony.

While Defendants now style their requests as seeking discovery on the "same five topics as the Government" this is not consistent with what they initially conveyed to Plaintiffs. In any event, applying these topics reciprocally would be non-sensical. Defendants already know what and where their assets are and the location of their documents, and they are uniquely well positioned to determine whether they have complied with the Court's TRO. To the extent Defendants seek information about injured consumers (their customers) or notaries (with whom they and the intervenor law firms contract) that information is already in their possession, custody, and control or, if need be, can be sought from the Court-appointed Receiver. In light of the preexisting and deep knowledge defendants have about their own business and affairs, it is unsurprisingly common for courts to grant unilateral expedited discovery to plaintiffs in similar cases; indeed, this Court authorized similar relief in *FTC v. Campbell Capital*, No. 18-cv-1163-LJV-MJR, 2018 U.S. Dist. LEXIS 186728, at *11 (W.D.N.Y. Oct. 24, 2018) (Roemer, J.) (authorizing Plaintiffs to take limited expedited discovery).

Defendants make much about the volume of depositions Plaintiffs noticed but fail to explain that the vast majority of those are depositions of notaries that are expected to last no more than one hour each. Plaintiffs have noticed a number of in-person depositions of notaries in the Attorney General's Buffalo and Rochester Regional Office for this coming Friday, January 26, and Monday, January 29. The Bureau has similarly noticed depositions at its headquarters in Washington, D.C. for notaries local to that area. Plaintiffs expect that, despite issuing subpoenas, many of these witnesses may not attend and Plaintiffs do not have time to move to compel their attendance prior to the preliminary injunction hearing. In total, the depositions noticed by Plaintiffs will take up only a few days of testimony time.

And while Defendants make much of "overlapping depositions," they fail to note that these overlaps are occurring largely because Plaintiffs have accommodated requests from non-party witnesses' counsel and other defense counsel to reschedule depositions. When Defendant Sasson raised a family conflict with his deposition on Friday, January 26, 2024, Plaintiffs' counsel agreed to take his deposition on Sunday instead. Plaintiffs are similarly working to accommodate a conflict identified by Defendant Blust.

Finally, Defendants insistence that they be permitted to take discovery is particularly audacious since all Defendants (other than Blust) are wildly overdue in their Court-ordered disclosure and discovery obligations. Corporate financial disclosures from the SFS Defendants ordered by Judge Vilardo in the TRO (Section IV) were due on January 18, 2024, and still have not been provided despite repeated requests from Plaintiffs. Similarly, counsel for Defendant Sasson agreed with Plaintiffs to provide his Personal Financial Disclosure (TRO Attachment A) and his Corporate Financial Disclosure for his company (TRO Attachment B) by January 22, 2024, but then failed to produce those documents. This date was already four days after those documents were ordered to be provided under the TRO. And in response to Plaintiffs' requests for production, Defendant Sasson produced no documents whatsoever.

3. <u>Defendants' and Intervenors' request to modify the TRO should be denied.</u>

Defendants ask the Court to modify the TRO entered by Judge Vilardo on January 11, 2024, to direct the Receiver to permit negotiators to continue negotiating debts. Defendants fail to mention that the Receiver noted in a status report filed yesterday, January 23, that he had considered their request but had been unable to determine whether resumption of such activity would be lawful. (ECF No. 56 at 4.) This is unsurprising. Indeed, Plaintiffs' investigation of this matter uncovered numerous calls where negotiators appeared to lie to creditors including by repeating the same verbatim story as to why a consumer could not pay their debts because they were "disabled" and unable to work. In one call, right after telling this story to a creditor, the negotiator then reached the consumer while she was at work. Plaintiffs can provide recordings of these calls to the Court to the extent it would like to review them.

Defendants fail to articulate what harm will occur from negotiators being unable to negotiate for another two-week period while the Court considers whether to issue a preliminary injunction and the Receiver determines whether the business can be operated lawfully and profitably. While Defendants and Intervenor Firms point to issues with "unprocessed notices" and "documents relating to litigation," they fail to note how non-attorney *negotiators* would be relevant to the Intervenor Firms' ability to handle litigation. Moreover, they fail to acknowledge that the Receiver has already approved a level of staffing that he has determined, "after significant consultation with Receivership Defendants' executives," to be "the reasonable minimum staffing necessary to carry out essential client-services functions," including "administrative litigation support and communications with clients on behalf of the law firms." (ECF No. 56 at 6.) Thus, the Court should deny Defendants' and Intervenors' request.

Sincerely,


Respectfully,
/s/
Vanessa Buchko
Monika Moore
Joseph Sanders
Consumer Financial Protection Bureau

Christopher L. Boyd
State of New York

Attachments