# EXHIBIT 11

NORTHSTAR
LEGAL GROUP

Address:

**121 N Washington Ave.**

**4th Floor,**

**MINNEAPOLIS, MN 55401**

This document is a legally binding agreement confirming that you ("Client") and Northstar Legal Group LLC ("Northstar") wish to form an Attorney / Client relationship.

Pursuant to this Agreement's terms, Northstar will assist you with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program. In return for Northstar's services, you agree to pay specific amounts to Northstar, as specified in this Agreement and its enclosures.

Client is retaining Northstar to help resolve specific debts that Client cannot reasonably satisfy according to existing terms. These specific debts are listed in this Agreement.

Client must pay as agreed for Northstar to operate as contemplated in this Agreement. The law firm puts in place a customized strategy based on the individual client and their debts in order to effectuate the goals of the law firm's representation. Following this strategy, Northstar's ability to resolve the proposed debt load is projected to take a number of months and an amount of payments listed in this document. A variance from this strategy, including Client's failure to make timely payments, will directly affect Northstar's ability to perform as agreed.

Northstar holds itself to a standard of minimum results even though Creditors are under no obligation to negotiate with you, Northstar, or anyone else. Northstar takes this risk in exchange for Client's promise not to unreasonably withhold consent when presented with offers to settle debts.

The specifics of Northstar and Client's responsibilities and expectations with regard to this relationship are discussed in this Agreement in the following order:

1. **LEGAL SERVICES NORTHSTAR PROVIDES**
2. **FEES AND COSTS OF SERVICES PROVIDED**
3. **NORTHSTAR'S PERFORMANCE STANDARD**
4. **TERMINATION OF REPRESENTATION**
5. **FURTHER IMPORTANT TERMS AND DISCLOSURES**
6. **ARBITRATION AGREEMENT**
7. **CLASS ACTION WAIVER**

**Following the Attorney / Client Agreement are various notices, disclosures, schedules, lists, and authorizations related to this Agreement's terms. All enclosed documents are material to Northstar's representation of Client, and are incorporated into this Agreement.**

# CLIENT INFORMATION

| CLIENT | | |
|---|---|---|
| Full Name:<br>Jason [redacted] | DOB:<br>[redacted] | SSN:<br>[redacted] |
| Address:<br>[redacted] | City<br>[redacted] | State, Zip Code:<br>MN 56701 |
| Home Phone:<br>[redacted] | Cell Phone: | Email Address:<br>[redacted] |

| CO-CLIENT | | |
|---|---|---|
| Full Name: | DOB: | SSN: |
| Address: | City | State, Zip Code: |
| Home Phone: | Cell Phone: | Email Address: |

## PROPOSED PROGRAM INFORMATION

| | |
|---|---|
| Total Unsecured Debt:<br>$22,091.00 | *Estimated Program Length (months):<br>38 |
| Date of First Payment:<br>10/15/2023 | Program's Payment Amount:<br>$497.49 |
| *Estimated Total Payments:<br>$18,904.26 | |

* - The estimates provided above are just that – good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.

# 1. LEGAL SERVICES NORTHSTAR PROVIDES

Northstar's services are performed by a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform. Northstar will perform the various services described in this section.

## 1.1. DEBT ANALYSIS

Northstar will review Client's personal hardship and other debt circumstances and formulate a plan to negotiate improved terms.

## 1.2. NEGOTIATE AND RESOLVE CLIENT DEBT

Northstar will represent Client in the negotiation and resolution of the unsecured debts listed in the Creditor List enclosed with this Agreement. Representation related to any debt is governed by the promises and limitations discussed throughout this Agreement.

## 1.3. SERVICES OUTSIDE SCOPE OF REPRESENTATION

Northstar's services are limited to those specifically listed above. This means that Northstar will not provide accounting, financial planning, or tax advice. Northstar does not engage in credit repair or credit reporting. Northstar does not attempt to resolve debts on which a judgment has been obtained. Bankruptcy services, and defense or prosecution of any debt not listed in this agreement are outside the scope of representation. Further, Northstar cannot guarantee that creditor or collector harassment will cease at any point in the representation. However, under some circumstances, Northstar may take appropriate legal action against creditors or collectors engaged in illegal activity.

## 1.4. WORK PERFORMED BY CONTRACTED PARTIES

Northstar may contract work relating to this Agreement to third parties for such tasks including, but not limited to customer. Northstar attorneys will supervise all third-party entities to ensure contracted services comply with Northstar's rules and regulations.

## 1.5. LITIGATION DEFENSE

Northstar will advise and represent Clients in their defense of litigation initiated by creditors or collectors to recover debts listed in this Agreement. Northstar attorneys are immediately notified of litigation, and may be assigned to address any litigation served on Client after the effective date of this Agreement. Litigation services are further conditioned and limited by other terms of this Agreement, circumstances of practicality, and jurisdictional rules.

## 1.6. CONDITIONS OF THIS AGREEMENT'S EFFECTIVENESS

a. This Agreement does not take effect, and Northstar has no obligation to provide any services, until both Client and Northstar have executed a copy of this Agreement and such copy is delivered to both Parties.
b. Further, this agreement does not take effect until Client has paid the initial payment of the flat fee retainer as set forth in the payment schedule enclosed, and the payment has cleared.

## 1.7. ASSISTANCE IN DEALING WITH DIFFICULT CREDITORS

It is important to understand that Northstar cannot force a creditor to negotiate your debt. Although Northstar will not accept a debt into the program from creditors it knows will not negotiate debts, there are times when a creditor that has negotiated with Northstar in the past may refuse to negotiate a debt. In such instances, the Northstar attorneys or negotiators may require your assistance in participating in the negotiation process.

Northstar personnel will provide you with the information you will need in order to contact your creditor directly in an effort to reach a satisfactory settlement. If Northstar cannot successfully negotiate a debt for you, even with your assistance, it will refund to you the portion of your fees associated with that debt.

### 1.8. TIMING AND AMOUNT OF SETTLEMENT OFFERS

Northstar will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt, whether on a lump-sum or installment basis, may be made, with such factors as the creditor's settlement policies, the rate of account accretion, the size of each debt and how close a debt may be to charge-off. Some creditors prefer that they not be contacted until you have accumulated sufficient funds in your Dedicated Account to allow a negotiated resolution within their historic norms. While settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt.

### 1.9. LITIGATION DEFENSE: SERVICES / CONDITIONS AND LIMITATIONS

Creditors and/or debt collectors may file lawsuit(s) against Client in order to collect non-payment of owed debt(s). Northstar will provide Litigation Defense Services in the event the client receives a Summons and Complaint. The Litigation Defense Services will include work done in court and/or negotiations out of court. Northstar's Litigation Defense Services and limitations include:

#### SERVICES

1. Northstar will receive, review, and analyze any summons, complaint, petition, application, or other operative pleading the client has received.
2. Northstar will evaluate potential legal defenses to the Plaintiff creditor's suit.
3. Northstar will review, analyze, and counsel Client regarding collection activity and debt restructuring associated with the litigated debt.
4. Northstar will engage with the Plaintiff or its hired legal counsel on Client's behalf to negotiate a resolution of the litigation.
5. Northstar's attorneys may determine that a valid defense exists to the law suit, or that the suit is defective in some way favorable to Client. This determination varies by jurisdiction, current legal trends, and the personal knowledge of the local attorney.
6. If Northstar's assigned attorney determines that Client is likely to gain a favorable result through continued defense of the litigation, he or she will prepare and file responsive pleadings on the Client's behalf, appear at subsequent court proceedings, and continue defense through various stages of litigation, including trial, if prudent.
7. If Northstar determines in its sole discretion that it does not have a good faith basis to assert a defense to the litigation on Client's behalf, Northstar will communicate this determination to the Client and discuss alternative potential strategies for resolving the litigation. In such cases, Northstar's strategy may include, but would not be limited to, engaging in out of court negotiations directly with the creditor. No fees for Litigation Defense Services will be charged if Northstar determines it cannot provide a defense to the litigation.

#### CONDITIONS AND LIMITATIONS

1. All pages of any summons, complaint, exhibits, petitions, and/or other pleadings served to the client must be submitted to Northstar.
2. All lawsuit paperwork must be submitted to Northstar no less than fifteen (15) days prior to the lawsuit response date, or immediately upon the client's receipt of lawsuit paperwork.
3. If the litigation is in a State that permits less than fifteen (15) days' notice, all lawsuit paperwork must be submitted no less than seven (7) days prior to lawsuit response date.
4. All lawsuit paperwork must be submitted to Northstar at their fax number 866-412-8381 or email address cs.northstarlegalgroup.com.
5. The "Retainer Fee," outlined in the enclosed Payment and Fee schedule, must be paid in full, or payments must be current on any agreed payment plan specific to the "Retainer Fee" in order for Northstar to provide Litigation services.
6. Northstar is not required to provide Litigation Services on any lawsuit of which the Client had knowledge prior the execution of this Agreement with Northstar. Knowledge of a lawsuit is typically determined by service of process (delivery of a legal complaint to a party being sued).
7. Northstar will not provide Litigation Services related to debts which are not included in this Agreement, or any attachments or amendments to this agreement made prior to Client's knowledge of the lawsuit.

# 2. FEES AND COSTS OF SERVICES PROVIDED

Northstar's fees are payable according to the following terms. All fees are charged on a flat fee basis according to the Payment Schedule enclosed with this Agreement. The estimated total fees for Northstar's services are $ 8105.39 including the Retainer Fee, Monthly Legal Administration Fees and Service Costs described below.

## 2.1. RETAINER FEE AND MONTHLY ADMINISTRATION FEES

a. Client will pay Northstar a total of $1,250 as a Retainer Fee, paid over 20 months. This Retainer Fee shall be paid as follows: 20 payments of $50, and thereafter 20 payments of $12.50.

b. In addition, Client shall pay an ongoing monthly flat Legal Administration Fee of $ 69.95 for debt review, debt resolution plan analysis and structuring, supervision of and participation in creditor negotiations, pre-litigation settlement support, and the Litigation Defense Services described in Section 1.6 of this Agreement. The estimated total Legal Administration Fee is $ 2,658.10 based on Northstar's estimate that it will take a total of 38 months to settle Client's debt.

c. Client shall be responsible for Legal Administration Fees for all months Client remains active with Northstar.

## 2.2. SERVICE COST – RELATED SERVICES

In addition to the legal services provided by Northstar, there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of Northstar's attorneys. These services are provided at a cost equal to 19% of the Client's total scheduled debt (hereinafter referred to as Service Cost). The Service Cost shall be paid by Client to Northstar in equal consecutive monthly payments in the amount of $110.46 per month, totaling 4,197.29.

Northstar has a non-exclusive reciprocal referral agreement with independent contractors to provide these services under Northstar's direct supervision. Representatives of such independent contractors cannot and will not provide any legal advice to the Client, and any such advice will only be communicated to Client by Northstar. Although these services are performed under Northstar's supervision, a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services, and communications between Client and the independent contractor representatives might not be protected by attorney- client privilege.

## 2.3. ADDITIONAL FEES

In certain circumstances in which Client makes request of the law firm or Client fails to make one or more of the payments described in this Agreement, the law firm may charge Client a related fee as follows:

| EVENT | WHAT IS IT? | HOW MUCH? | WHY THE LAW FIRM CHARGES IT |
|---|---|---|---|
| Non-Sufficient Funds (NSF) | Your dedicated account has insufficient funds to make your scheduled monthly payment | $25.00 | NSF's require the law firm to make adjustments to your program schedule arising from the missed payment |
| Adding or Removing a Debt | You request to add or remove scheduled debts | $25.00 | The law firm must adjust your program schedule and prepare and obtain a written amendment to add or remove debts from your program |
| Payment Plan Change | You request a change to your monthly payment schedule | $19.95 | The law firm must communicate to and coordinate your requested changes with your dedicated account provider |
| Banking Change | You request a change in the bank account from which you are sending funds to your dedicated account | $25.00 | The law firm must communicate to and coordinate your request with your dedicated account provider to register a new bank account |
| Renegotiation of Existing Settlement | The law firm renegotiates a previously resolved settlement with one of your creditors | $299.00 | The law firm must spend additional time renegotiating a settlement previously negotiated for you with a creditor as a result of your action or inaction |

Initial Here

Initial: [redacted]

## 2.4. APPLICATION CLIENT OF FUNDS

All funds paid by Client will be saved in a Dedicated Account that is owned by Client and held by a third party dedicated account holder (See Dedicated Account Agreement) for use in making payments toward any settlements negotiated paying Northstar's fees under the terms of this Agreement.

**All funds in Client's Dedicated Account shall remain under Client's control at all times, and may be withdrawn by Client at any time without penalty. If Client notifies Northstar or the third party dedicated account holder of a request to withdraw their funds, Client shall be entitled to receive all funds in the Dedicated Account, other than any funds that have previously been earned by Northstar under the terms of this Agreement, within seven (7) business days of such request.**

It is strongly recommended that Client retain all funds available for settlement payments and fees to allow Northstar the greatest ability to effectively represent Client under the terms of this Agreement.

## 2.5. METHOD OF PAYMENT

Under this Agreement, Client agrees:

a. to have Client's initial flat fee retainer and subsequent fees and costs as outlined above based on the attached Payment Schedule to be automatically drafted by Client's third party dedicated account holder from Client's bank account into an authorized Federal Deposit Insurance Corporation ("FDIC") insured bank account held in Client's name (the "Dedicated Account") with Client's first payment to start on 10/15/2023, and thereafter each month on the 15th day; and

b. to have Client's payments of Service Cost and settlement savings fund payments based on the attached Payment Schedule to be automatically drafted from Client's bank account into the Dedicated Account held in Client's name with Client's first payment to start on 10/15/2023 and thereafter each month on the 15th day.

## 2.6. EARLY PROGRAM COMPLETION AND PRE-PAYMENT OF PROGRAM FEES

If Northstar resolves all debts listed in this Agreement before the scheduled date of Client's final Service Cost payment, Client must continue to make all payments for the Service Cost and Retainer outlined in this Agreement. However, Client will not be responsible for any Legal Administration Fees following the date that a settlement agreement is entered on the final listed debt. Client can pay off their program early with no pre-payment penalties.

## 2.7. COSTS OF LITIGATION SERVICES – COURT AND TRIAL PREPARATION COSTS

a. Client must pay all costs associated with Litigation Services, including the payment of any court filing fees or any other court-imposed costs associated with the litigation. These costs vary by jurisdiction. Northstar will NOT advance such costs. Client acknowledges that failing to timely pay necessary costs may have adverse consequences, including but not limited to entry of judgment against Client in the litigation.

b. If a litigated matter proceeds to trial, Client shall also be required to pay the costs associated with Northstar's trial preparation, which the parties hereby agree in advance shall be set at three hundred fifty dollars ($350.00) per trial (the "Trial Costs"). Trial Costs commonly include but are not limited to, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, travel costs including parking, mileage, transportation, meals, and hotel costs, investigation expenses, and other similar items. The Trial Costs must be paid sixty (60) days before the scheduled trial date unless otherwise agreed upon by Northstar and the Client. The Client shall not be responsible for, and shall be refunded the Trial Costs if the litigation is settled at least thirty (30) days before the trial date.

## 2.8. INCREASES IN BALANCES OF ACCOUNTS SUBJECT TO REPRESENTATION

a. Client acknowledges and agrees that Client will not continue to incur any additional debt on any accounts subject to this Agreement, other than late fees, interest, and penalties.

b. Client's program fees, program length, and draft amounts may increase due to any additional balances incurred by Client.

# 3. NORTHSTAR'S PERFORMANCE STANDARD

Northstar has a set Performance Standard for each debt enrolled in the Debt Resolution Program. Northstar sets a target debt reduction of minimally thirty-five percent (35%) of amount owed on the debt at the time the Agreement is executed. If Northstar is unable to meet this target debt reduction, Northstar will refund the share of all Northstar fees & costs for work on this individual debt.

**3.1. TERMS AND CONDITIONS AFFECTING PERFORMANCE STANDARD:**

a. Client must be in complete compliance and cooperation with Northstar under the terms of this agreement.
b. Client's payments must be current under the Service Cost obligations and cannot default on payments to Creditors pursuant to settlement of any listed debt.
c. Client may not be entitled to a refund if Client is unwilling or unable to accept a proposed settlement at a reduction of thirty-five percent (35%) of enrolled debt at time that settlement is secured by Northstar.
d. If Northstar is unable to settle Client's listed debts, the refund shall be calculated on a pro rata basis as to Service Cost paid per each individual debt.
e. The Performance Standard does NOT apply to any enrolled debt that becomes subject to a lawsuit during representation. Client will be required to notify Northstar of any lawsuit, at which time the Performance Standard will cease to apply, and Litigation Services will commence.

**3.2. PERFORMANCE STANDARD DOES NOT APPLY TO THE FOLLOWING TYPES OF DEBT:**

a. Any debt with a balance transfer or cash advance which occurs within six months of enrollment;
b. Any debt with a balance of less than one-thousand dollars ($1,000.00) at the time of this Agreement's execution;
c. Any debt which is subject to a lawsuit at the time of this Agreement's execution;
d. Debts being garnished, or subject to voluntary garnishment are also excluded from this provision;
e. Any debt with a credit union. Northstar will endeavor to settle such debts on behalf of Client on the best terms possible, but cannot guarantee that such settlements will meet the Performance Standard.
f. Debts that are charged off or written off by a creditor or become uncollectable, as a result of Northstar's strategy, shall be considered approved settlements. As an approved settlement, these debts will not be subject to any refund.
g. Client must complete all payments as listed and hereafter amended in order to provide Northstar with the opportunity to settle all enrolled debt on the Creditor Listing enclosed. Any refund may be disqualified if Client terminates representation prior to completion of payments contemplated in this Agreement.

**3.3. BANKRUPTCY AND OTHER ALTERNATIVES**

Northstar may discuss alternative legal routes in the event of changing circumstances on any enrolled debt(s), such as Chapter 7 & 13 Bankruptcies.

**3.4. SHOULD CLIENT DEFAULT ON NEGOTIATED SETTLEMENT TERMS**

Northstar is not required to renegotiate any debts that enter default after Northstar has arranged payment terms, and those terms were agreed to by Client. Client may request Northstar renegotiate such debt, and will be subject to an additional fee of two-hundred-ninety-nine dollars ($299.00) per renegotiation at the client's expense. Client must also comply with following terms for renegotiation(s):

a. The Representation Standard provision only applies to the balance of enrolled debt, not accounting for payments made on initial settlement prior to default.
b. Renegotiation may result in the settlement amount increasing.

**Client understands & agrees they are not entitled to any refunds under the Performance Standard if any of the above terms are not met.**

# 4. TERMINATION OF REPRESENTATION

## 4.1. TERMINATION BY CLIENT

Client may terminate this Agreement at any time, and for any reason. Should Client terminate this Agreement before all debts subject to the representation are resolved, all savings and unearned fees in Client's Dedicated Account will be refunded to the Client.

## 4.2. TERMINATION BY NORTHSTAR

This Agreement may be terminated by Northstar at any time for good cause, and upon reasonable notice to Client. In addition, subject to any applicable legal and ethical standards governing Northstar's right to withdraw representation, Northstar may withdraw from representing Client in any litigation under the terms of this Agreement either with Client's consent, or with the permission of the court in which such litigation is pending.

## 4.3. DEFINITION OF "GOOD CAUSE" FOR TERMINATION BY NORTHSTAR

a. **Client's Failure to Cooperate with Northstar.** Client must cooperate and comply with all reasonable requests by Northstar and its agents in connection with the services to be performed under this Agreement, including requests for information and documentation, responses to settlement offers, and matters related to any litigation. Client acknowledges and agrees that failure to cooperate with Northstar is grounds for Northstar to terminate this Agreement and/or to withdraw from representation of Client in any litigation associated with the Client's failure to cooperate.

b. **Failure to Pay Fees and Costs.** If Client fails to pay the legal fees and Service Costs required under the terms of this Agreement, Northstar may terminate this Agreement and withdraw from representation of Client in any litigation associated with this Agreement.

c. **Failure to Pay Costs of Litigation.** In the event that Client fails to pay any of the court filing fees or other fees or costs associated with the litigation of a listed debt, Northstar will not be responsible for acting in response to the lawsuit until such time as the fees or costs associated with the filing have been received by Northstar. Moreover, Client agrees and acknowledges that the failure to pay the three hundred fifty dollar ($350.00) Trial Costs associated with a trial in a timely manner shall constitute sufficient grounds for Northstar to withdraw from representing Client in connection with the lawsuit.

d. **Failure to Follow Northstar's Advice on Reasonable Settlements.** Client agrees and acknowledges that Northstar has an obligation to Client as both a counselor and as an advocate, and that the underlying purpose of the Representation is to negotiate settlement of Client's debts. In the event that Northstar negotiates a reasonable settlement offer and advises the Client to accept, Client agrees that he or she shall not unreasonably withhold consent to accept the offer. Client acknowledges and agrees that it is unreasonable to withhold consent on a settlement offer when Client has no valid defense to the litigation claims at issue or when the settlement offer is within Northstar's Standard of Performance. If Client refuses to consent to a reasonable settlement offer, Client agrees that Northstar may withdraw from representing the Client in any litigation associated with the settlement offer at issue.

e. **Client Relocation.** If Client relocates to a state in which the law firm does not provide legal services at such time, the law firm may terminate this Agreement and withdraw from representation of Client.

## 4.4. WITHDRAWAL FROM REPRESENTATION OF CLIENT IN LITIGATION

In the event that Northstar is entitled to withdraw from any litigation for whatever reason, Client agrees to execute any documents necessary to effectuate this withdrawal, including, without limitation, the execution of a substitution of attorney document that relieves Northstar as counsel in the litigation. If Client fails to execute any necessary documents, Northstar may request the court to be relieved as Client's attorney in that particular matter. Client acknowledges and agrees that Northstar's withdrawal from any specific litigation does not necessarily terminate Client's entire Agreement with Northstar for any other litigation or for any other services falling within the scope of this Agreement. Notwithstanding Northstar's withdrawal and without regard to the reasons for the withdrawal, Client will remain obligated to pay Northstar for any services performed up to and including when Northstar delivers its withdrawal notice to Client or Northstar receives a court order authorizing its withdrawal.

# 5. FURTHER IMPORTANT TERMS AND DISCLOSURES

## 5.1. CLIENT'S RESPONSIBILITIES TO NORTHSTAR

a. In consideration of Northstar's experienced counselling, work out a feasible monthly payment plan based on the total amount of debt to be modified, which contemplates all fees and costs to Northstar as well as funds to deposit for use in settling debts on which Northstar represents Client. The Payment Schedule is enclosed;

b. Provide Northstar with accurate and complete information relating to any Client's finances and the state of Client's financial hardship as documented in the attached Hardship and Budget Information statement.

c. Provide Northstar accurate and complete information and documents relating to any debts subject to Northstar's representation. These documents must identify each debt by creditor's name, current account balances, and account numbers. Northstar is under no obligation to verify the information supplied by Client;

d. Forward all correspondence from creditors and collection agencies as soon as possible, but no longer than five (5) days from receipt;

e. Make all payments according to the Payment Schedule;

f. Notify Northstar in writing of any settlement offers you receive, including all of the terms and conditions of the offer;

g. Be willing and able to aid in negotiations when necessary, and understand that your level of involvement will not affect the terms of this Agreement, but may affect the speed and effectiveness of Northstar's efforts;

h. Respond timely to all requests or communications from Northstar or its representatives, and promptly provide Northstar with any change of address or other contact information;

i. Make timely and complete payments on settlements negotiated by Northstar and approved by Client.

## 5.2. CLIENT'S AUTHORIZATIONS

Client Authorizes Northstar to:

a. To disclose information regarding Client's financial condition or status to any creditors and collectors in connection with effective representation;

b. To hold itself out as Client's representative to any party seeking to collect the debts listed in this Agreement's Creditor Listing;

c. To engage creditors and collectors to negotiate reduction of the debts listed in this Agreement's Creditor Listing;

d. To provide Client's bank account information to the third party dedicated account holder in order to facilitate the establishment of the Dedicated Account for Client. This authority shall remain effective until cancelled by Client in writing. Client will provide Northstar with a voiced check or savings deposit slip with respect to Client's bank account.

## 5.3. CLIENT ACKNOWLEDGMENTS

Client Acknowledges and agrees that:

a. Law firm advises Client to refrain from discussing debts with creditors or collection agencies when contacted;

b. The Payment Schedule is based on previous settlement averages achieved and calculated by Northstar. Accordingly, the actual amount paid

into the program may vary. More or less funding may be required to settle all represented debts;

c. The program's contemplated duration is an estimate based on full and timely payment each month as listed in the Payment Schedule. Any variation of payments, as well as many other factors, can affect the length of the program;

d. Northstar will deduct monthly Legal Administration fees through the duration of Client's participation in the debt resolution program;

e. The success of Northstar's representation on any particular debt may vary based on a number of factors, including your ongoing ability to make timely deposits to your Dedicated Account, the willingness of your creditors to negotiate settlements of your debt and other factors that are outside Northstar's control;

f. Your participation in the program may result in you being subject to collections. Creditors may still contact you regarding debts subject to this Agreement. However, you should notify Northstar of harassment, as there may be steps Northstar can take to prevent or rectify illegal harassment;

g. Any reduction in the amount owed by Client may be considered a taxable event. You should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf;

h. The fees and costs paid to Northstar are compensation for the services described in the Scope of Engagement and the funds deposited into your Dedicated Account are for the purpose of saving funds for settling your accounts with creditors. Until you authorize and approve any such settlements, no payments of any kind, including any monthly minimum payments will be made to your creditors on the accounts, except those that are subject to Northstar's Settlement Pre-Authorization form which states that Northstar shall make all reasonable efforts to obtain your approval for any settlement offer obtained on your behalf. In the event Northstar cannot contact you after making reasonable efforts, you authorize Northstar to proceed with any settlement resulting in a savings of 50% or more of your debt;

i. Northstar will refund the entire portion of any unused retainer fees for services that have not yet been rendered in the event you to terminate Northstar's representation;

j. The amount you owe to your creditors or collectors may increase due to the accrual of late fees, interest and penalties on the accounts while enrolled in the program;

k. Your participation in the program will likely have an adverse effect on your credit worthiness and may result in you being sued by creditors or debt collectors;

l. You should not incur any new or additional debt and should refrain from using or obtaining credit during the Northstar debt resolution representation. You understand and agree that all credit cards or lines of credit shall be closed and that no additional credit cards or lines of credit should be applied for during the Northstar debt resolution representation. You understand and acknowledge that you may keep credit cards out the program for emergency purposes only. These credit cards should not be from the same issuing bank as any accounts you entered into the Northstar debt resolution representation;

m. No debts listed in this Agreement have been secured by any personal or real property.

n. Active, inactive, or former military personnel understand that his/her military rank, pay, and/or benefits may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Northstar shall not be held responsible for any negative consequences that may occur by such personnel by their

enrollment into the Debt Resolution plan.

o. Individuals with, or who are seeking Security Clearance, including military members, contractors and consultants, understand that his or her Security Clearance may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Northstar shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

Applicant Initials — Initial: [redacted]

Co-Applicant Initials — Initial: ____________

### 5.4. VOLUNTARY PARTICIPATION

Client understands that participation in Northstar's program is voluntary and you may, upon written request, cancel Northstar's services at any time prior to the original estimated conclusion date of the program.

Client also agrees that:

a. Early termination may prevent Northstar from providing all services outlined herein and Northstar will not be responsible for any unresolved accounts upon cancellation.

b. In the event of any early termination of this Agreement, all Service Costs, Legal Administration Fees, Banking Fees, and Other Fees shall be considered earned and are non-refundable.

c. Upon termination of this Agreement, any funds held in your Dedicated Account, less any amounts paid or owed in the form of fees and settlement payments, shall be remitted to you by paper check or ACH transfer.

d. Northstar will not collect any additional fees that have not previously become due after the termination date.

e. With Northstar's permission, you may re-enroll Client Debts after termination. Any re-enrollment shall be at Northstar's sole discretion and is subject to a Reactivation Fee in the amount of two hundred ninety-nine dollars ($299.00).

### 5.5. SKIPPED DRAFTS

a. In the event Client requests to skip a monthly draft, Client shall notify Northstar at least five (5) business days prior to the scheduled draft.

b. Client will continue to be charged any applicable monthly Legal Administration service costs, retainer fees and any banking fees for any skipped months.

c. An additional month shall be added onto the Client's program to make up for each month Client skips a draft.

d. Northstar may deny a Skip Request and/or limit the number of approved Skipped Drafts if Northstar determines it is in the client's best interest to continue drafting Client's monthly payment. Reasons for denying a Skip Request may include, but are not limited to, a resulting inability to negotiate and settle debts, potential acceleration of litigation and the default of active settlements.

### 5.6. EXTENSION OF REPRESENTATION

a. Subject to the terms of the Performance Standard, in the event Client's debts are not fully settled at the end of the estimated program timeframe, Northstar will automatically extend Client's program and continue to draft Client's monthly payment unless Client notifies Northstar in writing that Client does not wish to extend representation.

### 5.7. ADDITIONAL DISCLOSURES & DISCLAIMERS

a. There are other remedies/solutions available for clients to relieve themselves of their debt burdens. Those remedies include bankruptcy and consumer credit counseling.

b. Declaring bankruptcy may discharge or allow a court-imposed repayment plan for the majority of Client's debts. However, this will be reflected as a permanent record on a Client's credit report for up to 10 years. Northstar will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change, or Client requests such consultation. There are no additional fees required from Client for such consultation and preliminary advice regarding bankruptcy.

c. Consumer credit counseling may have less impact on a Client's credit rating than bankruptcy and reduce int[illegible] debts, but it generally requires re-payment of most-to-all of Client's existing debt and not provide significant monthly payment relief.

### 5.8. CONFIDENTIALITY OF CLIENT INFORMATION

Northstar agrees that any information provided by Client to Northstar and/or its independent contractors will be kept confidential and only be used in providing the services delineated in the Northstar Privacy Policy and in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties in order to (a) streamline the negotiation process, and (b) enhance Client's opportunities for settlement offers with Client's various creditors Client agrees and acknowledges that such disclosures will be made with Client's express consent and will not require any additional consent or consultation by Client before such disclosures are made.

### 5.9. COUNTERPARTS

This agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single document. Signatures delivered by facsimile or by email in PDF format shall be effective.

### 5.10. PRIVACY POLICY

Client agrees to receive notices and disclosures regarding Client's privacy information and rights in connection with this Agreement, including any future changes to the terms of Northstar's Privacy Policy, by electronic means, including but not limited to by email, by links to the Privacy Policy, and/or by reviewing current and future updated notices, disclosures and policies posted on Northstar's website.

### 5.11. AUTHORIZATION TO OBTAIN CREDIT REPORT

Client agrees that Northstar and its independent contractors may, from time to time during Client's engagement of Northstar, obtain and review Client's credit report as necessary or appropriate to evaluate Client's current financial situation and perform the legal services on Client's behalf.

### 5.12. ENTIRE AGREEMENT

This Agreement is the entire agreement between the parties. All prior negotiations and discussions are superseded by this Agreement. Northstar has made no representations other than those expressly set forth in this Agreement, and neither Party has relied upon any representations or promises other than those expressly set forth herein.

# 6. ARBITRATION AGREEMENT

Any controversy, claim or dispute between Client, on the one hand, and Northstar, and/or any of its third-party service providers, and/or any of the attorneys, employees, representatives, affiliates or agents of the foregoing (collectively, "Northstar"), on the other hand, arising out of or relating to this Agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration before a single arbitrator in the county in which Client lives in accordance with the Federal Arbitration Act pursuant to the substantive laws of the state of Client's residence. Client and Northstar shall be referred to collectively as the "Arbitrating Parties."

The Arbitrating Parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures or, in the event of the AAA's unavailability, an arbitration service with substantially similar rules and procedures. Any award rendered by the arbitrator shall be final and binding, but subjection to review in accordance with applicable statutes governing arbitration awards. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction. If any Arbitrating Party fails to comply with the arbitrator's award, the injured party may petition the applicable court for enforcement.

Any controversy, claim or dispute between any Arbitrating Parties shall be adjudicated and resolved, regardless of the forum in which it is adjudicated and resolved, on an individual basis without resort to any form of class action. **This class action waiver precludes Client from participating in or being represented in any class action regarding a controversy, claim or dispute against Northstar.** Client waives the right to arbitrate any controversy, claim or dispute between Client and any other Arbitrating Party, as a class action, either as a member of a class or as a class representative. This class action waiver also applies even if the Client's claims are adjudicated in a court of law or in some forum other than arbitration.

The Arbitrating Parties shall share the arbitration costs (filing, administration and arbitration fees) equally up to $1,000. If the arbitration costs exceed $1,000, Northstar will pay Client's share of arbitration costs in excess of $1,000. In all circumstances, each of the Arbitrating Parties shall bear their own attorneys' fees and costs.

**Binding arbitration means that the Arbitrating Parties give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that the Arbitrating Parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can be appealed, and that discovery may be severely limited by the arbitrator. In addition, under the terms of this Agreement, Client also gives up the right to bring any claims on a consolidated or class basis in the arbitration.**

In the event any Arbitrating Party brings suit against the other party in federal, state or local court instead of proceeding with arbitration other than as provided in this Agreement, or unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party shall be entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. If any portion of this Arbitration Agreement is determined to be invalid or unenforceable, the remaining provisions shall nonetheless remain in force. The provisions of this Arbitration Agreement section shall survive any termination of this Agreement.

**NOTICE: This Agreement contains provisions requiring arbitration of fee disputes. Before you sign this Agreement, you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

**Please consult with independent legal counsel of your choice prior to signing this Agreement as the Class Action Waiver contained herein affects your rights. Please do not sign this Agreement if you do not understand these limitations.**

Applicant Initials Initial: [redacted]______

Co-Applicant Initials Initial: ____________________

# 7. CLASS ACTION WAIVER

Any court proceedings (whether before a judge or jury) of any controversy, claim or dispute between Client, on the one hand, and Northstar, and/or any of its third-party service providers, and/or any of the attorneys, employees, representatives, affiliates or agents of the foregoing (collectively, "Northstar"), on the other hand, will take place on an individual basis without resort to any form of class action). THIS CLASS ACTION WAIVER PRECLUDES CLIENT FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS ACTION REGARDING A CONTROVERSY, CLAIM OR DISPUTE. Client waives the right to litigate in court any controversy, claim or dispute between Client, on the one hand, and Northstar, on the other hand, as a class action, either as a member of a class or as a class representative. The provisions of this Class Action Waiver section shall survive any termination of this Agreement.

**Please consult with independent legal counsel of your choice prior to signing this Agreement as the Class Action Waiver contained herein affects your rights. Please do not sign this Agreement if you do not understand these limitations.**

Applicant Initials → Initial: __[redacted]

Co-Applicant Initials → Initial: ________________

**I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of Northstar and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against Northstar.**

Agreed to this 27 day of September, 2023

SIGN HERE

[redacted]

Si[redacted]

SIGN HERE

______________________________

Signature of Co-Client

______________________________

Signature of Northstar

**NOTICE OF RIGHT TO CANCEL**

**Date of transaction:** 9/27/2023

**You may CANCEL this transaction, without Penalty or Obligation, at any time.**

**If you cancel, you will not be obligated to make any payments to the law firm and any agreements or other documents that you signed will be terminated as of the date of cancellation.**

**To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, to:**

**Northstar Legal Group LLC**
**121 N Washington Ave**
**4th Floor**
**Minneapolis, MN 55401**

**I HEREBY CANCEL THIS TRANSACTION**

| | | |
|---|---|---|
| **Client Signature** | **Client Printed Name** | **Date** |
| **Co-Client Signature** | **Co-Client Printed Name** | **Date** |

**(Sign and return this document ONLY if you decide to CANCEL this transaction)**

You are not required to have a reason for cancellation but to assist us in improving our service if you do have a reason please let us know here:

SETTLEMENT AUTHORIZATION

NORTHSTAR LEGAL GROUP

# CLIENT'S AUTHORIZATION FOR SETTLEMENT

Northstar shall make all reasonable efforts* to obtain Client's approval for any settlement offer obtained on Client's behalf. In the event Northstar, cannot contact Client after making reasonable efforts, Client authorizes Northstar to proceed with any settlement resulting in a savings of 45% or more of the Client's debt at the time of settlement.

Furthermore, I/we direct Global Holdings, LLC to release the funds from my/our Special Purpose Savings Account to the creditor, per the terms of a settlement agreement negotiated in accordance with the terms of this authorization.

This form may be revoked** by Client at any time upon written notice to Northstar.

SIGN HERE [redacted] 9/27/23

Signature of Client Date

SIGN HERE

Signature of Co-Client Date

*Reasonable efforts can include phone call(s), email(s), fax(es), and standard mail.

**Client can revoke such authorization at any time before any settlement payments are processed.

# CREDITOR LISTING

| Creditor / Collection Agency | Account Number | Balance | Account Holder(s) | Last Payment Date |
|---|---|---|---|---|
| DISCOVER BANK | [redacted] | $1,727.00 | Applicant | |
| ?NCB/SYNCHRONY MA? | [redacted] | $3,952.00 | Applicant | |
| US BANK | [redacted] | $10,740.00 | Applicant | |
| BANK OF AMERICA | [redacted] | $3,093.00 | Applicant | |
| CITICARDS CBNA | [redacted] | $2,579.00 | Applicant | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Debt Owed: | $ $22,091.00 |

## PAYMENT SCHEDULE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Amount of Debt | | | $22,091.00 | Estimated Settlements: | | | $10,382.77 |
| Service Cost Percentage | | | 19% | | | | |
| Estimated Total Fees & Settlements | | | $18,904.26 | TOTAL ESTIMATED SAVINGS | | | $3,186.74 |
| Draft Number | Retainer Fee | Service Cost | Settlement Reserves | Legal Admin Fee | Banking Fees | Total Draft | Draft Due Date |
| 1 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 10/15/2023 |
| 2 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 11/1/2023 |
| 3 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 11/15/2023 |
| 4 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 12/1/2023 |
| 5 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 12/15/2023 |
| 6 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 1/1/2024 |
| 7 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 1/15/2024 |
| 8 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 2/1/2024 |
| 9 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 2/15/2024 |
| 10 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 3/1/2024 |
| 11 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 3/15/2024 |
| 12 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 4/1/2024 |
| 13 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 4/15/2024 |
| 14 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 5/1/2024 |
| 15 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 5/15/2024 |
| 16 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 6/1/2024 |
| 17 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 6/15/2024 |
| 18 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 7/1/2024 |
| 19 | $50.00 | $110.46 | $42.36 | $34.98 | $10.95 | $248.75 | 7/15/2024 |
| 20 | $50.00 | $110.46 | $53.31 | $34.98 | $0.00 | $248.75 | 8/1/2024 |
| 21 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 8/15/2024 |
| 22 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 9/1/2024 |
| 23 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 9/15/2024 |
| 24 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 10/1/2024 |
| 25 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 10/15/2024 |
| 26 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 11/1/2024 |
| 27 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 11/15/2024 |
| 28 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 12/1/2024 |
| 29 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 12/15/2024 |
| 30 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 1/1/2025 |
| 31 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 1/15/2025 |
| 32 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 2/1/2025 |
| 33 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 2/15/2025 |
| 34 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 3/1/2025 |
| 35 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 3/15/2025 |
| 36 | $12.50 | $110.46 | $90.81 | $34.98 | $0.00 | $248.75 | 4/1/2025 |
| 37 | $12.50 | $110.46 | $79.86 | $34.98 | $10.95 | $248.75 | 4/15/2025 |
| 38 | $12.50 | $110.27 | $91.00 | $34.98 | $0.00 | $248.75 | 5/1/2025 |
| 39 | $12.50 | | $190.32 | $34.98 | $10.95 | $248.75 | 5/15/2025 |
| 40 | $12.50 | | $201.27 | $34.98 | $0.00 | $248.75 | 6/1/2025 |

[redacted]

**PAYMENT SCHEDULE**

| | | | |
|---|---|---|---|
| Total Amount of Debt | $22,091.00 | Estimated Settlements: | $10,382.77 |
| Service Cost Percentage | 19% | | |
| Estimated Total Fees & Settlements | $18,904.26 | TOTAL ESTIMATED SAVINGS | $3,186.74 |

| Draft Number | Retainer Fee | Service Cost | Settlement Reserves | Legal Admin Fee | Banking Fees | Total Draft | Draft Due Date |
|---|---|---|---|---|---|---|---|
| 41 | | | $202.82 | $34.98 | $10.95 | $248.75 | 6/15/2025 |
| 42 | | | $213.77 | $34.98 | $0.00 | $248.75 | 7/1/2025 |
| 43 | | | $202.82 | $34.98 | $10.95 | $248.75 | 7/15/2025 |
| 44 | | | $213.77 | $34.98 | $0.00 | $248.75 | 8/1/2025 |
| 45 | | | $202.82 | $34.98 | $10.95 | $248.75 | 8/15/2025 |
| 46 | | | $213.77 | $34.98 | $0.00 | $248.75 | 9/1/2025 |
| 47 | | | $202.82 | $34.98 | $10.95 | $248.75 | 9/15/2025 |
| 48 | | | $213.77 | $34.98 | $0.00 | $248.75 | 10/1/2025 |
| 49 | | | $202.82 | $34.98 | $10.95 | $248.75 | 10/15/2025 |
| 50 | | | $213.77 | $34.98 | $0.00 | $248.75 | 11/1/2025 |
| 51 | | | $202.82 | $34.98 | $10.95 | $248.75 | 11/15/2025 |
| 52 | | | $213.77 | $34.98 | $0.00 | $248.75 | 12/1/2025 |
| 53 | | | $202.82 | $34.98 | $10.95 | $248.75 | 12/15/2025 |
| 54 | | | $213.77 | $34.98 | $0.00 | $248.75 | 1/1/2026 |
| 55 | | | $202.82 | $34.98 | $10.95 | $248.75 | 1/15/2026 |
| 56 | | | $213.77 | $34.98 | $0.00 | $248.75 | 2/1/2026 |
| 57 | | | $202.82 | $34.98 | $10.95 | $248.75 | 2/15/2026 |
| 58 | | | $213.77 | $34.98 | $0.00 | $248.75 | 3/1/2026 |
| 59 | | | $202.82 | $34.98 | $10.95 | $248.75 | 3/15/2026 |
| 60 | | | $213.77 | $34.98 | $0.00 | $248.75 | 4/1/2026 |
| 61 | | | $202.82 | $34.98 | $10.95 | $248.75 | 4/15/2026 |
| 62 | | | $213.77 | $34.98 | $0.00 | $248.75 | 5/1/2026 |
| 63 | | | $202.82 | $34.98 | $10.95 | $248.75 | 5/15/2026 |
| 64 | | | $213.77 | $34.98 | $0.00 | $248.75 | 6/1/2026 |
| 65 | | | $202.82 | $34.98 | $10.95 | $248.75 | 6/15/2026 |
| 66 | | | $213.77 | $34.98 | $0.00 | $248.75 | 7/1/2026 |
| 67 | | | $202.82 | $34.98 | $10.95 | $248.75 | 7/15/2026 |
| 68 | | | $213.77 | $34.98 | $0.00 | $248.75 | 8/1/2026 |
| 69 | | | $202.82 | $34.98 | $10.95 | $248.75 | 8/15/2026 |
| 70 | | | $213.77 | $34.98 | $0.00 | $248.75 | 9/1/2026 |
| 71 | | | $202.82 | $34.98 | $10.95 | $248.75 | 9/15/2026 |
| 72 | | | $213.77 | $34.98 | $0.00 | $248.75 | 10/1/2026 |
| 73 | | | $202.82 | $34.98 | $10.95 | $248.75 | 10/15/2026 |
| 74 | | | $213.77 | $34.98 | $0.00 | $248.75 | 11/1/2026 |
| 75 | | | $202.82 | $34.98 | $10.95 | $248.75 | 11/15/2026 |
| 76 | | | $213.03 | $34.98 | $0.00 | $248.01 | 12/1/2026 |
| 77 | | | $202.82 | $34.98 | $10.95 | $248.75 | 12/15/2026 |
| 78 | | | $213.77 | $34.98 | $0.00 | $248.75 | 1/1/2027 |
| 79 | | | $202.82 | $34.98 | $10.95 | $248.75 | 1/15/2027 |
| 80 | | | $213.77 | $34.98 | $0.00 | $248.75 | 2/1/2027 |

[redacted]

**PAYMENT SCHEDULE**

| | | | |
|---|---|---|---|
| Total Amount of Debt | $22,091.00 | Estimated Settlements: | $10,382.77 |
| Service Cost Percentage | 19% | | |
| Estimated Total Fees & Settlements | $18,904.26 | TOTAL ESTIMATED SAVINGS | $3,186.74 |

| Draft Number | Retainer Fee | Service Cost | Settlement Reserves | Legal Admin Fee | Banking Fees | Total Draft | Draft Due Date |
|---|---|---|---|---|---|---|---|
| 81 | | | $202.82 | $34.98 | $10.95 | $248.75 | 2/15/2027 |
| 82 | | | $213.77 | $34.98 | $0.00 | $248.75 | 3/1/2027 |
| 83 | | | $202.82 | $34.98 | $10.95 | $248.75 | 3/15/2027 |
| 84 | | | $213.77 | $34.98 | $0.00 | $248.75 | 4/1/2027 |
| 85 | | | $202.82 | $34.98 | $10.95 | $248.75 | 4/15/2027 |
| 86 | | | $213.77 | $34.98 | $0.00 | $248.75 | 5/1/2027 |
| 87 | | | $202.82 | $34.98 | $10.95 | $248.75 | 5/15/2027 |
| 88 | | | $213.77 | $34.98 | $0.00 | $248.75 | 6/1/2027 |
| 89 | | | | | | | |
| 90 | | | | | | | |
| 91 | | | | | | | |
| 92 | | | | | | | |
| 93 | | | | | | | |
| 94 | | | | | | | |
| 95 | | | | | | | |
| 96 | | | | | | | |
| 97 | | | | | | | |
| 98 | | | | | | | |
| 99 | | | | | | | |
| 100 | | | | | | | |
| 101 | | | | | | | |
| 102 | | | | | | | |
| 103 | | | | | | | |
| 104 | | | | | | | |
| 105 | | | | | | | |
| 106 | | | | | | | |
| 107 | | | | | | | |
| 108 | | | | | | | |
| 109 | | | | | | | |
| 110 | | | | | | | |
| 111 | | | | | | | |
| 112 | | | | | | | |
| 113 | | | | | | | |
| 114 | | | | | | | |
| 115 | | | | | | | |
| 116 | | | | | | | |
| 117 | | | | | | | |
| 118 | | | | | | | |
| 119 | | | | | | | |
| 120 | | | | | | | |

[redacted]

The program length is given in a range because there are factors that are not consistent with all clients. These factors include: 1) the actual amount of debt that comes into the program when the first payment is received as sometimes there are more charges than the information provided or obtained pre-enrollment. 2) Creditors typically charge fees and penalties during the first few months of the program until they charge off your debt; 3) the program is based on an average settlement that the law firm believes it can achieve based on its experience with past clients, current knowledge of typical creditor practices and the terms of the settlements the law firm is able to negotiate with your creditors in your situation. Actual results will be different for different clients on a case by case basis. Also, these estimates are based on the accuracy of the information that you provide and your ability to make consistent payments each month. **Should your program length exceed the number of months listed on this Payment Schedule, the draft and fee amounts for each additional month would match those of the last listed month.**

Client Signature [redacted] Co-Client Signature

Print Name Jason [redacted] Print Name

NORTHSTAR LEGAL GROUP

# ELECTRONIC COMMUNICATION VERIFICATION

Please print your email address on the line below:

jasont061107@gmail.com

You will receive an email of the Letter of Engagement and other documents executed today in the next three (3) business days. In case you do not receive an emailed copy, due to faulty address or lack of email address provided above, you will still receive copies of these documents with your Welcome Package. The Welcome Package will be mailed to you once your first payment has cleared.

Please initial here to indicate you understand the above terms of email delivery:

**Applicant Initials** Initial: [redacted]

**Co-Applicant Initials** Initial: ________________

NORTHSTAR LEGAL GROUP

# HARDSHIP AND BUDGET INFORMATION

## Reason for Hardship

- [ ] Temporary Loss of Work
- [ ] Loss of Job
- [ ] Medical Problems
- [ ] Personal Injury
- [ ] Divorce
- [ ] Company Reduced Hours
- [ ] Pay Cut
- [ ] Disability
- [ ] Loss of Spouses Income
- [ ] Other: ________________

Please Briefly Explain Hardship:

**BUDGET ANALYSIS**

(All information should be on a monthly basis)

| | |
|---|---|
| Client Net Monthly Income | $ 5,833.33 |
| Co-Client Net Monthly Income | $ 0.00 |
| Total Income | $ 5,833.33 |

Funds Available $ 4,487.00

| | | | |
|---|---|---|---|
| Mortgage/Rent | $ 0.00 | Clothing | $ 0.00 |
| Home Owners Insurance | $ 0.00 | Utilities | $ 200.00 |
| Life Insurance | $ 0.00 | Telephone | $ 320.00 |
| Medical Care | $ | Auto Loans | $ 0.00 |
| Child Care / Support / Alimony | $ 0.00 | Auto Other | $ 197.00 |
| Cable TV / Satellite | $ 160.00 | Auto Insurance | $ 0.00 |
| Entertainment | $ 0.00 | Education | $ 0.00 |
| Gym / Health | $ 0.00 | Student Loans | $ 0.00 |
| Back Taxes | $ 0.00 | Misc. / Other | $ 0.00 |
| Food | $ 386.00 | Total Expenses | $ 1,346.00 |

**By executing this agreement, you are representing that you have considered these other options and further, that you have provided us with accurate information, including your financial information and the state of your financial hardship as documented in your hardship statement.**

**ARBITRATION DISCLOSURE**

Arbitration is a confidential process in which disputes amongst the parties are resolved by an arbitrator selected by the parties (often a retired judge or attorney) rather than in the court system. Arbitration is a private process that uses streamlined rules and procedures. Because of this, parties are often able to resolve disputes more cheaply and efficiently than they would if they proceeded in the court system. Under this Agreement, all disputes amongst the parties would be arbitrated, including disputes over fees and any claims of malpractice. There are several important differences between arbitration and litigation.

<u>Binding Arbitration is confidential and private.</u> Arbitration is a confidential process, in which an arbitrator selected by the parties will resolve disputes between the parties. In arbitration, the parties give up their right to a trial before a judge or jury in a public court. This means arbitration proceedings and awards are typically confidential.

<u>Binding Arbitration uses streamlined procedures.</u> Arbitration often proceeds more quickly and cheaply than court proceedings. In great measure, that is because arbitration typically involves streamlined discovery – which is where the parties share information and documents before a hearing or trial. In arbitration, the parties do not have a right to broad discovery, and discovery may be substantially limited by the rules of the arbitration service and/or arbitrator. In addition, certain remedies that may be available in a court action, such as injunctive relief, special damages, and attorney fee-shifting, are often unavailable in an arbitration proceeding.

<u>Binding Arbitration has costs.</u> In the public court system, the judge and jury are paid by the taxpayers. In arbitration, the parties are responsible for paying the arbitrator's fees. In the event of an arbitration, the parties share the costs of arbitration, including any arbitrator fees, in accordance with the arbitration agreement between the parties. All parties to the arbitration, however, bear their own attorney's fees, costs, and expenses, unless an arbitrator orders otherwise.

<u>Binding Arbitration is final.</u> In a court action, all parties have a right to appeal a judgment entered by a judge or jury, a process that may extend lawsuits by months or years. In binding arbitration, all parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed.

If you would like to learn more about the arbitration process, our attorneys are happy to answer any questions you may have, or you may seek a separate opinion from a non-Firm attorney regarding the pros and cons of arbitration. In addition, for your reference, we are also providing a link to the website for the American Arbitration Association which can provide you with additional information, including its current rules. Disputes between attorneys and clients often are resolved under the AAA's Consumer Rules. American Arbitration Association: <u>https://www.adr.org</u>

I acknowledge receipt of this Arbitration Disclosure.

Sign Here [redacted] Sign Here

Co-Client Signature

| | | | |
|---|---|---|---|
| Jason Thompson | 9/27/23 | | |
| Client Name | Date | Co-Client Name | Date |

# BANKRUPTCY VS DEBT NEGOTIATION AND ELECTION OF SERVICES

**Bankruptcy and Debt Negotiation**

Northstar is a full-service debt resolution law firm which provides services including debt negotiation and restructuring and bankruptcy services. The following provides information about these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

**Bankruptcy**

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy: Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged, such as your house or car, and are expected to repay debts in three to five years, and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments; however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

Northstar is a debt relief agency under the United States Bankruptcy Code Sections 527 (a) and (b), and we are required to provide the following information and notice:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide—

(1) The written notice required under section 342(b) (1); and

(2) To the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that—

(A) All information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) Current monthly income, the amounts specified in section 707(b) (2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b) (2)), are required to be stated after reasonable inquiry; and

(D) Information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

**IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER**

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

The following information will help you to understand what must be done in a routine bankruptcy case and will help you to evaluate how much assistance you may need. Although bankruptcy can be complex, many cases are routine.

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the

bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with the preparation of your chapter 13 plan and with the confirmation hearing on your plan which will take place before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code (other than chapter 7 or chapter 13), you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

**Debt Negotiation**

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, Northstar will contact your unsecured creditors in writing to notify them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer Northstar to attempt debt negotiation as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives, including those outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt resolution options and have determined that debt negotiation by Northstar is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed all debt resolution options available to me including doing nothing, filing for bankruptcy and consumer credit counseling, and elect to pursue debt negotiation services with Northstar, subject to my ability to request other alternatives, based on changes in my financial circumstances.**

SIGN HERE [redacted] 9/27/23

Signature of Client | Date

SIGN HERE ______________________ ____________

Signature of Co-Client | Date

# DISCLAIMER – SETTLEMENT OF CREDIT UNION ACCOUNTS

This confirms my/our understanding and acknowledgement that, in the experience of Northstar, credit union debt accounts are often resolved for higher settlement amounts, meaning that such debts may cost me/us more to settle and result in smaller reductions from the debt amounts at the time of enrollment. For this reason, credit union debt accounts are excluded from Northstar's Performance Standard in Section 2 of the Agreement and Northstar provides no assurance that such debts will be settled for any amount.

I/we acknowledge that my current credit union account(s) that are to be enrolled into the program are NOT cross-collateralized with any other credit union obligation(s). I/we understand that in the event it is later determined that any enrolled credit union account is cross-collateralized with any other credit union obligation that any enrolled credit union account(s) would be removed from the program and become my sole obligation to be resolve in the manner I see fit.

Further, I/we acknowledge that Northstar would thereby have no obligations to represent me regarding these accounts whether ongoing or in the future.

SIGN HERE | SIGN HERE

[redacted]

Client Signature | Co-Client Signature

Jason Thompson | 9/27/23

Client Name | Date | Co-Client Name | Date

 NORTHSTAR LEGAL GROUP

# DISCLAIMER – SETTLEMENT OF PRIVATE STUDENT LOAN ACCOUNTS

This confirms my/our understanding and acknowledgement that, in Northstar's experience, private student loan accounts may cost me/us more to settle and result in a smaller reduction from the debts at the time of enrollment. For this reason, private student loan accounts are excluded from Northstar Performance Standard in Section 2 of the Agreement and Northstar provides no assurance that such debts will be settled for any amount. I/we acknowledge that my private student loan account(s) that are to be enrolled into the program are NOT cross-collateralized with any other obligations with the same lending institution, are unsecured, and are not federally-backed loans. I/we understand that in the event it is later determined that any enrolled private student loan account does not meet the criteria above, Northstar shall have the right to remove such account from the program and the removed account shall become my sole obligation to be resolved in the manner I see fit. I/we acknowledge that Northstar would thereby have no obligations to represent me regarding any removed accounts whether ongoing or in the future.

Furthermore, I/we understand private student loan accounts tend to have significantly higher average enrolled balances than those of traditional unsecured credit obligations. Accordingly, I/we understand that private student loan accounts may require a longer period of time to resolve when compared to my/our other enrolled accounts.

SIGN HERE SIGN HERE

[redacted]

Client Signature Co-Client Signature

Jason Thompson 9/27/23

Client Name Date Co-Client Name Date

# AUTHORIZATION TO COMMUNICATE AND NEGOTIATE WITH CREDITORS AND COLLECTION AGENCIES

I (We) have retained _______Northstar Legal Group_______ (the "Firm") to provide me with legal advice and/or representation. In order for the Firm to accomplish this, I (we) authorize the Firm, including its agents, representatives, vendors, and service providers to take the following actions:

1. Communicate with my (our) creditors, including but not limited to any agent, representative or third-party collection agency or law firm, and discuss any and all details of my (our) financial situation for the purpose of collecting information and/or negotiating settlements on my (our) behalf on my (our) debt obligations; and

2. Obtain any records, debt validations, credit reports and support for the debts allegedly owed on my (our) behalf.

I (We) further authorize the recipient of this Authorization, including my (our) creditors or their agents, representatives or third-party collection agencies or law firms, whether transmitted by original, photocopy, facsimile or electronic copy, to communicate with the Firm and/or its employees, agents, representatives, vendors and/or service providers, regarding any of the purposes described above.

I (We) affirm that all of the information that I (we) have or will provide to the Firm is accurate, timely and correct.

| | |
|---|---|
| Jason Thompson | |
| Client Name | Co-Client Name |
| [redacted] | |
| Client SSN | Co-Client SSN |
| [redacted] | |
| Client Signature | Co-Client Signature |
| 9/27/23 | |
| Date | Date |

SIGN HERE

**Northstar Legal Group LLC**
**121 N Washington Ave. 4th Floor**
**Minneapolis, MN 55401**
**(866) 429-4331**

# Power of Attorney

**I/We,** Jason [redacted] ,

**Located at** [redacted] ,

**In the City of** [redacted] **State of** MN **Zip** 56701 ,

hereby appoint the Law Office of Mercedes Gustafson d/b/a Northstar Legal Group, LLC ("Northstar") as my/our attorney-at-law to do the acts described in this Power of Attorney. Northstar (and/or its designees) is hereby authorized to act as my/our attorney and to fully represent me/us in any litigation or negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owing in my/our name. Litigation representation includes attendance at required court hearings, if applicable.

I/We authorize Northstar to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize Northstar to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on 9-27-2023

[redacted]

[redacted]
Client Social Security Number

Co-Client Signature

Co-Client Social Security Number

**State of** Minnesota **County of** [redacted]

The foregoing instrument was acknowledged by me this 27 day of Sept, 2023

by: Jason [redacted] who is/are personally known by me or who

has/have produced: Drivers License as identification and who did not take an oath.

Notary Public: [redacted]

[redacted]

NORTHSTAR LEGAL GROUP

# ACCOUNT INFORMATION AUTHORIZATION

By signing below, I authorize the Northstar Legal Group (Northstar) (or their designees) to process debit entries from my checking, savings, or other FDIC-insured bank account. This authority shall remain effective until cancelled by me in writing, at least five (5) business days prior to my scheduled payment due date. I understand there will be a twenty-five dollar ($25) cost automatically charged to my account for any non-sufficient funds (NSF) transactions. **I will provide Northstar with a voided check or savings deposit slip.**

Name on Account (Please Print): Jason [redacted]

Please transfer payments directly from my Checking account, Savings account, or Other account.

Bank Name: Wells Fargo Bank

Bank Address: [redacted]

City: [redacted] St: MN Zip: 56701

Bank Phone #: [redacted]

**Routing # [redacted] Account # [redacted]

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

[redacted]

Jason [redacted] — Printed Name

9/27/23 — Date

Attach Voided Check or Savings Deposit Slip Here

# FACE-TO-FACE PRESENTATION ACKNOWLEDGMENT

The undersigned representative of Northstar Legal Group LLC ("Northstar") hereby confirms as follows:

1. The representative has conducted a personal face-to-face presentation with the undersigned prospective client(s) on the date and at the time and location indicated below.

2. The face-to-face presentation consisted of reviewing the law firm's debt negotiation program and enrollment documents based upon the PowerPoint slides and script provided by the law firm, including, among other topics, informing the prospective client(s) that:

   (a) the program will likely adversely affect your creditworthiness;
   (b) the program may result in your being subject to collections;
   (c) the program may result in your being sued by creditors or debt collectors;
   (d) the program may increase the amount you owe due to the accrual of late fees and interest;
   (e) you will own the funds held in your dedicated account; and
   (f) you may withdraw from the program at any time without penalty, and you will receive all funds in the dedicated account, other than funds earned by the law firm in compliance with applicable law.

3. Following the presentation, the prospective client(s) initialed and executed the law firm's Client Retainer Agreement and associated enrollment documents in the presence of the representative, and was provided with copies of same.

Date: 9-27-23

Start Time: 5:00 PM End Time: 5:30 PM

Location: [redacted] MN 56701

**Affirmation by law firm representative:**

I affirm the above statements are true and accurate:

Signature: [redacted] Name: [redacted]

**Acknowledged by prospective client(s):**

Signature: [redacted] Name: Jason [redacted]

Signature: ______________ Name: ______________

global HOLDINGS

## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

**I. This Dedicated Account Agreement and Application ("Agreement")** contains the terms, conditions, and disclosures that apply to your dedicated account ("Account"). By signing this Agreement or using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms and conditions set forth herein, including the requirement to arbitrate any dispute with Global Holdings LLC ("Global') according to the terms of the "**ARBITRATION OF DISPUTE**" provision in paragraph XVII on page 2 of this Agreement. You are directed to read the "**ARBITRATION OF DISPUTE**" provision in paragraph XVII on page 2 of this Agreement carefully, as you are giving up your right to bring a lawsuit before a judge or jury in a court of law. If you have any questions that you do not believe are addressed in this Agreement, you can and should call, email, or write Global at the number or addresses shown at the end of this Agreement. Please review this Agreement carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you" and "your" mean you and any other party who you authorize to use your Account.

**II. Purpose, Nature and Use of the Account:** Your Account is a dedicated account that you can use in connection with the debt settlement program you have undertaken. Global is not a party to your debt settlement program and does not participate in the negotiation of your debts. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is a Federal Deposit Insurance Corporation ("FDIC") insured sub-account within a master custodial account maintained at a bank designated or selected by Global. The bank is not a party to your debt settlement program and does not participate in the negotiation of your debts, and is an intended third-party beneficiary of this Agreement, including the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. Additionally, you authorize Global to transfer your Account to another FDIC insured institution under the existing terms. Global will provide written notice to you of such change. Any such notice, and any other written notice that is provided for in this Agreement, will be sent to you at either the physical address you have provided in the application portion of this Agreement and/or the email address you establish with Global. If an email address is not provided to Global, all notices will be sent to you at the physical address you provided in the application portion of this Agreement. Your Account may not be used for any illegal purpose.

**III. Passcodes / Passwords:** You will be provided with a four-digit passcode (your "Passcode") that will enable you to access your Account via the telephone and to identify yourself when contacting a customer support representative. You will also be provided with an initial Internet password (your "Password") that will enable you to access your Account via the Internet. You may change your Password at any time for security purposes and you are encouraged to do so from time to time. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account.

**IV. Telephonic / Electronic Communications:** You authorize Global to accept and act upon any instruction received from you or authorized by you under this Agreement concerning your Account, where you have communicated that instruction or authorization by telephone, facsimile, email or other electronic means using a telephone keypad or computer. Use of your Passcode, Password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signatures in Global and National Commerce Act and other applicable laws.

**V. Authorizing and Initiating Transactions:** In this Agreement you authorize certain transactions involving your Account. Unless you direct otherwise in writing, Global may also act on those instructions that you conveyed to your Debt Settlement Provider, as defined in the application portion of this Agreement, and such instructions may be acted on without further confirmation. From time to time, you may change those instructions and/or give other instructions to initiate deposits to or disbursements from your Account by contacting Global's Customer Support. In any event, you must always provide a reasonable period of time to act on your instructions. All deposits to your Account will be authorized and initiated pursuant to your instructions, and all disbursements from your Account will be authorized and initiated pursuant to your instructions provided your Account contains sufficient funds to cover the amount of the disbursement. However, neither Global, nor any service provider to Global shall be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Global's sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of such instructions. Global shall not be responsible for any late payment fee, penalty or other charge levied by any of your creditors, for any failure of any of your creditors to accept a proposal for settlement or honor a settlement; or for any other adverse action taken by your creditor or any other party. Global shall not be liable for any consequences or damages you may claim resulting from Global acting on your instructions.

**VI. Fees and Charges:** The "SCHEDULE OF FEES AND CHARGES" identifies the fees and charges you are obligated to pay Global in connection with this Agreement and your Account; and you agree that these fees and charges may be deducted directly from your Account. The fees and charges in the "SCHEDULE OF FEES AND CHARGES" are the only fees associated with Global's services and your Account. The Monthly Service Charge for the first month in which your Account is established will not be prorated and will be deemed earned in full as of the day the Account is established, e.g., if your Account is established on the 15th day of a month, the Monthly Service Charge for such month shall be earned as of that day. Thereafter, the Monthly Service Charge will be deemed earned in full on the first day of each calendar month during which your Account remains open. Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee. You expressly acknowledge that Global may increase the fees and charges associated with your Account at any time, and that you will be provided with written notice at least thirty (30) days' prior to such increase. Global shall not be responsible for any other fees and/or charges that you may incur arising from or related to your debt settlement program.

**VII. Termination of Agreement / Account Closure:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global's Customer Support. The written notice must provide Global with the following information:

1. Your full name and current address;
2. Your Account number;
3. The date of the request; and
4. Your request to close your Account.

Please provide Global with sufficient time to process the request. In addition, Global may suspend, cancel or terminate this Agreement and your Account at any time without notice for inactivity, or if your Program has been terminated or is no longer being managed, if your Account is improperly maintained or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.

**VIII. Monthly Statements:** You will receive your first monthly statement by mail showing your Account activity and balance by mail. Thereafter, monthly statements will be available online, and may be accessed using your login information and Password. Should you desire to continue receiving a paper statement via the United States Postal Service, please contact Global's Customer Support and make a request to receive mailed paper statements. You may obtain balance and transaction information by using your Passcode to access your Account over the telephone, by using your Password to log into Global's website, or by calling Global's Customer Support. You agree to review each of your statements carefully and to report any erroneous, improper, or unauthorized transactions promptly.

**IX. Non-Interest Account:** Your Account is a non-interest bearing Account.

**X. Unauthorized Transactions and Customer Responsibility:** You should never share your Passcode or Password(s) with anyone and should keep your Account information and papers in a secure place. If you believe someone has transferred or may transfer money from your Account without your permission, contact Global's Customer Support immediately.



[redacted]

**XI. FDIC Insurance:** The funds in your Account will be FDIC insured up to a maximum of $250,000.00. The insured amount may increase or decrease and is subject to limits set and reset by the FDIC from time to time.

**XII. Incomplete Transactions:** Neither Global nor any service provider to Global shall be liable for failing to complete a transaction due to insufficient funds in your Account; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any bank, or the directive of any regulatory authority.

**XIII. Error Resolution Procedures:** In the event of potential errors or questions concerning specific transactions involving your Account, you must call or write Global's Customer Support no later than sixty (60) days after the transaction in question appears on your monthly statement. Furthermore, at the very minimum you must provide Global with the following information:

1. Your full name and Account number;
2. The date and amount of the transaction;
3. The type of transaction and a description of the suspected error (please explain as clearly as possible why you believe there is an error or why you need additional information); and
4. The dollar amount of the suspected error.

If you provide the information over the phone, you may be asked and required to provide it again in writing within ten (10) business days. Global will inform you of the results of the investigation of the suspected error within ten (10) business days after you submit the information and any error will be promptly corrected. However, if Global requires more time to investigate the suspected error, it may take up to an additional thirty (30) days to complete the investigation. If Global determines that there is no error, you will be provided with a written explanation within three (3) business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

**XIV. Creditor Disputes:** ***You understand and agree that Global is not a party to your debt settlement program, and does not participate in the negotiation of your debts.*** ***This Agreement is separate and independent of any contractual obligations you may have with your creditors or Debt Settlement Provider. Accordingly,*** ***you hereby expressly acknowledge that Global does not have any involvement in or responsibilities of any kind or nature with respect to your contractual agreement with your creditors or your Debt Settlement Provider, your debt settlement program or the results that you may or may not achieve from your participation in a debt settlement program.*** ***Furthermore, you hereby expressly acknowledge that any representation, statement, or obligation made by your Debt Settlement Provider or made in connection with your debt settlement program is not made on Global's behalf, and does not and cannot bind Global. Finally, you expressly acknowledge that Global shall not be liable for any actions taken by, or conduct of, your Debt Settlement Provider in connection with your debt settlement program. You hereby agree to indemnify Global, and hold Global, its parent and subsidiaries, directors, officers, shareholders, and employees harmless from any damages (including attorneys' fees) resulting from the breach of any of the above warranties.***

**XV. Garnishment Acknowledgement:** In the event that a creditor of yours moves to garnish funds in your Account, ***you expressly acknowledge that Global will answer the garnishment and comply with any writ issued by the Court in accordance with the applicable state law. Furthermore, you expressly acknowledge that Global will not be responsible for challenging or raising a defense to the garnishment on your behalf.*** You specifically agree to indemnify and hold Global harmless from any loss, liability, obligation, damage, cost and expense resulting from a creditor's attempt to garnish and/or hold Global liable for any judgment against you.

**XVI. Governing Law:** This Agreement shall be governed by the laws of the state where you reside, except that the state's rules or statutes governing arbitration procedures shall not apply. If any part of this Agreement is declared void or unenforceable, such provision(s) shall be deemed severed from this Agreement, and the remainder of this Agreement shall remain in full force and effect. This Agreement may be modified to the extent necessary to give such force and effect to the remaining provisions. No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder, shall be construed as a waiver of such performance, right, or remedy, as the case may be.

**XVII. ARBITRATION OF DISPUTE – IMPORTANT NOTICE WAIVING YOUR RIGHT TO BRING A CLAIM BEFORE A JUDGE OR JURY IN COURT:** In the event of any controversy between the parties, including, but not limited, to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the determination of the validity, scope or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration. This arbitration provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and not by any state rule or statute governing arbitration. Arbitration under this provision will be conducted in either the county in which the customer resides or the closest metropolitan county. **THE PARTIES AGREE THAT ARBITRATION WILL BE BEFORE A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS OR MASS ACTION. FURTHERMORE, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS.** The Arbitration will be administered by: The Judicial Arbitration Mediation Services ("JAMS"), 1920 Main Street, Suite 300, Irvine, CA 92614 (www.jamsadr.com); or the American Arbitration Association ("AAA"), 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org); or another nationally known consumer arbitration service on which the parties will agree to use. The Arbitration will be administered according to the arbitration service's fee schedule and the service's current applicable rules and procedures *except: 1) that the parties expressly waive the applicability of any rule governing class or mass action; 2) that the parties agree to have an in-person final hearing; and 3) that the parties agree that any specific arbitration procedure provided for herein will apply to the arbitration proceeding. The arbitrator – who must be either* a *retired judge or an experienced attorney - must be neutral and independent and must comply with the selected arbitration service's code of ethics. Additionally, the arbitrator will be guided by the Federal Rules of Evidence and "governing substantive" law.* The arbitrator's award is final and binding on all parties. The parties may move to confirm or vacate the award in a court of competent jurisdiction in accordance with the provisions of the FAA. The parties will bear their own attorneys' fees unless such fees are expressly provided for by applicable law. If the arbitrator determines that reasonable attorneys' fees are to be awarded under applicable law, the parties agree that the arbitrator will also determine the amount of reasonable attorneys' fees to be awarded. In the event a party fails to proceed with arbitration, fails to comply with the arbitrator's award or unsuccessfully challenges the arbitrator's award, the other party is entitled to any costs and expenses incurred, including a reasonable attorneys' fee for having to compel arbitration or defend or enforce the award.

***What is Binding Arbitration? Binding Arbitration is an alternative dispute resolution process where both parties give up certain legal rights to bring a claim in court. Binding Arbitration means: (1) that both parties give up their right to a trial in court before a judge or jury; (2) that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of appealable issues expressly provided for in the FAA, 9 U.S.C. § 16; and (3) that discovery may be severely limited by the arbitrator, and if the arbitrator allows full discovery, the arbitrator may not exceed the discovery limitations provided by the Federal Rules of Civil Procedure. I UNDERSTAND THAT I MAY OPT-OUT OF THE TERMS OF THE "ARBITRATION OF DISPUTE" PROVISION BY PROVIDING GLOBAL NOTICE IN WRITING WITHIN THIRTY (30) DAYS OF SIGNING THE AGREEMENT. I understand that the notice must be sent to Global's Customer Support using certified mail or sent by electronic mail to the addresses provided in this Agreement. If I do not timely opt-out, I agree to the terms of the "ARBITRATION OF DISPUTE" provision.***

***I acknowledge that I have read, understood, and agree to abide by the terms of the arbitration provision set forth above, and fully understand that arbitration replaces the right of either party to go to court and replaces the right to have a judge or jury hear of decide either party's dispute or claims.***

SIGNATURE: [redacted]



Initials: [redacted]

**XVIII. PRIVACY POLICY:** Global collects personal information that you provide through the application portion of this Agreement. You can find a detailed description of how we collect, share, and use your personal information and your rights with respect to the information we collect in the Privacy Notice included in the welcome packet that will be sent to your physical address. Additionally, you can also find a detailed description of your privacy rights on our website (https://www.ghllc.com/privacy-policy/). You understand that receiving the Privacy Notice is a necessary part of obtaining our services, and you agree to receive updates regarding this Privacy Notice on our website, where the document is posted. If you have additional questions regarding how we handle your personal information, please contact Global's Customer Support.

**XIX. Maintenance of Accurate Information:** You may update your personal information online, at any time, by using your Password to log into Global's website or by contacting Global's Customer Support. To ensure that Global is able to protect your Account and verify your information, it is in your best interests to maintain accurate and current records concerning your personal information.

**XX. Information regarding your Debt Settlement Program:** *You expressly acknowledge that Global does not maintain records of any documents or information associated with your debt settlement program.* To obtain such information, please contact your Debt Settlement Provider.

**XXI. USA Patriot Act Compliance:** As required by the USA Patriot Act, you authorize Global to take reasonable and practical measures to verify the accuracy of the information you have provided in the application portion of this Agreement, as well as to verify your identity by, including and without limitation, obtaining any information about you in order to assist in combating terrorism and preventing Global's system and the banking system from being used for money laundering or other impermissible, illegal purposes.

**XXII. Limitation of Liability:** Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary, or punitive damages, or an amount in excess of the fees and charges Global receives from you as set forth in this Agreement. Moreover, under no circumstances shall Global ever be liable for the conduct or contractual obligations of a third party, including, but not limited to, the Debt Settlement Provider.

**XXIII. English Language Governs:** The terms of this Agreement and the products and services we provide are governed by the English language. As a courtesy, Global has made this Agreement available in languages other than English. If there is any difference in meaning between the English and non-English version of any of our documents, including this Agreement, the English version will apply to your Account and is available to you upon request.

**XXIV. Merger Clause:** This Agreement contains the complete and final understanding between the parties. Any prior oral statements, representations, or agreements are superseded by this Agreement.

**XXV. Customer Support Information:**

**Correspondence Address:** 4343 S. 118th E. Avenue, Suite 220
Tulsa, OK 74146
**Telephone:** (877) 271-1550
**Fax:** (866) 355-8228
**Website Address:** www.ghllc.com
**Email:** customersupport@ghllc.com

Note: Global will provide you with a welcome packet subsequent to the execution of this Agreement that will contain deposit instructions applicable to those customers who choose to send in deposits.



Initials: [redacted]

# DEDICATED ACCOUNT AGREEMENT AND APPLICATION

I hereby apply for and agree to establish a non-interest bearing dedicated account ("Account") to be administered at a bank selected by Global Holdings LLC ("Global") for the purpose of accumulating funds to repay my debts in connection with a debt settlement program of my own choosing (my "Program") that is managed by the organization responsible for administering the Program ("Debt Settlement Provider"). **I understand that Global is not a party to my Program and does not participate in the management of my Program.** I understand that this Agreement is subject to a customer identification program, as required by the USA Patriot Act and other applicable laws; and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of a driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account. **Furthermore, I understand that the Account is governed by the terms of this Agreement and that I am bound by all of its terms and conditions, including the binding arbitration provision located in paragraph XVII on page 2 of this Agreement in which I expressly give up my right to bring an action in a court before a judge or jury.**

**ACCOUNT OWNERSHIP, CONTROL AND USE:** I understand that the Account, when established in accordance with this Agreement, will be my sole and exclusive property; that only I (or authorized contact, if any) may authorize deposits to and creditor payments from my Account; and that only I may withdraw funds from and/or close my Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to my Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Account. In this regard, I hereby authorize payment from my Account of the fees and charges provided for in this Agreement. Should I designate an authorized contact, such designation allows for confirmation of Account information and for receipt of messages regarding my Account to the designee. **PERMISSION TO SHARE DATA:** I hereby grant permission for the bank, Global and the Debt Settlement Provider to share information regarding my Account and my Program with one another and with any other party to the extent necessary to facilitate the transactions I authorize on my Account, and acknowledge that sharing information among these parties is essential to the administration of my Account. I understand that the Agreement and the Privacy Notice provide additional information relating to my privacy rights.

| **Applicant: First Name** (Please print clearly) | **MI** | **Last Name** | **Social Security #** | **Date of Birth (mm/dd/yyyy)** |
|---|---|---|---|---|
| Jason | | [redacted] | [redacted] | [redacted] |
| **Authorized Contact** (optional): **First Name** | **MI** | **Last Name** | **Social Security #** | **Date of Birth (mm/dd/yyyy)** |
| | | | | |

| **Mailing Address** | **City** | **State** | **Zip Code** |
|---|---|---|---|
| [redacted] | [redacted] | MN | 56701 |
| **Physical Address** (if different from mailing address) | **City** | **State** | **Zip Code** |
| [redacted] | [redacted] | MN | 56701 |

| **Home Phone No.** | **Cell Phone No.** | **Email Address** |
|---|---|---|
| [redacted] | | [redacted] |

**Challenge Question / Answer** (for future ID purposes)

| **Debt Settlement Provider** | **Debt Settlement Provider's Global Account Number** (if known) |
|---|---|
| | |
| **Applicant's Signature** [redacted] SIGN HERE | **Date** 9/27/23 |

**AUTHORIZATION TO DEBIT BANK ACCOUNT: Applicant's Financial Institution Information**

| **Bank Name** | **Routing Number**[1] | **Account Number**[2] | |
|---|---|---|---|
| Wells Fargo Bank | [redacted] | [redacted] | |
| **Bank Address** | **City** | **State** | **Zip Code** |
| | | | |
| **Name** (as it appears on check) | | | |
| Jason [redacted] | | | |
| **Current Physical Address** | **City** | **State** | **Zip Code** |
| [redacted] | [redacted] | MN | 56701 |

*[1] Routing Number is the 9-digit number appearing in the bottom left corner of your check. [2] Account Number is to the right of the Routing Number and before the Check Number.*

| | **Amount of Initial Debit** | | **Date of Debit (mm/dd/yyyy)** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | $248.75 | on or after | 1 | 0 | / | 1 | 5 | / | 2 | 0 | 2 | 3 |

| | **Amount of Recurring Debit** | | **Date of Debit (mm/dd/yyyy)** | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | $248.75 | on or after | 1 | 1 | / | 1 | 5 | / | 2 | 0 | 2 | 3 | and | [ ] Weekly<br>[ ] Biweekly<br>[×] Semi-monthly<br>[ ] Monthly<br>**thereafter until further notice** |

I hereby authorize Global to initiate an initial debit entry, if any, and any **recurring** debit entries to my **checking account** (or **savings account)** at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, or for such other amounts that I may subsequently authorize in writing, via the telephone or via the Internet, for the purpose of transferring funds to my Account. I represent that my Primary Bank Account exists; that I own it; and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I may incur a charge as set forth in the Schedule of Fees and Charges if any attempted debit is not immediately honored when presented; and that the financial institution providing my Primary Bank Account may also assess a charge if this occurs. In addition, I understand that I may subsequently designate another account for this purpose by contacting Global's Customer Support; that I may also change the corresponding amounts and dates in that manner; and that the representations I made above about my Primary Bank Account will apply to any other account that I designate.

In addition, I hereby authorize Global to accept instructions from me in writing, via the telephone or via the Internet, to initiate one-time, **non-recurring** debit entries to my Primary Bank Account for the purpose of adding additional funds to my Account.

These authorizations shall remain in full force and effect until I give a written termination notice to Global that affords it a reasonable period of time to act on it. Any such notice, and any other written notice that is provided for in this Agreement, shall be sent to Global's Customer Support at the addresses set forth in the Agreement.

A[redacted] **Debit Applicant's Primary Bank Account** SIGN HERE **Date** 9/27/23

**SCHEDULE OF FEES AND CHARGES**

| | |
|---|---|
| Account Setup (one-time fee) | $0.00 |
| Monthly Service Charge | $10.95 |
| Dishonored/Returned Deposit Item | $0.00 |
| **Premium Deposit Services** | |
| Incoming Wire Transfer | $10.00 |
| **Disbursement Fees** | |
| ACH | $2.00 |
| DirectPay | $3.50 |
| Manual Check (USPS) | $4.00 |
| Phone Payment | $3.50 |
| 2nd Day Delivery* | $12.00 |
| Overnight Delivery* | $20.00 |
| Wire Transfer | $15.00 |
| Stop Payment Order | $17.50 |

*3:00 pm Central Time Cutoff

**CUSTOMER SUPPORT**

Any questions or inquiries relating to your Account should be directed to Global's Customer Support. See paragraph XXVXXV of this Agreement for Global's correspondence address, Global's website address, and the toll-free number to Global's Customer Support. Please note that Global is not a party to your Program, and any questions relating to your Program should be addressed to your Debt Settlement Provider, and not to Global.

Version 2 – GH – 8.5.21

# IN-PERSON PRESENTATION

## Debt Negotiation Program

NORTHSTAR LEGAL GROUP

# IN-PERSON PRESENTATION

MY NAME IS Mike Cerny AND I AM A REPRESENTATIVE OF NORTHSTAR LEGAL GROUP.

TODAY WE ARE GOING TO DISCUSS NORTHSTAR'S DEBT NEGOTIATION PROGRAM AND HOW IT CAN HELP YOU WITH YOUR FINANCIAL SITUATION.

BEFORE WE BEGIN, PLEASE UNDERSTAND THAT I AM NOT AN ATTORNEY, AND AS SUCH, I AM NOT QUALIFIED TO PROVIDE LEGAL ADVICE TO YOU, OR TO ANSWER QUESTIONS OUTSIDE THE SCOPE OF THE PRESENTATION I AM ABOUT TO DELIVER.

AFTER THE PRESENTATION, YOU WILL DECIDE IF YOU WANT TO SIGN AND SUBMIT ENROLLMENT DOCUMENTS TODAY. IF YOU DO DECIDE TO MOVE FORWARD, A NORTHSTAR ATTORNEY WILL REVIEW YOUR FILE AND CONTACT YOU BY TELEPHONE WITHIN THE NEXT FEW DAYS.

YOU MUST MAKE YOURSELF AVAILABLE TO SPEAK WITH THE ATTORNEY, AS NORTHSTAR'S POLICIES REQUIRE THAT THIS CONVERSATION TAKE PLACE BEFORE YOU CAN MAKE YOUR FIRST PAYMENT AND BEGIN YOUR PROGRAM. IT WILL ALSO ENSURE THAT ALL OF YOUR QUESTIONS HAVE BEEN ADDRESSED BY AN ATTORNEY.

# DEBT NEGOTIATION EXPLAINED

Debt Negotiation is a program designed to pay off your debts through a negotiation strategy.

Northstar negotiates with your creditors on your behalf to pay back, in a lump sum or term payments, less than the amount owed on your accounts.

Your involvement in these negotiations and conversations may be necessary and important.







# THE DEBT NEGOTIATION PROCESS

## What You Will Do

- Save money in your Global Holdings Special Purpose Savings Account to fund your settlements.
- Forward any communications from your creditors to Northstar and notify it of any attempts made by your creditors or their collectors to contact you.
- Strategically notify certain creditors that you are represented by an attorney and they should stop any further communication with you regarding your debts.

## What Northstar Will Do

- Keep constant lines of communication with you to keep you up to date on the status of your program.
- Create and discuss your unique debt negotiation strategy with you. Be on the lookout for the Package Review Call in month one and the detailed Strategy Call in month three.
- Strategically negotiate with your creditors throughout your representation and obtain your written approval on any agreements Northstar successfully negotiates.

# NEGOTIATION AND DEBT NEGOTIATION STRATEGY

## YOUR DEBT NEGOTIATION STRATEGY AND HOW DEBTS ARE NEGOTIATED WITH YOUR CREDITORS

## Debt Negotiation Strategy and Implementation

You hired Northstar to get your debts resolved as quickly and for as little money as possible. Northstar's strategy is based on saving funds in your Global Holdings Special Purpose Savings Account, which is why sticking to your payment plan is so important. As funds build in your account, Northstar will contact your creditors to negotiate the best settlements on your behalf.

---

When Northstar reaches an agreement with one of your creditors to resolve a debt, your Northstar attorney will review and approve all settlements before your approval.

---

Northstar presents you with the details of the debt resolution offer in writing and either the attorney or negotiator will contact you to confirm the settlement and how you wish to proceed.

---

If you approve, then you will provide your written or verbally recorded acceptance of the offer and also authorize the funds that will be sent to your creditor. This process is repeated until all debts are negotiated and resolved with your creditors.

# LITIGATION SUPPORT SERVICES

## Northstar Supports You Throughout The Program

### REPRESENTATION

When appropriate, Northstar attorneys will represent you if you are sued relating to a debt that is enrolled in the program.

### END LITIGATION

Northstar attorneys can often take measures to prevent litigation in a way that protects you and expedites a settlement.

### NEGOTIATE AND RESPOND

Northstar attorneys can negotiate with creditors' attorneys, prepare responsive documents and appear at court hearings on your behalf when necessary.



Client Initial: [redacted] ________

# NORTHSTAR NOTIFIES YOUR CREDITORS

## Northstar's Representation is communicated to your creditors

Notification of representation is sent to your creditors when it is in your best interest. If Northstar has made the determination that sending notification to specific creditors is going to make them more aggressive, strategically, it does not send it to them.





Northstar requests that your creditors communicate with the law firm directly, rather than contacting you. In some limited cases you may be asked to communicate with your creditor directly. In those instances Northstar will advise you on what to say and how to handle it.

# IMPORTANT THINGS TO KNOW

You may experience an increase in collection activity, including calls or letters from creditors or collectors.

Northstar cannot stop interest, penalties or late fees, but reduction of these expenses is typically included in any settlement negotiated on your behalf.

Northstar does not contact credit bureaus to clean up or repair your credit.

Your creditors typically take 6 months to charge off your account.

Clients typically see their first settlement in 6 to 9 months of enrolling in the program.

Northstar does not provide any tax advice, and any reductions in debt may be taxable by the IRS.

Your credit score will likely be negatively impacted.

# AS A CLIENT, YOU WILL BE IN CONTACT WITH US

## NORTHSTAR IS AVAILABLE TO ANSWER YOUR QUESTIONS AT ANY TIME

### Client Services Team

Northstar's Client Services Team is available to answer all non-legal questions and help you throughout the debt negotiation process. Don't hesitate to call with any questions or concerns.

### Welcome Call and Orientation

- Please be available to speak with them so they can discuss important topics such as:
- How to handle creditor calls.
- What to do if you receive a summons?

### Welcome Package

Your welcome package will be emailed to you within one week of the receipt of your first retainer payment. It will include a program guide and a copy of your executed agreement.

# WHAT TO EXPECT FROM NORTHSTAR ATTORNEYS

## Your Attorney will speak to you before you start

- You will either meet face to face with a representative or with an attorney to review the program.
- If you do not meet with an attorney face-to-face, the attorney will call to review the representation with you.
- A letter is sent from the attorney after your meeting or call confirming what you discussed.

## Quarterly attorney file review and attorney-client calls

- A Northstar attorney reviews your file quarterly for any program change recommendations.
- If there is a concern during the quarterly review the attorney will contact you.
- You will receive an attorney call at least once a year to review your program progress.
- In addition to the above, your attorney can be made available at any time for questions.

## Post Program Exit Interview with an Attorney

- All clients will have an exit interview with an attorney whether they completed the program or not.

Northstar wants to know:

- Was it as expected?
- Was it fully explained?
- Would you refer someone else?
- Lastly, do you have any remaining questions that need to be addressed?

# DOCUMENTS TO BE SIGNED TODAY

- ***Letter of Engagement***
- ***Authorization for Settlement***
- ***Payment Schedule***
- ***Electronic Communication Verification***
- ***Bankruptcy vs. Debt Negotiation and Election of Services***
- ***Arbitration Disclosure***
- ***Credit Union Disclaimer – If applicable***
- ***Private Student Loan Disclaimer – If applicable***
- ***Authorization to Communicate with Creditors***
- ***Power of Attorney***
- ***Presentation Acknowledgment***
- ***Account Information Authorization***
- ***In-Person Client Presentation***

# THE LETTER OF ENGAGEMENT

- **The Letter of Engagement (LOE)** is the Agreement between you and Northstar. The LOE forms and describes an Attorney – Client relationship, which secures Northstar's representation of you with respect to specific creditors, regarding specific debts.

- **The Attorney-Client Relationship** is governed by the terms of the LOE, and is officially created only after ALL THREE of the following events have occurred;

  1. You and an authorized representative of Northstar have both signed the Letter of Engagement,

  2. A Northstar attorney has reviewed and approved your representation and has had a telephone conversation with you, AND

  3. You have made your first payment to Northstar.

- The LOE lists and explains Northstar's services, which will be provided by professionals including attorneys, paralegals, negotiators, assistants, and other personnel. Services performed by non-attorney personnel will be directly authorized and supervised by Northstar attorneys.

# THE LETTER OF ENGAGEMENT (CONTINUED)

## Retainer Fee

This is a flat $ 1295 fee that compensates Northstar for many of the legal services it performs at the outset of representation.

## Monthly Administrative Fees

These fees compensate Northstar for continuing legal services provided throughout the program.

## Service Cost

The Service Cost pays for non-legal work involved in the implementation, management, and maintenance of your representation.

- The LOE contains a section covering fees and costs you agree to pay to Northstar for its services. The specific timing and amounts of your fees are detailed in the LOE, and are broken down into three distinct types of fees.

# THE LETTER OF ENGAGEMENT (CONTINUED)

The LOE contains a binding arbitration agreement. This means that both you and the law firm give up their right to have a dispute resolved by a court of law, either by a Judge or a jury. Any dispute between you and the law firm or any of its attorneys or third-party service providers would be determined by an arbitrator in accordance with your state's laws in the county in which you live.

The LOE also contains a class action waiver. This means that you would be prohibited from participating in any class action lawsuit regarding a dispute between you and the law firm, and instead your dispute would be settled in an individual arbitration action.

# ENROLLMENT DOCUMENTS

- **Letter of Engagement** – This is your contract with Northstar, which outlines the terms and conditions of the representation.
- **Notice of Right to Cancel** – Should you change your mind about engaging Northstar's service.
- **Authorization to Communicate with Creditors** – Permits Northstar to communicate with your creditors for your enrolled debts.
- **Authorization for Settlement** – Allows Northstar to act on your behalf when necessary.
- **Private Student Loan Disclaimer** - This explains how student loan debts may alter the performance standards Northstar otherwise provides to you in the LOE.



# ENROLLMENT DOCUMENTS (CONTINUED)

- **Credit Union Disclaimer** – This explains how credit union debt may alter the performance standards Northstar otherwise provides to you in the LOE.
- **Bankruptcy vs. Debt Negotiation and Election of Services** – Useful information about the various options available to address debt.
- **Hardship and Budget Information** – Sets out your reasons for hardship and your monthly budget.
- **Creditor Listing** – A listing of the specific debts enrolled by you in the Northstar debt negotiation program.
- **Payment Schedule** – Outlines all payments of fees and savings funds.
- **Electronic Communication Verification** – Describes how the letter of engagement and other documents signed today will be delivered to you.



# ENROLLMENT DOCUMENTS (CONTINUED)

- **Arbitration Disclosure** – Provides important information about arbitration.
- **Power of Attorney** – Authorizes Northstar to represent you in negotiations with your creditors.
- **Presentation Acknowledgment** – Acknowledges that this face-to-face presentation was conducted with you.
- **Account Information Authorization** – Provides authorization for Northstar to facilitate your establishment of your Special Purpose Savings Account through Global Holdings.



# SPECIAL PURPOSE SAVINGS ACCOUNT

## THE FDIC INSURED SPECIAL PURPOSE SAVINGS ACCOUNT EXPLAINED

Personal Checking / Savings Account

An automatic monthly payment is made from your Personal Account to your Global Holdings Savings Account

Northstar fees are paid out of your Global account

On YOUR authorization Settlements are paid out of your Global account

## How Your FDIC Insured Special Purpose Account Will Work

- Northstar helps you establish your new Global Holdings Special Purpose Savings Account. You will use this account to save the money that will resolve your debts.
- Your new Global account is separate from your current checking and savings accounts, it is FDIC insured and controlled by you. As the balance in your account grows, Northstar will work with your creditors to negotiate a resolution of your debts.
- The funds in the Global account belong to you and you may withdraw any funds that have not previously been earned by Northstar at any time.
- You will have online access to this account and the funds you save 24 hours a day.

# SPECIAL PURPOSE SAVINGS ACCOUNT AND FINANCIAL INFORMATION

- You will pay Northstar's fees and fund settlements through a Special Purpose Savings Account provided and maintained by Global Holdings. Global will draw funds directly from your checking account into your Special Purpose Savings Account.

- The funds in this account will remain under your control, and you will be able to access the account directly with the use of a Passcode / Password. You can withdraw any funds that have not been earned by Northstar at any time.

- This is a non-interest-bearing account, and is only used to pay fees to Northstar and fund settlements that Northstar negotiates and pays on your behalf.

# SPECIAL PURPOSE SAVING ACCOUNT AND FINANCIAL INFORMATION

- Funds in your Global Holdings account are FDIC insured, and the amount of coverage may increase or decrease subject to changes in FDIC policy from time to time.
- Fees associated with this account, as well as all other terms and conditions affecting your interactions with Global Holdings are covered in your Account Servicing Agreement. Monthly fees include $10.95 for maintenance of the account, as well as other fees from time to time as listed in the Agreement. Please review the Account Servicing Agreement now, and initial once you have finished reviewing and understand its terms.
- Now that you have read and understand your Account Servicing Agreement, I can take your financial information to assist you in completing the application.

# THINGS CAN CHANGE

## Contact Us Immediately to Discuss Your Options if:

### SAVE AS MUCH MONEY AS POSSIBLE

If you receive a tax refund, get a monetary gift, or get a raise in your pay, adding those funds to your program will enable us to achieve quicker settlements with your creditors.

### CHANGE IN EMPLOYMENT STATUS

If you lose your job or earn less money, call us right away.

### UNEXPECTED LIFE CHANGES

If you experience health or medical issues or any other hardship which causes your situation to get worse.