UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>        Plaintiffs,<br><br>vs.<br><br>STRAFTS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>        Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>        Relief Defendants. | Case No. 24-cv-00040-EAW-MJR |

**RECEIVER'S REPLY TO DEFENDANTS' RESPONSE
TO THE PRELIMINARY REPORT**

Thomas W. McNamara, Court-appointed temporary receiver ("Receiver") in the instant action, hereby submits this response to Defendants' letter to the Court (Dkt. 124).

The Receiver does not wish to distract the Court's attention from the immediate matters before it with a point-by-point reply to Defendants' lengthy response to the Preliminary Report [1], but must advise the Court of disagreement with many statements in the letter. For now, the Receiver submits the summary observations below.

1.      <u>Receiver's Power to Conduct the Business is Limited by the TRO</u>.

The TRO does not order the Receiver to "run the company." First, the parties are litigating the issue of advance fees and the face-to-face exemption which affects 80% of the business, the Law Firm Debt Relief model. Until that issue is resolved in the Preliminary Injunction ("PI") order, the receiver is not authorized to operate that aspect of the business.

---

[1] A point-by-point response may be made at a later date, if needed.

1

Further, the TRO does direct the Receiver to "continue and conduct" the business, but with a significant condition:

> "provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be operated lawfully at a profit using the Assets of the receivership estate[.]"  TRO IX.N.

The Preliminary Report details the Receiver's good faith determination that the Law Firm Debt Relief Model cannot operate lawfully at a profit using the Assets of the receivership estate. Absent further instruction from the Court, that determination negates the authorization to "continue and conduct" the business.

The Preliminary Report references to the misrepresentations to consumers and practice of law issues were not an effort to expand the litigation[2] and were not made as ultimate conclusions of law, but observations related to the good faith determination on lawful/profitable operations.

2. The Receiver's Efforts to Protect Consumers.

While the business is not fully operating for the reasons above, we have taken steps to protect consumers through the determination on the issuance of a Preliminary Injunction ("PI"), but those efforts are necessarily limited, and are impacted by the limited resources of the receivership estate. At this point, 78 employees in Client Services and supporting functions are back in place. 35 Atlas Debt Relief staff and Client Services support employees returned yesterday. *See* Dkt. 56.

The Receiver has also worked closely with the two dedicated account providers (RAM and Global) to ensure that scheduled creditor settlement payments will continue and that

---

[2] While the Plaintiff's Complaint was not focused upon specific allegations of misrepresentations regarding attorney involvement in debt settlement, the TRO itself prohibits material misrepresentations by prohibiting conduct that violates the TSR or the Telemarketing Act. The Receiver's review identified material misrepresentations regarding attorney involvement prohibited by the TRO.

consumers can continue to pay into those dedicated accounts to fund negotiated settlements. That has mitigated against a significant risk to consumers that payment plans would be disrupted.

Defendants question the Receiver for not permitting negotiations under the Law Firm Debt Relief Model to continue. This issue was previously addressed with the Court at a prior hearing. There was a group of approximately 4,900 settlements, where terms had been reached with consumers' creditors, but the settlements had not been approved or payment instructions had not yet been finalized. The Receiver concluded, after consultation with both parties, that it was not possible to reopen negotiations of these settlements for Law Firm Debt Relief clients, in light of unresolved questions about the lawfulness of the overall model. Further, the Receiver evaluated that harm to these consumers was limited in the short term since terms could be finalized or negotiated after the PI, once it has been assured that the settlements can be made lawfully. Before making that determination, the Receiver specifically considered the views of StratFS's President, who indicated a desire to finalize those pending settlements but acknowledged that the potential harm to consumers from a pause of such settlements was not material, as negotiations can be revisited or settlements finalized later with the consequence of a small amount of additional interest.

Defendants complain that the Receiver immediately unplugged the servers and kept the business closed for 11 days. TRO IX.C.4. empowered the Receiver to change the locks and disconnect all internet access. Also, Defendants unilaterally told all employees to log off about noon on January 12th, shortly after a Receiver team arrived at Buffalo office and before the other team entered the NYC office. Over the three-day holiday weekend and the following week, the Receiver's team undertook the myriad duties spelled out in the TRO (and detailed in the Preliminary Report) and had numerous interactions with Defense counsel and StratFS executives

and employees. By Monday, January 22, four business days (five, if you include Friday the 12th) after entering the business, the Receiver authorized 78 employees to return to work to provide client services in an effort to protect consumers.

3. <u>The Receiver has not Terminated any Employees</u>.

Defendants claim the Receiver precipitously dismissed 900 employees. The Receiver did not dismiss employees. As above, the TRO provides that the Receiver cannot operate Law Firm Debt Relief Model absent a good faith determination that it can be done lawfully and profitably. Under any circumstances, this business line could not be operated before a PI determination in light of the fact a TRO was in place, the activities which would have created violations of the TRO could not be quickly removed and remediated, and the parties were in active litigation on whether the face-to-face exemption to the TSR advance fee prohibition existed.

Given this state of affairs, it would be inappropriate for the Receiver to terminate employees – who might be recalled to work as early as the conclusion of the PI hearing on February 2. The Receiver explained the unusual situation in Website updates to employees, attached as Exhibit A.

Dated: February 6, 2024

                                    **HODGSON RUSS LLP**

                                    */s/ James C. Thoman*
                                    James C. Thoman, Esq.
                                    140 Pearl Street, Suite 100
                                    Buffalo, New York 14202
                                    Telephone:  (716) 856-4000
                                    Facsimile:  (716) 849-0349
                                    Email:  jthoman@hodgsonruss.com

                                    **MCNAMARA SMITH LLP**

                                    By:  */s/ Logan D. Smith*
                                    Logan D. Smith  (*Pro Hac Vice*)
                                    Alexander D. Wall (*Pro Hac Vice*)

>McNamara Smith LLP
>655 West Broadway, Suite 900
>San Diego, California 92101
>Telephone:  (619) 269-0400
>Facsimile:  (619) 269-0401
>Email:  lsmith@mcnamarallp.com;
>awall@mcnamarallp.com
>
>*Attorneys for Court-appointed Receiver,*
>*Thomas W. McNamara*

17145533v4