

# CONNORS LLP

February 8, 2024

**Attorneys At Law**
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach†
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Nicholas A. Romano
Bryan P. Kroetsch
Katherine G. Howard
Andrew M. Debbins
Christina M. Eaton
Tyler J. Gately

**Paralegals**
John P. Kromer
Nancy Pelham, R.N.
Julie M. Scott, L.P.N.
Suzanne M. Pieszak, R.N.
Kathleen V. Kubicki, R.N.
Irene A. McNeill, R.N.
Rachel M. Valkwitch
Emily J. Gay
Kathryn E. Marentette, R.N.
Candace L. D'Orazio

* Also admitted in
District of Columbia

† Also admitted in
Pennsylvania

**VIA ECF**
Hon. Michael J. Roemer
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

Re: CFPB et al. v. StratFS, LLC et al., Case No. 24-cv-00040

Dear Judge Roemer:

At the outset, we emphasize that the evidence does not justify the entry of *any* preliminary injunction in this case. The Government has not established the four factors necessary to justify the entry of any injunction, Dkt. 137. In addition, the Government's unaccountable delay in bringing this case (*i.e.*, nearly 10 years after the 2014 Global consent judgment and nearly four years after receiving CID responses in 2020 from four of the law firms) strongly weighs against entry of an order. "[C]ourts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *199 Delaware Ave., Inc. v. Lake Effect Artisan Ice Cream*, 1:19-CV-00224 EAW, 2019 WL 1723588, at *4 (W.D.N.Y. Apr. 18, 2019) (Wolford, J.). *Tom Doherty Assoc., Inc. v. Saban Enterainment, Inc.*, 60 F.3d27, 39 (2d Cir. 1995) "A years-long dealy "strongly militate[s] against the granting of injunctive relief." *See City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 173 (S.D.N.Y. 2010), *aff'd in part, appeal dismissed in part*, 406 Fed. Appx. 557 (2d Cir. 2011) (quoting *Weinberger*, 456 U.S. at 320).

However, if the Court is inclined to enter a preliminary injunction, it cannot and should not enter the Government's proposed order. The evidence at the preliminary injunction hearing revolved around a single narrow disputed issue: whether the law firms' collection of advance fees complied with the TSR.[1] If the law firms conducted proper face-to-face sales presentations, they may charge advance fees. If not, they cannot charge advance fees. Any preliminary injunction must address that issue.

---

[1] Throughout this case, the Government has insisted that the SFS Defendants collected fees in violation of the TSR. But the evidence showed that the Government is suing the wrong parties. The law firms – not SFS – were the entities that charged advance fees and conducted the face-to-face sales presentations.

But the Government's proposed order goes well beyond that narrow issue. It addresses a myriad of issues on which the Government presented no evidence. The Second Circuit has cautioned that injunctive relief should be no "broader than necessary to cure the effects of the harm caused by the violation" and must be "narrowly tailored to fit specific legal violations." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 144 (2d Cir. 2011) (citations and quotation marks omitted); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48 (2d Cir. 2016) (noting that "injunctive relief should be 'no broader than necessary to cure the effects of the harm caused by the violation, and 'should not impose unnecessary burdens on lawful activity.'") (internal cites omitted). If the Court is inclined to enter a preliminary injunction, it should do so along the following lines.

***First***, the Court may require SFS and the law firms to provide service to existing clients without charging or collecting advance fees until further order of this Court. That will mean that any new clients enrolled by SFS or the law firms must be placed into a TSR-compliant contingency fee program. As set forth below, two law firms and two in-house SFS entities are already doing this. With respect to the 75,000 current clients, the Court could do the following:

- Require the law firms to service their existing clients via a TSR-compliant contingent fee model.

- Enjoin the law firms and SFS from charging or collecting any fees from the existing clients until such fees become due and owing as proper contingent fees.

- To the extent the firms have collected advance fees from their existing clients that are not yet earned as contingent fees, those fees shall be maintained and credited against future contingent fee payments.

- The Court may appoint a monitor to review and audit the collection of fees pursuant to this order and to conduct necessary due diligence to confirm compliance with the TSR on this point. The law firms and/or SFS can provide periodic reports (weekly or monthly) to the monitor to demonstrate compliance with this order.

***Second***, this Court should not continue the current receivership for the SFS Defendants. Not even by one day. One thing should now be abundantly clear: the pre-TRO SFS management is much better suited than the Receiver to manage those businesses and provide service to the 75,000 clients at issue. The ***undisputed*** facts show that the past three weeks under the Receiver's administration have been a disaster for SFS, the 75,000 clients it services, and its 1,000 employees.

February 8, 2024
Page 3
================================

The Government cannot mount an evidence-based objection to SFS being run by its pre-TRO management during the pendency of this lawsuit. Beyond the issue of possibly benefiting from advance fees, the Government did not produce any evidence to show any wrongdoing by SFS's management. There was no evidence of mismanagement, malfeasance, fraud, corporate looting, or any of the other types of activities that may justify exclusion from management. Moreover, it is difficult to ascribe bad faith or ill intent to the sole claim of wrongdoing (*i.e.*, a violation of the TSR). The law firms retained a subject matter expert who crafted the model and repeatedly honed it.

***Third***, the Court should also terminate the current receivership for Lit Def Strategies ("LDS") and Relialit and restore LDS's former management (Relialit closed in 2021). LDS has been shuttered since its assets were frozen and it proved unable to meet its payroll. There is no evidence that LDS engaged in any wrongdoing. Nor is there evidence that LDS had any involvement in the sole claimed wrongdoing, *i.e.*, violation of the TSR.

***Fourth***, SFS has two affiliates (Timberline and Atlas) that provide debt settlement services on a TSR-compliant contingency fee basis. In addition, two of the law firms (Royal and Hailstone) have also operated on a TSR-compliant contingency fee basis. Those firms should never have been shut down. But the Receiver shuttered Atlas and Timberline and refused to provide service to Royal and Hailstone. That should be reversed, and those firms should be permitted to operate as they have previously done.

***Fifth***, the preliminary injunction should not include any asset freezes. The Government has not provided any evidence to suggest any of Defendants or Relief Defendants have dissipated assets or threatened to convert their current assets. Moreover, Defendants and Relief Defendants need access to funds to pay legal costs in this and other actions, to pay living expenses, and support the business operations of SFS and the law firms.

***Sixth***, no preliminary injunction should be entered against the individual Defendants. As set forth above, there is no evidence that the individual Defendants engaged in wrongdoing, fraud, malfeasance or misrepresentation. To the contrary, there is substantial evidence that they had (and have) a good faith belief that the current face-to-face model complies with the TSR.

In closing, I want to emphasize that we have sought to engage in discussions with Plaintiffs' counsel regarding a mutually-agreeable resolution on this issue. To that end, we welcome an opportunity to engage in a conference with Your Honor and are prepared to do so at any time convenient for you.

February 8, 2024
Page 4
===========================

Sincerely,

/s/ Terrence M. Connors
Terrence M. Connors, Esq.
CONNORS LLP
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com

*Attorneys for Intervenor Law Firms*

/s/ Ronald S. Safer
Ronald S. Safer (*pro hac vice*)
Rodney Perry (*pro hac vice*)
Matthew Kennison (*pro hac vice*)
Maegan McAdam
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
rperry@rshc-law.com
mkennisioin@rshc-law.com
mmcadam@rshc-law.com

*Attorneys for Individual Defendant Ryan Sasson and Relief Defendants Daniel Blumkin and Ian Behar, and related Relief Defendant entities*

/s/ Dennis C. Vacco
Dennis C. Vacco, Esq.
Scott S. Allen, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
dvacco@lippes.com
sallen@lippes.com

February 8, 2024
Page 5
==========================

*Attorneys for StratFS, LLC (f/k/a Strategic Financial Solutions, LLC) and subsidiary entities*

*/s/ Rodney O. Personius*
Rodney O. Personius, Esq.
PERSONIUS MELBR LLP
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com


*Attorneys for Defendant
JASON BLUST
and Relief Defendants
JACLYN BLUST
THE BLUST FAMILY IRREVOCABLE TRUST
LIT DEF STRATEGIES, LLC
RELIALIT, LLC*