February 9, 2024

Hon. Michael J. Roemer
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:    *Consumer Financial Protection Bureau, et al. v. StratFS, LLC, et al.*
               Case No. 24-cv-40

Dear Judge Roemer:

As a follow up to our conference last evening wherein we stressed our client's continued concern over the manner in which the Receiver is managing the businesses of StratFS, LLC and its affiliates ("Strategic" or "Company"), we believe it is necessary to seek the Court's direction regarding specific operational issues that the Receiver has refused to adequately address.

As was mentioned in our conference last night, Strategic is aware of several critical vendors who have not received payment for services. An employee of Strategic, Brian Reiss, with whom the Receiver has interacted, has sent repeated messages to the Receiver regarding the need to pay critical vendors. The Receiver has indicated that he does not believe he is required to pay vendors for services that were rendered prior to the commencement of the Receivership on January 12th. This position is contrary to the direction of the TRO: the Receiver should continue to manage the company. Additionally, this position is contrary to the spirit of our ongoing negotiations with the Government to enter a stipulation for a Preliminary Injunction that would permit the contingent fee model of the Company to resume operations. An example of the vendors who are owed money is reflected in Exhibit A (attached). As we further discussed in our conference last evening, it is essential that Strategic personnel be allowed to negotiate directly with the vendors to arrange for appropriate payment terms of the amounts owed to them. To that end, we are requesting that pending the entry of the anticipated stipulation, the Court direct the Receiver to reinstate the controller, Cameron Ball, and procurement specialist, John Stockett, to assist the Receiver in negotiating and paying past due invoices to vendors who are instrumental to the Company's survival.

Another important issue to Strategic's survival is staffing. The level of staffing authorized by the Receiver is simply insufficient to service 75,000 clients. One of the goals of the stipulation we discussed last evening is to ensure that the existing law firm clients are properly serviced under the new contingent fee arrangement. For a month now, these consumers have not been adequately serviced by the Receiver. Again, the Company President has recommended the addition of 150 more staff to help service the consumers. This additional staff will reduce the hold times of calls made to Strategic, which have been as long as six hours. The additional staff will also assist in tackling the backlog of documents (50,000) and emails (10,000). Ironically, despite the progress made between the parties to allow the Company to resume operations, the

Receiver, just this morning, posted on the Receiver's website a notice indicating that the Receiver is mailing "conditional notice of reduction in force" to an unspecified number of Strategic employees. Due to the uncertainty of their employment status and without being provided adequate notice under applicable State and Federal WARN Act requirements, Strategic is at risk of losing important personnel.  Today, in the wake of the Receiver's reduction in work force posting, four high level managers advised the Company that they had found new employment.  While the parties are in earnest negotiations to allow the Company to resume the contingent fee model of the business, the Receiver is doing everything in his power to destroy the Company.

The issues raised in this letter reflect just a few of the adverse consequences of the Receiver continuing to operate in a manner that is clearly designed to shut down the Company versus managing the Company in a fashion that will allow it to survive for the benefit of the consumers and the employees.   We respectfully request that the Court immediately direct the Receiver to reinstate the personnel as described above to service the consumers and to pay the vendors or negotiate extension of payment terms.

Moreover, Mr. Blust and the Intervenor Law Firms respectfully request the Court to address an issue dealing with the communications between the law firms and their clients.  On February 7, outside the courtroom following oral argument, Mr. McNamara, and his counsel, Mr. Thoman, requested the assistance of Mr. Connors and Mr. Personius with respect to two matters associated with maximizing communication between personnel at Strategic and the law firms with respect to litigated matters.

The first concern related to the need for personnel at Strategic to have access to data stored in what is described as the NDS system.  Mr. Connors and Mr. Personius expressed their understanding that the contents of this system constitute attorney-client protected information that should not be shared with the Receiver or his staff.  Mr. McNamara acknowledged this to be the case and agreed neither he nor his staff would access this information.  His sole concern is that this data be made available to personnel at Strategic.  It was agreed that Mr. Connors and Mr. Personius would promptly address this request with their clients and attempt to provide a response on the following day, Thursday, Feb 8.  However, before they were able to inform counsel for the Receiver that the NDS access issue was not a problem, it was learned that somehow personnel at Strategic have indeed gained NDS access.  Accordingly, we understand NDS access is no longer an issue.

The second concern that was expressed during the informal discussion on February 7 pertained to reopening Lit Def Strategies, which employs a staff of six individuals, including Mr. Blust.  Lit Def acts as a conduit between personnel at Strategic and the law firms with respect to litigated matters.  When the TRO was issued, the across-the-board freezing of bank accounts included the account for Lit Def.  Without a means of compensating the company's employees for their services, they stopped working.  This same topic had been raised by a representative of the Receiver in late January but was then inexplicably abandoned as an issue.  When the subject was again raised during the February 7th conversation, Mr. Connors and Mr. Personius

responded that this request also needed to be addressed with their clients. Regarding compensation, the Receiver and his counsel suggested this expense could be paid by the law firms and Mr. Blust as some type of goodwill gesture. Mr. Connors and Mr. Personius responded that the Lit Def bank account has funds that can and should be unfrozen to the extent needed to pay the company's employees for their services. This issue was not resolved during the informal discussion. Mr. Connors and Mr. Personius once again agreed that the Lit Def reopening would be immediately addressed with the law firms and Mr. Blust. Their response is that Lit Def should definitely reopen, and that the compensation expense for the six individuals, including Mr. Blust, should be paid out of the company's bank account, rather than by either the law firms or Mr. Blust personally. We respectfully request that Mr. McNamara be directed to proceed in this fashion regarding the reopening of Lit Def.

Respectfully,

*/s/ Dennis C. Vacco*
Dennis C. Vacco, Esq.
Scott S. Allen, Jr. Esq.
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
dvacco@lippes.com
sallen@lippes.com

*Attorneys for StratFS, LLC (f/k/a Strategic Financial Solutions, LLC) and subsidiary entities*

*/s/ Terrence M. Connors*
Terrence M. Connors, Esq.
CONNORS LLP
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com

*Attorneys for Intervenor Law Firms*

*/s/ Ronald S. Safer*
Ronald S. Safer (*pro hac vice*)
Rodney Perry (*pro hac vice*)
Matthew Kennison (*pro hac vice*)

Maegan McAdam
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street. Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
rperry@rshc-law.com
mkennison@rshc-law.com
mmcadam@rshc-law.com

*Attorneys for Individual Defendant Ryan Sasson and Relief Defendants Daniel Blumkin and Ian Behar, and related Relief Defendant entities*

*/s/ Rodney O. Personius*
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 855-1050
rop@personiusmelber.com

*Attorneys for Defendant*
*JASON BLUST*
*and Relief Defendants*
*JACLYN BLUST*
*THE BLUST FAMILY IRREVOCABLE TRUST*
*LIT DEF STRATEGIES, LLC*
*RELIALIT, LLC*

cc:   Christopher.boyd@ny.ag.gov
vanessa.buchko@cfpb.gov
monika.moore@cfpb.gov
joseph.sanders@cfpb.gov
kevin.burns@coag.gov
marion.quirk@delaware.gov
kevin.kevitsky@delaware.gov
greg.grzeskiewicz@ilag.gov
Daniel.edelstein@ilag.gov
Amanda.bacoyanis@ilag.gov
Mattew.davies@ilag.gov


Evan.romanoff@ag.state.mn.us
lweaver@ncdoj.gov
beilinlw@doj.state.wi.us
tmcnamara@mcnamarallp.com
awall@mcnamarallp.com
jjacobs@mcnamarallp.com
lsmith@mcnamarallp.com
jthoman@hodgsonruss.com

Exhibit A

Salesforce: This is our customer relationship management system for all client services. There is currently an overdue bill of $1,750,000 that we believe is for annual services. Our hope is to convince this vendor to give us a new contract with billing only for the amount of people we currently have active and change to a monthly billing cycle.

HOV Excela: This is the vendor that scans all client mail to source litigation, creditor movement, creditor important messages to clients including broken payments or completed settlements, etc. We need to contact them and let them know what's going on with the company and figure out a way to cancel any services that are no longer necessary.

8X8: This is Strategic's phone system. Like above we need to inform, negotiate and pay for the phones to remain active.

Box: This is the digital storage company that houses all the important documents related to every client's file.  Like above, we need to inform, negotiate and pay for the phones to remain active.

Microsoft 365 and Azure: This company is all the emails, worksheets, and storage for the company.  Like above we need to inform, negotiate and pay for the phones to remain active.

Freed Maxick —Accountants and tax preparers.  Others include internet, fax, etc.