UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>                         Plaintiffs,<br><br>vs.<br><br>STRAFTS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>                         Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>                         Relief Defendants. | Case No. 24-cv-00040-EAW-MJR |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S
EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY
RECEIVERSHIP DEFENDANT LIT DEF STRATEGIES, LLC
AND INDIVIDUAL DEFENDANT JASON BLUST
SHOULD NOT BE HELD IN CIVIL CONTEMPT**

## <u>TABLE OF CONTENTS</u>

### Contents

I.  FACTS ................................................................................................................... 2

    A.  Fidelis Legal Support Services is Controlled by Defendant Blust ........................ 5

    B.  Lit Def and Fidelis Are Interchangeable ............................................................... 7

    C.  Fidelis/Lit Def Employees Continued To Operate After the TRO ........................ 8

    D.  Other Contacts with Defendant Blust and His Employees and/or Managers ........ 9

II.  ARGUMENT ....................................................................................................... 11

    A.  Legal Standard .................................................................................................... 11

    B.  Discussion ........................................................................................................... 14

III.  CONCLUSION .................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

Cases

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d Cir. 2016) ..................................................................... 12, 13, 14

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..................................................................................... 14

*Cricut, Inc. v. APA Tech. Ltd. Co.*,
    2023 WL 6370866 (E.D.N.Y. Sept. 30, 2023) ...................................... 13

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991) ............................................................... 12

*Donovan v. Sovereign Sec., Ltd.*,
    726 F.2d 55 (2d Cir. 1984) ................................................................... 13

*Hicks on Behalf of Feiock v. Feiock*,
    485 U.S. 624 (1988)............................................................................... 13

*Huber v. Marine Midland Bank*,
    51 F.3d 5 (2d Cir. 1995) ....................................................................... 13

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
    885 F.2d 1 (2d Cir 1989) ....................................................................... 14

*New York State Nat'l Org. for Women v. Terry*,
    159 F.3d 86 (2d Cir. 1998) ................................................................... 12

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ............................................................. 12, 14

*S.E.C. v. Princeton Econ. Int'l Ltd.*,
    152 F. Supp. 2d 456 (S.D.N.Y. 2001) ................................................ 12

*Spallone v. United States*,
    493 U.S. 265 (1990)............................................................................... 12

*Walker v. City of Birmingham*,
    388 U.S. 307 (1967)............................................................................... 11

## PRELIMINARY STATEMENT

Lit Def Strategies, LLC ("Lit Def"), is a Receivership Defendant and is owned and/or controlled by Defendant Jason Blust.  Lit Def is managed by attorney Michelle Hinds, who has worked with Blust for many years at Lit Def and at law firms.  As previously reported to the Court, Lit Def failed to comply with any of the obligations imposed on it in the TRO (Dkt. No. 12), and, on January 25, it claimed through counsel that it ceased operations upon entry of the TRO and laid off all staff.  But based upon information received this past Friday, February 23, it appears that Lit Def has continued operating; so too has a related company, Fidelis Legal Support Services, LLC ("Fidelis"), which is beneficially owned or controlled by Defendant Blust.  It appears that Fidelis is operating in parallel with, as a proxy of, or as a successor to Lit Def.  Yesterday, February 25, the Receiver gave notice to Fidelis and the parties that Fidelis qualifies as a Receivership Defendant as a "business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants."  TRO Definitions N. at pp 7-8.[1]

The discovery that Lit Def continues to operate (alone and/or in conjunction with Fidelis) – despite explicit claims to the Receiver and the Court otherwise – has forced the Receiver to bring this Order to Show Cause.  Lit Def and Defendant Blust have violated the TRO in many ways (as described in previous Receiver filings and below), but their continued surreptitious operations violate a fundamental provision of the TRO: Defendants "are hereby temporarily

---

[1] The Receiver gave notice last night via letter pursuant to TRO Section IX.S., "If the Receiver identifies a non party entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court."

restrained and enjoined from directly or indirectly . . . [t]ransacting any of the business of the Receivership Defendants."  TRO Section XIII.B. at p 30.

## I.     FACTS

As a Receivership Defendant, Lit Def, and as an Individual Defendant, Jason Blust, are required to abide by the TRO.  The TRO is not a self-executing document; it imposes requirements of affirmative cooperation.  *See e.g.*, TRO Sections XI, XIII (Cooperation with Receiver), and XIV (Delivery of Receivership Property).  Lit Def is owned or controlled by Jason Blust, an attorney, and Lit Def is represented by counsel.  Nevertheless, Lit Def has taken no meaningful steps to comply with the TRO.[2]

After a number of contacts by the Receiver and his counsel, Lit Def counsel finally reported on January 25 that the company ceased operations and laid everyone off upon entry of the TRO.  The Receiver reported Lit Def's claim to the Court in the Preliminary Report and then in a later reply to a letter filed by the Defendants.[3]  The Receiver took as true Lit Def's claim that operations ceased upon entry of the TRO.  Beyond reporting Lit Def's failure to abide by the TRO, the Receiver did not believe the cessation of operations merited seeking the Court's assistance through an Order to Show Cause process, particularly given the many issues the Court was busy addressing in this matter.  Since the filing of the Preliminary Report and Receiver's

---

[2] With the apparent exception of providing Financial Disclosure documents to the Plaintiffs.

[3] *See* Preliminary Report at pp. 10-11, 39; *see* Reply to February 9 Letter, Dkt. No. 150 at pp. 5-8.

February 11, 2024 Reply (Dkt. No. 150), Lit Def has not contacted the Receiver to provide any update as to its status or make the slightest effort to come into compliance with the TRO.[4]

On Friday, February 23, 2024, the Receiver received information suggesting that Lit Def was, in fact, continuing to operate and that a related debt service entity, Fidelis, controlled by Defendant Blust is operating in tandem with Lit Def.  At 10:31 a.m. (PST), the VP of client relations at StratFS forwarded an email string to the Receiver and asked whether the issue identified in the email could be addressed by StratFS staff.  The Receiver noted that the email concerned **"LitDef file #CS0031210376"** and had been forwarded to the VP by Michelle Hinds, an attorney who works with Defendant Blust, and who is a manager at Lit Def.  While Ms. Hinds used a Fidelis email address, two of the people included in the chain were contacted using their Lit Def email addresses suggesting that Lit Def's email system was operational.

The email string begins with a Rhode Island attorney sending Hinds an email to her clientfirstbankruptcy.com email addresses (Client First Bankruptcy is a Blust law firm), and to Katherine Rosenberg at a litdefstrategies.com email address, and to Peggy Slivka at a fidelissupport.com email address.  Slivka, using her fidelissupport.com email address, forwarded the email to Hinds at her mhinds@fidelissupport.com email address and to E Garcia at a litdefstrategies.com address.  Hinds then used her fidelissupport.com email address to forward the chain to the VP at StratFS.

---

[4] Indeed, Defendants routinely offered the narrative that Lit Def ceased operations both in their public filings and apparently in their informal discussions with the Court.  *See e.g.*, February 9, 2024 letter to the Court (Dkt. No. 149).



FW: Crimson LitDef file ██████████████████

**MR**   Melissa Riley <mriley@stratfs.com>
To  Thomas McNamara

ⓘ You forwarded this message on 2/23/2024 1:34 PM.

← Reply    ← Reply All    → Forward    ▢    ⋯
Fri 2/23/2024 10:31 AM

**EXTERNAL**

Am I ok to have this worked?

Thanks

**Melissa Riley**
VP of Client Services
**O:** (716) 431-4103   //   **E:**  mriley@stratfs.com

Awarded as one of *"The Best Companies to Work for in New York"* four times!

From: Michelle Hinds <mhinds@fidelissupport.com>
Sent: Friday, February 23, 2024 12:51 PM
To: Melissa Riley <mriley@stratfs.com>
Subject: Fwd: Crimson LitDef file ████████████████

CAUTION This email originated from outside the organization. Do not click on links or open attachments unless you recognize the sender's **email** address and know that the content is safe.

Melissa,

See below. Is there someone there now that can get this across the line?

---------- Forwarded message ---------
From: **Peggy (Margaret) Slivka** <pslivka@fidelissupport.com>
Date: Fri, Feb 23, 2024 at 11:49 AM
Subject: Fwd: Crimson LitDef file ████████████████████
To: Michelle <mhinds@fidelissupport.com>
Cc: E Garcia <egarcia@litdefstrategies.com>

Good morning -

That is because I sent the wrong one . Please see below.

Thank you,

Peggy Slivka
Fidelis Support

4

---------- Forwarded message ---------
From: **Michael Furtado** <furtadolaw@gmail.com>
Date: Fri, Feb 23, 2024 at 9:58 AM
Subject: Crimson LitDef file ██████████████████
To: Katherine Rosenberg <krosenberg@litdefstrategies.com>, Michelle Hinds <michelle.hinds@clientfirstbankruptcy.com>, Peggy Slivka <pslivka@fidelissupport.com>

Good Morning all;

I just had a call from a non-attorney negotiator from ████████████████ regarding the above case.

The file was recalled by the servicer after several months last year when ████████████ repeatedly told me that they could not discuss ██████ cases in Rhode Island, as they were on hold.

That is definitely no longer the case, as I have received many calls from ████████████ to discuss settlement possibilities.

Regarding the above-referenced case, ████████ will accept ████████ - which is just about half of the current Judgment balance (with interest accruing at $5.02 per day). They can take this in up to 12 equal payments, or 24 months with a 'lump' to start.

Under the current circumstances, I don't know if there are still 'in-house negotiators' working on this, but this is significantly less than the original balance of $14,525.00 at the beginning of the program.

Sincerely,

Michael J Furtado
401-943-1732

## A.     Fidelis Legal Support Services is Controlled by Defendant Blust

Fidelis was not known to the Receiver team before Friday, February 23, 2024.  Public records indicate it is a Nevada limited liability company formed on January 25, 2021.  *See* Declaration of Alexander D. Wall ("Wall Decl."), Exhibit 1 (Nevada Secretary of State Business Information Page).  The sole Manager listed for the company is a person named Cameron Christo using a residential address in Chicago, Illinois.  *Id.*  Fidelis's website lists a Las Vegas virtual office as its location and claims to provide "top quality support services to assist lawyers preparing for complicated cases."  A comparison of the Lit Def and Fidelis websites shows striking similarities.  (Wall Decl., Exhibits 2 and 3.)[5]

---

[5] Blust counsel has reported that an earlier litigation support entity controlled by Blust, Receivership Defendant Relialit, LLC, closed as of 2019.  Whether Fidelis was intended to eventually replace Lit Def (as Lit Def appears to have replaced Relialit) or was to operate contemporaneously is unclear.

A review of StratFS's SalesForce client records has revealed various emails to and from email addresses using the "Fidelissupport.com" domain going back to at least February 2022. *See* Wall Decl., Exhibit 4 (sample of Fidelis emails in StratFS SalesForce environment).  As discussed below, the individuals utilizing these Fidelissupport.com email accounts were Lit Def employees who also maintained Lit Def email accounts, and in both instances – whether using Lit Def or Fidelis email addresses – the employees acted as liaisons between StratFS consumers and law firms in litigation-related matters – for example, by asking the client's assigned lawyer to respond to a client inquiry or emergency, or by inquiring about the settlement status of matters in litigation.  *See id*.

While Fidelis is registered in Nevada with a manager by the name of Cameron Christo, StratFS emails reveal that Fidelis is, in fact, beneficially owned or controlled by Defendant Blust.  For example, in one email string from October of 2021 between StratFS's Controller and Blust's accountant, Chris Kesterson, the Controller began:

> "Sal [StratFS's CFO] was explaining a situation to me where the law firms will be billing us for technology spend.  Do you have a statement of work and costs on that?  I would like to put an accrual on the books but don't have a start date or cost. "[6]

Wall Decl., Exhibit 5.

While the accountant did not have the background, he promised to look into it and responded a few days later indicating the payment amount was $750,000; this amount was to be paid not to the law firms, but instead to Fidelis at a Chicago residential address (different than the address provided to the Nevada authorities).[7]  Neither the Controller nor the accountant could

---

[6] As noted in the Preliminary Report, it appears Defendant Blust either owns, controls, or manages the Intervenor Law Firms.  *See* Preliminary Report at pp. 26-27.

[7] The rationale for $750,000 in "technology" payments from StratFS, a "platform as a service" vendor, to the law firms is not clear.  (Nor was the rationale clear at StratFS, *see* Wall Decl.,

identify a contract to support the payment, so the Controller reached out to the CFO to ask if there was a contract.  The CFO, in turn, reached out to the general counsel and Ryan Sasson and asked, "Do we have a contract for this?  The auditors are going to need to see it."  Sasson's only response was "200 this year [2021] and 550 in 2022."  *Id*.  *See* Wall Decl., Exhibit 5.

In a separate and later email string in March of 2022 about a Fidelis February of 2022 invoice related to the $750,000 in payments, the Controller forwarded the invoice to the general counsel and CFO of StratFS.  (Wall Decl., Exhibit 8.) They then had a discussion about how to draft a contract for the fee; ultimately they learned the auditors were not focused on the fee and so a modest contract would suffice.  In recognition that Defendant Blust controlled Fidelis, the CFO concluded the email conversation about the Fidelis fee by telling the general counsel and the Controller "You can land the plane with Blust as you see fit.  Thanks!"  *Id.*

### B.    Lit Def and Fidelis Are Interchangeable

Based on our review of the emails in StratFS's SalesForce environment, we observed email interactions with Hinds (mhinds@fidelissupport.com), Katherine Rosenberg (krosenberg@fidelissupport.com), Peggy Slivka (pslivka@fidelissupport.com), and Jennifer Moy (jmoy@fidelissupport.com)  since February 2022.  *See* Wall Decl., Exhibit 4.  Prior to February 2022, each of these individuals utilized a Lit Def email account.  *See* Wall Decl., Exhibit 9 (select pre-February 2022 Lit Def emails).  But from 2022 on, these individuals contemporaneously used both Fidelissupport.com and Litdefstrategies.com email addresses.  *See* Wall Decl., Exhibit 10 (select post-February 2022 Lit Def emails).  The Fidelissupport.com and Litdefstrategies.com email addresses appear to have served the same purpose and were used

---

Exhibit  6.)  Similarly, why the payment stream was directed to Fidelis is not clear, but, as reflected in this and other email exchanges, the payments demonstrate that Blust controls Fidelis and Defendant Sasson approved the payment stream (Wall Decl., Exhibit 7).

interchangeably.  *See id.  See also* Wall Decl., Exhibit 4 (sample of Fidelis emails in the StratFS SalesForce environment).  Regardless of which email domain was employed, the emails served identical functions of liaising between clients and law firms on litigation matters.  *See id*.

The email usage suggests that "Fidelis" and "Lit Def" operate in parallel or as one entity, and they employ a small group of individuals who perform the same services under both the "Fidelis" and "Lit Def Strategies" names.  In a February 9, 2024 letter filing, Defendants represented to the Court that Lit Def "employs a staff of six individuals, including Mr. Blust." (Dkt. No. 149, at p. 2.)  Based upon our review of Fidelis and Lit Def emails located in the StratFS SalesForce system, we believe that the "staff" mentioned in the letter likely includes the following five individuals: Hinds, Slivka, Moy, Rosenberg, and an individual identified in emails as "S. Saavedra."  Each of these individuals uses, or has used, both a Fidelis and Lit Def email account.

## C.    Fidelis/Lit Def Employees Continued To Operate After the TRO

Client-related emails saved in StratFS's SalesForce environment suggest that Lit Def and/or Fidelis employees have continued to operate post the imposition of the TRO on January 11 despite the many claims by Defendants to the contrary.  For example, on January 30, 2024, Taylor Robinson (taylorrobinsonesq@gmail.com), a lawyer associated with many of the Intervenor Law Firms,[8] sent an email to an individual identified as "Deven K" (deven@qualitycontrolexperts.com), cc'ing Hinds at her Lit Def email address (mhinds@litdefstrategies.com) and Level One Law (cs@levelonelaw.com), asking Deven to pass

---

[8] StratFS SalesForce records indicate that Robinson represents, or has represented, clients in the name of Canyon Legal Group LLC, Clear Creek Legal, Heartland Legal Group, Level One Law, Newport Legal Group, Option 1 Legal, Rockwell Legal Group, Sandstone Law Firm, Slate Legal Group, Spring Legal Group, The Law Firm of Derek Williams, LLC, Whitestone Legal Group, and WyoLaw, LLC.

an attached complaint to "to litigation."  Wall Decl., Exhibit 11 (January 2024 Robinson email exchange).

On January 31, Hinds responded, "Thank you, Taylor.  We will assign this to a litigation attorney."  *Id*.  Although Robinson's email was sent to Hinds' Lit Def email address, Hinds responded from her Fidelis email account (mhinds@fidelissupport.com).  *Id*.  As a further example, on January 31, 2024 Jean Duncombe (duncombelawoffice@yahoo.com), another lawyer associated with numerous Intervenor Law Firms,[9] sent an email to Hinds about a client who had an upcoming hearing in a litigation matter but had not been contacted by anyone from the "litigation department[.]"  Wall Decl., Exhibit 12 (January 2024 Duncombe email exchange). Later that same day, Hinds requested litigation documents from the VP of Client Services "so [Hinds] can get an attorney on it immediately[.]"  *Id*.  From these email exchanges, it is clear that Lit Def's manager Hinds is continuing Lit Def's operations utilizing her Lit Def and Fidelis email accounts.

### D.    Other Contacts with Defendant Blust and His Employees and/or Managers

Defendants have routinely claimed that Lit Def ceased operations.  In their February 9, 2024 letter to the Court (Dkt. No. 149), Defendants stated, "The second concern that was expressed during the informal discussion on February 7 pertained to reopening Lit Def Strategies, which employs a staff of six individuals, including Mr. Blust.  Lit Def acts as a conduit between personnel at Strategic and the law firms with respect to litigated matters.  When the TRO was issued, the across-the-board freezing of bank accounts included the account for Lit

---

[9] StratFS SalesForce records indicate that Duncombe represents, or has represented, clients in the name of Anchor Law Firm, Canyon Legal Group LLC, Clear Creek Legal, Heartland Legal Group, Level One Law, Newport Legal Group, Option 1 Legal, Rockwell Legal Group, Sandstone Law Firm, Slate Legal Group, Spring Legal Group, The Law Firm of Derek Williams, LLC, Whitestone Legal Group, and WyoLaw, LLC.

Def.  ***Without a means of compensating the company's employees for their services, they***

***stopped working***."  *Id.* at p. 2 (emphasis added).  The letter continued that defense counsel

believed "Lit Def should definitely reopen, and that the compensation expense for the six

individuals, including Mr. Blust, should be paid out of the company's bank account, rather than

by either the law firms or Mr. Blust personally.  We respectfully request that Mr. McNamara be

directed to proceed in this fashion regarding the reopening of Lit Def."  *Id.* at p. 3.

As reflected in the emails above, it appears Defendants' claims to this Court about the

demise of Lit Def were not true.  Other emails exchanged between StratFS, Blust, Hinds, and

Gustafson on Friday February 23 provide additional context.  The emails began with an

exchange initially between a StratFS VP and Defendant Blust.

**From:** Melissa Riley <mriley@stratfs.com>
**Sent:** Friday, February 23, 2024 8:49 AM
**To:** Jason Blust <jblust@blustfirm.com>
**Subject:** Lit Attorneys and Non-Lit Attorneys

Hey,

Wanted to reach out to get some understanding of the status of the Lit Attorneys and Non-Lit Attorneys.  We are getting clients calling in saying they
are trying to reach their attorney's and are not getting calls back.  Also, we had our Lit support ( back office team) return back a few weeks ago to start
to process the Lit documents that we have received but we are not seeing any updates in the systems. So looking to understand any of the current
SLA's or updates so we can provide those to the clients.

Thanks for the help to better understand what is being worked on and what is not.

**Melissa Riley**
VP of Client Services
**O:** (716) 431-4103   //   **E:** mriley@stratfs.com



PROUDLY EMPLOYEE OWNED

Awarded as one of *"The Best Companies to Work for in New York"* four times!



Defendant Blust responded to the email in roughly 30 minutes and copied three other

people.  He wrote:

**From:** Jason Blust <jblust@blustfirm.com>
**Sent:** Friday, February 23, 2024 9:20 AM
**To:** Melissa Riley <mriley@stratfs.com>; Deven K <deven@qualitycontrolexperts.com>; Michelle Hinds <mhinds@fidelissupport.com>; rickg@gustafsonlc.com
**Subject:** Re: Lit Attorneys and Non-Lit Attorneys

We have lost some attorneys - so think first question is case x case.  Deven can probably help there.

On lit question, that is for Michelle have added both in.

Also adding Rick Gustafson who will be taking on day to day activities from me.

Also did you see BBB issues I sent?

10

Based on the follow-on emails, it appears that Deven focuses on the debt relief negotiations attorneys, while Michelle Hinds focuses on litigation matters.  Hinds followed up with the VP about the status of litigation a short time later.  She wrote:

**From:** Michelle Hinds <mhinds@fidelissupport.com>
**Sent:** Friday, February 23, 2024 11:03 AM
**To:** Deven K <deven@qualitycontrolexperts.com>
**Cc:** George Michael <george@qcprofessionals.com>; Jason Blust <jblust@blustfirm.com>; Melissa Riley <mriley@stratfs.com>; Richard Gustafson <rickg@gustafsonlc.com>
**Subject:** Re: Lit Attorneys and Non-Lit Attorneys

CAUTION This email originated from outside the organization. Do not click on links or open attachments unless you recognize the sender's **email** address and know that the content is safe.

Melissa,

We haven't had much turnover on the lit side, and the lit attorneys continue to work on their files, attend hearings, contact clients, etc. If you can give me more details on clients claiming they're having trouble reaching their attorney, I'm happy to reach out and have the attorney contact them. Please let me know.

Michelle Hinds
Fidelis Support

## II.    ARGUMENT

### A.    Legal Standard

Obedience with a court order is required unless and until it has been vacated or reversed, except in only the rarest of situations.  *Walker v. City of Birmingham*, 388 U.S. 307, 315 (1967).

---

[10] Earlier that morning, Blust also forwarded three BBB complaints to the VP and asked that StratFS assist in addressing them.  Still later, lawyer Richard Gustafson (who Blust mentioned would be "taking on day to day activities from" him) sent three emails regarding BBB complaints and sought assistance in addressing the complaints.

Federal courts have inherent power to enforce their lawful orders through contempt.  *Spallone v. United States*, 493 U.S. 265, 276 (1990); *see also*, *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (federal courts possess inherent power to sanction for violation of order and need not issue warning before imposing sanctions).  Failure to comply with a TRO in a receivership case justifies a contempt order.  *See, e.g.*, *S.E.C. v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456, 459 (S.D.N.Y. 2001) (finding contempt for failure to turn over corporate assets to receiver in compliance with TRO).

The nature of contempt "turns on the character and purpose of the sanction" issued in response to the contemptuous conduct.  *New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 93 (2d Cir. 1998).  "Civil contempt fines seek one of two objectives.  One is coercion—to force the contemnor to conform his conduct to the court's order.  The second is compensation.  Where the contumacious conduct has caused injury to the beneficiary of the court's order, a civil fine may be imposed on the contemnor to compensate the victim for the loss or harm caused by the unlawful conduct."  *Id.*

A court may hold a party in contempt for violation of an order "if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner".  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).  "It need not be established that the violation was willful."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc*., 369 F.3d 645, 655 (2d Cir. 2004).

Regarding the first element of contempt, an injunction is sufficiently clear and unambiguous if it leaves "no doubt in the minds of those to whom it was addressed ... precisely what acts are forbidden."  *CBS*, 814 F.3d at 98.*, quoting Drywall Tapers & Pointers v. Local*

12

*530*, 889 F.2d 389, 395 (2d Cir.1989).  A party that believes an order of the court requiring its compliance is ambiguous should "petition[] the District Court for a modification, clarification or construction of the order," rather than  "under[take] to make [its] own determination."  *CBS*, 814 F.3d at 99, *quoting McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949).  Regarding the second element, "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred."  *Cricut, Inc. v. APA Tech. Ltd. Co.*, 2023 WL 6370866, at *6 (E.D.N.Y. Sept. 30, 2023) (internal quotations omitted).  And as to the third element, "[r]easonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance . . .  [a] party does not act with reasonable diligence in obeying a court order if it complied reluctantly or after a contempt motion had been filed."  *Id*. (internal citations and quotations omitted).

Where the petitioner on a motion for contempt has established that the alleged contemnor failed to comply with the order in question, the burden shifts to the alleged contemnor to prove an inability to comply.  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995); *see also*, *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 638 n. 9 (1988).  However, "the alleged contemnor's burden is to establish his inability [to comply with the order] clearly, plainly, and unmistakably."  *Huber*, 51 F.3d at 10; *see also Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984) ("the burden is on defendants to substantiate their claimed inability 'plainly and unmistakably'") (citations omitted).

Where a court order requires or prohibits an action by a corporation, the order is also "in effect a command to those who are officially responsible for the conduct of its affairs."  *CBS*, 814 F.3d at 100, *quoting NLRB v. Hopwood Retinning Co.,* 104 F.2d 302, 305 (2d Cir. 1939).  A corporate officer who "prevent[s] compliance or fail[s] to take appropriate action within their

power for the performance of the corporate duty" are "no less than the corporation itself, [] guilty of disobedience, and may be punished for contempt." *Id.* Where contempt is found, the Court may consider several factors in calculating a fine, including "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about [compliance], and the contemnor's ability to pay." *Paramedics*, 369 F.3d at 658 (internal quotations omitted); *see also Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir 1989) ("monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience."). Courts are authorized to assess attorney's fees where the contempt was willful. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citations omitted).

**B.      Discussion**

Lit Def, as a Receivership Defendant, and Jason Blust, as an Individual Defendant and owner and/or controller of Lit Def and Fidelis, have significant obligations pursuant to the TRO which they have not fulfilled and, indeed, appear to have misled the Receiver and this Court by claiming to have ceased operations when that does not appear to have been what happened, based on information learned recently by the Receiver. *See*, Section I.D., *supra*, at p. 11 (February 23, 2024 email from Lit Def employee Hinds categorically stating: "We haven't had much turnover on the lit side, and the lit attorneys continue to work on their files, attend hearings, contact clients, etc."). On their face, the foregoing communications and representations by Hinds constitute clear and convincing evidence that Lit Def is continuing to operate, directly or indirectly, in some capacity without the Receiver's authorization and in violation of the TRO, and further, that Lit Def and Blust have not "diligently attempted to comply" with the TRO by, among other things, turning over control of the entity to the Receiver. *See*, *CBS*, 814 F.3d at 98.

Among other things, Section XIII of the TRO ordered that:

> A. Defendants, Relief Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order . . . shall fully cooperate with and assist the Receiver. Defendants' and Relief Defendants' cooperation and assistance shall include, but not be limited to:

> 1. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order . . .

> **B. Defendants, Relief Defendants, and their officers, directors, agents, servants, employees, attorneys, successors, assigns, and all other Persons or entities directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from directly or indirectly:**

> **1. Transacting any of the business of the Receivership Defendants;**

> 2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, Electronically Stored Information, or equipment of the Receivership Defendants . . .

> 3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset [of] Receivership Defendants; . . . .

> 5. Failing to notify the Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant . . .

> **7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership,**

*Id*. (emphasis added).

Based on information discovered by the Receiver since Friday, February 23 2024, it appears that Receivership Defendant Lit Def and Individual Defendant Blust are actively violating the TRO in several meaningful respects.  While the Receiver is aware that the Court is busy handling numerous other aspects of this litigation, the Receiver is compelled to bring to the Court's attention what appears to be efforts by Blust and Lit Def to violate Section XIII.B.1's prohibition that temporarily restrained and enjoined Blust and Lit Def, among others, from "directly or indirectly… [t]ransacting any of the business of the Receivership Defendants."  Dkt. No. 12 at p. 30.  It appears that Lit Def and Blust have been transacting Lit Def business via Lit Def itself and/or through Fidelis.  It now also appears that Fidelis is handling some, or perhaps, all, of the work relating to the Intervenor Law Firm clients' matters, which had previously been handled by Lit Def.  *See*, Section I.D., *supra*, at p. 11 (Hinds noting "we haven't had much turnover on the lit side" and that "lit attorneys continue to work on their files, attend hearings, contact clients, etc.").  If that is the case, it would appear that Lit Def and Blust are in violation of not only TRO Section XIII.B.1's restraint on transacting business, but also TRO Sections XIII.B.2 & 3's restraints on "transferring" ESI and Assets of the Receivership Defendants to others.  *Id*. at p. 31.  The information provided above is in addition to the violations identified by the Receiver previously in his filing earlier this month on February 11, 2024.  *See* Dkt. No. 150 at pp. 5-8.

Lit Def and Blust have not informed the Receiver of this activity, and the Receiver is unaware if they have informed the Court or the Parties that they were continuing to engage in ongoing business operations of Blust-related entities, including Fidelis or Lit Def.  Nor is there an indication that Lit Def and/or Blust have adequately disclosed the relationship of Fidelis with

Blust and Lit Def, made known Fidelis's continued access to ESI belonging to Lit Def, and/or informed anyone that any Assets have been transferred from Lit Def to Fidelis.

To the contrary, the representations made to date to the Receiver and the Court have been that upon entry of the TRO, Lit Def shut down its operations and terminated all employees. This appears not to have been an accurate statement, or at a minimum, to have been a materially misleading one. Even assuming that Lit Def itself did not operate (and the continued access to and use of Lit Def emails calls that into question), it appears that Fidelis, which was not named as a Receivership Defendant, but was an existing corporate entity similarly controlled by Blust, has become a corporate entity serving as a conduit through which Blust continues to operate the business of Lit Def in some respect. A comparison of the services reportedly provided by Lit Def and Fidelis on their websites gives the appearance that these are nearly identical businesses providing the same services. Wall Decl., Exhibits 2 and 3.

If it is the case, as it appears, that Fidelis has taken the place of Lit Def using Lit Def's ESI and is servicing Lit Def's former clients, then that violates the TRO in meaningful respects.[11] That would be the case, regardless of whether any services that Fidelis/Lit Def are now providing are legal and/or are assisting consumers/law firm clients. This is especially problematic, given that the Receiver reached out to Lit Def, specifically seeking Lit Def's assistance in determining whether there were lawful aspects of Lit Def's business that could be operated in a manner that mitigated harm to consumers. This is discussed at great length in the Receiver's February 11, 2024 Reply (Dkt. No. 150). The Receiver also specifically informed Lit

---

[11] The surreptitious substitution of Fidelis for Lit Def post-TRO was not known to the Receiver, but may well have been known by StratFS employees. For example, there was an unusual email from the StratFS SVP to other StratFS leaders on the first day they returned to work, an email without a subject or any information in the body except "fidelissupport.com." Wall Decl., Exhibit 13.

Def that he was "considering whether it is necessary to bring back any such operations in the short term (*i.e.*, before the PI hearing next week) to minimize harm to consumers, and also the receiver will be making recommendations regarding whether the business of Receivership Defendants can be done lawfully and profitably."

Instead of engaging on these important and required issues, the message returned was that Lit Def had unilaterally shut down its operations upon entry of the TRO. This claim was repeated to the Court in the Defendants' February 9, 2024 letter (Dkt. No. 149).

What the Receiver did not know, however, was that Blust and Lit Def had apparently made the decision to continue the business operations temporarily restrained by the Court in the TRO through Fidelis and/or continued operation of Lit Def. That not only suggests that Mr. Blust and Lit Def have not been taking seriously the obligations imposed upon them in the TRO, but also it raises many other questions and concerns. For instance, is Fidelis charging consumers/law firm clients for the services being provided? Does Fidelis have a bank account in which money previously routed to Lit Def is now being directed somewhere else? During the TRO, these business decisions for Lit Def and related entity Fidelis necessarily fall to the Receiver, who is bound, among other things, by the limitation that he can only conduct business operations deemed to be lawful and profitable.

To be clear, the Receiver began outreach last month to Lit Def with a goal of attempting to determine whether there were any operations of Lit Def, which could and should be restarted lawfully and profitably to protect consumers; however, the Receiver has been stymied in that effort, based on a lack of cooperation from Lit Def and Blust. All the while, Lit Def, Fidelis, and Blust may have been continuing the Lit Def services. If that has been happening, the TRO requires the Court, the Receiver, and the Parties in the case know about it at a minimum. Indeed,

the TRO requires that the Receiver himself must be the one who makes decisions about the

extent to which these businesses can operate and/or transfer any assets during the TRO period.

Perhaps, Receivership Defendant Lit Def and Individual Defendant Blust have benign

explanations for their actions and representations to this Court, which provide context for what

has been going on with Fidelis and Lit Def; however, the Receiver felt compelled to bring this

new information the Court's attention promptly, given what appear to be active violations of the

TRO.[12]

## III.    CONCLUSION

Based on the foregoing, the Receiver respectfully requests that the Court issue an Order

to Show Cause affording Defendant Blust and Receivership Defendant Lit Def an opportunity to

respond and be heard at an in-person hearing prior to any finding of contempt.  If a finding of

contempt is upheld, Lit Def and Blust should be ordered to comply immediately, be jointly fined

---

[12] The Receiver has highlighted the apparent violations of the TRO that seem to be the most egregious and pressing for the Court but also notes that the conduct identified above and previously suggests other continued violations of the TRO by Blust and Lit Def, some of which were identified in the Preliminary Report and in the Receiver's Reply noted above.  *See generally* TRO Sections XI, XIII & XIV.  Among other things, the Receivership Defendants were required to fully cooperate and assist the Receiver to assume full control of Receivership Defendants by transferring or delivering access to and possession, custody, and control to the Receiver of (1) All Assets, Documents, and ESI of Receivership Defendants and (2) All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of the Receivership entities.  *See id.* TRO Section XIV.A.1-5, at pp. 32-33.

$1,000 per day until the contempt is purged, and be liable to the Receivership Estate for actual damages, including the attorneys' fees to bring this motion.

Dated: February 26, 2024

HODGSON RUSS LLP

_/s/ James C. Thoman_

James C. Thoman, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone:  (716) 856-4000
Facsimile:  (716) 849-0349
Email:  jthoman@hodgsonruss.com

MCNAMARA SMITH LLP

By:  _/s/ Alexander D. Wall_

Alexander D. Wall (Pro Hac Vice)
Logan D. Smith  (_Pro Hac Vice_)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400  Facsimile:
(619) 269-0401
Email:  awall@mcnamarallp.com;
lsmith@mcnamarallp.com

_Attorneys for Court-appointed
Receiver,  Thomas W. McNamara_