UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*,<br><br>       Defendants, and<br><br>DANIEL BLUMKIN, *et al.*,<br><br>       Relief Defendants. | 24-CV-40 (EAW) (MJR) |

# MEMORANDUM IN SUPPORT OF NONPARTY FIDELIS LEGAL SUPPORT SERVICES, LLC'S MOTION CHALLENGING THE RECEIVER'S DETERMINATION THAT FIDELIS IS A <u>RECEIVERSHIP DEFENDANT</u>

**HOOVER & DURLAND LLP**
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*thoover@hooverdurland.com*
*sdurland@hooverdurland.com*

*Attorneys for Nonparty Fidelis*
*Legal Support Services, LLC*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

FACTS .......................................................................................................................................... 2

    A.    Cameron Christo launches Fidelis Legal Support Services, LLC. ............. 2

    B.    Fidelis offers litigation-support services. .................................................. 3

    C.    Christo staffs and runs Fidelis. .................................................................. 4

    D.    The Court issues a Temporary Restraining Order. ................................... 5

    E.    The Receiver declares Fidelis a Receivership Defendant. ........................ 6

ARGUMENT ................................................................................................................................. 7

    I.    THE RECEIVER LACKS JURISDICTION OVER FIDELIS. ............................ 7

    II.    FIDELIS IS NOT A RECEIVERSHIP DEFENDANT. ........................................ 8

        A.    Jason Blust does not own or control Fidelis. ............................................ 8

        B.    Fidelis is not a proxy for Lit Def. ............................................................ 10

CONCLUSION ........................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Burrage v. United States,*
    571 U.S. 204 (2014) ........................................................................................................... 8

*S.E.C. v. Bilzerian,*
    378 F.3d 1100 (D.C. Cir. 2004) ......................................................................................... 7

*S.E.C. v. Ross,*
    504 F.3d 1130 (9th Cir. 2007) ........................................................................................... 7

*United States v. Spallone,*
    399 F.3d 415 (2d Cir. 2005) .............................................................................................. 8

**Statutes**

28 U.S.C. § 754 ........................................................................................................................ 1, 7

28 U.S.C. § 1692 .......................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 4 .......................................................................................................................... 7

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) .................................................................................... 8

## **INTRODUCTION**

This motion has its roots in a recent email from a Rhode Island attorney. His client had been offered an exceptionally favorable settlement, and he wanted administrative help finalizing the deal. An employee of Fidelis Legal Support Services, LLC ("Fidelis") relayed his request to an executive at StratFS, who, on February 23, 2024, presented it to Temporary Receiver Thomas W. McNamara (the "Receiver"). (Dkt. 179-1 at 4 ("Am I ok to have this worked?").) The Receiver moved with dispatch—not to address the attorney's request, but to investigate a perceived affront to his authority. Forty-eight hours later, the Receiver had convinced himself that Jason Blust is secretly using Fidelis to help defend consumers against creditors' lawsuits—a task previously performed by Blust's now-defunct company Lit Def Strategies, LLC ("Lit Def"). On February 25, 2024, the Receiver sent a letter asserting that Fidelis qualifies as a "Receivership Defendant," and therefore falls under his exclusive control, because it is owned or controlled by Blust, and is a proxy for Lit Def.

The Court should overturn the Receiver's decision for two reasons. First, the Receiver lacks jurisdiction over Fidelis. Fidelis is a Nevada company with property in Illinois. The Receiver did not publish notice of his appointment in Nevada or Illinois, and his 10-day window to do so has closed, divesting him of jurisdiction in those states. *See* 28 U.S.C. § 754.

Second, the Receiver is wrong on the facts. Fidelis was founded in 2021 by Cameron Christo, an investor and database wizard living in Chicago. Fidelis is wholly owned by the Bush Lake Trust (which Christo established for the benefit of his children), and Christo oversees and directs Fidelis's operations. From 2021 to early 2024, Fidelis and Lit Def both offered litigation-support services—much like McDonald's and Burger King both offer fast-food, and Nike and Reebok both offer sneakers—each possessing a distinct owner, principal executive, roster of clients, and roster of litigations. (Indeed, 40% of Fidelis's revenue comes from law firms outside the Strategic universe.) When Lit Def closed earlier this year, Fidelis *did not* take over its

litigations, but simply continued with its preexisting work. As for Jason Blust, he has no ownership interest in Fidelis, he receives no money or other benefit from Fidelis, he does not supervise or influence Christo's operation of Fidelis, and while Christo knows who Blust is, he does not recall speaking with Blust in over a year.

## FACTS

### A.     Cameron Christo launches Fidelis Legal Support Services, LLC.

Cameron Christo is a 53-year-old investor and consultant. (Declaration of Cameron Christo, dated March 4, 2024 ("Christo Decl."), ¶¶ 6-7.) Over the past 25 years, he has helped schools, hospitals, law firms, and other organizations use computer technology to improve the quality and efficiency of their work. (*Id.* ¶ 7.) His particular expertise lies in learning the details of employees' daily tasks and developing technological improvements to simplify and streamline their workflow, allowing fewer people to do more and better work in less time. (*Id.*)

Christo's work in the legal field included a great deal of consulting for debt-settlement law firms. (*Id.* ¶ 9.) Through these engagements, he came to understand the different players in the debt-settlement ecosystem. (*Id.*) He knew what litigation-support companies were, and how and why debt-settlement firms rely on them. (*Id.*) He knew who Jason Blust was, and met him. (*Id.*) And he knew that Blust ran a litigation-support company called Lit Def Strategies. (*Id.*)

Litigation support is the kind of business that suits Christo's strengths, as the essential functions are repetitive tasks that can be performed in a virtual environment. (*Id.* ¶ 11.) So when Christo learned that Blust was planning to wind down Lit Def, he began exploring the possibility of creating a litigation-support company of his own, based on a more efficient virtual platform. (*Id.* ¶¶ 10-11.) On January 25, 2021, Christo created Fidelis, a single-member LLC. (*Id.* ¶ 12; *id.*, Ex. A.)

Christo registered Fidelis in Nevada and created the Bush Lake Trust (a Nevada trust) to serve as Fidelis's sole member. (*Id.* ¶ 14; *id.*, Ex. B, Ex. C.) Timothy Miller is the Trustee of the Bush Lake Trust. (*Id.*, Ex. C, Art. 1.) The beneficiaries are

- 2 -

Christo's two children. (*Id*. §§ 2.01, 2.02.) Jason Blust has no ownership interest in the Bush Lake Trust or Fidelis, and he has never received any benefit of any kind from either entity. (Christo Decl. ¶ 16.)

### B. Fidelis offers litigation-support services.

Consumers trying to negotiate their debts are sometimes sued by their creditors. (Christo Decl. ¶ 17.) The debt-settlement law firm representing the consumer defends those suits. (*Id*.) Fidelis provides the firms with administrative support. (*Id*.[1]) It does not enroll consumers in debt-settlement programs or touch consumer money. (*Id*. ¶ 20.)

When a consumer is served with a creditor's summons and complaint, the consumer sends the papers to customer services. (*Id*. ¶ 18.) Customer services creates a litigation file for that lawsuit. (*Id*.) The litigation file comes to Fidelis, where a Fidelis legal assistant reviews the file to ensure it has everything an attorney will need to defend the suit. (*Id*.) If so, the legal assistant assigns the file to a litigation attorney within the consumer's law firm. (*Id*.) If not, the legal assistant assembles the necessary material and then assigns the file. (*Id*.)

Once a settlement is reached, the Fidelis legal assistant double-checks that the consumer has saved enough money to make the agreed-upon payments. (*Id*. ¶ 19.) If so, the legal assistant submits the settlement for processing. (*Id*.) Customer services then arranges to make the necessary settlement payments from the consumer's account. (*Id*.) If issues arise post-settlement, such as a missed payment, Fidelis will assist as needed and notify the assigned attorney. (*Id*.[2])

---

[1] The Receiver's Preliminary Report underscores the importance of the litigation-support function. (Dkt. 115-1 at 10-11 ("Lit Def acts as a hub and sends filings on to contracted litigation or appearance attorneys. . . . Without the Lit Def hub to receive and distribute summonses and complaints to contracted counsel, clients have no representation and are not protected.").)

[2] This is a general description of the litigation-support workflow. There are minor variations from firm to firm, and from file to file. Some firms might use a different label for the "customer services" function. Some files are created in error and

Fidelis provides its services pursuant to month-to-month agreements with its law-firm clients. (*Id.* ¶ 21.) Fidelis charges a per-litigation rate, which varies depending on the complexity of the litigation. (*Id.*)

### C. Christo staffs and runs Fidelis.

Fidelis's legal assistants are Shirley Saavedra, Jean Komis, Jennifer Moy, Ana Macey, Peggy Slivka, Kristen Powers, and Katherine Rosenberg. (Christo Decl. ¶ 24.) They are managed by Hayfa Zayed and Michelle Hinds, both of whom report to Christo. (*Id.*) In Christo's day-to-day work for Fidelis, he receives reports from Zayed and Hinds, works to grow Fidelis's business, and makes all executive decisions regarding personnel, payroll, purchasing, contracting, and the like. (*Id.* ¶ 25.)

In Fidelis's early stages, Christo needed to assemble a capable staff. (*Id.* ¶ 26.) He hired Hayfa Zayed and Kristen Powers, and also offered several Lit Def employees the opportunity to moonlight at Fidelis. (*Id.*) Because legal assistants work remotely, this meant simply having Fidelis software open alongside Lit Def software, and, throughout a given workday, performing for Fidelis's client-firms the same functions they were already performing for Lit Def's client-firms. (*Id.*) Shirley Saavedra, Jean Komis, Jennifer Moy, Peggy Slivka, Katherine Rosenberg, and Michelle Hinds agreed to join Fidelis while continuing to work at Lit Def. (*Id.* ¶ 27.[3])

As time went on, Christo added to Fidelis's roster of client-firms, and he needed to expand his staff. (*Id.* ¶ 29.) He hired Ana Macey, and three part-time

---

so are never assigned. Similarly, when the Court's Temporary Restraining Order (Dkt. 12 (the "TRO")) halted the operations of customer services affiliated with Strategic, Fidelis's legal assistants needed to adapt, by, for example, explaining to attorneys that they had to arrange for their clients to manually remit agreed-upon settlement payments, since customer services was not available to perform this task. (Christo Decl. ¶ 19 n.1.)

[3] The software used to transmit litigation files to Fidelis was configured to reflect this dual employment. Legal assistants working for Lit Def and Fidelis were given two profiles: one labelled with just the assistant's name (*e.g.*, "Jean Komis"), for Lit Def files, and one labelled with the assistant's name plus the prefix "Fidelis" (*e.g.*, "Fidelis Jean Komis"), for Fidelis files. (Christo Decl. ¶ 28.)

employees (Katherine Rosenberg, Peggy Slivka, and Jennifer Moy) joined Fidelis fulltime. (*Id.*) When Lit Def closed, following the issuance of the TRO, the three remaining part-time employees (Michelle Hinds, Jean Komis, and Shirley Saavedra) joined Fidelis fulltime. (*Id.* ¶ 30.)

Though Fidelis's employees did, for a time, partially overlap with Lit Def's, Fidelis's *work* did not overlap with Lit Def's. (*Id.* ¶ 31.) When Fidelis began providing services to a new law-firm client, its agreement with the firm fixed a transition date, and that date was incorporated into Fidelis's management system. (*Id.*) Litigation initiated after the transition date would be supported by Fidelis, while Fidelis's predecessor would continue to support litigation initiated before the transition date. (*Id.*)

### D. The Court issues a Temporary Restraining Order.

On January 10, 2024, the Consumer Financial Protection Bureau ("CFPB") filed a complaint against StratFS, LLC, their owners, and various related entities (collectively, "Strategic"). (Dkt. 1.) The Complaint asserts that Strategic's debt-relief business "collects exorbitant, illegal advance fees from vulnerable consumers," in violation of federal law. (*Id.* ¶ 13.) The Complaint names Jason Blust as a defendant, and alleges that he owns or controls various law firms associated with Strategic's business. (*Id.* ¶ 139.) Those law firms have intervened in the litigation. (Dkt. 50.) The Complaint also names Lit Def as a "Relief Defendant," and alleges that Blust directs and controls Lit Def. (Dkt. 1 ¶ 150.) Defendants have denied the allegations against them, challenged the issuance of the TRO, and opposed the issuance of a preliminary injunction.

The CFPB also sought, and the Court issued, an *ex parte* Temporary Restraining Order appointing Thomas W. McNamara, Esq. as Receiver. (Dkt. 12 at 18-19.) The TRO directs the Receiver to, among other things, assume full control over "Receivership Defendants." (*Id.* at 19.) "Receivership Defendants" are defined as

> the Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, *as well as any other business related to the Defendants' debt-relief services and*

- 5 -

> *which the temporary Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants*, and includes fictious names under which they do business. "Receivership Defendants" also includes Relief Defendants Strategic ESOP; Strategic ESOT; Twist Financial, LLC; Duke Enterprises, LLC; Blaise Investments, LLC; the Blust Family Irrevocable Trust through Donald J. Holmgren, Trustee; Lit Def Strategies, LLC; and Relialit, LLC; (excluding Relief Defendants Daniel Blumkin, Albert Ian Behar, and Jaclyn Blust), and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the temporary Receiver has reason to believe is owned or controlled in whole or in part by the Relief Defendants included in this definition, and includes fictious names under which they do business.

(*Id.* at 7-8 (emphasis added).) The TRO further provides that if the Receiver "identifies" a nonparty as a Receivership Defendant, the nonparty "can challenge the Receiver's determination by filing a motion with the Court." (*Id.* at 24.)

### E.  The Receiver declares Fidelis a Receivership Defendant.

Neither the Complaint nor the TRO mentions Fidelis. As a result, after the TRO was issued, Fidelis continued doing what it had been doing before the TRO was issued. (Christo Decl. ¶ 45.) Thus, after Lit Def was closed, Fidelis *did not* take over Lit Def's litigations, but simply continued with its existing engagements. (*Id.* ¶ 32.)

Late on February 25, 2024, the Receiver sent Fidelis a letter declaring it a Receivership Defendant. (Christo Decl., Ex. E at 4-5.) On February 26, the Receiver filed a contempt motion directed to Blust and Lit Def, alleging that after the TRO placed Lit Def under the Receiver's exclusive control, Blust purported to shutter Lit Def and then surreptitiously continued Lit Def's work through Fidelis. (Dkt. 179 (the "contempt motion").)

In response to the Receiver's February 25 letter, Fidelis's counsel advised the Receiver that he had made a mistake. (Christo Decl., Ex. E at 1-2.) When the Receiver did not withdraw his letter, Fidelis proceeded to bring the present challenge. (Declaration of Timothy W. Hoover, dated Mar. 4, 2024 ("Hoover Decl.") ¶¶ 5-7.) The

Receiver has stated that he will not attempt to freeze Fidelis's assets while this challenge is pending, so long as Fidelis confines itself to normal operations. (*Id.* ¶ 8.)

## ARGUMENT

### I. THE RECEIVER LACKS JURISDICTION OVER FIDELIS.

Though a district court's power is ordinarily confined to the geographical limits of its district, a receiver appointed by a district court can, at least in theory, obtain jurisdiction over property and entities located in any district in the United States. *See* 28 U.S.C. §§ 754, 1692. But potential jurisdiction is not actual jurisdiction. *S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007). To actually obtain *in rem* jurisdiction over remote property, the receiver must, within 10 days of his appointment, file copies of the complaint and appointment order "in the district court for each district in which property is located." 28 U.S.C. § 754. "The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district." *Id.* If the receiver completes the filings required by § 754, he can then proceed to obtain *in personam* jurisdiction over the entities holding the remote assets, by serving those entities with a summons in accordance with Federal Rule of Civil Procedure ("Rule") 4. *See* 28 U.S.C. § 1692 (authorizing nationwide service); *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1103-06 (D.C. Cir. 2004) (explaining the two-step process prescribed by §§ 754 and 1692).

Fidelis is a Nevada entity. (Christo Decl. ¶ 14.) Its assets are located in Nevada and Illinois. (*Id.* ¶¶ 12-14.) The Receiver did not file copies of the Complaint and appointment order in Nevada or Illinois (Hoover Decl., Ex. A), and his 10-day window to do so has closed. Nor has he served Fidelis with a summons in accord with Rule 4. (Hoover Decl. ¶ 11.) Accordingly, the Receiver lacks *in rem* jurisdiction over Fidelis's property and lacks *in personam* jurisdiction over Fidelis itself.

## II. FIDELIS IS NOT A RECEIVERSHIP DEFENDANT.

The Receiver lacks authority over Fidelis for another reason: the TRO only empowers him to control Receivership Defendants. Fidelis is not a Receivership Defendant unless it is *both* beneficially owned or controlled by a Defendant in the CFPB litigation *and* related to Defendants' debt-relief services. (Dkt. 12 at 7 (defining "Receivership Defendants" to include any "business related to the Defendants' debt-relief services . . . which the temporary Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants").[4]) The Receiver claims that these criteria are met because Fidelis is owned or controlled by Defendant Jason Blust, and is a proxy or alter ego for Lit Def. (Christo Decl., Ex. E at 4-5.) Both assertions are false.

### A. Jason Blust does not own or control Fidelis.

"Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005). Since the TRO does not give "owned" and "controlled" any special definition, the Court must look to plain meaning. *E.g.*, *Burrage v. United States*, 571 U.S. 204, 210 (2014). In ordinary parlance, "own" means "[t]o rightfully have or possess as property; to have legal title to." OWN, BLACK'S LAW DICTIONARY (11th ed. 2019). "Control" means "[t]o exercise power or influence over," or "[t]o regulate or govern." CONTROL, BLACK'S LAW DICTIONARY (11th ed. 2019).

The record conclusively proves that Jason Blust does not own Fidelis. Fidelis was founded and funded by Cameron Christo, and its sole member is the Bush

---

[4] Though the TRO defines "Receivership Defendants" to include an entity the Receiver "has reason to believe is owned or controlled in whole or in part by any of the Defendants" (Dkt. 12 at 7), the "reason to believe" standard applies only to the Receiver's initial determination. Now that Fidelis has challenged the Receiver's determination, the question is not what the Receiver had "reason to believe" at the time of his determination, but what the evidence before the Court establishes. To the extent that the Court reads the "reason to believe" standard as applying even to challenges like this one, we submit that the district court erred in granting such power in the TRO, and we reserve our right to develop this objection further if the Receiver contests it.

Lake Trust, whose beneficiaries are Christo's children. (Christo Decl., Exs. A-C.) Blust does not hold legal title to the Bush Lake Trust or to Fidelis, he does not possess their assets, and he does not receive any money or other benefit from either entity. (Christo Decl. ¶¶ 4, 16, 38.)

The evidence as to control is equally conclusive. Christo alone sets Fidelis policy, makes strategic, business-development, personnel, and purchasing decisions, and does everything else necessary to oversee and direct Fidelis's operations. (*Id.* ¶¶ 4, 25.) Jason Blust does not perform any of these functions, and does not influence Christo in his performance of them. (*Id.* ¶¶ 4, 38.)

Judging from the Receiver's contempt motion—our best guide to his reasoning—the Receiver's evidence of ownership and control consists of a stray line in a March 2022 email exchange between two Strategic executives. (Dkt. 179-1 at 6-7.) The executives were discussing consulting payments made to Fidelis. (*Id.*) As Christo explains, back in the fall of 2021, Strategic Client Support, LLC had hired him to vet a new software platform. (Christo Decl. ¶ 36.) Christo billed the work through Fidelis. (Dkt. 179-8, 179-9.) Emails attached to the Receiver's contempt motion suggest that certain Strategic executives wanted a written contract to document this expense. (Dkt. 179-7, 179-10.) On March 24, 2022, attorney Marc Lemberg wrote that the Fidelis invoices, combined with an email memorializing the arrangement, were sufficient documentation. (Dkt. 179-10 at 2.) Someone named Salvatore Tirabassi responded: "You can land the plane with Blust then as you see fit." (*Id.*) To the Receiver, this means "that Fidelis is, in fact, beneficially owned or controlled by [Jason] Blust." (Dkt. 179-1 at 6.)

We do not know what Tirabassi meant, and neither does the Receiver. Tirabassi may well have been referring to Blust's role at Strategic, or he might have simply misspoken. But let's assume, for the sake of argument, that Tirabassi thought Blust had some relationship with Fidelis. So what? Tirabassi's uninformed impression, related off-hand during a discussion having nothing to do with litigation-support

- 9 -

services, is hardly probative evidence of ownership or control. And it pales beside the proof now before the Court, which establishes that Blust has never owned or controlled Fidelis.

### B. Fidelis is not a proxy for Lit Def.

The Receiver is also wrong to portray Fidelis as simply Lit Def in disguise. Fidelis has a different owner, a different principal executive, a different roster of clients, and a different roster of litigations (Christo Decl. ¶¶ 4, 12-14, 31-32), and much of Fidelis's revenue comes from firms outside the Strategic universe (*id.* ¶ 23). Granted, Christo initially staffed Fidelis partly with moonlighting Lit Def employees (*id.* ¶¶ 26-27), but these employees were serving two entirely separate companies, like a doctor with admitting privileges at multiple hospitals. And in any event, Christo soon brought those employees over fulltime, and hired another employee who had never worked at Lit Def. (*Id.* ¶¶ 29-30.) Lit Def and Fidelis are thus best seen as competitors who vied to sell the same services in the same marketplace—except, of course, that Christo launched Fidelis in the belief that the competition was his to win, since Lit Def was set to be wound down (*id.* ¶ 10).

The Receiver's contempt motion again offers no convincing evidence to the contrary. The Receiver places greatest emphasis on the fact that, in early 2022, Michelle Hinds, Katherine Rosenberg, Peggy Slivka, and Jennifer Moy simultaneously used Lit Def and Fidelis email accounts to perform "identical functions"—namely, "liaising between clients and law firms on litigation matters." (Dkt. 179-1 at 7-8.) That is true, but it is not a sign that Fidelis and Lit Def are "one entity" (*id.* at 8). Rather, it is a sign that, for a time, Hinds, Rosenberg, Slivka, Moy, and Shirley Saavedra worked at both Fidelis and Lit Def, performing the same tasks for these two different companies. (Christo Decl. ¶ 40.)

In a similar vein, the Receiver cites an instance where a Lit Def-supported litigation was discussed on a Fidelis email. (Dkt. 179-1 at 3-5.) But all this shows is that humans are fallible. In 2023, Fidelis averaged 1,596 new litigation files per month.

- 10 -

(Christo Decl. ¶ 44.) Employees trying to simultaneously handle Fidelis and Lit Def work from two virtual platforms inevitably crossed wires now and then, as did the attorneys they supported. (*Id.* ¶¶ 41-44). This does not make Fidelis and Lit Def one in the same. And the efforts made to minimize such occurrences is further testament to the fact that they are distinct. (*E.g.*, Christo Decl., Ex. F at 1 ("Please do not send emails to both email addresses - only the corresponding Fidelis or LitDef address. I have removed my LitDef address as this file belongs to Fidelis."); *id.* at 2 ("I have my LitDef email included as this file does not belong to Fidelis. Please be sure to use the appropriate email address corresponding to LitDef/Fidelis moving forward."); *id.* at 3 ("Please refer this to my LitDef email - this file does not belong to Fidelis."); *id.* at 9 ("Can you please be sure to refer Fidelis file correspondence to my Fidelis email address? This file does not belong to LitDef.").)

        The contempt motion also asserts that "[a] comparison of the Lit Def and Fidelis websites shows striking similarities." (Dkt. 179-1 at 5.) "Striking similarities" is an overstatement, but it is certainly true that both websites describe the companies' services in similar terms. Companies can offer similar services, and describe those services on their websites, without being alter egos.

        Finally, the contempt motion notes that Fidelis continued operating after the TRO. (*Id.* at 8-9.) That is again true, and perfectly appropriate. The TRO only binds Lit Def. As this motion makes pellucidly clear, Fidelis is not Lit Def.

## CONCLUSION

        The Court should (i) issue an order declaring that the Receiver has no authority over Fidelis, either because he lacks jurisdiction or because Fidelis is not a Receivership Defendant; and (ii) award any other or additional relief that the Court deems appropriate.

Dated:      Buffalo, New York
               March 4, 2024

                        Respectfully submitted,

                        **HOOVER & DURLAND LLP**
                        *Attorneys for Nonparty Fidelis Legal*
                        *Support Services, LLC*

                        By:  <u>s/Timothy W. Hoover</u>
                             Timothy W. Hoover
                             Spencer L. Durland
                        561 Franklin Street
                        Buffalo, New York 14202
                        (716) 800-2600
                        *thoover@hooverdurland.com*
                        *sdurland@hooverdurland.com*