UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.

                        Plaintiffs,

vs.

STRAFTS, LLC f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC, et al.

                        Defendants, and

DANIEL BLUMKIN, et al.,

                        Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

---

**RECEIVER'S OPPOSITION TO FIDELIS LEGAL SUPPORT SERVICES, LLC'S
MOTION CHALLENGING THE RECEIVER'S DETERMINATION
THAT FIDELIS IS A RECEIVERSHIP DEFENDANT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 1

III.    DISCUSSION ........................................................................................................... 2

A.      This Court Has Jurisdiction Over Fidelis.................................................... 2

B.      Witness Testimony Establishes That Fidelis is a Successor Entity to Lit Def.............................................................................................................. 3
        5

C.      Substantial Evidence Establishes That Blust Controls Fidelis .................. 9

D.      All of Fidelis's Revenue Comes from Law Firms Managed and Controlled by Blust ..................................................................................................... 14

        1.      The three Turnbull Law entities are controlled by, or related to, Blust. ............................................................................................. 15

        2.      Chabner Legal Group is controlled by, or related to, Blust. ..................... 17

        3.      Regency Legal Group is controlled by, or related to, Blust..................... 19

        4.      Castro Law is controlled by, or related to, Blust. ..................... 20

IV.     CONCLUSION ...................................................................................................... 21

Thomas W. McNamara, as the Court-appointed receiver ("Receiver") submits this Opposition to Fidelis Legal Support Services, LLC's ("Fidelis") Motion Challenging the Receiver's Determination that Fidelis is a Receivership Defendant (Dkt. No. 190).

## I.      INTRODUCTION

Fidelis's Motion is heavy on rhetorical flourish but light on substance.  And with good reason.  The story offered by Cameron Christo, Fidelis's owner on paper, is factually implausible and missing crucial information.

The facts demonstrate without qualification that Fidelis is a Receivership Defendant and successor to Receivership Defendant Lit Def Strategies, LLC ("Lit Def") which, in turn, was a successor to Receivership Defendant Relialit, LLC ("Relialit").  Defendant Jason Blust owned and controlled Relialit and Lit Def and, as this Court has recognized, Blust owns or controls the law firms at issue in this case which hire Relialit, Lit Def and now Fidelis.  Blust has a pattern of changing entities – whether they be the constantly shifting cast of law firms or, in this case, the service providers employed by the firms.  And Blust has learned to be careful, having been burned by being personally named in lawsuits and bar investigations; he no longer is listed as the owner of the entities – but he still controls them.  As detailed below, that appears to be the case now with Fidelis as well.

## II.      BACKGROUND

The Temporary Restraining Order (Dkt. No. 12, "TRO") and Preliminary Injunction (Dkt. No. 184, "PI") define "Receivership Defendants" as the Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants or Relief Defendants.  "Receivership Defendants" specifically includes Relief Defendants Lit Def and Relialit, and their subsidiaries,

1

affiliates, divisions, successors, and assigns, and includes fictious names under which they do business.  (*See* TRO, Definitions, ❡ N; PI, Definitions, ¶ N).

In the event the Receiver identifies an additional Receivership Entity, the TRO and PI authorize him to do the following:

> If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court.  *Provided, however*, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its Assets and records, if the Receiver determines that notice to the entity may result in the destruction of records, dissipation of Assets, or any other obstruction of the Receiver's control of the entity[.]

(TRO, Section IX.S., Duties of Receiver (emphasis in original); PI, Section IX.S., Duties of Receiver (emphasis in original)).

On February 25, 2024, the Receiver notified Fidelis, as well as the parties in the case, that he had determined Fidelis to be a Receivership Defendant.  Based in part on Fidelis's actions since the TRO issued, on February 26, 2024 the Receiver also filed an Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def and Individual Defendant Jason Blust Should Not Be Held In Civil Contempt (the "Contempt Motion").  (Dkt. No. 179, Contempt Motion.)  On March 4, 2024, Fidelis filed its Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (the "Fidelis Motion") and supporting Memorandum (the "Fidelis Memorandum").  (Dkt. No. 190, Fidelis Motion; Dkt. No. 190-01, Fidelis Memorandum.)

## III.   DISCUSSION

### A.   This Court Has Jurisdiction Over Fidelis

As a preliminary matter, Fidelis incorrectly asserts that jurisdiction over it is somehow tied to the Receiver's filing of 28 U.S.C. § 754 notices in other districts.  Not so.  If Fidelis

qualifies as a Receivership Defendant, this Court has jurisdiction over the company and, in turn, it is properly subject to the receivership.[1]

###### B.    Witness Testimony Establishes That Fidelis is a Successor Entity to Lit Def.

The TRO and PI expressly define "Receivership Defendants" in this matter to include Lit Def as well as its "successors, and assigns[.]"  (Dkt. No. 12, TRO, at ¶ N; Dkt. No. 184, PI, at ¶ N.)  As discussed in Section II.C., below, substantial evidence indicates that Blust likely has operational control of Fidelis and has since its founding in 2021.  However, the Receiver does not need to establish that Blust controls Fidelis to be able to bring Fidelis with the receivership.  Fidelis is also a "successor, or assign" of Lit Def, which brings it within the scope of the receivership pursuant to the TRO and PI.

A former employee of both Lit Def and Fidelis, Katherine Rosenberg, recently contacted the Receiver's office with important information about the operation of Lit Def and Fidelis.  (*See* Declaration of Katherine Rosenberg ("Rosenberg Decl.").)  Ms. Rosenberg provides a first-hand account of her time with Lit Def and Fidelis from August of 2021 until last week which demonstrates Fidelis is a successor entity to Lit Def: the two companies are interrelated entities, lack formal boundaries, and share a single set of staff, management, customers, procedures, instrumentalities, and work.  Her declaration compels the conclusion that Fidelis merely stepped

---

[1] Moreover, on January 22, 2024 the Receiver filed a Notice of Order Appointing Receiver Pursuant to 28 U.S.C. § 754 and copy of the Complaint in the Northern District of Illinois.  (*See*, *Consumer Financial Protection Bureau, et al. v. StratFS, LLC, et al.*, N.D. Ill., No. 1:24-cv-00555, Dkt. No. 1, Notice of Order and Complaint.)  The Northern District of Illinois did not unseal the filing until March 6, 2024.  (*Id.*, Dkt. No. 8, Minute Entry Unsealing Case.)  Similarly, on March 6, 2024, two days after the Receiver's appointment under the PI, the Receiver filed a Notice of Order Appointing Receiver Pursuant to 28 U.S.C. § 754 and copy of the Complaint in the District of Nevada.  (*See*, *Consumer Financial Protection Bureau, et al. v. StratFS, LLC, et al.*, D. Nev., No. 2:24-ms-00010, Dkt. No. 1, Notice of Order and Complaint.  So even if Fidelis's Section 754 argument had any merit (and it does not), the notices are in place.

into the shoes of Lit Def and gradually took over its business operations, much as Lit Def took

over the operations of Blust's previous entity, Relialit.

In August 2021, Ms. Rosenberg responded to a job advertisement on Indeed.com seeking

someone for a litigation legal assistant or paralegal role.  (Rosenberg Decl. at ¶ 2).  The

employer's name was not disclosed in the advertisement.  (*Id.*)  After submitting her resume, she

received a call and voicemail from Hayfa Zayed, who represented herself as "from Fidelis,"

seeking to set up an interview.  (*Id.* at ¶ 2; *see also*, Dkt. No. 190-1, Fidelis Memorandum, at p. 4

[discussing Zayed's role as Fidelis employee].)[2]

After interviews with managing paralegal Shirley Saavedra and managing attorney

Michelle Hinds, Ms. Rosenberg received an employment offer; despite initially being contacted

by "Fidelis" in response to her application, Ms. Rosenberg was told that she was being "put on

Lit Def", and the offer letter she received stated that she was being hired by "Lit Def Strategies,

LLC" as a legal assistant.  (*Id.* at ¶¶ 2-3.)  Her supervisors were Michelle Hinds and Shirley

Saavedra, and she was provided with a Microsoft Surface tablet computer for work, for which

she received login credentials with a "Clientfirstbankruptcy.com" domain.  (*Id.* at ¶ 4.)  The

relationship between Fidelis, Lit Def, and Client First Bankruptcy was not explained to Ms.

Rosenberg at that time.  (*Id.* at ¶ 3.)  The Clientfirstbankruptcy.com domain is owned and

controlled by Jason Blust:

---

[2] As noted more fully below, Ms. Zayed uses a Clientfirstbankruptcy.com email address.  Client
First Bankruptcy is owned by Defendant Jason Blust, and Lit Def and Fidelis manager Michelle
Hinds is a senior attorney at the firm.

Copyright © 2019 ClientFirstBankruptcy.com

In the state of Illinois all legal services provided by Client First Bankruptcy, LLC. In the state of Colorado all legal services provided by Law Office of Jason Blust, LLC. In the state of Florida all legal services provided by Client First Bankruptcy, LLC.

PAID ATTORNEY ADVERTISEMENT: This website is a group advertisement. It is not a lawyer referral service or prepaid legal services plan. The sole basis for the inclusion of the participating lawyers or law firms is the payment of a fee for exclusive geographical advertising rights. The Law Offices of Jason Blust, LLC, d/b/a Client First Bankruptcy, LLC. does not endorse or recommend any lawyer or law firm who participates in this network. It does not make any representation and has not made any judgment as to the qualifications, expertise or credentials of any participating lawyer. The information contained herein is not legal advice. Any information you submit to the Law Offices of Jason Blust, LLC, d/b/a Client First Bankruptcy, LLC. may not be protected by attorney-client privilege. All photos are of models and do not depict clients. All case evaluations are performed by participating attorneys. An attorney responsible for the content of this Site is "Jason Blust", licensed in Illinois with offices at 211 W. Wacker Dr., Ste. 300, Chicago, IL 60606 .

If you live in Alabama, Florida, Missouri, New York or Wyoming, CLICK HERE for additional information. By an Act of Congress and the President of the United States, Law Offices of Jason Blust, LLC, d/b/a Client First Bankruptcy, LLC. is a federal Debt Relief Agency. Attorneys and/or law firms promoted through this website are also federally designated Debt Relief Agencies. They help people file for relief under the U.S. Bankruptcy Code. Disclosures Required Under the U.S. Bankruptcy Code.

We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.

(*See*, Declaration of Alexander D. Wall in Support of Receiver's Opposition to Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis Is a Receivership Defendant ("Wall Decl.") at ¶ 3 and Exhibit 1) (stating, among other things, that attorney responsible for website's contents is Blust.)

Ms. Rosenberg's job duties were to review settlements negotiated by the network of litigation attorneys that Lit Def (and later Fidelis) worked with, and to forward the reviewed settlements to the servicer in New York, which she now understands to have been a StratFS affiliate, but which Lit Def/Fidelis staff typically referred to as "New York" or "Fusion" (referring to the software system utilized).  (Rosenberg Decl. at ¶ 5.)  She was initially given a "Litdefstrategies.com" email address for her work and was assigned to service "Lit Def" litigation files.  (*Id.* at ¶ 5.)  Work was performed using LeadTrac and HappyFox software.  (*Id.* at ¶ 5.)

In the fall of 2021, Michelle Hinds informed Ms. Rosenberg and her co-workers that Lit Def would soon formally become "Fidelis," and that Lit Def's employees, including Ms. Rosenberg, would transition over and become Fidelis employees.  (*Id.* at ¶ 6.)  In conversations, Ms. Rosenberg recalls Hinds calling the transition a "merger" of Lit Def and Fidelis and saying

that Fidelis was "buying" Lit Def.  (*Id.*)  Staff was not given a choice to stay with Lit Def and was told that Lit Def was becoming Fidelis for all intents and purposes.  (*Id.*)  The exact nature of or reason for the change from "Lit Def" to "Fidelis" was never clearly explained.  (*Id.*) Rosenberg eventually filled out new hire paperwork for Fidelis and, as described below, began to be paid from both Lit Def and Fidelis.  Beginning on February 1, 2022, new litigation files were designated as "Fidelis" files, while older files remained designated as "Lit Def" files.  (*Id.* at ¶ 7.) During the transition period, management assigned some of the Lit Def/Fidelis staff to service only "Lit Def" files, and others to service only "Fidelis" files, or to service both "Lit Def" and "Fidelis" files.  (*Id.*)  Ms. Rosenberg was assigned to service both "Lit Def" and "Fidelis" files until April 2023, at which point she was assigned to handle only "Fidelis" files, while a single co-worker remained assigned to handle the "Lit Def" files.  (*Id.* at ¶¶ 8, 12.)  She had both "Litdefstrategies.com" and "Fidelissupport.com" email accounts and was instructed to service the "Lit Def" files from her "Litdefstrategies.com" email account while servicing the "Fidelis" files from her "Fidelissupport.com" email account.  (*Id.* at ¶ 9.)

In the transition from Lit Def to Fidelis, Ms. Rosenberg's job title was changed from "legal assistant" to "support specialist," but the transition otherwise had essentially no impact on her work or the company's day-to-day operations.  (*Id.* at ¶ 10.) Ms. Rosenberg continued performing the same work, working with the same network attorneys, with the same co-workers, under the same management, following the same procedures, and using the same Surface computer, LeadTrac software, and HappyFox account at "strategicnegotiations.happyfox.com". (*Id.*)

During the transition period, she received two paychecks, one from a Lit Def account and the other from a Fidelis account, with the first $1,000 of her pay being allocated to Lit Def and

the remainder to Fidelis.  (*Id.* at ¶ 11.)  She was told that she did not need to clock in or out, keep separate timesheets, or otherwise formally divide her time between Lit Def and Fidelis, and would simply turn in a single timesheet to HR every week with her total time for the week and without separately designating "Lit Def" or "Fidelis" time.  (*Id.*)  Beginning in April 2023, she was shifted over entirely to "Fidelis" files, while a co-worker continued as the person assigned to servicing the "Lit Def" files.  (*Id.* at ¶ 12.)

Contrary to the claims offered by Fidelis and Christo, Ms. Rosenberg's declaration makes clear Lit Def and Fidel were not "competitors".  (*Id.* at ¶ 14.)  Rather, Fidelis is a successor of Lit Def.  (*Id.* at ¶ 14.)

Ms. Rosenberg recalls Ms. Hinds often using a "Clientfirstbankruptcy.com" email account in dealing with issues relating to both Lit Def and Fidelis files, and she understands Client First Bankruptcy to be an entity of Jason Blust.  (*Id.* at ¶ 15.)  Ms. Hinds was not the only Lit Def/Fidelis employee who had a Clientfirstbankruptcy.com email address. A review of StratFS records confirms that Ms. Hinds and Ms. Zayed both had clientfirstbankruptcy.com email addresses assigned to them.  Christo specifically states in his declaration that "Hayfa Zayed ...and Kristen Powers worked for Fidelis only, not Lit Def . . . .  As Fidelis grew and Lit Def contracted, some, and then all, of Fidelis's part-time employees joined Fidelis fulltime, and I hired Ana Macey, who, like Zayed and Powers, had never worked at Lit Def."  (Dkt. No. 190-4, Christo Decl. at ¶ 40.)  If it is true, as Christo claims, that Zayed never worked for Lit Def, then it is also clear that Zayed reports to Blust at Client First Bankruptcy.  Even as late as November of 2023, Blust sent Zayed (using her Clientfirstbankruptcy.com address) and others (including Michelle Hinds using her Litdefstrategies.com address) an email directing the recipients to

gather documents for an ongoing litigation.  Tellingly, Christo is not included on the email.  (*See*, Wall Decl., Exhibit 2.)

Regarding Mr. Christo, Ms. Rosenberg recalls that he attended one videoconference with the Lit Def/Fidelis staff during the transition but otherwise had no involvement with Fidelis's day-to-day operations at any time, as far as she is aware.  (*Id.* at ¶ 13.)  This is consistent with the Receiver's review of the StratFS records, which suggests that Ms. Hinds handled operational matters for Lit Def and Fidelis simultaneously and interchangeably.

In late January 2024, Lit Def/Fidelis staff were told that the servicer in New York, which Ms. Rosenberg now understands to be StratFS, had been sued.  (*Id.* at ¶ 17.)  Staff were instructed not to use their software systems or communicate with "New York" until further notice, and to log their work on spreadsheets rather than in the usual software.  (*Id.*)  During that time, they were also instructed not to access their "Litdefstrategies.com" email accounts, and that they should reply to any emails sent to their "Litdefstrategies.com" from their "Fidelissupport.com" accounts instead, by copying-and-pasting the email into a "Fidelissupport.com" email and removing any reference to the "Litdefstrategies.com" email address. (*Id.* at ¶ 18 and Ex. A.)

On or around February 2, 2024, Ms. Hinds asked Ms. Rosenberg if she would contact the network attorneys to instruct their clients to take their funds out of their escrow accounts held by Global for purposes of making settlement payments directly to creditors.  (*Id.* at ¶ 20.)  Just before that request, Ms. Rosenberg had read the complaint and TRO in this case and she was afraid complying with Ms. Hinds' request would violate the TRO.  (*Id.*)  Ms. Rosenberg let Ms. Hinds know she was not comfortable following those instructions in light of the TRO.  (*Id.*)  Ms. Rosenberg later contacted the CFPB and FBI about her concerns and informed Ms. Hinds of this

contact.  (*Id.* at ¶ 22.)  On February 6, 2024, Ms. Rosenberg observed that a remote user had

obtained access to the Surface computer that she used for Lit Def and Fidelis work.  (*Id.*)  By

February 7, 2024, she had been locked out of her Surface computer.  (*Id.* at ¶ 23.)  That day, Ms.

Hinds assured her that had not been fired (despite being locked out of her computer), and Ms.

Rosenberg agreed to be put on administrative leave by the company; she formally resigned on

March 8, 2024.  (*Id.* at ¶ 2.)

## C.    Substantial Evidence Establishes That Blust Controls Fidelis

Jason Blust's method of operation is to place others as owners and members of law firms,

and then control, manage, and receive the vast bulk of proceeds through "consultation" or

"service" contracts.  (*See*, *e.g.*, Wall Decl., Exhibit 3, at ¶¶ 8 and 14.)  In this way, he controls

operations and funds, but keeps himself off title.  Blust is specifically alleged to control the

StratFS-affiliated law firms and to direct consumer funds to himself through a series of

consulting companies that include Lit Def.  (Dkt. No. 1, Complaint, at ¶ 54.)  The CFPB alleges

that Blust recruits attorneys "to help run, or serve as figureheads" for the law firms, and that he

acts as a liaison between the law firms and StratFS.  (Dkt. No. 1, Complaint, at ¶ 55.)  On March

4, 2024, this Court found that Blust "performs various supervisory tasks for [the intervenor] law

firms including hiring attorneys, addressing consumer complaints, and serving as a liaison

between the intervenor law firms and Strategic[,]" and that "that Blust controls the intervenor

law firms and actively participates in business decisions concerning the intervenor law firms and

Strategic."  (Dkt. No. 183, Decision and Order, at pp. 10, 47.)

This is corroborated by a North Carolina State Bar (the "Bar") investigation of StratFS

network attorney Daniel S. Rufty, where the Bar determined that StatFS's affiliated law firms

were "all established by Blust[,]" and that "[w]hile Blust arranged for [Rufty] to be the majority

owner of [Carolina Legal Services] in name only, Blust arranged for 97% of the profits of

[Carolina Legal Services] to be distributed to Blust and Kelly Seibert, another out-of-state attorney, as 'consultant fees.'"  (Wall Decl., Exhibit 3, at ¶ 14.)

The Receiver's Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (the "Contempt Motion") and supporting Memorandum of Law (Dkt. No. 179 and #179-01) set forth substantial evidence tending to show that Blust not only controls Lit Def and the StratFS-affiliated law firms but also Fidelis, and that Lit Def and Fidelis are functionally interchangeable entities utilized by Blust to service StratFS litigation matters.

The Receiver's review of the information provided by Fidelis in the instant motion does not alter the Receiver's determination that Fidelis is a successor entity to Lit Def and is a Receivership Defendant.  Fidelis's response to the Receiver's findings, as set forth in its Memorandum, is implausible under the slightest scrutiny.

In his Declaration, among other things, Christo claims that his "work in the legal field" includes a "great deal of consulting for debt-settlement law firms."  (Dkt. No. 190-4, Christo Decl. at ¶ 9.)  Fidelis claims to service not only the nineteen StratFS-affiliated firms that Fidelis admits to servicing (*id.* at ¶ 22), but also the six firms whom Fidelis claims are "not involved in the CFPB litigation" that Fidelis also now claims to service.  (*Id.* at ¶ 23.)  However, as discussed in detail in Section II.C, *infra*, all of the debt-settlement law firms that Fidelis claims to service appear to be controlled by, or related to, Blust.  It appears that Fidelis has no revenues other than from Blust-controlled or related law firms.  This suggests that Fidelis, rather than being an independently-maintained business enterprise, is another cog in the ecosystem of entities overseen by Blust.

The implausibility of Fidelis's "competitor" argument – *i.e.*, that Fidelis and Lit Def are like "McDonald's and Burger King" or "Nike and Reebok" (Dkt. No. 190-1, Fidelis Memorandum, at p. 1) – is highlighted in a simple point: why would Jason Blust, who manages and controls all aspects of the law firms' businesses, send the law firm support business to Fidelis and Christo – a so-called "competitor" – and let his staff, including his long-trusted confidant Michelle Hinds, "moonlight" for his competitor? It did not happen.  The evidence renders implausible the notion that Blust as the one controlling the law firms would somehow willingly send work to a supposed competitor (Fidelis) when he had his own business (Lit Def) in the very same space.  The only plausible inference to be drawn is Fidelis became an operational successor to Lit Def, with Christo agreeing to serve as the nominal owner.

The Receiver is not privy to the exact agreement between Christo and Blust or, more likely, an entity controlled by Blust receiving "consulting" or "service" fees, or what their split may be; the carefully-worded declaration of Christo sheds no light on whether Blust and Christo have a behind-the-scenes financial arrangement common in many of Blust's operations; Blust has routinely set up others as nominal owners of business entities with himself reaping the lion's share of profits. What is nonetheless apparent is that Christo's declaration is woefully incomplete with gaping holes as to the true nature of Blust's involvement with Fidelis.

Christo does admit in the vaguest of terms that he knows Jason Blust and, "[s]ometime around 2020," he learned that Blust was supposedly "planning to wind down Lit Def," prompting Christo to form "competitor" Fidelis.  (*Id.* at ¶¶ 9-11.)  But Christo carefully avoids providing any of the following essential details regarding the beginnings of the company: how exactly he met Blust; how he became involved in and learned the litigation support business; how he developed Fidelis's business model and operational procedures, which are identical to those of

Lit Def; how Fidelis obtained or developed the litigation support software it uses to service law firms (which is precisely the same as Lit Def's); or how Fidelis came to service Lit Def's customer base (which, of course, Blust controls).  (*See*, *id.* at ¶¶ 9-16.)

Fidelis also acknowledges that from its "early stages," it was staffed by Lit Def employees.  (Dkt. No. 190, Fidelis Memorandum at p. 4).  More specifically, Fidelis claims to have shared six employees with Blust's Lit Def, while having two non-Lit Def employees.  (*Id.*)  Fidelis states that these shared employees would have their "Fidelis software open alongside Lit Def software, and, throughout a given workday, performing for Fidelis's client-firms the same functions they were already performing for Lit Def's client-firms."  (*Id.*)  This shared-staff arrangement – particularly in light of Ms. Rosenberg's declaration – strongly suggests the two entities were not simply closely related but were operating under common control and essentially as one company.  This undercuts Fidelis's claim that Fidelis and Lit Def were somehow arms-length competitors "like McDonald's and Burger King[.]"  (*See*, *id.* at p. 1).  The implication of this arrangement is clear: Blust allowed Fidelis to utilize Lit Def's staff because Fidelis is not a competitor to Blust, but is rather another company under his effective operational control.  The fact that Ms. Hinds and Ms. Zayed, whom Christo describes as Fidelis's "managers," both have Clientfirstbankruptcy.com emails is additional evidence that Blust is in control of Fidelis.  This is especially the case given Christo's testimony that Zayed worked only for Fidelis and never for Lit Def.

Additionally, Fidelis's explanation, or lack thereof, for the $750,000 in Fidelis invoices discussed in the Receiver's Memorandum in support of the Contempt Motion (Dkt. No. 179-1, Memorandum, at pp. 6-7) is also not credible and fails to explain Blust's obvious role.  Fidelis claims that these invoices – each in an amount of $50,000 or $100,000 – represented Christo's

fee "to vet a new software program." (Dkt. No. 190-1, Memorandum, at p. 9); *see* Christo Decl.

¶ 36 ("In fall 2021, Strategic Client Support, LLC hired me to vet a new software platform. I was

to determine whether the software would integrate with existing systems, and ensure that it was

stable, reliable, and functional. I have been handling these sorts of large-scale, multi-month

consulting projects throughout my career.").

But the vague descriptions in Fidelis's motion and Christo's sworn declaration raise

many questions. Fidelis acknowledges that no written contract for this "vetting" for $750,000

exists. (*Id.*) The invoices themselves contain no information, simply stating that the charge is

for "Support Services" or "Technology Support Services." (*See*, Wall Dec., Exhibit 4.)

Christo's Declaration does not attempt to explain how he accrued exactly $750,000 in bills, in

increments of exactly $50,000 or $100,000, for "vetting" software; neither does he describe the

actual work being performed, who he worked with at StratFS, or what deliverables were

involved; nor does he explain how this work and fees were negotiated or by whom; nor does he

even explain how he got into business directly with StratFS in the first place.

Christo's claims are completely lacking in the usual indicators of an arm's length

business transaction – *e.g.*, a written contract or scope of work, itemized bills, deliverables. In

short, Christo's explanation is not forthright or complete and is at odds with the fact that

StratFS's CFO understood the invoices as really coming from Blust, as indicated by his internal

emails (*see*, Wall Dec., Exhibit 5). Other contemporaneous emails, which the Receiver has

located among the StratFS data also confirm that Fidelis/Christo's explanation is implausible.

On November 30, 2021, Strategic CEO Ryan Sasson emailed his controller, instructing him that

Fidelis was "in no rush for payment." (Wall Dec., Exhibit 6.) It is highly questionable that a

13

new arms-length vendor like Fidelis would operate in such a casual manner if three quarters of a million dollars of work had just been earned under an entirely new business relationship.

A StratFS email string from October 2021 describes the situation as one in which "the law firms will be billing us [StratFS] for technology spend." (Wall Dec., Exhibit 7.) A follow-up email in the string indicates that "the amount ***owed to the law firms*** for technology is $750,000." (*Id.,* emphasis added.) According to these emails, the payee – Fidelis – for this large round number for a "technology spend" was provided to StratFS by Blust's accountant; Christo had no involvement.

### D. All of Fidelis's Revenue Comes from Law Firms Managed and Controlled by Blust

Fidelis acknowledges that most of its revenue comes from StratFS-affiliated law firms, which Blust manages and controls. (Dkt. No. 190-4, Christo Decl. at ¶ 22; Dkt. No. 183, Decision and Order, at pp. 10, 47; Wall Decl., Exhibit 3 at ¶¶ 8, 14.) However, in an attempt to create the appearance of separation between Fidelis and Blust, Fidelis also claims that "approximately 40%" of its revenue comes from law firms not involved in this litigation, listing Castro Law, Chabner Legal Group, Regency Legal Group, Turnbull Law Group, Turnbull Law Group NJ, and Turnbull Law Group SC as non-StratFS law firms serviced by Fidelis. (Dkt. No. 190-1, Christo Decl., at ¶ 23; Dkt. No. 190-4, Fidelis Memorandum, at p. 3.) But, further research by Receiver's counsel has revealed evidence suggesting that each of these law firms is likely also controlled managed or controlled by Blust. Given the evidence below, it appears to the Receiver that all of Fidelis's business is sourced from Blust. If that is the case, the entirety of Fidelis's revenue is derived from Blust-controlled and StratFS-related law firms.

      1.      <u>The three Turnbull Law entities are controlled by, or related to, Blust.</u>

Recent research suggests that the Turnbull Law entities are also controlled by Blust. Turnbull Law Group, LLC ("Turnbull Law"), Turnbull Law Group NJ, LLC ("Turnbull Law NJ"), and Turnbull Law Group SC, LLC ("Turnbull Law SC") are debt relief law firms. Turnbull Law is an Illinois entity.  (Wall Decl., Exhibit 8.)  According to the records of the Illinois Secretary of State, Turnbull Law's principal address, and the address of its registered agent, is 211 W. Wacker Drive, Ste 900, Chicago, Illinois 60606.  (*Id.*)  This is the same address as Blust's law firm, Law Office of Jason Blust, LLC. (Wall Decl., Exhibit 9.)  Turnbull Law Group NJ, LLC ("Turnbull Law NJ") also uses Blust's office as its Main Business Address. (Wall Decl., Exhibit 10.)  The websites of the three Turnbull Law entities are notably similar to the websites of the law firms controlled by Blust.[3]  For instance, the disclaimers on the first page of Turnbull Law's website and the disclaimer on Intervenor Law Firm Level One Law's website[4] are essentially identical:

---

[3] Turnbull Law's website is available at https://www.turnbulllawgroup.com/.  Turnbull Law NJ's website is available at https://www.turnbulllawgroupnj.com/.  Turnbull Law SC's website is available at https://www.turnbulllawgroupsc.com/.

[4] Level One Law's website is available at https://www.levelonelaw.com/.

*Home* / *Privacy Policy* / *Terms and Conditions* / *Contact Us*

© 2019 Turnbull Law Group, LLC

**PAID ATTORNEY ADVERTISEMENT:** Turnbull Law Group is a law firm. This website is an advertisement. It is not a lawyer referral service or prepaid legal services plan. Each of the lawyers on this site are either Managers, Members, Partners, Limited Partners or staff attorneys. All photos are of models and do not depict clients. An attorney responsible for the content of this Site is Christopher Turnbull licensed in Illinois with offices at 332 S. Michigan Ave., Suite 900, Chicago, IL 60604.

If you live in Alabama, Florida, Missouri, New York or Wyoming, please click here for additional information.

By an Act of Congress and the President of the United States, Turnbull Law Group , is a federally designated Debt Relief Agency. Attorneys and/or law firms promoted through this website are also federally designated Debt Relief Agencies. They help people file for relief under the U.S. Bankruptcy Code. Disclosures Required Under the U.S. Bankruptcy Code.

Turnbull Law Group is a private law firm and is not affiliated with any governmental agency, quasi-governmental agency, or charitable organization.

Turnbull Law Group practices under a trade name and therefore in states where required, utilizes the services of and identifies the duly licensed lawyers in those states.

We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.

Home   Privacy Policy   Terms and Conditions   Contact Us

© Copyright 2024 | Level One Law

PAID ATTORNEY ADVERTISEMENT: Level One Law is a law firm. This website is an advertisement. It is not a lawyer referral service or prepaid legal services plan. Each of the lawyers on this site are either Managers, Members, Partners, Limited Partners or staff attorneys. All photos are of models and do not depict clients. An attorney responsible for the content of this Site is Sabine Michel licensed in Florida with offices at 100 S. Ashley Dr., Ste. 600, Tampa, FL 33602.

If you live in Alabama, Florida, Missouri, New York or Wyoming, please click here for additional information.

By an Act of Congress and the President of the United States, Level One Law , is a federally designated Debt Relief Agency. Attorneys and/or law firms promoted through this website are also federally designated Debt Relief Agencies. They help people file for relief under the U.S. Bankruptcy Code. Disclosures Required Under the U.S. Bankruptcy Code.

Level One Law is a private law firm and is not affiliated with any governmental agency, quasi-governmental agency, or charitable organization.

Level One Law practices under a trade name and therefore in states where required, utilizes the services of and identifies the duly licensed lawyers in those states.

We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.

These connections to Blust's office and similarities to law firms known to be controlled by Blust suggest his involvement and operational control.  Additionally, recently reviewed emails tend to show that Blust controls the Turnbull Law entities, and that they are related to StratFS through Blust.  For instance, on January 3, 2023, a Turnbull Law client sent an email to the info@turnbulllawgroup.com account: "I'm currently in a Turnbull Debt Relief program. I need to speak to an attorney regarding bankruptcy."  (Wall Decl., Exhibit 11.)  The info@turnbulllawgroup.com account forwarded the message along to Blust (jblust@blustfirm.com).  (*Id.*)  Blust, in turn, forwarded the message along to various individuals associated with Lit Def and StratFS, including Ryan Sasson.  (*Id.*)

Moreover, on March 16, 2022, Blust's accountant, K2 Financial Management, sent an email to StratFS CFO Salvatore Tirabassi and controller Cameron Ball with an attached spreadsheet of legal invoices, apparently for purposes of truing up expenses between StratFS and the law firms. (Wall Decl., Exhibits 12 and 13.) This email and the attached ledger includes expenses for Turnbull Law entities and suggests that Blust and StratFS were responsible for paying Turnbull Law's legal fees, at least in this instance.

Turnbull Law and Intervenor Law Firm Burnette Legal Group dba Monarch Legal Group ("Monarch") also appear to be co-clients of Legislative Strategies & Solutions, LLC, a lobbying firm. (Wall Decl., Exhibit 14.) In the lobbying agreement, the signers for Monarch and Turnbull Law are Blust and Richard Gustafson, a Blust associate and managing member of numerous Intervenor Law Firms. (*Id.*; *see also*, Dkt. No. 36-4, Gustafson Declaration at ¶ 2.)[5] Given this evidence, it appears that the three Turnbull Law entities that Fidelis claims to service are likely also under Blust's control, and certainly maintain close ties to Blust's other law firms.

2.   Chabner Legal Group is controlled by, or related to, Blust.

Chabner Legal Group, LLC ("Chabner Legal") is another debt relief law firm. Chabner Legal is an Alaska limited liability company with two members: Brandon Chabner and Michelle Hinds. (Wall Decl., Exhibit 15.) Mr. Chabner is a StratFS-affiliated attorney representing clients on behalf of numerous StratFS-affiliated law firms.[6] Ms. Hinds is a manager at Lit Def,

---

[5] Mr. Gustafson testified at the recent evidentiary hearing and the Court found him not credible. (Dkt. No. 183 at p.4).

[6] According to StratFS's SalesForce records, Mr. Chabner currently represents, or has represented, clients on behalf of Bedrock, Boulder Legal Group, Canyon Legal Group LLC, Clear Creek Legal, Heartland Legal Group, Level One Law, Newport Legal Group, Option 1 Legal, Pioneer Law Firm, PC, Rockwell Legal Group, Slate Legal Group, Spring Legal Group, The Law Firm of Derek Williams, LLC, Whitestone Legal Group, and WyoLaw, LLC.

working directly under Blust, and current manager of Fidelis.  (Dkt. No. 190-4, Christo Decl. at ¶¶ 26-30 [discussing Hinds' employment with Lit Def and Fidelis]).  According to Chabner Law's Certificate of Registration, Chabner owns 3% of the company, and Hinds (ostensibly) owns 97%.  (Wall Decl., Exhibit 15.)  This 97%-3% ownership division is similar to the 97%-3% revenue split Blust was found to have utilized with Carolina Legal Services in the Rufty matter.  (Wall Decl., Exhibit 3, at ¶ 14.)  This pattern suggests Hinds is acting as the nominal owner of Chabner Law on behalf of or at the direction of Blust, who employs her.  Chabner Law appears to be just another entity within the portfolio of debt relief law firms that were set up and are controlled by Blust.

Chabner Law, through Blust, also appears to be deeply entwined with StratFS itself.  In 2021, Chabner Law received three invoices from lobbying firm Arc Strategies for lobbying work in California.  (Wall Decl., Exhibit 16.)  On October 28, 2021, K2 Financial Management (Blust's accountant) sent the three invoices to StratFS's controller, Cameron Ball, for payment by StratFS.  (*Id.*)  One of the invoices to Chabner expressly lists "Strategic Client Services" as the billable party on behalf of Chabner Legal.  (*Id.* at p. 3.)  Furthermore, according to the disclaimer on Chabner Legal's website[7], the firm's supervising attorney is Andrew Carroll, Esq. of New Jersey.  Like Mr. Chabner, Mr. Carroll is also a StratFS-affiliated attorney who represents clients on behalf of numerous StratFS-affiliated law firms.[8]  Mr. Caroll is in fact currently listed as a supervising attorney of many of the Intervenor Law Firms, including A.

---

[7] Chabner Legal's website is available at https://www.chabnerlegalgroup.com.

[8] According to StratFS's SalesForce records, Mr. Carroll currently represents, or has represented, clients on behalf of Anchor Law Firm, Bedrock, Boulder Legal Group, Canyon Legal Group LLC, Heartland Legal Group, Newport Legal Group, Option 1 Legal, Pioneer Law Firm, PC, Rockwell Legal Group, Slate Legal Group, Spring Legal Group, Whitestone Legal Group, and WyoLaw, LLC.

Florio & Associates, PLLC dba Bedrock Legal[9], Boulder Legal Group, LLC[10], Harbor Legal Group, LLC[11], Henry Legal Group, LLC dba Heartland Legal Group[12], Gardner Legal, LLC dba Option 1 Legal[13], Hodyno & Associates, PLLC dba Rockwell Legal Group[14], The Law Office of Melissa Michel LLC dba Spring Legal Group[15], and The Sands Law Group, LLP dba Whitestone Legal Group.[16]  In other words, Chabner Law is operated by two of the attorneys who manage the Intervenor Law Firms on Blust's behalf.

###### 3.   Regency Legal Group is controlled by, or related to, Blust.

Regency Legal Group ("Regency"), another debt relief law firm, is a dba of Stevens & Associates, PLLC.  According to the website, Regency's supervising attorneys are Andrew Carroll and Mickey Stevens.[17]  Carroll's involvement with StratFS is discussed above; Stevens is currently, or has been, a StratFS-affiliated attorney associated with numerous StratFS-affiliated law firms.[18]  It appears that Blust installed these attorneys to run Regency in addition to their work with other law firms under Blust's control.

---

[9] *See* Bedrock Legal's website, available at https://www.bedrocklegal.com/.

[10] *See* Boulder Legal Group's website, available at https://www.boulderlegalgroup.com/.

[11] *See* Harbor Legal Group's website, available at https://www.harborlegalgroup.com/.

[12] *See* Heartland Legal Group's website, available at https://www.heartlandlegalgroup.com/.

[13] *See* Option 1 Legal's website, available at https://www.option1legal.com/.

[14] *See* Rockwell Legal Group's website, available at https://www.rockwelllegalgroup.com/.

[15] *See* Spring Legal Group's website, available at https://www.springlegalgroup.com/.

[16] *See* Whitestone Legal Group's website, available at https://www.whitestonelegalgroup.com/.

[17] Regency's website is available at https://www.regency-lawgroup.com/debtnegotiation.html.

[18] According to StratFS's SalesForce records, Stevens currently represents, or has represented, clients on behalf of Bedrock, Canyon Legal Group LLC, Heartland Legal Group, Newport Legal

4.      <u>Castro Law is controlled by, or related to, Blust.</u>

Castro Law is another debt relief law firm.  The firm's website – which, again, is a cookie-cutter website virtually identical in form and design to all the other Blust debt relief firm websites discussed herein – states that the firm is managed by attorney Michael Castro.[19]  Castro is another close associate of Blust who has worked with Lit Def to represent StratFS clients. (*See*, Wall Decl., Exhibit 17.)  StratFS records show invoices for professional services provided to Castro Law were directed for payment to Leigh Legal Group, PLLC dba Greenstone Legal Group, one of the Intervenor Law Firms and another Blust-controlled entity.  Castro Law also maintains a New Jersey branch, and according to their website, Castro Law's supervising attorney in New Jersey is Brian Moore.[20]  Moore is another StratFS-affiliated lawyer representing clients on behalf of numerous Intervenor Law Firms.[21]  Once again, the evidence suggests that Castro Law is yet another debt relief firm under Blust's control.

---

Group, Option 1 Legal, Rockwell Legal Group, Slate Legal Group, Spring Legal Group, Whitestone Legal Group, WyoLaw, LLC.

[19] Castro Law's website is available at https://www.castrolawllc.com/.

[20] Castro Law's New Jersey website is available at https://www.castrolawnj.com/.

[21] According to StratFS's SalesForce records, Moore currently represents, or has represented, clients on behalf of Anchor Law Firm, Bedrock, Boulder Legal Group, Canyon Legal Group LLC, Clear Creek Legal, Harbor Legal Group, Heartland Legal Group, Newport Legal Group, Option 1 Legal, Rockwell Legal Group, Slate Legal Group, The Law Firm of Derek Williams, LLC, Whitestone Legal Group, WyoLaw, LLC.

## IV.    CONCLUSION

For the foregoing reasons, the Receiver respectfully submits that his determination that Fidelis is a Receivership Defendant was proper and supported by substantial evidence.  He therefore requests that the Court deny Fidelis's motion.


Dated: March 14, 2024

MCNAMARA SMITH LLP

By: ___/s/ Logan D. Smith_____
Logan D. Smith (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400
Facsimile:  (619) 269-0401
Email:  lsmith@mcnamarallp.com;
awall@mcnamarallp.com

*Attorneys for Court-appointed Receiver,*
*Thomas W. McNamara*