# EXHIBIT A



**Attorneys At Law**
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach†
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Nicholas A. Romano
Bryan P. Kroetsch
Katherine G. Howard
Andrew M. Debbins
Christina M. Eaton
Tyler J. Gately

**Paralegals**
John P. Kromer
Nancy Pelham, R.N.
Julie M. Scott, L.P.N.
Suzanne M. Pieszak, R.N.
Kathleen V. Kubicki, R.N.
Irene A. McNeill, R.N.
Rachel M. Valkwitch
Emily J. Gay
Kathryn E. Marentette, R.N.
Candace L. D'Orazio

\* *Also admitted in District of Columbia*

† *Also admitted in Pennsylvania*

March 11, 2024

**VIA EMAIL** (jthoman@hodgsonruss.com)
James C. Thoman, Esq.
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, New York 14202

    Re: CFPB v. StratFS
       Case No.: 24-cv-40-EAW-MJR

Dear Jim:

As you know, my office represents the intervenor law firms in this action. On behalf of those law firms, I am hoping to cover some concerns and advance some proposals to permit the law firms to perform their contractual obligations and provide optimal representation of their clients.

In an effort to reach these goals, the law firms respectfully ask the Receiver to undertake the following steps.

*First*, as the Receiver knows, both Royal and Hailstone have historically operated in Kansas as contingent fee firms. Neither firm has charged advance fees and both have historically employed fee structures that comply with the TSR. Despite that fact, we are advised that the Receiver instructed Global to cease and desist from processing fee payments for those firms. To date, we have never received an explanation for this action. We request that the Receiver instruct Global to begin processing fee payments for both Royal and Hailstone. To the extent the Receiver is concerned

March 11, 2024
Page 2
=========================

that future fee payments may not be properly proportionate, that concern can be addressed via periodic review of fee data from Global. We do not believe there is any cost associated with this request.

*Second*, at the present time, the law firms' attorneys and negotiators still lack access to SFS's IT infrastructure to allow them to negotiate, review and approve client debt settlements, and manage client settlement payments with Global and RAM. We request that the Receiver provide this access (as has been previously requested). We are advised this may be done by SFS at little or no cost.

*Third*, at the present time, the law firms' attorneys and negotiators still lack access to client account information held at RAM. As you know, the law firms previously asked RAM to allow for API transfer of data. That proper request was met with assertions to the effect that the law firms were violating the TRO, accompanied by fruitless discovery directed at proving that point. This issue must be resolved, and we respectfully ask the Receiver to instruct RAM to provide API access to the appropriate law firms to allow them to properly represent their clients. We do not believe there is any cost associated with this request.

*Fourth*, as the Receiver knows, the current SFS staff is inadequate to properly service the law firms' clients. Despite the passage of several weeks, SFS is still not timely processing the law firms' mail, which means that important notices regarding lawsuits, settlements, creditor communications and the like are going unopened. Similarly, additional resources are needed to respond to client telephone inquiries, emails, cancellations, "graduations," payment draft adjustments, complaint resolution, to process client requests to remove/add creditors, handle escalated complaints and to obtain files for use in litigation defense.

March 11, 2024
Page 3
==========================

We recognize there is a cost associated with this. However, we note that the cost of *not* providing these services is likely to be much greater. Consumers are being harmed as a result of the current level of staffing. And clients who are being harmed are much more likely to seek refunds or bring claims against those involved.

*Fifth*, we ask the Receiver to allow the law firms' supervising attorneys to have access to client files and SFS personnel to allow them to properly supervise the non-legal services being performed by SFS. We do not believe there is any cost associated with this request.

*Sixth*, we ask that the Receiver devote additional payment processing resources to the establishment of settlement payment plans. At present, the law firms have almost 1000 settlements that need plans established. Delay on this issue directly harms consumers and may result in greater costs (in terms of refund requests and the like) from those consumers.

*Seventh*, we ask that the Receiver resume SFS's historical practice of providing payroll services for law firm employees. The Receiver's decision to stop providing these services is creating significant issues for the firms and their employees. For example, the workers compensation and 401(k) audits for the firms should have been completed by January 31, 2024. We do not believe either has been done. In addition, there are at least two law firm employees who need employment verification information to address mortgage lending and 401(k) issues. If the Receiver declines to honor this request, we ask that he provide us the necessary login and password information for ADP to allow the law firms to handle this.

March 11, 2024
Page 4
==========================

I'm confident many of these issues are "old news" to the Receiver because they have been raised previously. However, with each additional day, there is mounting harm to the law firms and the very consumers the Receiver is obligated to protect. Indeed, the TRO and Preliminary Injunction entered by the Court both delineate the Receiver's duties. In Section IX.D of the Preliminary Injunction (Dkt. 184), the Court ordered the Receiver to:

> Conserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, **in order to prevent any irreparable loss, damage, or injury to Consumers** or to third-party creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of assets.

(Emphasis supplied).

We respectfully request a response on these points by Wednesday, March 13. If you have any questions, we are happy to discuss them you. If we cannot resolve these issues, we will seek judicial recourse.

Very truly yours,

*Terry*

Terrence M. Connors

TMC/nmu