**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | ) ) ) |
| Plaintiffs, | ) )   Case No. 24-cv-00040-EAW-MJR |
| v. | ) ) |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | ) ) |
| Defendants, and | ) ) |
| DANIEL BLUMKIN, et al. | ) ) |
| Relief Defendants. | ) ) ) |

## REPLY IN SUPPORT OF EMERGENCY MOTION TO MODIFY THE ASSET FREEZE

Plaintiffs attempt to downplay the seriousness of their "ready fire aim" tactics without acknowledging the wholly unnecessary harm they have caused. Plaintiffs have frozen all of the assets of several real estate and restaurant businesses – none of which operate in the debt relief industry – and have slow-played the release of funds to pay business related expenses for those entities. As a result, in just the span of a few days, these businesses incurred over $60,000 in unnecessary penalties and late fees. And Plaintiffs have adversely affected the interests of investors in these businesses who have nothing to do with this lawsuit. The asset freeze of these particular businesses is unnecessary. There is not a scintilla of evidence that the Asset-Freeze Defendants are dissipating or otherwise attempting to abscond with assets in these businesses. In fact, like Plaintiffs, the Asset-Freeze Defendants have every incentive to *maintain* these businesses as going concerns to ensure their continued profitability. These businesses are legitimate ventures with

1

additional business partners, binding contractual arrangements, and secured mortgages. In short, these assets are not going anywhere, and the freezing of the assets by Plaintiffs (thereby causing harm to these businesses) actually works against their ultimate goal of ensuring a potential source for future disgorgement should they ultimately prevail in this litigation.

I.   **Plaintiffs Are the Reasons for the Delay and this Motion**

Plaintiffs have not "been acting expediently" as they profess to this Court. Quite the opposite. This motion was necessary *precisely because* they would not act in any type of expeditious matter. Instead, they have used this asset freeze and the request to unfreeze assets as a pretense to conduct premature discovery related to the Asset-Freeze Defendants which was unnecessary to the *only* relief Asset-Freeze Defendants asked for in the short term and with this Motion: release of funds to pay ordinary business expenses.

Plaintiffs' assertion that Asset-Relief Defendants "have failed to disclose certain information and delayed disclosing other information" is demonstrably false.  On March 7, Asset-Freeze Defendants turned over to Plaintiffs detailed spreadsheets that showed account information as well as annual and monthly breakdowns for the business expenses for each individual business. *See* ECF No. 200-3 at 3. These files detailed account numbers and specific line items related to the expenses that each business needed to pay on a monthly basis. They were also accompanied by further explanation via email, as well as an acknowledgment and agreement that the Asset-Freeze Defendants would not use any of the funds from those accounts for personal use unless and until Plaintiffs agree or the court orders such use. *Id.* In response, Plaintiffs did not unfreeze the amounts, but instead demanded the following additional documents:

1. Account statements covering the time period from January 11, 2024 to the present for the accounts listed on the "Copy of Accounts – Storage Apartments.xlsx" spreadsheet (attached);

2.  Documentation showing income distributions from the properties for 2023;

3.  Documents from the purchase of the properties, including closing documents showing who contributed funds to pay for the properties;

    a.  This documentation should also be sufficient to show how proceeds from the sale of SFS to the ESOP flowed into the properties;

4.  Origination documents for any loans where the properties are used as collateral, including the loans associated with the statements you sent yesterday (attached);
    a.  Note that this documentation should include who received the loan proceeds and where those proceeds were deposited;

5.  Billing statements to support the expenses listed in the "Copy of Birds Investments – Apartment Complex Expenses.xlsx" and "Copy of Birds Investments Timberline 1042 – Storage Facility Expenses.xlsx";

6.  All payments from Birds and Timberline 1042 to any of the defendants in this matter, including Versara;

7.  All payments from Birds and Timberline 1042 to any ESOP loan, whether directly or indirectly; and

8.  Documentation of the current valuation of the properties.

ECF No. 200-3 at 2.

This was clearly not a request for "basic information" as Plaintiffs now tell this Court. ECF No. 224 at 5. This was a demand for a massive amount of information that had nothing to do with releasing funds sufficient to pay ongoing business expenses. Rather, it is a thinly veiled attempt for discovery regarding historical information related to loans made to Versara, current valuations of the properties, and information related to the ESOP sale that occurred six years ago. Notwithstanding this obvious overreach by the plaintiffs, in an effort to cooperate and to get funds unfrozen so late fees would not be incurred and assets squandered, Asset-Freeze Defendants began the arduous task of assembling the requested information – which totaled over 300 MB worth of

documents – and delivered them to Plaintiffs on Sunday, March 17. Plaintiffs admit they have the documentation, but nonetheless tell this Court that many of their "requests for information [remain] unaddressed." *Id.* Plaintiffs have everything they need (and more) to see that the requested business expenses must be and should be paid, including the following:

- Summary compilations for all monthly expenses;

- Bank account statements for each business;

- Detailed financial statements for each business;

- Documents showing income distributions for each business;

- Closing statements for the purchase of the businesses;

- Loan origination documents and convertible debt documentation;

- Billing statements and property management agreements (which describes ordinary costs associated with maintaining the businesses);

- Distributions made by the businesses;

- Outstanding bills and invoices.

Plaintiffs also make the baseless assertion that the Asset-Freeze Defendants "omitted" information from their disclosures, such as the current fair market value of the businesses. Before responding to the merits of this assertion, it is important to note it is a red herring. The fair market value of the businesses has nothing to do with the issue at hand: Unfreezing assets to pay normal business expenses so assets are not squandered on late fees and penalties, and the businesses can generate income. Nor does Plaintiffs' assertion of "omission" have any merit. In their disclosures, the Asset-Freeze Defendants disclosed their respective interests in, *inter alia*, Birds Investment Inc., Timberline 1042 Inc., and/or Claudios Holding Corp. (referred to in the Sasson and Behar disclosures as "PWIB Claudios" or "PWIB Claudios"), which hold interests in certain of the

businesses at issue in the instant motion. The Asset-Freeze Defendants do and did not have any fair market valuation (*i.e.*, an opinion of the price for which an asset would sell on the open market) in their possession, custody, or control for Bird Investments, Timberline 1042, and Claudios (or the businesses in which these entities hold interests) at the time they submitted their disclosures. Given the extremely short timeframe in which the Asset-Freeze Defendants were required to submit their disclosures, combined with their access to corporate records and systems being cut off pursuant to the TRO, the Asset-Freeze Defendants had no means, and were simply unable, to obtain fair market valuations to include in the disclosures. The Asset-Freeze Defendants explained in their disclosures these limitations on their ability to provide certain information called for by the disclosure form. Under the circumstances no fair market valuation could have been obtained. Similarly, the Asset-Freeze Defendants currently do not have formal fair market valuations of the properties or businesses at issue here but provided their own best estimates of the values to Plaintiff on

Finally, Plaintiffs make much of their argument that these businesses were financed, in whole or in part, by proceeds the Asset-Freeze Defendants received when they sold their shares in Strategic Family, Inc. to the Strategic Employee Stock Ownership Trust ("Strategic ESOT"), and that this justifies the freeze of these assets. As an initial matter, and as explained above, these assets are not in danger of dissipation, and Plaintiffs have done *nothing* to show otherwise. In fact, the assertion they *do* make – that these businesses were an investment made to defer taxes on proceeds paid to Asset-Freeze Defendants as part of the sale of stock to the Strategic ESOT – provides a strong incentive to *not* dissipate the assets. But more importantly, Plaintiffs' argument misses the point. All the Asset-Freeze Defendants seek at this time is the unfreezing of routine, recurring business expenses in order to maintain the profitability of the businesses and the value of the assets.

As explained in the Motion, doing so is in all parties' interests. *See* ECF No. 200-1 at 13-14 (citing *Sec. & Exch. Comm'n v. Santillo,* 2018 WL 3392881 (S.D.N.Y. July 11, 2018)).

## **CONCLUSION**

Based on the foregoing, Defendant Ryan Sasson and Relief Defendants Albert Ian Behar and Daniel Blumkin respectfully request the Court modify the PI to prohibit Plaintiffs from freezing assets related to conducting the businesses described herein and to immediately order the release of funds in the frozen accounts sufficient to pay operating business expenses.

Respectfully submitted,

Dated: March 20, 2024

*/s/ Ronald S. Safer*
Ronald S. Safer (*pro hac vice*)
Rodney Perry (*pro hac vice*)
Matthew Kennison (*pro hac vice*)
Maegan McAdam
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Tel: (312) 471-8700
rsafer@rshc-law.com
rperry@rshc-law.com
mkennison@rshc-law.com
mmcadam@rshc-law.com

*Attorneys for Defendant Ryan Sasson and Relief Defendants Daniel Blumkin, Albert Ian Behar, Blaise Investments LLC, Twist Financial LLC, and Duke Enterprises LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Ronald S. Safer, an attorney, hereby certify that on March 20, 2024, I caused a copy of the foregoing to be served via CM/ECF upon all counsel of record.


*/s/ Ronald S. Safer*