UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>                Plaintiffs,<br><br>vs.<br><br>STRAFTS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>             Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>             Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**RECEIVER'S FIRST INTERIM APPLICATION
FOR ORDER APPROVING FEES AND EXPENSES OF
<u>THE RECEIVER AND PROFESSIONALS</u>**

Thomas W. McNamara was initially appointed Temporary Receiver ("Receiver") of the Receivership Defendants by the Temporary Restraining Order entered on January 11, 2024 ("TRO," Dkt. No. 12). The Receiver's appointment was confirmed, and the temporary designation removed, by the Preliminary Injunction ("PI") entered March 4, 2024 (Dkt. No. 184). The PI authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;" PI, Section IX.I., page 19.

The PI also provides that the "Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation." PI, Section XV, pages 29-30.

A court-appointed receiver "'who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred…[t]he amount of the compensation is to be determined by the court in the exercise of its reasonable discretion.'" *SEC v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *SEC v. Byers,* 590 F Supp. 2d 637, 644 (S.D.N.Y. 2008)). A "Court may also consider 'the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed.'" *Id.* (citing *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015)). In this case, the hourly rates of the Receiver, counsel, and accountants were presented to the Court in

1

a Statement of Interest and Qualification (Dkt. 4-1) prior to Judge Villardo's appointment of the Receiver. Presumably, Judge Villardo found the rates to be reasonable.[1]

Whether a fee is reasonable requires consideration of several factors, "including '(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented.'" *Id.* (quoting *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018)).

### *Complexity*

This Court is extremely familiar with the sweeping scale and complexities of the Defendants' businesses. Both the Receiver's Preliminary Report (Dkt. No. 115-1) and the Declaration of Thomas W. McNamara in Support of Receiver's First Interim Fee Application ("Receiver's Declaration"), address the size, scale, intricacies, byzantine structure and operations of the Defendants' dozens of business entities.

The Plaintiffs' complaint here was brought against twenty-nine Corporate Defendants, two Individual Defendants, and eleven Relief Defendants, and the case now includes numerous intervening law firms. Most of the Receivership Defendants are related to the StratFS family of businesses at the heart of the debt settlement operation. Other Receivership Defendants related to Individual Defendant Jason Blust provided separate but related services to the associated law firms which had signed engagement agreements with the consumers. The Receiver has also identified other entities operating under the common control of Defendants and has named them as additional Receivership Defendants. *See* Receiver's Declaration, fn. 2.

---

[1] The rates of Hodgson Russ LLP were not included in the Statement of Interest and Qualification, but Mr. Thoman agreed to discount his usual rates and the Court is in a position to determine the reasonableness of those rates.

The businesses subject to the receivership are complex by any metric – large size and scale;[2] three business models with different product offerings intentionally separated from one another, but nonetheless operated under common control; and an overall excessively complicated structure with purposely opaque and siloed operations of dozens of business entities. Gaining the necessary understanding of the relationships and the interplay between the many Receivership Defendant entities, and further, their relationships with a rotating cast of associated law firms, has been a difficult and time-consuming process given their multi-layered structure. The specific complexities and layers of separate entities are described more fully in the Receiver's reports to the court and will not be repeated here.

The sprawling businesses are, in turn, reflected in the magnitude of the IT systems necessary to support the sophisticated debt relief operations. The IT systems and the data collection necessary to support these sophisticated operations were likewise complex, sophisticated, and immense (tens of terabytes). Because the Receiver was charged with maintaining a chain of custody for the Receivership Defendants' data for the benefit of all parties and the Court, it was necessary (especially at the beginning of the receivership) to spend large amounts of time and effort to identify, access, and preserve an incredible volume of data.

The Duties assigned to the Receiver by the TRO and the PI are extensive. Section IX of the TRO and PI titled "Duties of Receiver" recites these duties.

- Assume full control of Receivership Defendants by removing as necessary any director, officer, independent contractor, employee, or agent (IX.A).
- Take exclusive custody, control, and possession of all Assets, Documents, and Electronically Stored Information (IX.B).

---

[2] Nearly 1,000 employees, roughly 65,000 enrolled consumers, revenues of more than $1 billion in the last seven years, 2023 service income of $154 million; large physical headquarters in Buffalo (~ 57,000 square feet) and New York City (~ 42,000 square feet).

3

- Secure the business premises which may include completing an inventory, changing the locks, disconnecting internet access, and requiring any persons present to leave the premises (IX.C).
- Conserve, hold, and manage all Receivership Assets to preserve their value and prevent loss to consumers or third-party creditors and obtain an accounting of Assets (IX.D, G).
- Purchase insurance as necessary (IX.E).
- Prevent the modification, destruction, or erasure of any web page or website and provide access to such web pages or websites to Plaintiffs' and Defendants' representatives (IX.F).
- Manage the business until further order of the court which may include hiring and dismissing employees, independent contractors, or agents (IX.H).
- Engage attorneys, accountants, appraisers and other independent contractors and technical experts as necessary to perform these duties (IX.I).
- Make disbursements from the estate as necessary and apply to the court for payment of pre-receivership debt (IX.J).
- Implement compliance with the TRO (IX.K).
- Institute, compromise, adjust, appear in, intervene in, or become a party to lawsuits as necessary to preserve or recover the Assets (IX.L).
- Defend, compromise, adjust or otherwise dispose of actions or proceedings filed in the past or in the future as necessary to preserve the Assets (IX.M).
- Continue and conduct the business as necessary or appropriate but only if Receiver makes a good faith determination that the business can be operated lawfully at a profit using the Assets of the receivership estate (IX.N).
- Take depositions and issue subpoenas to obtain documents and records (IX.O).
- Open bank accounts as designated depositories for Receivership funds (IX.P).
- Maintain accurate records of all receivership receipts and disbursements (IX.Q).
- Cooperate with all requests for information or assistance from state or federal law enforcement, including Plaintiffs, and produce documents in response to discovery requests to Defendants (IX.R).
- Identify additional Receivership Defendants not already named (IX.S).
- Notify all courts in which Receivership Defendants have litigation pending and where appropriate request stays (IX.T).
- Maintain chain of custody of all Defendants' records in Receiver's possession (IX.U).

Section XVI of the TRO further required the Receiver to file a report prior to the PI hearing (initially set for February 1, 2024) to include a section on "Whether the business of the Receivership Defendants can be operated lawfully and profitably." That comprehensive report reflects the complexity of the business, its multiple business lines, and its complicated structure. Its preparation required an intense effort to investigate and evaluate this complex business.

Some business operations were re-started which presented multiple operational challenges, especially as to the management and compensation of employees. As the Court is aware, in order to protect consumers, 78 customer relations staff (and supporting IT and human resources) were initially brought back within a week of the Receiver's access to the business, and over time additional customer service staff were added to bring the number authorized to 92. Additionally, after determining that Atlas and Timberline direct-to-consumer debt relief lines, which did not take advance fees, could be operated lawfully and profitably, operations were resumed with 35 staff and has continued. As to a third business line, the Versara Debt Negotiation Loans, the Receiver returned employees to assist with servicing existing loans.

Due to the contested nature of the PI proceeding, which included a multi-day evidentiary hearing starting February 1, 2024, the Receiver performed many of his Court-ordered assignments in a contentious environment. There were numerous filings (*e.g.*, a motion to dissolve the TRO and terminate the receivership, and almost weekly Defense letters filed with the Court), which required the Receiver's attention and, in most cases, necessitated pleading responses. Multiple extensions of the TRO and on-going settlement talks compelled the Receiver to function on a two-or-three-day time horizon to keep Defendants' business alternatives open should they reach a settlement.

While not universal among the Receivership Defendants, or their employees, a lack of cooperation by certain Receivership Defendants and their employees increased the operational complexities for the Receiver. For example, StratFS's head of HR was reluctant to assist, increasing receivership work to assist, pay and ensure benefits for employees. Defendant Jason Blust and Lit Def Strategies, LLC refused to comply with the TRO in any way, ultimately requiring

5

the Receiver to file an Order to Show Cause re Contempt, which is presently pending before the Court.

### *Benefits to the Receivership Estate and Quality of the Work*

All the services covered by the submitted invoices were directly related to Receiver's compliance with the express directives of the TRO and PI.

In light of the web of businesses and complexities faced, the Receiver submits the Receivership Estate benefitted from the work performed during the period of time for this First Application. The activities of the Receiver and his team, counsel, accountants, and the data forensic vendor, are set forth in the Receiver's Declaration and the invoices attached.

### *Supporting Time Records*

As reflected in the Receiver's Declaration and the invoices attached as exhibits, substantial work was necessary and performed over a very compressed time period. The time records of the Receiver, counsel, accountants, and data forensics vendor are extremely detailed and justify the costs and expenses incurred. As is common in receiverships, the first month is always the most expensive as it involves access to business sites and the investigation and preparation of a preliminary report and then drops substantially afterwards. That has happened here. And, as described in the Receiver's Declaration, the Receiver personally examined the invoices on an entry-by-entry basis for his bills and those of his counsel and professional vendors before presenting the application to the Court.

### CONCLUSION

The Receiver now respectfully submits this First Interim Fee Application for approval to pay the following fees and expenses for services during the period through February 29, 2024, which are detailed in the Receiver's Declaration filed with this Application: (1) January fees of

6

$205,882.00 and expenses of $12,021.97 and February fees of $143,927.50 and expenses of $15,003.22 of the Receiver and staff to be paid to TWM Receiverships Inc. dba Regulatory Resolutions; (2) January fees of $246,205.50 and expenses of $10,225.46 and February fees of $22,084.00 and expenses of $332.92 of the Receiver's counsel, McNamara Smith LLP; (3) January fees of $135,168.50 and expenses of $1,479.50 and February fees of $64,975.00 and expenses of $104.59 of the Receiver's counsel, Hodgson Russ LLP; (4) $10,067.85 fees of the Receiver's counsel, Ballard Spahr LLP; (5) fees of $87,003.25 and expenses of $286.60 of the Receiver's forensic accountants Mercadien, P.C.; and (6) January fees and expenses of $137,774.57 and February fees and expenses of $14,566.82 of the Receiver's Data Forensic Consultants Bright Labs Services, LLC (Ankura).

Dated: March 25, 2024

**HODGSON RUSS LLP**

*/s/ James C. Thoman*
James C. Thoman, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone:  (716) 856-4000
Facsimile:  (716) 849-0349
Email:  jthoman@hodgsonruss.com

**MCNAMARA SMITH LLP**

By:   */s/ Logan D. Smith*
Logan D. Smith  (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400
Facsimile:  (619) 269-0401
Email:  lsmith@mcnamarallp.com;
awall@mcnamarallp.com
*Attorneys for Court-appointed Receiver,*
*Thomas W. McNamara*

7

17200323v2