## Agreement for Legal Representative Signing Services

On this 25th day of February 2023, **VELSA HOLDINGS LLC. DBA: NATIONAL PARALEGAL & NOTARY,** (hereinafter "NPN") and **DAKIS LEGAL GROUP LLC D/B/A CLEAR CREEK LEGAL** (Hereinafter "COMPANY"), agree that:

**WHEREAS**, the parties seek to enter into a relationship whereby NPN will provide in person face-to-face presentation services to COMPANY, in order to refer representatives ("Representatives") who will meet with COMPANY'S clients, provide an in-person, face-to-face presentation and oversee the proper execution of legal documents issued by COMPANY;

**NOW, THEREFORE**, the parties mutually agree as follows:

1. COMPANY shall pay NPN a fee ("Fee") for referring a Representative, as follows:

    a. ONE HUNDRED-FIFTEEN Dollars ($115.00) for a Representative to meet face to face with the COMPANY's client to give an in-person presentation and oversee execution of documents; upon completion documents will be scanned back and uploaded to COMPANY's website, within 24-hours from the completion of the signing; and
    b. Additionally, in cases where the client is located in a remote area, NPN may refer a Representative to commute to said area, thus incurring extra fees. For the purposes of this agreement, a remote area is defined as one that requires the Representative to travel twenty-five (25) miles or more, one way. In such cases, NPN will
    notify COMPANY on a case-by-case basis to seek additional fee approval from COMPANY via email before moving forward. The fee for such mileage charges will be based on standard mileage rates for business, which are published by the IRS on an annual basis.

2. If a Representative meets with the potential client of COMPANY and, for any reason, the transaction is not completed (e.g., the client does not sign the document or otherwise fails to cooperate with the process, or is a no show), then:

    a. COMPANY shall pay NPN $65.00 in total for the incomplete transaction.

3. If a Representative meets with a client and the transaction is completed, but the client thereafter cancels the transaction, COMPANY shall nonetheless pay the full amount of the Fee to NPN.

4. The following is a list of service level expectations for this business partnership:
    a. Professionalism: It is expected that NPN will provide a Representative who is professional in appearance, actions and communication. All assigned Representatives must wear professional business attire for any appointment with the identified client. In addition, they should be on time for all client appointments, and it is a requirement that each Representative call the identified



DEFENDANT'S EXHIBIT 1

client at least one hour in advance of the appointment to confirm the time and location.

b. Execution: It is expected that NPN and the assigned Representative will work to complete all tasks and assignments in a timely and professional manner. Specific expectations would be:

  i. Scheduling appointments: It is expected that NPN will work with COMPANY representatives to initiate contact with the client within 24 hours of notification by COMPANY, in order to schedule an in-person appointment that is convenient to the client. In the event that the appointment cannot be completed as scheduled, NPN should immediately notify both the client and the COMPANY.

  ii. Completion of paperwork: It is expected that NPN will provide a Representative who fully completes all paperwork at the time of the scheduled in-person appointment. The definition of completing the paperwork includes getting all appropriate signatures from the client, including adding signatures for any co-applicant, if applicable. NPN is then responsible for uploading all completed paperwork to the COMPANY website, within 24-hours of the completion of the in-person appointment.

  iii. Communication: It is expected that NPN will communicate with COMPANY in a manner that provides for a superior client experience. All efforts should be made to communicate all status updates, including:

    a. Confirmation of client appointments,
    b. Rescheduling of client appointments,
    c. The need for additional remote area fees,
    d. Any issues or concerns relayed by the Representative during the in-person appointment, and
    e. NPN notifying the COMPANY in the event of a client no-show or other scheduling concern.

c. Service Level Agreements

  i. Scheduling: It is expected that 90% of all appointments will be handled on-time, as defined by:

    a. The Representative arriving on-time for the appointment as scheduled.
    b. The Representative calling the client at least 1 hour prior to the appointment to confirm the appointment.

  ii. Completion of paperwork: It is expected that 100% of all paperwork will be handled as expected, as defined by:

DX1-0002

        a.    All paperwork submitted will be complete with signatures.
        b.    All paperwork will be uploaded to the COMPANY system within 24-hours of the in-person appointment.

    iii.    Communication: It is expected that 100% of all communication from NPN to COMPANY will be handled on-time, as defined by:

        a.    All notifications will be provided real-time, during the business hours of 9 AM EST and 9 PM EST, Monday through Friday.
        b.    All notifications will be provided real-time, during the business hours of 10 AM EST and 5 PM EST, on Saturday.
        c.    All remote area fee requests will be provided, in writing (including by email), and will be included in the monthly invoice with details about the date, time, distance and name of client.

    iv.    Failure to meet one, or more, of the Service Level agreements, as defined above, will result in a monetary penalty of 5% of the total monthly invoice for the month that the service level failure occurred if the identified service level shortfall is not remedied before the end of the following month

5. NPN shall issue invoices to the COMPANY by the 5th of each month, covering all services provided hereunder during the prior month. COMPANY shall make payment to NPN by the 25th of the month, for all services provided hereunder during the prior month. (E.g., for services provided by NPN in January, NPN shall issue its invoice by February 5, and COMPANY shall pay such invoice by February 25.)

6. If COMPANY fails to deliver the monthly payment on the 25th day of the succeeding calendar month as set forth in the preceding paragraph to NPN, a one (1)% daily compounding interest penalty will apply until payment is received in full.

7. Either party may terminate this Agreement with thirty (30) days written notice to the other party. Upon the termination of this Agreement, COMPANY shall promptly return to NPN any records, electronically stored files or other media containing NPN'S Confidential Information, and shall not retain any copies of same. Similarly, NPN shall promptly return to COMPANY any records, electronically stored files or other media containing COMPANY'S Confidential Information, and shall not retain any copies of same. All provisions of this Agreement that by their terms or context are intended to survive the termination of this Agreement, including without limitation, shall so survive and remain in full force and effect in accordance with their terms.

8. Pursuant the Letter of Engagement signed by each respective client and COMPANY for each case representation, COMPANY is responsible for the legal services provided to its clients. Accordingly, COMPANY agrees to defend and hold harmless NPN and its legal

representatives for duties performed on behalf of its clients as it relates to the Debt Resolution Program.

9. In the event of litigation, including breach, enforcement or interpretation, arising out of or relating to this Agreement, the prevailing party in such litigation shall be entitled to recover from the non-prevailing party reasonable attorney's fees, costs and expenses.

10. The validity, construction, enforcement, and interpretation of this Agreement are governed by the laws of the State of Illinois and the federal laws of the United States of America, excluding the laws of those jurisdictions pertaining to resolution of conflicts with laws of other jurisdictions.

11. An amendment or modification of this Agreement will be valid and effective only if it is in writing and signed by each party to this Agreement. In addition, a waiver of any duty, obligation, or responsibility of a party under this Agreement will be valid and effective only if it is evidenced by a writing signed by or on behalf of the party against whom the waiver is sought to be enforced.

12. Whenever possible, each provision of this Agreement should be construed and interpreted so that it is valid and enforceable under applicable law. However, if a provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, that provision will be deemed severable from the remaining provisions of this Agreement and will not affect the validity, interpretation, or effect of the other provisions of this Agreement or the application of that provision to other circumstances in which it is valid and enforceable.

13. The parties agree that no relationship is created by this Agreement that could any way imply (a) a partnership, joint venture or other commercial relationship between the parties, (b) an authorization for either party to act as agent or representative of the other or (c) an agreement or commitment by the other party to purchase, acquire, develop or use the products or services of the other party.

14. This Agreement records the entire understanding between the parties with respect to the terms and conditions set forth herein, and supersedes any previous or contemporaneous agreement, representation or understanding, oral or written, by either of them with respect to such terms and conditions. The parties may execute this Agreement in counterparts. Each executed counterpart of this Agreement will constitute an original document, and all of them, together, will constitute the same agreement.

DX1-0004

**DAKIS LEGAL GROUP LLC D/B/A CLEAR CREEK LEGAL**

BY: *Jerome Dubin* (signature)

NAME: Jerome Dubin

TITLE: Owner

DATE: 2/28/2023

**VELSA HOLDINGS, LLC**
**DBA: NATIONAL PARALEGAL & NOTARY**

BY *Lmuny* (signature)

NAME: : Lisa Munyon

TITLE: Managing Member

DATE: February 25th, 2023