UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION, BUREAU, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*, <br><br> Defendants, and <br><br> DANIEL BLUMKIN, *et al.*, <br><br> Relief Defendants. | 24-CV-40-EAW-MJR <br> DECISION AND ORDER |

_____

Currently before the Court are the emergency motions of defendants Ryan Sasson, Daniel Blumkin, and Albert Ian Behar (Dkt. No. 204); defendant StratFS, LLC and its subsidiaries and affiliates (the "Strategic Entities") (Dkt. No. 207); defendant Jason Blust (Dkt. No. 218); and the intervenor law firms (Dkt. Nos. 219, 225), (all referred to collectively as "defendants"), to stay the preliminary injunction. In the alternative, defendants ask the Court to stay the portions of the preliminary injunction: (1) continuing the appointment of a receiver; and (2) barring individual defendants Sasson and Blust from participating in the business. The Court denies defendants' motions *in toto*.

## **BACKGROUND**

On January 11, 2024, United States District Judge Lawrence J. Vilardo issued an *ex parte* temporary restraining order against defendants (Dkt. No. 12, "TRO"). On March 4, 2024, following a two-day evidentiary hearing, this Court issued a decision granting plaintiffs' motion for a preliminary injunction (Dkt. Nos. 183, 184). Defendants now seek

a stay of the preliminary injunction pending appeal. This Decision and Order assumes familiarity with the Court's preliminary injunction Decision and Order (Dkt. No. 183, "PI Decision") and the other prior proceedings in this case.

## DISCUSSION

Defendants ask the Court to stay the preliminary injunction—essentially to undo it—pending resolution of their appeal. However, because defendants have filed notices of appeal, "the Second Circuit has jurisdiction to decide whether the preliminary injunction was properly issued," and that question no longer lies with the District Court. *Broker Genius Inc. v. Seat Scouts LLC*, 17-CV-8627, 2019 U.S. Dist. LEXIS 18447, at *8 (S.D.N.Y. Feb. 5, 2019). Indeed, the appeal of an order granting a preliminary injunction "divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989).

Here, defendants request a stay under Federal Rule of Civil Procedure 62(d), which provides that "[w]hile an appeal is pending from an interlocutory order . . . that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Rule 62(d) "regulates a district court's power to alter an injunction notwithstanding the fact that it is the subject of a pending appeal." *Broker Genius Inc.*, 2019 U.S. Dist. LEXIS 18447, at *7. Further, Rule 62(d) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained." *Int'l Ass'n. of Machinists & Aerospace*

2

*Workers v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 215 (2d Cir. 2020) (same).

> Once the appeal is taken, however, jurisdiction passes to the appellate court. Thereafter the appellant is not usually entitled as of right to present new evidence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the status quo **as of the time of appeal**. . . . [S]ound judicial administration demands that unless the judge is satisfied that his order was erroneous he shall use his power under Rule 62([d]) only to **preserve the status of the case as it sits before the court of appeals**.

*Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962) (emphasis added).

In light of these parameters, the Court denies defendants' motions to stay the preliminary injunction because (1) defendants have failed to show any clear error in the Court's conclusions and (2) defendants have failed to establish that a stay would preserve the status quo pending the appeal.

The Second Circuit "review[s] a district court's decision to grant a preliminary injunction for abuse of discretion, examining the legal conclusions underpinning the decision *de novo* and the factual conclusions for clear error." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58 (2d Cir. 2020). In the PI Decision, this Court concluded that defendants had likely violated, and were likely continuing to violate, the TSR by charging and collecting advance fees from consumers in connection with their debt-relief business. (PI Dec. at 1-2) The Court rejected defendants' argument that their use of notaries to conduct "sales presentations" to consumers qualified for the face-to-face sales exemption to the TSR. (*Id.*) Specifically, the Court concluded that "the notaries are not sellers within the meaning of the TSR," and further held that "[e]ven if the notaries qualified as sellers … the face-to-face exemption likely still does not apply here," based on the facts in the record. (PI Dec. at 26.) The Court also found that "the evidence here

3

demonstrates that the face-to-face meetings were often not executed in the manner put forth by defendants." (PI Dec. at 35.)

Defendants argue that this case involves "difficult and novel questions" (Dkt. No. 204-1 at 3), and a "fact-intensive" analysis (Dkt. No. 207-1 at 3). But defendants fail to explain how any of the Court's factual conclusions constitute a clear error, which is what they must do to have any likelihood of success on appeal. Indeed, even if defendants could convince the Second Circuit that their notary scheme satisfied the face-to-face exemption in theory, they would still be unlikely to succeed on appeal because the record evidence establishes that "the meetings between consumers and the notaries often did not occur in the manner designed by defendants." (PI Dec. at 45.)

Given defendants' failure to identify any clear error in the Court's factual conclusions, defendants have failed to show a likelihood of success on appeal. And while the Court's legal conclusions are reviewed *de novo*, defendants have pointed to no basis to dispute those conclusions other than their rehashed arguments that the Court has already considered and rejected. In fact, defendants acknowledge that the central legal issue involved here was one of "first impression" and that "[n]o district court had previously examined in any detail the question of what constitutes a 'face-to-face sales presentation' under…the TSR." (Dkt. No. 204-1 at 2.)

Defendants alternatively claim that the granting of a preliminary injunction as to individual defendants Sasson and Blust was erroneous, because Sasson and Blust purportedly did not know that they were violating the TSR. Defendants argue that plaintiffs were required, and failed, to show that Sasson "knew, or consciously avoided knowing, that the face-to-face sales presentation program was non-compliant [with the TSR]." (Dkt.

4

No. 204-1 at 5). Defendant Blust makes the same argument, contending that "knowledge of wrongdoing" is an "essential element of proof." (Dkt. No. 21 at 4.) However, defendants "confuse[] factual knowledge with legal knowledge; only the former is required to establish a knowing statutory violation." *In re Axa Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 236 (S.D.N.Y. 2022). Whether a defendant has "legal knowledge," *e.g.* about whether a certain statutory exception exempted his conduct from a clearly stated bar on conduct, is not relevant to this inquiry. *See Bryan v. United States*, 524 U.S. 184, 192-93 (1998) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," not proof of "knowledge of the law."); *United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 562 (1971) (holding that only knowledge of the "specific acts or omissions" constituting the relevant regulatory violation was required to prove a criminal violation, as opposed to knowledge that the acts or omissions were proscribed by law); *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001) (holding that "the phrase 'knowingly violates' requires knowledge of facts and attendant circumstances that comprise a violation of the statute, not specific knowledge that one's conduct is illegal.").

Evidence presented to this Court clearly showed that defendant Sasson is the CEO of Strategic as well as one of its founders, and that he controlled the Strategic Entities that worked directly with the intervenor law firms in providing debt-relief services to consumers. (PI Dec. at 46.) Sasson has admitted—and the Court has found—that he was aware that defendants receive advance fees for debt-relief services. (*Id.*) Defendant Blust is the founder, sole owner, and sole employee of Hedgewick, an outside consulting company. (PX-056, Blust Dep. 111:21-112:7.) Hedgewick helps "run the day-to-day" of

the intervenor law firms, and handles their "financials." (*Id*. at 45:7-23.) Hedgewick also drafted the scripts and tests used by the notaries.[1] (Pl. Dec. at 47.) Moreover, documentary evidence shows Blust discussing how the law firms and the Strategic Entities will divide up the fees they collect from consumers. (Dkt. No. 116-3 at 3-4.)

Because Sasson and Blust were aware that defendants were taking advance fees for debt-relief services, they were aware of the conduct that violates the TSR.[2] For these reasons and for all of the additional reasons cited by the Court in its PI Decision, there is no clear error in this Court's finding that, at this stage of the litigation, there is sufficient evidence to apply the terms of the preliminary injunction to defendants Sasson and Blust.[3]

Defendants further claim that appointment of a receiver was inappropriate. However, "a district court's decision to appoint a trustee or receiver may be disturbed on

---

[1] Blust contends that his drafting of the notary scripts does not "show that he knew or should have known that this practice constituted a deceptive misrepresentation" or that he "should have known that the use of notaries constituted a deceptive practice." (Dkt. No. 218 at 4.) However, deception is not a required element of a TSR claim. Instead, it is sufficient that Blust had knowledge of the violation, namely the collection of advance fees from consumers in connection with providing debt-relief services, and that he participated directly in the deceptive acts, had the authority to control them, or provided substantial assistance or support to the seller violating the TSR. *See FTC v. tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014); *FTC v. Consumer Health Benefits Assn'n*, 10-CV-3551, 2011 U.S. Dist. LEXIS 92389 (E.D.N.Y. Aug. 18, 2011).
[2] Other evidence suggests that Sasson and Blust are familiar with both the TSR and the types of allegations raised in this lawsuit. The amended complaint alleges that Sasson is a former employee of Legal Helpers Debt Resolution, LLC, a debt-relief firm that was sued and eventually shut down as a result of actions by the Attorneys General of various states. (Dkt. No. 249, pg. 22.) It was alleged that Legal Helpers charged unlawful up-front fees, failed to reduce consumers' debt as promised, and attempted to avoid advance-fee bans by recruiting attorneys to act as fronts for businesses. (*Id*.) The amended complaint further indicates that, in 2018, Blust entered into a stipulated judgment with the United States Bankruptcy Trustee for the District of Kansas regarding numerous violations of bankruptcy law arising from the scheme alleged in this complaint. (*Id*. at pg. 24) Blust is also a former attorney at Legal Helpers. (*Id*.)
[3] Defendant Sasson claims that the preliminary injunction bars him from participating in the business and seeks a stay of this portion of the order. (Dkt. No. 204-1 at 7.)  However, the preliminary injunction does not bar Sasson from involvement in the business if the receiver believes such involvement advisable. (Dkt. No.184 at 24-25.) Defendant Sasson does not claim that he has made any such a request to the receiver.

appeal only if the district court has abused its discretion." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987). Defendants identify no abuse of discretion in the Court's preliminary injunction decision to continue the appointment of a Receiver, relief which District Judge Vilardo also found warranted in granting the TRO. In fact, evidence submitted to this Court following entry of the TRO and the PI Decision tends to support the Court's finding that a receiver is necessary here to maintain the status quo and ensure compliance with the preliminary injunction.[4]

A receiver is "particularly necessary" where "it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste." *SEC v. First Fin. Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981). Defendants claim that a stay is warranted here because plaintiffs "failed to make any showing that the corporate assets will be subject to diversion or waste." (Dkt. No. 204-1 at 5.) This is incorrect. Plaintiffs provided evidence of diversion and concealment of assets in their motion for a preliminary injunction, which was expressly relied upon by the Court in determining that continuation of the receiver was necessary. (PI Dec. at 55) (*citing* Dkt. Nos. 4-5, 7-9.). For example, plaintiffs provided evidence that defendants have a track record of changing banks, making it difficult to find their assets. (Dkt. No. 5-1, pg. 39) Between March 2020 and April 2021, defendant Blust transferred $36,000,000 to an

---

[4] In a preliminary report filed on January 31, 2024, the receiver reported that relief defendant Lit Def Strategies, LLC, an entity owned and operated by defendant Blust that provided administrative support to the intervenor law firms, had "utterly failed to abide by any of its obligations in the TRO." (Dkt. No. 115-1, at 14.) On February 26, 2024, the receiver filed a motion for an order to show cause as to why Lit Def Strategies, LLC and Blust should not be held in civil contempt for failing to abide by the terms of the preliminary injunction. (Dkt. No. 179) While the Court has not yet issued a decision as to the contempt motion, the receiver alleges that Blust and Lit Def Strategies, either on their own or through Fidelis Legal Support Services LLC, another entity providing the same services, have continued to operate in violation of this Court's preliminary injunction order. (Dkt. Nos. 179, 212, 237)

irrevocable trust account, which plaintiffs submit makes it difficult to seize assets and satisfy judgments. (*Id.*) Plaintiffs also submitted evidence that defendants transferred large sums of money into private accounts, controlled or held by the individual defendants or their family members. (*Id.*) Thus, defendants are unlikely to show that the Court abused its discretion by continuing the appointment of the receiver.[5]

Defendants claim that the preliminary injunction should be stayed because they "have already committed to comply with this Court's interpretation of the applicable regulations, so the concern over advanced fees would be eliminated pending appeal." (Dkt. No. 207-1 at 3.) However, defendants' belated promise not to keep engaging in illegal activities—made only after they were found to have violated the TSR—provides no basis to stay injunctive relief. It is well established that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct," because "[t]he purpose of an injunction is to prevent future violations." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (citation omitted). Here, the Court has already determined that "absent a preliminary injunction, there is a likelihood that the harm will be repeated and will continue into the future." (PI Dec. at 48.) Having made this determination, "the grant of a stay of a preliminary injunction pending appeal will almost always be logically inconsistent with a prior finding of irreparable harm[.]" *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1998).

Defendants further argue that, absent a stay, they, as well as their consumer clients, will suffer irreparable harm. Defendants claim the receiver has essentially "shut

---

[5] Defendants also argue a receiver is unwarranted because "there was no evidence offered at the evidentiary hearing that defendants intended to violate the law." (Dkt. No. 204-1 at 5.) But as explained above, ignorance of the law is not a defense and plays no role in determining whether appointment of a receiver is warranted.

8

down the business" and that a continuation of the preliminary injunction will result in the loss of jobs and will leave unserved approximately 65,000 consumers already enrolled in defendants' debt-relief program. (Dkt. No. 204-1, at 6; Dkt. No. 207-1 at 3.) These concerns do not justify the continued operation of a business that the Court has found likely to be in violation of the law. (PI Dec. at 54.) Moreover, evidence presented during the preliminary injunction hearing showed that many consumers who enroll in defendants' debt relief program are negatively impacted, either because they do not complete the program or because they pay more money in fees than they save in the form of debt settlement or debt relief. (PI Dec. at 52-53) Indeed, the Court found "little evidence of an obvious and appreciable benefit to consumers enrolled in the debt-relief program, and [found] evidence that many consumers leave the program economically worse off than when they enrolled." (*Id*.) Thus, there is no reason to believe that granting a stay would

serve the public interest.[6]

## CONCLUSION

For the foregoing reasons, defendants' emergency motions for a stay pending appeal (Dkt. Nos. 204, 207, 218, 219, 225) are denied.

**SO ORDERED.**

Dated:   April 11, 2024
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge

---

[6] While the motion for a preliminary injunction and the related hearing focused on defendants' violation of the TSR by collecting advance fees, plaintiffs have raised additional claims of deceptive practices under the TSR in the underlying lawsuit. For example, the amended complaint alleges that Strategic employs third parties to mail letters to consumers claiming that they are approved for a debt-consolidation loan at an attractive interest rate. (Dkt. No. 249, pg. 60) Plaintiffs allege that there is no actual lender or pre-approval and that, when consumers call to inquire about the loan, they are encouraged to enroll in defendants' debt-relief services, which charges fees. (*Id.*) Plaintiffs also allege that, in marketing their debt-relief services to consumers, Strategic sales personnel routinely refer to their services as the "0% interest option." (*Id.* at pgs. 61-62) Plaintiffs allege that this constitutes a material misrepresentation because, while defendants do not charge "interest", they do, in fact, charge "exorbitant fees" *and* consumers continue to accrue interest on their outstanding debts while enrolled in defendants' program. (*Id.*) The amended complaint also alleges misleading conduct with regard to the intervenor law firms. When consumers enroll in defendants' debt-relief program, they are informed that one of the intervenor law firms will provide them with debt settlement and debt litigation services. (PI Dec. at 10) Plaintiffs allege that when consumers would attempt to call one of these law firms, their calls were routed to a non-lawyer Strategic employee who falsely held themselves out to be a representative of the law firm. (Dkt. No. 249, pgs. 28-29) It is also alleged that even though the retainer agreements signed by consumers with the intervenor law firms promised that consumers would be provided with a defense if sued by creditors, lawyers from the intervenor law firms almost never represented consumers in such lawsuits. (Dkt. No. 249, pgs. 28-29) Indeed, the receiver's January 31, 2024 report described Strategic as an "expansive sales and client services operation which contracts with a constantly rotating series of law firms controlled by Defendant Jason Blust." (Dkt. No. 115-1 at 6.) The receiver noted that consumers "are promised a 'national law firm' with specific expertise in dealing with creditors will represent them, but, in fact…there is almost no substantive attorney involvement in the debt settlement process." (*Id.*) The receiver noted that the structure of defendants' debt-relief program and use of intervenor law firms was "reliant upon misrepresentations about the Law Firms' roles in negotiations and settling of debts" and raised "serious questions of the unauthorized practice of law [and] fee splitting". (*Id.* at 45-49) Thus, the receiver could not recommend that defendants' "law firm model" of debt-relief could be operated lawfully. (*Id.*)