UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*,<br><br>　　　　　　Defendants, and<br><br>STRATEGIC ESOP, *et al.*,<br><br>　　　　　　Relief Defendants. | **CASE NO. 1:24-cv-00040-EAW-MJR**<br><br>**PLAINTIFFS' RESPONSE TO THE BLUST FAMILY IRREVOCABLE TRUST'S MOTION TO REQUIRE THE RECEIVER TO TAKE CERTAIN ACTIONS, MODIFY THE PI AND ALLOW THE TRUST TO PAY LEGAL FEES** |

Plaintiffs Consumer Financial Protection Bureau and the People of the State of New York, by Letitia James, Attorney General of the State of New York submit this Response in opposition to the motion of The Blust Family Irrevocable Trust ("Trust") to require the Receiver to take certain actions, modify the preliminary injunction, and allow the Trust to pay legal fees. (ECF No. 255, "Mot.")

## INTRODUCTION

On January 11, 2024, United State District Judge Lawrence J. Vilardo issued an *ex parte* temporary restraining order and, among other relief, appointed a Receiver to take over the business operations of Defendant StratFS and its affiliated entities (collectively, "Strategic"). (ECF No. 12, "TRO.") The Complaint named the Trust as a Relief Defendant, and the TRO froze the assets of all Defendants and Relief Defendants and appointed a Receiver with the authority to "[t]ake exclusive custody, control, and possession of all Assets, … under the control of, the Receivership Defendants, wherever situated." (TRO at 9, 12-13, 20.) The Trust is the

1

100% owner of Relief Defendant Lit Def Strategies, LLC ("Lit Def").  (ECF No. 231.)  Both the Trust and Lit Def are Receivership Defendants and are thus under the control of the Receiver.  The Receiver was directed to "[c]onserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to Consumers or to third-party creditors of the Receivership Defendants, including…. [p]reventing transfer, withdrawal, or misapplication of Assets."  (TRO at 22.)

The TRO directed the Receiver to "[o]pen one or more bank accounts in the Western District of New York as designated depositories for funds of the Receivership Defendants" and to "[m]aintain accurate records of all receipts and expenditures that the Receiver makes as Receiver."  (*Id.* at 23-24.)

On March 4, 2024, following a two-day evidentiary hearing and extensive briefing, United States Magistrate Judge Michael J. Roemer issued a fifty-five-page decision (ECF No. 183) granting Plaintiffs' motion for a preliminary injunction, and issued a Preliminary Injunction (ECF No. 184, "PI") continuing the appointment of the Receiver with the same duties as he had under the TRO.

The Receiver has opened an account with Bank of America, N.A. and has apparently moved Receivership Assets to that account, as directed and authorized by the TRO and the PI.

Now before this Court is the Trust's motion asking this Court to direct the Receiver to move any of the Trust's funds in the Receiver's Bank of America account to an account "located

2

in the Western District of New York," to modify the PI to prevent the Receiver from using any funds belonging to the Trust, and to release $100,000 to pay the Trust's counsel.

## ARGUMENT

*First,* the Trust's argument that the Receiver has failed to comply with the TRO and PI by holding funds in an account with Bank of America, a bank that undisputedly has branches in this judicial district, is frivolous.  The Trust's suggestion that it would be forced to "pursue remedies outside this District and before a different court" as a result of the "separate entity rule" (Mot. at 7-8), which applies to garnishers seeking attachment under state law as to a *foreign* bank account, is entirely unsupported.

*Second*, the Trust's request that the Court modify the PI to prohibit the Receiver from spending any of the Trust's money is entirely baseless.  Both Lit Def and the Trust are Receivership Defendants.  The Receiver needs to use funds held by the Receivership Defendants to continue the limited operations of those businesses.  Operating the Receivership is not without cost and the Trust has provided no basis as to why they are entitled to a free ride.

*Third*, the Trust's request for attorney's fees should be denied because the Trust's counsel has provided no facts to support its request, in contravention of accepted Second Circuit practice.  If this Court does decide to order funds released, it must first assess the reasonableness of the fee request and balance it against potential restitution claims.

**I. The Receiver's Decision to Open a Receivership Bank Account at Bank of America Is Consistent with the TRO and PI**

The Trust argues that the Receiver has failed to comply with the TRO and PI by opening a Receivership bank account at Bank of America.  The Trust's argument is factually and legally devoid of merit.

### A. The Trust Fails to Establish that the Receiver Violated the TRO or PI

As directed by the TRO, the Receiver opened a Receivership bank account with Bank of America, a bank with several branches in the Western District of New York. The Trust posits that because a wire transfer went to "BK AMER NYC" the funds must have left this judicial district. (Mot. at 10.) But, according to Bank of America, all U.S. domestic wire transfers clear though the bank's branch in NY, NY,[1] which has a telegraphic name of "BK AMER NYC." The fact that the wire transfer was cleared according to Bank of America's standard procedure does not constitute evidence that the funds are currently held in a bank outside this judicial district. The Trust's argument is thus devoid of factual support.

### B. New York's "separate entity rule" for attachment of foreign accounts is irrelevant

The Trust argues, without any basis, that the requirement that the Receiver open an account in this district is "a guardrail for the benefit of the Trust," due to the "separate entity rule." (Mot. at 10-11.) This argument fails at every level.

*First*, the Trust does not have a judgment against the Receiver and is not seeking attachment under the New York Civil Practice Law and Rules; therefore the separate entity rule has no application here.

*Second*, the "separate entity rule" applies to "bank branches in foreign countries" and the Court of Appeals has had "no occasion to address whether the separate entity rule has any application to domestic bank branches in New York or elsewhere in the United States." *Motorola v. Standard Bank*, 24 N.Y.3d 149, 159, n.2 (N.Y. Ct. App. 2014).[2] Subsequent case

---

[1] https://www.bankofamerica.com/deposits/wire-transfers-faqs/
[2] The fact that the Trust cited to *Motorola* without apprising the Court of its distinction between domestic and foreign bank accounts only highlights the lack of candor behind the Trust's argument.

4

law confirms that the separate entity rule only applies to foreign branches. *Matter of B&M Kingstone, LLC v. Mega Int'l Commercial Bank Co., Ltd.*, 15 N.Y.S.3d 318, 323 (N.Y. App. Div. 1st Dept. 2015) (separate entity rule applies "solely with respect to restraining notices and turnover orders affecting assets located in foreign branch accounts.").

*Third*, while the Trust cites "to a parade of horribles from which it will have no remedy," (Mot. at 13) none of these concerns are substantiated. The Trust bemoans that it may have to pursue remedies outside this District. As an initial matter this is false since the Receiver is an agent of the Court and the Court clearly has jurisdiction over the Receiver and the Receivership estate. And even if it were true, having to pursue litigation in New York City is not the same as having to pursue litigation in a foreign county. Indeed, the Trust's attorneys are located in New York City. (Mot. at 18.)

## II. The Trust's Request to Modify the PI to Prevent the Use of any Trust Assets Should Be Denied

The Trust argues, without any legal support, that "it is inappropriate for the Receiver to spend a single dollar of the Trust Funds," until it is clear such funds are needed to satisfy a judgment. (Mot. at 12.) This boldly wrong claim demonstrates a fundamental misapprehension about how receiverships work. If a temporary receiver—who is typically discharged after judgment—could not use any funds of the receivership estate until after such judgment, no receivership would ever be viable. That is perhaps why the Trust provides no legal authority to support its argument.

Both the Trust and its wholly owned subsidiary Lit Def are Receivership Defendants. The Receiver is managing the affairs of the Receivership Defendants and determining how to handle and resolve multiple competing claims, as authorized and directed by the Court in the TRO and the PI. Indeed, at the same time as the Trust has filed its motion asking that the Court

5

prevent the Receiver from using *any* of its money, the intervenor law firms have contemporaneously asked that the Receiver increase the services being provided by the Receivership Defendants.  (ECF No. 225.)  Operating a business costs money.  The Trust has provided no cogent argument as to why its assets should not properly be used to fund the operations of the Receivership.

"[R]eceivers, just like corporate directors, are entitled to the deference of the business judgment rule in their decision-making concerning the management of a corporation." *Golden Pac. Bancorp v. F.D.I.C.*, No. 95 CIV. 9281 (NRB), 2002 WL 31875395, at *8–9 (S.D.N.Y. Dec. 26, 2002), *aff'd sub nom. Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2d Cir. 2004) (citing *Citibank, N.A. v. Nyland (CF8), Ltd.,* No. 86 Civ. 9181(WK), 1990 U.S. Dist. LEXIS 12338, at *8 (S.D.N.Y. Sept. 19, 1990)).  The Trust has provided no argument that would call into question the Receiver's exercise of his business judgment regarding how to use the limited assets of the Receivership estate.

Granting the Trust's motion would effectively remove the Trust and Lit Def from the Receivership and switch them to solely an asset freeze posture.  But this issue has already been litigated and resolved by the Court's preliminary injunction decision, and the Trust provides no basis for reconsideration.  (ECF No. 183).

The Trust claims that two "new facts" warrant reconsideration.  First, the Trust claims the Trusts' current trustee is "Paul Hull" instead of "Donald Holmgren" (the prior trustee). (Mot. at 15.)  But the fact that the trustee changed is entirely irrelevant.  Second, the Trust argues that the Receiver violated the TRO and PI, but as explained above, the Trust's argument in that regard is frivolous.

Finally, while the Trust argues that it is not "accused of wrongdoing," (Mot. at 14) the Trust misses the point that the Trust is simply a mechanism for Jason Blust—who indisputably is accused of wrongdoing—to hide and protect his ill-gotten gains.  Indeed, in seeking a TRO and PI, Plaintiffs argued that the Trust "received ill-gotten funds and they lack a legitimate claim to those funds."  (ECF No. 5-1 at 44.)  The Court credited this evidence when granting preliminary equitable relief as to the Receivership Defendants.  (ECF No. 183 at 54.)

The Trust's motion to modify the PI should be denied.

**III.**   **The Trust's Request for Attorneys' Fees Is Unsupported and Should Be Denied**

*A.  The Trust's Unsupported Request for Attorneys' Fees Should Be Denied*

Plaintiffs have no objection to the Trust's counsel being paid appropriate attorneys' fees.  Indeed, on March 1, 2024, shortly after the Trust retained its current counsel, Plaintiffs consented to the release of a $50,000 retainer for legal fees.  (ECF No. 255-7 at 3-4.)

On March 13, 2024, the Trust filed a one-sentence Notice of Appeal as to the preliminary injunction.  (ECF. No. 203.)  Having made no court appearances or other filings in this matter and having been retained after the preliminary injunction hearing concluded, counsel for the Trust asked Plaintiffs to unfreeze an additional $50,000.  (ECF No. 255-7 at 3.)  The next day, Plaintiffs asked the Trust's counsel to provide redacted billing statements to reflect the work done to earn $50,000.  (*Id.*)  Counsel for the Trust refused to provide the requested documentation.  Plaintiffs then asked the Trust for some form of "substantiation for your request."  (*Id*. at 2.)  Instead of providing any substantiation, the Trust instead filed this motion asking the Court to release $100,000 from the Trust's frozen funds for attorneys' fees.

To date, the evidence on the record demonstrates that the Trust's counsel has filed a notice of appearance, filed and been granted an application to appear *pro hac vice*, filed an

7

appeal with the Second Circuit (but did not join other Defendants' motion to expedite that appeal), and filed the instant motion. It is it not readily apparent what, if any, other legal work has been performed by the Trust's counsel.

Given this record, Plaintiffs' request for redacted billing statements is entirely appropriate. The Trust claims that "[n]o adversary in a litigation has this type of insight into its adversary's deliberations." (Mot. at 14.) The Trust is mistaken.

*First*, other counsel in this case—who have been in this case since its beginning and who actively participated in the PI hearing—have willingly submitted redacted invoices to Plaintiffs when requesting the release of fees.

*Second*, contrary to the Trust's assertion otherwise, this practice routinely occurs in similar contexts. Rule 2016 of the Federal Rules of Bankruptcy Procedure requires any entity seeking compensation from the bankruptcy estate to file "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." This includes attorneys for the debtor, trustee, creditors' committee, and similar entities paid out of the estate. The Trust's counsel is familiar with this process, having publicly filed attorneys' fee applications in bankruptcy court. *In re Absolut Center for Nursing & Rehabilitation at Allegany LLC*, 8-18-76260, ECF No. 614 (Bankr. E.D.N.Y. June 19, 2020) (attorney fee application for Loeb & Loeb LLP, including fee request for work done by Evan Farber, Trust's current counsel). Such "prior public disclosures of Plaintiff's billing rates diminishes the claimed need for confidentiality in this case." *King & Spalding, LLP v. U.S. Dep't of HHS*, No. 1:16-cv-01616 (APM), 2020 U.S. Dist. LEXIS 60949, at *7 (D.D.C. Apr. 7, 2020). And even outside of the bankruptcy context, "attorney billing records are routinely filed on the public record." *Id*. Here, Plaintiffs are not requesting that the Trust's counsel's invoices be publicly filed; they are merely asking that

Plaintiffs be permitted to review redacted invoices, or some type of substantiation, for the Trusts' requested fees.

Far from revealing a litigation strategy, billing statements simply confirm that a reasonable number of hours was expended on the given tasks, that attorneys are not billing at attorney rates for paralegal or administrative tasks, and that the hourly rates are reasonable given the experience of the counsel involved. These concerns are important here, given that there are limited funds available for restitution, and the potential restitution owed by Defendants in this case is significant. (ECF No. 183 at 12, noting that consumers paid over $104,000,000 in advance fees.) Plaintiffs have provided evidence that Defendant Jason Blust transferred a substantial amount of these ill-gotten funds to the Trust, which is a Receivership Defendant. Plaintiffs are obliged to ensure that this limited pool of potential restitution funds is wisely spent.

Instead of attempting to work with Plaintiffs on an acceptable form of substantiation, the Trust's counsel ran to the Court, filing the instant motion for emergency relief. Despite the fact that there is no emergency here, the Trust attempted to proceed by order to show cause, in an attempt to jump the line, deeming its concerns about the "location" of the Bank of America account and its request for an immediate $100,000 in fees to be more worthy of the Court's attention than, for example, a motion for a finding of contempt against the Trust's founder, the Receiver's identification of a previously unknown entity carrying on the work of one of the Relief Defendants in possible violation of the TRO and PI, and numerous other motions asking the Court to modify the Preliminary Injunction so other Defendants can obtain funds or direct the Receiver's actions.

The instant motion by the Trust is a waste of the Trust's resources and the Court's time. It should be denied.

### B. *If this Court Decides to Grant the Trust's Motion for Attorneys' Fees, Plaintiffs Ask It to Consider the Reasonableness of the Fee Requests*

Given that the Trust seeks attorneys' fees from the Receivership estate, someone must review the reasonableness of this request, whether Plaintiffs, the Receiver, or the Court. If the Court decides to grant the Trust's motion, it should do so only after reviewing substantiation of the Trusts' requested fees. "Generally, 'courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *United States v. Herbster*, No. 6:19-CV-06455 EAW, 2024 WL 1287687, at *4 (W.D.N.Y. Mar. 27, 2024) (quoting *Nationstar Mortg. LLC v. Nedza*, 315 F. Supp. 3d 707, 713 (W.D.N.Y. 2018)).

Plaintiffs ask that the Court assess the reasonableness of the fee request in the context of this case, including "whether the release of attorney's fees could strip the Court of its ability to fashion an appropriate remedy, such as restitution to the victims, in the event that Plaintiffs are successful in its prosecution of this action." *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, No. 15-CV-6S, 2018 WL 2120139, at *1 (W.D.N.Y. May 8, 2018). The Trust asserts that the amount it is requesting is a small fraction of the Trust's total assets. (ECF No. 255-1 at 18.) But the Trust totally avoids the question of the significant consumer restitution $100,000 might represent. The Court should keep this equitable consideration in mind as it assesses the reasonableness of the Trust's request.

## CONCLUSION

Given the foregoing, the Court should deny the Trust's motion in all respects.

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

ERIC HALPERIN
Enforcement Director

RICHA SHYAM DASGUPTA
Deputy Enforcement Director

TIMOTHY M. BELSAN
Assistant Litigation Deputy

/s/ Vanessa Buchko
Vanessa Buchko
E-mail: vanessa.buchko@cfpb.gov
Phone: 202-435-9593
Monika Moore
E-mail: monika.moore@cfpb.gov
Phone: 202-360-5905
Joseph Sanders
E-mail: joseph.sanders@cfpb.gov
Phone: 202-377-9846
Shirley Chiu
E-mail: shirley.chiu@cfpb.gov
Phone: 202-435-7592
1700 G Street, NW
Washington, DC 20552
Facsimile: (202) 435-7722

And

LETITIA JAMES
Attorney General of the State of New York

/s/ Christopher L. Boyd
Christopher L. Boyd
Genevieve S. Rados
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Phone: (716) 853-8457
Email: Christopher.Boyd@ag.ny.gov