

April 15, 2024

Hon. Michael J. Roemer
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

>       Re:     Consumer Financial Protection Bureau, et al. v. StratFS, LLC, et al.
>               Case No. 24-cv-40

Dear Judge Roemer:

The Strategic Defendants submit this letter in opposition to the Receiver's First Interim Application for an Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 241). As the Court is aware, § IX(N) of both the Temporary Restraining Order (Dkt. 12, "TRO") and the Preliminary Injunction Order (Dkt. 184) directs the Receiver to "[c]ontinue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business *profitably* and lawfully[.]" (emphasis added). Since the Court entered the TRO on January 11, 2024, the Receiver has utterly failed to comply with his mandate. The Receiver's fee application (Dkt. 241) should be reduced accordingly. *See Sec. & Exch. Comm'n v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (citing *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) ("The Court considers several factors in determining a reasonable fee, including … [inter alia] the quality of the work performed …"); *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir. 1952) ("the considerations are … [inter alia] results obtained.").

The Receiver has not even attempted to conduct the business profitably. Rather, as the Strategic Defendants and Intervening Law Firms have argued repeatedly, (*see, e.g.*, Dkts. 68, 124, 143, 225, 276, 279), the Receiver has done everything in his power to shutter Strategic's operations and torpedo the relationship between Strategic and the Law Firms. Indeed, immediately after the Court entered the TRO, the Receiver entered Strategic's facility, unplugged the servers, sent all employees home, and shut down all services to the Law Firms and their respective clients. The Receiver kept the Strategic entities completely dormant for *eleven days.* During this time, over 22,000 client calls and 27,000 email requests went completely unanswered. (*See* Dkt. 124 at p. 2.) The Law Firms and their clients were thrown into chaos without the back-office support. After Strategic and the Law Firms pointed out the harm that would befall consumers if the shutdown continued, the Receiver finally agreed to allow a 76-person "skeleton staff" to operate within Strategic and provide some limited services to the Law Firms. (*See* Dkt. 68 at p. 2.) However, that "skeleton staff" was nowhere near sufficient, and mail piled up, emails went unanswered, and law firm clients experienced six-plus hour telephonic hold times. Relatedly, on January 23, 2024, the Receiver posted a notice on his website that effectively fired 900 employees and further demonstrated his lack of willingness to ensure adequate service to existing clients. During the last week of January, telephone hold times continued to exceed 5 hours (and, in some cases, over 7 hours) and the backlog of

**Dennis C. Vacco** | Partner | dvacco@lippes.com

50 Fountain Plaza, Suite 1700, Buffalo, NY 14202   **Phone:** 716.853.5100   **Fax:** 716.853.5199   **lippes.com**

New York: Albany, Buffalo, Clarence, Long Island, New York City, Rochester, Saratoga Springs  //  **Florida:** Jacksonville  //  **Illinois:** Chicago
**Ohio:** Cleveland  //  **Oklahoma:** Oklahoma City  //  **Ontario:** Greater Toronto Area  //  **Texas:** San Antonio  //  **Washington,** D.C.



unprocessed mail continued to grow – to the tune of nearly 42,000 unprocessed documents. Accordingly, on February 4, 2024, Defendants submitted a letter response to the Receiver's Report to the Court. (Dkt. 124.) Therein, Defendants noted those backlogs and advised the Court that the Law Firms' clients were complaining about the lack of service in large numbers. (Dkt. 124 at pp. 3-4.) Defendants also advised the Court that the Receiver had refused to provide the Law Firms with access to Strategic's systems (an item of little-to-no cost) that would allow the Law Firms to negotiate, review and approve settlement payments and litigation processing. (Dkt. 124.) Undeterred, the Receiver remained steadfast in his refusals. Moreover, the Receiver shut down two businesses that had nothing to do with advance fees, thereby accelerating company losses.  At present, tens of thousands of clients continue to hang in the balance while mail piles up, telephone calls go unanswered, potential settlements are lost, and creditors bring lawsuits against consumers.  As set forth in Strategic's recent motion to show cause (Dkt. 276), the Receiver has failed to implement a conversion plan that would restore vital services to clients and substantially increase cash flow and profitability. Stated plainly, Strategic has not been run profitably and the quality of the Receiver's work has been abysmal.

Despite his dereliction of duty, the Receiver makes an application for exorbitant fees, which the Court should reduce by at least 25% to account for the poor quality of work. See *In re Alpha Telecom*, 2013 WL 840065 at * 19 (D. Or. Mar. 6, 2013) (reducing receiver and counsel fees by 25% due to "meager result ultimately obtained in this matter."), thereby reducing the total paid to Regulatory Resolutions and McNamara Smith LLP – both entities seemingly controlled by Thomas McNamara – to **$262,357.13** ($349,809.50 * 75%) and **$201,217.13** (($246,205.50 + $22,084.00) * 75%) respectively. *See S.E.C. v. Beyers,* 590 F.Supp.2d 637, 648 (S.D.N.Y. 2008) ("[T]he results achieved and benefit to the receivership estate are critical factors that a court must consider in setting a fee award.").

Furthermore, this Court should reject all requests for expenses associated with travel.  Strategic should not be held financially responsible because the Government elected to hire a California-based Receiver.  Accordingly, all flights, Ubers, and other "accommodations" (many of these appear to be meals) should not be reimbursed.  Attached as Exhibit A is a chart of all expenses that do not appear to be associated with the Receiver's travel; the remainder should *not* be paid by Strategic.  If the Receiver is only reimbursed for these legitimate expenses unassociated with travel, the Receiver's fee application for disbursements will be reduced to **$14,265.94** for Regulatory Resolutions and **$485.41** for McNamara Smith LLP.

We thank the Court for its thoughtful consideration in this matter.

Respectfully,

Dennis C. Vacco



cc:     Christopher.boyd@ny.ag.gov
vanessa.buchko@cfpb.gov
monika.moore@cfpb.gov
joseph.sanders@cfpb.gov
kevin.burns@coag.gov
marion.quirk@delaware.gov
kevin.kevitsky@delaware.gov
greg.grzeskiewicz@ilag.gov
Daniel.edelstein@ilag.gov
Amanda.bacoyanis@ilag.gov
Mattew.davies@ilag.gov
Evan.romanoff@ag.state.mn.us
lweaver@ncdoj.gov
beilinlw@doj.state.wi.us