UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*,<br><br>                    Defendants, and<br><br>STRATEGIC ESOP, *et al.*,<br><br>                  Relief Defendants. | No. 24-cv-40-EAW-MJR |

**THE BLUST FAMILY 2019 IRREVOCABLE TRUST'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
(1) REQUIRE RECEIVER TO COMPLY WITH PRELIMINARY INJUNCTION;
(2) MODIFY PRELIMINARY INJUNCTION; AND
<u>(3) ALLOW THE TRUST TO PAY LEGAL FEES TO ITS CHOSEN COUNSEL</u>**

LOEB & LOEB LLP
Evan K. Farber (admitted *pro hac vice*)
Noah Weingarten
345 Park Avenue
New York, New York 10154
Tel.: 212-407-4000
efarber@loeb.com
nweingarten@loeb.com

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    The Court should require the Receiver to comply with the PI. .............................3

        A.    The Receiver admitted to violating the TRO and PI; the Government cannot pick and choose what provisions of the PI it wants to comply with. .......................................................................3

        B.    The Oppositions' excuses should be rejected. .............................................4

            i.    The Trust's argument is not frivolous when bank records appear to indicate that the Trust's funds are in New York when, in reality, they are held in California. ..........................4

            ii.    It does not matter that the funds can be accessed within the Western District. .........................................................................5

            iii.    The boilerplate webpage that the Government and Receiver cite does not say what they represent it says and, in any event, it is completely irrelevant to whether the Receiver violated the TRO and PI. ............................................5

            iv.    The separate entity rule is applicable. ..............................................6

    II.    The Court should preserve the status quo and prevent the Receiver from taking or using any further Trust funds until further Order of the Court. ................7

        A.    The Trust is not Jason Blust; it is a separate entity that has done nothing wrong. ................................................................................7

        B.    Neither Opposition identifies any prejudice; the Receiver is holding more than sufficient assets to operate the other Defendants' businesses even without the Trust's funds. .............................9

    III.    The Court should modify the PI to unfreeze assets so the Trust can pay the Trust's lawyers. .................................................................................................9

        A.    The Government provides absolutely no support for its power grab. ...............................................................................................10

        B.    The Government cites irrelevant authority to cover up for its lack of authority to support its demand for Loeb's legal bills. .................10

      C.      The Government's requirement that Loeb's work be "readily apparent" to justify payment proves the Trust's point. ............................... 11

      D.      The Government's argument against the Trust paying its fees is a clear double standard. ............................................................................. 12

CONCLUSION ................................................................................................................. 13

Relief Defendant The Blust Family 2019 Irrevocable Trust, incorrectly sued herein as the Blust Family Irrevocable Trust (the "Trust"), respectfully submits this reply memorandum of law in further support of its Motion to (1) Require Receiver to Comply with Preliminary Injunction; (2) Modify Preliminary Injunction; and (3) Allow the Trust to Pay Legal Fees to its Chosen Counsel (Dkt. No. 255) (the "Motion"), and in response to the Government's Opposition (Dkt. No. 288) (the "Gov't Opp.") and the Receiver's Opposition (Dkt. No. 296) (the "Receiver Opp.," and together with the Gov't Opp., the "Oppositions").[1]

## PRELIMINARY STATEMENT

The audacity of the Oppositions is breathtaking. In one breath, the Government asserts that the Trust's arguments are somehow "devoid of merit," not "cogent," "frivolous," and "a waste of the Trust's resources and the Court's time." Gov't Opp. 3, 6, 9. The Receiver similarly calls the Motion "frivolous" and concludes that "[t]he Trust wrongly concludes that the Receiver failed to comply with the Preliminary Injunction because the Trust's funds were supposedly transferred outside this District." Receiver Opp. 2, 3. But in the next breath, the Receiver admits to depositing the Trust's funds in an account in San Diego, California – a plain, unquestionable violation of the PI. The Court should see through the Oppositions' over-the-top rhetoric and determine that the relief sought in the Motion is completely reasonable and warranted under the circumstances.

Setting aside the Oppositions' invective, the following points are crystal clear and mandate granting the relief sought in the Motion:

---

[1] While Local Rule 7(a)(2)(C) permits reply briefs up to 10 pages, the Trust is responding to two separate opposition briefs from the Government and Receiver. Accordingly, the Trust should be permitted 20 pages to respond. Nevertheless, the Trust is responding to both Oppositions in 13 pages.

- The Receiver has admitted to depositing the Trust's funds in a bank account in San Diego, California – ***not in this District***, as the TRO and the PI plainly required. This is not a frivolous challenge. The Government and Receiver do not get to choose which provisions of this Court's Order that they may comply with.

- The Oppositions do not contest the fact that the Trust has done absolutely nothing wrong and no party has accused it of any wrongdoing. This is highly meaningful. The Trust is a completely separate entity from Jason Blust and the other Defendants. Indeed, the Government itself acknowledged this distinction by naming the Trust as a relief defendant while naming Mr. Blust as a defendant. The Government cannot now paint the Trust and other Defendants with the same brush when it benefits the Receiver to retain the Trust's funds. As a separate party that has done absolutely nothing wrong, the Trust's assets should not be used to pay the other Defendants' bills.

- Neither Opposition asserts any prejudice beyond the generalized statement that running a business costs money. But even setting aside the Trust's assets, the Receiver has over $7 million in funds, which is more than sufficient to run the other Defendants' business. Indeed, if the Receiver were to burn through that much money, the Receiver would cause the very prejudice to consumers that the Plaintiffs complain of in releasing a mere $100,000 to the Trust's lawyers.

- The Oppositions cite absolutely no authority from the TRO or the PI that gives the Government the authority to review the Trust's legal bills and approve of them – because there is none. To back up this naked – and unsupported – power grab, the Government cites completely irrelevant Bankruptcy rules where the ***Court*** rules on fee applications, not parties that are adverse to the fee applicant.

2

- While the Government accuses the Trust of attempting to relitigate the PI, that is exactly what the Government is trying to do by giving itself new and expanded powers that it failed to include when it sought and obtained the PI. The Government submitted the TRO and the PI, and could have included anything it wanted. It did not include the power to review and approve of the Trust's legal fees. The Government does not get a "do over" as it now apparently seeks.

- While the Government argues that releasing $100,000 "totally avoids the question of the significant consumer restitution $100,000 might represent," Gov't Opp. 10, the Oppositions completely dodge the blatant double standard of the Receiver seeking over ten times that amount, which also could be used for "significant consumer restitution." Yet, the Government does not oppose the Receiver's fees even though they clearly includes "fat," like "waiting . . . in nearby hotel lobby" that could also be used to pay consumers.

All of the foregoing makes clear that the Receiver's authority to continue using Trust assets should be suspended and the Trust should be able to pay its lawyers. All of this is completely practical and reasonable. The Trust requests that the Court overrule the Objections and grant the Motion in its entirety.

## ARGUMENT

**I. The Court should require the Receiver to comply with the PI.**

    **A. The Receiver admitted to violating the TRO and PI; the Government cannot pick and choose what provisions of the PI it wants to comply with.**

In the Motion (pp. 5-7), the Trust argued that the Receiver violated Section IX(P) of the TRO and PI by making transfers of Trust Funds to bank accounts that the Receiver refuses to disclose, but which appear to be outside this District.

In his Opposition, the Receiver openly admitted that the Trust was correct. Specifically, the Receiver admitted that instead of opening an account in this District and depositing the funds

in that account, as the PI required him to do, he opened an account in San Diego, California – across the country – and placed the funds into that account. Receiver Opp. 3; *see also Declaration of Thomas W. McNamara in Opposition to Motion to Intervene* (Dkt. No. 296-1), ¶ 5.

But Section IX(P) of the TRO and PI could not have been clearer: the Receiver may "[o]pen one or more bank accounts in the **Western District of New York**" and he "**shall** deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s)." (Emphasis added).

      **B.**    **The Oppositions' excuses should be rejected.**

The Oppositions deploy several excuses to try to misdirect the Court from the Receiver's violation. None hold any water and this Court should conclude that they are a complete distraction from the Receiver's violation.

        **i.**    *The Trust's argument is not frivolous when bank records appear to indicate that the Trust's funds are in New York when, in reality, they are held in California.*

The Government and Receiver attempt to downplay the Receiver's failure to comply with the Court's Order by labeling the Trust's argument as "frivolous," Receiver Opp. 3, and "factually and legally devoid of merit." Gov't Opp. 3. But how could seeking compliance with a Court Order be called frivolous? The Receiver similarly asserts that it "has complied with the Court's Preliminary Injunction," Receiver Opp. 3, immediately after acknowledging that it deposited the Trust's funds in an account in California – a blatant violation of the PI. How could the Receiver possibly assert this with a straight face? The Government and Receiver cannot pick and choose what provisions of the PI to enforce and what they want to disregard. They must comply with every single provision, just as all the other parties.

The funds transfer documents indicate the funds went to "BK AMER NYC," which would imply that the funds went to New York City. The Oppositions contend that the Motion is frivolous

4

because the account was not actually opened there. To the contrary of being frivolous, it should be worrisome to the Court that it was not clear based on the face of the bank documents where the Receiver was housing the Trust's funds, and it took a motion for the Receiver to finally acknowledge where the funds were actually sent. This Court should not dismiss as "frivolous" a request to comply with its Order.

> ii. *It does not matter that the funds can be accessed within the Western District.*

The Receiver argues that the Receiver argues that "the funds are readily available within the Western District." Receiver Opp. 3. That completely misses the point. The Court required that the funds be placed into an account in this District. Not an account in California. Not in a bank where funds could be accessed in this District. Here. **The Receiver did not do that.** That is the end of the story. Otherwise, the Receiver's argument – that it is sufficient that funds are accessible through this District – reads Section IX(P)'s requirement completely out of the TRO and PI and renders them meaningless. But the Court meant what it said: the funds must be deposited in an account in this District. The Receiver did not do that. Everything else is irrelevant.

> iii. *The boilerplate webpage that the Government and Receiver cite does not say what they represent it says and, in any event, it is completely irrelevant to whether the Receiver violated the TRO and PI.*

Next, the Government and Receiver point to a boilerplate webpage from Bank America's website for the proposition that "according to Bank of America, all U.S. domestic wire transfers clear though the bank's branch in NY, NY." Gov't Opp. 4; Receiver Opp. 3 (citing https://www.bankofamerica.com/deposits/wire-transfers-faqs/). This argument fails.

First, that webpage does not say what the Government and Receiver represent what it says. The webpage simply does not say that all wires whatsoever within Bank of America filter through New York City. The words "BK AMER NYC'" do not appear on this page despite the

5

Government representing to this Court that Bank of America filters money under the "telegraphic name . . . 'BK AMR NYC.'" Gov't Opp. 4.

Second, the point is completely irrelevant. It does not matter that money clears through New York City. The Court's Order says that the money had to be deposited into a bank account in this District. The fact that the account was opened in San Diego rather than New York City does not somehow improve the Receiver's actions. Either is a violation of the TRO and PI.

### iv.     *The separate entity rule is applicable.*

The Oppositions argue that the separate entity rule is somehow not applicable because case law allegedly "confirms that the separate entity rule only applies to foreign branches." Gov't Opp. 4-5. That is false. New York courts – including in cases after *Motorola v. Standard Bank*, 24 N.Y.3d 149, 159, n.2 (N.Y. 2014), upon which the Oppositions principally rely – find that the separate entity rule bars attachment of a bank account located either in a foreign state or a foreign country by serving a local and unrelated branch within the State of New York.[2]

In *National Union Fire Ins. Co. v. Advanced Employee Concepts, Inc.*, 269 A.D.2d 101 (1st Dep't 2000), the First Department affirmed the vacatur of a restraining notice on a bank, because New York courts lacked jurisdiction over a Florida bank branch and service on the New York branch was ineffective to reach the accounts at the bank's Florida branch. The First Department observed that "the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch." *Id.* at 101. That is exactly the case here.

---

[2] We understand the Oppositions to be expressing a waiver of any future arguments based on the separate entity rule, which we appreciate. But Bank of America (or any other banks) are not bound by that waiver, and the possibility of their assertion of this defense renders the Government's and the Receiver's waiver of limited utility.

*HFH Capital LLC v. Simon*, No. 511913/2022, 2022 N.Y. Misc. LEXIS 8391 (Kings Cnty. Dec. 20, 2022), involved similar facts as the instant case and also involves Bank of America. There the court denied a motion to turn over funds in a Bank of America account in Florida and cited the separate entity rule. The court concluded: "in this matter, it is . . . clear that the account which Petitioner seeks to attach is in Florida. The mere fact that a restraining notice was served on a branch of a Bank of America within New York is insufficient to render accounts outside of New York subject to attachment." *Id.* at *8. That is exactly the case here. A restraining notice on Bank of America in New York would be potentially useless to restrain the Receiver's secret bank account in California.

The separate entity rule is a real obstacle in the event that the Trust needs to claw back funds. The TRO and PI's requirement that the funds be held in this District was clearly intended to be a guardrail to eliminate that obstacle altogether. The Receiver violated that guardrail, which is to the Trust's detriment in light of the vitality of the separate entity rule. For this reason, the Court should compel the Receiver to comply with the PI.

**II.     The Court should preserve the status quo and prevent the Receiver from taking or using any further Trust funds until further Order of the Court.**

   **A.     The Trust is not Jason Blust; it is a separate entity that has done nothing wrong.**

The Government argues that the Trust has purportedly "provided no cogent argument as to why its assets should not properly be used to fund the operations of the Receivership." Gov't Opp. 6. Just because the Government does not agree with the Trust's argument does not mean that the Trust's arguments are not cogent. The argument is simple: the Trust's assets should not be used to fund the operations of the other Defendants' business because the Trust has been accused of no wrongdoing, is completely separate from the other Defendants, and therefore, it should not

7

have to pay creditors of other Defendants that the Trust itself does not owe, unless and until the Court determines that the Defendants are liable and the Trust is holding ill-gotten funds.

The Government has never contested that the Trust is run by an independent trustee who has done nothing wrong – nor does it contest that now in its Opposition. That is highly meaningful because it demonstrates that the Trust is completely separate from Jason Blust and the other Defendants. The Government itself acknowledged this distinction by naming Mr. Blust as a defendant while naming the Trust as a relief defendant and then not contesting the Trust's lack of wrongdoing.

The Court should treat the Trust as a separate entity. The practical application of treating the Trust independently is that the Receiver should not be given *carte blanche* to use Trust assets – *i.e.*, the assets of a non-wrongdoer – to run a business completely divorced from the Trust and which has absolutely no connection to the Trust. In this regard, the Trust incorporates by reference the arguments and authorities advanced in its Memorandum of Law in Partial Opposition to Receiver's First Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. No. 295) (the "Fee App. Opp."). In particular, the Trust expressly incorporates its argument made in the Fee App. Opp. that it would inequitable to allow the Trust's funds to be paid to creditors that the Trust does not owe absent findings that (1) such funds are owed and that (2) the Trust is holding ill-gotten gains. *Id.* at 6-7. As the Fee App. Opp. further sets forth, allowing the Receiver to use Trust funds before such findings are made would violate the law and of this Court's authority in other ways as well. *See id*. at 8-10.

For these reasons, the Court should preserve the status quo and remove the Receiver's authority to use Trust assets.

> **B.  Neither Opposition identifies any prejudice; the Receiver is holding more than sufficient assets to operate the other Defendants' businesses even without the Trust's funds.**

The Motion argues that there would be no prejudice to removing the Receiver's authority to spend Trust assets, and the goals of the PI would not be at all inhibited, since the asset freeze against the Trust would equally remain in place.  The Government does not directly respond to this argument.  Indeed, the word "prejudice" does not even appear in its papers a single time.  The Receiver makes only vague and conclusory assertions that the removal of his authority would cause prejudice to the Plaintiffs "and consumers."  Receiver Opp. 8.  But the Receiver falls to actually show, or even describe or detail, any such prejudice, beyond this conclusory and self-serving statement.

The Trust presumes that the Government and Receiver intend to rely on the availability of fewer funds to pay for the other Defendants' operations as a form of alleged prejudice.  But that argument easily collapses.  According to the Receiver's own report to the Court, there is over $7.17 million in various frozen bank accounts under the Receiver's control.  Dkt. No. 115, p. 12-13.  Even if the Receiver's fee application were granted, the Receiver would still have over $6 million on hand to operate the other entities, plus whatever funds it could generate if it were to operate the businesses profitably.  The Receiver should not need to burn through that sum.  The consumption of $6 million for the Receiver's operational purposes would be the very prejudice to consumers that the Receiver complains of.

**III.  The Court should modify the PI to unfreeze assets so the Trust can pay the Trust's lawyers.**

The Motion argues that the Government is not entitled to review the Trust's legal bills as a precondition for payment.  The Government largely talks past this point and *presumes* that it *is*

9

entitled to this backup and that it should be the final decisionmaker concerning the Trust's legal bills.  The Government's arguments should be rejected for numerous reasons.

### A. The Government provides absolutely no support for its power grab.

The Government admits that it wants to see Loeb's legal bills to "confirm that a reasonable number of hours was expended on the given tasks, that attorneys are not billing at attorney rates for paralegal or administrative tasks, and that the hourly rates are reasonable given the experience of the counsel involved."  Gov't Opp. 9.

Yet, the Government glaringly cites no authority giving it the authority to decide whether the Trust can pay its lawyers – or even the authority to object to the scope of work the Trust's lawyers have undertaken.  Nothing.  The Government does not cite to a single provision in the TRO or PI that gives it that authority.  The Government submitted the TRO to the Court, which the Court largely continued in the PI.  The TRO could have included any thing that the Government wanted, including a provision granting it authority to review the parties' legal fees.  But the TRO and the PI do not say that.  They certainly do not grant the Government that authority.  The Government should not get a "do-over" when it never even sought this type of authority from the Court in the first place, and only seeks such authority by way of opposition to a motion.

### B. The Government cites irrelevant authority to cover up for its lack of authority to support its demand for Loeb's legal bills.

The Government argues by analogy to Bankruptcy Rule 2019 that the Trust should be required to disclose its legal bills as certain parties would have to in a bankruptcy context.  But as the Government should know, in bankruptcy, the ***Court*** decides to approve fee applications – not the adverse parties to the fee application.  *See* 11 U.S.C. § 330.  The Government's arguments falls apart because not even in the bankruptcy context that the Government relies upon would the Government be empowered to decide whether Loeb's fees should be paid.  However, here, the

Government is seeking to take that role upon itself.  And in bankruptcy, the authority of other parties to object to a fee application is well established – unlike here, where it has no basis whatsoever.  Thus, the Government's analogy is meritless.

### C. The Government's requirement that Loeb's work be "readily apparent" to justify payment proves the Trust's point.

The Government attempts to justify its unauthorized power grab as merely seeking "some type of substantiation" for Loeb's legal bills and that is "[f]ar from revealing a litigation strategy." Gov't Opp. 8.  But that is highly misleading.  The Government really seeks far more invasive disclosure.

The Government points to the quantity of the Trust's court filings and argues that "[i]t is not readily apparent" to the Government what legal work Loeb has done on the Trust's behalf. Gov't Opp. 8.  The fact that Loeb's work needs to be "readily apparent" to the Government to justify payment proves the Trust's point that it would have to disclose litigation strategy in order to satisfy the Government.

Not all of Loeb's work on the Trust's behalf is reflected in court filings, and Loeb has been hard at work on matters that are not necessarily reflected in Court filings.  Thus, to make Loeb's work "readily apparent" to the Government, the Trust *would have to disclose litigation strategy* to the Government.  That is not simply asking for substantiation.  That is demanding something far more intrusive.  The Trust should not have to disclose its strategy to the Government – the Trust's adversary – before the Trust has chosen to do so.  That is exactly what the attorney-client privilege is meant to protect.  Yet, unless this work is somehow reflected in Court filings to ensure Loeb's work is made "readily apparent" to the Government, the Trust would have to disclose

11

privileged strategy to justify payment. The Court's should reject this highly misleading argument by the Government.[3]

### D. The Government's argument against the Trust paying its fees is a clear double standard.

The Government deploys completely self-serving double standards to avoid permitting the Trust to pay its lawyers.

First, while the Government argues that it needs to review Loeb's fees to ensure their reasonableness, the Government is not providing any such level of scrutiny to the Receiver's fee application. Dkt. No. 241. The deadline for objecting to the Receiver's fee application came and went on April 15 and the Government failed to make any objection. The Government apparently gave absolutely no scrutiny – let alone a comparable level of scrutiny – to the Receiver's fee application. Yet, as noted in the law firms' objection (Dkt. No. 294), the Receiver's $1 million fee application is loaded with fat, including (1) nearly $100,000 for Relativity-related charges; (2) entries for unreasonable items, including "waiting . . . in nearby hotel lobby" and a legal biller "researching locksmiths"; and (3) duplicate charges across numerous bills. Was the Government asleep at the switch? It certainly had the time and resources to review the Receiver's fee application and could read the fee application as well as anyone else. It is clear that the Government is simply giving a pass to the Receiver – a party with whom the Government is aligned – while the Government is deploying all possible roadblocks against the Trust.

Second and relatedly, while the Government and Receiver lament that $100,000 could be used to pay restitution to consumers, the Receiver is seeking ten times that amount. The funds that would be paid to the Receiver could be used to pay consumers, too. Indeed, the Receiver's

---

[3] As the Motion itself notes, if the Court is concerned about the reasonableness of Loeb's fees, the Trust is willing to submit Loeb's invoices for the Court's review *in camera*.

approximately $100,000 charges for Relativity alone could have been used to fund the restitution that the Government complains about in connection with Loeb's fees. Yet, when the Receiver seeks payment, this argument is nowhere to be found.

<u>Third</u>, the Government argues that the Trust is trying to reconsider the PI, Gov't Opp. 6. That is false. To the contrary, it is the Government that is seeking reconsideration of the PI, by seeking to obtain the unilateral power to decide whether the parties may pay their attorneys' fees. But as noted above, that power is not in the PI and the Government has no such authority. The only way for the Government to obtain this authority is by a modification of the PI. The Government opposes any relitigation or modification of the PI whatsoever when the Trust seeks it, but modification coincidentally becomes acceptable when it is to the Government's own benefit.

This double standard is inappropriate. The Trust should be permitted to pay its legal fees without the Government's interference.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court grant the Motion and such other, further, and different relief in the Trust's favor as the Court deems appropriate.

| | |
|---|---|
| Dated: New York, New York<br>April 22, 2024 | Respectfully submitted,<br><br>By: /s/ Noah Weingarten<br>LOEB & LOEB LLP<br>Evan K. Farber (admitted *pro hac vice*)<br>Noah Weingarten<br>345 Park Avenue<br>New York, New York 10154<br>Tel.: 212-407-4000<br>efarber@loeb.com<br>nweingarten@loeb.com<br><br>*Attorneys for Relief Defendant*<br>*The Blust Family 2019 Irrevocable Trust* |

238676806

13