UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CONSUMER FINANCIAL PROTECTION,
BUREAU, *et al.*,

        Plaintiffs,

v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), *et al.*,

        Defendants, and

STRATEGIC ESOP, *et al.*,

        Relief Defendants.
_____

24-CV-40-EAW-MJR

DECISION AND ORDER

Currently before the Court is the Blust Family Irrevocable Trust's motion to (1) require the receiver to comply with the preliminary injunction; (2) modify the preliminary injunction; and (3) pay legal fees to its chosen counsel. (Dkt. No. 255) For the following reasons, the Court grants the request to require the receiver to comply with the preliminary injunction but denies the motion in all other respects.

## BACKGROUND

The Blust Family Irrevocable Trust (the "Trust") is a relief defendant in this action. (Dkt. No. 249) Lit Def Strategies, LLC ("Lit Def"), a fully owned subsidiary of the Trust, is also a relief defendant. (*Id.*) On January 11, 2024, United States District Judge Lawrence J. Vilardo issued an *ex parte* temporary restraining order ("TRO") and, among other relief, appointed a receiver to assume control of the business operations of defendant StratFS, LLC and its affiliated entities (collectively "Strategic") (Dkt. No. 12, "TRO"). The TRO froze

all assets of defendants and relief defendants, including the Trust and Lit Def, and appointed a receiver with the authority to "[t]ake exclusive custody, control, and possession of all Assets, …under the control of, the Receivership defendants, wherever situated." (Dkt. No. 12 at 9, 12-13, 20) Both the Trust and Lit Def were named as receivership defendants under the TRO, and were, accordingly, subject to the asset freeze and placed under the control of the receiver. (*Id.*)

On March 4, 2024, following a two-day evidentiary hearing, this Court issued a decision granting plaintiffs' motion for a preliminary injunction (the "PI"). (Dkt. Nos. 183, 184) The PI continued the asset freeze and continued the appointment of the receiver, with the same duties and responsibilities as under the TRO. (Dkt. No. 184) The Trust and Lit Def remain receivership defendants under the PI, and therefore are subject to a continued asset freeze and continued control by the receiver. (*Id.*) This Decision and Order assumes familiarity with the PI; the Court's Decision and Order granting the PI (Dkt. No. 183, "PI Decision"); and the other prior proceedings and orders in this case.

## DISCUSSION

### *Transfer of Trust Funds Outside of the District*

The TRO directed the receiver to "[o]pen one or more bank accounts in the Western District of New York as designated depositories for funds of the [r]eceivership defendants." (Dkt. No. 12 at 23-24) Likewise, the PI directed the receiver to "[o]pen one or more bank accounts in the Western District of New York as designated depositories for funds of the [r]eceivership defendants" and to "deposit all funds of the [r]eceivership [d]efendants in such a designated account and…make all payments and disbursements from the receivership estate from such account(s)." (Dkt. No. 184 at 20)

On February 12, 2024, the receiver opened a bank account through Bank of America, N.A. (the "Receivership Account"). (Dkt. No. 296-1, ¶ 5) The Receivership Account was opened at a Bank of American branch in San Diego, California, where the receiver's office is located. (*Id.*) On or about February 14, 2024, the receiver transferred $1,035,078.81 from the bank account of Lit Def to the Receivership Account. (Dkt. No. 168-1, Exh. A) On February 16, 2024, the receiver transferred $2,076,284 from an account held by the Trust (the "Trust Funds") to the Receivership Account. (Dkt. No. 296-1, ¶ 9)

The Trust argues that the transfer of Trust Funds to the Receivership Account constituted a violation of the TRO and the PI, which expressly require that receivership assets are to be kept in bank accounts opened in the Western District of New York. The Trust cites the separate entity rule which, according to the Trust, dictates that each branch of a bank is treated as a separate entity for attachment purposes. *See Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010); *Motorola v. Standard Bank*, 24 N.Y. 3d 149, 158 (2014). The Trust contends that the PI's requirement that receivership funds remain in a bank account within this District ensures that the funds remain under the jurisdiction of this Court, and therefore operates as a safeguard against jurisdictional or attachment issues should the Trust need, and/or have the ability, to "claw back" funds at any point.

The receiver and plaintiffs respond that the receiver did not violate the TRO or the PI because Bank of America is a nationwide bank, with several branches located within the Western District of New York. They contend that the separate entity rule is inapplicable here because the Trust does not have a judgment against the receiver and

3

therefore is not seeking the remedy of attachment under New York law. They also argue that the separate entity rule only applies to the attachment of foreign bank accounts. *See Motorola*, 24 N.Y.3d at 158.

Federal law grants district courts jurisdiction over property that it places in receivership. *See SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980); *SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010). Thus, provided the Trust and its assets remain in receivership, the Court is doubtful that the location of the Receivership Account would make a practical difference for jurisdictional or attachment purposes, such that the Trust would have to seek remedies outside of this District if the need arose. However, Section IX(P) of both the TRO and the PI required the receiver to "open one or more bank accounts *in the Western District of New York* and deposit all funds of the receivership in such dedicated account." (emphasis added). Thus, according to the plain language of the TRO and the PI, which was drafted and proposed by plaintiffs, the receiver should have opened the Receivership Account at a bank branch in the Western District of New York, not in San Diego, California. Indeed, it may be the case that Section IX(P) was included to ensure that no question or dispute arose as to this Court's jurisdiction over the receivership funds. Regardless, the Court does not find it unreasonable to require the receiver to comply with the terms of the TRO and the PI.

The Trust's request is granted and the receiver is required to (1) open one or more bank accounts in the Western District of New York and transfer all funds currently in the Receivership Account to said account or accounts; and (2) maintain all receivership funds in banks accounts opened and located in the Western District of New York for the duration of the receivership.

*Modification of the Preliminary Injunction*

Next, the Trust asks the Court to modify the PI to prohibit the receiver from further transferring, using, or spending any Trust monies for any purpose. A district court's "decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigiano's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). The burden is on the moving party to show that the injunction should be modified. *See SEC v. CKB168 Hold., Ltd.*, 13-CV-5584, 2017 WL 4465726, at *4 (E.D.N.Y. Jun. 20, 2017). The Trust has failed to show that its requested modification of the PI is appropriate or necessary here.

The PI names the Trust as a receivership defendant and, as a result, the Trust's assets and funds are in receivership. (Dkt. Nos. 183, 184). The PI requires the receiver to "[c]onserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent irreparable loss, damage or injury to [c]onsumers or to third-party creditors." (Dkt. No. 184 at 18) The PI also directs the receiver to "[m]ake payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directives of, or exercising the authority granted by, [the PI]." (*Id.* at 19)

Thus, the receiver has been mandated by this Court to manage and use receivership assets, including the Trust's assets, to continue the lawful operation of the Strategic business in a manner that (1) maintains the status quo, to the extent possible; and (2) protects the interest of consumers. Indeed, the viability of the receivership depends on the receiver's ability to use receivership assets, in accordance with his

5

business judgment, to execute his duties under the PI. *See Golden Pac. Bancorp v. F.D.I.C.*, 95 Civ. 9281, 2002 WL 31875395, at *8-9 (S.D.N.Y. Dec. 26, 2002) ("[R]eceivers, just like corporate directors, are entitled to the deference of the business judgment rule in their decision-making concerning the management of a corporation."). Here, the Trust's assets are properly under the control of the receivership and, as such, may be used by the receiver to accomplish his directives under the PI.

The Trust counters that its assets should not be used to fund the operations of Strategic and/or the other defendants, or to pay the creditors of Strategic and/or the other defendants, because the Trust is an "innocent party" that has not been accused of any wrongdoing. The Court finds this argument to be without merit, in that it ignores the obvious connection between the Trust's assets and the Court's finding that defendants have likely received millions of dollars in advance fees from consumers in violation of the Telemarketing Sales Rules ("TSR").

The Trust is an irrevocable spendthrift Trust established by Jason Blust, an individual defendant in this lawsuit, on December 19, 2021. (Dkt. No. 249, ¶ 191; Dkt. No. 255-3) In its PI decision, the Court made a preliminary finding that Blust took, or provided substantial assistance in taking, advance fees from consumers, in violation of the TSR, through his control of a myriad of law firms that worked together with Strategic to market and provide debt relief services to many thousands of consumers. (Dkt. No. 183, pgs. 46-47) Indeed, Blust directed and controlled Lit Def, a company which provided administrative services to the law firms acting in partnership with Strategic. (Dkt. No. 211, ¶¶ 2-3; Dkt. No. 249, ¶¶ 77-78, ¶¶ 176-77, ¶ 182, ¶ 193; Dkt. No. 8-6, ¶¶ 21-22) Evidence in the record indicates that, between December 30, 2019 and March 30, 2021, Lit Def

6

received over $30,000,000 from 18 law firms, apparently associated with Blust, that operated in conjunction with Strategic to collect advance fees in the course of operating the debt relief program. (Dkt. No. 8-4, ¶¶ 16-21; Dkt. No. 8-6, ¶¶ 19-20; Dkt. No. 8-7, ¶ 35) The Trust is the 100% owner of Lit Def. (Dkt. Nos. 231, 288) Between March 2020 and April 2021, Lit Def transferred $36,000,000 to the Trust. (Dkt. No. 5-1, pg. 39; Dkt. No. 249, ¶¶85-87, 133; Dkt. No. 8-7, ¶ 37)

Thus, the evidence in this case suggests that all, or at least a substantial portion, of the Trust's assets are the product of the likely illegal advance fees collected from consumers in the course of Strategic's debt relief program. The Trust's apparent contention that it is an entirely unrelated and innocent third party, whose assets and funds are somehow divorced from defendants' debt relief services and the taking of advance fees, is fully belied by the evidence presented to the Court over the course of this lawsuit.[1]

The Court also rejects the Trust's argument that the PI should be modified to prohibit the transfer or use of Trust monies by the receiver because certain new facts have arisen. Specifically, the Trust notes that (1) a new, independent trustee has been appointed; and (2) the receiver violated the PI by transferring Trust assets outside of the Western District of New York. The appointment of a new trustee in no way alters the necessity of a receiver here or the Court's finding, for all the reasons just stated, that the receiver is properly charged with managing and using receivership assets, including Trust

---

[1] The Trust contends that the receiver should be prevented from using Trust monies to support or fund the receivership estate until when, and if, there has been a final determination that the Trust's assets were the product of ill-gotten gains. However, the purpose of a receivership, imposed pursuant to a preliminary injunction, is to maintain the status quo *until* a final determination on the merits can be reached. If the Court were to accept the Trust's proposition, that a relief defendant's assets cannot be managed and used by a receiver to maintain the status quo while a lawsuit is pending, no such receivership would ever be viable.

7

assets, to maintain the status quo of the business and protect the interest of consumers enrolled in defendants' debt relief program. To be sure, the receiver failed to abide by Section IX(P) of the PI when he opened the Receivership Account outside of the Western District of New York. However, the Court finds the receiver's actions to be a technical or ministerial violation of the PI which reflect neither bad faith nor a mismanagement of receivership assets.[2]

For all of these reasons, the Trust's motion to modify the PI is denied in its entirety.

*Payment of the Trust's Legal Fees*

Lastly, the Trust requests modification of the PI to pay its attorney's fees on an ongoing basis. Specifically, the Trust asks the Court to unfreeze $100,000 from Trust assets to serve as an upfront payment or retainer for its counsel.

Plaintiffs do not object to the Trust's counsel being paid appropriate attorney's fees. In fact, on March 1, 2024, shortly after the Trust retained its current counsel, plaintiffs consented to the release of a $50,000 retainer for legal fees. (Dkt. No. 255-7 at 3-4; Dkt. No. 288, pg. 7) On March 13, 2024, counsel for the Trust asked plaintiffs to release an additional $50,000 for attorney's fees. (*Id.*) In response, plaintiffs requested that counsel for the Trust provide "invoices (redacted for attorney client privilege and work product)" to

---

[2] Likewise, the Court rejects the Trust's contention that it will suffer irreparable or substantial harm if the receiver is permitted to utilize its assets to pay expenses of the receivership estate. As noted previously, on February 16, 2024, the receiver transferred $2,076,284 in Trust monies to the Receivership Account, and combined it with other receivership assets, for a total account balance of $3,665,295.31. (Dkt. No. 296-1) With funds from the Receivership Account, the receiver has paid approximately $1,100.00 in receivership expenses and $132,000 to defendant Behar pursuant to Behar's request for living expenses and on consent of plaintiffs. (*Id.*) Thus, there is no indication that the receiver has inappropriately utilized, or substantially depleted, Trust monies. Instead, Trust proceeds have remained largely untouched.

substantiate their request. (*Id.*) The Trust refused, and instead brought the instant motion requesting that the Court order plaintiffs to release $100,000 for ongoing legal fees.

Plaintiffs have consented to release monies for the payment of reasonable attorney's fees. In fact, they already released $50,000 of Trust monies for this purpose. Plaintiffs have agreed to release more funds for attorney's fees on the condition that counsel for the Trust produce some showing of the work they have performed, a request which counsel for other defendants in this case appear to have willingly complied with. (Dkt. No. 288, pg. 8) (noting that "other counsel in this case…having willingly submitted redacted invoices to [p]laintiffs when requesting the release of fees"). The Court rejects the Trust's arguments that the invoices are privileged or would reveal legal strategy. Plaintiffs expressly indicated that the Trust could redact any information that might be deemed confidential or work product.[3]

The Trust's motion that the Court order the release of $100,000 of Trust monies for attorney's fees is denied. Counsel for the Trust is directed to provide redacted invoices to plaintiffs to facilitate further payment of reasonable attorney's fees incurred in the

---

[3] The Court notes that counsel for the Trust was retained after the preliminary injunction hearing was held in this case. Since their retention, counsel for the Trust have filed notices of appearance, *pro hac vice* motions, an appeal with the Second Circuit, and the instant motion. The Court is certain that counsel for the Trust has performed substantial work, including work that is not solely reflected in public filings. However, the Court does not find it unreasonable that plaintiffs would request redacted invoices to confirm that reasonable hours were spent on given tasks, and that reasonable rates were charged, before releasing an additional $50,000 of monies from the receivership estate.

continued defense of this matter.[4]

## CONCLUSION

For the foregoing reasons, the Court grants the Trust's motion (Dkt. No. 255), in so far as the receiver is required to transfer all funds currently in the Receivership Account to a bank account(s) opened and located in the Western District of New York and to maintain all receivership funds in such accounts(s) for the duration of the receivership. The Trust's motion is denied in all other respects.

**SO ORDERED.**

Dated:   May 7, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[4] Counsel for the Trust indicates that "[t]o the extent the Court has questions regarding [counsel's] billing, [counsel] would be willing to submit its invoices to the Court to review *in camera*." (Dkt. No. 255-1, pg. 17) The Court finds that an *in camera* review of legal bills would not be a productive or appropriate use of judicial resources here. This case has been heavily litigated, resulting in an evidentiary hearing with many witnesses and hundreds of pages of exhibits, numerous motions addressing a myriad of complicated legal issues, and the appointment of a receiver who is under the management of the Court. Since January, the Court has spent a substantial amount of time attempting to address these matters in a thorough and timely manner. In light of plaintiffs' agreement to release money for reasonable fees, the Court finds this to be an issue that can, and should, be worked out between counsel for plaintiffs and counsel for the Trust.