**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*,<br><br>Defendants, and<br><br>STRATEGIC ESOP, *et al.*,<br><br>Relief Defendants. | **CASE NO. 1:24-cv-00040-EAW-MJR**<br><br>**PLAINTIFFS' RESPONSE IN SUPPORT OF THE RECEIVER'S EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY INTERVENOR LAW FIRMS SHOULD NOT BE HELD IN CONTEMPT** |

**INTRODUCTION**

The Intervenor Law Firms violated the Court's April 22, 2024 Order by continuing to solicit Consumers for further debt-relief services.[1] Intervenor Law Firms should be held in contempt. A finding of contempt and a coercive sanction are necessary to prevent further Consumer harm because Intervenor Law Firms refuse to comply with the Court's order.

The Court's April 22 Order is an attempt to protect Consumers who have already been (or would otherwise be) victimized by Defendants' and Intervenor Law Firms' unlawful scheme. Strategic[2] deceived Consumers when they initially enrolled in the debt-relief program with, among other things, promises of "0% interest" despite charging exorbitant and unlawful advance fees. Now the Intervenor Law Firms are deceiving Consumers again with solicitations that do not

---

[1] "Consumer" has the same meaning as the Preliminary Injunction, Dkt. 184.

[2] "Strategic" has the same meaning as the Preliminary Injunction Decision, Dkt. 183 at 8-9.

inform Consumers that the fees they have already paid those firms were unlawful. The Confidentiality provision of the Preliminary Injunction, Section XIX, is another effort by the Court to protect Consumers. That provision bars the use of Consumer data derived through Strategic, yet the Intervenor Law Firms are using that data to send solicitations to Consumers on an almost daily basis. Finally, the Court appointed the Receiver to protect Consumers. PI Dec., Dkt. 183 at 55. The Receiver is now asking the Court to hold the Intervenor Law Firms in contempt and sanction them until such time as they comply with the Court's April 22 Order and stop harming Consumers. The Court should heed the Receiver's recommendation.

## BACKGROUND

**Strategic deceives Consumers to enroll them in a debt-relief program.**

Strategic regularly solicited Consumers with an offer of a pre-approved debt-consolidation loan at a low interest rate (e.g., 3.11% APR) from a rotating cast of sham finance companies. First Amended Complaint (FAC), Dkt. 249 ¶ 13; Dec. Denying Stay (DDS), Dkt. 281 at 10 n.6. In reality, the lenders referenced in the mailers exist in name only and the pre-approvals were simply bait to reel in Consumers to Strategic's call centers.

Once they had baited Consumers, Strategic employees implemented the switch. When Consumers reached the call center, Strategic instructed its salespeople to tell Consumers as a matter of course that they were not eligible for the advertised loan. FAC, Dkt. 249 ¶ 18. Strategic's salespeople also told Consumers that the debt-relief program was the "0% interest" option, in accordance with a script provided by Strategic. Receiver's Preliminary Report (RPR), Dkt. 115-1 at 20; FAC, Dkt. 249 ¶ 20. While Defendants do not charge interest (because contrary to the language in their mailers, they are not actually offering loans), they do charge exorbitant advance fees and Consumers continue to accrue costly interest on their outstanding debts while

enrolled in Defendants' program. *See* RPR, Dkt. 115-1 at 20; DDS, Dkt. 281 at 10 n.6. Any suggestion that Strategic's debt-relief program is a "0% interest option" is thus deceptive on multiple levels.

**The Court enters the Preliminary Injunction.**

On March 4, 2024, the Court entered a Preliminary Injunction (PI) enjoining "Persons or entities in active concert or participation with" Defendants from "[e]ngaging in any other conduct that violates the TSR." PI, Dkt 184 at 9. The PI also bars "all third parties or other Persons in active concert or participation with any Defendant" from "disclosing, using, or benefitting from Consumer information . . . that any Defendant or Relief Defendant obtained prior to entry of this Order in connection with any Debt-Relief Services." *Id*. at 33.

All Consumer information in this matter emanated from Strategic because Strategic collected the information through its solicitation of Consumers. In the Decision and Order that accompanied the PI, the Court found:

> Strategic markets debt-relief services to consumers through mechanisms such as direct mail solicitations and websites. Consumers who are interested in the debt-relief services advertised call a phone number listed on the mailer or website and reach a Strategic representative, and this representative gathers additional information from the consumer.

PI Dec., Dkt. 183 at 10 (citations omitted). The Court also ordered the continuation of the Receiver "to ensure compliance with its order, to disentangle the companies and bank accounts, and *to protect consumers who are currently enrolled in the debt-relief program operated by defendants and the intervenor law firms*." PI Dec., Dkt. 183 at 55 (emphasis added).

**The Intervenor Law Firms deceive Consumers yet again to re-enroll them in a debt-relief program.**

On April 2, 2024, the Intervenor Law Firms sent out an unsigned letter to all of SFS's advance-fee customers, sharing an "exciting update" regarding the Firm's "representation." Dkt.

292-2 at 2. The letter states that the law firm is "modifying the Firm's fee structure from a pay for service model to a contingent model." *Id.* The letter does not mention this lawsuit, that the previous fee arrangement is barred by the PI, or that the advance fees Defendants previously requested and received from Consumers have been found likely to be illegal.

Attached to the letter is an "Amendment to Client Retainer Agreement." *Id*. at 3-7. The Amendment states that "the total Legal Fees for Law Firm's legal services, including its retainer, service cost and administration fees, shall remain the same as set forth on the payment schedule in your Agreement." *Id.* at 3 (exemplar referring to a retainer agreement allegedly entered on June 1, 2023). The Amendment does not refer to the status of fees taken before the date of the letter.

Two days after sending the letter, the Intervenor Law Firms began sending automated reminder emails touting the "great updates happening with your current debt relief program" and urging consumers to "take the time NOW to look for the email you should have received from digisign@leadtrac.net." *See, e.g.*, Dkt. 292-5 at 2. The subject line of these emails read "[CONSUMER NAME] Urgent Matter Reminder." *Id*. These communications provided consumers with no information about this litigation or the PI issued by the Court.

**The Receiver seeks instruction from the Court to protect Consumers.**

The Receiver moved this Court to protect Consumers in his Report Re: Protection of Consumers and Emergency Request For Instruction. Dkt. 292-1 ("[T]he Receiver respectfully requests instructions to guide the Receiver's compliance with the Court's directive to protect consumers."). The Receiver advised the Court that he had "serious concerns that the Law Firms . . . are misleading the consumers" and sought leave of Court to send communications to Consumers with information about this case and their rights and options. *Id*. at 2.

**The Court Orders the Intervenor Law Firms to stop contacting Consumers.**

At the April 22, 2024 hearing on the Receiver's Request for Instruction, the Court clearly

ordered the Intervenor Law Firms to stop soliciting consumers:

> THE COURT: Nobody should have any communications with . . . consumers about anything. Period. Okay?
>
> . . .
>
> MR. ELLIOTT: Your Honor, may I be heard on that? May I be heard on that? On behalf of the law firms, we have clients we communicate -- the lawyers communicate with them every day. The paralegals communicate with them every day.
>
> THE COURT: I want no general statement like the one you sent out without notifying everybody before. Do you understand that, sir?
>
> MR. ELLIOTT: I do understand it, Your Honor. And --
>
> THE COURT: Okay.
>
> MR. ELLIOTT: -- and I've been trying to -- to --
>
> THE COURT: That's what I want.
>
> MR. ELLIOTT: Okay.
>
> THE COURT: I think it's clear. I don't think I need to expand on it any more.

Dkt. 353-3, 4/22/24 Tr. at 157:1-19.

The Court also found that the Intervenor Law Firms were misleading Consumers for their

own benefit:

> THE COURT:  . . . That thing you sent out was a bunch of bologna. You are trying to trick [Consumers] into signing on with you again. Yet again. The same people that have already been victimized, sign them up again.
>
> MR. ELLIOTT: We don't believe they have been victimized.
>
> THE COURT: I do. And that's what I said in the preliminary injunction….

*Id*. at 112:11-18.

> THE COURT: That notice that you sent out was very misleading. It was misleading. It was inaccurate. It was inappropriate. What possessed you to send that out?

MR. ELLIOTT: We are trying to move our clients into a new fee structure, so that they can get service.

THE COURT: Yeah. You are trying to move them into a new fee structure. You are trying to capture clients that you are already have had and were accepting advanced fees from.

*Id.* at 114:5-13.

At the hearing, the Intervenor Law Firms acknowledged they would need Court approval before engaging a new vendor to handle contact with Consumers on their behalf. *Id.* at 119:2-4 ("We need -- we need Court approval to get a new vendor."), 120:14-16 ("There is a stay and we read the stay to say that we need Your Honor's permission to terminate the contract with Strategic and to go find a new vendor.").

**The Intervenor Law Firms defy the April 22, 2024 Court Order.**

Despite the order from the Court to stop contacting Consumers, the Intervenor Law Firms continued their mass-outreach to Consumers, badgering them to sign new engagement letters with revised fee agreements. *See* Dkt. 353-4 ¶ 9 (noting instances where the reminder emails to consumers continued unabated after the April 22 Court Order, with emails to at least one consumer on April 21, 23, 26, 27, 29, May 1, 3). The Intervenor Law Firms even expanded their communications to Consumers, engaging a new call center that is proactively calling Consumers to convince them to sign up to for the purported "contingent fee" model. *See* Dkt. 353-4 ¶ 9 (referencing attached call logs that show telephone calls to Consumers referencing "Contingency Sign Up").

## ARGUMENT

### I.   Legal Standard

A finding of contempt is warranted where the movant shows "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and

convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *United States v. Acquest Transit LLC*, No. 09-CV-00055S(F), 2010 WL 6350470, at \*9 (W.D.N.Y. Aug. 9, 2010) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 654, 655 (2d Cir. 2004)).

With respect to the first prong, "the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Acquest Transit LLC*, 2010 WL 6350470 at \*9 (quoting *Drywall Tapers & Pointers of Greater N.Y., Local 1973 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasters & Cement Masons Intern'l Assoc.*, 889 F.2d 389, 395 (2d Cir. 1989)).

The second prong requires evidence that "demonstrate[s] a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotations omitted). Although the evidentiary burden is a "high standard of proof," it "does not imply any requirement that the movant must present direct rather than circumstantial evidence." *FTC v. Asia Pacific Telecom, Inc.*, 788 F. Supp. 2d 779, 789 (N.D. Ill. 2011); *see also Dell Inc. v. Compudirect, Inc.*, 316 Fed. Appx. 32, 34 (2d Cir. 2009) (finding that district court did not abuse its discretion in holding that "the surrounding circumstantial evidence" was sufficient to establish clear and convincing evidence of contempt).

Once the movant has established these two elements, the "burden shifts to the defendant to come forward with evidence showing 'categorically and in detail' the reasons he is unable to comply with the court's order." *SEC v. Pittsford Capital Income Partners, L.L.C.*, No. 06 Civ 6353 T(P), 2010 WL 2025500, at \*3 (W.D.N.Y. May 20, 2010). Put another way, the contemnor "must clearly establish 'that compliance is impossible.'" *Id.* (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina*, 369 F.3d at 657. "To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'" *Acquest Transit LLC*, 2010 WL 6350470, at *16 (quotations omitted). "In exercising its broad discretion in setting the amount of a coercive fine, several factors to be considered include "the 'character and magnitude of the harm threatened by continued contumacy,' the 'probable effectiveness of any suggested sanction in bringing about [compliance],' and the contemnor's ability to pay." *Id.* at *17 (internal citations omitted).

## II.   The Intervenor Law Firms violated the Court's April 22, 2024 Order and should be held in contempt.

The Court's Order that the Intervenor Law Firms stop soliciting consumers is clear: "Nobody should have any communications with . . . consumers about anything. Period. Okay?" Dkt. 353-3, 4/22/24 Tr. at 157:1-2. Counsel for the Intervenor Law Firms requested clarification that he could respond to consumer inquiries and the Judge made clear that what he was barring was solicitation: "THE COURT: I want no general statement like the one you sent out without notifying everybody before." *Id.* at 157:10-11.

Similarly, the proof of noncompliance is clear and convincing. Despite the Court clarifying that what it did not want was "general statement[s] like the one you sent out without notifying everybody before," *id.*, the evidence presented by the Receiver indicates that the Intervenor Law Firms kept proactively sending *the exact same statement*. The Subject Line is the same on emails sent before and after the April 22 Order: "[CONSUMER NAME] Urgent Matter Reminder." *Compare* Dkt. 353-4 ¶ 9 *with* Dkt. 353-2.

8

In addition, the Intervenor Law Firms retained a new call center to reach out to Consumers. Dkt. 353-4 ¶ 6. This too violates the Court's Order banning widespread solicitation of Consumers. Dkt. 353-3, 4/22/24 Tr. at 157:10-11. Intervenor Law Firms took this step even after their counsel acknowledged at the April 22 hearing that they need Court approval to retain a new vendor. *Id*. at 119:2-4, 120:14-16.

III.    **The character and magnitude of the harm threatened by Intervenor Law Firms' continued defiance of the Court's order justify the sanction.**

In crafting a sanction, the Court should consider the character and the nature of the harm it is attempting to prevent. *See Paramedics Electromedicina*, 369 F.3d at 658. Here, the harm the Court is trying to prevent is clear: it is seeking to protect Consumers who have already been (or would otherwise be) victimized by Defendants' and Intervenor Law Firms' unlawful scheme from further harm. Dkt. 353-3, 4/22/24 Tr. at 112:11-18.

Indeed, the PI identifies protecting Consumers as one of the primary reasons for appointing the Receiver. PI Dec., Dkt. 183 at 55; *see also* TRO, Dkt. 12 at 21. The Receiver is now advising the Court that a sanction on the Intervenor Law Firms appears necessary to prevent further Consumer harm. Given that prior efforts to prevent Consumer harm have not stopped the Intervenor Law Firms, the Court is justified in entering a coercive sanction to stop the harm to Consumers.

The Court has put in place an extensive framework to protect Consumers, and the Intervenor Law Firms have ignored that framework at every turn. For example, the PI enjoins "using, or benefitting from Consumer information . . . that any Defendant or Relief Defendant obtained prior to entry of this Order in connection with any Debt-Relief Services." PI, Dkt. 184 at 33. All Consumers were initially targeted and signed up by Strategic before being assigned to Intervenor Law Firms.  Indeed, the Service Agreement between Strategic and the Intervenor Law

Firms specifically states that Strategic is responsible for "[t]he development and management of qualified leads to generate potential Applicable Clients for LAW FIRM." Dkt. 234-4 at 2. Therefore, the Consumers' information was "obtained prior to entry of this Order in connection with any Debt-Relief Services," yet the Intervenor Law Firms continue to use it for their benefit on a near daily basis. *See* Dkt. 353-1 at 9 ("the Law Firms were sending their email blasts every other day and had hired a call center to make outbound calls to urge consumers [to] sign their amended engagement agreements.").

Similarly, the PI enjoins "Persons or entities in active concert or participation" with Defendants from "[e]ngaging in any other conduct that violates the TSR," PI, Dkt. 184 at 9, and the TSR bars "[m]isrepresenting, directly or by implication, … [a]ny material aspect of any debt relief service," 16 C.F.R. § 310.3(a)(2)(x). The Intervenor Law Firms are bound by the PI both as parties to the matter and due to their deeply entangled business arrangements with Defendants. To the extent that the Intervenor Law Firms now seek to modify the fee structure for the pre-existing debt relief services, it is undoubtedly material that the Court has found Plaintiffs are likely to prevail on their claim that Strategic and the Intervenor Law Firms took advance fees and entered a Preliminary Injunction against them. Yet the Intervenor Law Firms continue to solicit Consumers for a new fee structure with no mention that the old fee structure was banned.

Strategic "pencil-whipped" consumers into signing up for the debt-relief program. PI Dec., Dkt. 183 at 39. The Intervenor Law Firms are continuing this practice, deceptively hounding Consumers to sign up for the new debt-relief model without providing material information about the reasons for the new model. 4/22/24 Tr. at 122:12-16 ("THE COURT: I think you are already going after people who have already been victimized in the initial setup. Now, you want to switch to a different setup and go back to the same people. It's – it's

10

flabbergasting to me. I'm – I don't know what else to say."). They do this in blatant disregard of—and exhibit disrespect for—this Court's clear order. Given that prior efforts to prevent Consumer harm have not deterred the Intervenor Law Firms, the Court is justified in entering a coercive sanction to stop further harm to Consumers.

**CONCLUSION**

The Court should hold the Intervenor Law Firms in contempt. Plaintiffs concur with the Receiver's recommendation that each Law Firm be sanctioned $1,000 per day until the contempt is purged.

Dated: May 24, 2024                     Respectfully submitted,

                                        Attorneys for Plaintiff
                                        Consumer Financial Protection Bureau

                                        ERIC HALPERIN
                                        Enforcement Director

                                        RICHA SHYAM DASGUPTA
                                        Deputy Enforcement Director

                                        TIMOTHY M. BELSAN
                                        Assistant Litigation Deputy

                                        */s/ Joseph Sanders*
                                        Joseph Sanders
                                        E-mail: joseph.sanders@cfpb.gov
                                        Phone: 202-377-9846
                                        Vanessa Buchko
                                        E-mail: vanessa.buchko@cfpb.gov
                                        Phone: 202-435-9593
                                        Shirley Chiu
                                        E-mail: shirley.chiu@cfpb.gov
                                        Phone: 202-435-7592
                                        Monika Moore
                                        E-mail: monika.moore@cfpb.gov
                                        Phone: 202-360-5905
                                        1700 G Street, NW
                                        Washington, DC 20552

Facsimile: (202) 435-7722

And

LETITIA JAMES
Attorney General of the State of New York

*/s/ Christopher L. Boyd*
Christopher L. Boyd
Phone: (716) 853-8457
Email: Christopher.Boyd@ag.ny.gov
Genevieve Rados
Phone: (716) 853-8485
Email: Genevieve.Rados@ag.ny.gov
Assistant Attorneys General
350 Main Street, Suite 300A
Buffalo, NY 14202

Attorneys for State of New York