**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al. | **CASE NO.  24-cv-40-EAW-MJR** |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JACLYN BLUST'S RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS** |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | |
| Defendants, and | |
| STRATEGIC ESOP, et al. | |
| Relief Defendants. | |

Plaintiffs Consumer Financial Protection Bureau and the People of the State of New York, by Letitia James, Attorney General of the State of New York (NYAG), hereby file this Memorandum of Law in Opposition to Relief Defendant Jaclyn Blust's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (Dkt. 345).

**INTRODUCTION**

Jaclyn Blust is the wife of Jason Blust, a Defendant who orchestrated a scheme to unlawfully take millions of dollars in advance fees from already debt-burdened consumers in violation of federal law. Jason Blust funneled these funds into various corporate entities and a trust he created. Ms. Blust admits she received over $8 million of these ill-gotten proceeds. Nevertheless, Ms. Blust seeks dismissal arguing that: (1) she did not receive the money directly from a Defendant; (2) she no longer has the money

she admittedly received; and (3) she received the money in 2020 and Plaintiff's claim is untimely. All of these arguments lack merit.

This Court should deny Ms. Blust's motion to dismiss because she is a proper relief defendant in this action. Ms. Blust is the recipient of funds that were unlawfully obtained by Defendant Lit Def Strategies LLC ("Lit Def") under the direction and control of her husband, Jason Blust, and she has no legitimate claim to those funds.[1] Although Ms. Blust contends that she is "several degrees removed from Defendants" and no longer in possession of the funds in question, Dkt. 345 at 5, those are not sufficient reasons for her dismissal from this case and the Court should reject those arguments. Ms. Blust also argues that the applicable statute of limitations bars Plaintiffs from seeking disgorgement against her for the funds she received from Lit Def by way of the Blust Family 2019 Irrevocable Trust ("Blust Trust"). *Id*. at 8-9. Not only does Ms. Blust misapply the statute of limitations, but she also fails to point to any language in the Second Amended Complaint (SAC) that shows the statute of limitations defense appears on its face.[2] Her motion to dismiss based on the statute of limitations should be denied.

## BACKGROUND[3]

As alleged in the SAC, Jason Blust exercised substantial control over and involvement in the establishment of Façade Firms' business policies and practices. SAC, Dkt. 366, ¶ 84. Plaintiffs refer to these law firms as the "Façade Firms" because they

---

[1] As of May 28, 2024, Lit Def Strategies is a named liability defendant per Plaintiffs' Second Amended Complaint (SAC). Prior to May 28, 2024, Lit Def Strategies LLC was a Relief Defendant in this litigation per the First Amended Complaint (FAC).

[2] Although Ms. Blust's motion cites to the FAC which has been replaced by the SAC, she has chosen to stand on that filing without revising. Her motion, however, must be tested against the SAC as the operative complaint.

[3] The facts alleged in the operative complaint—now the SAC, as of May 28, 2024—must be accepted as true for purposes of ruling on Ms. Blust's motion. *See, e.g., Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) ("In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.").

provide little if no legal service to consumers, serving instead as a front for SFS's debt relief service and fee-collection activities. SAC ¶¶ 26, 43; Decision and Order, Dkt. 183, at 11-12, 34-35.

Jason Blust also directs and controls Lit Def and is the sole beneficial owner on the bank account for Lit Def at at least one bank. SAC ¶ 227. Lit Def provides substantial assistance to SFS's debt-relief operations by facilitating purported litigation support that is—according to SFS's sales pitch—being provided by the Façade Firms. *Id*. ¶ 94. In reality, when SFS receives notice from consumers enrolled in the law firm debt-relief service that they have been sued by a creditor, SFS does not send the filings to the law firm listed on the consumer's engagement letter. *Id*. ¶ 95. Instead, SFS forwards those filings to Lit Def. *Id*. Lit Def then reviews and determines whether and to which contracted litigation or appearance attorneys it will send the filings. *Id*.

Jason Blust created the Blust Trust as grantor by contributing nonvoting shares of Lit Def. Trust Document, Dkt. 255-3 at 1. Jason Blust's family is the beneficiary of the Blust Trust. SAC ¶ 225. The Blust Trust owns Lit Def. *Id*. ¶ 100. Lit Def and the Blust Trust have both received funds and other assets from Jason Blust that the Facade Firms and SFS obtained from consumers through Jason's unlawful acts. *Id*. ¶¶ 101, 229. Between March 2020 and April 2021, Lit Def paid $36,000,000 to the Blust Trust. *Id*. ¶ 226. Between July 2020 and April 2021, the Blust Trust transferred at least $8,300,000 to Ms. Blust. *Id*. ¶ 228. Indeed, Ms. Blust does not dispute that she received money from the Blust Trust, and admits that she received deposits totaling $8,324,625 from the Blust Trust between July 2020 and April 2021. Dkt. 345-1 ¶ 2. Ms. Blust claims, however, that she used all the money that she received in the three payments "to pay taxes," without mentioning whose taxes she paid. Dkt. 345 at 6-7. Regardless of how she

used the money, Ms. Blust is not a bona fide purchaser with legal or equitable title or other legitimate claim to the funds she received from the Trust. SAC ¶ 304.

## ARGUMENT

Ms. Blust's motion to dismiss should be denied because she is properly named as a relief defendant, Plaintiffs have stated a claim for relief, and the self-serving declaration she submits should not be considered at this stage.

## I.     Jaclyn Blust's argument for dismissal under Rule 12(b)(6) fails because Plaintiffs have stated a claim for relief against her.[4]

Ms. Blust moves to dismiss under Federal Rule 12(b)(6), arguing that Plaintiffs have not stated a claim for relief against her. She is incorrect. Plaintiffs have established that she is a proper relief defendant, and her motion to dismiss under Rule 12(b)(6) should be denied.

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability

---

[4] Plaintiffs acknowledge that courts typically address jurisdiction questions first, but since much of the Fed. R. Civ. P. 12(b)(1) analysis concerning Ms. Blust relies significantly on the same analysis as Fed. R. Civ. P. 12(b)(6), Plaintiffs start here with the 12(b)(6) analysis for purposes of efficiency and to limit repetition of arguments.

requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6)

motion, the Court accepts all factual allegations in the complaint as true, drawing all

reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145.

### A. Jaclyn Blust is properly named as a Relief Defendant.

A relief or "nominal" defendant is a person or entity who (1) has received ill-

gotten gains, and (2) does not have a legitimate claim to those funds, which thereby

affords federal courts the power to order equitable relief against that person. *U.S.

Commodity Futures Trading Comm'n v. EJS Cap. Mgmt., LLC*, No. 14 CV 3107 CM,

2015 WL 5679688, at *4 (S.D.N.Y. Sept. 24, 2015) (citing *CFTC v. Kimberlynn Creek

Ranch, Inc.*, 276 F.3d 187, 192 (2d Cir. 2002) (citing *SEC v. Cavanagh*, 155 F.3d 129,

136 (2d Cir. 1998)). A relief defendant may be a gratuitous beneficiary of the proceeds

from the principal defendants' fraud or merely the custodian of the principal

defendants' assets. *CFTC v. Hanover Trading Corp.*, 34 F. Supp. 2d 203, 207 (S.D.N.Y.

1999). It is not necessary to show that the relief defendant was aware that the funds

were obtained illegally. *See, e.g., CFTC v. Walsh*, 618 F.3d 218, 229, n.8 (2d Cir. 2010).

Here, Ms. Blust received ill-gotten gains and does not have a legitimate claim to those

funds. SAC ¶¶ 228, 304; Dkt. 345-1 ¶ 2. She thus meets the standard for a relief

defendant and is properly so-named in the SAC.

### 1. Jaclyn Blust received ill-gotten funds from Defendants.

Despite admitting that she received $8,324,625, Ms. Blust contends that she is

not a proper relief defendant because she did not receive funds "from a defendant." Dkt.

345 at 6 (emphasis in original). Her argument fails for two reasons.

First, her argument incorrectly implies that Plaintiffs must allege that she received funds *directly* from a Defendant and incorrectly imposes a traceability requirement when funds may have been commingled before reaching her. Ms. Blust does not cite any support for either contention, which are not supported by caselaw. In fact, courts have specifically denounced a traceability requirement when ill-gotten gains may have been commingled with other funds, and have held that the government is not required to trace specific funds to their ultimate recipients. *See SEC v. Rosenthal*, 426 Fed. Appx. 1, 3 (2d Cir. 2011) ("Imposing such a tracing requirement would allow an insider trading defendant to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets or, as was the case here, by commingling and transferring such profits"); *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000) (reasoning that "disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset").

Here, even if the illegally obtained funds transferred to Ms. Blust by Lit Def first passed through the Blust Trust, or were commingled with other funds from the Blust Trust prior to being transferred to her, the amount of the illegally obtained funds is the key issue. Indeed, taken to its logical conclusion, holding otherwise would invite and encourage money laundering, such that all an individual would need to do to "cleanse" illegally obtained funds would be to move the money multiple times and commingle with other funds. This is precisely why the Second Circuit has rejected the argument Ms.

Blust now advances. *See Rosenthal*, 426 Fed. Appx. at 3. Here, Ms. Blust ultimately received ill-gotten funds, and is a proper relief defendant.

Second, the Court need not address Ms. Blust's traceability argument because Lit Def is named as a liability defendant in the SAC. Thus, Ms. Blust's contention that she never received transfers from a "from a defendant" is now moot.

### 2. Jaclyn Blust's claim that she used all the ill-gotten funds to pay taxes to the IRS does not invalidate her status as a Relief Defendant.

Ms. Blust next argues that because she used all the monies she received from Lit Def through the Blust Trust to pay state and federal taxes, she is no longer in possession of ill-gotten funds and thus cannot be a relief defendant. That is a misstatement of prevailing precedent. Plaintiffs acknowledge Ms. Blust's assertion that, as a general rule, a relief defendant is a person who holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute. Dkt. 345 at 5; *F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158, 177 (2d Cir. 2016). However, district courts in the Second Circuit have held that "[a]n individual may be a proper relief defendant even if she no longer possesses the actual ill-gotten gains, but previously benefitted from the unlawful activity." *SEC v. Aragon Capital Advisory*, No. 07 Civ. 919(FM), 2011 WL 3278907, at *18 (S.D.N.Y. July 26, 2011); *SEC v. Egan*, 856 F. Supp. 401, 402 (N.D. Ill. 1993); *see also SEC v. Byers*, No. 08 Civ. 7104(DC), 2009 WL 33434, at *3–4 (S.D.N.Y. Jan.7, 2009) (intervenors/relief defendants "received ill-gotten funds" when mortgage payments for a house that they purchased under "suspicious circumstances" were drawn from a bank account containing ill-gotten gains); *SEC v. Martino*, 255 F. Supp. 2d 268, 279–80, 288–89 (S.D.N.Y. 2003) (the court ordered relief defendants to turn over a yacht purchased with defendant's ill-gotten gains and subsequently transferred to them

without fair consideration). In *SEC v. Aragon*, a relief defendant who received ill-gotten money in her bank account, transferred the money to a joint account she had with another individual, and then used the proceeds to buy a condominium. 2011 WL 3278907 at *18. The relief defendant in *Aragon*, like Ms. Blust here, argued that she could not be a relief defendant because she was no longer in possession of the illicit gains. *Id*. The court easily rejected that argument. *Id*. This Court should do the same.

Indeed, Ms. Blust's argument, if accepted, would destroy the equitable remedies available against relief defendants, encouraging individuals to spend or transfer the specific funds received. As another district court explained, establishing such a "'tracing requirement would allow a [relief defendant] to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets or … by commingling and transferring such profits.'" *EJS Cap. Mgmt.*, 2015 WL 5679688, at *6 (quoting *Rosenthal*, 426 Fed. App'x. at 1–2). Instead, the court presumed that "any funds [the relief defendant] used to pay her personal and family expenses from accounts containing both her lawfully acquired funds and [illicit] funds, necessarily reduced the balance of her personal funds first, since she had no interest in, and no right to draw against the illegally gotten [] funds." *Id*.

Likewise here, it is of no moment that Ms. Blust may have already "used" the specific funds she received as of result of Defendants' illegal activity. Money is fungible. If Ms. Blust used money from the Blust Trust to pay taxes, she still received a benefit by satisfying a tax obligation without using another source of funds. Ms. Blust should not be permitted to spend down her illicit gains while protecting any assets she gained legitimately. There is no dispute that Ms. Blust received the funds. She may still be held

liable for the value of the ill-gotten gains she received, even if she used them to her own benefit and no longer "possesses" them.

## II.   Jaclyn Blust's argument for dismissal under Rule 12(b)(1) fails because she qualifies as a Relief Defendant and this Court's subject matter jurisdiction over Defendants Jason Blust and Lit Def extends to relief defendants who received funds from them.

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Mahmoud v. United States*, No. 18-CV-00485-JLS-MJR, 2021 WL 1700656, at *2 (W.D.N.Y. Apr. 6, 2021) (Roemer, J.), report and recommendation adopted, 2021 WL 1700317 (W.D.N.Y. Apr. 28, 2021) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

"[A] motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (quoting *Pennacchio ex rel. Old World Brewing Co., Inc. v. Powers*, 05-CV-0985, 2007 U.S. Dist. LEXIS 8051, at *6, 2007 WL 446355 (E.D.N.Y. Feb. 5, 2007)). A court must accept as true all material factual allegations in the complaint, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Ms. Blust argues that this Court lacks subject matter jurisdiction over her because she does not qualify as a relief defendant. Dkt. 345 at 5. Her argument fails because, as demonstrated in Section I, Plaintiffs alleged the necessary facts establishing their claim

against her as a relief defendant. Ms. Blust qualifies as a relief defendant. She received ill-gotten funds from Defendant Lit Def, which was controlled by her husband, Defendant Jason Blust, through the Blust Trust, which owns Lit Def, and she has no legitimate claims to those funds. In other words, Ms. Blust is named merely "in a subordinate or possessory capacity." *F.T.C. v. Strano*, 528 F. App'x 47, 50 (2d Cir. 2013) (quoting *SEC v. Cherif*, 933 F.2d at 414.). Under Second Circuit precedent, "it is unnecessary to obtain subject matter jurisdiction over [her] once jurisdiction over the defendant is established." *Id.*

Plaintiffs have established that this Court has jurisdiction over the Defendants. Plaintiffs allege that the Façade Firms, controlled by Jason Blust, are "sellers" of debt relief services under the TSR. SAC ¶¶ 43-46. Jason Blust directs and controls Lit Def, and uses it to direct consumer funds from the Façade Firms to himself. *Id.* ¶ 208. Plaintiffs allege, and this Court has found that they are likely to succeed in proving, that those funds were taken illegally in violation of the TSR. Decision and Order, Dkt. 183 at 7-8. Jason Blust funnels consumer funds from the Façade Firms, Client Services Subsidiaries, and SFS into the Blust Trust via Lit Def. SAC ¶¶ 100, 101. Jason Blust and Lit Def have violated the law. *Id.* ¶¶ 252-254, 260, 265, 269-270, 292, 294-295, 298, 300-301, 311, 315. This Court therefore has subject matter jurisdiction over both Jason Blust and Lit Def. Indeed, Jason Blust does not argue otherwise in his Answer. *See* Dkt. 344. Under Second Circuit precedent, that is the end of the inquiry and this Court has subject matter jurisdiction. *Strano*, 528 F. App'x at 50.

III.    **This Court should decline to consider the declaration Jaclyn Blust submits in support of her Motion.**

In support of her motion to dismiss, Ms. Blust submits a sworn declaration stating certain facts about the funds she received from the Trust. She asserts that she used all the funds she received from the Trust "to pay taxes." Dkt. 345-1, Exhibit B at ¶ 3. Notably, Ms. Blust does not state who else may have owned the account into which the funds were transferred or whose taxes she paid. The declaration includes a chart, apparently of her own making and with no attached evidentiary support, detailing alleged transfers to and tax payments by her. *See id.* This Court should not consider either the declaration or the chart contained therein in resolving Jaclyn Blust's motion to dismiss.

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Southerland v. Staniszewski*, No. 1:22-CV-23-JLS-MJR, 2022 WL 17406087, at *2 (W.D.N.Y. Aug. 25, 2022) (Roemer, J.), report and recommendation adopted, 2022 WL 17404470 (W.D.N.Y. Dec. 1, 2022) (citing *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). When a court is presented with matters outside the pleadings, Rule 12(b) affords two options. A court may simply exclude the extrinsic documents and examine whether the plaintiffs' complaint states a claim on its face. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002). Or, if a court elects to consider matters outside the pleading, it must convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by

11

Rule 56. *Id.*; s*ee also Carter v. Stanton*, 405 U.S. 669, 671, (1972) (per curiam); *Friedl v. City of N.Y.*, 210 F.3d 79, 83–84 (2d Cir. 2000); *Morelli v. Cedel*, 141 F.3d 39, 45–46 (2d Cir. 1998). This conversion requirement is "strictly enforced" whenever a district court considers extra-pleading material in ruling on a motion to dismiss. *Friedl*, 210 F.3d at 83 (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999)).

The Court should not consider Ms. Blust's declaration. First, the declaration falls outside the documents a court is permitted to consider when resolving a motion to dismiss brought under Rule 12(b)(6). It was neither attached to the complaint nor incorporated into the complaint by reference. *See Southerland*, 2022 WL 17406087, at *2. And in any event, the declaration and chart fail to address several relevant questions. Neither the declaration nor the included chart states what account or accounts the funds were transferred into, what other funds these funds were comingled with, and who, besides Jaclyn Blust, had an interest in these accounts. Nor is there any admissible evidence attached to the declaration demonstrating that the funds were, in fact, used to pay taxes, or showing whose tax obligations they relieved. The chart suggests that, before July 10, 2020, Ms. Blust had zero dollars to her name, and it overtly states that as of April 27, 2021, she had "$0" in her possession. Dkt. 345-1 at 22. She states that she is "currently not in possession of any funds from the Blust Family Irrevocable Trust," *id*. The veracity of this statement cannot be tested without discovery. Plaintiffs are at a disadvantage confronted with such incomplete, conclusory, and self-serving statements. The Court should reject any consideration of Ms. Blust's declaration at this stage.

## IV.   Jaclyn Blust's argument for dismissal based on statute of limitations should be rejected because she fails to show the statute of limitations defense appears on the face of the FAC and because

**no argument can be made that New York's Executive Law claims are time-barred.**

Finally, Ms. Blust argues that the Court should dismiss her from this case because the relief Plaintiffs seek from her is barred by the applicable statute of limitations. Dkt. 345 at 8. This Court should reject this argument for two reasons. First, Ms. Blust has not shown that the statute of limitations defense appears on the face of Plaintiffs' operative complaint. Second, Jason Blust and Lit Def have been sued under New York Executive Law § 63(12) and the transfers at issue are clearly within that claim's six-year statute of limitations.

 "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion" only "if the defense appears on the face of the complaint." *CFPB v. Manseth*, 2023 WL 5400235 at *18, No. 22-CV-29-LJV (W.D.N.Y. Aug. 22, 2023) (quoting *Conn. Gen. Life Ins. Co. v. BioHealth Laboratories, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021)).

In the instant matter, Plaintiffs allege Defendants violated the Telemarketing Sales Rule, 15 U.S.C. § 6102, et seq. Any violation of any rules prescribed under the Telemarketing Sales Rule "that is committed by a person subject to the Consumer Financial Protection Act of 2020 [CFPA] shall be treated as a violation of a rule under section 1031 of the Act regarding unfair, deceptive, or abusive acts or practices." 15 U.S.C. § 6102(c)(2). The CFPA provides that "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1); *Manseth*, 2023 WL 5400235 at *18.

Ms. Blust argues that Plaintiffs are not entitled to disgorgement against her for "transactions that occurred in 2020" because 2020 is more than three years prior to the

filing of the Complaint in this case, and that this Court should dismiss her from this action as a relief defendant because Plaintiffs "are seeking time-barred relief." Dkt. 345 at 9. The Court should reject this argument because it blatantly misapplies the applicable statute of limitations. The CFPA's statute of limitations clearly refers to "3 years after the *date of discovery* of the violation to which an action relates." 12 U.S.C. § 5564(g)(1) (emphasis added). Ms. Blust's argument incorrectly centers on the date on which she received transfers of money from Lit Def via the Blust Trust rather than the date the claim against Ms. Blust was discovered. An appropriate analysis would turn on whether it has been more than three years since the Plaintiffs *discovered* sufficient information to recover from Ms. Blust, including, for example, information indicating that she had received ill-gotten funds. Ms. Blust, however, points to no language in the SAC (or even previously in the FAC) that says or suggests Plaintiffs had reason to be aware of or discovered the underlying violations of law (or, for that matter, the transactions in question) more than three years before filing the initial complaint. Thus, the basis for a proper statute of limitations defense does not "appear on the face of the complaint." *Manseth*, 2023 WL 5400235 at *18. And it would be premature for the Court to rule on the statute-of-limitations defense at this early juncture without the benefit of a full evidentiary record. Accordingly, Ms. Blust's motion to dismiss based on statute of limitations must be denied.

Additionally, the NYAG has sued Jason Blust and Lit Def for engaging in repeated and persistent fraudulent acts pursuant to Executive Law § 63(12). The statute of limitations for a claim under Executive Law § 63(12) is six years. N.Y. C.P.L.R. 213(9). Executive Law § 63(12) expressly authorizes the NYAG to obtain "restitution and

damages." Moreover, "disgorgement is an available remedy under . . . the Executive Law." *People v. Greenberg*, 34 N.Y.S.3d 402, 405 (N.Y. Ct. App. 2016).

Ms. Blust claims that the transactions at issue occurred in 2020. This is plainly within the six-year statute of limitations that applies to Executive Law § 63(12). There is therefore no basis to dismiss Jaclyn Blust as a relief defendant.

## CONCLUSION

For the foregoing reasons, this Court should deny Jaclyn Blust's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss.

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

ERIC HALPERIN
Enforcement Director

RICHA SHYAM DASGUPTA
Deputy Enforcement Director

TIMOTHY M. BELSAN
Assistant Litigation Deputy

/s/ Shirley Chiu
Shirley Chiu
E-mail: shirley.chiu@cfpb.gov
Phone: 202-435-7592
Vanessa Buchko
E-mail: vanessa.buchko@cfpb.gov
Phone: 202-435-9593
Monika Moore
E-mail: monika.moore@cfpb.gov
Phone: 202-360-5905
Joseph Sanders
E-mail: joseph.sanders@cfpb.gov
Phone: 202-377-9846
1700 G Street, NW
Washington, DC 20552

15

Facsimile: (202) 435-7722

And

LETITIA JAMES
Attorney General of the State of New York

/s/ Christopher L. Boyd
Christopher L. Boyd
Genevieve S. Rados
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Phone: (716) 853-8457
Email: Christopher.Boyd@ag.ny.gov

16