**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

CONSUMER FINANCIAL PROTECTION
BUREAU, ET AL.

      Plaintiffs,                                        Case No.: 24-cv-00040

v.

STRATFS, LLC, ET AL.

      Defendants.

_____

**STRATEGIC'S RESPONSE TO RECEIVER'S REQUEST FOR INSTRUCTION**
**AND MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

On May 22, 2024, Receiver Thomas McNamara filed an "Emergency Request for Instruction and authorization" (*see* Dkt. 359-1 at 1, "Emergency Request") to "wind down … certain of the law firm debt relief operations at Strategic." *Id.* In so doing, the Receiver first – without providing any supporting evidence - doubles-down on his assertion that "the migration of the consumers [to a contingent fee model] would not be profitable or lawful" (*see id.* at 5), and then requests this Court's permission to wind down "certain of Strategic's operations in the law firm debt relief model." *Id.* The Court should not allow it.

As a preliminary matter, the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. Accordingly, this Court cannot authorize the Receiver to shut down the very companies that are the subject of the Preliminary Injunction that is being appealed to the Second Circuit. For this reason alone, the Receiver's request for instruction should be disregarded.

1

Moreover, contrary to the Receiver's conclusory statements, CIBC and Valley Bank have indicated that continued operation of Strategic would increase Strategic's chances of being able to repay some or all of the indebtedness owed to the banks, and the Receiver provides no analysis as to why the migration would be unlawful.  Indeed, due process mandates that a hearing take place concerning the Receiver's assumption that Strategic cannot be operated lawfully or profitably.  Therefore, the Receiver's "request for instruction" should once again be denied.

Further, through his emergency request, the Receiver has demonstrated that he refuses to even attempt to profitably run Strategic (*but see* Dkt. 184 §IX(N)), including entities that have always operated under a compliant continent fee model and have no connection to the Government's TSR violation allegations, namely Atlas Debt Relief LLC ("Atlas"), Timberline Financial LLC ("Timberline") and Versara Lending LLC.  Accordingly, Strategic hereby moves to modify the Preliminary Injunction to remove Atlas and Timberline from the definition of "Receivership Defendants" (*see* Dkt. 184 §9(N)) and Versara from the list of "Corporate Defendants" (*see* Dkt. 184 §9(D)) under the Receiver's control.

## I.      *This Court does not currently have jurisdiction to order the shutdown.*

The U.S. Supreme Court has held that "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982)*.  Notwithstanding this authority, the Receiver now asks this Court to authorize the shuttering of the very Strategic entities that are the subject of the Preliminary Injunction being appealed.  Respectfully, during

the appeal, this Court does not have jurisdiction to order such a closing, and the Court should reject the Receiver's request for instruction on this ground alone.

## II.     *Due Process Mandates a Hearing Concerning the Lawfulness of the Migration*

Should the Court entertain the Receiver's request for instructions to wind down Strategic's law firm debt relief model operations (which it should not), it would implicate due process concerns requiring, at very least, a hearing on the issue. Specifically, this hearing must address the lawfulness of Defendants' proposed migration to a contingent fee model.

A government action depriving a person of life, liberty, or property must be implemented in a fair manner, constituting "procedural due process." *See Rodriguez v. Barr*, 488 F. Supp. 3d 29, 37 (W.D.N.Y. 2020); *see also Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 365 (S.D.N.Y. 2005) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments") (internal quotations and citations omitted). When these protected interests are implicated, the right to some kind of prior hearing is paramount. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972). Indeed, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Accordingly, the United States Supreme Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The Receiver's request for leave to wind down Strategic's law firm debt relief model unquestionably affects a protected property interest, and accordingly, due process necessitates that

Strategic be given an opportunity to challenge the Receiver's assessment as to the unlawfulness of the proposed migration to a contingent fee debt relief plan.  Indeed, Statements from the Receiver's own April 15, 2024 report imply the necessity of a hearing on the issue: The Receiver, in assessing the lawfulness of the proposed migration, specifically stated that "there are also **factual questions** of lawfulness regarding the proposed migration to a law firm contingent fee model." (Receiver's Rpt., Apr. 15, 2024, [Doc. 292-1] p. 13). The Receiver's assessment that the proposed contingent-fee model is unlawful should not be free from scrutiny, especially considering the significant flaws in the analysis that led to said determination, as discussed in section II, *infra*.

Therefore, the Court should hold a hearing on this issue rather than merely adopt the Receiver's recommendations concerning lawfulness.

### III.    *Strategic's Proposed Migration to a Contingent Fee Model Complies with the TSR*

Contrary to the conclusory determination included in the Receiver's April 15 and May 22 reports, the proposed contingent fee model is lawful because it complies with the TSR.

Plaintiffs alleged in their complaint that Defendants engaged in "conduct to request and receive fee from consumers in connection with enrolled debts even though Defendants had not yet renegotiated, settled, reduced, or otherwise altered the terms of these debts under a settlement agreement, debt-management plan, or other such valid contractual agreement executed by the consumers." (*Complaint*, Jan. 13, 2024, [Doc. 1] ¶ 173). Specifically, Plaintiffs claimed that these alleged actions were "abusive telemarketing practices" as defined by 16 C.F.R. § 310.4(a)(5)(i)(A)-(B), which states:

> It is an abusive telemarketing act or practice and a violation of this part for any seller or telemarketer to engage in the following conduct:
>
> (5) (i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector;

16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

The proposed migration to a contingent fee model complies with these provisions of the TSR. The Defendants' "Client Program Transition Plan" specifically details how the previous advanced fee model will be converted into a contingency based model, taking into consideration any advance fees already paid to the law firms and converting them to a credit that would be worked off by achieving new settlements and recalculating new contingency settlement fees for any new settlements. (*Client Program Transition Plan*, Apr. 10, 2024, [Doc. 276-2] p. 3). Most importantly, under the proposed migration, the Law Firms would not charge any fees to clients until client-approved settlements have been presented to them and the clients have made a payment toward the approved settlement. *Id.* Moreover, clients will receive credit for any previously paid fees under previous debt relief programs. The migration to this contingent fee model will be enacted through execution of an addendum to the client's already existing contract, explicitly stating a contingency fee structure proportional to the debt settled. *Id.* This model has been specifically structured to comply with the TSR, and Defendants neither request nor receive fees from consumers before a settlement is reached. *See id.*

The Receiver's reports, however, ignore the proposed transition's facial compliance with the TSR in determining that the model is not lawful. The Receiver himself seems to hedge his determination by stating that "there are also factual questions of lawfulness regarding the proposed migration to a law firm contingent fee model." (Receiver's Rpt., Apr. 15, 2024, [Doc. 292-1] pp.

13-14). As discussed in section I, *supra*, this requires, at very least a hearing concerning the lawfulness of the proposed migration.

Further, the analysis included in the Receiver's April 15, 2024 Report, and referenced in the May 22, 2024 Report, is littered with unsupported assumptions based on preliminary findings wholly irrelevant as to whether the proposed migration is lawful. Specifically, the Receiver, throughout his assessment, repeatedly assumes that the proposed plan is unlawful *per se* on the basis of preliminary findings concerning past business practices. For example, the Receiver cites the court's preliminary findings that the "Defendants and Law Firms . . . took unlawful advance fees" in assuming that "engagement agreements are void as a matter of state contract law." (Receiver's Rpt., Apr. 15, 2024, [Doc. 292-1] pp. 13-14). This statement is speculatory and unsupported by any reference to corroborating legal authority. *See id.* The April 15 Report also states that, "The Receiver also found evidence of the unlawful practice of law and fee-splitting between the Law Firms (via Blust) and StratFS (via Sasson) . . . These findings must be considered in the Receiver's analysis of whether the business can be operated lawfully." *Id.* at 14. This statement again does not speak as to whether a contingent-based model complies with the TSR, but rather only reflects the Receiver's unsupported speculation as to whether prior practices will contaminate future practices. Notably, there is no evidence of fee-splitting here; rather there is likely documentation showing how Strategic and the Law Firms split certain *expenses*. This specific discrepancy between the Receiver's assumption and reality alone highlights the need for a hearing.

Relatedly, and most troubling, the Receiver's assessment as to the proposed model's lawfulness is entirely devoid of any reference concerning whether the proposed model complies with the TSR. *See* (Receiver's Rpt., Apr. 15, 2024, [Doc. 292-1] pp. 13-14). This coupled with the

fact that neither report makes any reference to legal authority demonstrating how the proposed model is unlawful justifies additional inquiry by the Court. *See id* at 13-14; *see also* (Receiver's Rpt., May 22, 2024, [Doc. 359-1] p 5).

The contingent fee model proposed by Strategic facially complies with the provisions of the TSR that Plaintiffs' claim Defendants were violating. Compliance with the statutory mandate warrants additional consideration as to the lawfulness of the proposed migration. The Court should not simply rely upon the speculative opinion of the Receiver, especially considering the significant assumptions relied upon in reaching the conclusion that the proposed contingent fee model is unlawful.

**IV.    This Court should modify the Preliminary Injunction by removing Atlas and Timberline from the definition of "Receivership Defendants" and Versara from the Receiver's control.**

A district court's "decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigiano's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). The burden is on the moving party to show that the injunction should be modified. See SEC v. CKB168 Hold., Ltd., 13-CV-5584, 2017 WL 4465726, at *4 (E.D.N.Y. Jun. 20, 2017).

Generally, as discussed above, once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. N.Y. State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989). But pursuant to FED. R.Civ.P. 62(d), "[w]hen an appeal is pending from an interlocutory order … that grants … an injunction, the court may … modify … an injunction on terms of bond or other terms that secure the opposing party's rights." Under those circumstances, "the filing of a notice of appeal only divests the district court of

jurisdiction respecting the questions raised and decided in the order that is on appeal." *New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989)*; *see Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966, 972 (2d Cir. 1975)*, *abrogated on other grounds by Government of U.K. of Gr. Brit. v. Boeing Co., 998 F.2d 68, 71 (2d Cir. 1993)*; *Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53 (2d Cir. 2015)*.

In this instance, the question raised and decided in the Preliminary Injunction Order was whether Defendants were in violation of the TSR.  But importantly, Atlas, Timberline, and Versara do not operate in a manner that implicates the TSR, and therefore, they do not fall within the questions raised and decided in the subject order.  These entities should never have been included in the Preliminary Injunction Order in the first instance.  Indeed, there was no evidence offered during a two-day hearing implicating Atlas, Timberline, or Versara in any violation of the TSR.  Accordingly, unlike the Receiver's request, this Court does have jurisdiction to modify the Preliminary Injunction Order in this respect.

Indeed, the present circumstances call for this Court to modify the Preliminary Injunction by removing Atlas and Timberline from the definition of "Receivership Defendants" and Versara from the Receiver's control to secure Strategic's rights.  The Second Amended Complaint (Dkt. 366) makes no allegations that Atlas, Timberline, or Versara[1] violate the TSR in any fashion, nor could it, because Atlas, Timberline, and Versara operate on a compliant contingent fee model.  Moreover, the Receiver has continuously demonstrated that he refuses to even attempt to profitably run Strategic (*but see* Dkt. 184 §IX(N)), and his latest submission also demonstrates a severe aversion to contingent fee models, their compliance notwithstanding.

---

[1] Paragraph 159 of the Second Amended Complaint that Versara was "ostensibly a lender" and received feeds from debt-relief consumers.  These were contingent fees.

For these reasons, Strategic hereby moves to modify the Preliminary Injunction to remove Atlas and Timberline from the definition of "Receivership Defendants" (*see* Dkt. 184 §9(N)) and Versara from the Receiver's control.

## CONCLUSION

This Court should deny the Receiver's request to wind down certain aspects of Strategic's operations and modify the Preliminary Injunction to remove Atlas, Timberline, and Versara from the Receiver's control.

Dated:  Buffalo, New York
        June 7, 2024

Respectfully submitted,

/s/ *Dennis C. Vacco*
Dennis C. Vacco, Esq.
LIPPES MATHIAS LLP
*Attorneys for Defendants*
50 Fountain Plaza
Buffalo, New York 14202
(T) 716.853.5100
(E) dvacco@lippes.com