UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>STRATFS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>　　　　　　　　　Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>　　　　　　　　　Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**RECEIVER'S COMBINED REPLY IN SUPPORT OF
REQUEST FOR FURTHER INSTRUCTION**

## I. INTRODUCTION

In response to the Receiver's request for instruction, the Intervening Law Firms ("Law Firms") and the Strategic group of Defendants ("Strategic Defendants") offer a series of unpersuasive, scattershot arguments. Their positions fly in the face of the Court's findings, ignore the negligible role the Law Firms actually had in settling consumer debts, disregard and misunderstand well-established legal principles affirming the Court's broad equitable authority to manage and oversee an equity receivership, and distort what the Receiver has proposed. The Law Firms and the Strategic Defendants offer little to nothing new, and most of their arguments have been previously rejected by the Court.

## II. DEFENDANTS AND LAW FIRMS DISTORT THE NATURE OF RECEIVER'S REQUEST FOR INSTRUCTION

Contrary to the Law Firms' and the Strategic Defendants' characterization, the Receiver's request is fully appropriate, and it does not seek new injunctive relief. Instead, the request derives from the Preliminary Injunction (Dkt. No. 184; *see also* the detailed Decision and Order [Dkt. No. 183] granting the Preliminary Injunction), which provides ample authority to provide the guidance the Receiver seeks. Thus, the Law Firms' and the Strategic Defendants' claims that the request amounts to another injunction can be summarily dismissed.

### A. It is Clearly Appropriate for the Receiver to Request the Court's Instruction Regarding the Application of the Preliminary Injunction

The Law Firms and the Strategic Defendants present an inaccurate picture of the Receiver's request and ignore the Court's very broad discretion to manage and oversee a federal equity receivership. The Court ordered the Receiver to exercise his business judgment in good faith when carrying out his many court-appointed tasks, and the Receiver has routinely done so throughout this case. Though there is no requirement to obtain further court orders when making business decisions, the Receiver is fully permitted as the agent of the Court to seek instructions

1

and direction from the Court on decisions of consequence when the Receiver deems it necessary or appropriate in the course of administering the receivership estate. Indeed, receivers have great latitude to request advice and guidance from the appointing court while discharging their duties.

Under well-established hornbook law, receivers are at all times entitled to apply to the court for instructions. *See generally*, 2 Clark on Receivers § 361, at 618-19 (3d ed. 1959, reissued 1992) ("Receivers have a very large latitude in the matter of asking advice and seeking the protection of the court appointing them with reference to the discharge of their duties…[t]hey are at all times entitled to apply to the court for instructions"). A receiver's ability to request instructions, and the court's ability to so instruct the receiver, are important to the orderly administration of the receivership estate and consistent with federal receivership practice. Federal courts have wide latitude in supervising a receiver and may administer receivership as they deem appropriate. *See* 13 Moore's Federal Practice § 66.06[4][a], at 66-22 (3d ed. 2012). This broad authority derives from the general powers of equity to issue orders as necessary for the administration of the estate. *See generally*, Fed. R. Civ. P. 66; *see, e.g.*, *SEC v. Hardy,* 803 F. 2d 1034, 1037-38 (9th Cir. 1986). In *Hardy*, the Ninth Circuit discussed the court's broad equitable authority to issue orders pertaining to its oversight and administration of a receivership estate as follows:

> First, a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad …. The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions…. Secondly, we have acknowledged that a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors… Accordingly, we generally uphold reasonable procedures instituted by the district court.

*Id.*

The Receiver's request here is a natural outgrowth of the questions the Court posed at the April 22, 2024 hearing. *See* April 22 Tr. at 95:17-21 (the Court asked: "[I]f this plan that they have isn't profitable? Isn't lawful? And we're not going to follow it? Are you going to wind the business down or do I wind the business? What – what's going to happen then?"); *see also id.* at 97:12- 98:8.3 and 97:12-98:8. The request for instruction is also in the heartland of the type of request an equity receiver may make to the appointing federal court.

B.    **The Receiver's Request for Instruction is Not a Motion for Injunctive Relief**

The Law Firms argue that the Receiver's request for instruction is, in substance, a motion for injunctive relief. Dkt. No. 375, at 4-7. It is not. It is a request for guidance regarding how to best carry out the provisions of the *existing* Preliminary Injunction for the protection of consumers. The Preliminary Injunction expressly orders the Receiver to:

> Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however*, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the receivership estate;

(PI § IX.N [emphasis in original].) In accordance with this provision that the Receiver must make a "good faith determination" regarding whether "the businesses can be lawfully operated at a profit," the Receiver has determined that neither the Law Firm Debt Relief Model as presently constructed nor the Defendants' and Law Firms' proposed client migration can be carried out lawfully and profitably. The Receiver's April 14 request for instruction (Dkt. No. 292-1) and the instant request for further instruction reflect this determination, propose a potential next course of action, and seek the Court's guidance. None of this entails the issuance of any new dispositive or injunctive relief, but only the application of the existing Preliminary Injunction.

3

The Law Firms' argument here is premised on the notion that an instruction to wind down aspects of the Law Firm Debt Relief Model would require cooperation by the Defendants, upon threat of contempt.  Dkt. No. 375, at 5.  But the Receiver's authority to wind down the Law Firm Debt Relief Model, and the obligation of Defendants and the Law Firms to cooperate, *already* exists in the Preliminary Injunction.  Thus, there is no need for an additional injunctive order to issue to provide the instruction.

      C.      **As the Receiver's Request for Instruction Concerns How to Carry Out the Provisions of the Preliminary Injunction, the Magistrate Judge Retains Authority to Issue Such Instructions**

The Law Firms also argue that pursuant to 28 U.S.C. § 636(b)(1), a Magistrate Judge is not permitted to issue the instructions requested by the Receiver, because they claim the request should be treated as a "dispositive motion."  Dkt. No. 375, at 7.  However, this provision applies only to specific enumerated motions, including, *inter alia*, motions for injunctive relief, judgment on the pleadings, summary judgment, or dismissal.  28 U.S.C. § 636(b)(1)(A).  None of those are at issue here.

Moreover, in challenging the authority of the Magistrate Judge, the Strategic Defendants and Law Firms ignore a key fact: they expressly agreed the Magistrate Judge was empowered to determine whether to issue the Preliminary Injunction.  As such, the Magistrate Judge maintains jurisdiction over the enforcement of the Preliminary Injunction, compliance with the Preliminary Injunction, and oversight and management of the Receiver under the Preliminary Injunction.  It is particularly appropriate here not only as it involves the enforcement of the Preliminary Injunction, but also because of the Court's intimate knowledge of this case and underlying business, its hands-on role adjudicating the Preliminary Injunction, and its involvement in attempts to resolve numerous issues over the past five months.  Seeking the Court's guidance in

this manner also enabled all parties – including the Law Firms – to provide input into the decision.

The Law Firms' and Strategic Defendants' arguments ignore the broad discretion granted to the Court regarding the Preliminary Injunction and its obvious authority to continue to oversee the equity receivership it established. As the Receiver is seeking instruction regarding the course of action to be taken under the same Preliminary Injunction, the authority to provide those instructions continues to rest with the Magistrate Judge.

**III.   DEFENDANTS' APPEAL DOES NOT DEPRIVE THIS COURT OF AUTHORITY OVER RECEIVER'S REQUEST**

Strategic Defendants argue that the Court does not have authority to instruct the Receiver regarding the proposed wind down while their appeal of the Preliminary Injunction order is pending. Dkt. No. 374-1, at 2-3. In effect, Strategic Defendants argue that enforcement of the Preliminary Injunction (including Section IX.N, which only permits the Receiver to carry on the business if it can be done lawfully and profitably) should be stayed pending their appeal. But injunctions and receiverships are not automatically stayed by the filing of an appeal, and Defendants' motion for a stay pending appeal was carefully considered and denied by the Court. Fed. R. Civ. P. 62(c); Dkt. No. 281.

Defendants rely on *N.Y. State Nat. Org. for Women v. Terry* for the proposition that "once a notice of appeal is filed, the district court is divested of jurisdiction over matters being appealed." Dkt. No. 374-1 at 7 (*citing* 886 F.2d 1339, 1350 (2d Cir. 1989)). But on the very same page of *Terry* cited by Defendants, the Court wrote: "Congress permits, as an exception to the general rule, an immediate appeal from an interlocutory order that either grants or denies a preliminary injunction. In such case the matter does not leave the district court, but proceeds there on the merits, unless otherwise ordered." 886 F.2d at 1350. In short, it is black-letter law

5

that the Court maintains jurisdiction over the Preliminary Injunction and its enforcement while the Defendants' and Law Firms' appeal is pending.  And given the state of uncertainty for the consumers enrolled in the Law Firm Debt Relief Model, the Court should not wait until Defendants' appeal is concluded before addressing the request; indeed, doing so would be inconsistent with efforts to protect consumers.

## IV. THE COURT HAS HEARD AND CONSIDERED SUFFICIENT EVIDENCE TO INSTRUCT THE RECEIVER, AND THE LAW FIRMS' FACTUAL CLAIMS ARE INACCURATE

The Law Firms' and Strategic Defendants' arguments ignore the Court's extensive familiarity with this case and the underlying business which makes it uniquely suited to consider and determine the request for instruction.  The Court held a multi-day evidentiary hearing, considered substantial briefing by the parties, and presided over intense settlement discussions for weeks.  Ultimately, over the strident objections of the Strategic Defendants and the Law Firms, the Court issued the Preliminary Injunction and appointed the Receiver to carry out enumerated tasks, including making recommendations to the Court regarding what aspects of the Strategic businesses could be re-started and operated lawfully and profitably.  At the same time, the Court prohibited the Receiver from operating aspects of the Strategic businesses that could not be operated lawfully.  The Law Firms and Strategic Defendants have nevertheless repeatedly petitioned the Court to force the Receiver to take certain actions that would revive the Law Firm Debt Relief Model since the Preliminary Injunction.  The opposition to the request for instruction is simply more of the same from the Law Firms.

As to the substance of the Law Firms' claims, they present an inaccurate depiction of what their role was, altogether ignoring the many findings made by the Court as to the almost non-existent role that the firms have in the Law Firm Debt Relief Model.  To the contrary, the evidence confirms a minimal role by the Law Firms:  they did nothing to generate consumer

leads (which were sourced by flagrantly misleading "consolidation loan" flyers orchestrated by Strategic) (*see* Dkt. No. 183, at 17); the selling of the program was done by Strategic sales staff (*id.* at 17-18); the consumers signed engagement agreements in front of third-party notaries – the Law Firms were not aware they had a "client" until the consumer-executed engagement agreements were uploaded to a portal (*id.* at 22-23, 29; *see also* Dkt. No. 115-1, at 24-25); the Law Firms had almost no interaction with consumers (beyond a welcome call) and did not participate in the debt negotiation and settlement (except to rubber stamp the settlement after the consumer had signed off) (*see* April 22 Tr. at 113:5-11); and the Law Firms generally offered no other counseling to and had almost no contact with consumers during the debt negotiation process (when consumers called they spoke to Strategic employees) (*Id.*; *see also* Dkt. No. 183, at 30 and 31 n. 19; Dkt. No. 115-1, at 41-43).  The Court specifically found that the testimony of Richard Gustafson, who apparently now manages all the Law Firms, was not credible. PI Dec., Dkt. No. 183, at 4.

     Notwithstanding these findings, the Law Firms attempt to extoll their virtues, claiming the Receiver has disregarded all the good things that the Law Firms have done and could do for consumers.  *See* Dkt. No. 375, at 8-10.  This conveniently ignores the Court's prior findings regarding the Law Firms.  Specifically, in support of issuing the Preliminary Injunction, the Court found that "much of the funds consumers paid were applied to pay fees to defendants and/or the intervenor law firms, rather than towards building reserves to pay consumers' creditors" and discussed specific examples of consumers who paid the Strategic Defendants and Law Firms thousands of dollars in fees without significant reduction of their debts.  PI Dec., Dkt. No. 183, at 48-51.  The Court noted that "[f]or a number of these consumers, the amounts paid to defendants were significantly greater than the actual amounts of debt that defendants settled for

7

them," and found based on testimony of Strategic Defendants' accounting expert that for 44% of StratFS and Law Firm clients, "their fees exceed the amount of their debt reduction." *Id.* at 49; *see also* Dec. Denying Stay, Dkt. No. 281, at 9 ("evidence presented during the preliminary injunction hearing showed that many consumers who enroll in defendants' debt relief program are negatively impacted, either because they do not complete the program or because they pay more money in fees than they save in the form of debt settlement or debt relief…the Court found 'little evidence of an obvious and appreciable benefit to consumers enrolled in the debt-relief program, and [found] evidence that many consumers leave the program economically worse off than when they enrolled'"). Law Firm clients who withdrew from the program before settling their debts lost an aggregate amount of over $64 million. *Id.* at 51. The Court also discussed several exemplar Law Firm clients who "suffered from negative impacts to their credit scores, wage garnishments, or frozen bank accounts" as a result of their participation in the program. *Id.* at 52.

      The Law Firms claim to want "open discussion" to implement the "true nature and intent of the Preliminary Injunction." Dkt. No. 375, at 9. The Receiver has been and remains open to having discussions with all parties. As this Court is aware, the Law Firms and Strategic (primarily through Mr. Vacco) did engage with the Receiver on a proposal to migrate consumers from the Law Firm Debt Relief Model to a contingent model in March. *See* Dkt. No. 292-1 (Receiver's first Request for Instruction), at 7-14; Dkt. No. 276-1 (Declaration in Support of Strategic Defendants' Motion for OSC), at 2-4; Dkt. No. 306 (Receiver's Opposition to Strategic Defendants' Motion for OSC), at 2-6. The Receiver's team undertook an extensive analysis of the proposal and ultimately concluded the proposal was not profitable and not lawful. In early April, Mr. Vacco was provided the full financial model, which laid out the financial forecast in

8

detail. He and Defendant Sasson attended and participated in a presentation of the financial model to the banks – and the financial model demonstrated the proposal was not profitable even before accounting for anticipated consumer refunds of $52 million. The Strategic Defendants have now had the financial model for more than two months. They have never challenged any of the projections.

V. **DEFENDANTS' REQUEST TO REMOVE ATLAS, TIMBERLINE, AND VERSARA FROM THE RECEIVERSHIP IS WITHOUT MERIT**

Strategic Defendants' "motion" to remove Atlas, Timberline, and Versara from the Receivership is baseless. These entities clearly fall within the definition of Receivership Defendants, given that they are Strategic subsidiaries and are the common control under and ownership of these businesses by Individual Defendants in this case. (*See* Dkt. No. 184 at 7.) Strategic Defendants' argument essentially boils down to this: these entities can be operated lawfully and profitably, and so they should be removed from the Receivership and, apparently, returned to the Strategic Defendants. But that is not how the Preliminary Injunction is structured. The businesses that can return to operations lawfully and profitably remain Receivership Defendants. Here, the Timberline/Atlas revenues have enabled continued Strategic operations, and the primary mission of those operations for the last five months has been to provide customer service and support to Law Firm Debt Relief consumers.[1]

What is not envisioned is what the Strategic Defendants apparently propose: returning these assets to the Strategic Defendants. This is practically impossible, because the IT systems

---

[1] At the time of the receivership, UBS was owed more than $80 million from Versara. Versara operations have funded the continued payment of this UBS obligation and these payments remain current. And, as the Court is aware, CIBC and Valley banks claim a senior lien loan position on almost all Strategic assets related based on an outstanding loan of roughly $35 million. Timberline/Atlas operations have enabled payment to current vendors and continued interest payments to the banks (but not principal repayment).

9

and infrastructure necessary to run these businesses are Receivership Assets, but beyond this, the Strategic Defendants are not permitted to the return of assets determined to be lawful and profitable during the pendency of the Preliminary Injunction. If they prevail in this case, they would be entitled to these Assets (subject to any superior liens or loans). If the plaintiffs prevail, the Assets of Versara, Atlas, and Timberline (again, subject to any senior liens or loans) would be available for consumer redress.

Moreover, Strategic Defendants' request to remove Versara, Atlas, and Timberline from the receivership would directly disturb the Preliminary Injunction that is currently on appeal with the Second Circuit. It is noteworthy that Strategic Defendants argue, incorrectly, that while the appeal is pending, this Court is deprived of jurisdiction to address a request for instruction pursuant to the Preliminary Injunction, while simultaneously arguing that *modification* of the injunction is permitted. The Strategic Defendants have it precisely backwards. The law is clear the Court should not disturb the existing injunctive order while the appeal is pending, but it is equally clear the Preliminary Injunction remains in force, including the ability to provide instruction under the Order.

**VI.   CONCLUSION**

The Receiver respectfully requests that the Court provide the instruction requested.

Dated: June 14, 2024                                **MCNAMARA SMITH LLP**

By: ＿＿/s/ *Logan D. Smith*＿＿＿＿＿
Logan D. Smith (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 269-0400
Facsimile: (619) 269-0401
Email: lsmith@mcnamarallp.com;
awall@mcnamarallp.com

*Attorneys for Court-appointed Receiver,
Thomas W. McNamara*