UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>               Plaintiffs,<br><br>vs.<br><br>STRATFS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>            Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>            Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**RECEIVER'S SECOND INTERIM APPLICATION
FOR ORDER APPROVING FEES AND EXPENSES OF
THE RECEIVER AND PROFESSIONALS**

## I.   INTRODUCTION

The receiver, Thomas W. McNamara ("Receiver"), respectfully submits this second application for fees and expenses to the Court.  The requested fees and expenses are based on work performed during the five-month period from March 1, 2024 through July 31, 2024 (the "Application Period").

The Receiver continues to serve pursuant to the Preliminary Injunction ("PI") entered March 4, 2024 (Dkt. No. 184).  The PI authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order[.]"  PI, Section IX.I., page 19.  The PI further provides that the "Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation."  PI, Section XV, pages 29-30.

## II.   LEGAL STANDARD

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred…[t]he amount of the compensation is to be determined by the court in the exercise of its reasonable discretion." *SEC v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *SEC v. Byers,* 590 F Supp. 2d 637, 644 (S.D.N.Y. 2008)).  A "Court may also consider 'the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed.'"  *Id.* (citing *SEC v. Amerindo*

1

*Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015)).  The "presumption of reasonable compensation extends to a receiver's counsel and professionals."  *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848, 2018 U.S. Dist. LEXIS 165797 (E.D.N.Y. Sept. 26, 2018).

Whether a fee is reasonable requires consideration of several factors, "including '(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented.'"  *Id.* (quoting *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018)).  In assessing the Receiver's first interim fee application (Dkt. No. 241), the Court found the hourly rates of the Receiver, counsel, and accountants to be reasonable (Dkt. No. 358 at 8-9), and those rates remain the same in this application.

III.    **DISCUSSION OF RECEIVERSHIP ACTIVITIES DURING THE APPLCATION PERIOD**

A.    **Day-to-Day Oversight of the Receivership Estate**

As previously reported in numerous filings by the parties and the Receiver, the underlying Receivership Defendants' business was sweeping in scale and complexity.  During the Application Period, much of the work done by the Receiver team, counsel and accountants, concerned traditional receivership duties. The invoices attached to the Receiver's declaration provide time entries which reflect detailed descriptions of the work performed.  A high-level description of some major projects follows.

The Receiver team and counsel exerted significant effort after the issuance of the PI on March 4, 2024 (at the beginning of the Application Period) associated with the permanent cessation of the law firm debt relief model operations.  This entailed extensive efforts related to managing the termination of the majority of the Strategic employees, which involved

2

coordinating insurance, COBRA, 401k accounts, and other benefits.  At the same time, the Receiver has continued to oversee the provision of customer support to the law firm debt relief consumers pending a Court determination on how to proceed with these 50,000+ customers.

The Receiver team has presided over the continued operations of the direct to consumer ("DTC") debt relief operations of Timberline and Atlas.  These businesses have more than 100 employees and contractors, and since restarting operations in January, Timberline and Atlas have generated an average of $1,631,000 in monthly revenue.  Providing support for the law firm debt relief model customers and operating the DTC businesses necessitates frequent coordination with CIBC and Valley Bank, the Receivership Defendants' primary lenders, which assert a secured interest over most Receivership Estate Assets.  The Receiver's accountant is in daily contact with the banks, routinely providing cash flow projections and other financial reporting data, and coordinating vendor and payroll payments, among many other responsibilities.

The Receiver team also supervised the Versara loan portfolio servicing operation and the recent transfer of servicing to a third-party vendor.  This involved, among other things, calculating and ensuring the payment waterfall was correctly implemented, routinely coordinating with secured party Credit Suisse (UBS), and participating in an extended process to transfer servicing to a new vendor.  From January 11th to present, Versara has been able to significantly reduce the principal balance of the Credit Suisse (UBS) warehouse loan.

Beyond these traditional receivership activities, the Receiver team has addressed a myriad of other issues, including: responding to numerous direct inquiries from consumers and former employees; responding to inquiries from substitute counsel representing law firm debt relief consumers; responding to inquiries from state regulators; responding to a variety of requests from Plaintiffs, Defendants, and Intervenor Law Firms for company and consumer data

3

and consumer files; collecting hard copies of business records and arranging for the destruction of non-business customer records containing consumers' personal information; and making substantial effort to analyze the companies' customer relations management database (SalesForce) to categorize customers into the different stages of the debt relief program for purposes of analyzing the consumer migration proposals offered by the Strategic Defendants and Intervenor Law Firms (and later prepare a Request for Instruction for the Court on how to address the law firm debt relief model consumers).

**B.     Litigation Relating to Fidelis, Strategic Defendants, Lit Def, Jason Blust, and the Intervening Law Firms**

As the Court is also acutely aware, this case has been actively litigated, to say the least, particularly during the first three months of the five-month Application Period.  In addition to oversight of ongoing receivership financial and operational matters, a significant portion of the Receiver's, counsel's, and accountants' time during the Application Period was expended in responding to motions filed by Fidelis, the Intervenor Law Firms, and the Strategic Defendants. The Receiver was also compelled, upon discovery of contemptuous conduct by the Blust-related defendants and Intervenor Law Firms, to file OSC re contempt motions.  During this time, the Receiver filed twenty-five substantive pleadings and participated in hearings held on March 25th, April 22nd, May 23rd, May 29th, and June 17th, in addition to attending the settlement conference held on July 10th-11th, 2024.

As detailed in the attached invoices, a substantial amount of the fee application relates to the following matters:[1]

---

[1] The narrative here is limited given the Court's intimate familiarity with the case and the detailed time entries provided.  But the Receiver stands ready to provide further background and factual summaries should any party or third party challenge the necessity or components of the efforts.

- In late February 2024, the Receiver discovered Fidelis Legal Support Services, LLC ("Fidelis") was acting as a successor entity to Receivership Defendant Lit Def under Defendant Blust's control; on February 25, 2024, the Receiver gave notice that Fidelis was a Receivership Defendant.  The Receiver's investigation also indicates that after Fidelis replaced Lit Def, Fidelis took in millions of dollars that derived from advance fees.  Fidelis challenged this determination (Dkt. No. 190) largely based on false declarations of Defendants Jason Blust, Michelle Hinds, and Cameron Christo.[2]  The Receiver opposed Fidelis' motion, and over the course of more than two months, the parties filed nine substantive pleadings with dozens and dozens of attachments.**[3]**  Hearing dates were set for March 25th and May 23rd, but were continued, with the matter to be reset after September 20,

---

[2] After the numerous filings (motion, opposition, reply, sur-replies, and further replies) by the Parties and Receiver, on May 26, 2024 Plaintiffs filed their Second Amended Complaint (Dkt. No. 366), which named Fidelis, Christo, and Hinds as Defendants in the CFPB's lawsuit.

[3] *See* Nonparty Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 190, filed March 4, 2024); Receiver's Opposition to Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No.  212, filed March 14, 2024); Combined Reply Memorandum in Further Support of Nonparty Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 233, filed March 21, 2024); Receiver's Motion for Leave File Sur-Reply in Opposition to Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant, and Incorporated Memorandum of Law (Dkt. No. 237, filed March 25, 2024); Receiver's Further Filing in Opposition to Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 270, filed April 8, 2024); Supplemental Declaration of Counsel for Jason Blust and Lit Def Strategies, LLC (Dkt. No. 318, filed April 22, 2024); Nonparty Fidelis Legal Support Services, LLC's Combined Response to the Receiver's Sur-Reply and Supplemental Memoranda (Dkt. No. 320, filed April 22, 2024); and Receiver's Further Reply to Fidelis Legal Support Services, LLC's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 346, filed April 29, 2024).

2024.[4]  If the Receiver prevails on the Fidelis motion, he will request, among other things, that Defendants Blust, Hinds, and Christo be personally ordered to pay the Receivership Estate's attorneys' fees and costs relating to the motion;[5]

- The Intervenor Law Firms Moved to Compel the Receiver to restart support services to the Law Firms despite the fact that the PI contained provisions that prohibited the Receiver from restarting such operations.[6]  Relatedly, despite the PI's prohibitions, the Strategic Defendants sought an OSC re Contempt to compel the Receiver "to provide support services to the intervening law firms";[7, 8]

---

[4] On March 25, 2024, the parties and Receiver appeared for hearings regarding, *inter alia*, the Receiver's Emergency Motion for Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not be Held in Civil Contempt (Dkt. No. 179) and Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 190).  Fidelis requested additional time in light of documents recently discovered by the Receiver and included in a sur-reply.  Further briefing was allowed, and the hearing was continued until to May 23 (Dkt. No. 239).  On May 23, the Court determined testimony of Blust, Hinds, and Christo was necessary and continued the hearing.

[5] The Fidelis motion process has caused more than $90,000 in attorneys' fees and Receiver's costs thus far.

[6] Intervenor Law Firms' Motion to Compel (Dkt. No. 225, filed March 20, 2024); Plaintiffs' Response to Law Firms' Motion to Compel Receiver (Dkt. No. 254, filed April 1, 2024); Receiver's Opposition to Intervenor Law Firms' Motion to Compel (Dkt. No. 256, filed April 1, 2024); Law Firms' Combined Reply in Support of Their Motion to Compel Receiver to Take Certain Actions (Dkt. No. 271, filed April 8, 2024).

[7] [Strategic Defendants'] Motion for an Order to Show Cause Why the Receiver Should Not Be Compelled to Provide Support Services to Intervening Law Firms (Dkt. No. 276, filed April 10, 2024); Strategic Defendants' letter to the Court requesting a hearing (Dkt. No. 278, filed April 10, 2024); and Receiver's Opposition to Intervening Law Firms' Motion for an Order to Show Cause Why the Receiver Should Not Be Compelled to Provide Support Services to Intervening Law Firms (Dkt. No. 306, filed April 18, 2024).

[8] The fees and costs associated with addressing the Law Firms' motion to compel and the Strategic Defendants' OSC exceed $25,000.

6

- The Receiver has spent substantial time reviewing and analyzing the proposal by the Strategic Defendants and Intervenor Law Firms to migrate the law firm debt relief consumers to a contingency model.  While the Receiver was doing so, the Intervenor Law Firms engaged in unauthorized communications with consumers, which contained numerous misrepresentations. In response, the Receiver filed a report regarding protection of consumers and an emergency request for instruction, which addressed the migration proposal (with the Receiver concluding that the proposal was neither profitable nor lawful) and informed the Court of the Intervenor Law Firms' misleading outreach to consumers.[9]  These matters were heavily discussed at the Court's April 22nd hearing;[10]

- The Receiver filed a Motion for an OSC re Contempt against Defendants Jason Blust and Lit Def, based on the Receiver uncovering the fact that Lit Def (which

---

[9] Receiver's Report re: Protection of Services and Emergency Request for Instruction (Dkt No. 292-1).

[10] The Receiver's efforts to respond to the client migration proposal and address the Law Firms' initial unauthorized client communications resulted in fees and expenses exceeding $50,000.

7

was controlled by Mr. Blust) continued to operate in violation of the TRO;[11, 12]

and

- The Receiver filed a Motion for an OSC re Contempt concerning the Intervenor Law Firms' continued consumer contact after being specifically ordered by the Court at the April 22nd hearing not to contact consumers without the Court's permission to do so.[13, 14]

**C.      Benefits to the Receivership Estate and Quality of the Work**

All the services covered by the submitted invoices were directly related to the Receiver's duties and obligations under the PI.  This work, and that of his counsel, accountants, and data forensics professionals during the Application Period materially benefitted the Receivership Estate and protected consumers.

---

[11] Receiver's Reply in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 232, filed March 21, 2024); Receiver's Further Filing in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 269, filed April 8, 2024); and Receiver's Further Reply in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 347, filed April 29, 2024).

[12] The fees and costs associated with bringing the OSC against Blust and Lit Def exceeded $35,000.

[13] Receiver's Emergency Motion for an Order to Show Cause Why Intervenor Law Firms Should Not Be Held in Civil Contempt (Dkt. No. 353, filed May 6, 2024); Intervenor Law Firms' Memorandum of Law in Response to Motion for an Order to Show Cause Why They Should Not Be Held in Civil Contempt (Dkt. No. 363, filed May 24, 2024); and Receiver's Reply in Support of Emergency Motion for an Order to Show Cause Why Intervenor Law Firms Should Not Be Held in Civil Contempt (Dkt. No. 371, filed May 31, 2024).

[14] The fees and costs associated with bringing an OSC against the Intervenor Law Firms were more than $20,000.

Among other things, the work of the Receiver and his team has kept the Timberline and Atlas DTC businesses in operation, managed and then migrated existing Versara Lending, LLC loans to a third-party servicer (Vervent), managed the complex process of employee termination and StratFS payroll and employment-related issues, provided important information to consumers, revealed the Law Firms' unauthorized, deceptive, and harmful post-PI communications to consumers, uncovered Blust and Lit Def's unauthorized post-PI operations, discovered the existence and involvement of Fidelis, and determined that Fidelis is a receivership entity.

The activities of the Receiver and his team, counsel, and accountants are set forth in the Receiver's Declaration and the detailed invoices attached thereto.  As described in the Receiver's Declaration, the Receiver has examined the invoices carefully for his bills and those of his counsel and professional vendors before presenting the application to the Court.

## IV.   CONCLUSION

The Receiver now respectfully submits this Second Interim Fee Application for approval to pay the following fees and expenses for services during the five-month period of March 1, 2024 through July 31, 2024, which are detailed in the Receiver's Declaration filed with this Application:  (1) fees and expenses of the Receiver and staff to be paid to TWM Receiverships, Inc. dba Regulatory Resolutions as follows: March fees of $111,541.50 and expenses of $6,077.52; April fees of $104,420.00 and expenses of $4,619.69; May fees of $104,213.50 and expenses of $9,198.66; June fees of $76,447.50 and expenses of $4,441.40; July fees of $58,841.50 and expenses of $7,291.39; (2) fees and expenses for the Receiver's counsel, McNamara Smith LLP as follows: March fees of $81,448.50 and expenses of $2,462.75; April fees of $88,261.00 and expenses of $1,073.46; May fees of $29,818.50 and expenses of $59.95; June fees of $20,863.50 and expenses of $842.27; July fees of $25,546.00 and expenses of

$18.61; (3) fees and expenses for the Receiver's counsel, Hodgson Russ LLP as follows: March fees of $52,350.50 and expenses of $29.44; April fees of $56,239.50; May fees of $20,846.00 and expenses of $632.77; June fees of $13,505.50; July fees of $20,556.00; (4) fees and expenses of the Receiver's counsel, Ballard Spahr LLP as follows: May fees of $23,190.75 and expenses of $37.45; June fees of $8,533.35; July fees of $7,201.35 and expenses of $24.75; (5) fees and expenses for the Receiver's counsel, Hilgers Graben LLP as follows: March fees of $24,830.00 and expenses of $514.44; April fees of $21,377.50; May fees of $3,967.50; June fees of $4,657.50; July fees of $440.00; (6) fees for the Receiver's forensic accountants Mercadien, P.C. as follows: March fees of $26,488.00; April fees of $14,069.50; May fees of $22,850.25; June fees of $4,283.00; July fees of $6,094.50; and (7) fees and expenses for the Receiver's data forensic consultants Bright Labs Services, LLC (Ankura) as follows: March fees of $11,571.00 and expenses of $7,997.68; April fees of $2,179.00 and expenses of $7,981.12; May fees of $6,896.50 and expenses of $8,353.04; June fees of $4,972.50 and expenses of $8,183.76; July fees of $1,776.50 and expenses of $17,287.91.

Dated: September 4, 2024

MCNAMARA SMITH LLP

By:  /s/ *Logan D. Smith*
Logan D. Smith  (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400
Facsimile:  (619) 269-0401
Email:  lsmith@mcnamarallp.com;
awall@mcnamarallp.com
*Attorneys for Court-appointed Receiver,*
*Thomas W. McNamara*

10