UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>                    Plaintiffs,<br><br>vs.<br><br>STRATFS, LLC f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC, et al.<br><br>                    Defendants, and<br><br>DANIEL BLUMKIN, et al.,<br><br>                    Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**DECLARATION OF THOMAS W. MCNAMARA IN SUPPORT OF
RECEIVER'S SECOND INTERIM APPLICATION
FOR ORDER APPROVING FEES AND EXPENSES OF
THE RECEIVER AND PROFESSIONALS**

I, Thomas W. McNamara, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am an attorney licensed in the state of California and the Court-appointed receiver ("Receiver") in this matter.  I have personal knowledge of the facts set forth in this declaration except where, as noted, those facts have been obtained by staff acting at my direction.  If called as a witness, I could and would competently testify to the facts stated herein.

2.      By this Second Interim Fee Application, I seek approval for the payment of fees and expenses for the five-month period of March 1, 2024 through July 31, 2024 (the "Application Period"), as detailed below.

3.      I was initially appointed temporary receiver of the Receivership Defendants by the Temporary Restraining Order entered January 11, 2024 ("TRO," Dkt. No. 12).  The

1

appointment was confirmed, and the temporary designation removed, by the Preliminary Injunction ("PI") entered March 4, 2024 (Dkt. No. 184).

4.      The TRO and PI authorize the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order[.]"  PI, Section IX.I., page 19.

5.      The TRO and PI also provide that the "Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation."  PI, Section XV, pages 29-30.

6.      Receivership Activities

7.      As previously reported in numerous filings by the parties and my office, the underlying Receivership Defendants' business was sweeping in scale and complexity.  During the Application Period, and as detailed in the invoices of the Receiver team, counsel and accountants, much of the work concerned traditional receivership duties.  This involved significant effort after the issuance of the PI on March 4, 2024 (at the beginning of the Application Period) associated with the permanent cessation of the law firm debt relief model operations.  The cessation entailed extensive efforts related to the termination of the majority of the Strategic employees, including coordinating insurance and other benefits.  We have continued to oversee the ongoing law firm debt relief consumer support function pending a Court

2

determination on how to proceed with these 50,000+ customers.  Our team has coordinated with pre- and post-receivership vendors seeking to amend contracts where possible and to ensure continued availability of products and services necessary for ongoing operations of Receivership Defendants.

8.      We have overseen the continued operation of the direct to consumer ("DTC") debt relief operations of Timberline and Atlas.  These businesses have more than 100 employees and contractors and, since restarting operations in January, Timberline and Atlas have generated an average of $1,631,000 in monthly revenue.  Providing support for the law firm debt relief model customers and operating the DTC businesses necessitates frequent coordination with CIBC Bank and Valley National Bank, the Receivership Defendants' primary lenders, which assert a secured interest over most Receivership Estate Assets.

9.      Our forensic accountant, Lisa Jones, is in daily contact with the banks and routinely provides cash flow projections and other financial reporting data.  As reflected in the invoices, her work has included regularly reviewing and analyzing numerous bank statements, including reviewing daily bank transactions for all Receivership Defendant bank accounts.  She has also reconciled account balances in all Receivership Defendant accounts and maintained receipts and disbursements schedules for all Receivership Defendants, as well as working with the secured creditors to ensure that principal and interest payments are timely paid and to help facilitate the waterfall distributions.  She has prepared and monitored all payroll distributions and vendor payments.  She has also performed forensic analysis of financial transactions related to cash flow from operations.

10.      The Receiver team also supervised the Versara loan portfolio servicing operation and the recent transfer of servicing to a third-party vendor.  This involved, among other things,

calculating and ensuring the payment waterfall was correctly implemented and routinely coordinating with secured party Credit Suisse (UBS).  From January 11th to present, Versara has collected more than $33,500,000 which has been used to significantly reduce the principal balance of the Credit Suisse (UBS) warehouse loan.

11.     Some receivership activities during the Application Period have been detailed in requests for instruction from the Court.[1]  But as this Court is also acutely aware, the case has been actively litigated, to say the least, particularly during the first three months of the five-month Application Period.  A significant portion of the time spent by my counsel, accountants, and me during the Application Period was in response to, and necessitated by, actions of certain defendants and related third parties.  My team and counsel were compelled to participate extensively in the litigation, filing nearly two dozen substantive filings with the Court, many in response to motions filed by Defendants, Intervenor Law Firms, and Fidelis Legal Support Services, LLC ("Fidelis"), while others were necessitated by the conduct of the Blust-related defendants and Intervenor Law Firms.  The months of March and April were particularly busy.  Filings (in addition to the Requests for Instruction identified above) on my behalf during the Application Period include the following:

1.      Receiver's Opposition to Fidelis Legal Support Services, LLC'S Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 212, filed March 14, 2024);

2.      Receiver's Reply in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 232, filed March 21, 2024);

---

[1] Receiver's Report re: Protection of Consumers and Emergency Request for Instruction (Dkt. No. 292, filed April 15, 2024); and Receiver's Report re: Operations of Receivership Entities, Consumer Protection Efforts, and Request for Further Instruction (Dkt. No. 359, filed May 22, 2024).

3. Emergency Motion to Enforce Stay Provisions of Preliminary Injunction and for the Release of Funds to Pay Receivership Payroll and Operational Expenses (Dkt. No. 236, filed March 22, 2024);

4. Receiver's Motion for Leave File Sur-Reply in Opposition to Fidelis Legal Support Services, LLC'S Motion Challenging the Receiver's Determination that Fidelis is a Receivership Defendant, and Incorporated Memorandum of Law (Dkt. No. 237, filed March 25, 2024);

5. Receiver's Letter to the Court Withdrawing Emergency Motion to Enforce Stay Provisions of Preliminary Injunction and for the Release of Funds to Pay Receivership Payroll and Operational Expenses (Dkt. No. 240, filed March 26, 2024);

6. Receiver's First Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. No. 241, filed March 26, 2024);

7. Receiver's Letter to the Court re: Extension of Time to Respond to CIBC Bank and Valley National Bank's Motion to Intervene (Dkt. No. 251, filed March 28, 2024);

8. Receiver's Opposition to Intervenor Law Firms' Motion to Compel (Dkt. No. 256, filed April 1, 2024);

9. Receiver's Opposition to Intervenor Law Firms' Motion to Modify the Preliminary Injunction to Allow Payment of Legal Fees From a Captive Insurance Policy (Dkt. No. 259, filed April 3, 2024);

10. Receiver's Memorandum of Law in Opposition to Non-Parties CIBC Bank USA and Valley National Bank's Motion to Intervene and Lift Stay (Dkt. No. 266, filed April 4, 2024);

11. Receiver's Further Filing in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 269, filed April 8, 2024);

12. Receiver's Further Filing in Opposition to Fidelis Legal Support Services, LLC'S Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 270, filed April 8, 2024);

13. Receiver's Memorandum of Law in Limited Opposition to Uniland Partnership of Delaware L.P.'S Motion to Lift Stay (Dkt. No. 274, filed April 9, 2024);

14. Receiver's Memorandum of Law in Opposition to the Blust Family 2019 Irrevocable Trust's Motion to Modify the Preliminary Injunction and for Other Relief (Dkt. No. 296, filed April 15, 2024);

15.    Receiver's Opposition to Intervening Law Firms' Motion for an Order to Show Cause Why the Receiver Should Not Be Compelled to Provide Support Services to Intervening Law Firms (Dkt. No. 306, filed April 18, 2024);

16.    Receiver's Combined Reply in Support of First Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. No. 319, filed April 22, 2024);

17.    Receiver's Further Reply to Fidelis Legal Support Services, LLC'S Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 346, filed April 29, 2024);

18.    Receiver's Further Reply in Support of Emergency Motion for an Order to Show Cause Why Receivership Defendant Lit Def Strategies, LLC and Individual Defendant Jason Blust Should Not Be Held in Civil Contempt (Dkt. No. 347, filed April 29, 2024);

19.    Receiver's Emergency Motion for an Order to Show Cause Why Intervenor Law Firms Should Not Be Held in Civil Contempt (Dkt. No. 353, filed May 6, 2024);

20.    Receiver's Reply in Support of Emergency Motion for an Order to Show Cause Why Intervenor Law Firms Should Not Be Held in Civil Contempt (Dkt. No. 371, filed May 31, 2024);

21.    Receiver's Combined Reply in Support of Request for Further Instruction (Dkt. No. 382, filed June 14, 2024);

22.    Receiver's Letter in Response to Behar's Letter to the Court re: Access to Data (Dkt. No. 412, filed June 27, 2024); and

23.    Receiver's Response to Richard Bernard's, Richard Pearl's, and Andrew Joseph's Motion to Withdraw as Counsel for the Strategic ESOP and Strategic ESOT (Dkt. No. 419, filed July 8, 2024).

**Professional Fees and Expenses**

12.    The receivership company, counsel, and accountants agreed to discount normal rates in this receivership as reflected in our Statement of Interest and Qualification filed with the Court (Dkt. No. 4-1).[2]  In addition, as part of my obligation to maximize the value of the

---

[2] Although not noted in the Statement of Interest (Dkt. No. 4-1), James Thoman of Hodgson Russ LLP also agreed to discount his firm's rates in this receivership matter.  Similarly, the Receiver's data forensics firm, Ankura, discussed below, agreed to discount its standard rates.

Receivership Estate, I have examined my bills and the bills of counsel and professional vendors very carefully.  I cut a significant amount of charges of the receivership team and counsel prior to presenting this fee application to the Court.  While the time and fees were properly incurred and recorded, I excised these amounts from this request to assure that the fees were congruent with the tangible benefits realized by the Receivership Estate for the time entries.

**Fees and Expenses of the Receiver and Staff**

13. The fees for my time as Receiver and professional staff during this period and as set forth in the invoices from Regulatory Resolutions which are attached as **Exhibit A** are as follows:

  a. March 1-31, 2024:  $111,541.50;

  b. April 1-30, 2024:  $104,420.00;

  c. May 1-31, 2024:  $104,213.50;

  d. June 1-30, 2024:  $76,447.50; and

  e. July 1-31, 2024:  $58,841.50.

14. During the Application Period, my work included oversight of the day-to-day operations and business decisions of the receivership, and direct participation in and oversight of the many legal filings made on my behalf and attendance at Court hearings and settlement conferences.  Additionally, as described above, my forensic accountant's work spanned a variety of essential tasks, including, among other things, daily review and analysis of all bank transactions across all receivership entity accounts, account reconciliation and maintenance, payroll distribution, vendor payments, and ongoing work with secured creditors regarding payments and distributions.

15. During this five-month period, receivership and law firm administrators and staff also spent time addressing numerous StratFS issues which were not billed. These unbilled services included staff assistance to employees concerning insurance, COBRA, benefits, 401k rights, and coordinating with the administrator (Principal) to assist employees.

16. The invoices from Regulatory Resolutions also include expenses totaling $6,077.52 in March, $4,619.69 in April, $9,198.66 in May, $4,441.40 in June, and $7,291.39 in July, as detailed in **Exhibit A**.

**Fees and Expenses of the Receiver's Counsel, McNamara Smith LLP**

17. The fees for counsel McNamara Smith LLP ("McNamara Smith") during this period and as set forth in the invoices attached as **Exhibit B** are as follows:

  a. March 1-31, 2024:  $81,448.50;

  b. April 1-30, 2024:  $88,261.00;

  c. May 1-31, 2024:  $29,818.50;

  d. June 1-30, 2024:  $20,863.50; and

  e. July 1-31, 2024:  $25,546.00.

18. For the first three months of the Application Period (March, April, and May), McNamara Smith's fees were driven by actions of Defendants and Intervenor Law Firms. In June and July, fees decreased substantially to levels expected in a receivership of this size. The firm has been directly involved in all receivership activities and their services are more thoroughly described in the invoices attached as **Exhibit B**.

19. The McNamara Smith attorneys have substantial experience with regulatory receiverships. As reflected in the invoices, the attorneys' fees were incurred primarily in connection with the filings identified above.

20.     The invoices from McNamara Smith also include expenses totaling $2,462.75 in March, $1,073.46 in April, $59.95 in May, $842.27 in June, and $18.61 in July, as detailed in **Exhibit B**.

**Fees and Expenses of the Receiver's Counsel, Hodgson Russ LLP**

21.     Fees for Hodgson Russ LLP ("Hodgson Russ") during this period and as set forth in the invoices attached as **Exhibit C** are as follows:

a.     March 1-31, 2024:  $52,350.50;

b.     April 1-30, 2024:  $56,239.50;

c.     May 1-31, 2024:  $20,846.00;

d.     June 1-30, 2024:  $13,505.50; and

e.     July 1-31, 2024:  $20,556.00.

22.     As reflected in the invoices, Hodgson Russ's fees were incurred primarily in negotiating with creditors of the Receivership Defendants and parties to pending litigation against the Receivership Defendants, supporting McNamara Smith in extensive motion practice, counseling the Receiver on labor law issues, and managing communication with counsel for secured creditors.

23.     The invoices from Hodgson Russ also include expenses totaling $29.44 in March and $632.77 in May, as detailed in **Exhibit C**.

**Fees and Expenses of the Receiver's Counsel, Ballard Spahr LLP**

24.     The fees for ESOP counsel, Ballard Spahr LLP ("Ballard Spahr"), during this period and as set forth in the invoices attached as **Exhibit D** are as follows:

a.     May 1-31, 2024:  $23,190.75;

b.     June 1-30, 2024:  $8,533.35; and

   c.  July 1-31, 2024:  $7,201.35.

25. Ballard Spahr provided expert legal analysis and advice regarding the proper handling of the Strategic ESOP and Strategic ESOT.  The invoices from Ballard Spahr also include expenses totaling $37.45 in May and $24.75 in July, as detailed in **Exhibit D**.

**Fees and Expenses of the Receiver's Counsel, Hilgers Graben**

26. The fees for Hilgers Graben LLP ("Hilgers Graben") during this period and as set forth in the invoices attached as **Exhibit E** are as follows:

   a.  March 1-31, 2024:  $24,830.00;

   b.  April 1-30, 2024:  $21,377.50;

   c.  May 1-31, 2024:  $3,967.50;

   d.  June 1-30, 2024:  $4,657.50; and

   e.  July 1-31, 2024:  $440.00.

27. Hilgers Graben was retained primarily to represent the receivership in two lawsuits pending in the Chicago area (one in federal court and the other in state court).  The invoices from Hilgers Graben also include expenses totaling $514.44 in March, as detailed in **Exhibit E**.

**Fees and Expenses of the Receiver's Forensic Accountants, Mercadien, P.C.**

28. The fees for forensic accountants Mercadien, P.C. ("Mercadien") during this period and as set forth in the invoices attached as **Exhibit F** are as follows:

   a.  March 1-31, 2024:  $26,488.00;

   b.  April 1-30, 2024:  $14,069.50;

   c.  May 1-31, 2024:  $22,850.25;

   d.  June 1-30, 2024:  $4,283.00; and

      e.      July 1-31, 2024:  $6,094.50.

29.      The firm was retained to provide a comprehensive and sophisticated forensic analysis of Receivership Defendants' complex and intertwined finances.

**Fees and Expenses of the Receiver's Data Forensic Consultants, Bright Labs Services, LLC**

30.      The fees for data forensic consultants Bright Labs Services, LLC ("Ankura") during this period and as set forth in the invoices attached as **Exhibit G** are as follows:

      a.      March 1-31, 2024:  $11,571.00;

      b.      April 1-30, 2024:  $2,179.00;

      c.      May 1-31, 2024:  $6,896.50;

      d.      June 1-30, 2024:  $4,972.50; and

      e.      July 1-31, 2024:  $1,776.50.

31.      Ankura's fees primarily related to professional services relating to data collection, extraction, and preservation.  During the Application Period, Ankura coordinated with my office, StratFS management, and the Plaintiffs to access Salesforce data necessary to calculate potential damages.

32.      Ankura's invoices also include monthly technology and data-related expenses, including expenses for database storage, data processing, hosting of the Relativity database, and user licenses.  These expenses total $7,997.68 in March, $7,981.12 in April, $8,353.04 in May, $8,183.76 in June, and $17,287.91 in July, as detailed in **Exhibit G**.

**The Fees and Expenses Requested are Reasonable and Necessary**

33.      I submit to the Court that the identified services provided by me, as Receiver, and by the other designated professionals, were reasonable, necessary, and appropriate and brought

significant value to the receivership.  I have monitored the efforts of the team and have reviewed and approved the invoices which are the subject of this Second Interim Fee Application.  I request that the Court approve immediate payment of these invoices.

Executed this 4th day of September, 2024, in San Diego, California.

Thomas W. McNamara