

**Timothy W. Hoover**
Partner
561 Franklin Street
Buffalo, New York 14202
Telephone: (716) 800-2604
Facsimile: (716) 885-8569
*thoover@hooverdurland.com*
*www.hooverdurland.com*

October 7, 2024

<u>Via CM/ECF</u>

Hon. Michael J. Roemer
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:   *Plaintiffs' Letter Request for Access to Materials Fidelis Produced to the Receiver (Dkt. 444).*

Dear Judge Roemer:

      My firm represents Defendant Fidelis Legal Support Services, LLC ("Fidelis"). We write in response to Plaintiffs' letter (Dkt. 444 ("Pl. Ltr.")) requesting access to material Fidelis produced to Receiver Thomas W. McNamara, Esq. on August 16, 2024 (the "Production"). Plaintiffs' request should be denied. While we understand why unilateral, pre-answer discovery is appealing to Plaintiffs, they cite no legal authority for obtaining the Production and their claims of need are baseless.

**I.    Background.**

      We essentially agree with Plaintiffs' timeline:

- On March 4, the Court issued a preliminary injunction. (Dkt. 184 (the "Injunction").)

- On May 23, the Court announced that it would hold a hearing on the Receiver's designation of Fidelis as a "Receivership Defendant" within the meaning of the Injunction. The Receiver said he wanted pre-hearing discovery and was told to resolve his requests informally if possible.

- On August 16, Fidelis voluntarily produced to the Receiver emails and text messages meeting search criteria the Receiver had specified. In doing so, Fidelis expressly reserved all of its rights, including its right to oppose pre-answer discovery.

- On September 23, Plaintiffs asked the Receiver for access to the Production, and the Receiver relayed their request to me. I informed the Receiver that Fidelis did not consent.

- On September 24, Christopher L. Boyd, Esq. emailed the Court to request an order granting Plaintiffs access to the Production. The Court directed Mr. Boyd to resolve the issue informally or follow the Court's discovery-dispute procedures.

Hon. Michael J. Roemer
United States Magistrate Judge
October 7, 2024
Page 2

- On September 27, Mr. Durland and I spoke to Mr. Boyd by telephone.

- On September 30, I emailed Mr. Boyd to propose a compromise. Mr. Boyd replied later that day, and (seemingly) rejected the compromise I had proposed.

- On October 1, Plaintiffs filed their letter request.

We take issue, however, with several aspects of Plaintiffs' factual recitation.

First, the Court did not order Fidelis to "produce [to the Receiver] the discovery requested by the Receiver" (Pl. Ltr. at 1 (citing Dkt. 428)). Rather, the Court ordered Fidelis to "*respond to* the [R]eceiver's discovery demand." (Dkt. 428 (emphasis added).) As to many of the Receiver's demands, our response was to decline production.[1] We did, however, consent to producing various emails and text messages. Though not convinced that the Receiver had a legal right to pre-hearing discovery, we had previously requested that the Receiver provide us with the universe of emails he drew upon in his March 25 sur-reply. A reciprocal production seemed fair and appropriate.

Second, the Court did not, during the May 23 status conference, "indicate[] that Plaintiffs should receive [the Production]." (Pl. Ltr. at 2.) After the Court set the parameters for the hearing on the Receiver's designation, and directed the Receiver to resolve his discovery demands informally if possible, Mr. Boyd stated that although "this is the receiver's motion," he would like a copy of "the discovery that's exchanged," "just so we're up to speed as well for the hearing." (*Id.*, Ex. A at 82.) The Court responded "[s]ure," the Receiver immediately raised another issue, and the discussion moved on. (*Id.*) Fidelis's position was not sought, and the Court did not instruct Fidelis to do anything. (We assume this is why the Receiver declined to disseminate the Production without Fidelis's consent.)

Third, Plaintiffs' letter glosses over our September 27 phone call with Mr. Boyd and the September 30 emails regarding a potential compromise. Both exchanges shed light on Plaintiffs' true purpose.

During the September 27 phone call, Mr. Boyd asserted that he needed the Production immediately (indeed, needed it back in May) to prepare for the as-yet-unscheduled hearing. When we questioned why Mr. Boyd required the material so far in advance, he disputed that his access to the Production should be tailored to his claim of need, asserting that once a litigant receives discovery, it can use the material as it likes.

Similarly, my September 30 email stated that Fidelis would release the Production to Plaintiffs if they agreed to receive the material 14 days before the hearing, to use the material solely for the hearing, and to destroy the material after the hearing and any related appeals were complete. (Pl. Ltr., Ex. C.) Though Plaintiffs complain that I proposed these conditions "without explanation" (Pl. Ltr. at 2), my email clearly identified our rationale: "If, as you told Judge Roemer, you merely want this material 'just so we're up to speed as well for the hearing,' these conditions should be acceptable."

---

[1] The Receiver has not objected to the scope of Fidelis's response.

(Pl. Ltr., Ex. C.) Plaintiffs did not accept Fidelis's terms or propose alternative restrictions, but instead moved the Court for immediate, unfettered access.

## II. Argument.

Plaintiffs further err in stating that "Fidelis's position [is] that it will turn over the material, but only 14 days before a hearing." (Pl. Ltr. at 2.) That is one piece of the compromise Fidelis offered to resolve this issue informally. Because Plaintiffs chose litigation over compromise, Fidelis stands on the objections summarized in my September 30 email to Mr. Boyd (*Id.*, Ex. C) and developed further below.

### A. The Receiver's designation is unenforceable, and Fidelis's challenge to that unenforceable designation is moot.

Fidelis made the Production in anticipation of a hearing aimed at determining whether Fidelis is, as the Receiver asserts, a Receivership Defendant within the meaning of the Injunction. But that controversy has been overtaken by later events.

Ordinarily, a plaintiff desiring a preliminary injunction must move for that relief, *see generally* FED. R. CIV. P. 65, and make the demanding evidentiary showing needed to unlock this "extraordinary remedy," *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666 (2d Cir. 2023) (cleaned up). The Injunction's definition of "Receivership Defendants" creates an alternative mechanism for obtaining injunctive relief,[2] one that does not require the rigorous traditional showing (likelihood of success, balance of equities, etc.), but merely a showing of ownership, control, or succession. (Dkt. 184 at 7.) We have previously explained why we believe that all such alternative mechanisms are impermissible. (*E.g.*, Dkt. 320 at 2-14.) Tabling those objections for the time being, it is at least clear that, here, the Injunction paves an easier path to injunctive relief only as to nonparties. Specifically, the Injunction authorizes a Receiver's designation in the following terms: "If the Receiver identifies ***a nonparty entity*** as a Receivership Entity, [he will] promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court." (Dkt. 184 at 21 (emphasis added).[3]) The Receiver used this very process—and quoted this very passage—to designate Fidelis a Receivership Defendant. (Dkt. 190-9 at 5.) By virtue of the Second Amended Complaint, however, Fidelis is not a "nonparty entity"; it is a named defendant. (Dkt. 366.) Like any other named defendant, Fidelis cannot be preliminarily enjoined unless Plaintiffs make the rigorous showing the law has long required.

Plaintiffs' somewhat cryptic response—that "the definition of Receivership Defendant expressly includes Defendants" (Pl. Ltr. at 2)—seems to miss the point. We are not saying that named parties are necessarily excluded from the definition of "Receivership Defendants." As Plaintiffs point out, the Injunction defines "Receivership

---

[2] As we have explained elsewhere, designating a new Receivership Defendant is not merely an exercise of *in rem* jurisdiction over receivership assets. The Injunction operates against Receivership Defendants *in personam*, through a litany of affirmative and proscriptive commands. (Dkt. 320 at 1, 6-7.)

[3] This passage goes on to specify conditions under which "the Receiver may delay providing such notice until the Receiver has established control of ***the nonparty entity*** and its Assets and records." (Dkt. 184 at 21 (emphasis added).)

Hon. Michael J. Roemer  
United States Magistrate Judge  
October 7, 2024  
Page 4

Defendants" to include "Corporate Defendants" and "Relief Defendants" named in the original complaint. (Dkt. 184 at 7.) But that is not the basis for the Receiver's designation of Fidelis.[4] Rather, the Receiver is relying on the mechanism for expanding the Injunction to cover entities not privy to the original preliminary-injunction proceeding. That mechanism is expressly limited to nonparty entities. (*Id.* at 21.)

Because Fidelis is not a "nonparty entity," the Receiver's designation is unenforceable and Fidelis's challenge to that unenforceable designation is moot. Plaintiffs have no valid claim to discovery produced in anticipation of a hearing that cannot go forward.

### B. Plaintiffs do not identify any legal right to the Production.

Litigants often want discovery. But they only get discovery when and to the extent the law permits. Though Plaintiffs seek an order forcing Fidelis to grant them access to the Production, they have not identified any legal basis for the compulsion. And it is hard to see how they could. The Injunction details the procedure for designating new Receivership Defendants and for challenging those designations. These provisions do not afford Plaintiffs any discovery rights.

### C. Plaintiffs' claims of need are baseless.

Plaintiffs assert that access to the Production is "necessary" so they can "prepare for the evidentiary hearing on Fidelis's motion challenging the Receiver's designation" and "prepar[e] to file a motion to apply the preliminary injunction to Fidelis, which is to be addressed at the same hearing as Fidelis's motion [challenging the Receiver's designation]." (Pl. Ltr. at 2.) Given Plaintiffs' insistence on immediate access to the Production, and unrestricted use of it, we suspect that their true object is to obtain premature, one-way discovery not otherwise permitted by the Federal Rules of Civil Procedure. But at any rate, even when taken at face value, Plaintiffs' justifications fail to persuade.

Plaintiffs do not need to do anything to "prepare for the evidentiary hearing on Fidelis's motion challenging the Receiver's designation" (*id.*). Fidelis's challenge to the Receiver's designation is just that—a dispute between Fidelis and the Receiver. As Mr. Boyd put it during the May 23 status conference, "this is the receiver's motion," not Plaintiffs'. (*Id.*, Ex. A at 82.) We are confident that the Receiver will ably represent his own position. Plaintiffs' apparent desire to duplicate the Receiver's efforts or second-chair his hearing does not make discovery "necessary."

Nor do Plaintiffs need the Production to "file a motion to apply the preliminary injunction to Fidelis" (Pl. Ltr. at 2). For one thing, Plaintiffs' forthcoming preliminary-injunction motion will not seek "to apply" the existing Injunction to Fidelis. (Applying the existing Injunction to Fidelis is what the Receiver is trying to do through the "Receivership Defendant" designation.) The Court correctly instructed Plaintiffs that if they want a preliminary injunction against the newly added defendants, Fidelis

---

[4] Nor could it be. The "Corporate Defendants" are defined as 29 specific entities (Dkt. 184 at 4), none of which is Fidelis. The "Relief Defendants" are defined as six specific entities (*id.* at 7), none of which is Fidelis.

included, they must file a new preliminary-injunction motion and conduct a new hearing.[5]

Plaintiffs are also wrong to claim that Fidelis's challenge to the Receiver's designation and Plaintiffs' forthcoming preliminary-injunction motion raise "substantially similar" issues—namely, "whether and to what degree Fidelis played a role in the debt-relief operation described in the Complaint" (Pl. Ltr. at 2).

The dispute over the Receiver's designation turns on whether Fidelis is "controlled" by Jason Blust and whether Fidelis is a "successor" to Lit Def Strategies, LLC ("Lit Def"). (*E.g.*, Dkt. 320 at 14-24; Dkt. 346 at 6-10.) The hearing on the Receiver's designation—assuming it goes forward over our objections—will address the issues the Court enumerated: how Fidelis was formed; what law firms it served; how it obtained its business; Jason Blust's involvement; overlap between Fidelis and Lit Def; how work was assigned at Fidelis; how hiring and compensation were determined at Fidelis; how Fidelis invoices were prepared; and the $750,000 payment Fidelis received in 2021. (Pl. Ltr., Ex. A at 80.[6])

By contrast, Plaintiffs' forthcoming preliminary-injunction motion turns not on Fidelis's connections to Blust and Lit Def, but on whether Plaintiffs' claims against Fidelis are likely to succeed, whether the wrong ascribed to Fidelis is likely to be repeated, and where the public interest lies. (Dkt. 183 at 5-6.) A hearing on this motion would focus on things like whether Fidelis knowingly and substantially assisted in the intervenor law firms' collection of advance fees; whether Fidelis joined in any deceptive or fraudulent acts; whether supporting litigation defense is good for consumers or bad for consumers; whether the Receiver has continued to send litigation files to Fidelis since he was appointed; and why injunctive relief is necessary as to Fidelis, when it has been operating independently and without incident for the past six months, and Strategic's advance-fee business is already enjoined.

In sum, even if the Second Amended Complaint had not nullified the Receiver's designation, thereby mooting Fidelis's challenge, Plaintiffs have no legal right to the Production and no valid use for it. Plaintiffs' request should be denied.

---

[5] To be clear, we entirely agree with the Court that Plaintiffs cannot preliminarily enjoin Fidelis without moving for that relief and satisfying the traditional test. It is for just that reason, however, that we also object to a parallel process seeking to enjoin Fidelis upon the much lesser showing required by the definition of "Receivership Defendants." To illustrate the paradox, suppose Plaintiffs move for a preliminary injunction that would subject Fidelis to restrictions and obligations comparable to those the existing Injunction imposes on Receivership Defendants. The Court might easily wind up denying Plaintiffs' new motion—since the claims against Fidelis are doubtful and Fidelis's business only helps consumers—while simultaneously upholding the Receiver's designation, and sweeping Fidelis into the existing Injunction, based merely upon a finding that Blust partially controls Fidelis (Dkt. 184 at 7).

[6] Fidelis's "role in the debt-relief operation described in the Complaint" (Pl. Ltr. at 2) is notably absent from the Court's list of relevant issues.

Hon. Michael J. Roemer
United States Magistrate Judge
October 7, 2024
Page 6

                                                Respectfully submitted,

                                                Timothy W. Hoover

TWH/
cc:    All counsel (via CM/ECF)