IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>)  Case No. 24-cv-00040-EAW-MJR |
| v. | )<br>) |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | )<br>)<br>) |
| Defendants, | )<br>) |
| and DANIEL BLUMKIN, et al. | )<br>) |
| Relief Defendants. | )<br>) |

**DECLARATION OF RICHARD K. GUSTAFSON II**

I, Richard K. Gustafson, II, hereby declare as follows:

1. My name is Richard K. Gustafson, II. I am over 21 years of age. The statements in this declaration are made based on my personal knowledge and I would be competent to testify to them if called upon to do so.

2. I am an attorney licensed to practice law in Illinois, Indiana and California. I am currently the managing member of several consumer advocacy law firms, including Royal Legal Group ("Royal") and Hailstone Legal Group ("Hailstone"). Both firms represent clients in Kansas. Royal stopped accepting new clients several years ago. Hailstone was accepting clients until compelled to stop doing so by this Court's TRO order. Neither firm has any plans or intent to accept

new clients. I have been an owner of Hailstone since its inception and I became an owner of Royal after the death of its prior owner, Donald Norris.

3. Royal and Hailstone do not charge (and, to the best of my knowledge, have never charged) advanced fees. Rather, during my tenure, they have only charged contingent fees, *i.e.*, their clients do not pay fees until a debt is settled. Those contingent fees are designed to be proportionate and compliant with the TSR. To the best of my knowledge, the fees they have charged have been compliant with the TSR. Although I have not been with Royal since its inception, based on my review of its records and retention agreements, I believe this was true with respect to Royal prior to my arrival as well. Thus, neither firm is required to conduct a "face to face" meeting.

4. On January 11, 2024, this Court entered an *ex parte* TRO that appointed a Receiver, Thomas McNamara, to operate StratFS and its various affiliates (collectively "SFS"). As a result of that TRO (and the subsequent preliminary injunction), Royal and Hailstone have faced significant challenges. They lost their support staff at SFS, much of their technology, and much of their data (which was maintained by SFS).

5. In spring 2024, the Receiver apparently advised Global that it may process fees for Royal and Hailstone. However, those firms cannot earn fees until they settle debts. And without access to the client data and information held by SFS, Royal and Hailstone are severely impaired in their ability to settle debts and defend lawsuits for their clients.

1

6.       Following the Receiver's agreement to re-install a "skeleton crew" at SFS, Royal and Hailstone have received some service. However, it is far below the pre-January 2024 levels (and does not comply with the minimum levels set forth in their Service Agreements).

7.       Royal and Hailstone are prepared to provide the services previously handled by SFS "in house." To allow them to do so, they need the Receiver to provide Royal and Hailstone with full access to their client information and client data; and to cooperate with Royal and Hailstone to transition the services previously provided by SFS to those law firms. This may entail cooperating on various data transfers or assigning licenses, phone numbers, etc.

8.       Prior to January 2024, Royal and Hailstone outsourced much of their administrative support functions to two SFS affiliates (the "Servicing Entities").[1] While Royal and Hailstone had attorneys and some employees, they did not have the necessary staff to handle the workload associated with the high volume of clients they represent. The Servicing Entities performed valuable support services, such as addressing non-legal customer service issues, answering clients' non-legal questions, handling client's requests to modify or change their payments to their dedicated account, basic interfacing with clients' creditors,[2] answering clients' non-legal

---

[1] "Servicing Entities" are Royal Client Services, LLC and Hailstone Client Services, LLC.

[2] The support entities' employees do not negotiate debts. All non-lawyer negotiators are employees of the respective law firm.

questions, gathering documents from clients, maintaining client files, and handling similar administrative tasks.

9. One of the key tasks handled by the Servicing Entities was receipt of communications and documents relating to Royal and Hailstone's clients. That included documents forwarded by clients, communications from creditors, settlement demands from creditors, summons filed by creditors, changes of address, and the like. Typically, the Servicing Entities received and processed such mail to ensure it was uploaded to the clients' files. Similarly, the Servicing Entities handled email and telephone inquiries from Royal and Hailstone clients, and uploaded notes regarding those telephone calls to the clients' files. Another major task handled by the Servicing Entities was processing settlements on behalf of clients.

10. SFS historically collected and maintained data regarding Royal and Hailstone clients. It maintains this data at the direction of the law firms. This information includes records memorializing discussions with clients, financial information, instructions regarding fee and settlement payments, and the like. Historically, such data was shared with Royal and Hailstone via an IT infrastructure that permitted their attorneys and employees access to these records in real time. That allowed Royal and Hailstone to have up-to-date information and permit them to timely respond to lawsuits, address client concerns, and (perhaps most important of all) negotiate settlements of client debts. Such settlement negotiations are very difficult unless Royal and Hailstone's negotiators have current and accurate information regarding the clients and their financial circumstances.

3

11.    Royal and Hailstone also worked with Global Client Solutions ("Global"). When a client retained either Royal or Hailstone, the client established an account with Global, which account belonged to the client – not Royal or Hailstone. The client then made monthly payments into their account. When Royal or Hailstone reached a settlement with the client's creditor, the Servicing Entity provided payment instructions for that settlement to Global. The settlement payments (usually on a term basis) and the Moving Law Firm's fees were then disbursed from the client's Global account.

12.    I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct.

Dated: __October 16__, 2024

_____
Richard K. Gustafson, II

4