IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) Case No. 24-cv-00040-EAW-MJR |
| v. | )<br>) |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | )<br>)<br>) |
| Defendants, | )<br>)<br>) |
| and DANIEL BLUMKIN, et al. | )<br>)<br>) |
| Relief Defendants. | )<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF ROYAL LEGAL GROUP, LLC AND HAILSTONE LEGAL GROUP'S MOTION TO MODIFY PRELIMINARY INJUNCTION AND PROVIDE INSTRUCTION TO RECEIVER

Intervenors Royal Legal Group, LLC ("Royal") and Hailstone Legal Group, LLC ("Hailstone") respectfully move this Court to: (1) modify the preliminary injunction to expressly exclude Royal and Hailstone (and their clients and operations) from the scope of injunctive relief awarded thereunder (including, without limitation, Section XIX); and (2) instruct the Receiver to provide Royal and Hailstone with full access to their client data and cooperate with Royal and Hailstone as necessary to transition the support services previously provided by SFS to personnel at those law firms. In support of their motion, Royal and Hailstone state as follows:

## JURISDICTION

The prior consent submitted by Royal and Hailstone was limited to a single motion. Dkt. 5. That motion has long since been adjudicated. Royal and Hailstone do not believe the relief sought via this motion falls within the ambit of their previous consent. *See* Dkt. 158; 28 U.S.C. § 636; Fed. R. Civ. P. 72.

## INTRODUCTION

On January 11, 2024, this Court entered an *ex parte* TRO that appointed a Receiver, Thomas McNamara, to operate StratFS and its various affiliates (collectively "SFS"). The Receiver has remained in control of SFS since that date. As a result of that TRO (and the subsequent preliminary injunction), the Law Firms effectively went "dark." They lost their support staff, much of their technology, and much of their data in one fell swoop. They were (and remain) severely impaired in their ability to effectively represent their clients.

The relief awarded by this Court was premised on the Government's claim that all of the Law Firms were employing an "advance fee model." In its March 4, 2024 order, this Court granted preliminary injunctive relief on the basis that the Government was likely to prevail on its claim that the Law Firms were likely violating the Telemarketing Sales Rule by collecting advance fees without first conducting TSR-compliant face-to-face meetings.

However, two of the Law Firms (Royal and Hailstone) have never collected advanced fees. They have always charged contingent fees that comply with the TSR. Thus, the Government's arguments for injunctive relief do not apply to Royal and

1

Hailstone. And this Court's findings and conclusions of law in support of its entry of injunctive relief do not apply to Royal and Hailstone, either. Thus, there is no legal basis for injunctive relief with respect to those two firms. Accordingly, the preliminary injunction should be modified to exclude Royal and Hailstone. In addition, the Receiver should be instructed to: (1) provide Royal and Hailstone with full access to their client information and client data; and (2) cooperate with Royal and Hailstone to transition the services previously provided by SFS to those law firms. Those steps will permit Royal and Hailstone to effectively represent their current clients.[1] Neither firm anticipates taking on new clients in the future.

This requested relief should not be controversial. In its Second Amended Complaint, the Government does **not** allege that Royal and Hailstone charged advance fees. Indeed, just the opposite; the Government alleges that Royal and Hailstone "purportedly offer or offered only deferred-fee debt-settlement products." (Dkt. 366 at ¶ 85.)

For his part, the Receiver has already acknowledged that Royal and Hailstone are contingent-fee firms with TSR-compliant fee structures. (Dkt. 256 at 5.) The Receiver has also instructed Global to process fees for Royal and Hailstone. (*Id.*) However, the Receiver has stopped short of providing Royal and Hailstone with access to their client information (presumably because the Receiver believes an order from

---

[1] To be clear: Royal and Hailstone are not asking the Receiver to provide full support services to Royal and Hailstone clients. Royal and Hailstone are aware the Receiver has filed a motion to wind-up affairs at SFS. Royal and Hailstone are also aware that the other 27 Law Firms are in discussions with the Receiver and Government to that effect. Royal and Hailstone are prepared to provide those support services in-house.

2

this Court is necessary before taking that particular step). Royal and Hailstone now ask this Court to enter such an order.

This is a "renewed" motion. Royal and Hailstone previously sought the same relief from this Court in March 2024. (*See* Dkt. 225.) That motion was fully briefed. (*See* Dkt. 254, 256, 271.) On April 11, 2024, the Court entered an order in which it denied several motions filed by Defendants and the Law Firms, including Royal and Hailstone's motion. (Dkt. 281.) The Court's order does not offer any reasoning or discussion regarding Royal and Hailstone's request for relief. Rather, the entirety of the Court's order was devoted to addressing the relief sought in **other** motions filed by Defendants and the Law Firms. The only reference to Royal and Hailstone's motion was in passing. (*See* Dkt. 281 at p. 10.) Given the importance of this issue to Royal and Hailstone, they subsequently sought to reassert this issue. However, in discussions with the Government, they were told that any motion they filed on this issue would be opposed. *See* Declaration of Terrence M. Connors, Esq., dated October 17, 2024 ("Connors Dec.") at ¶ 7.

## FACTUAL BACKGROUND

### Royal and Hailstone And Their Vendors

Royal and Hailstone (collectively "Moving Law Firms") are law firms that represent clients in Kansas. Royal stopped taking new clients several years ago. *See* Declaration of Richard K. Gustafson II, dated October 16, 2024 ("Gustafson Dec.") ¶ 2. Hailstone continued to take new clients until forced to stop doing so by this

Court's January 11, 2024 TRO. *Id.* As of January 2024, Royal and Hailstone had about 1,300 clients. (*See* Dkt. 256 at 5.)

Each of the Moving Law Firms contracted with certain support entities to provide certain non-legal and administrative support functions to facilitate its representation of clients (the "Servicing Entities").[2] Gustafson Dec. ¶ 8. While the Moving Law Firms had attorneys and some employees, they simply did not have the necessary staff to handle the workload associated with the high volume of clients they represent. *Id.* The Servicing Entities performed valuable support services, such as addressing non-legal customer service issues, answering clients' non-legal questions, handling client's requests to modify or change their payments to their dedicated account, basic interfacing with clients' creditors,[3] answering clients' non-legal questions, gathering documents from clients, maintaining client files, and handling similar administrative tasks. *Id.*

One of the key tasks handled by the Servicing Entities was receipt of communications and documents relating to the Moving Law Firms' clients. *Id.* ¶ 9. That included documents forwarded by clients, communications from creditors, settlement demands from creditors, summons filed by creditors, changes of address, and the like. *Id.* Typically, the Servicing Entities received and processed such mail to ensure it was uploaded to the clients' files. Similarly, the Servicing Entities

---

[2] "Servicing Entities" is defined as the Royal Client Services, LLC and Hailstone Client Services, LLC.

[3] The support entities' employees do not negotiate debts. All non-lawyer negotiators are employees of the respective law firm.

4

handled email and telephone inquiries from Moving Law Firm clients, and uploaded notes regarding those telephone calls to the clients' files. Another major task handled by the Servicing Entities was processing settlements on behalf of the Moving Law Firms' clients. *Id.*

SFS has historically collected and maintained data regarding Royal and Hailstone clients. *Id.* ¶ 10. It maintains this data at the direction of the Moving Law Firms. *Id.* This information includes records memorializing discussions with clients, financial information, instructions regarding fee and settlement payments, and the like. *Id.* Historically, such data was shared with the Moving Law Firms via an IT infrastructure that permitted the Moving Law Firms' attorneys and employees access to these records in real time. *Id.* That allowed the Moving Law Firms to have up-to-date information and permit them to timely respond to lawsuits, address client concerns, and (perhaps most important of all) negotiate settlements of client debts. *Id.* Such settlement negotiations are very difficult unless the Moving Law Firms' negotiators have current and accurate information regarding the clients and their financial circumstances. *Id.*

The Moving Law Firms also use a payment processor to facilitate their clients' accumulation of funds for settlements and payment of fees. Both Law Firms worked with Global Client Solutions ("Global"). *Id.* ¶ 11. When a client retained either Royal or Hailstone, the client established an account with Global, which account belonged to the client – not Royal or Hailstone. *Id.* The client then made monthly payments into their account. *Id.* When Royal or Hailstone reached a settlement with the

client's creditor, the Servicing Entity provided payment instructions for that settlement to Global. *Id.* The settlement payments (usually on a term basis) and the Moving Law Firm's fees were then disbursed from the client's Global account. *Id.*

### The TRO And Preliminary Injunction's Impact

This Court entered an *ex parte* TRO in January 2024. Immediately after the TRO was entered, the Receiver entered SFS's facility, unplugged the servers, sent all employees home, and shut down all services to Royal, Hailstone and their respective clients. (*See* Dkt. 124 at p. 2.) The Moving Law Firms and their clients were thrown into chaos without the back-office support. In late January, the Receiver agreed to allow a 76-person "skeleton staff" to operate within SFS and provide some limited services to the Law Firms. (*See* Dkt. 68 at p. 2.)

On March 4, 2024, this Court entered a preliminary injunction order. Dkt. 184. That Preliminary Injunction order, *inter alia*, continued to bar Defendants and the Law Firms (including Royal and Hailstone) from taking advanced fees. It also continued the asset freeze and receivership. (*Id.*)

### This Court Denies Royal And Hailstone's First Request For Relief

On March 20, 2024, the Intervenor Law Firms filed a motion (styled as a "motion to compel") seeking various forms of relief from this Court. (Dkt. 225.) In that motion, Royal and Hailstone pointed out that they had always charged contingent fees and, therefore, should not be subject to this Court's preliminary injunction. (Dkt. 225-4 at 9.) They asked the Court to order the Receiver to instruct Global to process fee payments for Royal and Hailstone. (*Id.*) They also asked that the Receiver be

required to provide Royal and Hailstone (and the other Law Firms) with access to their client data. (*Id.* at 9-13.)

On April 1, 2024, the Receiver responded to the Law Firms' motion. (*See* Dkt. 256.) With respect to Royal and Hailstone, the Receiver agreed that those firms charged only TSR-compliant contingent fees:

> **A.  Royal and Hailstone**
>
> The Receiver learned that two of the Law Firms service Kansas consumers under a contingent-fee arrangement, Royal Legal Group ("Royal") which was later succeeded by Hailstone Legal Group ("Hailstone"). Between the two firms, there are approximately 1,300 active clients. Because these firms do not take unlawful advance fees, prior to the filing of the Motion to Compel, the Receiver contacted the payment processor Global and informed Global that the Receiver had no objections to processing for these Law Firms. Thus, the requested relief as to Royal and Hailstone is moot.

(Dkt. 256 at 5.) The balance of the Receiver's response with respect to Royal and Hailstone consisted of the Receiver setting forth concerns he might have if Mr. Blust were involved with those firms (which he is not). (*Id.*)

On April 1, 2024, the Government responded to the Law Firms' motion. (*See* Dkt. 254.) The Government's response was silent regarding Royal and Hailstone. (*Id.*) However, the Government argued that releasing client information to any Law Firm (presumably, including Royal and Hailstone) would violate Section XIX of the preliminary injunction order. (*See* Dkt. 256 at 6; Dkt 183 at 33.) The Law Firms filed a reply on April 8, 2024. (*See* Dkt. 271.)

While that briefing was ongoing, various of the Defendants were filing separate motions to stay the proceedings in this case pending appeal to the Second Circuit. (*See* Dkt. 204, 207, 218, 219.) On April 11, 2024, this Court entered a decision and order in which it addressed all of those motions to stay. The first paragraph of the Court's decision and order is as follows:

> Currently before the Court are the emergency motions of defendants Ryan Sasson, Daniel Blumkin, and Albert Ian Behar (Dkt. No. 204); defendant StratFS, LLC and its subsidiaries and affiliates (the "Strategic Entities") (Dkt. No. 207); defendant Jason Blust (Dkt. No. 218); and the intervenor law firms (Dkt. Nos. 219, **225**), (all referred to collectively as "defendants"), to stay the preliminary injunction. In the alternative, defendants ask the Court to stay the portions of the preliminary injunction: (1) continuing the appointment of a receiver; and (2) barring individual defendants Sasson and Blust from participating in the business. The Court denies defendants' motions *in toto*.

(Dkt. 281 at 1 (emphasis added).) Although the Law Firms' motion to compel (Dkt. 225) is in that list, it was not like the others. The other motions listed were, in fact, motions to stay the preliminary injunction. But Docket 225 was **not** such a motion. In addition, while the Court's April 11 order addressed the issues raised in the **other** enumerated motions, *i.e.*, Dkt. 204, 207, 218 and 219, it did not address any of the arguments raised in the Law Firms' motion to compel, including the arguments pertaining to Royal and Hailstone or the Receiver's agreement that they charge only TSR-compliant contingent fees. (*See* Dkt. 281.) It is not clear why the Court denied Docket 225.

8

**Royal And Hailstone's Subsequent Efforts To Secure Relief**

Since the Court's ruling in April, Royal and Hailstone have sought relief on this issue. Connors Dec. ¶¶ 3–7. During a settlement conference in June, Royal and Hailstone's counsel, Terrance Connors raised this issue with the Court and Receiver. *Id.* at ¶ 3. Both directed Connors to the Government. *Id.* at ¶ 4. The Government indicated that any relief with respect to Royal and Hailstone would be improper because "the case was stayed" at the time. *Id.* at ¶ 5. Subsequently, when the Court's stay was lifted, Connors tried again. *Id.* at ¶ 6. This time, he was advised by the Government, in effect, that it does not trust the Law Firms to operate a lawful business. *Id.* at ¶ 7.

## ARGUMENT

**I.   There Is No Legal Basis For Injunctive Relief Against Royal Or Hailstone.**

A plaintiff seeking a preliminary injunction must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without preliminary injunctive relief; (3) the balance of equities are in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Under that standard, there was no basis to enter an injunction against Royal and Hailstone. Similarly, there is no basis to continue the existing preliminary injunction with respect to Royal and Hailstone.

The prior TRO and current preliminary injunction were based entirely on the Government's claim that SFS and the Law Firms were collectively running an "advance fee model" and the ***only*** claim that was litigated during the preliminary injunction

9

hearing was the Government's claim that Defendants (and the Law Firms) were violating the TSR by collecting advance fees without first conducting TSR-compliant "face-to-face" meetings. (*See* Dkt. 183.) In the wake of the TRO (and then the preliminary injunction), the Government and Receiver hastened to shut down ***all*** SFS services for the Law Firms. They also demanded that the payment processors for the Law Firms (Global and RAM) stop processing fees.

But the Government painted with too broad a brush. Royal and Hailstone have always been TSR-compliant contingent fee firms. This is not in dispute. The Receiver has acknowledged as much. (Dkt. 256 at 5.) And the Government tacitly admits this in its Second Amended Complaint. (Dkt. 366 at ¶85.) Thus, Royal and Hailstone should never have been shut down. In short, Royal and Hailstone have done nothing wrong. They were wrongly swept into the injunction and should be allowed to resume operations free of impediment from this Court's injunctive order. There is no legal basis for the current injunctive relief with respect to Royal and Hailstone. At a minimum, the element of "likelihood of success on the merits" was not established (and cannot be established) with respect to Royal and Hailstone.

## II. This Court Should Modify The Injunction To Permit Royal And Hailstone To Operate And Should Instruct The Receiver To Transfer Client Data To Those Firms.

In April, the Receiver apparently advised Global to process fees for Royal and Hailstone. (Dkt. 256 at 9.) While appreciated by Royal and Hailstone, the Receiver's action does not go far enough. Royal and Hailstone can only collect fees if they settle debts. But Royal and Hailstone are hamstrung from doing that, because the Receiver will not provide Royal and Hailstone with access to their clients' information. And

the Government appears to assert that doing so will violate Section XIX of the preliminary injunction (and perhaps other provisions as well).

There is no principled reason why Royal and Hailstone should be deprived of access to their own information. They have not violated the law. The basis for injunctive relief with respect to the other parties does not apply to Royal and Hailstone. This Court should modify and/or clarify the preliminary injunction order to make it clear that Royal and Hailstone and not subject to the preliminary injunction and that the provisions of that injunction (including Section XIX) do not apply to Royal and Hailstone. *Winter*, 555 U.S. at 20.

Moreover, the requested relief will not burden the Receiver. At this juncture, Royal and Hailstone understand the Receiver seeks to wind up SFS. Royal and Hailstone do not expect the Receiver to provide service to their clients in accordance with the Service Contracts at issue (which service levels have not been met since January in any event). Rather, Royal and Hailstone seek an order from this Court instructing the Receiver to cooperate with Royal and Hailstone to facilitate the transfer of client data and to cooperate with Royal and Hailstone to transfer the service functions formerly provided by SFS to those law firms.

## CONCLUSION

Intervenors Royal Legal Group, LLC and Hailstone Legal Group, LLC respectfully move this Court to: (1) modify the preliminary injunction to expressly exclude Royal and Hailstone (and their clients and operations) from the scope of injunctive relief awarded thereunder (including, without limitation Section XIX); and

(2) instruct the Receiver to provide Royal and Hailstone with full access to their client data and cooperate with Royal and Hailstone as necessary to transition the support services previously provided by SFS to those law firms.

DATED:    Buffalo, New York
            October 17, 2024

                                                    */s/ Terrence M. Connors*
Terrence M. Connors, Esq.
Andrew M. Debbins, Esq.
CONNORS LLP
*Attorneys for Defendant,*
 *Richard K. Gustafson II*
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com
amd@connorsllp.com

Timothy D. Elliot, Esq.
Emily Shupe, Esq.
Rathje Woodword LLC
300 E. Roosevelt Road
Suite 220
Wheaton, Illinois 60187
(630) 510-4910
telliott@rathjelaw.com
eshupe@rathjelaw.com