IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 24-cv-00040-EAW-MJR |
| v. | )<br>) |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | )<br>)<br>) |
| Defendants, | )<br>) |
| and DANIEL BLUMKIN, et al. | )<br>) |
| Relief Defendants. | )<br>) |

## DECLARATION OF RICHARD K. GUSTAFSON II

I, Richard K. Gustafson, II, hereby declare as follows:

1. My name is Richard K. Gustafson, II. I am over 21 years of age. The statements in this declaration are made based on my personal knowledge and I would be competent to testify to them if called upon to do so.

2. I am an attorney licensed to practice law in Illinois, Indiana and California. I am currently the managing member of several consumer advocacy law firms, including Royal Legal Group, Harbor Legal Group, LLC, Stonepoint Legal Group, Hailstone Legal Group, White Oak Law Group, Canyon Legal Group, Boulder Legal Group, LLC, Meadowbrook Legal Group, and Slate Legal Group. In addition, since January 2024, I have played a role as a consultant with respect to the operations for the Intervenor Law Firms in this case. For purposes of this declaration, the term

"Intervenor Law Firms" refers to the 29 intervenors. The term "Law Firm" excludes two of the Intervenor Law Firms (Royal and Hailstone).

3. Prior to January 11, 2024, the Intervenor Law Firms collectively represented about 65,000 clients across the United States. On January 11, 2024, this Court entered an *ex parte* TRO that appointed a Receiver, Thomas McNamara, to operate StratFS and its various affiliates (collectively "SFS"). Dkt. 12. The Receiver has remained in control of SFS since that date. As a result of that TRO (and the subsequent preliminary injunction), the Intervenor Law Firms effectively went "dark." They lost their support staff, much of their technology, and much of their data in one fell swoop. They were (and remain) severely impaired in their ability to effectively represent their clients.

4. Since that time, the Law Firms have continued to represent their clients, including representation in ongoing litigation. However, that representation has been hampered by a lack of support from SFS. In addition, the Law Firms have been unable to collect fees from their clients.

5. In the absence of any revenue to fund their operations, the Law Firms have been compelled to fund their operations through existing reserves and borrowing. The Law Firms have downsized and been forced to layoff both attorneys and staff and have been forced to take many cost-cutting measures to remain in business.

6. The Law Firms can no longer continue to provide legal representation in the absence of new fee income. In particular, the cost of representing clients in

litigation (which requires compensating Law Firm attorneys to provide such representation) is not sustainable.

7. Accordingly, the Law Firms, after consultation with ethics counsel, have concluded they can no longer provide representation to their clients and must withdraw from representation. *See* ABA Model Rule 1.16(b)(6), (7). I have discussed this with the managing members of all Law Firms and they are in accord that the Law Firms must wind up operations.

8. The Law Firms intend to withdraw from further representation of all clients ***except*** with respect to credit card accounts that are currently in litigation. With respect to those accounts, the Law Firms shall complete their course of representation in the current litigation before full withdrawal.

9. Representatives from the Law Firms (including me) have met and conferred with the Receiver (and employees of SFS) regarding the appropriate steps to implement withdrawal, and transition representation (including the provision of client files) to any new counsel (or other provider) retained by clients. That course of action is as follows:

1. The Law Firms shall send the Letter attached hereto as Exhibit 1 to all current Law Firm clients. The Letter advises clients of the withdrawal, alerts them to their options with respect to their Global and RAM accounts, alerts them to the importance of continuing to make payments on existing term settlements, and advises them that they may obtain their client files. The Letter will be sent via email and US mail by the Law Firms.

2. To avoid burdening the Receiver (and causing undue cost), the Law Firms have established a new email account and 800 number (which are set forth in the Letter) to allow Law Firm clients to pose questions and make file requests. The Receiver has indicated that SFS staff will direct client inquiries concerning the Law Firms' withdrawal to the Law Firms' newly-established phone line and email.

3. With respect to clients who request their files, those clients may obtain the portion of their client file that is in SFS's possession by accessing the client's secure portal. The relevant Law Firm shall provide the portion of the client file in its possession directly to the client.

4. The Receiver shall post a template letter to each client's portal that allows the clients to communicate directly with their creditors regarding the cessation of representation.

5. With respect to client credit card accounts that are in litigation, the Law Firms will continue to provide representation in those lawsuits until those suits are resolved (either through settlement or adjudication).

10. The Law Firms have previously attempted to either provide service to their clients or find a new entity to complete the course of representation for those clients.

11. ***First***, the Law Firms attempted to compel the Receiver to provide full support for the Law Firms' representation. *See* Dkt. 225. The Receiver objected to providing anything beyond a "skeletal staff," primarily on two grounds: (1) the cost of

3

providing such service was substantial; and (2) concerns that Law Firms' model was unlawful. The Court denied the Law Firms' motion. *See* Dkt. 281.

12. **_Second_**, the Law Firms attempted to address the legal problem identified by the Court and the Government, *i.e.*, the advance fee model. In April, the Law Firms began to communicate with clients to convert them to TSR-compliant contingent fee model. Both the Receiver and Government objected to that conversion and the Court ruled that the Law Firms may not engage in certain types of communications with their clients. *See* Dkt. 351.

13. **_Third_**, the Law Firms have devoted significant efforts to finding a new service provider capable of completing the existing course of representation. However, the Government repeatedly asserted that it would object to those clients being transitioned to any new for-profit provider. And the Court indicated that MMI (a not-for-profit credit counselling agency that sought to represent the Law Firms' clients) would not be acceptable to the Court. The Law Firms have been unable to locate any other possible providers who are willing to take on the existing clientele.[1]

14. Those efforts have not been successful. As a result, the Law Firms are now in a position where their only realistic alternative is to withdraw from representation in such a manner as to: (1) allow for ongoing representation in existing litigation matters; and (2) allow the Law Firms' clients to seek different options, including new legal representation.

---

[1] In addition to those efforts, the Receiver has (on at least two occasions) communicated directly with the Law Firms' clients and provided them with information on alternative providers, such as credit counselling.

5

15. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct.

Dated: October 25, 2024

_____
Richard K. Gustafson, II