IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | ) ) ) |
| Plaintiffs, | ) ) Case No. 24-cv-00040-EAW-MJR |
| v. | ) ) |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | ) ) ) |
| Defendants, | ) ) |
| and DANIEL BLUMKIN, et al. | ) ) |
| Relief Defendants. | ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR LAW FIRMS' MOTION SEEKING NON-OBJECTION TO WITHDRAWAL

The Intervening Law Firms (excluding Royal and Hailstone; hereinafter the "Law Firms") respectfully bring this motion seeking confirmation from the Court that the Law Firms' withdrawal from representing their current clients (as set forth herein) does not violate the Court's preliminary injunction order or any other orders of this Court. In support hereof, the Law Firms state the following:

Prior to January 11, 2024, the Law Firms collectively represented about 65,000 clients across the United States. On January 11, 2024, this Court entered an *ex parte* TRO that appointed a Receiver, Thomas McNamara, to operate StratFS and its various affiliates (collectively "SFS"). Dkt. 12. The Receiver has remained in control of SFS since that date. As a result of that TRO (and the subsequent preliminary injunction), the Law Firms effectively went "dark." They lost their support staff, much

of their technology, and much of their data in one fell swoop. They were (and remain) severely impaired in their ability to effectively represent their clients.

Since that time, the Law Firms have continued to represent their clients, including representation in ongoing litigation. However, that representation has been hampered by a lack of support from SFS. In addition, the Law Firms have been unable to collect fees from their clients. In the absence of any revenue to fund their operations, the Law Firms have been compelled to fund their operations through existing reserves and borrowing. However, the Law Firms can no longer continue to provide legal representation in the absence of new fee income. In particular, the cost of representing clients in litigation (which requires compensating Law Firm attorneys to provide such representation) is not sustainable.

Accordingly, the Law Firms, after consultation with ethics counsel, have concluded they can no longer provide representation to their clients and must withdraw from representation. *See* ABA Model Rule 1.16(b)(6), (7). At this time, the Law Firms intend to withdraw from further representation of all clients ***except*** with respect to credit card accounts that are currently in litigation. With respect to those accounts, the Law Firms shall complete their course of representation in the current litigation before full withdrawal.

The Law Firms have advised the Receiver of their intention to withdraw. Representatives from the Law Firms have met and conferred with the Receiver (and employees of SFS) regarding the appropriate steps to implement withdrawal, and

1

transition representation (including the provision of client files) to any new counsel (or other provider) retained by clients.

The Law Firms are not Defendants in this case and do not believe they need to obtain leave from this Court to withdraw from representation. Nor do they believe the Government has standing to object to any withdrawal. However, the preliminary injunction entered by this Court is broad and the Law Firms do not wish to unknowingly violate some provision of that order. In addition, the Law Firms will need to communicate with their clients to advise them of withdrawal. This Court has previously ruled that the Law Firms may not engage in certain types of client communications absent Court approval. It is not clear whether communications on this particular subject would fall within the scope of the Court's ruling on that point.

Accordingly, to avoid any doubt, the Law Firms bring this motion to advise the Court of their intended action and obtain confirmation that their withdrawal will not violate any order of this Court. In the alternative, if the Court believes that some aspect of the Law Firms' proposed course of action would violate an existing order, the Law Firms seek modification of that order to permit the Law Firms to execute on their proposed course of action. That course of action is as follows:

1. The Law Firms shall send the Letter attached hereto as Exhibit 1 to all current Law Firm clients. The Letter advises clients of the withdrawal, alerts them to their options with respect to their Global and RAM accounts, alerts them to the importance of continuing to make payments on existing

2

term settlements, and advises them that they may obtain their client files. The Letter will be sent via email and US mail by the Law Firms.

2. To avoid burdening the Receiver (and causing undue cost), the Law Firms have established a new email account and 800 number (which are set forth in the Letter) to allow Law Firm clients to pose questions and make file requests. The Receiver has indicated that SFS staff will direct client inquiries concerning the Law Firms' withdrawal to the Law Firms' newly-established phone line and email.

3. With respect to clients who request their files, those clients may obtain the portion of their client file that is in SFS's possession by accessing the client's secure portal. The relevant Law Firm shall provide the portion of the client file in its possession directly to the client.

4. The Receiver shall post a template letter to each client's portal that allows the clients to communicate directly with their creditors regarding the cessation of representation.

5. With respect to client credit card accounts that are in litigation, the Law Firms will continue to provide representation in those lawsuits until those suits are resolved (either through settlement or adjudication).

It must be emphasized that the Law Firms do not wish to withdraw from representation. This is an action of last resort and is undertaken because the Law Firms have no realistic choice but to withdraw. The Law Firms have previously

attempted to either provide service to their clients or find a new entity to complete the course of representation for those clients.

*First*, the Law Firms attempted to compel the Receiver to provide full support for the Law Firms' representation. *See* Dkt. 225. The Receiver objected to providing anything beyond a "skeletal staff," primarily on two grounds: (1) the cost of providing such service was substantial; and (2) concerns that Law Firms' model was unlawful. The Court denied the Law Firms' motion. *See* Dkt. 281.

*Second*, the Law Firms attempted to address the legal problem identified by the Court and the Government, *i.e.*, the advance fee model. In April, the Law Firms began to communicate with clients to convert them to TSR-compliant contingent fee model. Both the Receiver and Government objected to that conversion and the Court ruled that the Law Firms may not engage in certain types of communications with their clients. *See* Dkt. 351.

*Third*, the Law Firms have devoted significant efforts to finding a new service provider capable of completing the existing course of representation. However, the Government repeatedly asserted that it would object to those clients being transitioned to any new for-profit provider. And the Court indicated that MMI (a not-for-profit credit counselling agency that sought to represent the Law Firms' clients) would not be acceptable to the Court. The Law Firms have been unable to locate any other possible providers who are willing to take on the existing clientele.[1]

---

[1] In addition to those efforts, the Receiver has (on at least two occasions) communicated directly with the Law Firms' clients and provided them with information on alternative providers, such as credit counselling.

4

Those efforts have not been successful. As a result, the Law Firms are now in a position where their only realistic alternative is to withdraw from representation in such a manner as to: (1) allow for ongoing representation in existing litigation matters; and (2) allow the Law Firms' clients to seek different options, including new legal representation.

WHEREFORE, the Intervening Law Firms respectfully bring this motion seeking confirmation from the Court that the Law Firms' withdrawal from representing their current clients (as set forth herein) does not violate the Court's preliminary injunction order or any other orders of this Court. In the alternative, the Law Firms seek modification of any existing Court order to permit them to execute on the proposed course of action outlined herein.

Dated:     Buffalo, New York
           October 25, 2024

/s/Terrence M. Connors
Terrence M. Connors, Esq.
CONNORS LLP
1000 Liberty Building
Buffalo, NY 14202
Ph: (716) 852-5533
Fax: (716) 852-5649
Email: tmc@connorsllp.com

Timothy D. Elliott (*Pro Hac Vice*)
Emily A. Shupe (*Pro Hac Vice*)
Rathje Woodward LLC
300 E. Roosevelt Rd., Suite 220
Wheaton, IL 60187
Ph: (630) 668-8500
Fax: (630) 668-9218
Email: telliott@rathjelaw.com
       eshupe@rathjelaw.com

5

*Attorneys for Intervening Law Firms:*

Clear Creek Legal
Credit Advocates Law Firm, LLC
Bradon Ellis Law Firm, LLC
Harbor Legal Group
Anchor Law Firm, PLLC
Bedrock Legal Group
Boulder Legal Group
Canyon Legal Group, LLC
Great Lakes Law Firm
Heartland Legal Group
Monarch Legal Group
Newport Legal Group, LLC
Northstar Legal Group
Option 1 Legal
Pioneer Law Firm P.C.
Rockwell Legal Group
Stonepoint Legal Group
The Law Firm of Derek Williams, LLC
Whitestone Legal Group
Wyolaw, LLC
Chinn Legal Group, LLC
Slate Legal Group
Leigh Legal Group, PLLC
Hallock & Associates, LLC
Hallock and Associates
Gustafson Consumer Law Group, LLC
Michel Law, LLC
Level One Law
The Office of Melissa Michel, LLC
Spring Legal Group
Moore Legal Group, LLC
Meadowbrook Legal Group