## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br><br> Plaintiffs, <br><br><br> v. <br><br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*, <br><br><br> Defendants, and <br><br><br> DANIEL BLUMKIN, *et al.*, <br><br><br> Relief Defendants. | **CASE NO. 24-cv-40 EAW-MJR** <br><br><br> **DECLARATION OF NICOLE KELLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION AGAINST FIDELIS LEGAL SUPPORT SERVICES, LLC, CAMERON CHRISTO, THE BUSH LAKE TRUST, MICHELLE GALLAGHER, RICHARD K. GUSTAFSON II, TIMOTHY F. BURNETTE, AND HEDGEWICK CONSULTING, LLC** |

I, Nicole Kelly, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a United States citizen over 18 years of age. The facts set forth in this declaration are based on my personal knowledge. If called as a witness, I could and would competently testify to them.

2.      I am an employee of the Consumer Financial Protection Bureau ("Bureau"). I have been an employee of the Bureau since July 1, 2012. Since 2021, I have been a Senior Data Scientist. My current duties include conducting financial and

data analysis for the Bureau. I have a bachelor's degree in Applied Economics and Management from Cornell University.

3.     I am assigned to work on the Bureau's litigation against StratFS, LLC and others.

4.     I refer to Strategic Family, Inc., StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC (f/k/a Pioneer Client Services, LLC), Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC, T Fin, LLC, Strategic Consulting, LLC (f/k/a Consult America, LLC), and Versara Lending, LLC (f/k/a Fusion Processing, LLC),  Twist Financial, LLC, Duke Enterprises, LLC, and Blaise Investments, LLC as "SFS" because that is how they are referred to in Plaintiffs' Second Amended Complaint.

5.     I refer to the law firms identified in Paragraph 47 of the Second Amended Complaint as "Façade Firms" because that is how they are referred to in the Second Amended Complaint.

6.     On or about May 28, 2024, the Bureau received a large production of Salesforce data from the Receiver in this matter. That data was supplemented with SFS's payment data archive, which the Receiver sent to the Bureau on June 21, 2024. I refer to this data collectively as the Salesforce Data. The Salesforce Data included the dates and amounts of payments consumers made to various SFS portfolios. The portfolio names correspond to the Façade Firm names and appear in a field named "portfolio_name_for_sharing_rules". I refer to these portfolios as the SFS Façade Firm Portfolios. The Salesforce Data also include the settlement proposal information for each consumer's debts (including accepted settlement proposals), the balance of the consumer's debt at the time of enrollment, the current status of the debt, and

information about the consumer including which SFS Façade Firm Portfolio they are associated with and when they enrolled.

7.      On May 30, 2024, the Bureau received a schema from the Receiver's staff at SFS illustrating how to recreate SFS's Salesforce database on the Bureau's systems. The Receiver's staff supplemented the schema with information on the structure of SFS's payment data archive, sent to the Bureau on June 15 and June 21, 2024.

8.      On June 13 and October 22, 2024, I met with the Receiver's staff at SFS to discuss the Salesforce Data. On June 20, 2024, my former colleague Joanna Cohen met with Receiver's staff at SFS to discuss the Salesforce Data. Joanna provided me with notes from that meeting.

9.      On June 13, 2024, I received internal SFS documents that provided an overview of SFS's Salesforce payment and fee processes from the Receiver's staff at SFS. A copy of the document "SF2.0 Payment Types and Impact to Ledger" is attached as Exhibit 1.

10.      On June 20, 2024, I received key table and field definitions from the Receiver's staff at SFS.

11.      On June 21, 2024, I received sample queries for the tables being analyzed from the Receiver's staff at SFS.

12.      All this information allowed me to understand the Salesforce Data and analyze it using the Bureau's systems.

13.      Bureau counsel in this matter asked me to analyze the Salesforce Data to determine the total amount of fees paid by consumers who enrolled in SFS's debt-relief program between January 1, 2016 and January 10, 2024. Counsel also asked me to calculate the total savings consumers received on their debts through settlements

3

obtained by SFS, and then to calculate by how much total fees exceeded total settlement savings. Finally, counsel asked me to identify the fees that were paid to specific SFS Façade Firm Portfolios. I rounded all my dollar calculations to the nearest $100,000 and all my counts of consumers to the nearest 1,000 consumers.

**OVERALL POPULATION AND PAYMENT FILTERING**

14. As a first step in analyzing the Salesforce Data, I filtered the consumer population to reflect consumers who enrolled in SFS's debt-relief program between January 1, 2016 and January 10, 2024.

15. I then removed test accounts from the data. These are accounts that do not reflect actual consumers.

16. I then removed the following SFS Façade Firm Portfolios from the data: "Timberline Financial", "Atlas Debt Relief", "Royal Legal Group", "Hailstone Legal Group". I removed Royal Legal Group and Hailstone Legal Group because, according to the Second Amended Complaint, they purportedly offer or offered only deferred-fee debt-settlement products. I removed Timberline Financial and Atlas Debt Relief because, according to the Receiver's Preliminary Report, they do not take advance fees.

17. The May 28, 2024 production of Salesforce Data and the SFS payment data archive received on June 21, 2024 contained overlapping payment records that needed to be deduplicated. To remove duplicate records from the payment data, I appended the archived payments table and the current payments table from the May 28, 2024 production together and then made sure that we only selected one unique record for every pairing of the following fields: "client", "payment_id", "payment_name", "parent_payment", "payment_type", "schedule_date", and

4

"amount". When there were duplicate records, we chose the one from the current payments table over the payment archive table.

18. Finally, I joined the relevant set of consumers to their payments in the payments table. There were 211,000 consumers in the dataset following these steps.

**CALCULATION OF TOTAL FEES**

19. My analysis of the Salesforce Data shows that SFS collected $ 1,113,300,000 in total in fees from consumers enrolled between January 1, 2016 and January 10, 2024. Those fees were paid by 179,000 consumers.

20. To calculate these total fees collected by SFS, I excluded fees collected by payment processors. These included the transaction fee and the processor fee. *See* Exhibit 1.

21. I also excluded deferred fees and deferred fee reversals from this analysis. Deferred fees are "[e]xtra funds allocated to client by deferring fees owed". Exhibit 1. Deferred fee reversals "recoup money allocated through Deferred Fee". Exhibit 1. Both deferred fees and deferred fee reversals may be relevant to the total amount of fees charged to consumers but were excluded here to simplify the analysis. If deferred fees and deferred fee reversals do not ultimately negate one another, their effect on total fees collected by SFS is less than $10 million.

22. I included admin fees, retainer fees, service fees, settlement fees and ancillary fees in my analysis, as these fees are collected by SFS. *See* Exhibit 1.

23. An ALLG fee is a "[m]onthly subscription fee for the contingency model." Exhibit 1. Because I limited my analysis to firms that charged fees rather than contingency fees, there should not have been ALLG fees in the data for those firms.

There was, however, one ALLG fee of $100 in the filtered data. I assume this is a data error and I excluded this fee from the analysis.

24.    I only included fees where the transaction status was "cleared" because the fee might not have been collected if it showed a different transaction status.

25.    I also removed refunds from the calculation of total fees. Per the Receiver's staff at SFS, the "Credit PSA" value in the "payment_type" field is where consumer refunds were recorded. A Credit PSA is a credit to the consumer's debt settlement program savings account. *See* Exhibit 1.

26.    Finally, I removed the payment type "Reversal" from the calculation of total fees. The "Reversal" value in the "payment_type" field does not appear in the Salesforce documentation provided by SFS. *See* Exhibit 1. During my analysis of the data, however, I determined that reversals roll back various payment types, including some of the payment types that were fees collected by SFS. Reversals also roll back payment types made to other entities, such as processor fees paid to payment processors and settlement payments made to creditors. Because reversals do not appear in the Salesforce documentation provided by SFS, I discovered them late in my analysis, and did not have time to properly determine which reversals applied to fees collected by SFS. In order to provide a conservative calculation of the total fees collected by SFS from consumers for this declaration, I removed all reversals, including reversals that were not of fees collected by SFS. I removed $19 million in reversals from my calculation of total fees.

**FEES LESS SETTLEMENT SAVINGS**

6

27.     My analysis of the Salesforce Data shows that 145,000 consumers paid SFS $ 527,500,000 more in fees than they received in total settlement savings. SFS settled no debts for 78,000 of those consumers, who paid $ 215,600,000 in fees.

28.     32,000 consumers paid no fees and had no debts settled.

29.     To calculate fees less settlement savings, I took the total amount of fees paid by each consumer and subtracted out the total amount of settlement savings for that consumer.

30.     To calculate the total amount of settlement savings for each consumer, I summed the amount the consumer saved across their settled debts. I did this through the following steps.

31.     First, I selected debts where the field "current_stage" was "settled." I excluded debts where the original debt amount was zero or negative.

32.     Second, I determined the debt balance by using the balance of each debt at the time of the consumer's enrollment in SFS's debt-relief program.

33.     Third, I determined the accepted settlement proposal amount. I started by filtering proposal status, which had to be either "Accepted" or "Settled".  I used the "latest_proposal" field to identify the latest proposal for a given debt. If there were multiple proposals marked as the latest proposal, I used the settlement proposal with the latest "NAR_date" value. I only included settlement proposals where the field "NAR_date" had a date value. The "NAR_date" is the date the proposal was approved by the Negotiations Review team at SFS confirming all necessary approvals and documentation.

34.     Finally, I summed all of the accepted settlement proposals for a given consumer and summed all of the associated debt balances, and then subtracted the

total debt balance from the total accepted settlement proposal amount to calculate the settlement savings for each consumer.

35.    When the total settlement amount was more than the total balance of the settled debts at the time of enrollment, my calculation for settlement savings was set to zero (rather than negative) because the consumer did not receive any settlement savings.[1]

36.    Finally, I subtracted total settlement savings for each consumer from the total fees paid by that consumer to determine fees less settlement savings for that consumer.

## TOTAL FEES RECEIVED BY
## FIDELIS-ASSOCIATED SFS FAÇADE FIRM PORTFOLIOS

37.    Bureau counsel asked me to calculate total fees received by each SFS Façade Firm Portfolio where the associated Façade Firm was paying Fidelis Legal Support Services, LLC ("Fidelis").

38.    I reviewed Tim Hanson's March 14, 2024 declaration regarding which Façade Firms paid Fidelis and when. Dkt. 209-1. Based on that declaration, I calculated fees paid to the following SFS Façade Firm Portfolios from December 1, 2021 to January 10, 2024  because that is when they were paying Fidelis:

        a.    Brian A. Moore Law Firm, LLC d/b/a Guidestone Law;

        b.    Hallock and Associates, LLC;

        c.    Gustafson Consumer Law Group, LLC d/b/a White Oak Group;

---

[1] For 2000 consumers, the aggregate of the debts settled by SFS was more than the balance of those debts at the time of enrollment. For those 2000 consumers, SFS negotiated settlements valued at $1,700,000 more than the balance of the debt at the time of enrollment.

8

39.    Based on Tim Hanson's March 14, 2024 declaration, I calculated fees paid to the following SFS Façade Firm Portfolios from April 1, 2022 to January 10, 2024 because that is when the associated Façade Firm was paying Fidelis:

a.    JMS Industries, LLC d/b/a Canyon Legal Group, LLC;

b.    Great Lakes Law Firm, LLC;

c.    Leigh Legal Group, PLLC d/b/a Greenstone Legal;

d.    Henry Legal Group, LLP d/b/a Heartland Legal Group;

e.    Greene Legal Group, LLC d/b/a Newport Legal Group;

f.    Gardner Legal, LLC d/b/a Option 1 Legal;

g.    Moore Legal Group, LLC d/b/a Meadowbrook Legal Group;

h.    Chinn Legal Group d/b/a Slate Legal Group;

i.    Law Office of Melissa Michel, LLC d/b/a Spring Legal Group, LLC;

j.    Donald Norris Associates PLLC d/b/a Stonepoint Legal Group;

k.    The Law Firm of Derek Williams, LLC d/b/a Infinite Law Group;

l.    The Sands Law Group, LLP d/b/a Whitestone Legal Group; and

m.    WyoLaw, LLC d/b/a Summit Law Firm, LLC;

40.    I determined that each of these SFS Façade Firm Portfolio received the following fees while the associated Façade Firm was paying Fidelis:

| Guidestone Law Group | 11,400,000 |
|---|---|
| Hallock and Associates | 17,700,000 |
| White Oak Law Group | 13,500,000 |
| Canyon Legal Group LLC | 4,200,000 |
| Great Lakes Law Firm | 5,200,000 |

| | |
|---|---|
| Greenstone Legal Group | 14,400,000 |
| Heartland Legal Group | 10,900,000 |
| Meadowbrook Legal Group | 8,300,000 |
| Newport Legal Group | 23,500,000 |
| Option 1 Legal | 3,300,000 |
| Slate Legal Group | 7,600,000 |
| Spring Legal Group | 42,000,000 |
| Stonepoint Legal Group | 3,200,000 |
| The Law Firm of Derek Williams, LLC | 35,900,000 |
| Whitestone Legal Group | 4,500,000 |
| WyoLaw, LLC | 2,700,000 |
| Total | 208,300,000 |

**TOTAL FEES RECEIVED BY
GUSTAFSON SFS FAÇADE FIRM PORTFOLIOS**

41.     Bureau counsel asked me to calculate the total amount of fees received between January 1, 2016 and January 10, 2024 by SFS Façade Firm Portfolios where Richard Gustafson controlled the Façade Firm.

42.     I filtered for the SFS Façade Firm Portfolios where Gustafson controls the associated Façade Firm, according to Paragraph 85 of the Second Amended Complaint ("Gustafson SFS Façade Firm Portfolios"):

a.     Boulder Legal Group, LLC;

b.     JMS Industries, LLC d/b/a Canyon Legal Group, LLC;

c.     Harbor Legal Group,

d.     Moore Legal Group, LLC d/b/a Meadowbrook Legal Group;

e.     Slate Legal Group;

10

f.      Donald Norris Associates PLLC d/b/a Stonepoint Legal Group; and

g.      Gustafson Consumer Law Group, LLC d/b/a White Oak Group.

43.    I determined that each Gustafson SFS Façade Firm Portfolio received the following amount of fees between January 1, 2016 and January 10, 2024:

| | |
|---|---|
| Boulder Legal Group | 73,500,000 |
| Canyon Legal Group LLC | 83,800,000 |
| Harbor Legal Group | 11,500,000 |
| Meadowbrook Legal Group | 8,300,000 |
| Slate Legal Group | 51,900,000 |
| Stonepoint Legal Group | 40,100,000 |
| White Oak Law Group | 13,800,000 |
| Total | 283,000,000 |

## TOTAL FEES RECEIVED BY GALLAGHER SFS FAÇADE FIRM PORTFOLIOS

44.    Bureau counsel asked me to calculate the total amount of fees received between January 1, 2016 and January 10, 2024 by SFS Façade Firm Portfolios where Michelle Gallagher controlled the Façade Firm.

45.    I filtered for the firms that are associated with Gallagher according to Paragraph 91 of the Second Amended Complaint ("Gallagher SFS Façade Firm Portfolios"):

a.      Brian A. Moore Law Firm, LLC d/b/a Guidestone Law;

b.      Hallock and Associates, LLC; and

11

c.      Law Office of Melissa Michel, LLC d/b/a Spring Legal Group, LLC.

46.     I determined that each Gallagher SFS Façade Firm Portfolio received the following amount of fees between January 1, 2016 and January 10, 2024:

| | |
|---|---|
| Guidestone Law Group | 12,200,000 |
| Hallock and Associates | 19,000,000 |
| Spring Legal Group | 78,600,000 |
| Total | 109,700,000 |

## TOTAL FEES RECEIVED BY BURNETTE SFS FAÇADE FIRM PORTFOLIOS

47.     Bureau counsel asked me to calculate the total amount of fees received between January 1, 2016 and January 10, 2024 by SFS Façade Firm Portfolios where Timothy Burnette controlled the Façade Firm.

48.     I filtered for the firms that are associated with Burnette according to Paragraph 89 of the Second Amended Complaint ("Burnette SFS Façade Firm Portfolios"):

a.      Henry Legal Group LLP d/b/a Heartland Legal Group

b.      Burnette Legal Group d/b/a Monarch Legal Group

c.      Gardner Legal, LLC d/b/a Option 1 Legal;

49.     I determined that each Burnette SFS Façade Firm Portfolio received the following amount of fees between January 1, 2016 and January 10, 2024:

| | |
|---|---|
| Heartland Legal Group | 91,100,000 |
| Monarch Legal Group | 60,700,000 |
| Option 1 Legal | 46,900,000 |

12

| Total | 198,700,000 |
|-------|-------------|

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 31, 2024 in Washington, D.C.

Digitally signed by
NICOLE KELLY
Date: 2024.10.31
16:17:25 -04'00'

_____

Nicole Kelly

13