UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSUMER FINANCIAL PROTECTION,               24-CV-40-EAW-MJR
BUREAU, et al.,                              DECISION AND ORDER
               Plaintiffs,

v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), et al.,

               Defendants, and

STRATEGIC ESOP, et al.,

               Relief Defendants.
_____

On September 4, 2024, the Court-appointed receiver Thomas W. McNamara (the "Receiver") filed a "Second Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals" that have rendered services on the Receiver's behalf from March 1, 2024 through July 31, 2024 ("Second Fee Application"). (Dkt. No. 432) Specifically, the Receiver asks the Court to approve the payment of (1) fees and expenses of the Receiver and staff to be paid to TWM Receiverships, Inc. dba Regulatory Resolutions as follows: March fees of $111,541.50 and expenses of $6,077.52; April fees of $104,420.00 and expenses of $4,619.69; May fees of $104,213.50 and expenses of $9,198.66; June fees of $76,447.50 and expenses of $4,441.40; July fees of $58,841.50 and expenses of $7,291.39; (2) fees and expenses for the Receiver's counsel, McNamara Smith LLP as follows: March fees of $81,448.50 and expenses of $2,462.75; April fees of $88,261.00 and expenses of $1,073.46; May fees of $29,818.50 and expenses of $59.95;

June fees of $20,863.50 and expenses of $842.27; July fees of $25,546.00 and expenses of $18.61; (3) fees and expenses for the Receiver's counsel, Hodgson Russ LLP as follows: March fees of $52,350.50 and expenses of $29.44; April fees of $56,239.50; May fees of $20,846.00 and expenses of $632.77; June fees of $13,505.50; July fees of $20,556.00; (4) fees and expenses of the Receiver's counsel, Ballard Spahr LLP as follows: May fees of $23,190.75 and expenses of $37.45; June fees of $8,533.35; July fees of $7,201.35 and expenses of $24.75; (5) fees and expenses for the Receiver's counsel, Hilgers Graben LLP as follows: March fees of $24,830.00 and expenses of $514.44; April fees of $21,377.50; May fees of $3,967.50; June fees of $4,657.50; July fees of $440.00; (6) fees for the Receiver's forensic accountants Mercadien, P.C. as follows: March fees of $26,488.00; April fees of $14,069.50; May fees of $22,850.25; June fees of $4,283.00; July fees of $6,094.50; and (7) fees and expenses for the Receiver's data forensic consultants Bright Labs Services, LLC (Ankura) as follows: March fees of $11,571.00 and expenses of $7,997.68; April fees of $2,179.00 and expenses of $7,981.12; May fees of $6,896.50 and expenses of $8,353.04; June fees of $4,972.50 and expenses of $8,183.76; July fees of $1,776.50 and expenses of $17,287.91. (*Id.*) For the following reasons, the Court grants the Receiver's Second Fee Application in its entirety.

The Receiver was initially appointed by District Judge Lawrence J. Vilardo, pursuant to the Temporary Restraining Order ("TRO"), on January 11, 2024. (Dkt. No. 12) The Receiver's appointment was confirmed, and the temporary designation removed, by this Court, pursuant to the Preliminary Injunction ("PI") entered on March 4, 2024. (Dkt. No. 184) The Receiver has continued to serve in this capacity from March 4, 2024 through

the present. On May 22, 2024, this Court granted the Receiver's First Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals that have rendered services on the Receiver's behalf from January 1, 2024 through February 29, 2024 ("First Fee Application"). (Dkt. No. 358) This Decision and Order assumes familiarity with the Court's Decision and Order granting the Receiver's First Fee Application, the PI, and the other prior proceedings and filings in this case.[1]

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citations omitted). "This presumption of reasonable compensation extends to a receiver's counsel and professionals." *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848, 2018 U.S. Dist. LEXIS 165797 (E.D.N.Y. Sept. 26, 2018). Indeed, the PI here specifically provides that the "Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in possession or control of, or which may be received by the Receivership Defendants."[2] (Dkt. No. 184, Section XV)

---

[1] The Blust Family Irrevocable Trust (the "Blust Trust") was the only party to file a response in opposition to the Receiver's Second Fee Application. (Dkt. No. 436) The Blust Trust partially opposes the Second Fee Application to the extent that assets of the Blust Trust may be used to pay the fees and expenses of the Receiver and his team. (*Id.*) The Blust Trust also argues that because its appeal of the Court's Decision and Order granting the Receiver's First Fee Application remains pending, funds from the Blust Trust should not be dissipated. (*Id.*)
[2] The PI further authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities[.]" (Dkt. No. 184, Section IX.X)

The Court considers several factors in determining a reasonable fee, including "(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented." *Platinum Mgmt. (NY) LLC*, 2018 U.S. Dist. LEXIS 165797, *12 (quotations omitted). The Court may also consider "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed." *SEC v. Amerindo Inv. Advisors Inc.*, 05 Civ. 5231, 2015 U.S. Dist. LEXIS 197890 (S.D.N.Y. Sept. 14, 2015) (citations omitted).

The Court previously noted that, during the time period of the First Fee Application, the Receiver faced extremely complex factual, legal, and administrative issues in performing his duties.[3] (Dkt. No. 358, pgs. 3-5) These challenges have remained throughout the period of the Second Fee Application. Since March 4, 2024, the Receiver and his team have devoted substantial time and effort to stopping the expansive and excessively complicated law firm debt relief program provided by defendant StratFS, LLC and its related entities (collectively "defendants"). The Receiver's efforts included managing the termination of the majority of defendants' employees and the coordination of their insurance, COBRA, 401k accounts, and other benefits. Also during this period, the receiver and his team have provided continued customer support services to the over 50,000 consumers who were already enrolled in defendants' law firm debt relief program at the time the PI was issued.

---

[3] As this Court previously noted, the Receiver was assigned extensive duties under the PI, including managing all receivership assets; identifying any additional receivership defendants not already part of the lawsuit; managing defendants' large and multi-layered debt relief business; making disbursements from the receivership estate as necessary; and maintaining a chain of custody of defendants' significant records and data. (Dkt. No. 358, pgs. 3-4; Dkt. No. 184, Section IX)

In addition, the Receiver and his team have presided over the continued operations of Atlas and Timberline, defendants' business lines that operate pursuant to a contingency-fee model of debt relief. Atlas and Timberline, which the Receiver determined could continue to operate legally and profitably, have over 100 employees and contractors. The Receiver and his team have also continued to supervise the operation of defendants' third business line, Versara Debt Negotiation Loans, including the recent transfer of Versara's loan servicing to a third-party vendor. The Second Fee Application notes that providing support for both the law firm debt relief clients and the continued operations of Atlas and Timberline has required daily contact between the Receiver's team and CIBC Bank USA and Valley National Bank, defendants' primary lenders.

Time entries further reflect that the Receiver and his team have necessarily spent a large portion of time responding to direct inquiries from consumers and former employees; responding to attorneys, separate from those involved in this lawsuit, who represent consumers enrolled in defendants' law firm debt relief program; responding to inquiries by various state regulators; and responding to a variety of requests from plaintiffs, defendants, and the intervenor law firms for company and consumer data. The Receiver has devoted significant effort analyzing the viability of defendants' repeated requests to convert consumers enrolled in defendants' law firm model of debt relief services to defendants' contingency-fee model of debt relief services.[4] The Receiver has also spent a substantial amount of time developing a plan as to how to wind down the portions of defendants' business providing law firm debt relief services.

---

[4] After extensive analysis and detailed input from the parties and the Receiver, the Court determined that migration of the consumers enrolled in defendants' law firm debt relief program to defendants' contingency-fee debt relief program was not feasible.

Moreover, there has been extensive litigation in this case during the time period of the Second Fee Application, requiring the Receiver to file numerous pleadings and attend many court conferences. This litigation activity has included motions by the Receiver to hold certain parties in contempt of the PI as well as motions by the Receiver to designate certain additional parties as receivership defendants under the terms of the PI.[5] The litigation activity has also required the Receiver to respond to numerous other motions and requests for relief filed by defendants as well as other related and intervening parties. In fact, the Receiver notes that during the period of the Second Fee Application, he filed twenty-five substantive pleadings and attended five court hearings as well as a two-day settlement conference. (Dkt. No. 432-1, pg. 5)

Next, the Court finds that the Receiver, his counsel, and the other professionals retained by the Receiver have continued to perform high quality work, during the time period of the Second Fee Application, which has benefited the receivership estate. Since the Receiver restarted the operations of Atlas and Timberline in January, these businesses have generated an average of $1,631,000 in monthly revenue and have continued to employ approximately 100 people. Based on the Receiver's coordination with secured creditor Credit Suisse (UBS), Versara has been able to significantly reduce

---

[5] These disputes are subject to ongoing motion practice in this case. On November 1, 2024, plaintiffs filed a motion for a preliminary injunction against Fidelis Legal Support Services, LLC, Cameron Christo, the Bush Lake Trust, Michelle Gallagher, Richard K. Gustafson II, Timothy Burnette, and Hedgewick Consulting, LLC. (Dkt. No. 477) The Receiver previously sought to bring Fidelis Legal Support Services, LLC under the terms of the PI, which Fidelis opposed. (Dkt. No. 190) The Court intends to hold an evidentiary hearing addressing plaintiffs' recent motion for a preliminary injunction, at which time the Court will also hear testimony and view evidence addressing the Receiver's related motion to hold Jason Blust and Lit Def Strategies, LLC in contempt for violating the PI. (Dkt. No. 179) The Receiver also filed a motion seeking to hold the intervenor law firms in contempt of the PI based on certain communications with consumers. (Dkt. No. 355) The Receiver and the intervenor law firms are attempting to resolve this motion.

their principal loan balance. As noted above, the Receiver has also devoted substantial effort to advising the Court regarding implementation of a potential wind down of the law firm debt relief portion of defendants' business. These efforts have included formulating a plan as how to handle and advise the tens of thousands of consumers currently enrolled in the program, many of whom have active and ongoing payment plans with creditors. Thus, the work of the Receiver and his team during the period of the Second Fee Application has continued to (1) allow certain portions of defendants' business to operate lawfully and profitably; (2) permit some of defendants' employees to remain working; and (3) provide services, information, and guidance to thousands of consumers still enrolled in defendants' debt-relief programs.

Consistent with the First Fee Application, the time records submitted by the Receiver, his counsel, and the other professionals, for the work performed during the period of the Second Fee Application, continue to be extremely detailed.[6] The Court finds that the entries justify the fees, costs, and expenses incurred. Consistent with its finding in the decision granting the First Fee Application, the Court finds that the nature and extent of the work performed by the Receiver, his counsel, and the other professionals during the period of the Second Fee Application to be reasonable and necessary here, in order

---

[6] Consistent with time records and bills from the First Fee Application, time records and bills from the Second Fee Application include (1) work performed by the Receiver and his staff; (2) legal work performed by the Receiver's counsel at McNamara Smith, Hodgson Russ, and Ballard Spahr; (3) forensic accounting performed by Mercadien; and (4) forensic data consulting performed by Ankura. (Dkt. No. 432) As the Court previously noted, the McNamara Smith attorneys appear to be experienced in regulatory receiverships. (Dkt. No. 358, pg. 7) Hodgson Russ has likewise been involved in nearly all receivership activities, including labor issues and litigation activity. (Id.) Ballard Spahr has provided expert legal advice and analysis as to the proper handling of the Strategic ESOP and ESOT. (Id.) Time records and bills from the Second Fee Application also include legal work performed by Hilgers Graben. (Id.) The Receiver indicates that Hilgers Graben was retained to represent the receivership estate in two lawsuits pending in the Chicago area. (Dkt. No. 432-3, ¶¶ 26-27)

to continue to operate the large receivership estate and all of its attendant issues, as well as to respond to the frequent litigation demands which continue to arise in this case.

In the Decision and Order granting the First Fee Application, the Court found the hourly rates of the Receiver, his counsel, and the other professionals used to provide services to the receivership estate to be reasonable. (Dkt. No. 358, pgs. 8-9) Those rates remain the same in the instant application. (Dkt. No. 432-1, pg. 3) Moreover, the hourly rates of the Receiver, his counsel, and his accountants were presented to the Court in a Statement of Interest and Qualification prior to Judge Vilardo's appointment of Receiver pursuant to the TRO. (Dkt. No. 4-1) The receivership company, counsel, and accountants agreed to discount their normal rates in this receivership as reflected in the Statement of Interest and Qualification.[7] (Dkt. No. 241-2, ¶ 9; Dkt. No. 432-2, ¶ 12) Further, the Receiver affirms that he closely examined his bills, and the bills of his counsel and other professionals, and that he agreed to cut a significant amount of charges of the receivership team and counsel prior to presenting the fee application to the Court, as part of his obligation to maximize the value of the receivership estate. (Dkt. No. 241-2, ¶ 9; Dkt. No. 432-2, ¶ 12).

For all of these reasons, the Court grants the Receiver's Second Fee Application in its entirety.

---

[7] Although not reflected in the Statement of Interest, Hodgson Russ agreed to discount their typical rate in this matter. (Dkt. No. 241-2, ¶ 9, n. 5; Dkt. No. 432-2, ¶ 12, n. 2) Similarly, Ankura, the data forensics firm, also agreed to discount its standard rates. (*Id.*)

SO ORDERED.

Dated: November 12, 2024
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge