EXHIBIT 5

EXECUTION COPY

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Confidential Settlement Agreement and Mutual Release ("this Agreement") is entered into as of this the ___ day of August 2021 by and between:

a. Daniel Rufty ("Rufty"); Daniel Rufty Legal, PLLC d/b/a Carolina Legal Services ("CLS"); and Rufty Law Firm, PLLC ("Rufty Law Firm") (hereinafter referenced individually or collectively as the "Rufty Parties");

b. Carolina Client Services, LLC ("CCS") and Strategic Financial Solutions, LLC ("SFS") (hereinafter referenced individually or collectively as the "Strategic Parties"); and

c. Jason Blust ("Blust"); Law Office of Jason Blust, LLC ("LOJB"); Lit Def Strategies, LLC ("Lit Def"); and Relialit, LLC ("Relialit") (hereinafter referenced individually or collectively as the "Blust Parties")

The Rufty Parties, Strategic Parties, and Blust Parties are collectively referred to as the "Parties," or any one individually as a "Party").

### Statement of Purpose

WHEREAS, CCS and CLS executed a certain Service Agreement in or around April 2018 (the "Service Agreement"); and

WHEREAS, CCS and CLS executed an Amendment to Service Agreement on or around August 1, 2019 (the "Amendment to Service Agreement"); and

WHEREAS, the Service Agreement details an arrangement whereby CCS agreed to provide to CLS certain marketing, administrative, and non-legal law related services ("Services") for the benefit of CLS and its clients in the consumer credit card debt resolution business; and

WHEREAS, in exchange for such the provision of Services, CLS agreed to compensate CCS in accordance with Paragraph 2 of the Service Agreement; and

WHEREAS, in November 2020, CLS attempted to terminate the Service Agreement, and, in conjunction with that decision, CLS also ceased making payments to CCS for its Services; and

WHEREAS, a dispute then arose between CCS, CLS, and Rufty regarding various alleged breaches of the Service Agreement; and

WHEREAS, these disputes centered on, *inter alia*, payments due to CCS from CLS, CLS' purported termination of the Service Agreement, the Services performed by CCS from April 2018-December 2020, and CCS' obligation to indemnify CLS and/or Rufty pursuant to Paragraph 7 of the Service Agreement; and

WHEREAS, CCS commenced an arbitration proceeding against CLS with Judicial Arbitration and Mediation Services, Inc. ("JAMS") bearing Claim No. 1440007153; and

WHEREAS, CLS and Rufty commenced an arbitration proceeding against CCS with the American Arbitration Association ("AAA") bearing Claim No. 01-21-0001-8943; and

WHEREAS, CCS, CLS, and Rufty subsequently agreed to consolidate both arbitrations into a single arbitration before JAMS for further proceedings (the "Arbitration"); and

WHEREAS, on March 22, 2021, CCS filed an Amended Notice of Arbitration and Statement of Claim with JAMS. The Amended Notice set forth the following claims: (a) Breach of Contract – Wrongful Termination; (b) Breach of Contract – Fees Owed Following Termination with Cause (In the Alternative); (c) Conversion; (d) Breach of Good Faith and Fair Dealing; and (e) Quantum Meruit (In the Alternative); and

WHEREAS, CLS denied these allegations and asserted multiple affirmative defenses thereto; and

WHEREAS, on March 22, 2021, CLS and Rufty separately filed Counterclaims against CCS, setting forth the following claims: (a) Breach of Contract; (b) Unfair and Deceptive Trade Practices; (c) Tortious Interference with Contract; (d) Conversion; (e) Misappropriation of Name or Likeness; (f) Conversion (as to File Information); and (g) Recission; and

WHEREAS, CCS denied these allegations and asserted multiple affirmative defenses thereto; and

WHEREAS, on or around April 27, 2021, CLS separately filed a civil lawsuit in the United States District Court, Western District of North Carolina against Blust, LOJB, Lit Def, and Relialit bearing Case No. 3:21-cv-191 (the "Lawsuit"), alleging claims for breach of contract, unjust enrichment, and negligence; and

NOW, THEREFORE, the Parties, without admitting any liability and solely in order to avoid the continued expense, uncertainty, and inconvenience of the Arbitration and the Lawsuit, have agreed to resolve and settle all claims and causes of action that were or could have been alleged in the Arbitration and Lawsuit between and amongst them in accordance with the terms contained herein.

## **Agreement**

1. <u>Effective Date</u>. This Agreement will be effective as of the last date upon which it is signed by the Parties.

2. <u>Payment</u>. Within 14 days of the Effective Date, the Strategic Parties and the Blust Parties, collectively, shall cause a single payment to be made to Daniel Rufty, or order, in the sum of One Million Five Hundred Thousand Dollars and 00/100 Cents ($1,500,000.00). The

date such payment is made is referred to herein as the "Payment Date." Such payment shall be made via wire transfer to the IOLTA Account of Weaver, Bennett & Bland, P.A., utilizing wire instructions provided by Weaver, Bennett & Bland, P.A.

3. Mutual Releases. As of the Effective Date, the Parties agree to the following mutual releases:

   a. The Rufty Parties, on behalf of themselves and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and any other related third party (each individually a "Rufty Releasor" or collectively the "Rufty Releasors") hereby irrevocably and unconditionally release and forever discharge the Strategic Parties and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, insurers, and any other related third party (and their respective past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and insurers), and in their corporate and individual capacities (each individually a "Strategic Releasee" or collectively the "Strategic Releasees"), of and from any claim or cause of action any one or more of the Rufty Releasors ever had, may have had, may now have, or will in the future have against any one or more of the Strategic Releasees, whether known or unknown, fixed or contingent, liquidated or unliquidated, including, without limitation, all such matters arising from, related to, in any way connected with, or that was or could have been brought in the Lawsuit or the Arbitration. Without limitation, and solely for the avoidance of doubt, Strategic Releasees includes Strategic Family, Inc.; Strategic Financial Solutions, LLC; Carolina Client Services, LLC; Strategic Consulting, LLC; Strategic Client Support, LLC; Strategic CS, LLC; Versara Lending, LLC; Cell Gramercy 2 of Contego Insurance, Inc.; Ryan Sasson; Daniel Blumkin; Ian Behar; and Jordan Levy.

   b. The Rufty Releasors hereby irrevocably and unconditionally release and forever discharge the Blust Parties and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, contractors, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, insurers, and any other related third party (and their respective past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and insurers), and in their corporate and individual capacities (each individually a "Blust Releasee" or collectively the "Blust Releasees") of and from any claim or cause of action any one or more of the Rufty Releasors ever had, may have had, may now have, or will in the future have against any one or more of the

Blust Releasees, whether known or unknown, fixed or contingent, liquidated or unliquidated, including, without limitation, all such matters arising from, related to, in any way connected with, or that was or could have been brought in the Lawsuit or the Arbitration. Without limitation, and solely for the avoidance of doubt, Blust Releasees includes Jason Blust; Law Office of Jason Blust, LLC; Lit Def Strategies, LLC; Relialit, LLC and all employees, directors, and officers of these released entities.

c. The Rufty Releasors hereby irrevocably and unconditionally release and forever discharge any person or entity that any of the Rufty Releasors could have alleged is a member or participant of an enterprise under 18 U.S.C. §§ 1961 *et seq.* and all vendors and contractors for the Rufty Parties, the Blust Parties, and/or the Strategic Parties, and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, insurers, and any other related third party (and their respective past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and insurers), and in their corporate and individual capacities (each individually a "Vendor Releasee" or collectively the "Vendor Releasees") of and from any claim or cause of action any one or more of the Rufty Releasors ever had, may have had, may now have, or will in the future have against any one or more of the Vendor Releasees, whether known or unknown, fixed or contingent, liquidated or unliquidated, including, without limitation, all such matters arising from, related to, in any way connected with, or that was or could have been brought in the Lawsuit or the Arbitration. Without limitation, and solely for the avoidance of doubt, Vendor Releasees includes the following: Clear One Quality Control LLC; Credit Advocates Law Firm, LLC; Global Client Solutions, LLC; K2 Financial and Management, LLC; Mark Guidubaldi; National Data Systems, LLC; National Paralegal and Notary; Notary Go; Ray Sullivan; Sunshine Signing Connection, Inc.; Tim Burnette. This Paragraph 3(c) specifically excludes Rathje Woodward, PLLC, Timothy Elliott, Harris, Wiltshire & Grannis, LLP, and Amy Richardson (each individually a "Limited Releasee" or collectively the "Limited Releasees"). Limited Releasees are not and shall not be considered "Vendor Releasees" under this Agreement.

d. The Strategic Parties, on behalf of themselves and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and any other related third party (each individually a "Strategic Releasor" or collectively the "Strategic Releasors") hereby irrevocably and unconditionally release and forever discharge the Rufty Parties and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors,

assigns, insurers, and any other related third party (and their respective past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and insurers), and in their corporate and individual capacities (each individually a "Rufty Releasee" or collectively the "Rufty Releasees"), of and from any claim or cause of action any one or more of the Strategic Releasors ever had, may have had, may now have, or will in the future have against any one or more of the Rufty Releasees, whether known or unknown, fixed or contingent, liquidated or unliquidated, including, without limitation, all such matters arising from, related to, in any way connected with, or that was or could have been brought in the Arbitration.

e. The Blust Parties, on behalf of themselves and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and any other related third party (each individually a "Blust Releasor" or collectively the "Blust Releasors") hereby irrevocably and unconditionally release and forever discharge the Rufty Releasees, as that term is defined in Paragraph 2(c), of and from any claim or cause of action any one or more of the Blust Releasors ever had, may have had, may now have, or will in the future have against any one or more of the Rufty Releasees, whether known or unknown, fixed or contingent, liquidated or unliquidated, including, without limitation, all such matters arising from, related to, in any way connected with, or that was or could have been brought in the Lawsuit.

4. <u>Limited Release</u>. Rufty Releasors hereby irrevocably and unconditionally release and forever discharge the Limited Releasees from any and all liability for violation of 18 U.S.C. § 1961 *et seq.*, and each of their past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, insurers, and any other related third party (and their respective past, present, and future officers, directors, equity holders, partners, members, managers, shareholders, employees, parents, subsidiaries, affiliated entities, agents, predecessors, successors, assigns, and insurers), and in their corporate and individual capacities. This release does not affect Rufty's right or ability to bring causes of action against the Limited Releasees other than for violation of 18 U.S.C. § 1961, including but not limited to breach of contract, professional malpractice, and breach of fiduciary duty. In addition, this release does not affect Rufty's right to pursue recovery from the Limited Releasees for claims that arise from the same nucleus of facts that would have formed the basis for a claim for violation of 18 U.S.C. § 1961.

5. The Parties agree that the releases set forth in Paragraph 2(a-e) shall not apply to any claim or cause of action arising from another Party's breach of this Agreement.

6. <u>Dismissal</u>. The Parties agree that they will execute, or have executed on their behalf, any and all documents necessary to effectuate a complete dismissal with prejudice of the Arbitration and the Lawsuit within two (2) days of the Payment Date.

7. <u>Confidentiality of Terms</u>. The existence and terms of this Agreement shall remain confidential in perpetuity and shall not be disclosed to any person or entity other than as expressly set forth herein. The Parties are only permitted to disclose the existence and terms and conditions of this Agreement to a court or other dispute resolution tribunal in the event of any proceeding for a breach of this Agreement; to any Party's counsel; to any Party's auditor, tax preparer, or insurer, if necessary. Otherwise, any Party may disclose the existence and terms and conditions of this Agreement only if required to comply with binding orders of a court or demands by a governmental entity that has jurisdiction over the Party, provided that the Party provides written notice to all other Parties within 5 days of the initial request for information so that the other Parties may seek a protective order or other appropriate remedy. Any Party who discloses the existence and terms and conditions of this Agreement as provided for herein shall (1) disclose only the information required to be disclosed and shall not disclose any additional information, and (2) use best efforts to obtain confidential treatment for the existence and terms of this Agreement that are disclosed. The Parties expressly agree that this confidentiality provision is of material importance and was a material inducement to the execution of this Agreement. The Parties acknowledge that breach of this provision would cause immediate and irreparable harm and damages not easily capable of calculation and, as a result, any Party who violates this provision shall be liable to the non-disclosing Parties for liquidated damages in the amount of $25,000 per each breach and the non-disclosing Parties shall be entitled to immediate injunctive relief in addition to any and all other rights and remedies, at low or in equity, that may otherwise by available.

8. <u>Confidentiality of Other Materials</u>. All pleadings, deposition transcripts, hearings transcripts, contracts, agreements, and any other information or materials exchanged between the Parties during the course of the Lawsuit or Arbitration or at any point preceding in time in connection with the relationship between the Parties (including, without limitation, all such information that constituted "Confidential Information" under the Service Agreement terms) that have not been filed publicly (collectively, "Confidential Materials") shall remain confidential in perpetuity and shall not be disclosed to any person or entity other than as expressly set forth herein. The Parties are only permitted to disclose the Confidential Materials to a court or other dispute resolution tribunal in the event of any proceeding for a breach of this Agreement; to any Party's counsel; to any Party's auditor, tax preparer, or insurer, if necessary. Otherwise, any Party may disclose Confidential Materials only if required to comply with binding orders of a court or demands by a governmental entity that has jurisdiction over the Party, provided that the Party provides written notice to all other Parties within 5 days of the initial request for Confidential Materials so that the other Parties may seek a protective order or other appropriate remedy. Any Party who discloses Confidential Materials shall (1) disclose only the Confidential Materials required to be disclosed and shall not disclose any additional Confidential Materials, and (2) use best efforts to obtain confidential treatment for the Confidential Materials. The Parties expressly agree that this confidentiality provision is of material importance and was a material inducement to the execution of this Agreement. The Parties acknowledge that breach of this provision would cause immediate and irreparable harm and damages not easily capable of

calculation and, as a result, any Party who violates this provision shall be liable to the non-disclosing Parties for liquidated damages in the amount of $25,000 per each breach and the non-disclosing Parties shall be entitled to immediate injunctive relief in addition to any and all other rights and remedies, at low or in equity, that may otherwise by available. The Parties specifically agree that, notwithstanding the provisions of this paragraph, Blust may provide a copy of the deposition transcript of Rufty in *The North Carolina State Bar v. Daniel S. Rufty*, 20 DHC 17, to the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois.

9. <u>Mutual Non-Disparagement</u>. The Parties agree that they shall not disparage, discredit, belittle, or defame any other Party or any owners, persons, employees, or entities affiliated with, related to, or owned in whole or in part by any such Party. The Parties shall not initiate any communications (in any medium) to anyone regarding this Agreement, the Arbitration, the Litigation, or any related issues. This includes, without limitation, all media commentary or social media posts or references regarding the same. If any Party is asked about the Lawsuit, Arbitration, or any allegations or claims relating to the Lawsuit or Arbitration, the Party shall limit their response to the following: "The matter has been resolved" or "No comment."

10. <u>No Admission of Liability</u>. By signing this Agreement, no Party admits any liability to any other Party or the truth or falsity of any allegation, statement, communication, fact discussed, disclosed, or communicated in any manner regarding any transaction, communication, contact, statement, or dispute between the Parties. This includes, without limitation, all allegations set forth in the Lawsuit and the Arbitration.

11. <u>Enforcement Action</u>. The Parties agree that in any action related to the validity, construction, interpretation, or enforcement of this Agreement, the successful or prevailing party may recover, in addition to any other relief to which the successful or prevailing may be entitled, its attorneys' fees and costs in any action, lawsuit, or proceeding.

12. <u>Termination of Existing Agreements</u>. Any agreements between any of the Rufty Parties and any of the Strategic Parties or Blust Parties are hereby terminated. This termination applies to all terms and obligations, irrespective of any survival provisions in any agreements between the Rufty Parties and any of the Strategic Parties or Blust Parties. For the avoidance of doubt, all terms and obligations in any agreements between the Rufty Parties and any of the Strategic Parties or Blust Parties are extinguished, and the parties shall owe no further obligations to one another pursuant under such agreements. To the extent any conflict exists between this Agreement, on one hand, or any agreements between the Rufty Parties and any of the Strategic Parties or Blust Parties, on the other hand, as to survivability, this Agreement controls.

13. <u>Successors and Assigns</u>. The provisions of this Agreement will inure to the benefit of and be binding upon the heirs, successors and assigns in interest of the Parties.

14. <u>Interpretation</u>. The Parties agree that they have been represented by their own counsel throughout any negotiations about and at the signing of this Agreement and any other

documents signed incidental thereto. Therefore, the Parties agree that none of the provisions of this Agreement will be construed against any Party more strictly than against the other Party.

15. <u>Non-Assignment</u>. Each Party represents and warrants that it has not heretofore assigned, transferred, or purported or attempted to assign or transfer to any person, entity, or corporation whatsoever, any of the claims released hereunder.

16. <u>Severability</u>. If any provision of this Agreement is for any reason held to violate any applicable law, governmental rule or regulation, or if this Agreement is held to be unenforceable and unconscionable, then the invalidity of such specific provision will not be held to invalidate the remaining provisions of this Agreement.

17. <u>Applicable Law</u>. This Agreement shall be construed in conformity with the Federal Arbitration Act (9 U.S.C. § 1, et seq.) and the substantive laws of the State of North Carolina without regard to its conflicts of laws principles.

18. <u>Arbitration Agreement</u>. Each Party hereby agrees that in the event of any dispute arising out of or relating to this Agreement, such dispute shall be resolved by a single arbitrator in confidential binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Arbitration proceedings may be commenced by any Party by giving the other Party written notice thereof. The arbitrator's award in any such proceeding shall be final and binding. If any Party fails to comply with the arbitrator's award, the injured party may petition any court with jurisdiction for enforcement. In the event a Party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. Each Party hereby agrees that any dispute regarding the arbitrability of this Agreement, including without limitation any dispute relating to the interpretation, applicability, enforceability, conscionability or formation of this Agreement and of this arbitration requirement set forth in this Section 18 shall be governed by the Federal Arbitration Act and shall be resolved exclusively by the arbitrator.

19. <u>Attorneys' Fees and Costs</u>. Each Party shall be responsible for its own attorneys' fees and costs associated with the Lawsuit, the Arbitration, and this Agreement.

20. <u>Survival</u>. Unless expressly stated herein, all rights and obligations created by this Agreement survive execution.

21. <u>Captions</u>. The captions of the paragraphs of this Agreement are solely for the convenience of the Parties. The captions are not a part of this Agreement and will not be used for the interpretation of any of the terms herein.

22. <u>Entire Agreement</u>. This Agreement represents the entire agreement between the Parties and supersedes all prior negotiations, representations, or agreements between the Parties, whether oral or written. This Agreement may be amended only by written instrument designated as an amendment to this Agreement and executed by all of the Parties.

23.   Counterparts and Electronic Execution. This Agreement may be executed in any number of counterparts and by the Parties on separate counterparts, each of which when so executed and delivered will be deemed an original and all of which taken together constitute but one and the same instrument.  This Agreement may be executed by facsimile, .pdf, any electronic signature complying with the United State Electronic Signatures in Global and National Commerce Act, PL 106-229, or any signature complying with applicable analog state laws (e.g., Uniform Electronic Transactions Act(s)).

24.   Further Assurances. Each Party agrees that it will take any and all necessary steps, sign and execute any and all necessary documents, agreements, or instrument which are required to implement the terms of this Agreement, and each Party will refrain from taking any action, either expressly or impliedly, which would have the effect of prohibiting or hindering the performance of the other Parties to this Agreement.

25.   Authority to Execute. Each Party represents and warrants that such Party has the necessary power and authority to execute this Agreement, and that all necessary action for the execution of this Agreement has been taken.

26.   Materiality. All terms contained in this Agreement, including the Parties' representations and the Statement of Purpose memorialized herein, are material to the Parties' decision to execute this Agreement and act in accordance with the same.

[SIGNATURE PAGE TO FOLLOW]

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**DANIEL RUFTY**

Signature:_____

Printed Name:_____


**DANIEL RUFTY LEGAL, PLLC D/B/A CAROLINA LEGAL SERVICES**

Signature:_____

Printed Name:_____

Title:_____


**RUFTY LAW FIRM, PLLC**

Signature:_____

Printed Name:_____

Title:_____

**CAROLINA CLIENT SERVICES, LLC**

Signature: *Ryan Sasson*
Ryan Sasson (Sep 1, 2021 15:41 EDT)

Printed Name: Ryan Sasson

Title:_____


**STRATEGIC FINANCIAL SOLUTIONS, LLC**

Signature: *Ryan Sasson*
Ryan Sasson (Sep 1, 2021 15:41 EDT)

Printed Name: Ryan Sasson

Title:_____

**JASON BLUST**

Signature:_____

Printed Name:_____


**LAW OFFICE OF JASON BLUST, LLC**

Signature:_____

Printed Name:_____

Title:_____


**LIT DEF STRATEGIES, LLC**

Signature:_____

Printed Name:_____

Title:_____


**RELIALIT, LLC**

Signature:_____

Printed Name:_____

Title:_____

# 2021.08.31 - Settlement Agreement and Release - EXECUTION COPY

Final Audit Report                                        2021-09-01

| | |
|---|---|
| Created: | 2021-09-01 |
| By: | Marc Lemberg (mlemberg@stratfs.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4NTyHHBNjvUTgf3MiXZY5NhL3QuEfO48 |

## "2021.08.31 - Settlement Agreement and Release - EXECUTION COPY" History

- Document created by Marc Lemberg (mlemberg@stratfs.com)
  2021-09-01 - 2:34:41 PM GMT- IP address: 38.140.182.140

- Document emailed to Ryan Sasson (rsasson@stratfs.com) for signature
  2021-09-01 - 2:37:05 PM GMT

- Email viewed by Ryan Sasson (rsasson@stratfs.com)
  2021-09-01 - 7:40:37 PM GMT- IP address: 174.241.66.44

- Document e-signed by Ryan Sasson (rsasson@stratfs.com)
  Signature Date: 2021-09-01 - 7:41:14 PM GMT - Time Source: server- IP address: 174.241.66.44

- Agreement completed.
  2021-09-01 - 7:41:14 PM GMT

Adobe Sign