**REGULATORY RESOLUTIONS**
Receivers | Examiners | Monitors

THOMAS W. MCNAMARA
DIRECT      619-269-0499
OFFICE      619-269-0400
FAX          619-269-0401
tmcnamara@regulatoryresolutions.com
https://regulatoryresolutions.com

January 21, 2025

*Via CM/ECF*

Hon. Michael J. Roemer
U.S. Magistrate Judge
United States District Court
Western District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square, 5th Floor
Buffalo, NY 14202

    Re:    *Consumer Financial Protection Bureau, et al. v. StratFS, LLC, et al.*
           Case No. 1:24-cv-00040-EAW-MJR (W.D.N.Y.)

Dear Judge Roemer:

I respectfully write in response to the letters filed today by Defendant Fidelis Legal Support Services, LLC ("Fidelis") and Relief Defendant Cameron Christo ("Christo" and together with Fidelis and relief defendant Bush Lake Trust "the Fidelis Parties") (Dkt. No. 579) and by Defendants Jason Blust ("Blust") and Lit Def Strategies, LLC ("Lit Def" and together with Blust "the Blust Parties") (Dkt. No. 581). While this correspondence is submitted in response to both letters, it will focus primarily on the Fidelis Parties because unlike Christo, Blust's counsel has indicated that Blust will be present for the January 23-24 hearing.

The Fidelis Parties indicate that Christo will not appear at the hearing. Fidelis counsel claims the subpoena sent by the CFPB is invalid, because it was not properly served and violates Rule 45's geographical limits. Even if he is compelled to appear, counsel indicates Christo will assert his Fifth Amendment privilege and decline to answer questions.

Separately, Christo's counsel notified me this morning that Christo would not be appearing "voluntarily" on the OSC motion to hold the Blust Parties in contempt. This is an incredible position for Christo to take given that on May 23, after hearing extensive oral argument from counsel for Blust and Christo on the OSC Motion and Fidelis's related Receivership Defendant challenge, the Court indicated it needed to hear testimony to make credibility findings and ordered Blust, Christo, and Hinds to give evidence.[1]

---

[1] Shortly before hearing from Christo's counsel this morning, I received an email from Mark Molloy, counsel for Defendant Michelle Hinds Gallagher ("Hinds"), who also indicated she would not

Hon. Michael J. Roemer
U.S. Magistrate Judge
January 21, 2025
Page 2

### Blust, Christo and Hinds Were Ordered to Provide Testimony – and Must Appear on January 23-24

Defendants Blust and Christo were present at the May 23 hearing, where they observed oral argument and heard the Court order their testimony.  The evidence presented in the extensive briefing prior to that hearing established that Blust, Christo, and Hinds had submitted declarations that were materially false and misleading.  After the Court indicated it would rule against Blust and the Fidelis Parties based on the information before it – which included three sworn (and false) declarations of Christo, two sworn (and false) declarations of Hinds, and one sworn (and false) declaration of Blust – Christo's counsel expressly agreed to an evidentiary hearing.  *See* May 23rd Hearing Transcript at 52:12-15.  (The Court: "So now you are okay with the evidentiary hearing?" Counsel for the Fidelis Parties [Mr. Durland]: "We're certainly not opposing one, Judge.  That's right.").  In order to delay an adverse Court Order, counsel for the Fidelis Parties acquiesced to an evidentiary hearing:

> THE COURT: You know what that sounds like to me, Mr. Durland, we're going to have a evidentiary hearing.  I'm going to have to get people on the stand and have them testify and make credibility determinations.
>
> Because this is you say black, they say white.  You say day, they say night, when it comes to these facts.
>
> MR. DURLAND: Well, I mean, I suppose if -- if the Court feels that an evidentiary hearing is necessary in order to resolve the motion, it's certainly not within our power to say no.

---

"voluntarily" appear at the OSC hearing.  By way of background, I initially reached out to Mr. Molloy shortly after he entered the case to note that Hinds had been ordered to testify in the OSC and related Fidelis Receivership Defendant challenge hearing.  On January 10, I reached out to Mr. Molloy again to remind him that we would be taking his client's testimony at the OSC hearing and asked him to confirm his client's appearance.  My office later sent him the transcript of the May 23 OSC hearing in which the Court indicated it wanted to hear from Blust, Christo, Hinds, Rosenberg and Avila.  When he had not responded, I followed up with Mr. Molloy on January 18.  He did not reply until this morning, when he, like the Fidelis Parties, claimed Hinds "has decided that she will not appear voluntarily at the hearing."  *See* email thread attached at **Exhibit 1**.  Hinds, like Christo and Blust, is not being asked to appear voluntarily, but rather pursuant to the Court's order at the May 23, 2024 hearing.  Notably, Hinds's counsel did not assert this morning that she would invoke her Fifth Amendment right against self-incrimination.  As such, it appears Hinds will testify if ordered to Court.  We ask that Hinds be ordered (again) to appear at the January 23-24 hearing.

Hon. Michael J. Roemer
U.S. Magistrate Judge
January 21, 2025
Page 3

> But I would, I suppose, urge the Court to take a close look at what the --
>
> THE COURT: I have. I read all the papers. I looked at all the e-mails. There is a lot of damning e-mails in there.
>
> I would think you would want an opportunity to try to explain that.

Hearing Tr. at 12.

At the end of the May 23 hearing, the Court made crystal clear that it was ordering an evidentiary hearing, specifically regarding Fidelis, and requiring Blust, Christo, and Hinds to testify. The Court indicated that:

> "**I think the witnesses that would have to testify would be** Mr. Blust, **Mr. Christo**, Ms. H[inds], Ms. Rosenberg, and Mr. [Avila]."

*Id.* at 80 (emphasis added). The Court also identified the issues it wanted to hear evidence on:

> THE COURT: Okay. So we're going to have an evidentiary hearing.
>
> I would like the hearing to address, among other things: The background of Fidelis's formation; the nature and extent of Blust's involvement after its formation.
>
> How employees, files and work were shared when employees were both working for both Lit Def and Fidelis; what law firms Fidelis served and how Fidelis received this business.
>
> How work was assigned at Fidelis and by whom; and how compensation and hiring were determined and by whom.
>
> I also want to have evidence on this issue about the preparation of the invoice -- invoices, I guess, from Fidelis to the law firms.
>
> I also want to have evidence about -- regarding this $750,000 payment from Strategic to Fidelis. I'd like to be able to find out where that money went.
>
> I think the witnesses that would have to testify would be Mr. Blust, Mr. Christo, Ms. Heinz, Ms. Rosenberg and Mr. Evela.

Hon. Michael J. Roemer
U.S. Magistrate Judge
January 21, 2025
Page 4

> I think this would probably take at least a day and a half, if not two days for this hearing. So we're going to look for the first couple of open days that we have.

Hearing Tr. at 80.

The evidentiary hearing was initially set for July 10 and 11, but the Court postponed it as the parties discussed settlement. Perhaps because of the evidence revealed in the OSC Motion and Fidelis Receivership Defendant challenge process, or perhaps because they independently developed additional evidence, Plaintiffs subsequently filed a motion to extend the Preliminary Injunction to Fidelis, sought to extend the Receivership to Fidelis, and named Christo a Relief Defendant and Hinds a Defendant.

Last month (on December 19), the Court issued its Report and Recommendation on the Fidelis Parties' motion to dismiss. Dkt. No. 532. At the end of the order, the Court specifically set the evidentiary hearing regarding Plaintiffs' PI Motion as to Fidelis and the Receiver's OSC Motion as to the Blust Parties for January 23-24. The Fidelis Parties filed a challenge to the hearing date, seeking a further delay (the evidentiary hearing on the OSC and Fidelis Receivership Defendant challenge was originally set for July 10-11); the District Court quickly denied Fidelis's challenge.

Christo's refusal to appear based on a supposed Rule 45 subpoena defect as to the Plaintiffs (and, as to the OSC Motion, a claim that he is not willing to "voluntarily" appear) is just more of the same delay game; it does not pass the straight-face test.[2] Christo's flouting of the Court's order is particularly galling given the tremendous and unnecessary costs and delay he has caused the parties, the receivership estate, and this Court. He has papered the Court file with reams of unnecessary pleadings, which the parties had to respond to, and the Court had to consider – pleadings, it turns out, which were grounded on false sworn claims he offered in a coordinated effort with Blust and Hinds. This effort has succeeded in keeping Fidelis out of the receivership estate for nearly a year, from last February when my team and I uncovered the Blust, Lit Def, and Fidelis connection until today. Giving every benefit of the doubt to Blust, Christo, and Hinds, the only conclusion which can be drawn is they have engaged in a coordinated and knowing effort to tell the same false story. This amounts to a fraud on the Court – which they have vigorously maintained, despite numerous opportunities to correct the falsehoods.

---

[2] Nor does Hinds's voluntary appearance claim pass the straight face test. Hinds was glad to offer two sworn (and false) declarations to this Court. But in face of evidence developed which starkly demonstrates her testimony to this Court was false, she now, at the last moment, argues she will not "voluntarily" appear.

Hon. Michael J. Roemer
U.S. Magistrate Judge
January 21, 2025
Page 5

**The Process for Invoking the Fifth Amendment**

Blust and Christo[3] have indicated they will invoke their Fifth Amendment right against self-incrimination in response to questions.[4]

**Blust and Christo Must Appear and Invoke to Specific Questions**

A "party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence[.]" *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995). In a civil case, an adverse inference may properly be drawn from an invocation of Fifth Amendment rights where the invoker is presented with probative evidence or independent probative evidence exists regarding the fact at issue. *See, e.g.*, *In re Kwok*, 663 B.R. 177, 193 (Bankr. D. Conn. 2024) (gathering case law, including *Mirlis v. Greer*, 952 F.3d 36, 47 (2d Cir. 2020), *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), and *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

Blust and Christo must take the witness stand and invoke the privilege in response to specific questions so that particular adverse inferences may be developed. In the case of the OSC Motion and the related Fidelis Receivership Defendant challenge, we will present focused questions that address specific paragraphs of Blust's and Christo's sworn declarations and demonstrate they are false along at least the following themes the Court indicated it wanted to hear evidence on: Blust's control of Fidelis; Blust's transfer of law firms from Lit Def to Fidelis; the transfer of assets from Lit Def to Fidelis (including computers, employees, software, etc.) and the transfer of the $750,000 Strategic payment (which was to reimburse Lit Def for its full payment of the Rufty Settlement) from Lit Def to Fidelis; that Christo did not do work for Strategic for the $750,000 payment; and that Blust controlled employee allocation and compensation.

**Alternative: Written Questions to Blust and Christo**

An alternative route would be to submit written questions to Blust and Christo. It is an established practice in the Second Circuit to submit a list of questions to a witness, then submit a stipulation to the court specifying the questions on which the witnesses will invoke their Fifth Amendment rights. *See, e.g., Brenner v. World Boxing Council*, 675 F.2d 445, 454 (2d Cir. 1982) ("Brenner presented a list of questions which he planned to ask King were he forced to

---

[3] Again, Hinds has not invoked and must appear and answer questions.

[4] Assuming the privilege has not been waived by their submission of four declarations, Blust's and Christo's invocation has implications in (1) the current contempt proceedings against the Blust Defendants; (2) the determination that Fidelis is a Receivership Defendant; and (3) the remedies available to the receivership estate for the contempt and the false receivership challenge filed by Fidelis and Christo.

Hon. Michael J. Roemer
U.S. Magistrate Judge
January 21, 2025
Page 6

testify…[t]he district court reviewed the questions and only then concluded that King had properly invoked his Fifth Amendment privilege"); *In re 650 Fifth Ave. & Related Properties*, 2017 WL 6419035, at *4 (SDNY May 30, 2017), *rev'd in part*, *vacated in part*, 934 F.3d 147 (2d Cir. 2019) ("[t]he Government also will be permitted to offer as an exhibit the list of questions that the witnesses received at the depositions so that the jury can identify the scope of the invocations [of the Fifth Amendment]"); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2010 WL 2653369, at *5 (EDNY June 25, 2010) ("the City submitted a list of questions to which Watkins could stipulate he would assert the privilege"); *Bourgal v. Robco Contracting Enterprises, Ltd.*, 969 F. Supp. 854, 859 (EDNY 1997), *aff'd*, 182 F.3d 898 (2d Cir. 1999) ("the parties' attorneys agreed that the Funds would submit a list of questions to the defendants… If the defendants chose to invoke the Fifth Amendment in response, they would prepare a stipulation to that effect").

If the Court wishes, we could pursue submitting written questions to Blust and Christo. While we have not yet discussed the issue with Mr. Personius, we believe based on a communication he sent today that he is amenable to this approach. We are in process of drafting the Blust questions and should be able to circulate them as soon as we get direction from the Court. If the Court wishes us to proceed with written questions, we anticipate sending a list of specific questions to Blust for his and his counsel's review. We would be amenable to stipulations that he is asserting the privilege as to all of the questions or indications in advance of any questions where they will offer affirmative testimony. We would propose submitting those stipulations at the hearing in lieu of offering Blust's live testimony. The Court may then consider these specific invocations and which adverse inferences should be drawn based on review of the other probative independent documentary and sworn evidence submitted previously and at the PI hearing.

We raised the written question approach with counsel for Christo. Frankly, we are less optimistic this is a workable solution with him, given the course of Christo's litigation approach, his repetition of false claims under oath, and his general posture, in particular, his routine references to his intent to appeal any adverse decision. *See*, *e.g.*, Declaration of Timothy W. Hoover in Support of Appeal/Review Relating to the Hearing Date, Dkt. No. 561-1, ¶ 4; Fidelis's Hearing Brief, Dkt. No. 569, at 24. Given these realities, it seems preferable to have Christo answer questions under oath in front of the Court, so the record is absolutely clear, should a Christo appeal follow. This approach would also avoid what could devolve into objections, quibbles, and debates about the word choice in the written questions.

We will of course comply with whatever approach the Court deems best.

Sincerely,

Thomas W. McNamara
TWM:jej