UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSUMER FINANCIAL PROTECTION,      24-CV-40-EAW-MJR
BUREAU, et al.,
                                                        DECISION AND ORDER
                   Plaintiffs,

      v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), et al.,

                   Defendants, and

STRATEGIC ESOP, et al.,

                   Relief Defendants.
_____

Defendant StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), including its subsidiaries and related affiliates ("defendant" or "Strategic"), has moved to modify the preliminary injunction to (1) remove Atlas Debt Relief LLC and Timberline Financial LLC from the definition of "Receivership Defendants"; and (2) remove Versara Lending LLC from the list of "Corporate Defendants." (Dkt. Nos. 374, 472) Strategic has also moved the Court for an order overruling the Receiver's determination that Versara DST 2019-2, Strategic LD, LLC, and Cell Gramercy 2 of Contego Insurance, Inc. are receivership defendants. (Dkt. No. 472) For the following reasons, Strategic's requests are denied.

## **BACKGROUND**

On January 11, 2024, the Honorable Lawrence J. Vilardo granted plaintiffs' *ex parte* motion for a temporary retraining order ("TRO") with asset freeze, appointment of a Receiver, and other equitable relief. (Dkt. Nos. 5, 12) On February 1 and 2, 2024, this Court held an evidentiary hearing to address plaintiffs' motion for a preliminary injunction,

and all parties consented to this Court's jurisdiction to issue a final order as to that motion. (Dkt. Nos. 129, 130, 158) On March 4, 2024, this Court granted plaintiffs' motion for a preliminary injunction with asset freeze, the continued appointment of the Receiver designated by Judge Vilardo, and other equitable relief (the "PI").[1] (Dkt. Nos. 183, 184) This Decision and Order assumes familiarity with the Court's PI Decision and Order (Dkt. No. 183), the PI (Dkt. No. 184), and the prior proceedings in this case.

On May 22, 2024, the Receiver filed a Report and Request for Instruction with the Court. (Dkt. No. 359) Therein, the Receiver requested the Court's permission to wind-down the primary portion of Strategic's business, which (1) offered debt-relief services to consumers; and (2) prior to the issuance of the TRO and PI, collected advance fees from consumers in exchange for these services. (Id.) The debt-relief services were provided, by Strategic, through numerous affiliated law firms, who have intervened in this lawsuit (the "intervenor law firms").[2] (Id.) During a hearing on November 20, 2024, Strategic and the intervenor law firms indicated that they did not oppose the receiver's Request for Instruction, which included the Receiver's request to wind-down the debt-relief services provided in conjunction with the law firms.[3] (Dkt. No. 526)

---

[1] Strategic, along with other defendants to this lawsuit, filed appeals of the PI with the Second Circuit Court of Appeals. (Dkt. Nos. 192-93, 198, 203, 206) Defendants also moved before the Second Circuit for a stay of the PI pending the adjudication of their appeal, which was denied on September 9, 2024. (See Case No. 24-697, Dkt. No. 118-1) The appeal remains pending.
[2] On October 25, 2024, the intervenor law firms filed a motion to withdraw from representing their current clients, namely the consumers enrolled in Strategic's debt-relief services provided in conjunction with the law firms. (Dkt. No. 469) The Court granted the intervenor law firms' motion to withdraw on November 13, 2024. (Dkt. No. 489)
[3] Strategic previously opposed the Receiver's request to wind-down the law firm debt-relief portion of its business. (Dkt. No. 374) Strategic argued that the Receiver should instead be required to implement a plan transitioning Strategic's law firm debt-relief clients from an advance fee payment structure to a contingent fee payment structure. (Dkt. Nos. 276, 374) After hearing extensive argument from the parties, the Court denied Strategic's request, finding that a Court order requiring the implementation of the conversion plan proffered by Strategic was not feasible or appropriate. (Dkt. Nos. 434, 487, pg. 3)

Strategic now seeks removal of Atlas Debt Relief LLC ("Atlas"), Timberline Financial LLC ("Timberline"), and Versara Lending LLC ("Versara") from the PI. (Dkt. Nos. 374, 472) Atlas, Timberline, and Versara are subsidiaries or affiliates of Strategic's large debt-relief business operation that do not offer law firm debt-relief services or charge advance fees, but nevertheless remain under the control of the Receiver pursuant to the terms of the PI. (*Id.*) Atlas and Timberline offer debt-relief services to consumers on a contingency fee basis and without involvement of the intervenor law firms. (Dkt. No. 115-1, pgs. 42-43) Versara provides debt negotiation loans to consumers already enrolled in Strategic's debt-relief services. (*Id.* at 40-41)

On September 27, 2024, the Receiver identified three new Strategic entities or affiliates that the Receiver contends qualify as a receivership defendants under the terms of the PI. (Dkt. No. 472) These entities are Versara DST 2019-2 ("Versara DST"), Strategic LD, LLC ("Strategic LD"), and Cell Gramercy 2 of Contego Insurance, Inc. ("Cell Gramercy"). (*Id.*) Strategic objects to the Receiver's designation of these entities as receivership defendants. (*Id.*)

## DISCUSSION

*Atlas, Timberline, and Versara*

The PI defines "Corporate Defendants" to include, among other entities or businesses, "Stratfs, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC, Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC…Strategic Consulting, LLC, *Versara Lending, LLC* [and] Strategic Family, Inc." (Dkt. No. 184, pg. 5, emphasis added) The PI defines "Receivership Defendants" to mean "the Corporate Defendants and their subsidiaries, affiliates, divisions, successors,

and assigns, as well as any other business related to Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants such as *Atlas Debt Relief LLC* and *Timberline Financial LLC*[.]" (*Id.* at pg. 8, emphasis added)

Versara, Timberline, and Atlas are all properly included in the bounds of the receivership. Not only are these entities specifically named as receivership defendants in the PI issued by this Court, but they also qualify as "other business[es] related to Defendants' debt-relief services and which the Receiver has reason to believe [are] owned or controlled in whole or in part by any of the Defendants." (*Id.*)

Atlas, Timberline, and Versara are all wholly-owned subsidiaries of defendant Strategic Family, Inc., the parent company of defendant StratFS, LLC.[4] (Dkt. No. 490, pg. 4-5; Dkt. No. 472-1, ¶ 4) Defendant Ryan Sasson, the owner of Strategic, was the chief executive officer of Atlas. (Dkt. No. 490, pg. 4) Former Strategic executive Salvatore Tirabassi served as the chief executive officer of Timberline. (*Id.*) Versara's state registration filings list Sasson as the company's manager and authorized representative. (*Id.*) Further, these entities qualify as "other businesses related to [Strategic's] debt-relief services." Atlas and Timberline provide contingency fee debt-relief services to consumers.[5] (Dkt. No. 115, pg. 42-43) Versara provided loans to consumers enrolled in Strategic's debt-relief operations, and Strategic's negotiators would use those funds to

---

[4] The Court notes that the PI defines receivership "Asset" to include "any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant[.]" (Dkt. No. 184, pg. 4) Thus, the assets of Atlas, Timberline, and Versara also fall within the PI's definition of receivership assets.

[5] According to the Receiver, the "Atlas Model" was generally offered in states where state regulations prevented Strategic from offering the law firm debt-relief model, principally in California, North Carolina, and South Dakota. (Dkt. No. 115, pg. 43)

4

settle consumer debts. (Dkt. No. 490, pg. 5) In fact, every Versara borrower was a client of Strategic's debt-relief enterprise. (*Id.*)

Strategic does not seem to dispute that Atlas, Timberline, and Versara are owned and controlled by defendant and are engaged in business activities directly related to Strategic's debt-relief operation. Instead, Strategic argues that these entities should not be subject to the terms of the PI because they do not "implicate" the Telemarketing Sales Rule ("TSR") or collect advance fees. But Strategic's contention that Atlas, Timberline, and Versara did not directly engage in advance fee debt-relief is beside the point.[6]

To be sure, the PI was entered after this Court found, following an evidentiary hearing, that plaintiffs demonstrated a likelihood of success on the merits of their claim that Strategic's law firm debt-relief business was collecting advance fees from consumers in violation of the TSR. To that end, the PI specifically enjoins Strategic and its related entities from collecting advance fees for debt-relief. However, other portions of the PI, including the asset freeze and the appointment of the Receiver, were not designed to apply only to those portions of Strategic's business engaged in debt-relief in exchange for advance fees. Instead, the PI includes, within the receivership, all businesses that are both owned and/or controlled by defendant and related to defendant's massive debt-relief operation. These parameters were appropriately drawn to prevent diversion and waste of

---

[6] The Court notes that plaintiffs have alleged at least some specific claims of wrongdoing against Versara. In addition to alleging that defendants violated the TSR's ban on charging advance fees for debt-relief, plaintiffs allege that defendants violated the TSR's ban on deceptive telemarketing practices by engaging in a bait-and-switch, whereby defendants drew consumers in with flyers falsely promising pre-approved debt consolidation loans, only to then direct consumers to enroll in their advance-fee debt-relief program. (Dkt. No. 366) Plaintiffs submitted evidence that Versara paid over $135 million to Mandaree Enterprises, LLC, a tribally-owned holding company that sent the flyers falsely advertising pre-approved debt consolidation loans to consumers. (Dkt. No. 8-6, ¶¶ 29-30; Dkt. No. 8-7, ¶ 31) Plaintiffs also submitted evidence that Versara directly received $181,522.49 in advance fees. (Dkt. No. 8-1, ¶ 20, ¶ 30)

corporate assets, as well as to preserve the status quo during the pendency of this lawsuit. *See Sec. & Exch. Comm'n v. I-Cubed Domains*, LLC, 664 F. App'x 53, 56 (2d Cir. 2016) (noting that it is appropriate to preserve all assets of a defendant in anticipation of a potential judgment where such assets are "commingled with fraudulently obtained funds[.]"); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary.").[7]

In fact, the PI specifically instructs the Receiver to continue to conduct defendant's business as necessary and appropriate but only if the Receiver makes a good faith determination that the business can be operated lawfully and profitably, using the assets of the receivership estate. (Dkt. No. 184, pg. 21) Thus, the scope of the receivership was not intended to apply only to those portions of Strategic's debt-relief business that the Court found were likely to be operating in violation of the law.

The Court also rejects Strategic's argument that the PI should be modified to exclude Atlas, Timberline, and Versara because "the Receiver has continuously demonstrated that he refuses to even attempt to profitably run Strategic…including entities that have always operated compliantly and have no connection to the Government's TSR-related allegations[.]" (Dkt. No. 472-5, pg. 2) However, "receivers, just

---

[7] The Receiver notes, and Strategic does not appear to dispute, that Versara, Atlas, and Timberline are all operationally as well as financially integrated into Strategic, and rely on software and consumer information managed and controlled by Strategic. Thus, even if there was a valid basis to remove these entities from the receivership, it is unclear how they would operate independently of Strategic, which would continue to be included in the receivership, controlled by the Receiver, and bound by the terms of the PI.

like corporate directors, are entitled to deference of the business judgment rule in their decision-making concerning the management of the corporation[.]" *See Golden Pac. Bancorp . FDIC*, 95 Civ. 9281, 2002 WL 31875395, at *8-9 (S.D.N.Y. Dec. 26, 2002).

The Court has found, on multiple occasions over the course of this lawsuit, that the Receiver and his team are successfully presiding over the continued, profitable, and lawful operations of Atlas, Timberline, and Versara. (Dkt. No. 358, pgs. 5-6; Dkt. No. 488, pgs. 5-7) In a November 13, 2024 Decision and Order granting the Receiver's Second Interim Fee Application, this Court noted that, since the Receiver restarted the operations of Atlas and Timberline in January of 2024, these businesses have generated an average of $1,631,000 in monthly revenue and have continued to employ approximately 100 people. (Dkt. No. 488, pg. 6) The Court further noted that, based on the Receiver's coordination with secured creditor Credit Suisse (UBS), Versara has not only been able to continue operating, but has also been able to significantly reduce its principal loan balance. (*Id.* at 6-7) Likewise, the Receiver's continued operation of Atlas and Timberline has allowed Strategic to continue making payments to its vendors as well as to continue making interest payments, on an outstanding loan of roughly $35 million, to senior lienholders CIBC Bank USA and Valley National Bank.[8] (Dkt. 382, pg. 10)

---

[8] The Court notes that prior to the issuance of the TRO, the model of debt-relief service provided by Strategic and the intervenor law firms, which took advance fees, accounted for 80% of Strategic's revenue. (Dkt. No. 183, pg. 11) Strategic's other debt-relief services, which did not take advance fees, such as Atlas and Timberline, accounted for roughly 16% of Strategic's revenue. (*Id.*) Since January of 2024, the TRO and PI have prohibited Strategic from charging advance fees for the pendency of this lawsuit. (Dkt. Nos. 183, 184) Thus, any decrease in the profitably of Strategic's business is the result of Strategic's inability to continue collecting advance fees from consumers, and not the result of mismanagement or inaction on the part of the Receiver.

Finally, the Court rejects Strategic's argument that Atlas, Timberline, and Versara have been unfairly subjected to the terms of the PI without due process. Strategic contends that no evidence was offered, during the evidentiary hearing, implicating Versara, Atlas, or Timberline in any violation of the TSR. But as stated previously, these entities are not subject to receivership based on their own alleged TSR violations but instead because they are owned and controlled by Strategic as well as fully integrated into Strategic's systems and infrastructure. Also critically, they played integral roles in Strategic's massive debt-relief enterprise. Thus, their inclusion is necessary to maintain the status quo, a primary purpose for the issuance of a preliminary injunction.

Furthermore, these entities have not been denied due process of law. They are fully-owned subsidiaries of Strategic. Strategic's counsel participated in the evidentiary hearing before this Court and had the opportunity, at that time, to challenge the inclusion of Versara, Atlas, and/or Timberline in any injunctive relief requested by plaintiffs. In fact, the TRO named Versara as a corporate defendant and defined "Receivership Defendants" as both corporate defendants and any Strategic-owned business related to defendant's debt-relief services. (Dkt. No. 12, pgs. 5, 8) The Receiver then specifically designated Atlas and Timberline as receivership defendants on January 15, 2024. (Dkt. No. 521, pg. 3) Thus, Strategic had notice, prior to the PI hearing, that should plaintiffs' request for a preliminary injunction be granted, the receivership would most likely encompass Atlas, Timberline, and Versara.

Moreover, after Strategic filed the instant motion seeking to modify the PI to exclude Atlas, Timberline, and Versara, this Court ordered briefing, held oral argument, and considered all arguments raised by Strategic before now denying the requested relief.

*See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976) ("All that is necessary [for due process] is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case."). Indeed, Strategic has identified no disputed issues of fact, relevant or material to the Court's analysis here, that would necessitate the calling of witnesses and introduction of evidence. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required on [a motion for a preliminary injunction]… when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case, or when the disputed facts are amenable to complete resolution on a paper record."); *FTC v. Noland*, 20-CV-47, 2020 WL 4530459, at *8-9 (D. Ariz. Aug. 8, 2020) (denying motion to release entity from receivership when it had the opportunity to move the court in writing, submit evidence in support of its argument, and to present oral argument).[9]

For these reasons, the Court denies Strategic's request to modify the PI to remove Atlas, Timberline, and Versara.[10]

*Strategic LD, Versara DST, and Cell Gramercy*

The PI permits the Receiver to identify new receivership defendants. (Dkt. No. 184, pg. 22) To that end, the PI instructs that "[i]f the receiver identifies a nonparty entity as a Receivership Entity, [the Receiver shall] promptly notify the entity as well as the parties,

---

[9] To the extent Strategic is requesting that this Court now hold an evidentiary hearing addressing the inclusion of Atlas, Timberlane, and Versara in the PI, that request is denied.
[10] The Court also notes that the PI does not order Atlas, Timberline, and Versara to cease operating, nor does it prohibit Atlas and Timberline from collecting contingent fees for debt-relief. Instead, the Court has ordered that these entities be placed in receivership, and run under the direction of the Receiver, in order to preserve the status quo. When this lawsuit reaches resolution, or should defendants succeed in their appeal of the PI to the Second Circuit Court of Appeals, these entities will return to Strategic's control and management.

and inform the entity that it can challenge the receiver's determination by filing a motion with the Court." (*Id.*) On September 27, 2024, the Receiver sent letters to Strategic's counsel, stating it was the Receiver's determination that Strategic LD, Versara DST, and Cell Gramercy qualified as receivership defendants. (Dkt. Nos. 472-2, 472-3, 472-4) Strategic now challenges the Receiver's designation of these entities as receivership defendants.

As noted above, the PI defines "Receivership Defendant" to include "any other business related to Defendants' debt-relief services and which the Receiver has reason to believe is owned in whole or in part by any of the Defendants." (Dkt. No. 184, pg. 8) For the following reasons, the Court finds that Strategic LD, Versara DST, and Cell Gramercy fit this definition, and were therefore properly designated, by the Receiver, as receivership defendants.

The Receiver submits, and Strategic does not dispute, that (1) Strategic LD is owned or controlled, in whole or in part, by defendant Strategic Family, Inc. and (2) corporate records and IRS filings demonstrate that defendant Ryan Sasson is the "sole member" of Strategic LD. (Dkt. No. 472-3) The Receiver also submits, and Strategic does not dispute, that Strategic LD is the payroll processing company for Versara. (*Id.*) The Receiver further submits, and Strategic does not dispute, that (1) Versara DST is an entity within the StratFS group of companies; and (2) Versara DST was established by Strategic in July of 2019, as a Delaware Statutory Trust, to receive and hold remittances received from borrowers of Versara's debt negotiation loans. (Dkt. Nos. 472-2, 490, pg. 7) Thus, Strategic LD and Versara DST are both owned and/or controlled by defendant and fully intertwined in Strategic's debt-relief operation.

10

Cell Gramercy is a captive insurance company organized under the laws of Utah. (Dkt. No. 259, pg. 5) The Receiver indicates, and Strategic does not dispute, that the owners and chief executive officers of Cell Gramercy are defendants Ryan Sasson and Albert Ian Behar. (Dkt. No. 472-4) It appears that Cell Gramercy's insurance reserves were established to allow Strategic and its related entities, as well as the intervenor law firms, to make claims for unpaid legal fees owed under service agreements between Strategic and the law firms. (Dkt. No. 234-6, pg. 10) The Receiver states, and Strategic does not appear to dispute, that Cell Gramercy's insurance reserves were funded by defendant Strategic Financial Solutions, LLC. (Dkt. No. 472-4) Moreover, this Court previously found that the insurance policy proceeds of Cell Gramercy are a receivership asset, "both because Strategic and/or the Strategic entities may have competing rights to draw upon the policy funds and because any funds not paid on valid claims may revert back to Strategic and/or the Strategic entities, who appear to have funded the policy." (Dkt. No. 299) Thus, Cell Gramercy is also owned by defendant and related to Strategic's debt-relief operation.[11]

## CONCLUSION

For the forgoing reasons, defendant's motion to modify the preliminary injunction to (1) remove Atlas Debt Relief LLC and Timberline Financial LLC from the definition of "Receivership Defendants"; and (2) remove Versara Lending LLC from the list of

---

[11] To the extent that Strategic argues that Strategic LD, Versara DST, and Cell Gramercy are not appropriate receivership defendants because of due process concerns or because they are not alleged to have themselves violated the TSR, the Court rejects those arguments for the same reasons stated herein with respect to Atlas, Timberline, and Versara. Also, with regard to any due process concerns, the Court notes that the PI sets forth a procedure by which an entity may challenge the Receiver's designation of that entity as a new receivership entity, and that process has been followed here. (Dkt. No. 184, pg. 22)

"Corporate Defendants" is denied. (Dkt. Nos. 374, 472) Defendant's request for the Court to issue an order overruling the Receiver's determination that Versara DST 2019-2, Strategic LD, LLC, and Cell Gramercy 2 of Contego Insurance, Inc. are receivership defendants is also denied.

**SO ORDERED.**

Dated:   February 7, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge