# EXHIBIT A

Case 1:24-cv-00040-EAW-MJR    Document 634-1    Filed 03/05/25    Page 1 of 8

# **OBJECTIONABLE PROPOSED ADVERSE INFERENCES[1]**

**I.     Invocation of Fifth Amendment by Jason Blust**

1. <u>Blust Set Up and Generally Controls Fidelis</u>

   - "Q. And you controlled Fidelis on January 1, 2024; correct?" (13)

   - "Q. And you controlled Fidelis on February 23, 2024; correct?" (13)

   - "Q. You arranged with Cameron Christo to establish Fidelis in 2021 to replace Lit Def Strategies as the entity to service the law firms under your control: isn't that correct?" (13)

   - "Q. And the reason that you asked Christo to establish Fidelis in his name as a replacement to Lit Def is because you personally and your law firm Client First Bankruptcy and your companies Lit Def and Relialit had been sued numerous times in 2019 and 2020. Isn't that correct?" (13).

   - Blust was questioned regarding his intent from the outset to move all the Law Firms from Lit Def to Fidelis to insulate himself from future consumer and regulatory lawsuits. (14)

   - "Q. At all times from Fidelis's establishment in 2021 until the entry of the TRO in this case and even after you exercise control of Fidelis; isn't that correct?" (14)

2. <u>Fidelis is Lit Def's Proxy or Successor</u>

   - "Q. And Fidelis is the successor to Lit Def; correct?" (14)

3. <u>Blust Controls Fidelis Employee Hiring and Compensation</u>

   - "Q. And you made the final decision on when to hire a new employee at Fidelis; correct?" (14)

---

[1] The numbers in parentheses refer to pages of the Receiver's Post-Hearing Brief (Doc 622).

1

- Blust was asked to confirm that, based on these reports, he would have Hinds transfer employees from Lit Def to Fidelis without consulting Christo. (14)

- Blust was asked to confirm that he established the bonuses for Fidelis employees in December 2022 and December 2023, without Christo's involvement. (14)

- "Q. Similarly, you increased salaries for Fidelis employees without involvement of Christo, isn't that correct?" (15)

4. <u>Christo is the Front Owner of Fidelis</u>

    - "Q. And you have a similar arrangement [to the Rufty arrangement] with Cameron Christo in that Cameron Christo is the owner of Fidelis in name only; correct?" (15)

    - "Q. And you have a similar arrangement [to the Rufty arrangement] with Cameron Christo and Fidelis in that you received things of value from Cameron Christo and Fidelis; correct?" (15)

    - "Q. And at all times consistent with your arrangement with him Christo acted as a front owner of Fidelis, isn't that correct?" (15)

5. <u>The $750,000 StratFS Paid to Fidelis Was a Diverted Lit Def Asset, Not Compensation for "Vetting" Software</u>

    - "Q. [A] Lit Def asset of $750,000 was thereby transferred to Fidelis; wasn't it?" (16)

6. <u>Blust Failed and/or Refused to Cooperate with the TRO</u>

    - "Q. You attempted to conceal the existence of your control of Fidelis from the parties in this case and receiver; isn't that correct?" (16)

- "Q. And you knowingly violated the temporary restraining order and later the preliminary injunction in this case by knowingly operating Fidelis; isn't that true?" (16)

- "Q. And you knowingly violated the TRO and the preliminary injunction that replaced it by interfering in the receiver['];s taking the custody, control, possession or managing the assets and documents of this receivership by submitting false testimony designed to give the appearance that Fidelis was not owned or controlled by you; isn't that true?" (16)

II. **Invocation of Fifth Amendment by Christo**

1. <u>Blust Set Up Fidelis and Controls Its Personnel, Employee Compensation, and Hiring/Firing</u>

    - "Q. Jason Blust controlled whether former Lit Def employees worked at Fidelis; is that right, Mr. Christo?" (17)

    - Christo was asked to confirm that Blust made all "compensation decisions" and hiring/staffing decisions for Fidelis." (17)

2. <u>Fidelis is Lit Def's Proxy or Successor</u>

    - "Q. Fidelis is the successor to Lit Def, isn't that true?" (19)

    - Christo was asked to confirm that Blust provided Fidelis with all of its clients, most of its employees, and the "infrastructure for Fidelis to operate." (19)

    - Christo was asked to confirm that Paragraph 19 of his March 21, 2024 Declaration – which stated "Jason Blust simply does not own or control Fidelis in any way, and Fidelis is not and never was Lit Def's successor alter ego" – is false. (19)

3. <u>All of Fidelis's Business Derives from Jason Blust</u>

    - Christo was asked to confirm that Blust provided Fidelis with all of its clients, most of its employees, and the "infrastructure for Fidelis to operate." (20)

3

4. <u>Blust, Not Christo, Controls Fidelis</u>

- "Q. In fact, you were not involved in overseeing Fidelis's day-to-say litigation support operations; is that correct?" (21)

- "Q. Jason Blust controls Fidelis; is that correct?" (21)

- "Q. Indeed, you are the head of Fidelis in name only; is that correct, Mr. Christo?" (21)

- Christo was asked to confirm that Blust and Hinds, not he, oversaw Fidelis's daily operations. (21)

- Christo was asked to confirm that Blust, not he, directed Hinds regarding Fidelis's operations. (21)

- "Q. The only work you did for Fidelis was routine administrative tasks designed to uphold the appearance that Fidelis was a company independent from Lit Def; is that right?" (21)

- "Q. You agreed to be the front owner for Fidelis; right?" (21)

- Christo was asked to confirm that the statement in his April 22, 2024 Declaration – "Fidelis is my company. I founded it. I funded it. I run it and my trust and the trust I created receives the profits from it" – is false. (21)

5. <u>Fidelis has Received Lit Def Assets</u>

- Christo was asked to confirm that the $750,000 was not compensation for technology consulting. (23)

- Christo was asked whether his assertion, at Paragraph 12 of his March 21, 2024 Declaration -*i.e.*, "My $750,000 fee paid in installments was compensation arranged between myself and my client" – is false. (23)

- Christo was asked to confirm that he did not fund Fidelis's operation. (24)

### III. Invocation of Fifth Amendment by Hinds

1. <u>Blust Set Up Fidelis and Controls Its Personnel, Employee Compensation, and Hiring/Firing</u>

   - "Q. You and Mr. Blust jointly made hiring and firing decisions at Fidelis; correct?" (17)

   - "Q. At Fidelis when you thought a Fidelis employee was entitled to a raise[,] you asked Blust not Christ for approval, right?" (18)

   - "Q. Isn't it true that you knew Mr. Blust had set-up Fidelis to replace Lit Def in 2021 as the entity that would be servicing law firms that were controlled by Mr. Blust?" (18)

2. <u>Fidelis is Lit Def's Proxy or Successor</u>

   - "Q. Isn't it true that the two companies Fidelis and Lit Def were interchangeable?" (20)

3. <u>All of Fidelis's Business Derives from Jason Blust</u>

   - "Q. Fidelis's business was entirely generated through Mr. Blust; isn't that right?" (21)

   - "Q. Cameron Christo didn't have any role in getting business for Fidelis, did he?" (21)

   - "Q. The entirety of Fidelis's revenue is through law firms controlled or owned by Mr. Blust; isn't that right?" (21)

4. <u>Blust, Not Christo, Controls Fidelis</u>

   - "Q. And Mr. Cameron Christo wasn't involved in those conversations [about splitting compensation for employees between Lit Def and Fidelis]; was he?" (22)

- "Q. In fact[,] after Mr. Blust told you what the amounts of the 2022 bonuses would be[,] you informed Fidelis's employees of those bonus amounts before Mr. Christo was even informed of the amounts; is that correct?" (22)

- "Q. And Mr. Blust didn't consult Mr. Christo when he decided the 2023 bonuses either; correct?" (22)

- "Q. Isn't it true that Mr. Blust periodically directed you to transfer employees from Lit Def to Fidelis without consulting or involving Mr. Christo?" (22)

- "Q. Isn't it true that Mr. Christo's entire role regarding bonuses involved simply pushing an approval button at the end of the process?" (22)

- "Q. In Paragraph 28 of your declaration[,] you stated that in your Fidelis work… you would bring matters to Mr. Christo and not Jason Blust; is that correct?... Q. And that wasn't an accurate statement, was it?" (22)

- "Q. You didn't provide these [file submission] reports to Christo; did you?" (22)

- "Q. Mr. Blust made these [employee] compensation decisions without Christo's involvement; isn't that right?" (22)

**IV.  Summary of Objectionable Proposed Adverse Inferences**

1. <u>Invocation of Fifth Amendment by Jason Blust</u>

    - Blust set up Fidelis as a proxy or successor to Lit Def in light of mounting litigation against Lit Def; (27)

    - Blust's various law firms constitute Fidelis's entire customer base; (27)

    - Blust decided on Fidelis's initial staffing and payroll and has personally controlled its staffing and payroll since; (27)

    - Blust personally monitored Fidelis's employee work and made all decisions regarding employee compensation, via instructions to Hinds, without Christo's involvement; and (27)

6

- Christo has comparatively little involvement in Fidelis's operations, has no involvement in generating its business, and is a front owner of the company. (28)

2. <u>Invocation of Fifth Amendment by Christo and Hinds</u>

- Blust established Fidelis as a proxy or successor for Lit Def; (28)

- Blust and Hinds jointly made the hiring and firing decisions for Fidelis; (29)

- All of Fidelis's business comes from Blust-related law firms, (29)

- Christo does not independently generate business for Lit Def; (29)

- Christo is mostly uninvolved in Fidelis's day-to-say operations and serves as the company's front owner for Blust's benefit; (29)

- Christo did not otherwise fund Fidelis's operations. (29)

7