UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONSUMER FINANCIAL PROTECTION
BUREAU, *et al.*,

        Plaintiffs,

  v.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), *et al.*,

        Defendants, and

DANIEL BLUMKIN, *et al.*,

        Relief Defendants.

24-CV-40 (EAW) (MJR)

---

# MEMORANDUM IN SUPPORT OF RELIEF DEFENDANT THE BUSH LAKE TRUST'S MOTION CHALLENGING THE RECEIVER'S DETERMINATION THAT BUSH <u>LAKE IS A RECEIVERSHIP DEFENDANT</u>

**HOOVER & DURLAND LLP**
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*thoover@hooverdurland.com*
*sdurland@hooverdurland.com*

*Attorneys for Relief Defendant*
*The Bush Lake Trust*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 1

ARGUMENT ............................................................................................................... 12

    I.    BUSH LAKE DOES NOT SATISFY THE DEFINITION OF
        "RECEIVERSHIP DEFENDANT." .................................................... 12

    II.    THE INJNCTION'S MECHANISM FOR ADDING NEW
        RECEIVERSHIP DEFENDANTS DOES NOT APPLY TO PARTIES .............. 14

    III.    THE INJUNCTION'S DEFINITION OF "RECEIVERSHIP
        DEFENDANTS" VIOLATES RULE 65(d) AND THE EQUITABLE
        PRINCIPLES IT CODIFIES ................................................................. 14

    IV.    THIS IS A DISPOSITIVE MOTION, AND THE COURT SHOULD
        HALT ALL NON-JUDICIAL INJUNCTIVE ATTEMPTS TO SEIZE
        AND TAKE OVER ASSETS UNTIL THE DISTRICT COURT DECIDES
        THIS MOTION. ................................................................................. 18

CONCLUSION ............................................................................................................ 20

**INTRODUCTION**

The Receiver has attempted to designate Relief Defendant The Bush Lake Trust ("Bush Lake") as a "Receivership Defendant" per the terms of the Preliminary Injunction (Dkt. 184) ("PI"). But that effort is void from its inception, for multiple reasons.

First, even under the PI's definition of Receivership Defendant, Bush Lake is not one. It is not owned or controlled by a defendant. Rather, *it* owns Fidelis.

Second, the PI's mechanism for designating receivership defendants does not apply to parties.

Third, the PI's mechanism and definition of "Receivership Defendants" violates Federal Rule of Civil Procedure 65(d) and the equitable principles it codifies. Indeed, there is a pending (second) motion for a preliminary injunction against Bush Lake, in which the Plaintiffs failed to muster evidence sufficient to satisfy the requirements for a preliminary injunction. Now that Fidelis Legal Support Services, LLC ("Fidelis") is under the Receiver's control, at least for now while Fidelis's challenge to that ruling (Dkt. 646) continues, a preliminary injunction is even more inappropriate as to Bush Lake. Permitting the nearly standardless use of the Receivership Defendant designation would endorse broad injunctive relief without requiring the high burden for injunctive relief to be met.

The Court should, following briefing and argument, strike the Receiver's designation and, pending that determination, halt and stay any attempts by the Receiver to tie up Bush Lake's assets – none of which have been or are subject to dissipation in any event.

**FACTS**

**A.     Fidelis, Bush Lake and, the commencement of this action.**

The factual and procedural history has been detailed in numerous prior filings by Bush Lake, which are incorporated by reference, and only pertinent facts are set out below.

On January 25, 2021, Cameron Christo created Fidelis, a single-member LLC. Christo registered Fidelis in Nevada and created the Bush Lake Trust (a Nevada trust) to serve as Fidelis's sole member. Timothy Miller is the Trustee of the Bush Lake Trust. The beneficiaries of Bush Lake are Christo's two children. Jason Blust has no ownership interest in the Bush Lake Trust (or Fidelis), and he has never received any benefit of any kind from Bush Lake (or Fidelis). To be pellucidly clear, Bush Lake is the sole member of, and thus owns, Fidelis. Fidelis does not own Bush Lake.

Consumers trying to negotiate their debts are sometimes sued by their creditors. The debt-settlement law firm representing the consumer defends those suits. Fidelis provides the firms with administrative support. It does not enroll consumers in debt-settlement programs or touch consumer money. When a consumer is served with a creditor's summons and complaint, the consumer sends the papers to customer services. Customer services creates a litigation file for that lawsuit. The litigation file comes to Fidelis, where a Fidelis legal assistant reviews the file to ensure it has everything an attorney will need to defend the suit. If so, the legal assistant assigns the file to a litigation attorney within the consumer's law firm. If not, the legal assistant assembles the necessary material and then assigns the file. Once a settlement is reached, the Fidelis legal assistant double-checks that the consumer has saved enough money to make the agreed-upon payments. If so, the legal assistant submits the settlement for processing. Customer services then arranges to make the necessary settlement payments from the consumer's account. If issues arise post-settlement, such as a missed payment, Fidelis will assist as needed and notify the assigned attorney.

Fidelis provides its services pursuant to month-to-month agreements with its law-firm clients. Fidelis charges a per-litigation rate, which varies depending on the complexity of the litigation. Fidelis did work for advance-fee firms, which intervened in this litigation, and also does work for contingent-fee firms, whose services are not part of this action.

This action was commenced on January 10, 2024, and an ex parte, sealed Temporary Restraining Order was issued the next day, which included the appointment of Thomas McNamara, Esq. as Temporary Receiver. Fidelis, Christo, and Bush Lake were not named in the original complaint. Plaintiffs moved for a preliminary injunction. Desiring to keep such restrictions in place throughout the litigation, Plaintiffs moved for a preliminary injunction. (Dkt. 5.) Plaintiffs, Defendants, and the intervenor Law Firms all consented to Judge Roemer deciding that motion. (Dkt. 158.) As noted, Fidelis and Bush Lake were not named in the Complaint and have not consented to Magistrate Judge jurisdiction for either this action or any motion.

After holding a two-day hearing in early February 2024, focused largely on whether the in-person notary presentations satisfied the face-to-face exemption set forth in 16 C.F.R. § 310.6(b)(3), Judge Roemer issued a Preliminary Injunction that essentially mirrors the TRO. (Dkt. 184.) In particular, the Preliminary Injunction continues the Receiver's appointment, imposes the same restrictions and obligations on Receivership Defendants, and includes the same mechanism for adding new Receivership Defendants. (*Id.* at 8.)

Neither the Complaint nor the TRO mentions Fidelis or Bush Lake. As a result, after the TRO was issued, both entities continued doing what they had been doing before the TRO was issued. Thus, after Lit Def Strategies (owned by Jason Blust) was closed, Fidelis *did not* take over Lit Def's litigations, but simply continued with its existing engagements.

## B.    The Receiver attempts to extend the Preliminary Injunction to cover nonparty Fidelis Legal Support Services, LLC.

On February 25, 2024, the Receiver sent Fidelis a letter declaring it a Receivership Defendant. (Dkt. 190-9 at 4-5.) In response, Fidelis filed a challenge with Judge Roemer. (Dkt. 190.) The Receiver agreed to refrain from attempting to freeze Fidelis's assets while this challenge was pending, so long as Fidelis confined itself to normal operations. (Dkt. 190-2 (Hoover Decl.) ¶ 8.)

Over the next two months, Fidelis and the Receiver completed several rounds of briefing. (Dkt. 190 – Dkt. 190-10 (Fidelis challenge); Dkt. 212 – Dkt. 212-20 (Receiver response); Dkt. 233 – Dkt. 233-22 (Fidelis reply); Dkt. 237-1 – Dkt. 237-18 (Receiver sur-reply); Dkt. 270 – Dkt. 270-9 (Receiver supplemental submission); Dkt. 320 – Dkt. 320-15 (Fidelis supplemental submission); Dkt. 346 (Receiver sur-sur reply).) Fidelis principally argued that the Preliminary Injunction's mechanism for adding new Receivership Defendants violates FRCP 65(d) and a long line of Second Circuit precedent. Fidelis also argued that, even if the Court had authority to expand an injunction in the manner the Preliminary Injunction prescribes, Fidelis is not owned or controlled by Jason Blust, and it is not a successor to Lit Def. The Receiver argued that the Preliminary Injunction's expansion mechanism is proper, and that Fidelis is a "Receivership Defendant" because it is owned or controlled by Jason Blust, and is the "successor" to Lit Def.

Oral argument was held on March 23, 2024. (Dkt. 361; Dkt. 367 (Transcript).) Feeling unable to decide the question on the papers, Judge Roemer scheduled a hearing for July 10 and 11, 2024.

**C.  Fidelis continues to lawfully operate, to receive new requests for litigation-support services from Strategic/the Receiver, and to provide support services on contingent-fee cases for unrelated law firms.**

Throughout this process, Fidelis continued normal operations without objection or incident, and the SFS employees working under the Receiver's direction continued to send litigation files to Fidelis. (*See generally, e.g.*, Dkt. 639; *see id.* at 39 (Receiver states that "I'm trying to protect the consumers. When a summons from a lawsuit comes in to Strategic I send it to Fidelis to get to the law firms so somebody can protect the consumers.").)

Upon seizing control of Strategic's operations post-TRO, the Receiver realized that many already-enrolled consumers continued to need litigation defense for new lawsuits. The Receiver could have chosen any number of courses of action to ensure

that those consumers received litigation defense. What he decided to do is direct Strategic employees to continue sending litigation files to Fidelis, so that Fidelis could continue to perform the administrative services by which it facilitates litigation defense. That process has continued from February 2024 onward, including into early 2025.

In all, Strategic employees working under the Receiver's direction have sent over 6,000 new litigation files to Fidelis for Fidelis to provide administrative services so that lawyers could defend these newly filed court cases. That is in addition to the existing Law Firm litigation files that Fidelis had been supporting. And it is also in addition to the 9,503 unrelated, new Turnbull (contingency) litigation files that Fidelis received from the Turnbull firms in 2024. Throughout 2024, Fidelis continued to provide administrative services to Law Firms and lawyers so they could defend these clients in litigation.

Fidelis received no payments from the Law Firms for its 2024 work for this Law Firm litigation support in 2024, principally because of the fallout from the TRO and the preliminary injunction. Still, rather than leave the Law Firms' clients stranded, Fidelis continued to provide these services. Fidelis did receive payments in 2024 for work on behalf of the Turnbull contingent-fee law firms.

## D.    The fate of the law firm debt-relief program, post-TRO.

In a decision approving the Receiver's second fee request, the Court found that the Receiver had "devoted substantial time and effort to stopping the expansive and excessively complicated law firm debt relief program provided by defendant StratFS, LLC and its related entities." (Dkt. 488 at 4.) Immediately after the TRO was issued in January 2024, the Receiver seized control of Strategic and halted its three business lines while he assessed their legality and profitability. (Dkt. 115-1 at 2-9.) Soon afterwards, the Receiver brought back 78 Strategic employees to perform client-services functions under his direction. (Dkt. 56 at 4-5; Dkt. 115-1 at 10.) By the end of January 2024, the Receiver had concluded that the so-called "law firm debt relief model"—the debt-relief program at issue in this lawsuit—was neither lawful nor profitable, and he determined

to wind it down. (Dkt. 115-1 at 1-2.) Strategic and the Law Firms proposed migrating existing clients to a contingency-fee model, but the Receiver rejected this alternative. (Dkt. 292-1 at 1, 8-14.)

In May 2024, the Receiver proposed a wind-down plan. (Dkt. 359-1 at 5-6.) Consumers with no active payment plans, and consumers who completed their active payment plans, would have their escrow accounts closed and any remaining money returned. (*Id*. at 7-12.) For consumers still completing active payment plans, Strategic would continue to provide limited support services. (*Id*.) At a December 2024 status conference, no party opposed this proposal (Dkt. 524), and the Court recently ordered the closure of consumers' escrow accounts (Dkt. 557).

Law Firm operations have followed a similar trajectory. As noted above, the Receiver concluded (on behalf of Strategic) that Law Firm clients could not be migrated to a contingency-fee model. When Law Firm representative Richard K. Gustafson II sent clients a letter inviting them to convert to a contingency-fee model, the Receiver intervened and disseminated a corrective notice approved by the Court. (Dkt. 292-1 at 1-2, 15-20; Dkt. 352.)

In November 2024, the Court approved a notice informing Law Firm clients that the Firm would no longer represent them. (Dkt. 489; *see also* Dkt. 538-2 ¶ 9 (Receiver alluding to "the recent withdrawal of representation by the Law Firms").) Since the TRO was issued, the Receiver reports, no Law Firm or Strategic entity has received any fees from the debt-relief program at issue in this lawsuit. (Dkt. 359-1 at 8.)

### E. Plaintiffs file a Second Amended Complaint, and Judge Roemer attempts to broker a settlement.

On May 28, 2024, Plaintiffs filed a Second Amended Complaint.  It consists of 229 substantive paragraphs, followed by 11 formulaic "counts." The first two counts allege that SFS and others violated the TSR by collecting unlawful advance fees. (*Id*. ¶¶ 230-46.) Count 3 alleges that Fidelis violated the TSR by knowingly and substantially assisting in the Law Firms' TSR violations. (*Id*. ¶¶ 247-56.) Count 7 alleges

that Fidelis violated New York Executive Law § 63(12) by engaging in repeated fraud or persistent fraudulent acts. (*Id.* ¶¶ 290-95.) Count 8 alleges that Fidelis violated New York General Business Law § 349 by engaging in deceptive acts or practices. (*Id.* ¶¶ 296-301.) Count 9 alleges that Christo and Bush Lake received money from Fidelis, lack any legitimate claim to it, and must disgorge it. (*Id.* ¶¶ 105, 302-06.)  The Second Amended Complaint added other parties as well.

Plaintiffs did not seek a second preliminary injunction when they filed the Second Amended Complaint.

In June 2024, Judge Roemer converted the July 2024 hearing to a conference, and on or about July 12, 2024, Judge Roemer suspended all deadlines (including any deadlines for new parties to answer or to move to dismiss) to enable the parties to discuss a potential resolution. (Dkt. 425.) These discussions with some parties continued through September 20, 2024, at which point the parties returned to litigation. (Dkt. 434.) During this timeframe, Fidelis continued normal operations without objection or incident, and the SFS employees working under the Receiver's control continued to send it litigation files.

**F.    Fidelis, Christo and Bush Lake move to dismiss, Plaintiffs move for a preliminary injunction against Fidelis and Bush Lake in November 2024, and Judge Roemer presides over a hearing on that motion in late January 2025, but does not conduct a hearing on Fidelis's motion challenging the receivership defendant designation.**

Fidelis, Christo, and Bush Lake each moved to dismiss the Complaint (Dkts. 440, 441, 442) and filed a joint memorandum in support (Dkt. 443 ("Mem.")). Plaintiffs opposed (Dkt. 460 ("Opp."), Fidelis, Christo, and Bush Lake filed a joint reply (Dkt. 480 ("Reply")), Judge Roemer heard oral argument (Dkt. 492), and, on December 19, 2024, issued the R&R recommending denial of the motions. (R&R at 1.) Fidelis, Christo, and Bush Lake objected to the R&R (Dkt. 542). The state Plaintiffs responded to the Objections (Dkt. 600), Fidelis replied (Dkt. 626), and the motion to dismiss and objections are pending before Chief Judge Wolford.

On November 1, 2024, Plaintiffs filed their motion for a second preliminary injunction. (Dkt. 477.) The Court did not immediately schedule a hearing on this motion and Plaintiffs did not seek one. Thus, another seven weeks passed without any further activity.

In December 2024, Judge Roemer scheduled an evidentiary hearing for January 23 and 24, 2025. (Dkt. 532 at 38-39.) The hearing was limited to Plaintiffs' motion to enjoin Fidelis, Christo, and Bush Lake, and to the Receiver's motion to hold Jason Blust and Lit Def in contempt. (*Id*.) Judge Roemer has not scheduled a hearing on Plaintiffs' motion to enjoin other newly added defendants, and Plaintiffs have not sought one. Fidelis's motion challenging the designation as a Receivership Defendant was not scheduled as part of the January 2025 hearing.

As noted above, during this entire period, and into at least February 2025, Strategic, at the Receiver's direction, continued to send new litigation matters to Fidelis for processing and to ensure an attorney was assigned to defendant them. The parties filed pre-hearing memoranda, and Fidelis opposed the preliminary injunction motion. (Dkt. 569.)

Because they were the motions that were scheduled, the hearing focused on the second preliminary-injunction motion and the motion to hold Blust and Lit Def in contempt. (Dkt. 595; Dkt. 596.) Following the filing of pre-hearing briefs, including by Fidelis, Christo, and Bush Lake (Dkt. 569), Plaintiffs conducted a short hearing that was largely a paper exercise. No evidence was offered by Plaintiffs (or the Receiver) to establish that Fidelis violated a regulation, or provided substantial assistance to any TSR violation, or facilitated the collection of advance fees, or engaged in conscious wrongdoing. At the close of the hearing, the parties were directed to file post-hearing briefs and responses, and all (except Plaintiff CFPB) did so in February and March 2025.

Judge Roemer heard oral argument on March 6, 2025 (Dkt. 636; Dkt. 640 (Transcript).) Judge Roemer expressed skepticism about whether Plaintiffs had proven

their entitlement to a preliminary injunction. In response to his suggestion that it was possible that he could deem Fidelis a Receivership Defendant under the original preliminary injunction without a heightened showing of the required factors under Rule 65, Fidelis's counsel explained why such a determination was not possible, contravened the law and Rule 65, and that the designation was moot since Fidelis was now a party. (Dkt. 640 at 15-16, 37-39.)

### G. On March 26, 2025, a ruling is entered by Judge Roemer that Fidelis qualifies as a Receivership Defendant.

On March 26, 2025, Judge Roemer issued rulings on the Receiver's motion seeking contempt findings against Blust and Lit Def, and on Fidelis's motion challenging the Receivership Defendant designation, styled a "Report, Recommendation and Order." (Dkt. 646.) The Order/Decision portion of Dkt. 646 pertains to Fidelis's challenge to the Receivership Defendant designation and finds that Fidelis qualifies as a "Receivership Defendant."

The Decision rests its determination solely on Judge Roemer's conclusion that Fidelis is a successor to Lit Def and is controlled in whole or in part by Blust. (Decision at 28-29.) As such, Judge Roemer found, per the TRO and the preliminary injunction, Fidelis is a Receivership Defendant. (*Id.* at 31-32.) The Decision, does not apply the standards required for a preliminary injunction to issue, it nowhere addresses the heightened burden required for a preliminary injunction, and it nowhere addresses what risk of irreparable harm will occur without injunctive relief. The Decision simply uses the invalid Receivership Defendant mechanism in the preliminary injunction to make Fidelis subject to injunctive relief, while ignoring the invalidity of the mechanism itself and the required test for any injunctive relief. And, the Decision nowhere addresses the second preliminary injunction motion that was briefed, was the subject of a hearing, was the subject of post-hearing briefing, and was the subject of the March 6 argument.

With regard to the ability to issue a decision as opposed to make a report and recommendation on the Fidelis motion, Judge Roemer implicitly recognized that the January 2025 hearing was not scheduled to address Fidelis's motion. (Decision at 2 n.2.) Judge Roemer wrote that he could issue a decision on Fidelis's motion, rather than issue a report and recommendation, because:

> The parties consented to this Court's authority to decide plaintiff's motion for a preliminary injunction. (Dkt. Nos . 5, 158-159[.]) The Court granted that motion and issued a preliminary injunction on March 4, 2024. (Dkt. Nos . 183 , 184[.]) Thus, the Court issues its determination regarding Fidelis Legal Support Services, LLC's designation as a receivership defendant, pursuant to the March 4, 2024 preliminary injunction, by decision and order.

(Decision at 1 n.1.) But Fidelis did not consent to the Magistrate Judge's authority to decide Fidelis's motion. Fidelis did not consent, and Fidelis was not a party when the first preliminary injunction motion was filed, litigated, or decided. Fidelis became a party in late May 2024. Fidelis will object to this ruling.

As noted, Bush Lake's motion to dismiss is pending before the District Court.

Consolidated appeals by parties enjoined by the preliminary injunction in March 2024 is pending at the United States Court of Appeals for the Second Circuit, and will be argued on April 9, 2025. Fidelis is not a party to those appeals.

The second preliminary-injunction motion remains pending against all parties newly added in the Second Amended Complaint, including Bush Lake.

**H.    The Receiver deems Bush Lake a Receivership Defendant.**

The Receiver sent counsel for Bush Lake a letter dated August 16, 2024, stating that he had deemed Bush Lake a "Receivership Defendant" pursuant to the PI. (Copy attached as Ex. A.) The only explanation the Receiver offered was that Bush Lake owns Fidelis "and, as such, it also qualifies as a Receivership Defendant." (Ex. A at 2.) The Receiver indicated that he did "not intend to take steps to enforce this determination until a decision is made on the pending Fidelis motion." (*Id.*)

- 10 -

Bush Lake's objection to the designation was raised by Bush Lake's counsel in an appearance before the Court on September 20, 2024.

On March 25, 2025, Judge Roemer issued the ruling described above with regard to Fidelis's challenge to the Receivership Defendant designation. Fidelis has moved to stay the effect of that ruling, explained that it is actually a report and recommendation, and will object to it. In short, the determination that Fidelis is a Receivership Defendant is not a final decision and remains pending before the District Court.

On April 4, 2025, the Receiver sent a letter to counsel for Bush Lake stating that "[a]s a result of the March 25, 2025 Order, we have been able to access and conduct a preliminary review of some Fidelis's books and records, including bank statements. These materials confirm that The Bush Lake Trust is a Receivership Defendant." (Ex. B at 2.) The Letter also states that "[t]he materials also reveal three other entities are also Receivership Defendants as "subsidiaries, affiliates, divisions, successors, and assigns" of Fidelis, and also as "other business[es] related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part" by Fidelis, Blust, and/or Christo. These entities are: (1) BDC Group LLC, (2) Two Square Enterprises Inc., and (3) Veteris Capital LLC." (*Id.*)

Notably, the April 4 Letter offers no evidence that Fidelis or Bush Lake have or are violating the law, offers no claim that irreparable harm will occur if they are not subjected to injunctive provisions, and makes no claim that Fidelis or Bush Lake improperly secreted or transferred assets since Fidelis received the Receiver's initial letter in late February 2024.

Following the issuance of the April 4 letter, the undersigned re-informed the Receiver that Bush Lake disputes the designation as a Receivership Defendant and would be bringing the present motion. The undersigned understands that BDC Group, Two Square and Veteris also dispute the designation as a Receivership Defendant and will be filing a challenge or challenges to the designation.

- 11 -

## ARGUMENT

### I.  BUSH LAKE DOES NOT SATISFY THE DEFINITION OF "RECEIVERSHIP DEFENDANT."

As defective as the receivership defendant designation mechanism is, the Court can easily conclude that Bush Lake does not qualify as a Receivership Defendant under the PI, it can easily conclude that it does not. The Receiver's determination is based on nothing more, or less, than the fact that Bush Lake owns Fidelis. But that fact does not make Bush Lake a Receivership Defendant under the plain terms of the PI.

The PI defines Receivership Defendants as follows:

> "Receivership Defendants" means the Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants such as Atlas Debt Relief LLC and Timberline Financial LLC, and includes fictious names under which they do business. "Receivership Defendants" also includes Relief Defendants Twist Financial, LLC, Duke Enterprises, LLC, Blaise Investments, LLC, the Blust Family Irrevocable Trust through Donald J. Holmgren, Trustee, Lit Def Strategies, LLC, and Relialit, LLC (excluding Relief Defendants Daniel Blumkin, Albert Ian Behar, and Jaclyn Blust), and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by the Relief Defendants included in this definition, and includes fictious names under which they do business.

(PI at 7 (¶9(N).)

The August 16 Letter relies on the portion of the PI defining Receivership Defendant to include entities that are "related to the Defendants' debt-relief services" and are "owned or controlled in whole or in part by any of the Defendants" or "Relief Defendants." (Ex. A at 1-2.) But the Injunction defines "Defendants" and "Relief Defendants" to include only the entities named as defendants and relief defendants at the time the Injunction was entered. (Dkt. 184 at 2, 4-8.) The PI's definition of Corporate Defendant and Defendant does not include Fidelis. The fact that Fidelis is

now named as a defendant in the StratFS litigation does not change the PI's definition of "Defendants."

And even if it did, the designation fails for a second reason. Bush Lake is not "related to the Defendants' debt-relief services," and is not owned or controlled in whole or in part by Fidelis. Rather, as Mr. McNamara notes, *Fidelis* is owned by *Bush Lake*. (Ex. A at 2.)

The Receiver's designation ignores the plain text and definitions of the invalid mandate in seeking to sweep Bush Lake into the injunctive provisions of the PI's Receivership Defendant provisions. The Court should reject the invitation to re-write the plain language of the PI that it itself issued, as proposed to it by Plaintiffs.

To be clear, the attempt to sweep other non-party entities (BDC Group; Two Square; and, Veteris Capital) in the April 4, 2025 Letter suffers from the same infirmities. None of those entities meets the definitional requirement to be added as a Receivership Defendant. None of them is owned by Fidelis, and Fidelis is not defined as a Defendant under the PI. None of them is owned by Blust, and there is no claim that they are. And none of them is related to Defendants' debt-relief services, both in actuality, and because Fidelis is not defined as a Defendant, setting aside that the Second Amended Complaint in this action fails to state a claim for relief against Fidelis at all.

The April 4 Letter works hard to suggest that because the three nonparty entities received funds from Fidelis before February 2024, they are "subsidiaries, affiliates, divisions, successors, and assigns" of a Defendant. Again, Fidelis is not a Defendant per the terms of the PI. But more fundamentally, the language relating to successors and assigns relates to enjoined parties. Fidelis was never enjoined by the TRO, the March 2024 Preliminary Injunction or ever, until two weeks ago, when injunctive relief was granted against it in the form of approval of the Receivership Defendant designation. Neither the Receiver nor any party ever claimed that the TRO

- 13 -

applied to Fidelis until the April 4 letter. And, of course, the Receiver has no proof, since February 2024, of any transfer of assets or dissipation of assets.

The Receivership Defendant designation mechanism in the PI is a flawed, erroneous, yet incredibly powerful tool. The law cannot be bent anymore than it already has been to rewrite it to make its scope even broader and more powerful. That is exactly what these new designations seek to do, in violation of the terms of the PI and the law that governs making entities subject to the terms of an injunction.

## II.    THE INJNCTION'S MECHANISM FOR ADDING NEW RECEIVERSHIP DEFENDANTS DOES NOT APPLY TO PARTIES.

The mechanism in the PI delegating Article III power to a private attorney acting as a receiver to make new entities subject to injunctive relief is defective, as explained below. But the Court need not reach that issue in granting Bush Lake's motion. The Injunction's mechanism for expanding the roster of enjoined entities applies only to entities not named as parties in this litigation. (Dkt. 184 at 21 ("If the Receiver identifies a nonparty entity as a Receivership Entity, [he will] promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court."). On May 28, 2024, Bush Lake was named as a relief defendant in the *StratFS* litigation. (Dkt. 366.) Thus, it was not a "nonparty entity" in August 2024, when the Receiver purported to designate Bush Lake a Receivership Defendant. The attempt to designate Bush Lake as a Receivership Defendant was void ab initio.

## III.    THE INJUNCTION'S DEFINITION OF "RECEIVERSHIP DEFENDANTS" VIOLATES RULE 65(d) AND THE EQUITABLE PRINCIPLES IT CODIFIES.

Injunctions can bind only the acts of parties—those who were served with process and "ha[d] their day in court." *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) (cleaned up). If a litigant believes it has grounds to enjoin a party, it should seek injunctive relief and allow the now-defendant to respond. *See Doctor's Assocs., Inc. v.*

*Reinert & Duree, P.C.*, 191 F.3d 297, 305 (2d Cir. 1999); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1397 (Fed. Cir. 1996).

There is one wrinkle to this doctrine, codified in Rule 65(d): "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors." *Doctor's Assocs.*, 191 F.3d at 302 (cleaned up). Thus, an injunction can bind the named parties' "officers, agents, servants, employees, and attorneys," and any other person who is "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2). Crucially, though, the nonparties listed in Rule 65(d)(2) are bound only insofar as they are acting as an instrumentality of the enjoined party. In other words, while a court can enjoin the acts of a party, whether carried out directly or through a nonparty instrumentality, it cannot enjoin a nonparty acting in its separate capacity. *See Havens*, 76 F.4th at 122 ("Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity." (cleaned up)).

This vital distinction dictated the result in *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) (Hand, J.). The defendant in that case, John Staff, was sued for patent infringement. *Id.* at 832. The court enjoined John, along with his employees and agents, from further infringement. *Id.* After litigation began, one of John's employees, Joseph Staff, started his own business. *Id.* Though Joseph's new business did exactly what his former employer was enjoined from doing, the Second Circuit held that Joseph was not bound by the injunction because he was no longer acting as an agent of the enjoined party. *See id.* at 832-33. In other words, while Joseph Staff's post-litigation conduct may have exposed him to a new suit for patent infringement, "the decree ha[d] not been disobeyed" because the decree could only ever forbid "an act of a party," and Joseph's post-litigation activity was not John's infringement. *Id.*

These principles have the same vitality now that they had in the days of Learned Hand. Recently, when the New York Attorney General sought to apply an abortion-access injunction to allies of the enjoined defendants, individuals who themselves had "had no day in court," *Havens*, 76 F.4th at 116, the Second Circuit rejected its position as "inconsistent with Rule 65(d) and the principles of equity it codified," *id.* at 118 (cleaned up) (citing *Alemite* for the proposition that "only a named party's actions may be enjoined").

The strict limits that *Alemite* and *Havens* identify, and that Rule 65(d) codifies, constrain the permissible scope of the Injunction. The Plaintiffs sought the Injunction under Rule 65 (Dkt. 5 at 1-4; Dkt. 5-1 at 44; Dkt. 5-3), Judge Roemer granted the Injunction under Rule 65 (Dkt. 12 at 1, 3, 46; Dkt. 184 at 1, 3), and even if Judge Roemer had intended the Injunction to define "Receivership Defendants" more broadly than Rule 65(d) permits, "[i]t is well established . . . that the terms of an injunction may not enlarge its scope beyond that defined in the Federal Rules of Civil Procedure," *O & L Assocs. V. Del Conte*, 601 F. Supp. 1463, 1464 (S.D.N.Y. 1985).[1]

That the definition of Receivership Defendants violates the law and Rule 65 is beyond cavil. The preliminary injunction provides that the definition of Receivership Defendant includes "any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants . . . ."  (Dkt. 184 at 8.) There is no requirement that the mandatory factors necessary to issue preliminary injunctive relief be met or addressed at all. Under the traditional test, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

---

[1]    *See also Havens*, 76 F.4th at 122 ("The reference to unknown persons in the Arcara Injunction cannot enlarge its scope beyond that defined by the Federal Rules of Civil Procedure." (cleaned up)); *Sumpter v. Skiff*, 260 F. App'x 350, 351 (2d Cir. 2008) (holding that "the district court did not have the authority to order injunctive relief against" a nonparty which "d[id] not fall within any of the exceptions listed in Rule 65(d)").

tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Irreparable harm cannot be presumed: "[i]n the preliminary-injunction context, "the four criteria identified in *Winter* encompass the relevant equitable principles," *id*., and "absent a clear command from Congress, courts must adhere to the traditional four-factor test," *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). The issuance of massive and drastic injunctive relief based on the meager designation standard, grounded in the Receiver's mere belief, is erroneous in its issuance and inception, and it is erroneous to apply it to provide the resulting full injunction against Bush Lake without the necessity of a showing that any of the requirements of *Winter* and Rule 65 are met.

The practical effect of the defective Receivership Defendant designation is doubly erroneous here: Fidelis has improperly been subjected to it and now, Bush Lake, another party, is subjected to it simply because it owns Fidelis. Judge Roemer decided that the Injunction binds Fidelis due to Fidelis's alleged relationship to Blust and Lit Def. As explained above, however, the Court cannot enjoin an entity (whether a party or nonparty) "in its separate capacity" simply because it has "a relationship to an enjoined party of the sort set forth in Rule 65(d)." *Havens*, 76 F.4th at 122 (cleaned up). Rule 65(d) merely ensures that enjoined parties like Blust and Lit Def do not "nullify a decree by carrying out prohibited acts through [nonparties]" like Fidelis. *Id*. at 112 (cleaned up).[2] There is no claim or proof that Bush Lake had anything to do with Fidelis's work with the Law Firms to provide administrative support services.

---

[2]       *See also Doctor's Assocs.*, 191 F.3d at 303 ("We conclude that the district court's injunction was not authorized by Rule 65(d) because the injunction bars the nonparty appellants from prosecuting lawsuits that do not aid or abet the federal defendants in violating the injunctions entered against them."); *Alemite*, 42 F.2d at 833 (holding that an injunction binds a nonparty only when the nonparty "has helped to bring about . . . an act of a party" that violates the party's obligations under the injunction); *GMA Accessories*, 2008 WL 2355826, at *14 ("[T]here is no indication in the record that [the defendant] sought to nullify the injunction by carrying out prohibited acts through [the nonparty]" (cleaned up)).

The Receiver purports to bind Bush Lake to a complete takeover and injunctive relief without any showing that Bush Lake is being used to circumvent the Injunction. That is unlawful. The designation of Bush Lake as a Receivership Defendant should be struck.

## IV. THIS IS A DISPOSITIVE MOTION, AND THE COURT SHOULD HALT ALL NON-JUDICIAL INJUNCTIVE ATTEMPTS TO SEIZE AND TAKE OVER ASSETS UNTIL THE DISTRICT COURT DECIDES THIS MOTION.

Magistrate judges are empowered to resolve any pretrial matter

> except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A). Because "many of the powers withheld from magistrate judges by § 636(b)(1)(A) involve the determination of the suit or of a claim," the class of rulings withheld from magistrate judges often goes by the "imprecise shorthand" phrase "dispositive matters," while the class of "rulings over which magistrate judges are granted authority" are known as non-dispositive matters. *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010) (Leval, J., concurring).[3]

The dispositive/non-dispositive dichotomy has three procedural implications. First, "as to dispositive matters, the magistrate judge may do no more than recommend," while "as to nondispositive matters, the magistrate judge may rule." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012) (cleaned up). Second, recommendations on dispositive matters are reviewed *de novo*, whereas rulings on non-

---

[3]     This shorthand is reflected in Federal Rule of Civil Procedure 72, which refers to matters "not dispositive of a party's claim or defense," but the Advisory Committee's note makes "clear this terminology is not to be taken literally." *Kiobel*, 592 F.3d at 92 n.3 (Leval, C.J., concurring). Rather, as in the common parlance, Rule 72 is using "dispositive" to "distinguish[] between matters upon which the magistrate judge is empowered to rule, and matters as to which the magistrate judge has the power only to recommend." *Id.*

dispositive matters are reviewed more deferentially. Third, and most importantly for present purposes, recommendations on dispositive matters are not enforceable unless and until a district judge adopts them, whereas rulings on non-dispositive matters "shall be effective unless and until a stay is obtained." W.D.N.Y. Local R. Civ. P. 72(a).

In determining which matters are "dispositive," the list of matters set forth in § 636(b)(1)(A) "is non-exhaustive." *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008). Instead, to avoid the constitutional dangers inherent in "delegating Article III judges' duties to magistrate judges," the Second Circuit takes an expansive view of the exclusions set forth in § 636(b)(1)(A). *Id.* at 264. Matters not explicitly listed in § 636(b)(1)(A), which are akin or functionally equivalent to the listed matters, are deemed dispositive. *See id.* at 265-66; *see also Gomez v. United States*, 490 U.S. 858, 874 (1989) (holding that jury selection, though not listed in § 636(b)(1)(A), "is more akin to those precisely defined, 'dispositive' matters" than to "'nondispositive' pretrial matter[s]"); *Jean-Laurent*, 461 F. App'x at 25 (holding that denying leave to add state-law claims is functionally equivalent to dismissing state-law claims, and so qualifies as a dispositive matter); *Williams*, 527 F.3d at 266 (holding that a motion to remand a case to state court is functionally equivalent to "a motion to dismiss the action from federal court," and so qualifies as a dispositive matter).

A decision by a federal judge declaring Bush Lake a Receivership Defendant is, or is functionally equivalent to, an enumerated dispositive matter—namely, an award of "injunctive relief," 28 U.S.C. § 636(b)(1)(A). An injunction is "a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing." INJUNCTION, Black's Law Dictionary (12th ed. 2024) (quoting 1 Howard C. Joyce, A Treatise on the Law Relating to Injunctions § 1, at 2-3 (1909)); *see also Nken v. Holder*, 556 U.S. 418, 428 (2009) (observing that an *in personam* injunction "is directed at someone, and governs that party's conduct"). The PI directs Receivership Defendants to do many things (such as surrender their assets to the Receiver (Dkt. 184 at 28-29),

- 19 -

surrender control over to the Receiver (*id.* at 17-20), do whatever the Receiver instructs them to do (*id.* at 19) and prohibits them from doing many things (such as initiate litigation (*id.* at 32), operate independently (*id.* at 17-20), and collect advance fees.

Thus, because a decision on this motion is, or is functionally equivalent to, an award of "injunctive relief," it must be construed as a recommendation only. 28 U.S.C. § 636(b)(1)(A); *Williams*, 527 F.3d at 265-66. As such, it cannot take effect unless and until it is adopted by a district judge.

In that regard, the Receiver already has or is seeking to put holds on, freeze, or take over assets of Bush Lake, BDC Group, Two Square and Veteris. This chaotic, non-judicial asset seizure must be stopped given the invalidity of the mechanism upon which it is based, and especially given that banks have already started to put holds on and lock up personal accounts of Mr. Christo and his children which are not subject to the purported receivership defendant designations.

### CONCLUSION

The Court should (i) issue an order declaring that the Receiver has no authority over Bush Lake, either because Bush Lake is not a Receivership Defendant by the terms of the PI, because the Receivership Defendant mechanism is invalid, and/or because the Receivership Defendant designation does not apply to parties; and (ii) award any other or additional relief that the Court deems appropriate.

Dated:     Buffalo, New York
           April 8, 2025

Respectfully submitted,

**HOOVER & DURLAND LLP**
*Attorneys for Relief Defendant Fidelis Legal Support Services, LLC*

By:  s/Timothy W. Hoover
        Timothy W. Hoover
        Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*thoover@hooverdurland.com*
*sdurland@hooverdurland.com*

- 20 -