UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.,

               Plaintiffs,

                                Civ. No. 24-cv-40-EAW-MJR

v.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.,

               Defendants,

and

STRATEGIC ESOP, et al.,

               Relief Defendants.
_____


# OBJECTIONS OF DEFENDANT JASON BLUST
# AND RELIEF DEFENDANT LIT DEF STRATEGIES, LLC
# TO REPORT, RECOMMENDATION AND ORDER (Doc. 646)


Dated: Buffalo, New York
       April 15, 2025.

                                Rodney O. Personius, Esq.
                                PERSONIUS MELBER LLP
                                *Attorneys for Defendant*
                                 JASON BLUST
                                    and
                                *Relief Defendant*
                                 LIT DEF STRATEGIES, LLC
                                2100 Main Place Tower
                                350 Main Street
                                Buffalo, NY  14202
                                (716) 855-1050
                                rop@personiusmelber.com

# TABLE OF CONTENTS

Introduction ...................................................................................................................1

I.      Civil Contempt Jurisdiction of a Magistrate Judge................................................1

II.     Objectionable Findings in the Report, Recommendation and Order ..................................3

        A.      Finding that Fidelis is a "successor" to Lit Def .......................................................3

        B.      Finding of improper concerted conduct in context of
                litigation among Blust, Christo, and Gallagher  .......................................................4

        C.      Directive that Blust and Lit Def pay all fees and costs
                associated with the Receiver's pursuit of a contempt motion
                and opposition to Fidelis's receivership defendant motion ...................................5

        D.      Recommended referral to WDNY United States Attorney's Office ......................5

III.    Standard of Proof to Establish a Civil Contempt................................................6

IV.     The Ambiguity of the Recommended "Successor" Finding ................................7

V.      Blust's "Control" of Fidelis ................................................................................9

VI.     The Receiver's Persistent Demand Blust "Turn Over" Fidelis Was
        Not Sustained ................................................................................................12

VII.   Recommendation Blust and Lit Def Reimburse the Receiver's
       Fees and Costs Associated with the Separate Fidelis Motion
       Opposing Its Designation as a Receivership Defendant ......................................14


VIII.  Alleged Coordinated Conduct among Blust, Christo, and
       Gallagher Associated with the Separate Contempt and
       Opposition to Designation as Receivership Defendant Proceedings ................................17


IX.    Recommendation of Referral to United States Attorney's Office......................................19


Conclusion ..............................................................................................................................21

## INTRODUCTION

On March 24, 2025, United States Magistrate Judge Michael J. Roemer issued a written ruling styled a Report, Recommendation and Order. This decision was then filed on the following day, March 25, 2025, at Doc. 646. In a Text Order dated April 8, 2025, Chief District Judge Elizabeth A. Wolford extended the filing deadline for Objections to April 16, 2025. Defendant Jason Blust and Relief Defendant Lit Def Strategies, LLC ("Lit Def") object to the following findings and recommendations in the Report, Recommendation and Order[1]: (1) that Fidelis Support Services, LLC ("Fidelis") is a "successor" to Lit Def; (2) that Blust, the owner of Fidelis, Cameron Christo ("Christo"), and a former employee of both Lit Def and Fidelis, Michelle Hinds Gallagher ("Gallagher"), engaged in improper concerted conduct during the course of proceedings; (3) that Blust and Lit Def pay all attorney's fees and costs associated with both the Receiver's motion for contempt and the Receiver's defense to a separate motion filed by Fidelis (Doc. 190), challenging its designation as a receivership defendant; and, (4) the recommendation that a declaration of Blust filed in connection with the civil contempt proceeding (Doc. 211) be referred to the United States Attorney's Office for the Western District of New York for investigation and, if deemed appropriate, the filing of criminal charges for perjury.

## I. CIVIL CONTEMPT JURISDICTION OF A MAGISTRATE JUDGE

During proceedings before Magistrate Judge Roemer, limitations upon his role as a Magistrate Judge in the context of a civil contempt proceeding were addressed. In fact, the Report,

---

[1] As addressed in the first section of this submission, the characterization of Magistrate Judge Roemer's ruling as a "Report, Recommendation and Order," and direction that disagreement with this ruling should be framed as objections, pursuant to 28 U.S.C. §636(b)(1) (Doc. 646 at pp. 38-39), overlooks the fact the underlying civil contempt proceeding is governed by a different subsection of the statute; that is, 28 U.S.C. §636(e). While perhaps more a matter of procedure than substance, this issue is addressed below.

Recommendation and Order, at both footnotes 1 and 2, refers to the applicable statute, 28 U.S.C. §636(e)(6)(B). Nonetheless, consistent with §636(b), the Court's determination in reference to the Receiver's civil contempt application is framed as a Report and Recommendation, rather than in the form of a certification, and the protocol for filing objections to a Report and Recommendation are expressly referred to at pages 38 and 39 of the Judge's ruling.

The leading precedent on the subject of the jurisdiction of a magistrate judge with respect to contempt proceedings is *Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888 (3d Cir. 1992). While the *Taberer* opinion was written in the context of a criminal contempt proceeding, the equal applicability of the ruling to a civil contempt proceeding was recognized in *Wallace v. Kmart Corp.*, 687 F.3d 86, 90 (3d Cir. 2012). In *Taberer*, a distinction is drawn between a report and recommendation prepared pursuant to §636(b)(1)(B) and the certification procedure anticipated by §636(e): "Whereas section 636(b)(1)(B) requires the district judge to make a de novo *determination*, section 636(e) requires a district judge to conduct a de novo *hearing*." 954 F.2d at 904 (italics in original).

While the decision holds that the de novo hearing required by §636(e) anticipates "a new proceeding at which the decision is based solely on the evidence freshly presented at the new proceeding[,]" (*Id.*), conducting another hearing in this instance, if avoidable, may not be warranted. At the hearing presided over by Magistrate Judge Roemer on January 23 and 24, 2025, three of the principal witnesses (Blust, Christo, and Gallagher) each relied upon their Fifth Amendment privilege in response to all questions posed to them. It is, nonetheless, important to recognize the procedure in the case of a civil contempt proceeding is different than the customary report and recommendation protocol. In fact, in *Taberer*, the Court held that the district judge's de novo determination was insufficient to satisfy the de novo hearing requirement set forth in §636(e).

This precedent is presented to the Court for its consideration. As noted, under the specific circumstances of this case, conducting another fact-finding hearing would not seem necessary, provided the Court otherwise adjudicates this matter in accordance with the requirements of §636(e).

## II. OBJECTIONABLE FINDINGS IN THE
## REPORT, RECOMMENDATION AND ORDER

In the order that they appear in the determination of Magistrate Judge Roemer, Blust and Lit Def object to the following rulings.

### A.    **Finding that Fidelis is a "successor" to Lit Def**

At pages 28-31 of the Report, Recommendation and Order, the Court finds that Fidelis is a "successor" to Lit Def. The principal flaw in this finding is the ambiguity of the term "successor," which is nowhere defined in the Court's decision, nor was its meaning ever addressed during the course of the underlying proceeding or in the filings of the Receiver. The evidentiary grounds that are cited at pages 28-31 of the decision primarily focus upon the control exercised by Blust over the operations of Fidelis, including the assignments, activities, and compensation of its employees, and the sharing of resources by Lit Def with Fidelis. At no point, however, does the Court's discussion address the main argument pressed by the Receiver regarding Blust's alleged ownership of and financial stake in Fidelis, nor his contention that Christo is no more than a "front man." To the extent "successor" is intended to include these findings, the clear and convincing evidentiary standard applicable to a civil contempt proceeding has not been met. In the end, the vagueness inherent in the Court's "successor" finding invites speculation as to its meaning and is, therefore, objectionable.

3

The Second Circuit, relying upon Supreme Court precedent, has recognized the nebulous quality of the term "successor:"

> The Supreme Court has therefore emphasized that there is "no single definition of 'successor' which is applicable in every legal context," and that the question of whether to hold a new employer to the obligations of a former employer is one that must be considered "in light of the facts of each case and the particular legal obligation which is at issue."

*NYS Teamsters Conf. Pension and Retirement Fund v. C&S Wholesale Grocers, Inc.,* 24 F.4th 163, 177 (2d Cir. 2022), citing *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders Internat. Union AFL-CIO*, 417 U.S. 249, 262 n.9 (1974).

## B.   Finding of improper concerted conduct among Blust, Christo, and Gallagher

At page 34 of its ruling, including footnote 26, the Court infers, without expressly finding, that the total of six (6) declarations filed by Blust (1), Christo (3), and Gallagher (2) were the product of concerted conduct on their part. Indeed, the filing of these pleadings is described as "relevant conduct in assessing Blust and Lit Def's initial violation of the TRO[.]" Report, Recommendation and Order at page 34. In apparent support of this conclusion, the lone observation made by the Court is that "multiple declarations [were filed] with the Court, under penalty of perjury, that have now been determined to contain material falsities." *Id*. [footnote omitted]. Reliance solely upon this finding to conclude Blust and the other two individuals engaged in improper concerted behavior once more does not meet the clear and convincing evidentiary standard which applies to a civil contempt proceeding. Nor may this unsupported accusation properly form the basis for any sanctions associated with the Court's civil contempt determination.

**C.**    **Directive that Blust and Lit Def pay all fees and costs associated with the Receiver's pursuit of a contempt motion and opposition to Fidelis's receivership defendant motion**

At page 36 of the decision, and again at page 38, the Court directs that Blust and Lit Def pay all fees and expenses of the Receiver tied to the two different sets of motion practice underlying the Report, Recommendation and Order. As discussed in greater detail below, liability for payment of the Receiver's fees and costs associated with their contempt motion against Blust and Lit Def should be limited to the period prior to the oral argument conducted on May 23, 2024. In the case of the expenses of the Receiver associated with opposing the separate motion filed by Fidelis contesting its designation as a receivership defendant (Doc. 190), no monetary liability should be imposed upon Blust and Lit Def. The decision to file that motion, the arguments presented, and the preparation and filing of all pleadings in support of the relief requested were solely the product of independent decisions made by Fidelis, Christo, and their counsel. Blust and Lit Def were not parties to that motion and exercised no control whatsoever over the course of that litigation. The onerous sanction of holding Blust and Lit Def financially responsible for the Receiver's costs in opposing the relief sought by Fidelis is neither fair nor warranted by the record.

**D.**    **Recommended referral to WDNY United States Attorney's Office**

At pages 37 and 38 of its ruling, the Court recommends that consideration of the falsity of a declaration executed by Blust (Doc. 211) should be referred to the U.S. Attorney's Office for the Western District of New York to consider whether a formal criminal prosecution for perjury is warranted. Statements in this declaration that are contradicted by the evidence do not support a criminal referral. The most material statements in the declaration, consisting of Blust's denial of an ownership interest or financial stake in Fidelis, have not been proven to be false. Indeed, the

dearth of evidence with respect to this issue is reflected both in the findings of Magistrate Judge Roemer, as discussed in greater detail below, and concessions in the pleadings by, and on-the-record statements of, the Receiver. As well, relying upon Blust's assertion of his Fifth Amendment privilege at a hearing conducted on January 23, 2025 in support of this recommendation is improper.

### III. STANDARD OF PROOF TO ESTABLISH A CIVIL CONTEMPT

As the Receiver has recognized in his pleadings, one of the elements of a civil contempt is that the proof of noncompliance be clear and convincing. *PBS Broad. Inc. v. Filmon.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016). The clear and convincing standard has been defined as requiring "a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Cricut, Inc. v. APA Technology Ltd. Co.,* 698 F.Supp.3d 538, 547 (E.D.N.Y. 2023).

To be clear, Blust and Lit Def do not contest the finding of Magistrate Judge Roemer that their actions violated the TRO, both with respect to the operation of Lit Def for a period of several weeks after the issuance of the TRO, as well as Blust's oversight of the personnel and operations of Fidelis for a period of several weeks thereafter into late February 2024. The critical importance of being faithful to the clear and convincing standard in the context of a civil contempt proceeding, for purposes of these objections, concerns the decision's "successor" finding and the reference to an improper concert of action among Blust, Christo, and Gallagher in the context of the litigation. Each bears directly upon the sanctions recommended at the conclusion of the Report, Recommendation and Order, including in particular the two that are identified as objectionable in this pleading.

## IV. THE AMBIGUITY OF THE RECOMMENDED "SUCCESSOR" FINDING

We object to the "successor" finding set forth at pages 28-31 of the Report, Recommendation and Order due to the ambiguity of the term, which is nowhere defined in the decision and otherwise had been loosely used by the Receiver in their pleadings and arguments during the course of this proceeding. This term has been applied by the Receiver throughout the course of the contempt proceedings as shorthand for a broad spectrum of interests allegedly held by Blust in Fidelis that range from exercising a level of control over its operations to being the founder and owner of the company.

The following is a summary of the allegations on this subject set forth in the Receiver's pleadings:

1. Fidelis is the proxy of or successor to Lit Def. *See* Doc. 179-1 at p. 1; Doc. 232 at p. 3; Doc. 622 at pp. 1, 2, 5, 14, 19, 27, and 28.

2. Blust is the owner of and controls Fidelis. *See* Doc. 622 at p. 1 n.1.

3. Fidelis is beneficially owned or controlled by Blust. *See* Doc. 179-1 at pp. 1, 6; Doc. 622 at p. 1.

4. Just as Blust replaced a formerly owned litigation support company named Relialit, LLC with Lit Def, he in the same manner replaced Lit Def with Fidelis. *See* Doc. 232 at p. 8; Doc. 622 at pp. 5, 13, 18.

5. With respect to Fidelis, Christo is no more than a "front," an owner in name only. *See* Doc. 576 at p. 22; Doc. 622 at p. 15.

6. Lit Def and Fidelis are "interchangeable." *See* Doc. 622 at p. 20.

7. Christo did not fund Fidelis's operations. *See* Doc. 622 at pp. 24, 29.

Blust and Lit Def object to any implication drawn from the language of the Report, Recommendation and Order, including the use of the term "successor," that the record has shown by clear and convincing evidence that Fidelis is no more than a proxy of or successor to Lit Def; that Blust in any way owns Fidelis; that Fidelis replaced Lit Def in the same manner that Lit Def

in the past replaced Relialit, LLC; that Christo is no more than a "front" or owner in name only of Fidelis; that the names Lit Def and Fidelis are interchangeable; or, that Christo did not fund Fidelis. None of these characterizations find clear and convincing evidentiary support in the record.

That, in at least the mind of the Receiver, the use of the term "successor" covers in some sense all of the descriptions outlined above is reflected in the fact that, at the conclusion of their Post-Hearing Brief (Doc. 622 at p. 37), the Receiver has requested that Magistrate Judge Roemer's Order require "Lit Def and Blust to cooperate immediately and completely with the Receiver, including turning over to the Receiver all Assets and corporate records of Fidelis and turning over control of all business operations of Fidelis to the Receiver, and providing a complete financial accounting of Fidelis, including all transfers to or from third parties." [Underlining added for emphasis.] The decision does not address this request of the Receiver head on, finding it to be moot upon the basis of separately determining that Fidelis qualifies as a receivership defendant under the Preliminary Injunction. Report, Recommendation and Order at pp. 36-37.

As discussed below, there are other aspects of the decision that tend to support the fact Magistrate Judge Roemer does not intend his "successor" finding to adopt the far more extreme findings advocated by the Receiver. Illustrative of the Receiver's longstanding position is his statement during oral argument conducted on March 6, 2025 linking his original contempt motion to the argument that Blust possesses the power to "turn over" Fidelis to him: "So we filed a motion on the order to show cause. Mr. Blust needs to turn over Fidelis. Christo is a front man. There's no question. He's a front man, and all this argument today about -- it's almost mind blowing because he's just a facade." **Exhibit A**, excerpt of transcript of March 6, 2025 oral argument at p. 48 [underlining added for emphasis].

We adamantly disagree with the argument that Blust ever has had the capacity to "turn over" Fidelis. The Report, Recommendation and Order, in not making this finding, demonstrates that the Receiver did not prevail on his principal argument. In our view, this shortfall on the part of the Receiver directly affects the appropriate sanction. Pointedly, the Receiver's lack of success on this key issue completely undercuts the recommendation of Magistrate Judge Roemer that Blust and Lit Def be held responsible for *all* briefing by the Receiver, not only with respect to his contempt application, but also regarding the separate Fidelis motion contesting its designation by the Receiver as a receivership defendant.

## V. BLUST'S "CONTROL" OF FIDELIS

Attendant to the "successor" finding reflected in the Report, Recommendation and Order is the companion determination that Fidelis "is controlled by Jason Blust." Report, Recommendation and Order at p. 28 (subheading). This subject is then discussed in the decision at pp. 28-31.

As background for the findings in the decision, the Blust and Lit Def Post-Hearing Memorandum (Doc. 619 at pp. 7 and 8) acknowledges that the emails relied upon by the Receiver reveal that, with Gallagher, Blust did participate in determining work assignments and compensation for Fidelis personnel. These emails are characterized in our post-hearing submission as demonstrating that Blust engaged in a "high level of employee oversight." At oral argument on March 6, 2025, this fact was again recognized by us at two different points, each in the context of the demand by the Receiver that Blust "turn over" Fidelis to him. It was first stated that "we acknowledge that there was a level of supervision and control that Mr. Blust [*sic*] the email showed it[.]" **<u>Exhibit A</u>** at p. 56. Several minutes later, it was conceded that "with the evidence that's been uncovered, we do - there's no question there's a level of control there. It's just a question of how

9

much, and the only other point I can make on that to repeat myself is if it's turning over Fidelis that's supposed to be the remedy, he can't do it." *Id*. at p. 62. Again, the decision avoids meeting this "turn over" request by the Receiver head on by the expedient of denying the separate motion filed by Fidelis, and concluding that it had indeed been properly designated as a relief defendant. The fairest inference to be drawn from its navigation through this issue is that the Court was not convinced by clear and convincing evidence that Blust had the ability to "turn over" Fidelis to the Receiver.

The Receiver's Hearing Brief (Doc. 576 at p. 21 and fn. 9) concedes not having evidence in support of his repeatedly stated speculation that Blust owned and had financial control over Fidelis: "The Receiver does not know, and presently has no way of knowing, the exact financial arrangement between Blust and Christo. That is hardly surprising given Blust's experience with using fronts. It is not necessary to find contempt – Blust's control is more than enough." In the footnote cited in this text, the Receiver blames this hole in his proof upon Blust's "behind-the-scenes financial arrangements," in conceding that "it is hardly surprising that the exact financial arrangement between Christo and Blust remains undiscovered."

Then, at oral argument on March 6, 2025, the Receiver acknowledged that his assertions during the litigation regarding both Blust's ownership of, and financial stake in, Fidelis were little more than hopeful speculation:

> Now, what do I expect happened after we filed our order to show cause two days – you know, three days later? My guess is he stepped back. Right? He still controls it. I'm sure he still owns it. He's still getting funds from it or we'll find that out eventually, but Mr. Blust runs his businesses that way. He's always gets somebody in the front.

**Exhibit A** at p. 44. Later during the March 6, 2025 argument, the Receiver again backpedaled, in this instance on the issue of Blust's control, making the following comment: "We demonstrated

that Blust owns or controls Fidelis, and by the way, we don't have to demonstrate that he entirely controls. That was your question. It's just control, some control, and that's what we have." *Id.* at p. 49.

The decision, it appears, took the Receiver at his word, shedding some light on the meaning of the "successor" finding by repeatedly characterizing Blust's control of Fidelis as being shown by the evidence to be "in whole or in part," as exemplified by the following[2]:

1. "The record also shows that <u>Blust exercised control, in whole or in part</u>, over Fidelis." Report, Recommendation and Order at p. 30.

2. "Also, for the reasons stated, the court finds that Fidelis is <u>controlled, in whole or in part, by defendant Jason Blust</u>[.]" *Id.* at p. 31.

3. Commenting upon the argument by Fidelis that the evidence had not shown that Fidelis "funnels or pays money to Blust. But such proof is not required for an entity to qualify as a receivership defendant under the terms of the PI. . . . Also, under the terms of the PI, the Receiver must prove that Fidelis is <u>controlled, *in whole or in part*, by Blust</u>. . . . Blust still exercised substantial control over Fidelis." *Id.* at p. 32 n. 25 [italics in original].

4. "The evidence before the Court further shows that Fidelis, a receivership defendant <u>controlled in whole or in part by Blust</u>, was acting as an assign or successor of Lit Def both before and after entry of the TRO." *Id.* at p. 33.

5. "Here, the Receiver has put forth clear and convincing evidence that Blust and Lit Def violated these requirements by failing to disclose the existence of Fidelis as well as its obvious connection to the receivership estate both as a successor and/or assign of Lit Def as well as an entity owned or <u>controlled, in whole or in part, by Blust</u>, that was related to the defendants' debt relief operation." *Id.* at pp. 33-34

Taken as a whole, the findings in the decision demonstrate that, with respect to the main thrust of his argument regarding Blust's alleged ownership of and control over Fidelis, the Receiver was only partly successful in demonstrating, as was conceded by Blust and Lit Def, that Blust in some fashion controlled Fidelis. That level of control is expressly and repeatedly found in the decision to not definitively consist of complete control, and the remainder of the Receiver's

---

[2] In the citations to the decision that follow, underlining is added for emphasis.

argument regarding ownership and financial interest on the part of Blust is not even addressed,[3] much less sustained.

These explicit findings, juxtaposed against the far more extreme arguments advanced by the Receiver during the litigation, demonstrate that the recommendation Blust and Lit Def be responsible for both the entirety of the Receiver's fees and costs associated with their contempt motion, as well as the entirety of the separate and distinct litigation pursued by Fidelis with respect to its designation as a receivership defendant, is wholly unjustified.

## VI. THE RECEIVER'S PERSISTENT DEMAND BLUST "TURN OVER" FIDELIS WAS NOT SUSTAINED

Doc. 620 is a Declaration of Counsel, with exhibits, dated February 24, 2025. Its purpose is to outline unsuccessful attempts on the part of Blust and Lit Def to pursue a settlement of the contempt issue with the Receiver on and after May 23, 2024, the date of the first oral argument on the Receiver's contempt motion. The Report, Recommendation and Order does not take either the attempt to explore settlement on the part of Blust and Lit Def, or the stated reason for the Receiver's declination to participate in settlement discussions, into consideration in deciding upon an appropriate sanction. This constitutes error.

The Declaration filed at Doc. 620 recites that an initial attempt on the part of Blust and Lit Def to explore a settlement of the contempt issue with the Receiver was initiated following oral argument on May 23, 2024. While there were later discussions between counsel for Blust and Lit Def with the Receiver on May 31, June 6, and June 10, 2024, those conversations did not touch upon the subject of settlement, but rather further discovery sought by the Receiver.

---

[3] The lone exception is the statement in the decision at page 34, cited in ¶5, above, that Fidelis is "an entity owned or controlled, in whole or in part, by Blust[.]" The decision at no point further substantiates this isolated reference to ownership "in whole or in part."

Following the conclusion of the two-day evidentiary hearing held on January 23 and 24, 2025,[4] the subject of settlement was again raised with the Receiver by counsel for Blust and Lit Def. Approximately two weeks later, an email on the subject of the pursuit of settlement was sent to the Receiver. A response was then provided by the Receiver, dated February 19, 2025, explaining the Receiver's rationale for not considering settlement as a meaningful alternative: "Given that Fidelis has not been turned over, and we believe your client controlled it, we cannot discuss a settlement."

The Receiver's argument that Blust had the capacity and should be ordered to "turn over" Fidelis is not a part of the relief granted by Magistrate Judge Roemer. As stated above, the Report, Recommendation and Order never expressly determines whether or not the Receiver's position was meritorious, and instead finds the request to be moot based upon the separate determination that Fidelis qualifies as a receivership defendant under the Preliminary Injunction. Support for the fact the Court was not receptive to the Receiver's "turn over" argument is reflected in the decision's characterization of Blust's control of Fidelis as having been "in whole or in part," the fact the decision at no point determines that Blust either owns or ever had a financial stake in Fidelis, and the Court's election to pass on this issue.

On the subject of sanction, these circumstances support the conclusion that, in fairness, the responsibility of Blust and Lit Def for the Receiver's fees and costs in the pursuit of their contempt motion should be cut off as of the oral argument conducted on May 23, 2024. It was at that argument that Blust and Lit Def acknowledged having violated the TRO and, perhaps more importantly, it was on that date that counsel initiated efforts to negotiate a settlement of the

---

[4] The Declaration filed at Doc. 620, ¶11, incorrectly states that this hearing was conducted in February, rather than January, 2025.

Receiver's contempt application. As set forth above, those efforts were fruitless due to the unsubstantiated position taken by the Receiver that Blust should be required to "turn over" Fidelis.

An additional reason why May 23, 2024 should be identified as the cutoff date for the fee and cost reimbursement liability of Blust and Lit Def is that the principal purpose underlying the further litigation conducted after May 23, 2024, that the Court issue a directive Blust "turn over" Fidelis to the Receiver, was not achieved. The Receiver in fact conceded at oral argument on March 6, 2025 the following:

> THE COURT:    When you say he's got to turn over Fidelis, how – is that different at all than just the Court names them as a receivership defendant?
>
> MR. McNAMARA:    No.
>
> THE COURT:    Is there something extra?
>
> MR. McNAMARA:    No, as a practical matter, there's no difference.

**Exhibit A** at p. 48.

## VII. RECOMMENDATION BLUST AND LIT DEF REIMBURSE THE RECEIVER'S FEES AND COSTS ASSOCIATED WITH THE SEPARATE FIDELIS MOTION OPPOSING ITS DESIGNATION AS A RECEIVERSHIP DEFENDANT

The decision of Magistrate Judge Roemer, at pages 36 and 38, recommends, as a distinct sanction, that Blust and Lit Def reimburse the Receiver for their fees and costs associated with a separate motion filed by Fidelis challenging the Receiver's designation of Fidelis as a receivership defendant. As neither Blust nor Lit Def had any role in the filing and litigation of the issues associated with the Fidelis motion, this recommendation is both unfair and unreasonable, and otherwise devoid of a proper evidentiary basis. From the outset, Fidelis has been represented by

14

separate counsel, who has been independently responsible for litigation-related decisions and strategy in representing Fidelis. Neither Blust nor Lit Def in any way participated in identifying the issues raised in the Fidelis motion, nor the arguments advanced with respect to those issues, including responses to the opposition of the Receiver.

The filings associated with that motion may be summarized as follows:

| Doc. | Filer | Description of Pleading |
|---|---|---|
| 190 to 190-10 | Fidelis | Motion, with Memorandum, Declaration and Exhibits |
| 212 to 212-20 | Receiver | Response, Declarations and Exhibits |
| 233 to 233-22 | Fidelis | Reply, Declarations and Exhibits |
| 237 to 237-18 | Receiver | Motion for Leave to File Sur-Reply, Declaration and Exhibist |
| 270 to 270-9 | Receiver | Further Filing, Declaration and Exhibits |
| 320 to 320-15 | Fidelis | Response, Declarations and Exhibits |
| 346 | Receiver | Further Reply |
| 569 to 571 | Fidelis | Memorandum in Opposition, Exhibit List, Witness List |
| 621 | Fidelis | Post-Hearing Memorandum |
| 632 | Fidelis | Post-Hearing Response Memorandum |

A review of these pleadings will confirm that, while they too dealt with the role of Blust in the formation and operation of Fidelis, the arguments presented were strictly from the perspective of Christo. Aside from the commonality of the subject matter, there is nothing about the initiation of the relief defendant designation motion by Fidelis's counsel nor the arguments raised in its pleadings that would support the conclusion Blust or Lit Def was in any way responsible for either the initiation or course of that separate litigation.

A comparison of the content, tone, and volume of the Fidelis motion pleadings to those associated with the civil contempt application brought against Blust and Lit Def by the Receiver demonstrates the vast differences between the two sets of litigation. To enable an actual examination of both sets of pleadings, the following is a summary of the pleadings associated with the Receiver's contempt application directed against Blust and Lit Def:

| Doc. | Filer | Description of Pleading |
|------|-------|------------------------|
| 179 to 179-16 | Receiver | Emergency Motion with Memorandum, Declaration and Exhibits |
| 210 & 211 | Blust & Lit Def | Declarations |
| 232 to 232-1 | Receiver | Reply and Exhibits |
| 269 | Receiver | Further Filing |
| 318 | Blust & Lit Def | Declaration and Exhibits |
| 347 | Receiver | Further Reply |
| 567, 568, 572 | Blust & Lit Def | Witness List, Exhibit List, Pre-Hearing Memorandum |
| 576 to 578 | Receiver | Hearing Brief, Declarations and Exhibits, Exhibit List, Witness List |
| 619 to 619-1, 620 | Blust & Lit Def | Post-Hearing Brief and Exhibits, Declaration |
| 622 to 622-3 | Receiver | Post-Hearing Brief, Exhibits and Proposed Order |
| 630 | Receiver | Reply |
| 634 to 634-1 | Blust & Lit Def | Reply and Exhibits |

The decision, at page 36 n. 29, states that Blust, Christo, and Gallagher "took significant action to hide Blust's involvement in Fidelis, in an apparent attempt to undermine the Receiver and keep Fidelis out of the receivership estate. Their actions involved the filing of false declarations, which resulted in extended filings with the Court and an evidentiary hearing. At no time during these proceedings has Blust admitted his involvement with Fidelis nor has he admitted that Fidelis should properly be included in the receivership estate." As addressed in the next section, no factual basis exists for finding that the motion filed by counsel for Fidelis was in any sense coordinated with defending the Receiver's contempt application directed against Blust and Lit Def. There is no factual basis for holding Blust responsible for any of the five declarations filed in connection with the Fidelis motion, nor should Blust and Lit Def be held accountable for any of the filings associated with that separate litigation. That Blust and Lit Def contested the allegation of the Receiver in no fashion provides a basis for holding them responsible for the separate Fidelis motion, particularly in that the end result has been that the primary allegation advanced by the

Receiver regarding Blust owning and holding a financial interest in Fidelis, or for that matter wholly controlling Fidelis's operations, has not been sustained.

## VIII. ALLEGED COORDINATED CONDUCT AMONG BLUST, CHRISTO, AND GALLAGHER ASSOCIATED WITH THE SEPARATE CONTEMPT AND OPPOSITION TO DESIGNATION AS RECEIVERSHIP DEFENDANT PROCEEDINGS

As mentioned in the preceding section, language in the opinion of Magistrate Judge Roemer accuses Blust, in connivance with Christo and Gallagher, of improperly coordinating the content of pleadings filed in connection with his and Lit Def's opposition to the Receiver's contempt application with those filed in support of the separate Fidelis motion contesting its designation as a receivership defendant. The stated basis for this finding appears to be the content of declarations that were filed during the course of each proceeding.

In particular, as part of the opposition to the Receiver's contempt application, a declaration by Blust was filed on March 14, 2024 (Doc. 211). The content of that declaration is summarized at pages 8-9 of the Report, Recommendation and Order and is discussed in detail below. This represents the only declaration executed by Blust in connection with the civil contempt proceeding.

By comparison, in the context of the litigation involving the Fidelis receivership defendant designation, a total of five declarations were filed. Declarations by Christo were filed at Doc. 190-4, 233-1, and 320-1. Respectively, these declarations are addressed at pages 9-10, 13, and 16-17 of the decision. Declarations for Gallagher were filed at Doc. 233-5 and 320-3. The two Gallagher declarations are discussed in the decision at pages 13-14 and 16-17. The preparation and filing of these five declarations, as well as their content, was strictly determined by counsel for Fidelis.

The Report, Recommendation and Order makes the following finding:

> Instead, Blust steadfastly denied that he had any interest in, or control over, Fidelis. Blust also steadfastly denied that Fidelis was, in any manner, a proxy, assign, or successor to Lit Def. To that end, Blust, together with Christo and Gallagher, went to significant lengths to hide Blust's involvement with, and control over, Fidelis, as well as Fidelis' significant connections to Lit Def. These lengths included filing multiple declarations with the Court, under penalty of perjury, that have now been determined to contain material falsities.

Report, Recommendation and Order at p. 34 (footnote omitted). As set forth above, the same finding is reflected at page 36 n. 29 of the decision.

Aside from the observation that each declaration has been found to contain material false statements, the decision does not articulate a basis for finding a conscious coordination, as the opinion states, "to hide Blust's involvement with, and control over, Fidelis, as well as Fidelis' significant connections to Lit Def." Report, Recommendation and Order at p. 34. To the extent this reference to coordinated conduct on the part of Blust, Christo, and Gallagher in the context of the litigation has a bearing on the resolution of the Receiver's contempt application, it is subject to the clear and convincing standard of proof. Without more, the finding of falsity in each declaration, particularly given the fact that separate counsel were responsible for the Blust declaration on the one hand, and the Christo and Gallagher declarations on the other, the coordinated effort finding has not been established to a reasonable certainty. This is particularly true in the case of Blust, who executed a single, as opposed to multiple, declaration in opposition to the Receiver's application. As such, this finding should play no role whatsoever in the sanctions imposed upon the finding of civil contempt against Blust and Lit Def.

## IX. RECOMMENDATION OF REFERRAL TO
## UNITED STATES ATTORNEY'S OFFICE

At pages 37-38, the decision recommends the veracity of the single Blust declaration, the three Christo declarations, and the two Gallagher declarations be referred for investigation of perjury to the United States Attorney's Office for the Western District of New York.

One of the cited grounds for the recommended referral is identified as "the adverse inferences drawn as to Blust, Christo, and Gallagher's testimony." Report, Recommendation and Order at p. 37. Consideration of a witness's assertion of the Fifth Amendment in support of a conclusion that the witness may have engaged in criminal conduct is inappropriate. The drawing of an adverse inference in support of a finding or suggestion of criminality from reliance on the privilege against self-incrimination guaranteed by the Fifth Amendment is forbidden. Instructive on this point in the context of a criminal trial is *Griffin v. California*, 380 U.S. 609, 615 (1965), where the Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." [Footnote omitted.] Earlier, the Court observed that any comment on the refusal to testify "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down the privilege by making its assertion costly." 380 U.S. at 614. The following comments of the Fifth Circuit in *Hoover v. Knight*, 678 F.2d 578, 580-581 (1982) are also apt: "[A] state may not impose substantial penalties upon a witness who elects to exercise a fifth amendment privilege against compelled self-incrimination"; "The direct imposition of sanctions against one who asserts the fifth amendment privilege has consistently been held by the Supreme Court to be in violation of the constitution." Basing a proposed criminal referral to the United States Attorney's Office upon Blust's assertion of the Fifth Amendment wrongly penalizes his reliance on the privilege, which constitutes an

19

impermissible direct sanction arising from his invocation of his rights under that amendment. For this reason alone, the recommended referral is improper.

What Magistrate Judge Roemer determined to be the relevant portions of the Blust declaration are summarized at pages 8-9 of the decision. These findings are summarized as follows:

1. Turning to ¶7 of the declaration, the opinion observes that Blust denied ownership or control of Fidelis or that he diverted any assets or resources of Lit Def to Fidelis. It is acknowledged that there is evidence that Blust exercised some control over the employees of Fidelis and that Lit Def's computers and software were transferred to Fidelis. On the other hand, the credible evidence has not shown Blust owns Fidelis which, throughout the contempt proceeding, has been the overarching contention of the Receiver.

2. Paragraph 8 of the declaration is described as recounting a reported conversation between Blust and Christo which gave rise to Christo's decision to form Fidelis. While the decision, at footnote 15, expresses skepticism regarding whether this conversation in fact occurred, that is not a substitute for evidence of its falsity.

3. Summarizing ¶9, the decision states that Blust denies having any role in the formation of Fidelis or in its funding before or after being formed, and has "no interest of any kind in Fidelis." While the Receiver has consistently argued otherwise, there is no evidence to reliably demonstrate the falsity of the representation that Blust had no role in Fidelis's formation or funding. Broadly read, the denial of an "interest of any kind in Fidelis" is contradicted by the evidence Blust did have a role in supervising its employees.

4. The opinion points out that ¶10 refers to a decline in Lit Def's business between 2021 and 2023, and that Blust "became aware" that Lit Def employees were simultaneously working for Fidelis. While the evidence has shown that Blust had a role in the assignment of both Lit Def and Fidelis employees, which included performing services for both companies, the characterization in the declaration of his knowledge as "became aware" does not constitute a material misstatement.

5. The decision observes, at ¶11, that the Blust declaration asserts he had no interest "of any kind on [his] part, including financial *or supervisory*, in the operation of Fidelis." Opinion at p. 9 (italics in original). As acknowledged above, the evidence has doubtless shown that Blust did hold a supervisory interest in the operation of Fidelis, however, as the proceeding progressed, the evidence of Blust's supervision of employees was not a contested matter.

6. The decision details that, at ¶15, Blust denies that he "beneficially owned or controlled Fidelis," or that Fidelis was "operating in parallel with, as a proxy of, or

as a successor to" Lit Def. *Id*. As with ¶7, the statement that Blust did not control Fidelis is acknowledged to be contradicted by the evidence. There is, however, no evidence of Blust beneficially owning Fidelis nor, in our view, of Fidelis "operating in parallel with, as a proxy of, or as a successor to" Lit Def. This terminology is in any event ambiguous.

An analysis of the Blust declaration discloses that what may be fairly argued to be misstatements are limited to whether Blust in any fashion controlled and exercised a supervisory role with respect to the operation of Fidelis. A consideration of the course of these proceedings, including Blust and Lit Def's eventual acknowledgment of the evidence showing his control and supervision, weighs against a criminal referral of the Blust declaration to the United States Attorney's Office. As set forth above, on the core issues advocated by the Receiver, having to do with ownership, a financial stake, or the ability to "turn over" Fidelis, the record evidence fails to show that these denials in the Blust declaration constituted material misstatements of fact.

## CONCLUSION

Blust and Lit Def do not object to the civil contempt finding set forth in the Report, Recommendation and Order. While we view the controlling procedural statute to be 28 U.S.C. §636(e), and ask that the Court comply with its requirements, we are open to a protocol which does not require that the fact-finding hearing presided over by Magistrate Judge Roemer be repeated. We additionally request that, in evaluating the merits of these Objections, the requisite clear and convincing evidence standard applicable to civil contempt proceedings control.

The record demonstrates that, throughout proceedings before Magistrate Judge Roemer, the Receiver maintained that Blust had the ability to "turn over" Fidelis to him. The record equally shows that the Receiver did not prevail on this point. Instead, Magistrate Judge Roemer found that "in whole or in part" Blust controlled Fidelis. A fair reading of this proposed finding is that the Court determined Blust in some meaningful fashion exercised control, albeit not complete control,

over Fidelis. During the course of proceedings, we acknowledged this to be the case. By comparison, the contentions of the Receiver that Blust is the owner of Fidelis, that he has a financial stake in Fidelis, that Fidelis replaced Lit Def in the same way a former litigation support company known as Relialit, LLC was replaced by Lit Def, that Fidelis and Lit Def are interchangeable, and that Christo is no more than a front for Blust constitute allegations that, both collectively and individually, were not sustained by the evidence as evaluated by Magistrate Judge Roemer.

The record also establishes that the briefings and argument related to the Receiver's civil contempt application against Blust and Lit Def, while conducted in parallel to litigation associated with the separate motion filed by Fidelis contesting its designation by the Receiver as a receivership defendant, constituted a separate proceeding. Different counsel represented Blust and Lit Def with respect to the Receiver's civil contempt application as compared to counsel representing Fidelis in connection with its motion opposing the Receiver's receivership defendant designation of Fidelis. The litigation strategies employed in each case, as well as the content and tone of the arguments advanced by counsel, were different. Another salient distinction is that counsel for Blust and Lit Def, unlike counsel for Fidelis, sought to pursue, albeit unsuccessfully, settlement negotiations with the Receiver.

The suggestion in the Report, Recommendation and Order that Blust, Christo, and Gallagher in some sense improperly acted in concert during the separate proceedings presided over by Magistrate Judge Roemer appears to be premised upon a single circumstance – that the lone Blust declaration, three Christo declarations, and two Gallagher declarations each contained false statements. No other evidence is cited by the Court in support of this proposed finding. This

22

isolated circumstance does not satisfy the clear and convincing evidence standard applicable to civil contempt proceedings.

The single declaration executed by Blust contains material denials that are wholly consistent with the credible evidence; that is, that he is not the owner of Fidelis, did not divert its assets, did not participate in its formation, did not participate in its funding, and holds no financial interest in Fidelis. The record does not show by clear and convincing evidence that these denials in the Blust declaration are false. At best, the denials regarding Blust exercising some level of control over Fidelis's operations and his participation in supervising its employees were shown by the evidence to constitute misstatements in his declaration, but constitute matters that were not in any meaningful way contested during the course of the civil contempt proceeding.

Considered in the context of the record as a whole, we respectfully request the following:

1.    That the Court not sustain the proposed finding that Fidelis is a "successor" to Lit Def upon the grounds that the term is inherently ambiguous and implies unspecified facts regarding the relationship of Blust and Lit Def to Fidelis that are not supported by the record when measured by the clear and convincing standard applicable to civil contempt proceedings.

2.    That the Court not adopt the apparent finding in the Report, Recommendation and Order that Blust, Christo, and Gallagher engaged in concerted misleading conduct during the separate proceedings related to the Receiver's civil contempt application against Blust and Lit Def and opposition on the part of Fidelis to its designation as a receivership defendant. The sole premise cited in support of this proposed finding, that Blust filed one false declaration, Christo filed three false declarations, and Gallagher filed two false declarations, does not, without more, demonstrate by clear and convincing evidence that these three individuals acted in concert.

3.    That the Court limit the responsibility of Blust and Lit Def for the Receiver's fees and costs to the Receiver's pursuit of the civil contempt application up to the point of the oral argument conducted on May 23, 2024, and not include any of the Receiver's fees and costs associated with opposing the separate and distinct motion filed by Fidelis. Underlying the unfairness of what is proposed by Magistrate Judge Roemer is that the overarching contention of the Receiver, that Blust had the ability to "turn over" Fidelis to the Receiver, was not proven by clear and convincing evidence and the Fidelis motion constituted a distinct proceeding over which Blust and Lit Def exercised no control.

4.     That the Court not adopt the proposed referral of the Blust declaration to the United States Attorney's Office for the Western District of New York due to the fact the majority of the statements in the declaration, including all of those associated with the Receiver's "turn over" demand, were not shown by the evidence to be false and the reliance upon Blust's assertion at the fact-finding hearing of his Fifth Amendment privilege as a primary basis for the referral constitutes error.

Dated: Buffalo, New York
April 15, 2025.

**/s/ Rodney O. Personius**
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for Defendant*
 JASON BLUST
   and
*Relief Defendant*
 LIT DEF STRATEGIES, LLC
2100 Main Place Tower
350 Main Street
Buffalo, NY  14202
(716) 855-1050
rop@personiusmelber.com