# EXHIBIT A

1

1            UNITED STATES DISTRICT COURT

2            WESTERN DISTRICT OF NEW YORK

3
    - - - - - - - - - - - - - - X        24-CV-0040
4   CONSUMER FINANCIAL
    PROTECTION BUREAU ET AL,
5                Plaintiff

6            Vs.                      Buffalo, New York
    STRATFS, LLC (f/k/a STRATEGIC
7   FINANCIAL SOLUTIONS LLC et al      March 6, 2025
                Defendants
8
    STRATEGIC ESOP, et al
9                Relief Defendants
    - - - - - - - - - - - - - - X
10

11            TRANSCRIPT OF ORAL ARGUMENT
        BEFORE THE HONORABLE MICHAEL J. ROEMER
12            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23        COURT REPORTER:Brandi A. Wilkins
                scalisba@gmail.com
24              Kenneth B. Keating Federal Building
                100 State Street, Room 1250A
25              Rochester, New York 14614

44

1    Blust. So we know at least until February '23 he was

2    involved.

3              Now, what do I expect happened after we

4    filed our order to show cause two days -- you know,

5    three days later? My guess is he stepped back.

6    Right? He still controls it. I'm sure he still owns

7    it. He's still getting funds from it or we'll find

8    that out eventually, but Mr. Blust runs his businesses

9    this way. He's always got somebody in the front.

10             That Daniel Rufty case from out of North

11    Carolina where this poor first year attorney is the

12    owner of the company and 97% of the revenues go to

13    Blust through some consulting agreement. That's how

14    he operates, and that's what happened here. Fidelis

15    was created because Lit Def replaced Relialit because

16    the name got too hot.

17             And then in '20 and '21 and you can see it

18    in Blust's own declaration he had been sued. He had

19    been sued by Ice Legal, a number of cases. He had

20    been sued -- he had been called out by the North

21    Carolina Bar for his involvement with Rufty and then

22    Rufty sued him so what did he want to do? He wanted

23    to get his name off and that's exactly what he did.

24             He used Fidelis with the front man Christo

25    to get his name off because he had been sued. So

48

1    Blust demonstrated without question that Fidelis was

2    the successor, that Blust controlled it, and that the

3    declarations that were previously filed were lies.

4    And so I don't -- you know, I'm glad to go through the

5    declaration if you would like but --

6              THE COURT:  That's okay.

7              MR. MCNAMARA:  Right.  So.

8              THE COURT:  Assuming the Court would agree

9    with everything said, what's the remedy?  What are we

10   looking for?

11             MR. MCNAMARA:  So we filed a motion on the

12   order to show cause.  Mr. Blust needs to turn over

13   Fidelis.  Christo is a front man.  There's no

14   question.  He's a front man, and all this argument

15   today about -- it's almost mind blowing because he's

16   just a facade.

17             THE COURT:  When you say he's got to turn

18   over Fidelis, how -- is that different at all than

19   just the Court names them as a receivership defendant?

20             MR. MCNAMARA:  No.

21             THE COURT:  Is there something extra?

22             MR. MCNAMARA:  No.  As a practical matter,

23   there's no difference.

24             THE COURT:  Okay.

25             MR. MCNAMARA:  And we would -- you know, we

49

1     would be happy.  You know, I disagree that that --

2     those Fidelis receivership defendant motion is moot.

3     I don't think it is.  I think it's just pending, and

4     we filed.  We demonstrated that Blust owns or controls

5     Fidelis, and by the way, we don't have to demonstrate

6     that he entirely controls.  That was your question.

7     It's just controls, some control, and that's what we

8     have.  He's a named defendant.  This business is

9     related to the underlying business at issue in this

10    case, and he controls it.

11            At a minimum in part, I would suggest to the

12    Court that entirely but at a minimum in part, and

13    that's all we need to determine as a receivership

14    defendant, and at that point, those assets and those

15    records should come over.  There's some real concern

16    here, Judge, and we've reflected in our papers that

17    over the last year there could have been a dissipation

18    of assets, you know, destruction of evidence,

19    destruction of records.

20            While that's normally not something that we

21    would have served, but given that they filed

22    declarations which are at their heart perjurious, you

23    know, I think that's a fair concern on our part.  So

24    as a practical matter naming them as a receivership

25    defendant solves our issues I think.  So in addition,

56

1    proposing in open Court I think would be punishable.

2    It wouldn't be coercive.

3            But beyond that, I think we made clear that

4    we acknowledge that there was a level of supervision

5    and control that Mr. Blust the email showed it

6    standing up here in our papers and saying that that's

7    not there but for what the relief is that's being

8    requested by Mr. McNamara which is the turn over, to

9    me the only way he could possibly do that is if the

10   evidence showed by clear and convincing evidence that

11   he had complete control of Fidelis, and he

12   acknowledged when he was standing up here well, he had

13   some control.

14           I don't think some is enough to support the

15   relief that he's requesting.  You point out maybe

16   there's a different way to get to that which is to

17   make Fidelis a subject to the injunction, but as far

18   as the suggestion that Mr. Blust can do that, I just

19   don't think he can, and when I saw that, I got

20   concerned.  He got -- he said Rod, what am I supposed

21   to do?  And I don't know what are you supposed to do,

22   but to the extent that's going to be the basis for the

23   contempt finding our point is you would have to find

24   by clear and convincing evidence that he had complete

25   control of Fidelis to be able to force Mr. Christo to

62

```
 1                    MR. PERSONIUS:  Yes.

 2                    THE COURT:  Not that he was in control of

 3       Fidelis.

 4                    MR. PERSONIUS:  Right, but with the evidence

 5       that's been uncovered, we do -- there's no question

 6       there's a level of control there.  It's just a

 7       question of how much, and the only other point I can

 8       make on that to repeat myself is if it's turning over

 9       Fidelis that's supposed to be the remedy, he can't do

10       it.  And I don't think the evidence -- he shouldn't be

11       directed to do that based on -- based on the evidence

12       in the case.  I think that's it, Judge.  Thank you.

13                    THE COURT:  Mr. McNamara?

14                    MR. MCNAMARA:  Very briefly, Your Honor.  So

15       I just took some scribbled notes as we went through

16       and so I'll just go through them one at a time if I

17       can.  We have heard from both Mr. Hoover and now Mr.

18       Personius that there are no advance fees being taken.

19       I don't know that.  I'm relying on their word for it

20       because they're relying on their client's word for it

21       but I don't know that, and given the way that Mr.

22       Blust has operated these law firms because he controls

23       them and Fidelis and Lit Def.

24                    That's what they claim is no advance fees

25       are taking but I don't have the inside to that if we
```