UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.

                    Plaintiffs,                    Case No. 1:24-cv-00040-EAW-MJR

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

                    Defendants, and

STRATEGIC ESOP, et al.,

                    Relief Defendants.

**RECEIVER'S COMBINED OPPOSITION TO MOTIONS CHALLENGING THE
RECEIVER'S DETERMINATION THAT THE BUSH LAKE TRUST, TWO SQUARE
ENTERPRISES, INC., BDC GROUP, LLC, AND VETERIS CAPITAL, LLC ARE
RECEIVERSHIP DEFENDANTS**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   RELEVANT BACKGROUND ........................................................................ 3

    A.    Blust Directed More than $50 Million to Fidelis ................................... 4

    B.    Blust, Christo Hide Fidelis and Dissipate Assets After the TRO ......... 5

    C.    Having Drained Fidelis, Christo Had to Pull Funds Back from the
           Receivership Defendants to Pay Bills including Fidelis's Legal Expenses........... 8

III.  DISCUSSION ................................................................................................. 8

    A.    The Court Possesses Broad Authority to Expand the Receivership to Add
           These Entities that Are Affiliates, Successors, and Assigns of
           Receivership Defendants Lit Def and Fidelis and Are Directly Related to
           the Debt Relief Business and Owned or Controlled by Defendant Jason
           Blust ...................................................................................................... 8

    B.    Bush Lake Trust, BDC, Veteris, and Two Square are Receivership
           Defendants ........................................................................................... 11

           1.    Bush Lake Trust, BDC Group, Two Square, and Veteris Capital Fit
                 Squarely within the Definition of Receivership Defendant..................... 11

           2.    Bush Lake Trust, BDC Group, Two Square, and Veteris Capital's
                 Arguments Lack Merit.............................................................................. 11

           3.    The Records Confirm Intermingling of Funds and Massive
                 Transfers from Fidelis to Bush Lake Trust, BDC Group, Two
                 Square, and Veteris Capital..................................................................... 13

           4.    The Bush Lake Trust is a Receivership Defendant.................................. 15

            5.    BDC Group is a Receivership Defendant. ............................................... 17

           6.    Veteris Capital is a Receivership Defendant. .......................................... 18

            7.    Two Square Enterprises, Inc. is a Receivership Defendant. ..................... 18

IV.  CONCLUSION.............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*CCUR Aviation Fin., LLC v. S. Aviation, Inc.*,
    2021 WL 1738764 (S.D. Fla. May 3, 2021) ........................................................ 10

*Ryan Beck & Co. v. Daly Holdings, Inc.*,
    2006 WL 3775964 (S.D.N.Y. 2006) ...................................................................... 9

*S.E.C. v. Huber*,
    702 F.3d 903 (7th Cir. 2012) ................................................................................ 9

*SEC v. Amerindo Inv. Advisors Inc.*,
    2016 WL 10821985 (S.D.N.Y. May 20, 2016) ..................................................... 8

*SEC v. Complete Bus. Sols. Grp., Inc.*,
    2020 WL 9209279 (S.D. Fla. Dec. 16, 2020) ...................................................... 10

*SEC v. Creative Capital Consortium, LLC*,
    2009 WL 10664430 (S.D. Fla. Sept. 21, 2009) ................................................... 10

*SEC v. Elliott*,
    953 F.2d 1560 (11th Cir. 1992) ............................................................................. 9

*SEC v. Faulkner*,
    2018 WL 4362729 (N.D. Tex., Sept. 12, 2018) .................................................. 10

*SEC v. MJ Capital Funding, LLC*,
    2021 WK 8999595 (S.D. Fla. Oct. 15, 2021) ....................................................... 9

*SEC v. Nadel*,
    2013 WL 2291871 (M.D. Fla. May 24, 2013) ..................................................... 10

*SEC v. Quiros*,
    966 F.3d 1195 (11th Cir. 2020) ............................................................................ 9

*SEC v. Torchia*,
    2016 WL 6212002 (N.D. Ga. Oct. 25, 2016) ....................................................... 9

*Spira v. Nick*,
    876 F. Supp. 553 (S.D.N.Y. 1995) ....................................................................... 9

Thomas W. McNamara, as the Court-appointed receiver ("Receiver") submits this combined Opposition to The Bush Lake Trust's ("Bush Lake") Motion Challenging the Receiver's Determination (Dkt. No. 655) and the Motion Challenging the Receiver's Determinations of Receivership Defendant Status filed by Two Square Enterprises, Inc. ("Two Square"), BDC Group, LLC ("BDC"), and Veteris Capital, LLC ("Veteris") (Dkt. No. 659).

## I.    INTRODUCTION

The Receiver respectfully responds to the motions by Bush Lake Trust (represented by Fidelis's counsel) and Two Square, BDC, and Veteris (represented by new counsel). Bush Lake's motion is rife with rehashed arguments Fidelis previously made which were rejected by the Court. For their part, Two Square, BDC, and Veteris offer little more than a "me too" three-page brief largely devoid of substance. These entities' repetition of the same tired and failed arguments fair no better now, and the challenges are meritless.

As was the case with Fidelis, Bush Lake presents fairy-tale like depictions of the actual evidence; it whitewashes where it can, and ignores where it must, the egregious behavior of Defendants Jason Blust and Cameron Christo and the entities they control, which have been operating as a common enterprise directly tied to Strategic's law firm debt relief businesses. In its latest missive, Bush Lake (which purports to "own" Fidelis)[1] absurdly claims the Receiver's April 4th determination letter "offers no evidence that irreparable harm will occur if they are not subjected to injunctive provisions, and make no claim that Fidelis or Bush Lake improperly secreted or transferred assets *since Fidelis received the Receiver's initial letter in late February*

---

[1] In fact, Fidelis's accounting records reflect the opposite: Bush Lake and Veteris are recorded as "assets" owned by Fidelis. But regardless of the structure, Bush Lake, BDC, Two Square, and Veteris are "subsidiaries, affiliates divisions, successors and assigns" of Fidelis, to which Fidelis transferred millions of dollars immediately after the TRO; they are also related to the debt relief businesses and owned or controlled by Blust and Christo acting as a front owner.

*2024*." Dkt. No. 655-1 at 13 (emphasis added). As we only recently learned as a result of accessing some of Fidelis's accounting and bank records, Christo liquidated Fidelis's assets and emptied its bank accounts *immediately* after the TRO – during the time when he and Blust kept Fidelis's existence and operation a secret from the Parties, the Receiver, and the Court. *See generally* Declaration of Lisa M. Jones ("Jones Decl."). It is hardly laudable and, frankly, ludicrous to argue the challenges should prevail because Christo and Fidelis completed the looting prior to the Receiver's notice in late February 2024.

And to be clear, the further dissipation of the millions of dollars Fidelis transferred to Bush Lake, BDC, Two Square, and Veteris immediately after the TRO did continue after February of 2024. These transfers, all of which succeeded in further distancing the funds from Fidelis (and Lit Def and Blust), included the purchase of a $13.5 million real estate lot in Boca Raton, and millions in wired transfers to accounts in Switzerland, Lichenstein, and to the company of Christo's significant other, apparently to purchase a villa in Tuscany.

The context of the present challenges is also relevant. This Court has recommended that Blust, Christo, and Michelle Hinds Gallagher ("Gallagher") be referred to the United States Attorney's Office for investigation in connection with the false statements made in declarations presented to the Court.[2] And with Christo, the egregious and contemptuous conduct has never seemed to stopped. The Receiver's data forensics vendor reports that the day before turning over Fidelis's emails and documents to the Receiver after the March 25, 2025 Order, it appears Christo deleted 121 documents from the data.

---

[2] As the Court found, "Blust, together with Christo and Gallagher, went to significant lengths to hide Blust's involvement with, and control over, Fidelis, as well as Fidelis' significant connections to Lit Def. These lengths included filing multiple declarations with the Court, under penalty of perjury, that have now been determined to contain multiple falsities." Dkt. No. 646 at 34.

The conduct of Blust and Christo in this case is beyond troubling; the repeated flouting of Court-ordered obligations and refusals to cooperate are shocking. Given their failure to respect this Court and its Orders, turning control of Fidelis, Bush Lake, BDC, Two Square, and Veteris back over to Blust and Christo would create extraordinary risk of irreparable harm from further asset dissipation and spoliation of evidence.

## II. RELEVANT BACKGROUND

On February 25, 2024, the Receiver notified Fidelis that it qualified as a "Receivership Defendant" under the TRO based on then recently discovered information. On March 4, 2024, Fidelis launched the first of many hyperbolic pleadings related to its challenge of that determination. Dkt. No. 190. After extensive briefing,[3] argument, and an evidentiary hearing,[4] this Court issued a thoughtful and detailed Order on March 25, 2025, including comprehensive

---

[3] Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 190); Receiver's Opposition to Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 212); Combined Reply Memorandum in Further Support of Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 233); Receiver's Motion for Leave File Sur-Reply in Opposition to Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant, and Incorporated Memorandum of Law (Dkt. No. 237); Receiver's Further Filing in Opposition to Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 270); Fidelis's Combined Response to the Receiver's Sur-Reply and Supplemental Memoranda (Dkt. No. 320); and Receiver's Further Reply to Fidelis's Motion Challenging the Receiver's Determination That Fidelis is a Receivership Defendant (Dkt. No. 346).

[4] Fidelis euphemistically describes the evidentiary hearing as "largely a paper exercise" (Dkt. No. 649 at 15). The reason it became a "paper exercise" is that after filing a total of six declarations rife with false statements in connection with the Fidelis Receivership Defendant Challenge, Defendant Jason Blust ("Blust"), Cameron Christo ("Christo") and Michelle Hinds Gallegher ("Gallegher") invoked their Fifth Amendment Rights to every question posed to them at the hearing.

factual findings, denying Fidelis's challenge and confirming that Fidelis is a Receivership

Defendant ("Order") (Dkt. No. 646.).[5]

Among the many findings the Court made in issuing its Order concluding Fidelis is a

Receivership Defendant, three are particularly worth noting here:

- "[T]he Court finds that in or around January of 2021, Blust, with the help of Christo and Gallagher, established Fidelis in order for it to become a successor of Lit Def. The record suggests that Blust took these actions in light of increased litigation against Lit Def, and that Christo was named as Fidelis' owner and chief officer in order to conceal Blust's involvement with the new company." Dkt. No. 646 at 28-29;

- "Less than one year after Fidelis was established, Blust diverted, to Fidelis, a $750,000 payment owed to him and Lit Def by StratFS. Blust and Christo concealed the true nature of this payment by falsely indicating that Christo had 'vetted' a software program for StratFS." Id. at 29; and

- "The record also shows that Blust exercised control, in whole or in part, over Fidelis. He directed employee assignments and monitored employee productivity at Fidelis. Blust was directly involved in the hiring of Fidelis employees. He set the holiday schedule. He determined employee compensation and bonuses. When Gallagher, the manager of Fidelis, had questions regarding Fidelis' employees or operations, she regularly contacted Blust. The record further shows that Christo had minimal involvement in Fidelis' day-to-day operations, including personnel management, and there is little evidence in the record that Christo generated any significant business for the company." Id. at 30-31.

## A.    Blust Directed More than $50 Million to Fidelis

By standing up Fidelis with Christo as its front owner, Blust was able to shift the

payments from the Intervenor Law Firms and the Turnbull law firms, both of which Blust

controlled (collectively the "Blust-Controlled Law Firms), from Lit Def to Fidelis – and thereby

avoid having the funds paid into a company in Blust's name. Between 2021 and May of 2024,

---

[5] The Order related to the Court's decision confirming the Receiver's determination that Fidelis was a Receivership Defendant and denying Fidelis's challenge thereto, while the Report and Recommendation portion addressed the Receiver's separate contempt motion against Blust and his entity Lit Def Strategies.

Blust funneled more than $50 million to Fidelis from the Blust-Controlled Law Firms, which included more than $29 million from the Intervenor Law Firms.[6]  *See* Jones Decl. ¶ 5.

**B.    Blust, Christo Hide Fidelis and Dissipate Assets After the TRO**

In January of 2024, the risk which motivated Blust and Lit Def to form Fidelis materialized, as the CFPB and seven State Attorneys General brought suit against Blust and Lit Def, among others, and Lit Def was specifically named a Receivership Defendant.  But at least initially, the Fidelis maneuver worked.  Fidelis itself was not specifically named as a Defendant or Receivership Defendant, nor was Christo.

Pursuant to the TRO, Blust and Lit Def were required to come clean and cooperate in turning over Lit Def and in identifying all Receivership Estate Assets; this would have obviously included identifying Fidelis and all of its assets.  Moreover, both Fidelis and Christo were also subject to all restraints on the TRO and Preliminary Injunction as parties acting in concert with the Defendants, because the TRO specifically restrained "all other Persons in active concert or participation with [Defendants]" from "[t]ransferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the

---

[6] It is a testament to the strawman scheme Blust and Christo perpetrated that the tens of millions of dollars the Blust-Controlled Law Firms transferred to Fidelis took place without a written contract.  The Receiver has asked Fidelis and the Turnbull law firms for copies of the contracts with Fidelis.  Chris Turnbull, the "owner" on paper of the Turnbull law firms, reported that no written contract exists.  Despite two requests, Fidelis has not identified or provided a contract or fee schedules or, frankly, any of the sorts of operational documents one would expect to exist in a business generating more than $25 million in revenue per year.  The Fidelis invoices we have reviewed reflect Fidelis billed the law firms per file (*i.e.*, a customer who had been sued by a creditor and Fidelis provided administrative support) and varied widely from month-to-month without explanation. One month, the amount per file might by $950, while the next month it is $250.  Of course, the fact of the matter is that Blust controlled each aspect of this process: he controlled the law firms, Lit Def, and Fidelis.  And so whether Fidelis billed and was paid $950 or $250 per file, the practical effect to Blust is minimal: he is just moving the funds from one of his pockets to another of his pockets.

possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants" and from "[d]oing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership; or to harass or to interfere with the Receiver in any way[.]"  TRO § XII(B)(3) & (7), Dkt. No. 12 at 32-33.

Immediately after the implementation of the TRO in January 2024, Blust (by his own admission) continued to operate Lit Def in violation of the TRO.  Blust and Christo also disregarded court-ordered mandates and conspired to hide the existence of Fidelis from the Receiver, the Parties, the Court, while Fidelis continued to operate.  They succeeded for approximately six weeks, until February 23, 2024, when the Receiver discovered Fidelis.

After giving notice that Fidelis was a Receivership Defendant, the Receiver agreed not to execute on Fidelis's bank accounts while Fidelis challenged that determination so long as Fidelis agreed to a stand-still, under which it agreed not to transfer assets out of Fidelis during the pendency of the Court's review of the challenge.  Fidelis readily agreed.  Unbeknownst to the Receiver, Fidelis's stand-still assurance was utterly meaningless – as Christo, Blust and Fidelis knew.  This is because, under Christo's nominal "ownership," he had already furtively liquidated Fidelis's investments and emptied its bank accounts immediately after the implementation of the TRO in January and early February 2024.  *See* Exhibits 1 & 2 to Jones Decl.

During January and February, as described in the Jones Declaration, Christo orchestrated the transfer millions of dollars from Fidelis to affiliate companies, Receivership Defendants Bush Lake, BDC, and Two Square, all of which were in Christo's name and under his control.  Jones Decl. ¶¶ 6-8, 14 & 20 & Exhibits 1 & 2.  The promise not to dissipate assets in February

2024 was made in bad faith, because Blust and Christo knew they had already emptied Fidelis's coffers.

By the time control of Fidelis's accounts were turned over to the Receiver in March of 2025, there was less than $4,000 dollars left, despite the fact Blust had orchestrated the transfer of more than $50 million from Blust Controlled Law firms to Fidelis from 2021 through May of 2024.[7]  Jones Decl. ¶ 5.

And while Christo didn't make any more transfers out of Fidelis after February 2024 (there was nothing left to transfer from these accounts), Blust and Christo further dissipated and distanced the Fidelis funds from the receivership by deploying the funds transferred to Bush Lake, BDC, Two Square, and Veteris to purchase real property and send funds overseas.  For instance, Bush Lake (which Christo declares is for the benefit of his children[8]), used the money it received from Fidelis in the month after the TRO, towards the purchase of a residential building lot in Florida for $13.5 million in ***April 2024***.  *See* Jones Decl. ¶ 11.

In two other examples, after the TRO in 2024, Christo transferred more than $3.4 million from BDC Group overseas to an entity known as BDCI Holdings (Switzerland and Lichenstein) between May 2024 and September 2024.  *See* Jones Decl. ¶ 22. Additionally, between April 2024 and September 2025, BDC Capital transferred more than $2 million dollars to KRF Capital LLC, owned by Kyle Fox, who appears to be Christo's significant other.  *See* Jones Decl. ¶¶ 23-

---

[7]  Again, it is galling and hard to believe Bush Lake makes the following claim in good faith: "And, of course, the Receiver has no proof, since February 2024, of any transfer of assets or dissipation of assets."  (Dkt. No. 655-1 at 14.)  First, it ignores that Christo and Fidelis had *just* siphoned millions of dollars out of Fidelis accounts and sent it to related entities. Second, as Christo and Bush Lake are well aware millions of dollars were deployed for luxury real estate purchases and overseas wires since February of 2024.

[8]  Of course, the reality is that any ownership by the children was nominal, as Christo indiscriminately moved funds in and out of Bush Lake with complete discretion.

24. The BDC QuickBooks accounting records reflect that $1.535 million of that sum went to KRF Capital with a reference to "Tuscany Villa." Jones Decl. ¶ 23.

### C. Having Drained Fidelis, Christo Had to Pull Funds Back from the Receivership Defendants to Pay Bills including Fidelis's Legal Expenses

Stripping Fidelis of all its assets left it unable to pay expenses during 2024 and 2025. But Christo simply used Bush Lake funds to pay the expenses – which is a concrete example of the common enterprise and interchangeability of Fidelis and these Receivership Defendants. Between February 2024 and December 2024, Bush Lake transferred more than $800,000 from its accounts and recorded these transfers in QuickBooks as "Leasehold Improvements." *See* Jones Decl. ¶ 12. A substantial portion of the transfers were not for "Leasehold Improvements," but used to pay lawyers for Fidelis's Receivership Defendant challenge. *See* Jones Decl. ¶ 12. Bush Lake paid $300,000 for Fidelis's representation.[9] In addition, even more Bush Lake funds ($40,000) were used to pay to fund counsel for former Lit Def/Fidelis employee Michelle Gallagher. *See* Jones Decl. ¶ 13.

## III. DISCUSSION

### A. The Court Possesses Broad Authority to Expand the Receivership to Add These Entities that Are Affiliates, Successors, and Assigns of Receivership Defendants Lit Def and Fidelis and Are Directly Related to the Debt Relief Business and Owned or Controlled by Defendant Jason Blust

Courts possess broad authority to manage and oversee federal equity receiverships. *See*, *e.g.*, *SEC v. Amerindo Inv. Advisors Inc*., 2016 WL 10821985, at *2 (S.D.N.Y. May 20, 2016) ("a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad") (citing *SEC v.*

---

[9] Roughly seven months after the challenge began, Fidelis's counsel indicated they were also representing Bush Lake too.

*Hardy*, 803 F.2d 1034, 1037, 1039 (9th Cir. 1986)).[10]  This broad judicial discretion over equitable receiverships extends to expanding the scope of receiverships.

When deciding whether to add entities to an equity receivership, Courts have wide discretion to consider the realities of what is going on and may disregard corporate separateness and form to give effect to the substance of entities.  Courts are empowered to consider factors such as widespread movement and commingling of funds, intertwined business operations, use of the same business addresses and offices, common officers, directors, and principals, and potential dissipation of assets.  *See, e.g.*, *Elmas Trading Corp.*, 620 F. Supp. at 233-34 (corporate entity disregarded "in the interests of public convenience, fairness, and equity" where key goal of expanding receivership is "ensur[ing] that all available assets are brought within the receivership and may properly be distributed to creditors."); *SEC v. Elliott*, 953 F.2d 1560, 1565 n.1 (11th Cir. 1992) (courts may extend equitable receivership over related entities); *SEC v. MJ Capital Funding, LLC*, 2021 WK 8999595, at *1-*2 (S.D. Fla. Oct. 15, 2021) (adding receivership entities where "Court finds that the Receiver has made a sufficient and proper showing"  and "expansion of the Receivership is necessary to effectively safeguard assets for the benefit of investors in this matter and to guard against potential dissipation…").

In *SEC v. Torchia,* 2016 WL 6212002, at *3 (N.D. Ga. Oct. 25, 2016), the district court expanded a receivership to add entities that it considered to be alter egos of Defendants or "at the very least … substantially funded using the proceeds of the … scheme engaged in by

---

[10] *See also SEC v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) ("[a] district court has 'broad powers and wide discretion to determine relief in an equity receivership'"); *SEC v. Huber*, 702 F.3d 903, 908 (7th Cir. 2012); *Ryan Beck & Co. v. Daly Holdings, Inc.*, 2006 WL 3775964, at *2 (S.D.N.Y. 2006) (citing *Pa. Steel Co. v. New York City Ry. Co.*, 198 F. 721, 737 (2d Cir. 1912)); *Spira v. Nick*, 876 F. Supp. 553, 562 n. 5 (S.D.N.Y. 1995) ("temporary receivership is a creature of equity")

Defendants, including the use of Defendants' personnel, loans from Defendants, transfers of money to and from Defendants...").  *See also CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 WL 1738764, at *2 (S.D. Fla. May 3, 2021) (expanding equity receivership "where requested expansion is necessary to effectively safeguard assets for the benefit of investors ... and to guard against potential dissipation"); *SEC v. Complete Bus. Sols. Grp., Inc.*, 2020 WL 9209279, at *2 (S.D. Fla. Dec. 16, 2020), *aff'd*, No. 23-10228, 2024 WL 4100564 (11th Cir. Sept. 6, 2024) ("the Court finds a clear necessity for expansion [of the receivership] given that tainted funds, which could be the subject of disgorgement, may be found in the entities and properties identified herein"); *SEC v. Faulkner*, 2018 WL 4362729, at *4 (N.D. Tex., Sept. 12, 2018) (explaining that it is "often appropriate to appoint a receiver over an entity that has violated securities law and regulations[,]" and a court "may also exercise its equitable powers over an entity that has not engaged in wrongdoing, but nonetheless (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds") (internal quotations and citations omitted, emphasis in original); *SEC v. Nadel,* 2013 WL 2291871, at *2 (M.D. Fla. May 24, 2013) (noting use of enterprise's proceeds to purchase assets sufficient to be included in Receivership and specific determination of alter ego relationship not necessary) ("The fact that not all of the funding for Quest originated from Valhalla, Viking Oil, or the Moodys, does not change the outcome.  The vast majority of the initial funding in the first four months, 80%, was tainted, and through 2007, 63% was tainted."); *SEC v. Creative Capital Consortium, LLC,* 2009 WL 10664430, at *1 (S.D. Fla. Sept. 21, 2009) (granting receiver's motion to expand receivership over non-parties based on overlapping control persons, common business address, and transfers of funds between entities).

### B.    Bush Lake Trust, BDC, Veteris, and Two Square are Receivership Defendants

#### 1.    Bush Lake Trust, BDC Group, Two Square, and Veteris Capital Fit Squarely within the Definition of Receivership Defendant

The four entities now challenging their designations as Receivership Defendants easily

qualify under the definition in the current PI (which replaced the TRO).  In fact, they do so under

multiple bases.  Under the TRO and PI:

> "Receivership Defendants" means the Corporate Defendants and their
> subsidiaries, affiliates, divisions, successors, and assigns, as well as any other
> business related to the Defendants' debt-relief services and which the Receiver
> has reason to believe is  owned or controlled in whole or in part by any of the
> Defendants such as Atlas Debt Relief LLC and Timberline Financial LLC, and
> includes fictious names under which they do business. "Receivership Defendants"
> also includes Relief Defendants Twist Financial, LLC, Duke Enterprises, LLC,
> Blaise Investments, LLC, the Blust Family Irrevocable Trust through Donald J.
> Holmgren, Trustee, Lit Def Strategies, LLC, and Relialit, LLC ( excluding Relief
> Defendants Daniel Blumkin, Albert Ian Behar, and Jaclyn Blust), and their
> subsidiaries, affiliates, divisions, successors, and assigns, as well as any other
> business related to the Defendants' debt-relief services and which the Receiver has
> reason to believe is owned or controlled in whole or in part by the Relief
> Defendants included in this definition, and includes fictious names under which
> they do business.

Dkt. No. 184 at 8 (Section 9(N)).

Bush Lake, BDC, Two Square, and Veteris are obvious "subsidiaries, affiliates, divisions,

successors, and assigns" of Fidelis and Lit Def.  And they are also undeniably "related" to the

Defendants' debt relief businesses, given their common control under Blust and Christo as well

as the massive flow of funds funneled to them by the Intervenor Law Firms directly tied to the

Strategic debt relief businesses and Lit Def's and Fidelis's services in support thereof.

#### 2.    Bush Lake Trust, BDC Group, Two Square, and Veteris Capital's Arguments Lack Merit

In response to the overwhelming evidence that they constitute Receivership Defendants,

the four newly-identified Receivership Defendants offer little to nothing more in the way of

substantive responses.  Bush Lake presents a contorted and legalistic argument, which ignores reality and common sense.  It claims these entities needed to be successors or assigns to Corporate Defendants – but somehow cannot because Fidelis itself was not named as a Defendant in the instant PI.  Nonsense.  The Court has found that Fidelis is the successor to Lit Def and owned and controlled by Blust.  The fact that after the implementation on the TRO, Christo, and Fidelis secretly moved millions upon millions of Fidelis's proceeds from the debt relief operations at issue to Bush Lake, BDC, Two Square, and Veteris is exactly the type of circumstance involving intentional conduct to dissipate Receivership Estate Assets that warrants adding new Receivership Defendants.  *See* Jones Decl. ¶¶ 6-8, 14 & 20 & Exhibits 1 & 2.

Next, Bush Lake twists the language of the PI (yet again) to contend that since Bush Lake has now been specifically named as a "Defendant" in the case, it cannot somehow also be named as a Receivership Defendant under the PI.  This too is silly – that is neither what the language means, nor what the intent of that provision is.  Moreover, the Court's broad discretion to manage an equitable receivership clearly empowers it to name new Receivership Defendants.  To find otherwise would be absurd.  Third, Bush Lake trots out Fidelis's tired and failed argument nearly word for word, claiming that the PI's definition of Receivership Defendants violates Rule 65(d).  *Compare* Dkt. No. 655-1 at 14-18 *with* Fidelis's Pre-Hearing Memorandum (Dkt. No. 569) and Post-Hearing Brief (Dkt. No. 621).  This argument has not gotten any better over time and continues to rest on faulty foundational assumptions that Fidelis comes to this case as a neutral independent third party "acting in a separate capacity."  Dkt. No. 655-1 at 17.  But, of course, the overwhelming evidence establishes that these entities under Christo's common control were ***not*** acting in a separate capacity, but were affirmatively aiding and abetting Blust and Lit Def and its successor entity Fidelis.

Lastly, Bush Lake claims that this is a dispositive motion that cannot be heard until the District Court decides the motion.  This too disregards reality.  Bush Lake conveniently overlooks that Judge Roemer has authority to hear challenges to the Receiver's determination of newly-identified Receivership Defendants under the existing PI.  All of the parties, including Blust and Lit Def, specifically gave express consent to permit Judge Roemer to determine whether to convert the TRO into a Preliminary Injunction.  That authority permits Judge Roemer to decide this matter.  Indeed, Judge Roemer specifically found: "Fidelis is a successor to Lit Def and is controlled by Blust."  Dkt. No. 646 at 28.  All of the new Receivership Defendants are successors and assigns of Lit Def and its successor Fidelis.

The meager arguments by BDC Group, Veteris, and Two Square fare no better.  Essentially, these entities argue that the Receiver has made "conclusory assertions" regarding these "nonparties," faulting the Receiver for not "alleg[ing] any specifics with regard to any of these nonparty entities that would any one of them is a 'business related to Defendants' debt relief services."  Dkt. No. 659-1 at 4.  To the contrary, the letter determination made clear the basis and analysis supporting the Receiver's determinations.

    3.    <u>The Records Confirm Intermingling of Funds and Massive Transfers from Fidelis to Bush Lake Trust, BDC Group, Two Square, and Veteris Capital</u>

Fidelis's accounting and bank account records supplied by its outside accountant reveal that from 2021 forward, Bush Lake, BDC Group, and Veteris received millions of dollars in transfers directly from Fidelis, were all formed or incorporated after Fidelis's incorporation in early 2021, all operate under the common control of Fidelis, Blust, and Christo, in whole or in part, and all are related to Defendants' debt relief businesses.  In short, all are Receivership Defendants – and it is not a close call.

A quick scan of the Fidelis's two Wells Fargo bank account statements confirms the flurry of asset transfers made in late January and February. *See* Exhibits 1 & 2 to Jones Decl.

***Fidelis's January 2024 Bank Account Statement***



*Fidelis's February 2024 Bank Account Statement*



In short order, after the Court's issuance of the TRO, Fidelis transferred millions out of its bank accounts and into accounts of these affiliates.

    4.    <u>The Bush Lake Trust is a Receivership Defendant</u>

The evidence confirms that Bush Lake qualifies as a Receivership Defendant funded by Fidelis. While Bush Lake is listed as the sole member in Fidelis's corporate filings, in fact, Fidelis's balance sheet lists Bush Lake as an "asset" owned by Fidelis, totaling $13.506 million. Jones Decl. ¶¶ 9-10.

| | |
|---|---|
| 5:59 PM | **Fidelis Legal Support Services LLC** |
| 04/01/25 | **Balance Sheet** |
| Accrual Basis | **As of April 1, 2025** |

| | Apr 1, 25 |
|---|---|
| **ASSETS** | |
|   Current Assets | |
|     Checking/Savings | |
|       WF Advisors Bkg - 2438 | 2,445.01 |
|       WF Chk - 1243 | 1,294.78 |
|       WF Chk - 9094 | 98.80 |
|     Total Checking/Savings | 3,838.59 |
|     Other Current Assets | |
|       Bush Lake Trust | 13,505,681.06 |
|       Veteris | 12,909,000.00 |
|     Total Other Current Assets | 26,414,681.06 |
|   Total Current Assets | 26,418,519.65 |
| **TOTAL ASSETS** | **26,418,519.65** |

Fidelis's accounting treatment of The Bush Lake Trust (and Veteris) as Fidelis's "assets" provides irrebuttable evidence that The Bush Lake Trust (and Veteris) is a subsidiary, affiliate, division, and/or assign of Fidelis and therefore is a Receivership Defendant.

From July 2021 through January 2025, Fidelis transferred more than $16 million to The Bush Lake Trust.  *See* Jones Decl. ¶¶ 7-8.  Of this amount, $13.050 million was transferred to Bush Lake by Fidelis within four weeks of the TRO (between January 17, 2024 and February 12, 2024).  *See* Jones Decl. ¶¶ 7-8.[11]

After receiving the transfers in January and February 2024, Bush Lake used the Fidelis funds to purchase real property.  On February 5, 2024, and April 22, 2024, $13,514,699 was used to purchase a real property lot in Boca Raton.  Jones Decl. ¶ 11.  The deed was filed in Palm Beach County, Florida, on April 26, 2024.  This real property is an Asset belonging to the Receivership Estate, and the trust holding it is a Receivership Defendant.

---

[11] Specifically, Fidelis transferred to Bush Lake Trust:  $100,000 on January 17, 2024; $5.050 million between January 22, 2024 and January 31, 2024; and $8 million on February 12, 2024.

Additionally, as discussed above, it is noteworthy that while Bush Lake is supposedly a trust established for Christo's children, Christo's indiscriminate movement of funds back and forth from Fidelis and Bush Lake accounts – and using Bush Lake to pay for the legal fees of Fidelis, Christo, and a former Lit Def/Fidelis employee – both confirm that these entities were used interchangeably and functioned as one. *Id.*

          5.      <u>BDC Group is a Receivership Defendant.</u>

BDC Group is directly tied to Fidelis and Christo and was used after the TRO to funnel proceeds away from Fidelis. BDC Group is controlled and/or owned by Christo in whole or in part.[12] Fidelis transferred $8,000,000 to BDC Group in the two weeks after the TRO. Jones Decl. ¶ 20. In total, between March 2023 and May 2024, Fidelis transferred funds to BDC Group an amount totaling $17,184,151.74. Jones Decl. ¶¶ 20-21.

BDC Group has wired significant funds overseas. In May through September 2025, BDC sent $4.5 million to BDCI Holdings Group, at banks in Switzerland and Lichenstein. Jones Decl. ¶¶ 22 & 25.

In 2024-25, BDC Group also sent $2.1 million in funds to KRF Capital, which is an entity believed to be owned or controlled by Christo's significant other. In BDC Group's accounting records, the largest portion of these transfers, $1.535 million, is recorded to an account titled "Tuscany Villa." Jones Decl. ¶¶ 23-25.

---

[12] There is an entity based in the United Kingdom, which appears to be directly related to the BDC Group. It is named BDC Global Ltd, and identifies Christo as its Director, Manager, and Person with Significant Control in publicly available records. Also, based on internet research, Christo has attended several conferences or meetings identified with BDC Global. *See*, *e.g.*, https://361firm.com/rsvpsgcc; and https://earthx.org/wp-content/uploads/2024/10/Earthx2024-Event-Guide.pdf. Further, the bank account name for BDC Group specifically lists Cameron Christo in its title, and BDC Group's address is the same address as property owned by Kyle Fox, whom we believe to be Christo's significant other.

      6.     <u>Veteris Capital is a Receivership Defendant.</u>

As discussed above, Fidelis's balance sheet lists Veteris as an "asset" of Fidelis with a value of $12,909,000.  Exhibit 3 to Jones Decl.  The evidence also confirms that Fidelis transferred $11,100,000 to Veteris between February 2023 and December 2023, and Veteris subsequently made numerous transfers to others.  Jones Decl. ¶¶ 16-17.  Veteris's operating agreement reflects that The Bush Lake Trust is the entity's sole member, and Christo is its manager.  Jones Decl. ¶ 18.

      7.     <u>Two Square Enterprises, Inc. is a Receivership Defendant.</u>

Lastly, Two Square is owned and/or controlled by Christo and has been used in connection with the debt settlement businesses.  Jones Decl. ¶ 15.  All told, between December 2022 and May 2024, Fidelis has transferred more than $2.5 million to Two Square.[13]  Jones Decl. ¶ 14.  Christo used Two Square invoices to periodically seek payment from the Intervening Law Firms for purported software support and "consulting."

## IV.    CONCLUSION

Based on the foregoing, the Receiver respectfully requests that the Court deny the motions challenging the Receiver's Determination's that Bush Lake Trust, BDC Group, Two Square, and Veteris are Receivership Defendants.

Dated: April 17, 2025             **MCNAMARA SMITH LLP**

                                By:    */s/ Logan D. Smith*
                                Logan D. Smith  (*Pro Hac Vice*)
                                Alexander D. Wall (*Pro Hac Vice*)

---

[13] Fidelis began transferring funds to Two Square Enterprises on December 7, 2022 with a transfer to $207,000 to Two Square.  Fidelis Legal transferred $664,000 to Two Square on December 28, 2022.  On February 8, 2023 and December 19, 2023, Fidelis Legal transferred $85,000 and $500,000, respectively, to Two Square.  The largest transfer from Fidelis to Two Square occurred on January 23, 2024 with a transfer of $1 million.  On May 7, 2024, Fidelis Legal transferred $100,000 to Two Square.  Jones Decl. ¶ 14.

McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400
Facsimile:  (619) 269-0401
Email:  lsmith@mcnamarallp.com;
awall@mcnamarallp.com

*Attorneys for Court-appointed Receiver,*
*Thomas W. McNamara*