UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

            Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

            Defendants, and

DANIEL BLUMKIN, et al.,

            Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

**MEMORANDUM IN SUPPORT OF THIRD-PARTY MOTION TO INTERVENE FOR PURPOSES OF FILING AN OBJECTION TO RECEIVER'S REPORT AND A MOTION TO APPOINT SPECIAL RECEIVER AND FOR OTHER PURPOSES**

            **Lundergan Legal, LLC**
            Amanda L. Lundergan, Esq.
            Post Office Box 211474
            Royal Palm Beach, FL 33421
            Direct: (561) 779-4126
            Assistant: (561) 629-2643
            Email:  amanda@lunderganlegal.com

            *Attorney for Proposed Intervenors,*
            *Ice Legal, P.A., Thomas Ice and*
            *Ariane Ice*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... iii

DEFINED TERMS .................................................................................................................... iv

INTRODUCTION ....................................................................................................................... 1

    I.    The Parties and Claims in the Third-Party Case ............................................................ 1

    II.    Motion to Intervene ........................................................................................................ 2

        A.    Ice Legal's Objections to the McNamara Fee App. ................................................. 3

        B.    Motion to Appoint Special Receiver with respect to the Ice Legal litigation. .......... 6

        C.    Ice Legal should be permitted to intervene for other purposes. .............................. 7

        D.    The Legal Standard ................................................................................................. 8

    III.    Conclusion .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Fed. Trade Comm'n v. Apex Capital Group, LLC*,
  Case No. 22-55342, 2023 WL 8592870, (9th Cir. Dec. 12, 2023) ............................................. 9

*In re Bank of New York Derivative Litig.*,
  320 F.3d 291 (2d Cir. 2003) ....................................................................................................... 8

*Leslie v. Starbucks Corp.,* No. 22-CV-478 (JLS),
  2022 WL 5434278 (W.D.N.Y. Oct. 7, 2022) ........................................................................... 10

*Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prod, Inc.,*
  725 F.2d 871 (2d Cir. 1984) ....................................................................................................... 9

*U S. Postal Serv. v. Brennan,*
  579 F.2d 188 (2d Cir. 1978) ..................................................................................................... 11

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 662d Cir.1994) .............................................................................................................. 8

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,*
  922 F.2d 92, 97 (2d Cir. 1990) .................................................................................................. 9

**Statutes and Regulations**

28 U.S.C. § 1367(a) ................................................................................................................. 1, 10

28 U.S.C. § 1367(c)(2) .................................................................................................................. 1

28 U.S.C. § 1692 ......................................................................................................................... 10

28 U.S.C. § 754 ........................................................................................................................... 10

**Rules**

Rule 24 (a)(2) Fed. R. Civ. P. ................................................................................................. 8, 11

Rule 24 Fed. R. Civ. P. ................................................................................................................ 9

Rule 24(b)(1)(B) Fed. R. Civ. P. ......................................................................................... 10, 11

## DEFINED TERMS

| | |
|---|---|
| Ice Legal | Ice Legal, P.A. and its two attorneys (the defendants in the Third-Party case) |
| McNamara Fee App | Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2004 (Dkt. 669-1) |
| Third-Party case | *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.) |
| Third-Party Complaint | The Complaint in the Third-Party case. |

# INTRODUCTION

Pursuant to Rules 24(a) and (b) Fed. R. Civ. P., Ice Legal specially appears[1] and seeks to intervene in this matter as of right or, in the alternative, by permission. In support of this motion, Ice Legal states as follows:

## I.  The Parties and Claims in the Third-Party Case

The proposed intervenors are Ice Legal, P.A. and its two attorneys, Thomas Ice and Ariane Ice (collectively, "Ice Legal"). Ice Legal. P.A. is a creditor of the receivership estate. The firm and its two attorneys are defendants in the case of *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.)—a case which the Receiver alleges is sufficiently related to this case as to support this Court's supplemental jurisdiction ("Third-Party case").[2]

---

[1] Ice Legal has objected to the imposition of personal jurisdiction over the defendants in the supplemental case in which McNamara has sued Ice Legal. It expressly preserves this jurisdictional objection here and does not waive it by filing this motion in the same court (but different case). *See*, jurisdictional arguments in the memorandum submitted in support of them in the Third-Party case which are adopted herein, (Memorandum in Support of Joined Rule 12 Motions: Motion for More Definite Statement; Motions to Dismiss for Lack Of Personal Jurisdiction and Insufficient Process, on The Grounds that Claims Must be Arbitrated, and Failure to State a Claim; and Motion to Strike; and in the Alternative, Motion to Stay the Proceedings) ("Rule 12 Memo") (Exhibit 1 to Ice Legal's Objections to Fee Applications filed simultaneously herewith).

[2] In reality, these six claims are not "so related to claims in the [CFPB] action…that they form part of the same case or controversy…" in order to vest this Court with supplemental jurisdiction under 28 U.S.C. § 1367(a). Moreover, the state law claims substantially predominate over the claims made in the CFPB action, such that the Court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2). For the purposes of this motion, Ice Legal assumes *arguendo* that the cases are sufficiently "related" to support McNamara's claim of supplemental jurisdiction.

The Third-Party case (and Ice Legal's status as a creditor) arise from an attorney retainer agreement between Ice Legal, P.A. and over one hundred clients, most of whom were other law firms and attorneys who are not entities in the receivership estate. On behalf of some unknown number of receivership entities, McNamara brought six state law claims against Ice Legal.

In the Third-Party case, McNamara is not claiming that Ice Legal participated in any wrongdoing of the defendants in this case. Nor does he claim that Ice Legal's advice was wrong or caused his Claimants to violate state and federal laws. <u>Instead, the Receiver is claiming that Ice Legal's advice was absolutely correct yet somehow not "sufficient" to make Ice Legal's clients stop violating some unspecified state and federal laws and regulations</u>.

## II.     Motion to Intervene

Ice Legal moves to intervene in this case to object to the Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2025 ("McNamara Fee App"). The proposed objections are attached as Exhibit 1.

Ice Legal also moves to intervene for the purposes of filing a Motion to Appoint Special Receiver. The memorandum that would be filed in support of this proposed motion is attached as Exhibit 2.

Lastly, Ice Legal moves to intervene for other purposes, including potential challenges to the Preliminary Injunction or the appointment of the Receiver, as well as the purpose of receiving E-Filing notices from this case.

While the proposed objections and memorandum (which contain the necessary citations to the record and supporting case law) are attached, Ice Legal will summarize the main points here for the Court's convenience.

## A. Ice Legal's Objections to the McNamara Fee App.

In this CFPB case, McNamara filed a fee application[3] in which he tells the Court about his "Ice Legal Litigation" (McNamara Fee App, pp. 11-12) in terms that are neither balanced nor correct:

Ice Legal objects to McNamara's statements and intended implications as follows:

1. ***McNamara's statement that he attempted to resolve matters through "discussions" before resorting to litigation***. This self-laudatory statement is simply untrue. It paints a falsely positive picture of his pre-suit interactions with Ice Legal and, at the same time, a falsely negative picture of Ice Legal.

    In reality, McNamara's pre-suit interactions with Ice Legal included: 1) an inexplicable decision not to proceed with a pre-suit mediation to which the parties had already agreed; 2) bullying; and 3) an attempt to mislead Ice Legal about his request for documentation (pretending he was complying with his fiduciary duty to evaluate Ice Legal's claim as a creditor, rather than gathering documentation for his case against Ice Legal).[4]

    The one thing that McNamara did <u>not</u> do was to attempt to resolve the matter through "discussions." The parties were in the course of finding mediators and deciding on a date when McNamara's counsel suddenly, and unilaterally announced that his client had "decided that a pre-suit mediation under the current circumstances

---

[3] Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2004 ("McNamara Rpt.").

[4] *See*, Motion to Appoint Special Counsel.

3

will not be fruitful."[5]  Because mediation was needlessly aborted by McNamara, there were never any substantive "discussions" between McNamara and Ice Legal regarding settlement.  No specific demands or offers were ever made.

Prior to that, in the course of planning for mediation, McNamara's counsel stated that his client was not interested in a mediation where Ice Legal would discuss its defenses.  Ice Legal, he said, should just assess its exposure and make an offer.[6]

Accordingly, to say that "the discussions were ultimately not successful" is disingenuous at best, when: 1) no actual settlement "discussions" were ever had; 2) McNamara refused to proceed with pre-suit mediation—where such discussions would have taken place; and 3) McNamara signaled that he wanted no actual discussions, even at mediation.

2. ***McNamara's implication that the retainer agreement was an hourly contract:*** McNamara tells the Court that Ice Legal charged more than $2.5 million dollars "while providing" approximately 60 hours work, without mentioning that the contract, on its face, is not an hourly contract, but a retainer for availability.  Again, Ice Legal objects to this as an attempt to prime the Court against Ice Legal on a key issue in the Third-Party case.

But McNamara's statement also withholds information that the Court should be given the opportunity to consider when permitting him—acting as an arm of the Court—to continue to expend receivership estate resources pursuing the Third-Party

---

[5] Email from Logan Smith to Amanda Lundergan, dated March 11, 2025 (Exhibit 2 to Ice Legal's Objections to the Receiver's Fee Application).

[6] Declaration of Amanda Lundergan, dated May 7, 2025.

case. The expenditure so far in this case is poised to exceed $40,000 even before drafting the Complaint that was filed.[7]

3. ***McNamara's statement that Ice Legal charged their retainer fee to three ("numerous") Receivership Defendants when only two of them are, in fact, Receivership Defendants under the Preliminary Injunction.*** This is simply inaccurate as to the identification of the parties for which McNamara has the power to institute a claim. But it also falsely implies that Ice Legal's contract was primarily with Receivership Defendants when, in fact, they made up less than a third of Ice Legal's clients under the retainer.

4. ***McNamara's implication that MEC Development, LLC ("MEC") is also an entity whose attorney-client relationship with Ice Legal is the subject of the Third-Party case.*** In reality, MEC is not a defendant in this case, much less a Receivership Defendant. Its mention here is puzzling since McNamara has no power to bring a claim on its behalf. But by including one non-Receivership Defendant, McNamara furthers the illusion that most of the Ice Legal clients are now under his control.

The McNamara Fee App, therefore, violates his duty of honesty, full disclosure and respect for the rule of the Court. In one short paragraph, he: 1) mischaracterized his "discussions" with Ice Legal prior to filing a complaint; 2) presented a skewed, partisan

---

[7] The McNamara Fee App is dated April 23, 2025, but includes fees only up to January 31, 2025—which left nearly three months of spending unreported. The fee application before that was filed September 4, 2024—a gap of nearly eight months. It appears that McNamara has not filed a general report with an accounting since January 31, 2024 (not counting several issue-specific reports or discussion connected to his fee applications). The Preliminary Injunction required that he file a report with an accounting within thirty days of the order (Dkt. 184, p. 30) which would be early April of last year. As a creditor, Ice Legal objects to such sparse and belated reporting that keeps creditors in the dark as to what remains in the receivership estate and prevents an accurate, up-to-date assessment of McNamara's spending.

impression of the compensation structure of Ice Legal's retainer which contradicts the words of the retainer agreement; and 3) provided inaccurate information about what entities are bringing the claims against Ice Legal, what entities are part of the receivership estate, and what entities were Ice Legal clients.

Accordingly, Ice Legal asks the Court to strike the portion of the McNamara Fee App discussing the Third-Party claim against Ice Legal or require that it be rewritten to comport with McNamara's duty of honesty and full disclosure.

### B. Motion to Appoint Special Receiver with respect to the Ice Legal litigation.

Ice Legal requests the appointment of a special or "*ad litum*" receiver on the grounds that McNamara has repeatedly failed to comply with the requirements of his office as Receiver in his dealings with Ice Legal and the Third-Party case. Specifically:

- McNamara breached his fiduciary duty to Ice Legal as a creditor by misrepresenting his purpose in seeking documents from Ice Legal. He purposely abused the receiver-creditor relationship (and a purported attorney-client relationship) by using them as a pretext to obtain pre-suit discovery against Ice Legal while keeping Ice Legal in the dark about his intention to bring a lawsuit.

- McNamara attempted to use his fee application[8] in this case as a means of communicating *ex parte* with the same judicial officer(s) who are presiding over the Third-Party case. The information imparted through his fee application was: 1) a one-sided, partisan view of Ice Legal and the Third-Party case that would tend to

---

[8] Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2025 ("McNamara Fee App").

6

prejudice the Court against Ice Legal; 2) a misrepresentation that McNamara engaged in "discussions" to resolve the dispute without litigation; and 3) a derogation of his duty to provide the Court and all parties with an interest in the receivership estate with a fair and impartial assessment of the Ice Legal litigation and McNamara's likelihood of success.

- McNamara unnecessarily breached the confidentiality of numerous settlements by failing to redact the Complaint or file it under seal.

Accordingly, Ice Legal requests that this Court appoint a special receiver to evaluate and conduct the litigation against Ice Legal and to order any further relief that the Court deems necessary and just.

### C. Ice Legal should be permitted to intervene for other purposes.

#### 1. Purposes surrounding the Preliminary Injunction and the necessity for a receiver.

Because its adversary, McNamara, was appointed in <u>this</u> case, Ice Legal has an interest in these proceedings, especially with respect to litigation surrounding the Preliminary Injunction and the necessity for a receiver.

#### 2. The purpose of receiving e-filing notices.

Ice Legal is not a party to this case and does not, in the ordinary course, receive notification of McNamara's filings—and indeed cannot know what is said about Ice Legal without regularly checking the docket and paying for copies.

The Court's clerk has indicated that—despite McNamara's allegation that this case is so related to the Third-Party case that it should supply supplemental jurisdiction for this Court to entertain his six state law claims—there is no mechanism within the e-filing system to enable Ice Legal to receive automatic notice of filings in this underlying case.

7

Accordingly, the Court should grant Ice Legal's request to intervene for the purpose of receiving e-filing notices.

### D. The Legal Standard

#### 3. Ice Legal should be allowed to intervene as a matter of right under Rule 24 (a)(2) Fed. R. Civ. P.

Rule 24(a)(2) Fed. R. Civ. P. provides that the Court "must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To intervene as of right under Rule 24(a)(2), the Second Circuit Court of Appeals has established that a petitioner must:

> (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.

*In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal quotations omitted). Ice Legal meets this standard.

*First*, their motion is timely. In making the determination of timeliness, courts should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *In re Bank of New York Derivative Litig.*, 320 F.3d at 300 (*quoting*, *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994).

McNamara instituted the case against Ice Legal on March 27, 2025 and only completed service on all defendants on April 22, 2025. The catalyst for this motion was the McNamara Fee App which was April 23, 2025. There is no prejudice to existing parties or unusual

8

circumstances militating for or against a finding of timeliness. As discussed above, denial of Ice Legal's motion to intervene will, at a minimum, prejudice its ability to counter any incorrect or inappropriate information about Ice Legal presented to the Judge in this case—which is the same as the Judge in the Third-Party case.

*Second,* Ice Legal has an interest in the action. An "interest" for purposes of Rule 24 Fed. R. Civ. P. must "be direct, substantial, and legally protectable." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir. 1990). It cannot be remote or contingent upon the occurrence of additional events, such as a future judgment. *Id; see also Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prod, Inc.,* 725 F.2d 871, 874 (2d Cir. 1984). Here, as shown in its Objections to the Receiver's Fee Application and the Motion to Appoint Special Receiver, the proceedings in this matter directly affect Ice Legal.

In the recent case of *Fed. Trade Comm'n v. Apex Capital Group, LLC*, Case No. 22-55342, 2023 WL 8592870, at *1 (9th Cir. Dec. 12, 2023)—an appeal from a case in which McNamara was the Receiver—the court concluded in *dicta* that third-party defendants (two Wells Fargo companies) sued by McNamara had standing to intervene in the underlying case which had appointed him as the Receiver. The court found that Wells Fargo's assertion that the Receiver had engaged in an "unlawful pursuit of litigation against it" sufficed to show an injury in fact sufficient to provide the constitutional standing needed to intervene. Ice Legal is making a similar allegation here—that McNamara's litigation against Ice Legal is unlawful for various reasons.

*Third,* the foregoing interests will be impacted by the Court's decisions. They already have been, by virtue of the appointment of McNamara as the Receiver. Moreover, in the Third-Party case, Ice Legal has pointed out that the Preliminary Injunction did not give him the power

9

to institute an arbitration action or bring a voidable transfer claim. If the Receiver should ask the Court in this case to extend his powers to include these, Ice Legal's interest would be impacted by the Court's decision. Likewise, Ice Legal has pointed out in the Third-Party case that McNamara failed to timely file the necessary documents in the relevant district courts in order to gain jurisdiction over Ice Legal under 28 U.S.C. § 754 and 28 U.S.C. § 1692. If the Receiver should ask the Court in this case to reissue the Preliminary Injunction so as to restart the clock on the filing the § 754 notices, the Court's decision would again impact Ice Legal.

***Fourth,*** Ice Legal's interests are not adequately protected by any other parties to the litigation. This Court has held that "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Leslie v. Starbucks Corp.*, No. 22-CV-478 (JLS), 2022 WL 5434278, at *2 (W.D.N.Y. Oct. 7, 2022). Here, Ice Legal's interests as defendants in the Third-Party case bringing state law claims are not aligned with any party to this litigation. Indeed, Ice Legal's interests in this case arise from specific actions of the Receiver with respect to the Third-Party case which only impact Ice Legal. No existing party in this case, therefore, is in a position to protect Ice Legal's interests.

### 4. In any event, the court may permit Ice Legal to intervene under Rule 24(b)(1)(B) Fed. R. Civ. P.

The Court has the discretion to permit Ice Legal to intervene under Rule 24(b)(1)(B) Fed. R. Civ. P. That rule provides that "the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Here, McNamara has told this Court in the Third-Party case that it has supplemental jurisdiction over that case under 28 U.S.C. §1367(a). Thus, McNamara has represented that the case is "so related to claims in the action within such original jurisdiction [i.e. this case] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.

§1367(a). While Ice Legal disagrees with this representation, until this Court rules otherwise, its very jurisdiction over the Third-Party case is premised on the notion that the two cases share common questions of law or fact.

    The Second Circuit Court of Appeals has held:

> Permissive intervention is wholly discretionary with the trial court. The principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' The court also will consider whether the applicant will benefit by intervention. Other relevant factors include the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*U S. Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir. 1978). These factors are the same as those to be considered under the intervention by right analysis discussed above. Accordingly, the Court should permit Ice Legal to intervene.

### III.   Conclusion

    For the foregoing reasons, Ice Legal respectfully requests that the Court grant it the right to intervene in this matter under Rule 24 (a)(2) Fed. R. Civ. P., or alternatively, by permission under Rule 24 (b)(1)(B) and order any further relief that the Court deems necessary and just.

    Because objections to the McNamara Fee App are due today, Ice Legal respectfully requests an extension of time until the Court has had an opportunity to rule on Ice Legal's Motion to Intervene, such that Ice Legal may properly file the objections that are attached hereto.

Dated: May 7, 2025

                                  **Lundergan Legal, LLC**

                                  */s/ Amanda L. Lundergan*

Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*