# EXHIBIT 2

**THIRD-PARTY MOTION TO INTERVENE FOR PURPOSES OF FILING AN OBJECTION TO RECEIVER'S REPORT AND A MOTION TO APPOINT SPECIAL RECEIVER AND FOR OTHER PURPOSES**

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

               Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

               Defendants, and

DANIEL BLUMKIN, et al.,

               Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

**ICE LEGAL'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO APPOINT SPECIAL RECEIVER**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorney for Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

DEFINED TERMS .......................................................................................................... iv

INTRODUCTION ............................................................................................................. 1

    The Parties and the Claims in the Third-Party Case............................................ 1

MOTION TO APPOINT SPECIAL RECEIVER ........................................................... 3

I.    Summary of the Argument........................................................................... 3

II.    Contrary to his fiduciary duties to Ice Legal as a creditor, McNamara attempted a ruse to obtain pre-suit discovery. ............................................. 4

III.    The McNamara Fee App violates his duty of honesty, full disclosure, and respect for the role of the court. ................................................................... 11

IV.    McNamara breached his duty to maintain the confidentiality of the contents of documents in the receivership estate........................................................... 12

V.    McNamara performed little or no diligence before filing the case against Ice Legal. ......................................................................................................... 13

    A.    Before suing Ice Legal, McNamara followed none of the due diligence protocols he followed in other third-party cases he has filed. ............................. 13

    B.    The Third-Party Complaint itself demonstrates a lack of diligence .................... 15

VI.    Conclusion ................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Commodity Futures Trading Commission v. Eustace,*
    2007 WL 1314663 (E.D. Pa. May 3, 2007) ............................................................. 16

*Crites, Inc., v. Prudential Ins. Co. of Am.,*
    322 U.S. 408 (1944) ............................................................................................... 9

*Golden Pacific Bancorp. v. F.D.I.C.,*
    375 F.3d 196 (2004) ............................................................................................... 10

*McIntire v. China MediaExpress Holdings, Inc.,*
    252 F. Supp. 3d 328 (S.D.N.Y. 2017) ................................................................. 11

*Phelan v. Middle States Oil Corp.,*
    154 F.2d 978 (2d Cir. 1946) ................................................................................. 9

*S.E.C. v. Schooler,*
    No. 3:12-CV-2164-GPC-JMA, 2015 WL 1510949 (S.D. Cal. Mar. 4, 2015) .................. 10, 16

**Statutes and Regulations**

28 U.S.C. § 1367(a) .................................................................................................... 1

28 U.S.C. § 1367(c)(2) ............................................................................................... 1

**Other Authorities**

Code of Conduct for United States Judges .................................................................. 10

Code of Conduct of the National Association of Federal Equity Receivers ........................... 9, 10

**DEFINED TERMS**

| | |
|---|---|
| McNamara Fee App | Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2004 (Dkt. 669-1) |
| Third-Party case | *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.) |
| Third-Party Complaint | The Complaint in the Third-Party case. |
| CFPB | Consumer Financial Protection Bureau |
| NAFER Code of Conduct | Code of Conduct of the National Association of Federal Equity Receivers |

# INTRODUCTION

Ice Legal, P.A., Thomas Ice and Ariane Ice (collectively "Ice Legal") specially appear[1] and move this Court to appoint a special receiver on the following grounds:

## The Parties and the Claims in the Third-Party Case

Ice Legal, P.A. is a creditor of the receivership estate.  Additionally, Ice Legal, P.A. and its two attorneys, Thomas Ice and Ariane Ice  are defendants in the case of *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.)—a case which the Receiver alleges is sufficiently related to this case as to support this Court's supplemental jurisdiction (the "Third-Party case").[2]  The Third-Party case (and Ice Legal's status as a creditor) arise from an attorney retainer agreement between Ice Legal, P.A. and over one hundred clients ("Engagement Clients"), some of whom are Receivership Defendants under this

---

[1] Ice Legal has objected to the imposition of personal jurisdiction over the defendants in the supplemental case in which McNamara has sued Ice Legal.  It expressly preserves this jurisdictional objection here and does not waive it by filing this motion in the same court (but different case). *See*, jurisdictional arguments in the memorandum submitted in support of them in the Third-Party case which are adopted herein, (Memorandum in Support of Joined Rule 12 Motions: Motion for More Definite Statement; Motions to Dismiss for Lack Of Personal Jurisdiction and Insufficient Process, on The Grounds that Claims Must be Arbitrated, and Failure to State a Claim; and Motion to Strike; and in the Alternative, Motion to Stay the Proceedings) ("Rule 12 Memo") (Exhibit 1 to Ice Legal's Objections to Fee Applications filed simultaneously herewith).

[2] In reality, these six claims are not "so related to claims in the [CFPB] action…that they form part of the same case or controversy…" in order to vest this Court with supplemental jurisdiction under 28 U.S.C. § 1367(a).  Moreover, the state law claims substantially predominate over the claims made in the CFPB action, such that the Court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2).  For the purposes of this motion, Ice Legal assumes *arguendo* that the cases are sufficiently "related" to support McNamara's claim of supplemental jurisdiction.

1

Court's Preliminary Injunction order.  On behalf of some unknown number of receivership entities, McNamara brought six state law claims against Ice Legal.

In the Third-Party case, McNamara is not claiming that Ice Legal participated in any wrongdoing of the defendants in this case.  Nor does he claim that Ice Legal's advice was wrong or caused his receivership entities to violate state and federal laws.  <u>Instead, the Receiver is claiming that Ice Legal's advice was absolutely correct yet somehow not "sufficient" to make Ice Legal's clients stop violating some unspecified state and federal laws and regulations</u>.

A central issue in the Third-Party case is McNamara's characterization of the retainer agreement as one for hourly recompense, rather than—as expressly stated in the contract—a retainer for the firm's availability that must be paid regardless of whether any work is requested to be performed (*see*, Rule 12 Memo, Exhibit 1 to Ice Legal's Objections to the Receiver's Fee Application).

**MOTION TO APPOINT SPECIAL RECEIVER**

## I.    Summary of the Argument

Ice Legal requests the appointment of a special or "ad litem" receiver on the grounds that McNamara has repeatedly failed to comply with the requirements of his office as Receiver in his dealings with Ice Legal and the Third-Party case.  Specifically:

- McNamara breached his fiduciary duty to Ice Legal as a creditor by misrepresenting his purpose in seeking documents from Ice Legal.   He  purposely abused the receiver-creditor relationship (and a purported attorney-client relationship) by using them as a pretext to obtain pre-suit discovery against Ice Legal while keeping Ice Legal in the dark about his intention to bring a lawsuit.

- McNamara attempted to use his fee application[3] in this case as a means of communicating *ex parte* with the same judicial officer(s) who are presiding over the Third-Party case.  The information imparted through his fee application was: 1) a one-sided, partisan view of Ice Legal and the Third-Party case that would tend to prejudice the Court against Ice Legal; 2) a misrepresentation that McNamara engaged in "discussions" to resolve the dispute without litigation; and 3) a derogation of his duty to provide the Court and all parties with an interest in the receivership estate with a fair and impartial assessment of the Ice Legal litigation and McNamara's likelihood of success.

- McNamara unnecessarily breached the confidentiality of numerous settlements by failing to redact the Complaint or file it under seal.

---

[3] Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2025 ("McNamara Fee App").

## II.    Contrary to his fiduciary duties to Ice Legal as a creditor, McNamara attempted a ruse to obtain pre-suit discovery.

When the payments of Ice Legal's four-year retainer agreement abruptly ended upon the entry of the Temporary Restraining Order and the appointment of McNamara as a temporary receiver, Ice Legal was still owed $625,000.  Ice Legal received no notification from anyone, much less, McNamara that the contract had been suspended or even that the Consumer Financial Protection Bureau ("CFPB") had filed this case.  From Ice Legal's perspective, the payments just stopped and its clients stopped communicating.

After learning about this case from its own investigation (and seeing no imminent resolution), on May 16, 2024, Thomas Ice wrote an email to McNamara requesting information on how "to secure our place on the creditor's list."  The email also asked specifically whether Ice Legal's fees could be paid from the captive insurance policy which other law firms had already claimed to be available to pay their fees.[4]

McNamara did not respond for nearly three months[5]—and then only after his firm began investigating whether he could institute an action against Ice Legal.[6]  Despite McNamara's true intention to obtain documents to support his planned lawsuit, he indicated in a reply email on August 14th that he would need Ice Legal's entire StratFS client file "in order to evaluate [Ice

---

[4] Email from T. Ice to McNamara, dated May 16, 2024 (Exhibit 1).

[5] Ice Legal could find no time entries of McNamara or his staff for reviewing or considering Ice Legal's email.

[6] *See*, time entry of Alexander Wall on August 12, 2024 ("Review documents re: … Ice Legal, …, and begin drafting memorandum re: potential third-party claims.") Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, Invoices (Dkt. 669-4, p. 6).  On the very day of McNamara's email, his staff were "[i]nvestigat[ing] Ice Legal actions…" and "[r]eview[ing] Ice Legal related correspondence in [the e-discovery app] re: third-party claims…" *Id*. at 6-7.

Legal's] claim." He also represented that "[a]fter we have a chance to review the client file, I will revert back regarding the claim and creditor's list."[7]

From: Thomas McNamara
Sent: Wednesday, August 14, 2024 5:36 PM
To: Thomas Ice <tom.ice@icelegal.com>
Cc: Ariane Ice <ariane.ice@icelegal.com>; Jill Jacobs <jjacobs@mcnamarallp.com>
Subject: RE: Unpaid Legal Fees

Mr. Ice,

I am in receipt of your letter and attached invoices. I apologize for the delay in responding.

You indicate Ice Legal assisted Stratfs "to help them comply with consumer-oriented 'state and federal laws and regulations'" and "provided, and have been available to provide, legal advice that would ultimately benefit the consumer." As receiver I now stand in the shoes of StratFS and related entities and therefore am now Ice Legal's client. In order to evaluate your claim, please forward Ice Legal's entire StratFS client file to me at your earliest convenience. If it is convenient, we can provide a link so that you can upload the materials.

After we have a chance to review the client file, I will revert back regarding the claim and creditor's list. Thank you.

Tom

Aside from the representation that he wanted the client file to evaluate Ice Legal's claim as a creditor, he also represented that he was now Ice Legal's (unpaying) client and that such status entitled him to request the file. Nowhere did he indicate his true intention of suing Ice Legal.

Despite the three-month delay in his own response, McNamara emailed again less than two weeks later to follow up on his August 14th request.[8] In the interim, his staff had continued to work on the case against Ice Legal,[9] but McNamara made no mention of this.

---

[7] Email from McNamara to T. Ice, dated August 14, 2024 (Exhibit 1).

[8] Email from McNamara to T. Ice, dated August 27, 2024 (Exhibit 1)

[9] *See*, time entries for Logan Smith ("Continue to conduct research re: claims against Ice Legal with focus on materials in Relativity" 8/21/24; "Conduct research re: legal defenses potentially available to Ice Legal" 8/21/24; "Continue to investigate Ice Legal third-party claim and conduct

Thomas Ice responded on August 30th that he had concerns about McNamara's claim of client status in a proceeding that was outside the scope of the engagement.[10]  He also asserted that the ethics rules would require Ice Legal to bow out of any such attorney-client relationship because it would be adverse to other clients in that same engagement.  He concluded the email by once again referencing his pending request that McNamara evaluate Ice Legal's claim for unpaid fees.

The next communication was an email from a partner in McNamara's law firm, Logan Smith, on September 3rd,[11] which asked again for the client file, this time with a deadline of seven days.  The grounds for the request was still that McNamara stood in the shoes of one of Ice Legal's clients.  Mr. Smith's more aggressive ask was replete with argument and case law, but never addressed the problem mentioned by Ice Legal—turning over documents that were privileged as to other clients that were not part of the receivership estate.  Most importantly, Mr. Smith never mentioned the true purpose of the document request—to try to build a case against Ice Legal.  Indeed, in the interim between the email correspondence, the McNamara firm had continued work on the case against Ice Legal.[12]  In short, Mr. Smith continued the ruse that McNamara had started and sought to obtain pre-suit discovery from Ice Legal under false pretenses.

---

related legal research on client file, ethics, and true retainer" 8/26/24) Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, Invoices (Dkt. 669-4, pp. 12-13)

[10] Email from T. Ice to McNamara, dated August 30, 2024 (Exhibit 1).

[11] Email from Smith to T. Ice, dated September 3, 2024 (Exhibit 1).

[12] *See*, *e.g.*: time entries: "Review update from counsel re: Ice Legal discovery" 8/30/24 by McNamara; "Confer with A. Wall re: Ice Legal hot documents and future steps for potential claim. 8/30/24.

The following day, Thomas Ice responded by email saying that the firm was "puzzled as to why the Receiver would need an attorney to demand something that he represented was needed to 'evaluate [our] claim.'"[13]  Mr. Ice also asked whether the seven-day deadline was a time limit for the firm to provide notice of its claim to the Court:

> Logan,
> We are puzzled as to why the Receiver would need an attorney to demand something that he represented was needed to "evaluate [our] claim."  We appreciate the caselaw that will inform our thoughts on the thorny ethical issues here, but it does not really address our responsibilities to all the former clients in our engagement, some of which appear to have adverse interests.  Please do not let our caution in this regard lend credence to the assumptions that we have a "client file" for Strategic that is separate from that of other clients in the engagement or that we have any materials that the Receiver doesn't already have.
>
> In the meantime, please let us know whether the September 10th date you mention relates to a deadline for our claim for unpaid fees as we believe we should not be precipitous in our resolution of the ethical issues.
> Thanks,
> -Tom

Neither Mr. Smith nor McNamara answered this question about a claims deadline or the previous questions about how to secure a place on the creditor's list or how to make a claim against the captive insurance policy.  Nor did anyone respond when Ariane Ice emailed Mr. Smith on September 18, 2024 asking again for clarification on the seven-day deadline.  She also asked for a proof of claim form (drafted by McNamara back in June[14]) and for information as to how to get Ice Legal's claim on record:

---

[13] Email from T. Ice to Mr. Smith, dated September 4, 2024 (Exhibit 1)

[14] Receiver's Second Interim Fee Application Invoices (Dkt 432-3, at p. 17).

**From:** Ariane Ice <ariane.ice@icelegal.com>
**Date:** September 18, 2024 at 5:56:20 PM EDT
**To:** Thomas Ice <tom.ice@icelegal.com>
**Cc:** Logan Smith <lsmith@mcnamarallp.com>, Thomas McNamara
<tmcnamara@mcnamarallp.com>, Alexander Wall <awall@mcnamarallp.com>, Jill Jacobs
<jjacobs@mcnamarallp.com>
**Subject:** Re: Client File

Hi Logan,
Tom Ice has asked me to follow-up with you as he never heard back after seeking clarification as
to the 9/10 deadline date you mentioned in your email. Also we see that a proof of claim form was
drafted by you and Tom McNamara back in June. Was there any reason that was not provided to Ice
Legal, or that some other process would be requested for us to get our claim on record? If you could
please forward the proof of claim form over to us we would greatly appreciate it.
Thanks,
Ariane Ice

Rather than respond to these questions about the process, the next communication from

McNamara's office was an email making a demand for "millions of dollars"[15] and attaching a

draft complaint that alluded to damages that could easily exceed 100 million dollars.

Importantly, throughout all of McNamara's correspondence up to that point—which repeatedly

claimed that he needed Ice Legal's files for evaluating its claim as a creditor (or because

McNamara was allegedly Ice Legal's client)—this was the first notice to Ice Legal that

McNamara intended to bring a claim against Ice Legal.

To summarize, McNamara (personally or through his attorney) communicated with Ice

Legal three times over the course of nearly three weeks about documents he wanted from Ice

Legal—all while trying to build his case against Ice Legal.  Not only did he keep his true

intentions secret, but he also actively employed a ruse in an obvious effort to obtain pre-suit

---

[15] Email from Mr. Smith to T. Ice and A. Ice, dated October 16, 2024 (Exhibit 2).

discovery from a party he intended to sue.  Specifically he claimed to be entitled to them as Ice Legal's client—and worse, <u>that he needed them to evaluate Ice Legal's claim as a creditor</u>.

The use of subterfuge to obtain documents from a party that are relevant to litigation he was planning to bring against them would raise the eyebrows of the Court even if McNamara was acting solely in his capacity as an attorney. *See*, Rule 4.1 Truthfulness in Statements to Others; Model Rules of Professional Conduct. ("Model Rules"); Rule 8.4 (c) Model Rules ("It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").  But in his role as a Federal Equity Receiver, McNamara must be held to the much higher standard of truthfulness and fair dealing that is required of a fiduciary:

> A receiver, as "an officer or arm of the court," is a trustee with the highest kind of fiduciary obligations. He owes a duty of strict impartiality, of "undivided loyalty," to all persons interested in the receivership estate… He is bound to act fairly and openly with respect to every aspect of the proceedings before the court. The court, as well as all the interested parties, have the right to expect that all its officers, including the receiver, will not fail to reveal any pertinent information or use their official position for their own profit or to further the interests of themselves or any associates.

*Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946) (cleaned up) (*citing*, *Crites, Inc., v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 414 (1944).

Canon I of the Code of Conduct of the National Association of Federal Equity Receivers ("NAFER Code of Conduct")[16] requires receivers to uphold the integrity and fairness of the receivership process.  More specifically, it explains that receivers "owe their primary duty to the

---

[16] https://www.nafer.org/wp-content/uploads/2022/04/NAFER-Code-of-Conduct.pdf.  One of NAFER's functions is to "[d]evelop  a set of 'best practices' and ethical standards for equity receivers" (https://www.nafer.org/web-guide/)/ McNamara is a member of NAFER (https://regulatoryresolutions.com/team/thomas-w-mcnamara/) and that membership was among the qualifications touted by McNamara in his efforts to have the CFPB recommend him for appointment as the Receiver in this case. (Letter from McNamara to CFPB attorneys, dated November 16, 2023 (Dkt. 4-1, p. 5)).

court that appointed them and should act at all times consistent with the principle of being an officer of the court":

> This includes obligations of <u>honesty, full disclosure, and respect for the role of the court.</u> Receivers should always observe high standards of conduct that will preserve the integrity, dignity, and independence of the appointing court and judicial system

NAFER Code of Conduct, Canon 1 A (emphasis added). Because an equity receiver is an arm of the court, it is not surprising that the NAFER Code of Conduct tracks many of the principles in the Code of Conduct for United States Judges ("CJC"). *See*, *S.E.C. v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2015 WL 1510949, at *2-3 (S.D. Cal. Mar. 4, 2015) (discussing the interplay between a receiver's standards of conduct and those in the judicial canons). The Judicial Canons require the avoidance of impropriety and the appearance of impropriety in all activities. Canon 2, CJC.

Thus, as an "agent of the court"—whose actions reflect upon this Court—McNamara owes a duty of honesty and full disclosure to all parties with an interest in the receivership estate. This would specifically include the estate's creditors. *See Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2004). McNamara's attempt to obtain pre-suit discovery from a creditor under the pretext of "evaluating" that creditor's claim is a blatant abuse of his relationship as a fiduciary to creditors.

This overreach to obtain pre-suit discovery is particularly egregious given that the retainer agreement at the heart of the Third-Party claim contains an arbitration clause[17] and that clause specifically prohibits discovery.[18] *See McIntire v. China MediaExpress Holdings, Inc.*,

---

[17] *See*, Rule 12 Memo, Exhibit 1 to Ice Legal's Objections to the Receiver's Fee Application.

[18] "No discovery will be permitted under any circumstances, and the panel will use its best efforts to conclude any arbitration proceeding and issue an award within 180 days of the panel being named." *See*, Exhibit A of Third-Party Complaint (Dkt. 1-1).

252 F. Supp. 3d 328 (S.D.N.Y. 2017) (holding that special receiver failed to show extraordinary circumstances permitting pre-arbitration discovery; receiver has no greater powers of pre-suit discovery than entity in whose shoes he stands).

### III.    The McNamara Fee App violates his duty of honesty, full disclosure, and respect for the role of the court.

The McNamara Fee App contains a description of the "Ice Legal Litigation" that does not comport with the honesty and full disclosure requirements of the ethical standards that govern receivers.  McNamara's misrepresentations and mischaracterizations in the fee application are discussed in more detail in Ice Legal's Objections to the Receiver's Fee Application (filed simultaneously herewith).  To summarize:

- McNamara mischaracterized his dealings with Ice Legal prior to filing a complaint, making it appear that Ice Legal refused pre-suit discussions, when in fact, McNamara unilaterally derailed the parties' agreement to mediate the claims.

- McNamara presented a false impression of the compensation structure of Ice Legal's retainer agreement—or at least failed to mention, as Ice Legal posits (and the contract itself states), that compensation under the agreement was not, as implied by McNamara, on an hourly basis.

- McNamara provided inaccurate information about what entities are bringing the claims against Ice Legal, what entities are part of the receivership estate and what entities were Ice Legal clients.

By presenting these inaccurate and partisan descriptions of the Ice Legal litigation, at a minimum, McNamara has failed his duty as an officer of the Court to avoid what are essentially

11

"*ex parte*" communications that could sway the Court's opinion against Ice Legal—or at least to avoid the appearance of doing so.

## IV.    McNamara breached his duty to maintain the confidentiality of the contents of documents in the receivership estate.

In his publicly filed Third-Party Complaint, McNamara revealed the dollar amounts of multiple confidential settlements, without redacting or filing the Complaint under seal.  Each of the settlements contained a confidentiality clause of which the following is an example:

> 19.    Confidentiality.  The Parties agree to keep this Agreement confidential and not disclose the contents hereof, particularly the settlement amount and terms, except to the extent required by law (including, but not limited to tax reporting) or court order or to enforce this Agreement or defend any claim made on account of this Agreement.

By unnecessarily revealing the settlement amounts (Third-Party Complaint ¶¶31 and 34, *see also*, ¶¶25 and 37), the Receiver exposed the receivership estate to liability for breaching contracts with Ice Legal's former consumer clients and for interfering with the contractual rights of all of the other parties to those settlements who are not part of the receivership estate.

Canon IV of the NAFER Code of Conduct states that "[a] receiver should never disclose confidential information received in the course of official duties, except as required in the performance of those duties. A receiver should ensure that personal and financial information is redacted from all documents and information filed with the court or posted on the receiver's website."

Here, McNamara (and his counsel and local counsel) have refused to take any steps to protect the confidentiality of these settlements, despite having this brought to their attention by Ice Legal.

## V.    McNamara performed little or no diligence before filing the case against Ice Legal.

### A.  Before suing Ice Legal, McNamara followed none of the due diligence protocols he followed in other third-party cases he has filed.

In 2014, as a receiver in *Consumer Financial Protection Bureau v. Moseley, et al.*, 14-00789-CV-W-DW (W.D. Mo.), McNamara brought a malpractice claim against the law firm of Katten Muchin Rosenman, LLP on behalf of several receivership entities (the "*Katten* case"). Before doing so, he hired an expert to assess the potential malpractice claim.  That expert had experience with the relevant statutes that provided the regulatory framework under which the claim would be made.[19]  He did not do so before making demands on Ice Legal and did not mention to the Court in his fee application that he did so before actually filing suit against Ice Legal.

In the *Katten* case, McNamara had months of discussions with the Katten firm before pre-suit mediation, and more during such mediation, in an attempt to resolve the case without litigation.[20]  Here, McNamara had no substantive settlement discussions, refused to proceed with pre-suit mediation that was already scheduled, and had stated through his counsel that, in any event, he would not allow mediation to include a dialogue of Ice Legal's defenses.[21]

In the *Katten* case, McNamara was concerned about the ramifications that bringing an action would have on the receivership estate.  As a result, he "wanted to be respectful to [the presiding judge] and make sure he was comfortable with [McNamara] proceeding" with the case

---

[19] Deposition of Thomas McNamara in the case of *McNamara, as Court-Appointed Receiver for SSM Group, LLC, et al. v. Katten Muchin Rosenman, LLP*, Case No. 4:16-cv-01203-SRB (W.D. Mo.) (Dkt. 150-28) ("McNamara Depo"), pp. 128-129.

[20] *Id*. at 80-181.

[21] *See*, Ice Legal's Objections to Receiver's Fee Application, filed simultaneously herewith.

because he was "putting receivership estate assets at risk."[22]  As a result, he filed, under seal, a draft complaint with the court so the presiding judge could be "clear about" what he was planning to do and "become focused."[23]  Here, apparently unconcerned with being respectful of this Court's comfort, clarity or focus, McNamara did not file his Third-Party complaint under seal prior to filing suit.

When serving as a receiver in *Federal Trade Commission v. Apex Capital Group, LLC*, et al., Case No. 2:18-cv-09573-JFW (JPRx) (C.D. Cal), McNamara brought a third-party action against Wells Fargo.[24]  McNamara recognized that "all litigation is uncertain" and that the case would be "hard-fought, expensive, and long" such that the "cost and risk of pursuing litigation on an hourly fee basis would be prohibitive." As a result, McNamara asked the court for permission to file the case[25] and to hire a contingent-fee counsel.[26]  Here, McNamara did not ask the Court's permission to bring a case against Ice Legal and apparently decided without input from the Court that having his own firm charge the estate on an hourly fee basis would not be cost prohibitive.

While Ice Legal may not have the resources of the Katten firm or Wells Fargo, it should receive no less due diligence and no fewer settlement discussions (at mediation or otherwise) before a receiver files a costly and reputation-damaging suit against it.  The creditors (including

---

[22] McNamara Depo, at 164-165.

[23] *Id*. at 165.

[24] *Thomas W. McNamara, as the Court-Appointed Receiver for Triangle Media Corporation, et al. v. Wells Fargo & Company*, Case No. 3:21-cv-01245-LAB-LL (S.D. Cal)

[25] *Federal Trade Commission v. Apex Capital Group, LLC*, et al., Case No. 2:18-cv-09573-JFW (JPRx) (C.D. Cal) Order dated, March 10, 2022 (Dkt 238, p. 2).

[26] *Federal Trade Commission v. Apex Capital Group, LLC*, et al., Case No. 2:18-cv-09573-JFW (JPRx) Memorandum of Points and Authorities in Support of Receiver's Motion for Authorization to Engage Contingent Fee Counsel, March 10, 2022 (Dkt 144-1, p. 2).

Ice Legal) also are entitled to McNamara's diligence before resources of the receivership estate—whatever they may be at this point—are precipitously spent on unvetted litigation.

### B. The Third-Party Complaint itself demonstrates a lack of diligence

The Third-Party Complaint against Ice Legal is awash with signs of hurried indifference to accuracy. McNamara even failed to consistently identify which of his Receivership Entities are bringing claims.[27] He incorrectly alleged that the domiciles of the two attorney defendants were in Florida, even though an internet search of a few seconds would establish that they are domiciled in New Hampshire. Indeed, he served the attorney defendants in New Hampshire but left his mistaken domicile allegations as they were. And as mentioned above, he carelessly revealed the amounts of settlement agreements (and has done nothing to correct that dereliction of duty).

\* \* \*

Ice Legal submits that the combination of these factors—the refusal to attend an agreed pre-suit mediation, the attempted ruse to obtain pre-suit discovery, the less-than-full disclosure about Ice Legal and the Ice Legal litigation in his fee application, the purposeful revelation of confidential information, the unusually abbreviated due diligence before hastily filing the Third-Party Complaint, and the inaccuracies and unintelligibility of that Third-Party Complaint—leads inexorably to the conclusion that there is something amiss with McNamara's execution of his fiduciary duties as Receiver, at least with respect to Ice Legal. McNamara has demonstrated an inability or unwillingness to appropriately handle the inherent conflict between treating Ice Legal

---

[27] *See*, Rule 12 Memo, Exhibit 1 to Ice Legal's Objections to the Receiver's Fee Application filed simultaneously herewith—specifically that portion in support of the Motion for More Definite Statement.

as a creditor of the receivership estate and Ice Legal as a target of his third-party claim objectives.

The appointment of a "special receiver" or a "receiver *ad litem*" (one whose sole responsibility would be to independently evaluate and manage the Ice Legal litigation) would resolve this problem. *See, e.g. Commodity Futures Trading Commission v. Eustace*, 2007 WL 1314663 at *11-13 (E.D. Pa. May 3, 2007) (appointing a receiver *ad litum* to oversee a single suit because of the receiver's possible conflict). Appointing a special receiver, rather than removing the receiver, also avoids a typical concern of the courts—the costly replacement of a receiver with "institutional knowledge" associated with administering an estate. *See*, *S.E.C. v. Schooler*, 2015 WL 1510949, at *7 (S.D. Cal. Mar. 4, 2015). Additionally, the very fact that McNamara has done little or no due diligence in the Ice Legal litigation and has engaged in no substantive settlement negotiations with Ice Legal means that it will not be costly for a special receiver to step in at this stage of the Third-Party case.

## VI.    Conclusion

Accordingly, Ice Legal requests that this Court appoint a special receiver to evaluate and conduct the litigation against Ice Legal and to order any further relief that the Court deems necessary and just.

Dated: May 7, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

17

# EXHIBIT 1

**ICE LEGAL'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO APPOINT SPECIAL RECEIVER**

**From:** Ariane Ice <ariane.ice@icelegal.com>
**Date:** September 18, 2024 at 5:56:20 PM EDT
**To:** Thomas Ice <tom.ice@icelegal.com>
**Cc:** Logan Smith <lsmith@mcnamarallp.com>, Thomas McNamara <tmcnamara@mcnamarallp.com>, Alexander Wall <awall@mcnamarallp.com>, Jill Jacobs <jjacobs@mcnamarallp.com>
**Subject: Re: Client File**

Hi Logan,
Tom Ice has asked me to follow-up with you as he never heard back after seeking clarification as to the 9/10 deadline date you mentioned in your email. Also we see that a proof of claim form was drafted by you and Tom McNamara back in June. Was there any reason that was not provided to Ice Legal, or that some other process would be requested for us to get our claim on record? If you could please forward the proof of claim form over to us we would greatly appreciate it.
Thanks,
Ariane Ice

On Sep 4, 2024, at 8:53 AM, Thomas Ice <tom.ice@icelegal.com> wrote:

Logan,
We are puzzled as to why the Receiver would need an attorney to demand something that he represented was needed to "evaluate [our] claim." We appreciate the caselaw that will inform our thoughts on the thorny ethical issues here, but it does not really address our responsibilities to all the former clients in our engagement, some of which appear to have adverse interests. Please do not let our caution in this regard lend credence to the assumptions that we have a "client file" for Strategic that is separate from that of other clients in the engagement or that we have any materials that the Receiver doesn't already have.

In the meantime, please let us know whether the September 10th date you mention relates to a deadline for our claim for unpaid fees as we believe we should not be precipitous in our resolution of the ethical issues.
Thanks,
-Tom

**From:** Logan Smith <lsmith@mcnamarallp.com>
**Sent:** Tuesday, September 3, 2024 8:07 PM
**To:** Thomas Ice <tom.ice@icelegal.com>; Ariane Ice <ariane.ice@icelegal.com>; Thomas McNamara <tmcnamara@mcnamarallp.com>; Alexander Wall <awall@mcnamarallp.com>; Jill Jacobs <jjacobs@mcnamarallp.com>
**Subject:** Client File

Hello Tom,

I represent the Receiver Thomas McNamara. He forwarded me your below email.

Please provide Strategic's entire client file by September 10th. Under established case law, the client file of Strategic belongs to the Receiver, and we do not to believe there are any valid grounds to refuse to provide it to the Receiver. The nature of any attorney-client relationship going forward is not at issue. Also, a client file created through a joint representation belongs to and is accessible to all of the clients participating in the joint representation.

As support for the Receiver's position, I provide the below information. The Receiver stands in the shoes of the Receivership Entities and thus owns all legal privileges associated with Ice Legal's representation of Strategic. *See United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990) ("Prior to the instant action, the corporation was placed in receivership. Because the privilege was held by the corporation, any right to assert the attorney-client privilege on behalf of the corporation passed when the receiver of [the corporation] and its affiliates and subsidiaries, was appointed by the court."). *See also S.E.C. v. Bravata*, No. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011) ("The appointing order provides the Receiver with broad authority to act on behalf of the receivership entities. That authority includes the right to waive the attorney-client privilege, if the Receiver in his judgment deems that course prudent."); *United States v. Shapiro*, No. 06 CR. 357KMWFM, 2007 WL 2914218, at *5 (S.D.N.Y. Oct. 1, 2007) (collecting cases); *SEC v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 430-31 (M.D.N.C. 2001) (SEC receiver assumed corporation's privilege); *CFTC v. Standard Forex, Inc.*, 882 F. Supp. 40, 44-45 (E.D.N.Y. 1995) (CFTC receiver assumed corporation's privilege); *Odmark v. Westside Bancorporation, Inc.*, 636 F. Supp. 552, 554 (W.D. Wash. 1986) (FSLIC as receiver assumed corporation's privilege).

The seminal case is a U.S. Supreme Court case involving a bankruptcy trustee, *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985). In that case, a bankruptcy trustee subpoenaed the corporation's previous counsel. *Id.* at 343. The former attorney refused to comply, asserting

privilege.  *See id.*  The Supreme Court rejected this assertion, reasoning that because the attorney-client privilege generally is controlled by management of a corporation, "the actor whose duties most closely resemble those of management should control the privilege in bankruptcy...."  *Id.* at 351-52.  Noting that the trustee had the authority to investigate financial matters of the corporation, to sue officers, directors and others in order to recover any improper transfers, to use or sell corporate property, and to otherwise oversee operations of the company, the Court found him to be the actor most analogous to management and therefore held that he held the privilege, even as to information obtained prior to his appointment.  *Id.* at 352.  Like a bankruptcy trustee, a receiver can be similarly charged with overseeing operations, taking control of its books and otherwise controlling the corporation.  *See Standard Forex, Inc.*, 882 F. Supp. at 43-44 (finding that a similar grant of powers to a receiver established that the receiver assumed a corporation's privilege).

Best Regards,
Logan


Logan Smith
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Main:   619-269-0400
lsmith@mcnamarallp.com
http://mcnamarallp.com/

DISCLAIMER:  This e-mail message is intended only for the personal use of the recipient(s) named above.  This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product.  If you are not an intended recipient, you may not review, copy, or distribute this message.  If you have received this communication in error, please notify us immediately by e-mail and delete the original message.


Begin forwarded message:

> **From:** Thomas Ice <tom.ice@icelegal.com>
> **Date:** August 30, 2024 at 4:20:59 AM PDT
> **To:** Thomas McNamara <tmcnamara@mcnamarallp.com>
> **Cc:** Ariane Ice <ariane.ice@icelegal.com>, Jill Jacobs <jjacobs@mcnamarallp.com>
> **Subject: Re: Unpaid Legal Fees**


**EXTERNAL**

Tom,

We apologize for the delay.  We've been scrambling to meet some appellate deadlines.

We do have some concerns about the assertion of client status in connection with a proceeding that is, not only outside the scope of

3

our engagement, but adverse to other clients in that same engagement. It would appear that the ethics rules would require Ice Legal to bow out of any such relationship should it arise.

Having said that, we hope that such a relationship (and any information not already at your disposal) is unnecessary to evaluate the claim for unpaid fees.

Please let us know,
-Tom

**Thomas Erskine Ice**
Attorney
6586 Hypoluxo Road, Suite 350
Lake Worth,  FL 33467
561.729.0530
1.855.442.3529
www.icelegal.com
www.legalyou.com

Ice Legal, P.A. | LegalYou

**NOTICE REGARDING DESIGNATED EMAIL ADDRESS FOR SERVICE**

The email address from which this email was sent is for correspondence only.  It has not been designated for service of documents and pleadings and any attempted service to this address will be considered a nullity.  The designated primary and secondary email addresses for service to Ice Legal, P.A. are as follows:
 service@icelegal.com     ●     service1@icelegal.com     ●     service2@icelegal.com

**CONFIDENTIALITY NOTICE**

The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank.

On Aug 27, 2024, at 3:07 PM, Thomas McNamara <tmcnamara@mcnamarallp.com> wrote:

Mr. Ice,

4

Following up on my request of August 14.  Thank you.


Thomas W. McNamara
McNamara Smith LLP
655 W. Broadway
Suite 900
San Diego, CA 92101
General Line: 619-269-0400
Direct: 619-269-0499
tmcnamara@mcnamarallp.com
https://mcnamarallp.com

---

**From:** Thomas McNamara
**Sent:** Wednesday, August 14, 2024 5:36 PM
**To:** Thomas Ice <tom.ice@icelegal.com>
**Cc:** Ariane Ice <ariane.ice@icelegal.com>; Jill Jacobs
<jjacobs@mcnamarallp.com>
**Subject:** RE: Unpaid Legal Fees

Mr. Ice,

I am in receipt of your letter and attached invoices.  I
apologize for the delay in responding.

You indicate Ice Legal assisted Stratfs "to help them
comply with consumer-oriented 'state and federal
laws and regulations'" and "provided, and have been
available to provide, legal advice that would
ultimately benefit the consumer."  As receiver I now
stand in the shoes of StratFS and related entities and
therefore am now Ice Legal's client.  In order to
evaluate your claim, please forward Ice Legal's entire
StratFS client file to me at your earliest
convenience.  If it is convenient, we can provide a
link so that you can upload the materials.

After we have a chance to review the client file, I will
revert back regarding the claim and creditor's
list.  Thank you.

Tom

Thomas W. McNamara
McNamara Smith LLP
655 W. Broadway
Suite 900
San Diego, CA 92101
General Line: 619-269-0400
Direct: 619-269-0499

5

tmcnamara@mcnamarallp.com
https://mcnamarallp.com

---

**From:** Thomas Ice <tom.ice@icelegal.com>
**Sent:** Thursday, May 16, 2024 9:19 AM
**To:** Thomas McNamara
<tmcnamara@mcnamarallp.com>
**Cc:** Ariane Ice <ariane.ice@icelegal.com>
**Subject:** Unpaid Legal Fees

**EXTERNAL**

Dear Mr. McNamara,

Attached are our unpaid invoices to, and retainer agreement with, many of the same entities that are defendants in the CFPB v. StratFS, LLC litigation for which you are the Receiver.

As you may know, on behalf of consumers, our firm spearheaded far-ranging, multistate litigation against these entities—an intensive effort that we believe brought the attention of the CFPB and others to the practices that are being challenged in the current action.  Indeed, by all appearances, much of the information we uncovered is being used by the Plaintiffs, at least as a starting point for their investigations.  During our litigation, the Defendants changed some practices about which our clients complained. We successfully arrived at substantial settlements for each of our consumer clients.

After these settlements, we were engaged by the Defendants in a multiyear retainer agreement (2021-2024) to directly do what our consumer litigation had indirectly done—help them comply with consumer-oriented "state and federal laws and regulations."  This was explicit under the "Scope of Engagement" Attachment B of the engagement letter.  Under this agreement, we provided, and have been available to provide, legal advice that would ultimately benefit the consumer.  We have not participated in the defense of the CFPB litigation.

Currently, because the Defendants have missed their first two 2024 payments, we have become creditors.  Due to the nature of our work, we ask for the prioritization of the payment of this and the remainder of the 2024 fees, either through the captive insurance policy (GRA300202100845) or the receivership estate.

Please let us know if there is any additional information we can provide to effectuate this or to secure our place on the creditor's list.

Thanks,
-Tom

**Thomas Erskine Ice**
Attorney
The firm's attorneys are licensed in multiple states.
Florida Mailing Address: 6586 Hypoluxo Road, Suite 350, Lake Worth,  FL 33467
New Hampshire Mailing Address: 20 Portsmouth Ave. Suite 1, No. 225, Stratham, NH 03885
561.729.0530 (FL) 603.242.1503 (NH)
www.icelegal.com

<image001.png>

**CONFIDENTIALITY NOTICE**

The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank.

# EXHIBIT 2

**ICE LEGAL'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO APPOINT SPECIAL RECEIVER**

| | |
|---|---|
| **From:** | Logan Smith <lsmith@mcnamarallp.com> |
| **Sent:** | Wednesday, October 16, 2024 1:42 PM |
| **To:** | Thomas Ice; Ariane Ice |
| **Cc:** | Thomas McNamara; Alexander Wall; Jill Jacobs |
| **Subject:** | Privileged and Confidential Settlement Communication Pursuant to Fed. R. Evid. 408 -- Not Admissible for Any Purpose |
| **Attachments:** | DRAFT 10162024 McNamara v. Ice Legal Complaint  -- Privileged and Confidential -- For Settlement Purposes Only.pdf |

Dear Mr. and Mrs. Ice:

The Receiver and his team have now reviewed Ice Legal's relationship with several Strategic entities now in receivership.  We have considered your request that two 2024 Ice Legal invoices be paid on a priority basis over all other creditors (including consumers who were allegedly victimized by Strategic).  During this review, we have also looked into the Receiver's affirmative claims against Ice Legal for, among other things, professional negligence, breach of fiduciary duty, and fraudulent transfer.  We have been able to review the Strategic entities' own business records, which include Ice Legal's invoices and time records.  Based on that investigation, the Receiver intends to bring a lawsuit against Ice Legal, and consistent with that, the Receiver is denying Ice Legal's request to be paid any further amounts.

Please find attached a draft copy of the Receiver's Complaint with exhibits.  Please bear in mind that the Complaint is in draft form, and thus it is subject to change and revision.  (Also, please note that certain information in the exhibits is likely to be redacted but is provided to Ice Legal in its unredacted form).  The draft Complaint identifies the claims the Receiver anticipates bringing and includes the allegations supporting such claims.  In sum, there are many legal theories that would entitle the Receivership Estate to recover millions of dollars in damages from Ice Legal.  As detailed in the allegations of the draft Complaint, among other things, Ice Legal: 1) breached its fiduciary duties owed to the Strategic entities by conduct including charging unconscionable fees of $2.625 million dollars as a "true retainer"; 2) provided deficient or non-existent legal services for Strategic entities between 2021 and 2024; 3) knew that the amounts it received were illegal proceeds; 4) worked less than 65 hours in total between 2021 and 2024, which equates to charging more than $40,000 per hour (based on the $500 per hour rate identified in the Engagement Agreement); and 5) performed no work after 2021.

We have not had access to the client file, since Ice Legal has not produced a copy of the client file to the Receiver, despite requests to do so.  While Ice Legal claims there may be a conflict in producing the file to the Receiver, we are unaware of legal support for that position.  The client file belongs to the clients, and we ask again for a copy of the client file to be preserved and produced to us as soon as possible.

Please confirm your receipt of this email and the draft Complaint.  Also, can you please let us know by ***October 31st*** if you wish to engage in settlement discussions before the Receiver files his lawsuit?  If so, we can discuss next steps with you and/or your counsel and would temporarily defer filing a lawsuit while such discussions are ongoing.  If we do not hear from you by October 31st or you indicate you are not interested in having pre-filing settlement discussions, we will proceed to finalize and file our lawsuit in November.

Thank You,
Logan

***N.B.**: This communication is a privileged and confidential settlement communication, pursuant to Fed. R. Evid. 408 and all applicable privileges.  It is not admissible for any purpose.*

Logan Smith
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Main:   619-269-0400
lsmith@mcnamarallp.com
http://mcnamarallp.com/

DISCLAIMER:  This e-mail message is intended only for the personal use of the recipient(s) named above.  This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product.  If you are not an intended recipient, you may not review, copy, or distribute this message.  If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

                         Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

                         Defendants, and

DANIEL BLUMKIN, et al.,

                         Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

**DECLARATION OF PROPOSED INTERVENOR, ARIANE ICE**

I, Ariane Ice, state as follows:

1.      I submit this declaration in support of the Motion (and Memorandum in Support of the Motion) to Appoint a Special Receiver and the Objections to the Receiver's Fee Application.

2.      The document referenced as Exhibit 1 to the Memorandum in Support of the Motion to Appoint Special Receiver is a true and correct copy of the email chain containing all the correspondence between McNamara (or his counsel) and Ice Legal prior to the Receiver's demand email of October 16, 2024.

3.      The document referenced as Exhibit 2 to the Memorandum in Support of the Motion to Appoint Special Receiver, is a true and correct copy of the email received from Logan

Smith, dated October 16, 2024 to which a draft complaint was attached.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the above statements are true and correct.

Executed on May 7, 2025.

/s/     Ariane Ice
Ariane Ice