# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | **CASE NO. 24-CV-40-LJV** |
| Plaintiffs, | |
| v. | **FILED UNDER SEAL** |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | |
| Defendants, and | |
| DANIEL BLUMKIN, et al., | |
| Relief Defendants. | |

## *EX PARTE* TEMPORARY RESTRAINING ORDER WITH AN ASSET FREEZE, APPOINTMENT OF A RECEIVER, AND OTHER EQUITABLE RELIEF

Plaintiffs Consumer Financial Protection Bureau (CFPB); the People of the State of New York by Letitia James, Attorney General of the State of New York (NYAG); the State of Colorado ex rel. Philip J. Weiser, Attorney General; the State of Delaware ex rel. Kathleen Jennings; the People of the State of Illinois through Attorney General Kwame Raoul; the State of Minnesota by its Attorney General Keith Ellison; the State of North Carolina ex rel. Joshua H. Stein, Attorney General; and the State of Wisconsin (collectively, Plaintiffs) have filed a complaint seeking a permanent injunction and other equitable relief, under the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6102(c), 6105(d); the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; and Sections 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5536(a), 5564, 5565, and a motion for temporary restraining order (TRO or Order) under Rule 65(b) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

This Court, having considered the complaint, the *ex parte* Motion for a TRO, all attached declarations and exhibits, and the memorandum of law filed in support, finds that:

1. This Court has jurisdiction over the subject matter of this case, there is good cause to believe it will have jurisdiction over all the parties hereto, and venue in this district is proper;

2. There is good cause to believe that Defendants Stratfs, LLC (f/k/a Strategic Financial Solutions, LLC); Strategic Client Support, LLC; Strategic CS, LLC;

Strategic FS Buffalo, LLC; Strategic NYC, LLC; BCF Capital, LLC; T Fin, LLC; Strategic Consulting, LLC; Versara Lending, LLC; Strategic Family, Inc.; Anchor Client Services, LLC; Bedrock Client Services, LLC; Boulder Client Services, LLC; Canyon Client Services, LLC; Carolina Client Services, LLC; Great Lakes Client Services, LLC; Guidestone Client Services, LLC; Harbor Client Services, LLC; Heartland Client Services, LLC; Monarch Client Services, LLC; Newport Client Services, LLC; Northstar Client Services, LLC; Option 1 Client Services, LLC; Pioneer Client Servicing, LLC; Rockwell Client Services, LLC; Royal Client Services, LLC; Stonepoint Client Services, LLC; Summit Client Services, LLC; Whitestone Client Services, LLC; Ryan Sasson, and Jason Blust (collectively, "Defendants") have engaged and are likely to continue to engage in acts or practices that violate the Telemarketing Act, 15 U.S.C. §§ 6102(c), 6105(d) and the TSR, 16 C.F.R. pt. 310, and that Plaintiffs are therefore likely to prevail on the merits of this action based on the declarations, bank records, and other evidence submitted with Plaintiffs' motion for a TRO;

3. There is good cause to believe that Consumers (as defined below) will suffer immediate and continuing harm from Defendants' ongoing violations of the Telemarketing Act and the TSR unless Defendants are restrained and enjoined by order of this Court;

4. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for Consumers in the form of monetary restitution and/or disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their Assets (as defined below) or

destruction, alteration, or concealment of business records unless Defendants are immediately restrained and enjoined by a TRO; that in accordance with Fed. R. Civ. P. 65(b), the interests of justice requires that Plaintiffs' motion for a TRO be heard *ex parte* without prior notice to Defendants; and that there is good cause for relieving Plaintiffs of the duty to provide Defendants with prior notice of Plaintiffs' motion for a TRO;

5. There is good cause for appointing a temporary Receiver (as defined below) over the Receivership Defendants (as defined below) and permitting the temporary Receiver immediate access to the Receivership Defendants' business premises;

6. There is good cause for freezing the Assets of the Asset-Freeze Defendants (as defined below), ordering the Defendants and Relief Defendants (as defined below) to preserve documents, and permitting the Plaintiffs to take expedited discovery;

7. Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a TRO with an asset freeze, appointment of a Receiver who will have immediate access to the Receivership Defendants' business premises, expedited discovery as to the existence and location of Assets and Documents, and other equitable relief is in the public interest; and

8. The CFPB is an independent agency of the United States of America, and no security is required by any agency of the United States for issuance of a TRO, Fed. R. Civ. P. 65(c).

# DEFINITIONS

A. "**Asset**" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to: accounts; cash; funds; trusts (including, but not limited to any trust held for the benefit of any Individual Defendant's minor children or spouse); shares of stock; commodities; futures; receivables; chattels; goods; instruments; equipment; fixtures; general intangibles; leaseholds; mail or other deliveries; inventory; checks; notes; credits; contracts; digital assets such as cryptocurrencies; and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank, wherever located. It shall include both existing Assets and Assets acquired after the date of entry of this Order.

B. "**Asset-Freeze Defendants**" means Defendants and Relief Defendants.

C. "**Consumer**" means any person who has or will enroll in a service or program offered by Defendants.

D. "**Corporate Defendants**" means Stratfs, LLC (f/k/a Strategic Financial Solutions, LLC); Strategic Client Support, LLC; Strategic CS, LLC; Strategic FS Buffalo, LLC; Strategic NYC, LLC; BCF Capital, LLC; T Fin, LLC; Strategic Consulting, LLC; Versara Lending, LLC; Strategic Family, Inc.; Anchor Client Services, LLC; Bedrock Client Services, LLC; Boulder Client Services, LLC; Canyon Client Services, LLC; Carolina Client Services, LLC; Great Lakes Client Services, LLC; Guidestone Client

Services, LLC; Harbor Client Services, LLC; Heartland Client Services, LLC;
Monarch Client Services, LLC; Newport Client Services, LLC; Northstar Client
Services, LLC; Option 1 Client Services, LLC; Pioneer Client Servicing, LLC;
Rockwell Client Services, LLC; Royal Client Services, LLC; Stonepoint Client
Services, LLC; Summit Client Services, LLC; Whitestone Client Services, LLC; and
their successors, assigns, affiliates, or subsidiaries, and each of them by all names
each might be known, including any fictious business entities or business names
created or used by these entities.

E.  "**Debt**" means any obligation or alleged obligation to pay money arising out of a
transaction, whether or not such obligation has been reduced to judgment.

F.  "**Debt-Relief Service**" means any program or service represented, directly or by
implication, to renegotiate, settle, or in any way alter the terms of payment or other
terms of the Debt between a person and one or more unsecured creditors or debt
collectors, including, but not limited to, a reduction in the balance, interest rate, or
fees owed by a person to an unsecured creditor or debt collector.

G.  "**Defendants**" means the Individual Defendants and the Corporate Defendants,
individually, collectively, or in any combination, and each of them by whatever
names each might be known.

H.  "**Document**" and "**Electronically Stored Information**" are synonymous in meaning
with and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules
of Civil Procedure, and include but are not limited to:

    a.  the original or a true copy of any written, typed, printed, electronically
stored, transcribed, taped, recorded, filmed, punched, or graphic

matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, paper, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, files, charts, logs, and electronic files, stored in any medium; and

b. any electronically created or stored information, including but not limited to electronic mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in an deleted items folder), word processing files, spreadsheets, databases, Document metadata, presentation files, and sound recordings, whether stored on any cell phones, smartphones, flash drives, personal digital assistants ("PDAs"), cards, desktop personal computers and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, backup discs and tapes, archive discs and tapes, and other forms of offline storage, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes, whether stored on-site with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained off-site by a third party; and computers and related offsite storage used by Defendants

and Relief Defendants' or Defendants' and Relief Defendants' participating associates, which may include Persons who are not employees of the company or who do not work on company premises.

I. "**Electronic Data Host**" means any Person or entity in the business of storing, hosting, or otherwise maintaining Electronically Stored Information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

J. "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, credit card processing company, payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, precious metal dealer, or precious gemstone dealer.

K. "**Individual Defendants**" means Ryan Sasson and Jason Blust.

L. "**Person**" means a natural person, an organization, or any other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

M. "**Receiver**" means the temporary Receiver appointed in Section VIII of this Order and any deputy receivers that shall be named by the temporary Receiver.

N. "**Receivership Defendants**" means the Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the temporary Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants, and includes fictious names under which they do business.

7

"Receivership Defendants" also includes Relief Defendants Strategic ESOP;
Strategic ESOT; Twist Financial, LLC; Duke Enterprises, LLC; Blaise Investments,
LLC; the Blust Family Irrevocable Trust through Donald J. Holmgren, Trustee; Lit Def
Strategies, LLC; and Relialit, LLC; (excluding Relief Defendants Daniel Blumkin,
Albert Ian Behar, and Jaclyn Blust), and their subsidiaries, affiliates, divisions,
successors, and assigns, as well as any other business related to the Defendants'
debt-relief services and which the temporary Receiver has reason to believe is
owned or controlled in whole or in part by the Relief Defendants included in this
definition, and includes fictious names under which they do business.

O. **"Relief Defendants"** means Daniel Blumkin; Albert Ian Behar; Strategic ESOP;
Strategic ESOT; Twist Financial, LLC; Duke Enterprises, LLC; Blaise Investments,
LLC; Donald J. Holmgren as Trustee of the Blust Family Irrevocable Trust; Jaclyn
Blust; Lit Def Strategies, LLC; and Relialit, LLC, their subsidiaries, affiliates,
divisions, successors, and assigns, as well as any other business related to the
Defendants' debt-relief services and which the temporary Receiver has reason to
believe is owned or controlled in whole or in part by the Relief Defendants included
in this definition, and includes fictious names under which they do business.

P. The term "**and**" and "**or**" shall be construed conjunctively and disjunctively as
necessary to make the applicable phrase or sentence inclusive rather than
exclusive.

# ORDER

## PROHIBITED FEE-COLLECTION ACTIVITIES

I.    **IT IS THEREFORE ORDERED** that in connection with the resolution or

attempted resolution of any Debt, the Defendants and their successors, assigns,

officers, agents, servants, employees, and attorneys, and those Persons or

entities in active concert or participation with any of them who receive actual

notice of this Order by personal service or otherwise, whether acting directly or

through any corporation, subsidiary, division, or other device, are hereby

temporarily restrained and enjoined from:

A.    Requesting or receiving payment of any fee or consideration for any Debt-

Relief Service from any Consumer, or any fee or any consideration from

any third party derived from Consumer fees for Debt-Relief Service, until

and unless:

i.    Defendants or Defendants' representatives have renegotiated, settled,

reduced, or otherwise altered the terms of at least one Debt pursuant

to a settlement agreement, debt management plan, or other such valid

contractual agreement executed by the Consumer; and

ii.    the Consumer has made at least one payment pursuant to that

settlement agreement, debt management plan, or other valid

contractual agreement between the Consumer and the creditor or debt

collector.

B.    To the extent that debts enrolled in a service are renegotiated, settled,

reduced, or otherwise altered individually, requesting or receiving payment

9

of any fee or consideration for any Debt-Relief Service from any
Consumer that does not:

    i.   bear the same proportional relationship to the total fee from
        renegotiating, settling, reducing, or altering the terms of the
        Consumer's entire Debt balance as the individual Debt amount at the
        time of enrollment bears to the entire Debt amount at the time of
        enrollment; or

   ii.   represent a percentage of the amount saved as a result of the
        renegotiation, settlement, reduction, or alteration, where the amount
        saved is the difference between the amount owed at the time the Debt
        was enrolled and the amount actually paid to satisfy the Debt; and

C.  Engaging in any conduct that violates the TSR or the Telemarketing Act.

**ASSET FREEZE**

II.    **IT IS FURTHER ORDERED THAT** the Asset-Freeze Defendants are hereby
temporarily restrained and enjoined from directly and indirectly:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling,
concealing, dissipating, disbursing, assigning, spending, withdrawing,
granting a lien or security interest or other interest in, or otherwise disposing
of any funds, tax refunds, real or personal property, accounts, contracts, or
any other Assets, or interest therein, wherever located, including outside the
United States, that are:

    (1)    owned or controlled, directly or indirectly, by any Asset-Freeze Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Asset-Freeze Defendant;

    (2)    in the actual or constructive possession of any Asset-Freeze Defendant; or

    (3)    owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Asset-Freeze Defendant, and any Assets held by, for, or under the name of any Asset-Freeze Defendant at any Financial Institution;

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Asset-Freeze Defendant, or subject to access by any Asset-Freeze Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C. Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Corporate Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Asset-Freeze Defendant or of which any Asset-Freeze Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Asset-Freeze Defendant is, or was on the date that this Order was signed, an authorized signor;

D. Obtaining a personal or secured loan;

E. Incurring liens or encumbrances on real property, personal property, or other Assets in the name, singly or jointly, of any Asset-Freeze Defendant; and

F. Cashing any checks from Consumers, clients, service providers, or customers of any Asset-Freeze Defendants.

This Section does not prohibit transfers to the temporary Receiver, as specifically required in Section XIV (Delivery of Receivership Property), nor does it prohibit repatriation of foreign Assets, as specifically required in Section VI (Repatriation of Foreign Assets) of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

III. **IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, credit card processing company, payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, trust entity, Person that holds, controls, or maintains custody of any account, Document, or Asset owned or controlled directly or indirectly by any Asset-Freeze Defendant, or has held, controlled, or maintained any account or Asset of, or on behalf of, any Asset-Freeze Defendant, upon service of a copy of this Order, shall:

A. Hold, retain within its control, and prohibit Asset-Freeze Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any accounts, Assets, funds, or other property that are owned by, held in the name of for the benefit of, or otherwise controlled directly by, directly or

12

indirectly, any Asset-Freeze Defendant, in whole or in part, except as directed by further order of this Court or as directed in writing by the Receiver;

B. Deny the Asset-Freeze Defendants access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Asset-Freeze Defendant, individually or jointly, or subject to access by any Asset-Freeze Defendant, whether directly or indirectly;

C. Provide the Receiver and Receiver's agents immediate access to Documents, including those electronically stored, hosted, or otherwise maintained on behalf of Defendants, for forensic imaging and copying;

D. Provide to counsel for Plaintiffs and the Receiver, within three (3) business days after being served with a copy of this Order, a certified statement setting forth:

  i. the identification number of each such account or Asset: (1) titled in the name, individually or jointly, of any Asset-Freeze Defendant; (2) held on behalf of, or for the benefit of, any Asset-Freeze Defendant; (3) owned or controlled by any Asset-Freeze Defendant; or (4) otherwise subject to access by any Asset-Freeze Defendant, directly or indirectly;

  ii. the balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed since January 2016, the date closed or removed, the total funds removed in order to close the account, and the name of the Person or entity to whom such account or other Asset was remitted;

13

      iii.  the identification of any safe deposit box, commercial mail box, or

          storage facility that is either titled in the name of any Asset-Freeze

          Defendant or is otherwise subject to access by any Asset-Freeze

          Defendant;

      iv.  if a safe deposit box, commercial mail box, or storage facility has been

          closed or removed since January 2016, the date closed or removed

          and the manner in which such item was closed or removed; and

      v.  the cryptographic hash value, time stamp, transaction data, public

          addresses, or other information sufficient to identify, locate, and track

          cryptocurrency in any blockchain or distributed ledger technology

          system that belongs to, is for the use or benefit of, is under the control

          of, or is subject to access by any Asset-Freeze Defendant;

E.  Provide to counsel for Plaintiffs and the Receiver, within three (3) business

    days after being served with a written request, copies of all Documents

    pertaining to such account or Asset, including but not limited to: originals or

    copies of account applications, account statements, signature cards, checks,

    drafts, deposit tickets, transfers to and from the accounts, all other debit and

    credit instruments or slips, currency transaction reports, 1099 forms, and logs

    and records pertaining to safe deposit boxes, commercial mail boxes, and

    storage facilities. Such institution or custodian may charge a reasonable fee

    for producing such Documents;

F.  Refrain from notifying the Asset holder, account holder, any Defendant or

    Relief Defendant, or any person or entity acting on behalf of or working in

concert with Defendants or Relief Defendants of the existence of this Order or

lawsuit while this Order is under seal; and

G.  Cooperate with all reasonable requests of the Receiver relating to this Order's

implementation.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IV.**   **IT IS FURTHER ORDERED** that each Asset-Freeze Defendant, within three (3)

business days of service of this Order, shall prepare and deliver to counsel for

Plaintiffs the following (unless otherwise agreed to by Plaintiffs' counsel):

A.  For the Individual Asset-Freeze Defendants, a completed financial statement

accurate as of the date of service of this Order upon such Asset-Freeze

Defendant in the form of **Attachment A** to this Order captioned, "Financial

Disclosure Form for Individual Defendant";

B.  For the Corporate Asset-Freeze Defendants, a completed financial statement

accurate as of the date of service of this Order upon such Asset-Freeze

Defendant in the form of **Attachment B** to this order captioned, "Financial

Disclosure Form for Corporate Defendant";

C.  For each Asset-Freeze Defendant, a completed IRS Form 4506, Request for

Copy of a Tax Return in the form of **Attachment C;**

D.  For each Asset-Freeze Defendant, a completed statement, verified under

oath, of all incoming or outgoing payments, transfers, or assignments of

funds, Assets, or property worth $5000 or more since January 1, 2016. Such

statement shall include: (a) the amount transferred or assigned; (b) the name

15

of each transferee or assignee; (c) the date of the transfer or assignment; and

(d) the type and amount of consideration paid to the Asset-Freeze Defendant;

E. For each Asset-Freeze Defendant, a detailed accounting, verified under oath, of all gross and net profits since January 1, 2016, that were obtained from, derived from, or related in any way to a Debt-Relief Service;

F. A list of all officers and directors of the Receivership Defendants and all other individuals or entities with authority to direct the operations of each Receivership Defendant or withdraw money from the account of such Receivership Defendant;

Each statement provided pursuant to Section IV shall specify the name and address of each Financial Institution at which the Asset-Freeze Defendant has accounts or safe deposit boxes, and shall include Assets held in foreign as well as domestic accounts.

## CREDIT REPORTS

**V.    IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning any Asset-Freeze Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any consumer reporting agency from which such reports are requested shall provide them to Plaintiffs.

## REPATRIATION OF FOREIGN ASSETS

**VI.    IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, each Asset-Freeze Defendant shall:

A. Provide to counsel for Plaintiffs a full accounting of all Assets, accounts, funds, and Documents outside the territory of the United States that are held: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B. Transfer to the territory of the United States all Assets, accounts, funds, and Documents in foreign countries held: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

C. Hold and retain all repatriated Assets, accounts, funds, and Documents, and prevent any transfer, disposition, or dissipation whatsoever of any such Assets, accounts, funds, or Documents; and

D. Provide Plaintiffs access to all records or accounts or Assets of the Asset-Freeze Defendants held by Financial Institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as **Attachment D.**

E. On the same business day of any repatriation, the Asset-Freeze Defendants shall (1) notify the Receiver and counsel for Plaintiffs of the name and location of the Financial Institution or other entity that is the recipient of such Assets, accounts, and Documents; and (2) serve this Order on any such Financial Institution or other entity.

## NON-INTERFERENCE WITH REPATRIATION

**VII.** **IT IS FURTHER ORDERED** that Asset-Freeze Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section VI of this Order, including but not limited to:

A. Sending any statement, letter fax, e-mail, or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all Assets have been fully repatriated pursuant to Section VI; and

B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all Assets have been fully repatriated pursuant to Section VI.

## APPOINTMENT OF A RECEIVER

**VIII.** **IT IS FURTHER ORDERED** that Thomas McNamara is appointed Receiver for the business activities of the Receivership Defendants with the full power of an equity receiver. The Receiver shall be the agent of this Court and solely the

agent of this Court in acting as Receiver under this Order. The Receiver shall be
accountable directly to this Court. The Receiver shall comply with any laws,
rules, and local rules of this Court governing receivers. The Receiver shall have
the authority to appoint deputy receivers.

## DUTIES OF RECEIVER

IX.   **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to
accomplish the following:

A.  Assume full control of the Receivership Defendants by removing, as the
Receiver deems necessary or advisable, any director, officer, independent
contractor, employee, or agent of any of the Receivership Defendants,
including any named Defendant, from control of, management of, or
participation in, the affairs of the Receivership Defendants;

B.  Take exclusive custody, control, and possession of all Assets, Documents,
and Electronically Stored Information of, or in the possession, custody, or
under the control of, the Receivership Defendants, wherever situated. The
Receiver shall have full power to divert mail and to sue for, collect, receive,
take possession of, hold, and manage all Assets and Document of the
Receivership Defendants and other Persons or entities whose interests are
now held by or under the direction, possession, custody, or control of the
Receivership Defendants. *Provided, however,* that the Receiver shall not
attempt to collect or receive any amount from a Consumer if the Receiver
believes that the Consumer was a victim of the unlawful conduct alleged in
the Complaint in this matter;

19

C. Take all steps necessary to secure the business premises of the Receivership Defendants. Such steps may include, but are not limited to, the following, as the Receiver deems necessary and advisable:

   1. Serving a copy of this Order;

   2. Completing a written inventory of all Receivership Assets;

   3. Obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords assigned to those employees;

   4. Videotaping or photographing all portions of each location;

   5. Securing each location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location;

   6. Requiring any Persons present on the premises at the time this Order is served to provide the Receiver with proof of identification and leave the premises after demonstrating to the satisfaction of the Receiver that such Persons are not removing from the premises Documents or Assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and

maintain security and are authorized to use any necessary and reasonable force permitted by law to do so. If requested by the Receiver, the United States Marshal shall provide appropriate and necessary assistance to the Receiver to implement the Order; and

7. Requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a questionnaire provided by the Receiver.

D. Conserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to Consumers or to third-party creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets;

E. Enter into contracts and purchase insurance as the Receiver deems to be advisable or necessary;

F. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to or operated, in whole or in part, by any Defendant, and to provide access to all such web pages or websites to both Plaintiffs' and Defendants' representatives, agents, and assistants;

G. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and third-party creditors who have transacted business with the Receivership Defendants;

H.  Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.  Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J.  Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any Debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

K.  Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the

22

Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however,* that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the receivership estate;

O. Take depositions and issue subpoenas to obtain Documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P. Open one or more bank accounts in the Western District of New York as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a

designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q. Maintain accurate records of all receipts and expenditures that the Receiver makes as Receiver;

R. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiffs, and produce documents in response to discovery requests issued to Defendants;

S. If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. *Provided, however,* that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its Assets and records, if the Receiver determines that notice to the entity may result in the destruction of records, dissipation of Assets, or any other obstruction of the Receiver's control of the entity;

T. Notify all courts in which Receivership Defendants have litigation pending, that this case is pending, and request temporary stays, where appropriate, of those cases or any other necessary relief to preserve the rights of Consumers, and

U. Be responsible for maintaining the chain of custody of all of Defendants' records in the Receiver's possession, pursuant to procedures to be established in writing with the approval of Plaintiffs.

**IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS FOR RECEIVER**

X.    **IT IS FURTHER ORDERED** that the Receiver and his respective representatives, agents, contractors, or assistants are permitted immediate access to the Receivership Defendants' business premises.

XI.    **IT IS FURTHER ORDERED** that the Receivership Defendants and their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other Persons directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or indirectly, shall:

A.    Provide the Receiver and his respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, including, but not limited to, federal, state, and local law enforcement officers, including the United States Marshals Service, the Federal Bureau of Investigation, the Sheriff or Deputy of any county, and the Police Department or police officer of any community, with immediate access to:

1.    All of the Receivership Defendants' business premises, including, but not limited to:

a.    115 Lawrence Bell Drive, Amherst, NY 14221;

b.    711 3rd Ave, 6th Floor, New York, NY 10017;

c.    Any storage facilities;

    d. Such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Receivership Defendant;

2. Any other premises where Receivership Defendants conduct business, sales operations, or customer service operations;

3. Any premises where Documents related to the Receivership Defendants' businesses are stored or maintained, including but not limited to a storage unit;

4. Any premises where Assets belonging to any Receivership Defendant are stored or maintained; and

5. Any Documents located at any of the locations described in this Section; and

B. Immediately identify to the Receiver:

1. All of Defendants' business premises and storage facilities;

2. Any non-residence premises where any Defendant conducts business, sales operations, or customer service operations;

3. Any non-residence premises where Documents related to the business, sales operations, or customer service operations of any Defendant are hosted, stored, or otherwise maintained, including, but not limited to the name and location of any Electronic Data Hosts;

4. Any non-residence premises where Assets belonging to any Defendant are stored or maintained; and

C. Provide the Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants with any necessary means of access to, copying of, and forensic imaging of Documents, including, without limitation, identifying the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, passwords to devices that hold Electronically Stored Information, computer access codes of all computers used to conduct Receivership Defendants' business, access to (including but not limited to execution of any Documents necessary for access to and forensic imaging of) any data stored, hosted or otherwise maintained by an Electronic Data Host, and storage area access information; and

D. Receivership Defendants, Individual Defendants, and Relief Defendants and their employees shall surrender iPhone, Android, or other mobile access devices that contain information concerning Defendants' business operations to the Receiver or Receiver's representatives.

XII.   **IT IS FURTHER ORDERED** that:

A. The Receiver is authorized to employ the assistance of federal, state, and local law enforcement officers, including, but not limited to, the United States Marshals Service, the Federal Bureau of Investigation, the Sheriff or Deputy of any county, and the Police Department and police officers of any community (a) to escort the Receiver and the Receiver's representatives and agents inside Defendants' business premises including, but not limited to, the locations identified in Subsection XI.A.1 of this Order (b) to effect service, (c)

to implement peacefully the provisions of this Order, and (d) to keep the peace.

B.  The Receiver may exclude Receivership Defendants, Individual Defendants, and Relief Defendants and their agents and employees from the business premises and facilities during the immediate access. No one shall interfere with Receiver's inspection of Receivership Defendants' premises or Documents;

C.  The Receiver shall have the right to remove any Documents, including any devices containing Electronically Stored Information related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within five business days of completing said inventory and copying. If any property, records, Documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Individual Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to the Receiver within twenty-four hours of service of this Order. In order to prevent the destruction of computer data, upon service of this Order upon Defendants, any such computers may be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be powered up or used again until produced for copying and inspection, along with any codes needed for access. The Receiver's representatives may also photograph and videotape the inside and outside of all premises to which they are permitted

28

access by this Order, and all Documents and other items found on such premises; and

D. The Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect, inventory, and copy any and all Documents and other property owned by or in the possession of the Receivership Defendants, provided that those Documents and property are not removed from the premises. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## COOPERATION WITH RECEIVER

XIII. **IT IS FURTHER ORDERED** that:

A. Defendants, Relief Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, shall fully cooperate with and assist the Receiver. Defendants' and Relief Defendants' cooperation and assistance shall include, but not be limited to:

1. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not

limited to allowing the Receiver to inspect Documents and Assets and to partition office space; and

2. Advising all Persons who owe money to the Receivership Defendants that all Debts should be paid directly to the Receiver.

B. Defendants, Relief Defendants, and their officers, directors, agents, servants, employees, attorneys, successors, assigns, and all other Persons or entities directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Defendants;

2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, Electronically Stored Information, or equipment of the Receivership Defendants, including but not limited to contracts, agreements, Consumer files, Consumer lists, Consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, Documents evidencing or referring to Defendants' or Relief Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers,

30

personal and business cancelled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other Documents, records, or equipment of any kind that relate to the business practices or business or finances of the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants;

4. Excusing Debts owed to the Receivership Defendants;

5. Failing to notify the Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by a Person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, Assets, disbursements, transactions, and use of monies by

the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership; or to harass or to interfere with the Receiver in any way; to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; and

8. Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from the Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

XIV. **IT IS FURTHER ORDERED** that:

A. Immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Receiver, Defendants, Relief Defendants, or any other Person or entity, including but not limited to Financial Institutions, Electronic Data Hosts, third party service providers, computing providers, and email providers, shall transfer or deliver access to and possession, custody, and control of the following to the Receiver:

1. All Assets of the Receivership Defendants;

2. All Documents and Electronically Stored Information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, cancelled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title Documents, and other papers;

3. All Assets belonging to Consumers now held by the Receivership Defendants;

4. All keys, computer passwords and other passwords, entry codes, combinations to locks required to open or gain or secure access to any Assets or Documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property;

5. All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of the Receivership entities; and

6. Information identifying the accounts, employees, properties, or other Assets or obligations of the Receivership Defendants.

B. If any Person or entity fails to deliver or transfer immediately any Asset or otherwise fails to comply with any provision of Section XIV, the Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the

failure. Upon filing of the affidavit, the Court may authorize, without additional process of demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. Such writs may authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## COMPENSATION FOR RECEIVER

XV.   **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## RECEIVER'S REPORTS

XVI.   **IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before the date set for the preliminary-injunction hearing, regarding:

A.  The steps taken by the Receiver to implement the terms of this Order;

B.  The value of all liquidated and unliquidated Assets of the Receivership Defendants;

C.  The sum of all liabilities of the Receivership Defendants;

D.  The steps the Receiver intends to take in the future to: (i) prevent any diminution in the value of Assets of the Receivership Defendants; (ii) pursue Receivership Assets from third parties; and (iii) adjust the liabilities of the Receivership Defendants, if appropriate;

E.  Whether the business of the Receivership Defendants can be operated lawfully and profitably; and

F.  Any other matters which the Receiver believes should be brought to the Court's attention.

G.  The Receiver shall provide any additional reports as ordered by the Court. *Provided, however,* that if disclosures of any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## WITHDRAWAL OF TEMPORARY RECEIVER

XVII.  **IT IS FURTHER ORDERED** that the Receiver and any professional retained by the Receiver, including but not limited to his or her attorneys and accountants, are authorized to reasonably withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order by sending written notice seven days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Receiver's work, findings, and recommendations, as well as an accounting for all funds and Assets in possession or control of the

Receiver. The Receiver shall be exonerated and the receivership deemed closed

seven days from the date of the mailing of such notice and withdrawal. The Court

will retain jurisdiction to consider the fee applications, report, and accounting

submitted by the Receiver and the professionals. The written notice shall include

an interim report indicating the Receiver's actions and reflect the knowledge

gained along with the fee applications of the Receiver and his or her

professionals. The report shall also contain the Receiver's recommendations, if

any.

## TEMPORARY RECEIVER'S BOND/LIABILITY

XVIII. **IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this

Court a bond in the sum of $50,000 with sureties to be approved by the Court,

conditioned that the Receiver will well and truly perform the duties of the office

and abide by and perform all acts the Court directs.

## CONFIDENTIALITY

XIX. **IT IS FURTHER ORDERED** that, except as required by a law enforcement

agency, law, regulation, or court order, Defendants, Relief Defendants, and their

officers, agents, servants, employees, and attorneys, and all third parties or other

Persons in active concert or participation with any Defendant who receive actual

notice of this Order by personal service or otherwise, are temporarily restrained

and enjoined from disclosing, using, or benefitting from Consumer information,

including the name, address, telephone number, email address, social security

number, other identifying information, or any data that enables access to a

Consumer's account (including a credit card, bank account, or other financial

account), of any Person that any Defendant or Relief Defendant obtained prior to entry of this Order in connection with any Debt-Relief Services.

XX. **IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation, or court order, all third parties who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from disclosing the existence of this Order or the litigation until the seal has been lifted.

## STAYS OF ACTIONS

XXI. **IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during pendency of the Receivership ordered herein, the Receivership Defendants and all other Persons and entities are hereby stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or

terminate any interest in any Asset; whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance, or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to this Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

B. Section XXI does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a monetary judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4. The issuance to a Receivership Defendant of a notice of tax deficiency; and

C. Except as otherwise provided in this Order, all Persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such Person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

XXII.   **IT IS FURTHER ORDERED** that Defendants, Relief Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons or entities in active concert or participation with any of them, including third party service providers such as computing providers and email providers, who receive actual notice of the Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents or records that relate to the business practices or finances of Defendants, Relief Defendants, or an entity directly or indirectly under the control of Defendants or Relief Defendants.

## LIMITED EXPEDITED DISCOVERY

XXIII.   **IT IS FURTHERED ORDERED** that Plaintiffs are granted leave to conduct certain expedited discovery, and that commencing with the time and date of this order, in lieu of the time periods, notice provisions, and other requirements of

Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited

discovery as to the parties and non-parties shall proceed as follows:

A.  Plaintiffs may, upon three (3) calendar days' notice, take the deposition of any

Person or entity, whether or not a party, in any judicial district, for the purpose

of discovering: (1) the Assets of the Asset-Freeze Defendants; (2) location of

Documents; (3) the identities of the injured Consumers; (4) information

related to Defendants' use of third-party notaries; and (5) compliance with this

Order. Depositions may be conducted telephonically, virtually/by video, or in

person. Deposition transcripts that have not been signed by the witness may

be used at the preliminary injunction hearing in this matter. Notwithstanding

Federal Rule of Civil Procedure 30(a)(2), this Section shall not preclude any

future depositions by Plaintiffs. Any deposition taken pursuant to this Section

shall be in addition to, and not subject to, the presumptive limits on

depositions set forth in Federal Rule of Civil Procedure 30(a)(2)(A).

B.  Plaintiffs may serve interrogatories for the purpose of discovering: (1) the

Assets of the Asset-Freeze Defendants; (2) location of Documents; (3)

identities of the injured Consumers; (4) information related to Defendants' use

of third-party notaries; and (5) compliance with this Order. Defendants and

Relief Defendants shall respond within five (5) calendar days after Plaintiffs

serve such interrogatories.  Any interrogatories served pursuant to this

Section shall be in addition to, and not subject to, the presumptive limits on

interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1).

C. Plaintiffs may, upon five (5) calendar days' notice, including through the use of a Rule 45 Subpoena, demand the production of Documents from any Person or entity, whether or not a Defendant or Relief Defendant, relating to: (1) the Assets of the Asset-Freeze Defendants; (2) the location of Documents; (3) identities of injured Consumers; (4) information related to Defendants' use of third-party notaries; and (5) compliance with this Order. *Provided that* three (3) calendar days shall be deemed sufficient for the production of any such Documents that are maintained or stored only as electronic data.

D. Plaintiffs are granted leave to subpoena Documents immediately from any Financial Institution, account custodian, or other entity or Person that holds, controls, or maintains custody of, or has held, controlled, or maintained custody of, any account or Asset of any Asset-Freeze Defendant concerning the nature, location, status, and extent of the Asset-Freeze Defendants' Assets and compliance with this Order, and such Financial Institution, account custodian, or other entity shall respond to such subpoena within five (5) business days after service. Financial Institutions are prohibited from notifying the person establishing the relationship with the Financial Institution, any other account holder, any Asset-Freeze Defendant or any person or entity working in concert with the Asset-Freeze Defendant of the subpoena or lawsuit generally while this Order is under seal.

For purposes of discovery pursuant to this Section, service by facsimile, email, or by overnight courier shall be a sufficient method of service, in addition to the methods provided by Federal Rule of Civil Procedure 4.

## SERVICE OF THIS ORDER AND REDACTIONS

XXIV. **IT IS FURTHER ORDERED** that Plaintiffs shall serve copies of this Order, along with the summons, complaint, motion for temporary restraining order, and all supporting documents, on Defendants and Relief Defendants **on or before Tuesday, January 16, 2024.** Plaintiffs may use any method of service described below, so long as Defendants and Relief Defendants **receive** this Order on or before January 16, 2024.

XXV. **IT IS FURTHER ORDERED** that copies of this Order along with any summons, complaint, motion, declarations, and discovery requests may be served by facsimile transmission, email, personal service, overnight courier, U.S. Express Mail, or any additional method provided for by Federal Rule of Civil Procedure 4; by agents and employees of Plaintiffs, by any state or federal law enforcement agency, by private process server, or, where permissible, by Secretaries of State on Defendants (including at the premises identified in Subsection X.A.1 of this Order), Relief Defendants, or any other Persons or entities that may be subject to any provision of this Order. Declarations and exhibits to these filings may be served via cloud link due to the voluminous nature of those documents. In addition to the redactions required by Federal Rule of Civil Procedure 5, Plaintiffs may redact Consumers' last names, phone numbers, email addresses, and mailing addresses.

## DISTRIBUTION OF ORDER BY DEFENDANTS AND RELIEF DEFENDANTS

XXVI. **IT IS FURTHER ORDERED** that within three (3) calendar days after Defendants and Relief Defendants have been served with this Order, Defendants and Relief

Defendants shall provide a copy of this Order to each of their agents, employees, directors, officers, subsidiaries, affiliates, attorneys, independent contractors, representatives, franchisees, any financial or brokerage institution or depository, credit card processing company, payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, trust, entity, Person that holds, controls, or maintains custody of any account or Asset owned or controlled directly or indirectly, by any Defendant or Relief Defendant, and all Persons in active concert or participation with Defendants and Relief Defendants. Within two (2) calendar days after Defendants and Relief Defendants have provided a copy of this Order to any Person listed above, Defendants and Relief Defendants shall provide Plaintiffs with an affidavit identifying (i) the names, titles, addresses, and telephone numbers of the Persons that Defendants and Relief Defendants have served with a copy of this Order in compliance with this provision, and (ii) the Asset or account held by such Person or the connection between such Person and any Defendant or Relief Defendant.

**WEBSITES**

XXVII. **IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of Plaintiffs' request for a preliminary injunction, (1) any Person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order

43

by personal service, facsimile transmission, email, or otherwise, whether acting

directly or through any corporation, subsidiary, division, or other device shall:

    a.  Prevent the destruction or editing of any Internet website used by

       Defendants for the advertising, marketing, promotion, offering for sale,

       sale, or performance of any Debt-Relief Service, by preserving such

       website in the format in which it is maintained on the date that notice of

       this Order is received; and

    b.  Immediately notify Plaintiffs' counsel, in writing, of any other Internet

       website operated or controlled by, or for the benefit of, any Defendant.

## INTERNET DOMAIN NAME REGISTRATIONS

**XXVIII.**    **IT IS FURTHER ORDERED** that, pending determination of Plaintiffs'

request for a preliminary injunction, any domain name registrar who receives

actual notice of this Order by personal service, facsimile transmission, email, or

otherwise, shall provide immediate notice to Plaintiffs' counsel of any Internet

domain names registered or controlled by any Defendant.

## CORRESPONDENCE WITH PLAINTIFFS

**XXIX. IT IS FURTHER ORDERED** that, for purposes of this Order, because mail

addressed to the Plaintiffs may be subject to delay due to heightened security

screening, all correspondence and service of pleadings on:

    A.  Plaintiff CFPB shall be sent either via electronic transmission or via Federal

       Express to: Vanessa Buchko, CFPB, 1700 G Street, NW; Washington, DC

       20552. Email: vanessa.buchko@cfpb.gov; Telephone: (202) 435-9593;

B. Plaintiff State of New York shall be sent either via electronic transmission or via Federal Express to Christopher Boyd, Assistant Attorney General, 350 Main Street, Suite 300A, Buffalo, NY 14202. Email: Christopher.Boyd@ag.ny.gov; Telephone: (716) 853-8457;

C. Plaintiff State of Colorado shall be sent either via electronic transmission or via Federal Express to Kevin Burns, Senior Assistant Attorney General, 1300 Broadway, 6th Floor, Denver, CO 80203. Telephone: (720) 508-6110; Email: Kevin.Burns@coag.gov;

D. Plaintiff State of Delaware shall be sent either via electronic transmission or via Federal Express to Marion Quirk, Deputy Attorney General, 820 N. French St., 5th Floor, Wilmington, Delaware 19801. Telephone: (302) 683-8810; Email: Marion.Quirk@delaware.gov;

E. Plaintiff People of the State of Illinois shall be sent either via electronic transmission or via Federal Express to Daniel Edelstein, Amanda Bacoyanis, and Matthew Davies, Assistant Attorneys General, 115 S. LaSalle St., 26th Floor; Chicago, Illinois 60603. Telephone: 312-814-2218; Email: Daniel.Edelstein@ilag.gov; Amanda.Bacoyanis@ilag.gov; Matthew.Davies@ilag.gov.;

F. Plaintiff State of Minnesota shall be sent either via electronic transmission or via Federal Express to Evan Romanoff, Assistant Attorney General, 445 Minnesota Street, Suite 1200, St. Paul, Minnesota 55101-2130. Telephone: (651) 728-4126; Email: evan.romanoff@ag.state.mn.us;

G. Plaintiff State of North Carolina shall be sent either via electronic transmission or via Federal Express to M. Lynne Weaver, Special Deputy Attorney General, 114 W. Edenton Street, Raleigh, NC 27602. Telephone: (919) 716-6039; Email: lweaver@ncdoj.gov; and

H. Plaintiff State of Wisconsin shall be sent either via electronic transmission or via Federal Express to Lewis W. Beilin, Assistant Attorney General, 17 West Main Street, Madison, WI 53703. Telephone: (608) 266-3976; Email: beilinlw@doj.state.wi.us.

## STATUS, ARGUMENT, and/or HEARING

XXX. **IT IS FURTHERED ORDERED** that this case will be referred to United States Magistrate Judge Michael J. Roemer for all purposes, including a report and recommendation on dispositive matters, under 28 U.S.C. § 636(b)(1)(B) or (A) and (B). Judge Roemer shall set a date and time for the parties to appear pursuant to Federal Rule of Civil Procedure 65(b), for a status conference relative to this Order and any preliminary injunction argument or hearing. Judge Roemer also shall set the deadlines for the parties' submissions prior to such hearing.

## DURATION OF ORDER

XXXI. **IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on the **25th day of January, 2024, at 3:00 p.m.**, unless within such time, the Order, for good cause shown, is extended for an additional period not to exceed fourteen (14) calendar days, or as otherwise provided by Federal Rule of Civil Procedure 65.

XXXII. **IT IS FURTHER ORDERED** that this Order is made without prejudice to

Defendants, Relief Defendants, and Receivership Defendants moving for

immediate relief.

### JURISDICTION

XXXIII.　　**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.

IT IS SO ORDERED, this _11TH_ day of ___January___, 2024 at ___3:00___

p.m.

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

.



UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | **CASE NO. 24-cv-40 EAW-MJR** |
| Plaintiffs, | |
| v. | |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | |
| Defendants, and | |
| DANIEL BLUMKIN, et al., | |
| Relief Defendants. | |

## PRELIMINARY INJUNCTION

Plaintiffs Consumer Financial Protection Bureau (CFPB), the People of the State of New York by Letitia James, Attorney General of the State of New York (NYAG), the State of Colorado ex rel. Philip J. Weiser, Attorney General, the State of Delaware, the People of the State of Illinois through Attorney General Kwame Raoul, the State of Minnesota by its Attorney General Keith Ellison, the State of North Carolina ex rel. Joshua H. Stein, Attorney General, and the State of Wisconsin (collectively, Plaintiffs) filed a complaint seeking a permanent injunction and other equitable relief, pursuant to the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; which implements the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6102(c), 6105(d), and Sections 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5536(a), 5564, 5565, and a motion for temporary restraining order (TRO or Order) which was granted by the Hon. Lawrence J. Vilardo on January 11, 2024 (TRO). Plaintiffs now seek a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

This Court, having considered the complaint, the parties' proposed findings of fact and conclusions of law, the parties' legal memoranda, the evidence presented during the preliminary injunction hearing held before U.S. Magistrate Judge Michael J. Roemer, on February 1-2, 2024 (PI Hearing), and all attached declarations, exhibits, and memorandum of law filed in support, finds that:

1. This Court has jurisdiction over the subject matter of this case, there is good cause to believe it will have jurisdiction over all the parties hereto, and venue in this district is proper;

2. There is good cause to believe that Defendants Stratfs, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC, Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC, T Fin, LLC, Strategic Consulting, LLC, Versara Lending, LLC, Strategic Family, Inc., Anchor Client Services, LLC, Bedrock Client Services, LLC, Boulder Client Services, LLC, Canyon Client Services, LLC, Carolina Client Services, LLC, Great Lakes Client Services, LLC, Guidestone Client Services, LLC, Harbor Client Services, LLC, Heartland Client Services, LLC, Monarch Client Services, LLC, Newport Client Services, LLC, Northstar Client Services, LLC, Option 1 Client Services, LL, Pioneer Client Servicing, LLC, Rockwell Client Services, LLC, Royal Client Services, LLC, Stonepoint Client Services, LLC, Summit Client Services, LLC, Whitestone Client Services, LLC, Ryan Sasson, and Jason Blust (collectively, "Defendants") have engaged and are likely to continue to engage in acts or practices that violate the TSR, 16 C.F.R. pt. 310 which implements the Telemarketing Act, 15 U.S.C. §§ 6102(c), 6105(d); and that Plaintiffs are therefore likely to prevail on the merits of this action;

3. There is good cause to believe that Consumers will suffer immediate, irreparable, and continuing harm from Defendants' ongoing violations of the TSR unless Defendants are restrained and enjoined by Order of this Court;

4. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for Consumers in the form of monetary restitution and/or disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their Assets or destruction, alteration, or concealment of

2

business records unless Defendants are restrained and enjoined by Order of this Court, in accordance with Fed. R. Civ. P. 65;

5. Good cause exists for continuing the appointment of a Receiver over the Receivership Defendants and permitting the Receiver access to the Receivership Defendants' business premises;

6. Good cause exists for continuing to freeze the Assets of the Asset-Freeze Defendants and ordering the Defendants and Relief Defendants to preserve documents;

7. Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a preliminary injunction with an Asset Freeze, appointment of a Receiver who will have continuing access to the Receivership Defendants' business premises, and other equitable relief is in the public interest; and

8. The CFPB is an independent agency of the United States of America, and no security is required by any agency of the United States for issuance of a preliminary injunction, Fed. R. Civ. P. 65(c).

## 9. DEFINITIONS

A. "**Asset**" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to: accounts; cash; funds; trusts (including, but not limited to any trust held for the benefit of any Individual Defendant's minor children or spouse); shares of stock; commodities; futures; receivables; chattels; goods; instruments; equipment; fixtures; general intangibles; leaseholds; mail or other deliveries; inventory; checks; notes; credits; contracts; digital assets such as cryptocurrencies;

3

and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank, wherever located. It shall include both existing Assets and Assets acquired after the date of entry of this Order.

B. "**Asset-Freeze Defendants**" means Defendants and Relief Defendants.

C. "**Consumer**" means any person who has or will enroll in a service or program offered by Defendants.

D. "**Corporate Defendants**" means Stratfs, LLC (f/k/a Strategic Financial Solutions, LLC), Strategic Client Support, LLC, Strategic CS, LLC, Strategic FS Buffalo, LLC, Strategic NYC, LLC, BCF Capital, LLC, T Fin, LLC, Strategic Consulting, LLC, Versara Lending, LLC, Strategic Family, Inc., Anchor Client Services, LLC, Bedrock Client Services, LLC, Boulder Client Services, LLC, Canyon Client Services, LLC, Carolina Client Services, LLC, Great Lakes Client Services, LLC, Guidestone Client Services, LLC, Harbor Client Services, LLC, Heartland Client Services, LLC, Monarch Client Services, LLC, Newport Client Services, LLC, Northstar Client Services, LLC, Option 1 Client Services, LL, Pioneer Client Servicing, LLC, Rockwell Client Services, LLC, Royal Client Services, LLC, Stonepoint Client Services, LLC, Summit Client Services, LLC, Whitestone Client Services, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by all names each might be known, including any fictious business entities or business names created or used by these entities.

E. "**Debt**" means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

4

F.  "**Debt-Relief Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the Debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

G.  "**Defendants**" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

H.  "**Document**" and "**Electronically Stored Information**" are synonymous in meaning with and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure, and include but are not limited to:

    a.  the original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, paper, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, files, charts, logs, and electronic files, stored in any medium; and

    b.  any electronically created or stored information, including but not limited to electronic mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in an deleted items folder), word processing files,

spreadsheets, databases, Document metadata, presentation files, and sound recordings, whether stored on any cell phones, smartphones, flash drives, personal digital assistants ("PDAs"), cards, desktop personal computers and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, backup discs and tapes, archive discs and tapes, and other forms of offline storage, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes, whether stored on-site with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained off-site by a third party; and computers and related offsite storage used by Defendants and Relief Defendants or Defendants' and Relief Defendants' participating associates, which may include Persons who are not employees of the company or who do not work on company premises;

I. "**Electronic Data Host**" means any Person or entity in the business of storing, hosting, or otherwise maintaining Electronically Stored Information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

J. "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, credit card processing company, payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, precious metal dealer, or precious gemstone dealer.

K. "**Individual Defendants**" means Ryan Sasson and Jason Blust.

L. "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

M. "**Receiver**" means the temporary Receiver appointed in Section VIII of the TRO and any deputy receivers that shall be named by the Receiver.

N. "**Receivership Defendants**" means the Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants such as Atlas Debt Relief LLC and Timberline Financial LLC, and includes fictious names under which they do business. "Receivership Defendants" also includes Relief Defendants Twist Financial, LLC, Duke Enterprises, LLC, Blaise Investments, LLC, the Blust Family Irrevocable Trust through Donald J. Holmgren, Trustee, Lit Def Strategies, LLC, and Relialit, LLC (excluding Relief Defendants Daniel Blumkin, Albert Ian Behar, and Jaclyn Blust), and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the  Receiver has reason to believe is owned or controlled in whole or in part by the Relief Defendants included in this definition, and includes fictious names under which they do business.

O. "**Relief Defendants**" means Daniel Blumkin, Albert Ian Behar, Twist Financial, LLC, Duke Enterprises, LLC, Blaise Investments, LLC, Donald J. Holmgren as Trustee of the Blust Family Irrevocable Trust, Jaclyn Blust, Lit Def Strategies, LLC, and Relialit, LLC, their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the Receiver has reason to believe is

owned or controlled in whole or in part by the Relief Defendants included in this definition, and includes fictious names under which they do business.

P.  The term "**and**" and "**or**" shall be construed conjunctively and disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## ORDER

## PROHIBITED FEE-COLLECTION ACTIVITIES

I.   **IT IS THEREFORE ORDERED** that in connection with the resolution or attempted resolution of any Debt, the Defendants' officers, agents, servants, employees, and attorneys, and those Persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby preliminarily restrained and enjoined from:

A.  Requesting or receiving payment of any fee or consideration for any Debt-Relief Service from any Consumer, or any fee or any consideration from any third party derived from Consumer fees for Debt-Relief Service, until and unless:

i.   Defendants or Defendants' representatives have renegotiated, settled, reduced, or otherwise altered the terms of at least one Debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the Consumer; and

ii.  the Consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the Consumer and the creditor or debt collector.

B. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, requesting or receiving payment of any fee or consideration for any Debt-Relief Service from any Consumer that does not:

    i. bear the same proportional relationship to the total fee from renegotiating, settling, reducing, or altering the terms of the Consumer's entire Debt balance as the individual Debt amount at the time of enrollment bears to the entire Debt amount at the time of enrollment; or

    ii. represent a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration, where the amount saved is the difference between the amount owed at the time the Debt was enrolled and the amount actually paid to satisfy the Debt; and

C. Engaging in any other conduct that violates the TSR.

### ASSET FREEZE

II. **IT IS FURTHER ORDERED THAT** the Asset-Freeze Defendants are hereby restrained and enjoined from directly and indirectly:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, tax refunds, real or personal property, accounts, contracts, or any other Assets, or interest therein, wherever located, including outside the United States, that are:

    (1) owned or controlled, directly or indirectly, by any Asset-Freeze Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Asset-Freeze Defendant;

(2) in the actual or constructive possession of any Asset-Freeze Defendant; or

(3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Asset-Freeze Defendant, and any Assets held by, for, or under the name of any Asset-Freeze Defendant at any Financial Institution;

B.  Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Asset-Freeze Defendant, or subject to access by any Asset-Freeze Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.  Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Corporate Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Asset-Freeze Defendant or of which any Asset-Freeze Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Asset-Freeze Defendant is, or was on the date that this Order was signed, an authorized signor;

D.  Obtaining a personal or secured loan;

E.  Incurring liens or encumbrances on real property, personal property, or other Assets in the name, singly or jointly, of any Asset-Freeze Defendant; and

F.  Cashing any checks from Consumers, clients, service providers, or customers of any Asset-Freeze Defendants.

10

This Section does not prohibit transfers to the Receiver, as specifically required in Section XIV (Delivery of Receivership Property), nor does it prohibit repatriation of Foreign Assets, as specifically required in Section VI (Repatriation of Foreign Assets) of this Order. The provisions of this Section may be modified upon written instruction of the Plaintiffs to a Financial Institution, subject to the Financial Institution confirming the validity of the instruction over the telephone with the instructing Plaintiff.

**RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES**

III.     **IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, credit card processing company, payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, trust, entity, Person that holds, controls, or maintains custody of any account, Document, or Asset owned or controlled directly or indirectly by any Asset-Freeze Defendant, or has held, controlled, or maintained any account or Asset of, or on behalf of, any Asset-Freeze Defendant, upon service of a copy of this Order, shall, to the extent such action has not already been taken pursuant to Section III of the TRO:

A.  Hold, retain within its control, and prohibit Asset-Freeze Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any accounts, Assets, funds, or other property that are owned by, held in the name of for the benefit of, or otherwise controlled directly by, directly or indirectly, any Asset-Freeze Defendant, in whole or in part, except as directed by further order of the Court or as directed in writing by the Receiver;

11

B.  Deny the Asset-Freeze Defendants access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Asset-Freeze Defendant, individually or jointly, or subject to access by any Asset-Freeze Defendant, whether directly or indirectly;

C.  Provide the Receiver and Receiver's agents immediate access to Documents, including those electronically stored, hosted, or otherwise maintained on behalf of Defendants, for forensic imaging and copying;

D.  Provide to counsel for Plaintiffs and the Receiver, within three (3) business days after being served with a copy of this Order, a certified statement setting forth:

    i.  the identification number of each such account or Asset: (1) titled in the name, individually or jointly, of any Asset-Freeze Defendant; (2) held on behalf of, or for the benefit of, any Asset-Freeze Defendant; (3) owned or controlled by any Asset-Freeze Defendant; or (4) otherwise subject to access by any Asset-Freeze Defendant, directly or indirectly.

    ii.  the balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed since January 2016, the date closed or removed, the total funds removed in order to close the account, and the name of the Person or entity to whom such account or other Asset was remitted;

    iii.  the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name of any Asset-Freeze Defendant or is otherwise subject to access by any Asset-Freeze Defendant;

iv.  if a safe deposit box, commercial mail box, or storage facility has been closed or removed since January 2016, the date closed or removed and the manner in which such item was closed or removed; and

v.  the cryptographic hash value, time stamp, transaction data, public addresses, or other information sufficient to identify, locate, and track cryptocurrency in any blockchain or distributed ledger technology system that belongs to, is for the use or benefit of, is under the control of, or is subject to access by any Asset-Freeze Defendant;

E.  Provide to counsel for Plaintiffs and the Receiver, within three (3) business days after being served with a written request, copies of all Documents pertaining to such account or Asset, including but not limited to: originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities. Such institution or custodian may charge a reasonable fee for producing such Documents; and

F.  Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IV.**  **IT IS FURTHER ORDERED** that each Asset-Freeze Defendant, within three (3) business days of service of this Order, shall, to the extent such action has not already been taken pursuant to Section IV of the TRO, prepare and deliver to counsel for Plaintiffs the following (unless otherwise agreed to by Plaintiffs' counsel):

A. For the Individual Asset-Freeze Defendants, a completed financial statement accurate as of the date of service of this Order upon such Asset-Freeze Defendant in the form of **Attachment A** to the TRO captioned, "Financial Disclosure Form for Individual Defendant."

B. For the Corporate Asset-Freeze Defendants, a completed financial statement accurate as of the date of service of this Order upon such Asset-Freeze Defendant in the form of **Attachment B** to the TRO captioned, "Financial Disclosure Form for Corporate Defendant."

C. For each Asset-Freeze Defendant, a completed IRS Form 4506, Request for Copy of a Tax Return in the form of **Attachment C** to the TRO.

D. For each Asset-Freeze Defendant, a completed statement, verified under oath, of all incoming or outgoing payments, transfers, or assignments of funds, Assets, or property worth $5000 or more since January 1, 2016. Such statement shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; and (d) the type and amount of consideration paid to the Asset-Freeze Defendant.

E. For each Asset-Freeze Defendant, a detailed accounting, verified under oath, of all gross and net profits since January 1, 2016, that were obtained from, derived from, or related in any way to a Debt-Relief Service.

F. A list of all officers and directors of the Receivership Defendants and all other individuals or entities with authority to direct the operations of each Receivership Defendant or withdraw money from the account of such Receivership Defendant.

Each statement provided pursuant to Section IV shall specify the name and address of each Financial Institution at which the Asset-Freeze Defendant has accounts or safe deposit boxes and shall include Assets held in foreign as well as domestic accounts.

## CREDIT REPORTS

V.    **IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning any Asset-Freeze Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any consumer reporting agency from which such reports are requested shall provide them to Plaintiffs.

## REPATRIATION OF FOREIGN ASSETS

VI.   **IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, each Asset-Freeze Defendant shall, to the extent such action has not already been taken pursuant to Section VI of the TRO:

A.   Provide to counsel for Plaintiffs a full accounting of all Assets, accounts, funds, and Documents outside of the territory of the United States that are held either: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.   Transfer to the territory of the United States all Assets, accounts, funds, and Documents in foreign countries held: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

C.   Hold and retain all repatriated Assets, accounts, funds, and Documents, and prevent any transfer, disposition, or dissipation whatsoever of any such Assets, accounts, funds, or Documents; and

D. Provide Plaintiffs access to all records or accounts or Assets of the Asset-Freeze Defendants held by Financial Institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as **Attachment D** of the TRO.

E. The same business day of any repatriation, the Asset-Freeze Defendants shall (1) notify the Receiver and counsel for Plaintiffs of the name and location of the Financial Institution or other entity that is the recipient of such Assets, accounts, and Documents; and (2) serve this Order on any such Financial Institution or other entity.

## NON-INTERFERENCE WITH REPATRIATION

VII. **IT IS FURTHER ORDERED** that Asset-Freeze Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of Foreign Assets, or in the hindrance of the repatriation required by Section VI of this Order, including but not limited to:

A. Sending any statement, letter fax, e-mail, or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all Assets have been fully repatriated pursuant to Section VI; and

B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all Assets have been fully repatriated pursuant to Section VI.

## CONTINUATION OF RECEIVER

VIII. **IT IS FURTHER ORDERED** that Thomas McNamara, the Receiver appointed pursuant to Section VIII of the TRO for the business activities of the Receivership Defendants shall remain the Receiver with the full power of an equity receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with any laws and Local Rules of this Court governing receivers. The Receiver shall have the authority to appoint deputy receivers.

## DUTIES OF RECEIVER

IX. **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following, unless such actions have already been taken pursuant to Section IX of the TRO:

A. Retain full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B. Retain exclusive custody, control, and possession of all Assets, Documents, and Electronically Stored Information of, or in the possession, custody, or under the

control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage all Assets and Document of the Receivership Defendants and other Persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect or receive any amount from a Consumer if the Receiver believes that the Consumer was a victim of the unlawful conduct alleged in the Complaint in this matter;

C. Take all steps necessary to secure the business premises of the Receivership Defendants.

D. Conserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to Consumers or to third-party creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets;

E. Enter into contracts and purchase insurance as the Receiver deems to be advisable or necessary;

F. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to or operated, in whole or in part, by any Defendant, and to provide access to all such web pages or websites to both Plaintiffs' and Defendants' representatives, agents, and assistants;

G. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and third-party creditors who have transacted business with the Receivership Defendants;

H. Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J. Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any Debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

K. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary

and advisable to preserve or recover the Assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however,* that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the receivership estate;

O. Take depositions and issue subpoenas to obtain Documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P. Open one or more bank accounts in the Western District of New York as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q. Maintain accurate records of all receipts and expenditures that the Receiver makes as Receiver;

R. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiffs, and produce documents in response to discovery requests issued to Defendants;

S. If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. *Provided, however,* that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its Assets and records, if the Receiver determines that notice to the entity may result in the destruction of records, dissipation of Assets, or any other obstruction of the Receiver's control of the entity;

T. Notify all courts in which Receivership Defendants have litigation pending, that this case is pending, and request temporary stays, where appropriate, of those cases or any other necessary relief to preserve the rights of Consumers, and

U. Be responsible for maintaining the chain of custody of all of Defendants' records in the Receiver's possession, pursuant to procedures to be established in writing with the approval of Plaintiffs.

## ACCESS TO BUSINESS PREMISES AND RECORDS FOR RECEIVER

**X.** **IT IS FURTHER ORDERED** that the Receiver and his respective representatives, agents, contractors, or assistants are permitted access to the Receivership Defendants' business premises.

XI.   **IT IS FURTHER ORDERED** that the Receivership Defendants and their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other Persons directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or indirectly, shall:

A.  Allow the Receiver and his respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, access to:

1.  All of the Receivership Defendants' business premises, including, but not limited to:

a.  115 Lawrence Bell Drive, Amherst, NY 14221;

b.  711 3rd Ave, 6th Floor, New York, NY 10017;

c.  Any storage facilities;

d.  Such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Receivership Defendant;

2.  Any other premises where Receivership Defendants conduct business, sales operations, or customer service operations;

3.  Any premises where Documents related to the Receivership Defendants' businesses are stored or maintained, including but not limited to a storage unit;

4.  Any premises where Assets belonging to any Receivership Defendant are stored or maintained; and

22

5.  Any Documents located at any of the locations described in this Section; and

B.  To the extent not already done, immediately identify to the Receiver:

    1.  All of Defendants' business premises and storage facilities;

    2.  Any non-residence premises where any Defendant conducts business, sales operations, or customer service operations;

    3.  Any non-residence premises where Documents related to the business, sales operations, or customer service operations of any Defendant are hosted, stored, or otherwise maintained, including, but not limited to the name and location of any Electronic Data Hosts;

    4.  Any non-residence premises where Assets belonging to any Defendant are stored or maintained; and

C.  Provide the Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants with any necessary means of access to, copying of, and forensic imaging of Documents, including, without limitation, identifying the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, passwords to devices that hold Electronically Stored Information, computer access codes of all computers used to conduct Receivership Defendants' business, access to (including but not limited to execution of any Documents necessary for access to and forensic imaging of) any data stored, hosted or otherwise maintained by an Electronic Data Host, and storage area access information; and

D.  Receivership Defendants, Individual Defendants, and Relief Defendants and their employees shall surrender iPhone, Android, or other mobile access devices that

contain information concerning Defendants' business operations to the Receiver or Receiver's representatives.

## XII. IT IS FURTHER ORDERED that:

A. The Receiver may exclude Receivership Defendants, Individual Defendants, and Relief Defendants and their agents and employees from the business premises and facilities. No one shall interfere with the Receiver's inspection of Receivership Defendants' premises or Documents;

B. The Receiver shall have the right to remove any Documents, including any devices containing Electronically Stored Information related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within five business days of completing said inventory and copying. If any property, records, Documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Individual Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to the Receiver within twenty-four hours of service of this Order. In order to prevent the destruction of computer data, upon service of this Order upon Defendants, any such computers may be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be powered up or used again until produced for copying and inspection, along with any codes needed for access. The Receiver's representatives may also photograph and videotape the inside and outside of all premises to which they are permitted access by this Order, and all Documents and other items found on such premises; and

C. The Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect, inventory, and copy any and all Documents and other property owned by or in the possession of the Receivership Defendants, provided that those Documents and property are not removed from the premises. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## COOPERATION WITH RECEIVER

XIII.  **IT IS FURTHER ORDERED** that:

A. Defendants, Relief Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, shall fully cooperate with and assist the Receiver. Defendants' and Relief Defendants' cooperation and assistance shall include, but not be limited to:

1. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not limited to allowing the Receiver to inspect Documents and Assets and to partition office space; and

2. Advising all Persons who owe money to the Receivership Defendants that all Debts should be paid directly to the Receiver.

B. Defendants, Relief Defendants, and their officers, directors, agents, servants, employees, attorneys, successors, assigns, and all other Persons or entities directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Defendants;

2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, Electronically Stored Information, or equipment of the Receivership Defendants, including but not limited to contracts, agreements, Consumer files, Consumer lists, Consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, Documents evidencing or referring to Defendants' or Relief Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business cancelled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other Documents, records, or equipment of any kind that relate to the business practices or business or finances of the Receivership

Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants;

4. Excusing Debts owed to the Receivership Defendants;

5. Failing to notify the Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by a Person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, Assets, disbursements, transactions, and use of monies by the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership; or to harass or to interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership

Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly
authorized agents in the exercise of their duties or authority under any Order
of this Court; and

8. Filing, or causing to be filed, any petition on behalf of the Receivership
Defendants for relief under the United States Bankruptcy Code, 11 U.S.C.
§ 101 et seq., without prior permission from the Court.

**DELIVERY OF RECEIVERSHIP PROPERTY**

XIV. **IT IS FURTHER ORDERED** that:

A. Immediately upon service of this Order upon them or upon their otherwise obtaining
actual knowledge of this Order, or within a period permitted by the Receiver,
Defendants, Relief Defendants, or any other Person or entity, including but not
limited to Financial Institutions, Electronic Data Hosts, third party service providers,
computing providers, and email providers, shall, to the extent such actions have not
already been taken, transfer or deliver access to and possession, custody, and control
of the following to the Receiver:

1. All Assets of the Receivership Defendants;

2. All Documents and Electronically Stored Information of the Receivership
Defendants, including, but not limited to, books and records of accounts, all
financial and accounting records, balance sheets, income statements, bank
records (including monthly statements, cancelled checks, records of wire
transfers, records of ACH transactions, and check registers), client or
customer lists, title Documents, and other papers;

3. All Assets belonging to Consumers now held by the Receivership Defendants;

4. All keys, computer passwords and other passwords, entry codes, combinations to locks required to open or gain or secure access to any Assets or Documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property;

5. All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of the Receivership entities; and

6. Information identifying the accounts, employees, properties, or other Assets or obligations of the Receivership Defendants.

B. In the event any Person or entity fails to deliver or transfer immediately any Asset or otherwise fails to comply with any provision of Section XIV, the Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process of demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the Asset, Document, or other thing and to deliver it to the Receiver.

**COMPENSATION FOR RECEIVER**

XV. **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or

in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### RECEIVER'S REPORTS

XVI.   **IT IS FURTHER ORDERED** that the Receiver shall report to this Court, within thirty (30) days of the entry of this order, or at such other time determined by the Receiver or ordered by the Court regarding:

A.  The steps taken by the Receiver to implement the terms of this Order;

B.  The value of all liquidated and unliquidated Assets of the Receivership Defendants;

C.  The sum of all liabilities of the Receivership Defendants;

D.  The steps the Receiver intends to take in the future to: (i) prevent any diminution in the value of Assets of the Receivership Defendants; (ii) pursue Receivership Assets from third parties; and (iii) adjust the liabilities of the Receivership Defendants, if appropriate;

E.  Whether the business of the Receivership Defendants can be operated lawfully and profitably; and

F.  Any other matters which the Receiver believes should be brought to the Court's attention.

G.  The Receiver shall provide any additional reports as ordered by the Court.

*Provided, however,* if disclosures of any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## WITHDRAWAL OF RECEIVER

XVII.  **IT IS FURTHER ORDERED** that the Receiver and any professional retained by the Receiver, including but not limited to his or her attorneys and accountants, are authorized to reasonably withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order by sending written notice seven days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Receiver's work, findings, and recommendations, as well as an accounting for all funds and Assets in possession or control of the Receiver. The Receiver shall be exonerated and the receivership deemed closed seven days from the date of the mailing of such notice and withdrawal. The Court will retain jurisdiction to consider the fee applications, report, and accounting submitted by the Receiver and the professionals. The written notice shall include an interim report indicating the Receiver's actions and reflect the knowledge gained along with the fee applications of the Receiver and his or her professionals. The report shall also contain the Receiver's recommendations, if any.

## RECEIVER'S BOND/LIABILITY

XVIII. **IT IS FURTHER ORDERED** that the Receiver has filed with the Clerk of this Court a bond in the sum of $50,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## CONFIDENTIALITY

XIX. **IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation, or court order, Defendants, Relief Defendants, and their officers, agents, servants, employees, and attorneys, and all third parties or other Persons in active concert or participation with any Defendant who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from disclosing, using, or benefitting from Consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a Consumer's account (including a credit card, bank account, or other financial account), of any Person that any Defendant or Relief Defendant obtained prior to entry of this Order in connection with any Debt-Relief Services.

## STAYS OF ACTIONS

XX. **IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during pendency of the Receivership ordered herein, the Receivership Defendants and all other Persons and entities are hereby stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

  1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset; whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance, or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to this Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

B. This Section XX does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a monetary judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4. The issuance to a Receivership Defendant of a notice of tax deficiency; and

33

C. Except as otherwise provided in this Order, all Persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such Person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

XXI. **IT IS FURTHER ORDERED** that Defendants, Relief Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons or entities in active concert or participation with any of them, including third party service providers such as computing providers and email providers, who receive actual notice of the Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents or records that relate to the business practices or finances of Defendants, Relief Defendants, or an entity directly or indirectly under the control of Defendants or Relief Defendants.

## DISTRIBUTION OF ORDER BY DEFENDANTS AND RELIEF DEFENDANTS

XXII. **IT IS FURTHER ORDERED** that within three (3) calendar days after Defendants and Relief Defendants have been served with this Order, Defendants and Relief Defendants shall provide a copy of this Order to each of their agents, employees, directors, officers, subsidiaries, affiliates, attorneys, independent contractors, representatives, franchisees, any financial or brokerage institution or depository, credit card processing company,

34

payment processor, merchant bank, acquiring bank, escrow agent, title company, commodity trading company, trust, entity, Person that holds, controls, or maintains custody of any account or Asset owned or controlled directly or indirectly, by any Defendant or Relief Defendant, and all Persons in active concert or participation with Defendants and Relief Defendants. Within two (2) calendar days after Defendants and Relief Defendants have provided a copy of this Order to any Person listed above, Defendants and Relief Defendants shall provide Plaintiffs with an affidavit identifying (i) the names, titles, addresses, and telephone numbers of the Persons that Defendants and Relief Defendants have served with a copy of this Order in compliance with this provision, and (ii) the Asset or account held by such Person or the connection between such Person and any Defendant or Relief Defendant.

**WEBSITES**

XXIII. **IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of Plaintiffs' request for a preliminary injunction, (1) any Person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device shall, unless such actions have already been taken pursuant to Section XXVII of the TRO:

    a. Prevent the destruction or editing of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of

any Debt-Relief Service, by preserving such website in the format in which it is maintained on the date that notice of this Order is received; and

**b.** Immediately notify Plaintiffs' counsel, in writing, of any other Internet website operated or controlled by, or for the benefit of, any Defendant.

## INTERNET DOMAIN NAME REGISTRATIONS

**XXIV. IT IS FURTHER ORDERED** that, pending determination of Plaintiffs' request for a preliminary injunction, any domain name registrar who receives actual notice of this Order by personal service, facsimile transmission, email, or otherwise, shall, unless such actions have already been taken pursuant to Section XXVIII of the TRO, provide immediate notice to Plaintiffs' counsel of any Internet domain names registered or controlled by any Defendant.

## DURATION OF ORDER

**XXV. IT IS FURTHER ORDERED** that, that this Order shall expire upon entry of a final judgment in this case.

## CORRESPONDENCE WITH PLAINTIFFS

**XXVI. IT IS FURTHER ORDERED** that, for purposes of this Order, because mail addressed to the Plaintiffs may be subject to delay due to heightened security screening, all correspondence and service of pleadings on:

A. Plaintiff CFPB shall be sent either via electronic transmission or via Federal Express to: Vanessa Buchko, CFPB, 1700 G Street, NW; Washington, DC 20552. Email: vanessa.buchko@cfpb.gov; Telephone: (202) 435-9593; and

B. Plaintiff State of New York shall be sent either via electronic transmission or via Federal Express to Christopher Boyd, Assistant Attorney General, 350 Main Street,

Suite 300A, Buffalo, NY 14202. Email: Christopher.Boyd@ag.ny.gov; Telephone:

(716) 853-8457;

C. Plaintiff State of Colorado shall be sent either via electronic transmission or via

Federal Express to Kevin Burns, Senior Assistant Attorney General, 1300 Broadway,

6th Floor, Denver, CO 80203. Telephone: (720) 508-6110; Email:

Kevin.Burns@coag.gov;.

D. Plaintiff State of Delaware shall be sent either via electronic transmission or via

Federal Express to Marion Quirk, Deputy Attorney General, 820 N. French St., 5th

Floor, Wilmington, Delaware 19801. Telephone: (302) 683-8810; Email:

Marion.Quirk@delaware.gov;

E. Plaintiff People of the State of Illinois shall be sent either via electronic transmission

or via Federal Express to Daniel Edelstein, Amanda Bacoyanis, and Matthew Davies,

Assistant Attorneys General, 115 S. LaSalle St., 26th Floor; Chicago, Illinois 60603.

Telephone: 312-814-2218; Email: Daniel.Edelstein@ilag.gov;

Amanda.Bacoyanis@ilag.gov; Matthew.Davies@ilag.gov;

F. Plaintiff State of Minnesota shall be sent either via electronic transmission or via

Federal Express to Evan Romanoff, Assistant Attorney General, 445 Minnesota

Street, Suite 1200, St. Paul, Minnesota 55101-2130. Telephone: (651) 728-4126;

Email: evan.romanoff@ag.state.mn.us;

G. Plaintiff State of North Carolina shall be sent either via electronic transmission or via

Federal Express to M. Lynne Weaver, Special Deputy Attorney General, 114 W.

Edenton Street, Raleigh, NC 27602. Telephone: (919) 716-6039; Email:

lweaver@ncdoj.gov; and

H.  Plaintiff State of Wisconsin shall be sent either via electronic transmission or via

Federal Express to Lewis W. Beilin, Assistant Attorney General, 17 West Main

Street, Madison, WI 53703. Telephone: (608) 266-3976; Email:

beilinlw@doj.state.wi.us.

## JURISDICTION

XXVII.       **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.

IT IS SO ORDERED.

DATED: MARCH 4, 2024

_____

MICHAEL J. ROEMER

United States Magistrate Judge