UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CONSUMER FINANCIAL PROTECTION,                    24-CV-40-EAW-MJR
BUREAU, *et al.*,

     Plaintiffs,                    DECISION AND
                                                  ORDER
  v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), *et al.*,

     Defendants, and

STRATEGIC ESOP, *et al.*,

     Relief Defendants.

_____

   Currently before the Court are motions by relief defendant The Bush Lake Trust as

well as non-parties Two Square Enterprises, Inc., BDC Group, LLC, and Veteris Capital,

LLC challenging the Receiver's determination that they each qualify as receivership

defendants. (Dkt. Nos. 655, 659) For the following reasons, the motions are denied, and

the Court designates The Bush Lake Trust, Two Square Enterprises, Inc., BDC Group,

LLC, and Veteris Capital, LLC as receivership defendants.

## **BACKGROUND**

### ***Jason Blust and Lit Def Strategies, LLC***

   Defendant Lit Def Strategies, LLC ("Lit Def") is owned and controlled by defendant

Jason Blust. (Dkt. No. 115-1, pg. 15) Lit Def provided support services to law firms. (*Id.* at

14, 39) The law firms supported by Lit Def engaged in consumer debt settlement and debt

litigation, in exchange for advanced fees. (Dkt. No. 183, pgs. 10-11) The law firms

provided these services together with defendant StratFS, LLC ("StratFS") and its related

entities and affiliates (hereinafter referred to as "Strategic's debt-relief services" or "Strategic's debt-relief operation").[1] (*Id.*) Blust controlled the law firms supported by Lit Def, and Blust served as a liaison between the law firms and StratFS with regard to Strategic's advance fee debt-relief services. (Dkt. No. 183, pg. 47) Plaintiffs allege that Lit Def, together with Blust, provided substantial assistance to the law firms in collecting unlawful advance fees from consumers in exchange for debt-relief services, in violation of the Telemarketing Sales Rules ("TSR"). (Dkt. No. 366)

### *The TRO and PI*

On January 11, 2024, the Honorable Lawrence J. Vilardo issued a temporary restraining order ("TRO") with asset-freeze, appointment of Receiver Thomas McNamara (the "Receiver"), and other equitable relief. (Dkt. No. 12) The TRO defined "defendants" as all corporate and individual defendants named in the lawsuit, including Blust. (Dkt. No. 12, pg. 6) The TRO extended the definition of "receivership defendant" to Lit Def as well as Lit Def's "subsidiaries, affiliates, divisions, successors, and assigns." (*Id.* at 8-9) The PI also identified, as receivership defendants, any other business related to the defendant's debt-relief services and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the defendants or by Lit Def, including any fictitious names under which they do business.[2] (*Id.*)

The parties consented to this Court's authority to issue a final decision and order on plaintiffs' motion for a preliminary injunction. (Dkt. Nos. 158, 159) On March 4, 2024,

---

[1] StratFS also offered a contingency fee model of debt relief, separate and apart from the law firm model of debt relief at issue in this lawsuit. (Dkt. No. 183, pg. 11, n. 9) However, the law firm model of debt relief was the primary business of StratFS and accounted for roughly 80% of its revenue. (*Id.*)
[2] At the time the PI was issued, the complaint named Lit Def as a relief defendant only. (Dkt. No. 1) The second amended complaint names Lit Def as a defendant. (Dkt. No. 366)

following a two-day evidentiary hearing, this Court granted plaintiffs' motion for a preliminary injunction ("PI") with continuation of the asset freeze, the appointment of the Receiver, and other equitable relief. (Dkt. Nos. 183, 184) The PI retains the same definitions of defendants and receivership defendants as stated in the TRO, and continues to name Lit Def, as well as Lit Def's subsidiaries, affiliates, divisions, successors, and assigns, as receivership defendants. (Dkt. No. 184, pgs. 6-8) The PI further contains a provision for identifying new, non-party entities that belong in the receivership. (*Id*. at 22) To that end, when the Receiver identifies a new receivership entity, the Receiver must notify the entity and the parties, and must inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. (*Id*.)

### ***Fidelis Legal Support Services, LLC***

On February 23, 2024, the Receiver received information suggesting that Fidelis Legal Support Services, LLC ("Fidelis"), another litigation support services company potentially owned and/or controlled by Blust, was operating in tandem with Lit Def in assisting Strategic's debt-relief operation, past the imposition of the TRO.[3] (Dkt. No. 179-1; Dkt. No. 646, pg. 6) On February 25, 2024, the Receiver notified Fidelis that it qualified as a receivership defendant under the TRO. (Dkt. No. 667, pg. 6) Fidelis filed a motion before this Court objecting to the designation. (Dkt. No. 190)

On March 25, 2025, following briefing and an evidentiary hearing, this Court issued a Decision and Order denying Fidelis' challenge to the receivership designation. (Dkt. No. 646) Therein, the Court found that in or around January of 2021, Blust, together with

---

[3] Fidelis was not named as a defendant in the initial complaint, but was added as a defendant in the second amended complaint. (Dkt. Nos. 1, 366) Plaintiffs allege that Fidelis, like Lit Def and Blust, provided substantial assistance to the law firms in collecting illegal advance fees from consumers in exchange for debt-relief services, in violation of the TSR. (Dkt. No. 366)

Cameron Christo and Michelle Gallagher, established Fidelis in order for it to become a successor of Lit Def.[4] (*Id.* at 28-29) The Court determined, based on the facts adduced during the evidentiary hearing, that Blust took these actions in light of increased litigation against Lit Def, and that Christo was named as Fidelis' owner and chief officer in order to conceal Blust's involvement with Fidelis. (*Id.*) The Court found that during the transition from Lit Def to Fidelis, the companies operated as essentially one entity. (*Id.* at 29) To that end, the companies shared the same employees and serviced the same law firms. (*Id.*) The majority of these law firms were related to Strategic's debt-relief operation and most, if not all, were controlled by or connected to Blust. (*Id.*)

The Court further determined that Blust exercised control, in whole or in part, over Fidelis. (*Id.* at 30-31) The facts demonstrated that Blust directed employee assignments at Fidelis; was directly involved in the hiring of Fidelis employees; set the holiday schedule at Fidelis; and determined Fidelis employees' compensation and bonuses. (*Id.*) The record further showed that Christo had minimal involvement in Fidelis' day-to-day operations, and that Christo did not generate any significant business for the company. (*Id.*) Based on these facts, the Court determined that Fidelis qualified as a receivership defendant, under the PI, because it was a successor or assign of Lit Def. (*Id.* at 31) The Court found that Fidelis also qualified as a receivership defendant, under the PI, because Fidelis was owned or controlled, in whole or in part, by Blust, and was related to defendants' debt-relief operation.[5]

---

[4] The second amended complaint names Michelle Gallagher as a defendant and Cameron Christo as a relief defendant. (Dkt. No. 366)

[5] The record from the evidentiary hearing indicated that approximately 50% or more of the law firms serviced by Fidelis were related to Strategic's debt-relief operation. (Dkt. No. 646, pgs. 29-31, n. 23, 24) Much, if not all, of Fidelis' remaining business appeared to involve law firms that were connected to Blust and engaged in debt settlement or debt litigation, even if those firms did not receive advance fees. (*Id.*)

### *Civil Contempt by Lit Def and Blust*

Also on March 25, 2025, this Court made a recommendation, to the District Court, that Blust be held in civil contempt for violating the TRO. (Dkt. No. 646) Specifically, the Court found that Blust violated the TRO by operating Lit Def for a period of time after entry of the TRO, either directly or indirectly through the use of Fidelis. (*Id.* at 33) The Court further found that Blust violated the TRO by failing to disclose to the Receiver the existence of Fidelis and its obvious connection to Lit Def and the receivership estate. (*Id.* at 33-34) The Court found Blust's contempt to be knowing and willful, since Blust, Christo, and Gallagher all went to significant lengths to actively conceal Blust's involvement with Fidelis and Fidelis' connection to Lit Def. (*Id.*) These efforts culminated in Blust, Gallagher, and Christo all filing multiple declarations with the Court, under penalty of perjury, that contained material falsities.[6] (*Id.* at pg. 34)

### *Blust Directs Millions of Dollars to Fidelis*

Lisa Jones has provided forensic accounting services to the Receiver in regard to the instant receivership and lawsuit. (Dkt. No. 667-1, ¶ 3) To that end, Jones reviewed the books and records of the receivership entities, including Fidelis, and supplied information regarding the receipt and transfer of money or other assets by these entities. (*Id.* at ¶ 4)

From February 2021 through May 2024, Fidelis received more than $57.6 million from law firms controlled by Blust. (*Id.* at ¶ 5) During 2022 and 2023, Fidelis received more than $29.4 million from Blust-controlled law firms engaged in Strategic's advance

---

The Court found that this evidence was sufficient to show that Fidelis was related to defendants' debt-relief operation. (*Id.*)

[6] In addition to recommending that Blust and Lit Def be held in civil contempt, this Court also recommended that the District Court refer the conduct of Blust, Christo, and Gallagher to the United States Attorney's office for the Western District of New York for investigation and, if deemed appropriate, the filing of criminal charges for perjury. (Dkt. No. 646, pg. 38) This Court's contempt findings, as well as its designation of Fidelis as a receivership defendant, are presently on appeal before the District Court.

fee debt-relief operation. (*Id.*) Between May 2021 and December 2023, Fidelis received $24.796 million from the Turnbull law firms. (*Id.*) The Turnbull law firms engage in contingency-fee debt relief services and are also connected to, or controlled by, Blust.[7] (Dkt. No. 190-4, ¶ 23; Dkt. No. 646, pgs. 29-30) According to the Receiver, who has access to Fidelis' records pursuant to the terms of the receivership, the transfer of millions of dollars from the Blust-controlled law firms to Fidelis, an entity also controlled by Blust, occurred without any written contracts.[8] (Dkt. No. 667, pg. 8, n. 6)

### *Fidelis Then Transfers Millions to The Bush Lake Trust and the Non-Party Receivership Entities*

After giving notice, on February 25, 2024, that Fidelis qualified as a Receivership defendant, the Receiver agreed not to execute on Fidelis' bank accounts while Fidelis challenged the receivership designation. (Dkt. No. 667, pg. 9) In return, Fidelis agreed not to transfer any of its assets while this Court reviewed Fidelis' challenge to the receivership designation. (*Id.*) However, according to the Receiver, Fidelis' promise not to dissipate assets was essentially meaningless, since Christo had already liquidated the majority of Fidelis' investments and emptied Fidelis' bank accounts. (*Id.*) Indeed, the Receiver notes that despite Fidelis receiving more than $50 million from Blust-controlled law firms between 2021 and May of 2024, there was less than $4,000 in Fidelis' bank

---

[7] Evidence in the record shows that Blust had an email address with the Turnbull Law Group. (Dkt. No. 209-2, ¶ 15) Moreover, Lit Def, the Turnbull Law Group, and the "Law Office of Jason Blust d/b/a Client First Bankruptcy" all shared, on paper, the same building address and office suits. (*Id.* at ¶¶ 16-18)

[8] The Receiver notes that "[d]espite two requests, Fidelis has not identified or provided a contract or fee schedules or, frankly, any of the sorts of operational documents one would expect to exist in a business generating more than $25 million in revenue per year." (Dkt. No. 667, pg. 8, n. 6) The Receiver further indicates that a review of Fidelis invoices reflect that "Fidelis billed the law firms per file…and [the bills] varied widely from month-to-month without explanation." (*Id.*)

account when the Receiver took control of the company in March of 2025, following this Court's designation of Fidelis as a receivership defendant.[9] (*Id.* at 10; Dkt. No. 667-1)

According to Jones' accounting analysis, Fidelis transferred more than $37.3 million to The Bush Lake Trust, BDC Group LLC, Veteris Capital, LLC, and Two Square Enterprises, Inc. between July 2021 and February 2025. (Dkt. No. 667-1, ¶ 6) Moreover, a significant portion of these transfers occurred between January 16, 2024 and February 28, 2024, almost immediately after the TRO was entered on January 11, 2024. The specific nature and timing of Fidelis' transfers of assets is described below.

### Fidelis Transfers Millions to The Bush Lake Trust

On March 1, 2021, Christo established The Bush Lake Trust ("Bush Lake"), an irrevocable trust. (Dkt. No. 366, ¶ 104) That same day, Christo transferred his ownership interest in Fidelis to Bush Lake. (*Id.*) According to Christo, Bush Lake serves as Fidelis' sole member. (Dkt. No. 190-4, ¶ 14) In July 2021, Fidelis transferred $25,000 to Bush Lake. (Dkt. No. 667-1, ¶ 7) Fidelis then continued to periodically transfer funds to Bush Lake through January of 2025, for a total of over $16 million in transferred funds. (*Id.*) Notably, the largest transfers to Bush Lake occurred in January and February of 2024. (*Id.* at ¶ 8) Specifically, Fidelis transferred $13.050 million to Bush Lake between January 17, 2024 and February 12, 2024. (*Id.*) The Fidelis balance sheet lists Bush Lake as a current asset of Fidelis, totaling $13.506 million. (*Id.* at ¶ 9)

On February 5, 2024 and April 22, 2024, Bush Lake transferred $2.7 million and $10.815 million, respectively, to the Sacha Sax Caplan, P.L., a real estate law firm located

---

[9] Moreover, the Receiver's data forensics vendor reported that the day before turning over Fidelis' information and records to the Receiver following the Court's March 25, 2025 order designating Fidelis as a receivership defendant, Christo deleted 121 documents or items from his Google Drive. (Dkt. No. 655-3, pg. 5, n. 5)

in Boca Raton, Florida. (*Id.* at ¶ 11) On April 22, 2024, a warranty deed was prepared for the sale of real property located in Boca Raton, Florida to Timothy Miller, Trustee of Bush Lake, for $13.5 million. (*Id.*) Between February 28, 2024 and December 3, 2024, Bush Lake reported $833,663 in transfers as "Leasehold Improvements." (*Id.* at ¶ 12) However, certain of these payments appear to have been used, in reality, for legal expenses related to the instant lawsuit.[10] (*Id.*)

<u>*Fidelis Transfers Millions to Two Square Enterprises, Inc.*</u>

According to the 2018 Domestic/Foreign Corporation Annual Report, filed with the State of Illinois on December 6, 2018, Christo is the president, secretary, and director of Two Square Enterprises, Inc. ("Two Square"). (Dk. No. 667-1, ¶ 15) According to the Articles of Incorporation for Resulting Florida Profit Corporation, filed on October 24, 2024 with the Florida Secretary of State, Christo is listed as the secretary and director of Two Square. (*Id.*) Christo used Two Square invoices to bill law firms for work purportedly performed in support of Strategic's debt-relief enterprise, described as "software support" and "consulting." (Dkt. No. 667, pg. 21; Dkt. No. 666, pg. 6)

Fidelis transferred $207,000 to Two Square on December 7, 2022. (Dkt. No. 667-1, ¶ 14) Fidelis transferred $664,000 to Two Square on December 28, 2022. (*Id.*) On February 8, 2023 and December 19, 2023, Fidelis transferred $85,000 and $500,000, respectively, to Two Square. (*Id.*) Notably, on January 23, 2024, twelve days after the TRO was entered, Fidelis transferred $1 million to Two Square. (*Id.*; Exh. 2) On May 7,

---

[10] The payments reported as "Leasehold Improvements" appear to include $300,000 in transfers to Hoover & Durland, the law firm representing Fidelis, Christo, and Bush Lake in this lawsuit. (Dkt. No. 667-1, ¶ 12) Bush Lake also transferred $40,000 to Nixon Peabody LLP, the law firm representing defendant Michelle Gallagher in this matter. (*Id.* at ¶ 13) As stated previously, Gallagher, a former employee of Lit Def and Fidelis, worked together with Blust and Christo to establish Fidelis as a successor to Lit Def, and also to hide Blust's involvement with Fidelis and Fidelis' connection to Lit Def and the receivership estate.

2024, Fidelis transferred $100,000 to Two Square. (*Id.*) The aggregate amount of money transferred by Fidelis to Two Square is $2.556 million. (*Id.*)

<u>Fidelis Transfers Millions to Veteris Capital, LLC</u>

On August 13, 2021, Articles of Incorporation were filed with the Nevada Secretary of State listing Christo as the manager of Veteris Capital, LLC ("Veteris"). (Dkt. No. 667-1, ¶ 18) Veteris' operating agreement reflects that Bush Lake is the sole member of Veteris and that Christo is the manager. (Dkt. No. 655-3, pg. 4; Dkt. No. 623, ¶ 126) The Fidelis balance sheet lists Veteris as a current asset of Fidelis, totaling $12.909 million. (Dkt. No. 667-1, ¶ 19; Exh. 3)

From February 2023 through December 2023, Fidelis transferred $13.550 million to Veteris. (Dkt. No. 667-1, ¶16) After that, between February 2023 and January 17, 2024, Veteris transferred over $16 million to a total of ten different entities, in varying amounts. (*Id.* at ¶ 17) One of those transactions included a $2 million transfer of funds from Veteris to Denton 380 LLC on January 17, 2024, six days after entry of the TRO. (*Id.*)

<u>Fidelis Transfers Millions to BDC Group, LLC</u>

The Receiver has proffered evidence that BDC Group, LLC ("BDC Group") is controlled and/or owned, in whole or in part, by Christo. (Dkt. No. 667, pg. 20, n. 12) BDC Global Ltd., an entity based in the United Kingdom, appears to be directly related to BDG Group. (*Id.*) In publicly available records, BDC Global Ltd. identifies Christo as its director, manager, and "person with significant control." (*Id.*) Based on the Receiver's internet research, Christo has attended several conferences or meetings with BDC Global, Ltd. (*Id.*) The bank account name for BDC Group lists Christo in its title, and BDC Group's

address is a property owned by Kyle Fox, whom the Receiver believes to be Christos' significant other.[11] (*Id.*)

From March 2023 through May 2024, Fidelis transferred $17.755 million to BDC Group. (Dkt. No. 667-1, ¶ 20) Of that amount, $8 million was transferred during a three-day period between January 22 and January 25, 2024, less than a month after entry of the TRO. (*Id.*) By the end of February 2024, BDC Group had transferred $11 million back to Fidelis, which Fidelis immediately transferred to Bush Lake. (*Id.* at ¶ 21)

Between September of 2023 and September of 2024, BDC Group transferred $4.5 million to BDCI Holdings Group Investments, LLC. (*Id.* at ¶ 22) The largest portion of those transfers, specifically $3.418 million, occurred during the period of May 2024 through September 2024, while this lawsuit was ongoing and the PI was in place. (*Id.* at ¶ 22) The initial transfers were wired to Rahn+Bodmer Co., a Swiss financial institution. (*Id.*) Additional transfers were made to Kaiser Partner Privatbank, which is located in Liechtenstein. (*Id.*) From April 12, 2024 through March 28, 2025, BDC Group transferred $2.140 million to KRF Capital LLC.[12] (*Id.* at ¶ 23) The transfers noted in the KRF Capital account were reported in four sub-accounts, specifically GP Investments, Muse, Muse (Shannon), and Tuscany Villa. (*Id.*) The transfers reported in the Tuscany Villa sub-account total $1.535 million. (*Id.*) The balance sheet for BDC Group reports "Other Assets" totaling $12.02 million, with BDCI Holdings Group Investments and KRF Capital noted as the two largest assets. (*Id.* at ¶ 25)

---

[11] Neither BDC Group, LLC nor Christo have submitted information or evidence disputing that BDC Group is owned, managed, and/or controlled, in whole or in part, by Christo.

[12] According to KRF Capital's 2023 Foreign Limited Liability Company Reinstatement, filed with the Florida Secretary of State on November 7, 2023, Kyle Fox is listed as KRF Capital's president and authorized person. (Dkt. No. 667-1, ¶ 24)

## DISCUSSION

### *Bush Lake, Two Square, Veteris, and BDC Group Fall Within the PI's Definition of Receivership Defendants*

Two Square, Veteris, and BDC Group (the "non-party receivership entities") and Bush Lake, a relief defendant, all qualify as receivership defendants pursuant to the terms of the PI. Each of these entities are affiliates of Fidelis and, by extension, of Lit Def. Bush Lake and the non-party receivership entities also qualify as receivership defendants, pursuant to the PI, because they are controlled by defendants and are related to defendants' debt-relief business.

Black's Law Dictionary defines "affiliate" as "a subsidiary, parent or sibling corporation," or a corporation "related to another corporation by shareholdings or *other means of control.*" *See* Affiliate, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). Fidelis is nominally owned by Christo and is controlled by Blust. Christo established Bush Lake at the same time he established Fidelis, and Bush Lake is Fidelis' sole member. According to counsel for Bush Lake, Bush Lake is owned by Fidelis. Indeed, "a parent corporation may be considered an affiliate, at least, of its subsidiary." *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 203 (W.D.N.Y. 2020). Veteris and Bush Lake are both listed on Fidelis' accounting sheets as assets of Fidelis. Bush Lake is the sole member of Veteris. Christo controlled Bush Lake, as evidenced by the fact that funds were removed from the trust to pay attorneys' fees on behalf of Christo and Fidelis, as well as on behalf of other defendants in this lawsuit. Christo is the president, secretary, and director of Two Square. Christo is also the manager of Veteris. Evidence in the record shows that Christo also exercised control, in whole or in part, over BDC Group. These connections, as well as the millions of dollars transferred by Fidelis to these entities, all

serve as evidence that Bush Lake, Two Square, Veteris, and BDC Group are affiliates of Fidelis that are controlled by Christo.

Bush Lake and the non-party receivership entities are also clearly related to defendants' debt-relief business. Between February 2021 and May 2024, Fidelis received over $57.6 million from law firms engaged in Strategic's debt-relief operation as well as from law firms otherwise controlled by Blust and engaged in debt-relief work. During this same time period, Fidelis transferred over $37 million to Bush Lake, Two Square, Veteris, and BDC Group. These entities are controlled by Christo, who worked together with Blust to create Fidelis as a successor to Lit Def. The record is devoid of evidence that these entities performed any tangible services or work for Fidelis in exchange for these substantial payments.[13] Instead, it appears that Bush Lake and the non-party receivership entities merely served as repositories for Fidelis' profits, which emanated, almost exclusively, from defendants' debt-relief business. *See SEC v. Elliott*, 953 F.2d 1560, 1565, n. 1 (11th Cir. 1992) (noting that where defendant "comingled funds between the various companies and failed to maintain a strict separation of companies, the district court treated the various companies as one entity for the purpose of the receivership proceedings").

Bush Lake and the non-party receivership entities argue that because Fidelis was not named as a defendant in this lawsuit at the time the PI was entered, it is not enough for the Court to conclude, under the language of the PI, that Bush Lake and the non-party receivership entities were affiliates of Fidelis. Because Fidelis is a successor or assign of

---

[13] According to plaintiffs and the Receiver, Christo used Two Square to bill the law firms for software support and consulting. But this was work supposedly performed for the law firms, not for Fidelis, and was directly related to defendants' debt-relief business.

Lit Def, the Court finds this argument to be a distinction without a difference. Likewise, the Court does not find it significant that Bush Lake and the non-party receivership entities were owned, controlled, and/or managed, at least on paper, by Christo, who was neither a defendant nor a relief defendant at the time the PI was entered.

The PI was drafted to accommodate scenarios where information arises showing that new parties or newly discovered entities have transferred or concealed assets that properly belong within the receivership estate. Fidelis is now a defendant and has been designated a receivership defendant. This Court concluded, after an evidentiary hearing and extensive factual findings, that Fidelis is a successor or assign of Lit Def; that Lit Def and Fidelis operated essentially as a single, interchangeable entity; and that Blust, a defendant in this lawsuit since its inception, controlled both entities. Moreover, Bush Lake and the non-party receivership entities are owned and/or controlled by Christo, an individual who is now a relief defendant. Facts adduced at the evidentiary hearing proved that Christo was directly involved in (1) helping Blust establish Fidelis as a secret successor to Lit Def and (2) hiding Blust's affiliation with Fidelis from the Receiver and the Court. Fidelis transferred millions of dollars earned through its association with defendants' debt-relief business to Bush Lake and the non-party receivership entities. It would defy logic if defendants could place one step between Lit Def and Blust, namely Fidelis and Christo, and, as a result, succeed in dissipating funds that would otherwise be subject to receivership.

Bush Lake also argues that the PI's definition of receivership defendants violates Federal Rule of Civil Procedure 65(d) because placing an entity into receivership is a form of injunctive relief. The Court does not agree. The placement of an entity in receivership

is not the functional equivalent of an injunction, nor does it fall under the requirements of Rule 65. *See In re Saffady*, 524 F.3d 799, 804 (6th Cir. 2008) ("By distinguishing between injunctions in § 1292(a)(1) and receiverships in § 1292(a)(2), Congress expressed its desire to treat orders relevant to receiverships differently than orders relevant to injunctions,"); *CFTC v. Walso*, 618 F.3d 218, 225 n. 3 (2d Cir. 2010) (distinguishing between injunction and order appointing receiver). And even if Rule 65 somehow did apply here, it permits the Court to extend the terms of an injunction to parties such as Bush Lake and the non-party receivership entities, who are "in active concert or participation" with defendants. *See* Fed. R. Civ. P. 65(d)(2); *NML Cap., Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) (noting that injunctions may also bind a party's agents, and those in active concert and participation with a party).[14]

> ### *The Court Exercises its Inherent Power to Expand the Receivership Estate to Include Bush Lake, Two Square, Veteris, and BDC Group*

Even if Bush Lake, Two Square, Veteris, and BDC Group did not fit within the PI's definition of receivership defendants, the Court would still conclude that they belong in the receivership estate. Courts have broad power and wide discretion to oversee the administration of a receivership. *See SEC v. Amerindo Inv.*, 05-CV-5231, 2016 U.S. Dist. LEXIS 195593 (S.D.N.Y. May 20, 2016); *Elliott*, 953 F.2d at 1566 (11th Cir. 1992). To that end, "expansion of an equity receivership may be appropriate where the requested

---

[14] Bush Lake also argues, incorrectly, that a party to the lawsuit cannot be named as a receivership defendant under the PI. Bush Lake seems to conflate the definition of "Receivership Defendant" pursuant to Section 9(N) of the PI, which has no exclusion for an entity subsequently named as a party in the lawsuit, and Section IX(S) of the PI, which instructs the Receiver to provide notice to non-parties named as receivership defendants and permits non-parties to challenge such designation in court. The Court does not read these two provisions, either together or separately, as indicating that a party to the lawsuit may not also be designated a receivership defendant.

expansion is necessary to safeguard assets for the benefit of victims and to guard against potential dissipation." *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 21-CV-60462, 2021 U.S. Dist. LEXIS 83769 (S.D. Fla. May 3, 2021). *See also SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233-34 (Dist. Nev. 1985) (corporate entity disregarded "in the interests of public convenience, fairness, and equity" where key goal of expanding receivership is "ensur[ing] that all available assets are brought within the receivership and may properly be distributed to creditors.").

To achieve these goals, receiverships have been expanded by use of the alter ego doctrine to include entities related to defendants where funds have been commingled or corporate assets used for personal purposes. *See Elmas Trading Corp.*, 620 F. Supp. at 231 (expansion of receivership to related companies where money flowed between the various entities, it appeared that no services were performed by some of the companies, there were no records of legitimate business purposes, and the receiver was unable to find normal business records). Some courts have further extended this principle to find that a receiver can exercise control over third-party property purchased using "scheme proceeds." *See S.E.C. v. Nadel*, 8:09-cv-87, 2013 U.S. Dist. LEXIS 73816, (M.D. Fla. May 24, 2013) (third party entity's use of scheme proceeds to purchase oil and gas leases subjected it to inclusion in receivership despite the fact that it was not an alter ego of defendant); *In re Fin. Federated Title & Tr., Inc.*, 347 F.3d 880 (11th Cir. 2003) (establishing constructive trust on property purchased with over 90% of funds from Ponzi scheme); *SEC v. Torchia*, 1:15-CV-3904, 2016 U.S. Dist. LEXIS 147123 (N.D. Ga., Apr. 25, 2016) (expansion of receivership appropriate to include target entities that court

Case 1:24-cv-00040-EAW-MJR    Document 692    Filed 05/22/25    Page 16 of 19

considered alter egos of defendants or "at the very least…substantially funded using the proceeds of the…scheme engaged in by Defendants[.]").

Blust and Christo conspired to create Fidelis as a secret successor to Lit Def. Fidelis then received many millions of dollars from Blust-controlled law firms engaged in Strategic's debt-relief enterprise. After the TRO was entered, and continuing through the entry of the PI, Blust and Christo actively hid Blust's involvement in Fidelis and Fidelis' obvious connection to the receivership estate. Between 2021 and 2025, Fidelis transferred over $37 million to Bush Lake and the non-party receivership entities, each of which are controlled, in whole or in part, by Christo. Most notably, at least $14 million dollars of apparent debt-relief proceeds was transferred by Fidelis to these affiliated entities almost immediately after this lawsuit began and the TRO was entered. It does not require a leap of logic to conclude that these funds were transferred in order to divert assets that were the product of Strategic's debt-relief operation, which Blust and/or Christo concluded would otherwise have been subject to receivership and the asset freeze. Indeed, this behavior is consistent with Blust and Christo's prior record of hiding assets from the Receiver, namely Fidelis, and attempting to circumvent the requirements of the TRO and the PI.[15]

Thus, the Court concludes that it is necessary to expand the receivership estate to include Bush Lake, Two Square, Veteris, and BDC Group, in order to maintain the status quo, prevent any further dissipation of assets, and protect consumers should plaintiffs

---

[15] It is also notable that Bush Lake and a number of the non-party receivership entities made significant real estate purchases and transferred money overseas after the TRO and PI were entered. In April of 2024, Bush Lake purchased a property in Boca Raton for $13.5 million. BDC Group transferred millions of dollars overseas between May 2024 through September 2024. In light of the record as a whole, these purchases and transfers appear to be attempts to further distance the profits of defendants' debt-relief operation from the named defendants and relief defendants in this lawsuit, in order to prevent such profits from being subject to receivership and the asset-freeze.

ultimately prevail in this lawsuit. *See SEC v. MJ Capital Funding, LLC*, 21-61644, 2021 U.S. Dist. LEXIS 259942, at *1-2 (S.D. Fla. Oct. 15, 2021) (granting receiver's request to add receivership entities where "expansion of the Receivership is necessary to effectively safeguard assets for the benefit of investors…and to guard against potential dissipation"); *SEC v. Complete Bus. Sols. Grp., Inc.*, 20-CV-81205, 2020 U.S. Dist. LEXIS 253062 (S.D. Fla. July 30, 2020) ("[T]he Court finds a clear necessity for expansion [of the receivership] given that tainted funds, which could be the subject of disgorgements, may be found in the entities and properties identified herein.").

### *Jurisdiction*

Bush Lake and the non-party receivership entities argue that this Court does not possess the authority to issue an order designating new receivership defendants under the PI. They contend that this Court may only designate new receivership defendants by way of a report and recommendation to the District Court. However, Bush Lake and the non-party receivership entities misunderstand the scope of this Court's authority as a result of the PI as well as the nature of the prior final, dispositive referral order that continues to apply here.

This Court did not issue the PI pursuant to a dispositive referral order made under 28 U.S.C. § 636(b)(1). Instead, on February 13, 2024, the parties to this action consented to this Court's jurisdiction to conduct all proceedings, and enter a final order, as to plaintiffs' motion for a preliminary injunction, in accordance with 28 U.S.C. § 636(c). (Dkt. Nos. 158-59) "Unlike nonconsensual referrals of pretrial but case-dispositive matters under § 636(b)(1), which leave the district court free to do as it sees fit with the magistrate judge's recommendations, a § 636(c)(1) referral gives the magistrate judge full authority

over dispositive motions...and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). Indeed, "[a] judgment entered by 'a magistrate judge designated to exercise civil jurisdiction under [§ 636(c)(1)]' is to be treated as a final judgment of the district court, appealable 'in the same manner as an appeal from any other judgment of a district court.'" *Id.*; *quoting* 28 U.S.C. § 636(c)(3). Moreover, a court with authority to enter an order "necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designated to effectuate that decree." *In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 92-93 (2d Cir. 1985).

This Court entered the PI as a final order, pursuant to Section 636(c), in the same manner as a final order and judgment from the District Court. This Court's designation of Bush Lake and the non-party receivership entities as receivership defendants is, likewise, a final order and judgment interpreting and effectuating this Court's PI. In turn, and consistent with the case law cited above, the findings herein are appealable in the same manner as an appeal from any other judgment of a district court.[16]

Finally, the Court does not find it significant that neither Fidelis nor the non-party receivership entities expressly consented to this Court's authority to enter a final judgment as to either plaintiffs' initial motion for a preliminary injunction or the instant motions by the parties seeking to avoid receivership. Fidelis is a successor of Lit Def that is controlled by Blust. The non-party receivership entities are all affiliates of Fidelis. They are owned, controlled, or managed, in whole or in part, by Christo, who worked together with Blust to create Fidelis as a secret successor to Lit Def. Blust and Lit Def have been parties to this

---

[16] Fidelis and the non-party receivership entities argue that the instant decision must be issued as a recommendation because the Court is essentially imposing an injunction on Bush Lake and the non-party receivership defendants. But this Court has already found, for the reasons discussed previously, that the designation of new receivership defendants is not the functional equivalent of an injunction.

case since its inception, Lit Def as well as Blust expressly consented to this Court's jurisdiction to enter a final order with regard to the PI. Given Bush Lake and the non-party receivership entities connections to Lit Def and Blust, as well as their connection to defendants' debt-relief operation as whole, the Court does not find their consent necessary to issue a final order interpreting the definitions in the PI and the scope of the receivership estate.[17]

## CONCLUSION

For the foregoing reasons, the Court denies the motions by Bush Lake and the non-party receivership entities challenging the Receiver's determination that they each qualify as receivership defendants. (Dkt. Nos. 655, 659) The Court designates The Bush Lake Trust, Two Square Enterprises, Inc., BDC Group, LLC, and Veteris Capital, LLC as receivership defendants pursuant to the terms of the PI.

**SO ORDERED.**

Dated:       May 22, 2025
             Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[17] Fidelis and the non-party receivership entities cite *New York Chinese TV Programs, Inc. v. U.E. Enterprises*, 996 F.2d 21 (2d Cir. 1993), for the proposition that intervenor litigants who were not parties to an action when consent to referral to magistrate jurisdiction was issued did not continue to be bound by the prior consent order, and the magistrate's denial of the motion to intervene was to be treated as a report and recommendation. The Court finds the holding in *Chinese TV Programs* to be distinguishable from the situation here. First, *Chinese TV Programs* involved a motion by new parties to intervene in a lawsuit in between a liability trial and a trial as to damages. Differently here, this Court is issuing an order interpreting and administering its prior, final PI ruling. Moreover, unlike the intervenors in *Chinese TV Programs*, Bush Lake and the non-party receivership entities continue to be, for all the reasons already discussed herein, directly connected to and fully enmeshed with the consenting defendants in this case, namely Lit Def and Blust.