# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*, <br><br> Defendants, and <br><br> STRATEGIC ESOP, *et al.*, <br><br> Relief Defendants. | **CASE NO. 1:24-cv-00040 EAW-MJR** <br><br> **PLAINTIFF STATES' RESPONSE IN OPPOSITION TO NON-PARTY ICE LEGAL'S MOTION TO INTERVENE** |

Plaintiffs, the State of New York, the State of Colorado, the State of Delaware ex rel. Kathleen Jennings, Attorney General, the People of the State of Illinois, the State of Minnesota, the State of North Carolina, and the State of Wisconsin (collectively, the "Plaintiffs") respectfully submit this opposition to Non-Party Ice Legal P.A.'s ("Ice Legal") Motion to Intervene (Dkt. 680).

## INTRODUCTION

Ice Legal has not met its burden to intervene in this case. Its application is untimely, being at least one year delayed, and it is based on an illegal contract. Ice Legal's interests will not be impaired because it has an independent action with the Receiver where it can litigate its disputes, while its interests in this case as a putative creditor will not suffer if intervention is denied. Intervention would be prejudicial to Plaintiffs as they have been engaged in contentious litigation for over a year and are

finally on the verge of moving forward with their case in discovery. Adding Ice Legal would be another distraction and impediment to the progression of this case. Ice Legal openly desires to pursue collateral issues and to challenge long-standing, well-settled orders that are law of the case. The Court should deny Ice Legal's motion to intervene.

## PROCEDURAL BACKGROUND

Plaintiffs filed this case on January 10, 2024, naming as defendants, among others, StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), and related entities ("Strategic"). (Dkt. 1). The Court entered a temporary restraining order on January 11, 2024 (Dkt. 12), and a preliminary injunction on March 4, 2024. (Dkt. 184). The court appointed the Receiver to "[p]revent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and third-party creditors who have transacted business with the Receivership Defendants." (Dkt. 184 at 20).

Ice Legal was aware of this litigation at least as soon as May 2024 when it demanded that the Receiver pay two unpaid invoices on behalf of Strategic Family, Inc., and related entities. (Receiver's Compl., Case No. 25-cv-00275-EAW, ¶ 142, attached as Ex. A.) On March 27, 2025, the Receiver in this case commenced litigation against Ice Legal, alleging breach of fiduciary duty, professional negligence, rescission of an invalid retainer, voidable or fraudulent transfer, breach of contract, and unjust enrichment. *See* Case No. 25-cv-00274-EAW (the "Ice Litigation"). Ice Legal moved to intervene in the instant case almost a year after it learned of the instant case, after extensive litigation represented by nearly 700 docket entries. (Dkt. 680).

## **LEGAL STANDARD**

To intervene of right under Rule 24(a)(2), a proposed intervenor must (1) file a timely motion; (2) assert an interest relating to the property or transaction that is the subject of the action; (3) demonstrate that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) show that its interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). The proposed intervenor must have a "direct, substantial, and legally protectable" interest "relating to the property or transaction that is [the] subject of the action." *Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 359 (S.D.N.Y. 2018) (internal citations omitted). The proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention. *Kamdem–Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016). The "[f]ailure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (cleaned up) (citations omitted).

In the alternative, Ice Legal seeks to intervene under Rule 24(b), which governs permissive intervention. Courts consider substantially the same factors for intervention of right and permissive intervention. *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). A motion for permissive intervention must be timely and show that the applicant has a claim or defense that shares with the main action a common question of law or fact. *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp.3d 582, 595 (S.D.N.Y. 2018). The

court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 561–62 (2d Cir. 2005)

Decisions resolving motions to intervene are reviewed for an abuse of discretion. *Sprint Corp.*, 407 F.3d at 561. The review of a denial of a request for permissive intervention is "particularly deferential." *Id*.

## ARGUMENT

### I. Ice Legal is Not Entitled to Intervene as of Right.

Ice Legal's motion to intervene of right fails because (1) it is untimely, (2) Ice Legal does not have a legally protected interest, (3) it has not shown that any interest will be impaired, and (4) it has not established that any claimed interest will be inadequately protected.

#### a. Ice Legal's motion to intervene is untimely.

Ice Legal's motion to intervene is untimely. In assessing whether a motion to intervene is untimely, courts consider various factors, including "(a) length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Eddystone Rail Co.*, 289 F. Supp. 3d at 591.

Ice Legal knew or should have known of its claimed interest in this litigation at least 12 months ago. Ice Legal provides no explanation for why it failed to take action once it learned about the instant litigation. Instead, Ice Legal contends that

4

the motion to intervene was timely filed soon after the Receiver commenced the Ice Litigation. But that is not the relevant date. Ice Legal's interest in intervening is the same now as it was a year ago, when the Receiver declined to pay its invoices. The delay is excessive and inexcusable. *See Alvarez v. Experian Info. Sols., Inc.*, 758 F. Supp. 3d 60, 90 (E.D.N.Y. 2024) (collecting cases where courts have routinely denied intervention where the delay in moving to intervene was comparable to, or shorter than, the delay in this case).

The delay in moving to intervene prejudices the existing parties, which is the most significant criterion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016). Ice Legal is openly pursuing collateral issues not currently pursued by the existing parties. *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 205 (E.D.N.Y. 2016) ("Case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice."). Ice Legal is objecting to the Receiver's fee application based on factual disputes to allegations about Ice Legal and not the reasonableness of the fees, and it wants to move to appoint a special receiver. (Dkt. 680-1 at 6). Ice Legal also is seeking to challenge long-settled issues, such as the Preliminary Injunction and the Appointment of the Receiver. Relitigating these issues will only further delay the resolution of this case and prejudice the parties who have been actively litigating this action. *Floyd*, 770 F.3d at 1059–60 (denying untimely motion to intervene because an untimely motion "is generally disfavored because it usually creates delay and

5

prejudice to existing parties ... and undermines the orderly administration of justice.").

By contrast, the only prejudice alleged by Ice Legal is the "prejudice [to] its ability to counter any incorrect or inappropriate information about Ice Legal presented to the Judge in this case." (Dkt. 680-1 at 13). Ice Legal is not a party to this case or in privity with any party. Any statements to this Court have no legal consequence on it nor any *res judicata* effect. They will not impact its ability to recover unpaid invoices from Strategic assets as an unsecured creditor. Ice Legal can also raise its disputes in its ongoing litigation with the Receiver.

### b.   Ice Legal does not have a legally protectable interest.

Ice Legal must establish a "legally protectable" interest. Rule 24 does not cover "any interest the applicant can put forward, but only [] a legally protectable one." *F.T.C. v. First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 362 (W.D.N.Y. 2001). Ice Legal does not articulate any specific interest. It variously claims an interest in "e-filing notices" that it does not have to pay for,[1] and disputing factual assertions in the Receiver's application for fees. These are not legally protectable interests.

To the extent that Ice Legal could potentially claim a legal interest under Rule 24 under its retainer fee agreement, the Ice Litigation is the proper place for resolution of that claim. The Receiver's complaint credibly alleges that the retainer

---

[1] Non-parties can sign up to receive case notifications in the WDNY using CM/ECF. This is therefore not a basis to permit intervention even if receiving e-filing notifications were a legally protected interest.

6

fee agreement is illegal. Ex. A at ¶¶ 54-74. Among other things, the Receiver alleges that Ice Legal was paid at an effective rate of over $40,000 per hour to do minimal work, including $1.625 million for no work at all in 2022 and 2023. *Id.* at ¶¶ 69, 79. The record reflects that Ice Legal has been fully able to protect its interests in the Receiver's litigation, filing motions for a more definite statement, to dismiss for lack of jurisdiction and for failure to state a claim, to strike, and to stay that action. *See* 25-cv-275, Dkt. 18.

Ice Legal also claims that it has an interest in opposing the "unlawful pursuit of litigation against it," relying on *Fed. Trade Comm'n v. Apex Capital Grp.,* No. 22-55342, 2023 WL 8592870, at *1 (9th Cir. Dec. 12, 2023). (Dkt. 680-1 at 13.) As an initial matter, unlike Wells Fargo in the unreported and nonprecedential Ninth Circuit case Ice Legal cites, Ice Legal does not appear to be claiming that the Ice Litigation is "unlawful," but rather that the Receiver should not prevail for a variety of reasons. Moreover, the court did not find that Wells Fargo established a Rule 24 "interest" but only that it established constitutional standing. In fact, the court never reached the issue because, like Ice Legal's motion here, Wells Fargo's motion to intervene was untimely. *See Apex Capital,* 2023 WL 8592870, at *2.

    **c.**    **The disposition of the action will not impair or impede Ice Legal's ability to protect its interests**.

Ice Legal's interests will not be impaired if it is not allowed to intervene because it is free to pursue its rights in an already-existing independent action. The Second Circuit has "consistently denied motions for intervention by right from applicants who remain free to pursue adjudication of their rights in independent

7

actions or in other proceedings." *First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. at 363 (citing *United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999)). That ability is undeniable here where Ice Legal and the Receiver already have a separate, recently-initiated action where they can litigate the issues Ice Legal raises.

  **d. Ice Legal's interests are adequately protected by the existing parties**.

Ice Legal argues its interests as defendants in the Ice Litigation are "not adequately protected" in the instant case. (Dkt. 680-1 at 14.) Ice Legal faces a heightened burden in establishing inadequacy. "The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. at 364 (citing *City of New York*, 198 F.3d at 367). In *United States v. Hooker Chemicals & Plastics Corp.*, the Second Circuit noted that "where governmental parties are already present in a case, private parties must make more than a minimal showing of inadequate representation," requiring the proposed intervenor to show that the governmental party is "ill-equipped or unwilling" to protect their interests before finding inadequate representation. 749 F.2d 968, 985 (2d. Cir. 1984) (citations omitted). Ice Legal has not met this burden. First, it has not argued that the government Plaintiffs are "ill-equipped or unwilling" to protect its interests. And, second, it contends that "[n]o existing party" has raised the interests that Ice Legal seeks to protect, namely, issues arising from "the Third-Party case [with the Receiver] which only impact Ice Legal." This bare-bones argument does not establish inadequacy, but it does reinforce the prejudice to the existing parties. Thus, Ice

8

Legal's arguments provide no reason to grant intervention, but, rather, a reason to deny it.

Ice Legal's motion to intervene is also misplaced because it is a purported unsecured creditor of Strategic. (See Dkt. 680-2 at 5.) But most of Strategic's assets are subject to the lien of a secured creditor. (*See* Dkt. 325, granting intervention of banks asserting a secured lien of over $35 million on company assets.) As the Receiver reported shortly after taking control of the company, Strategic was remarkably undercapitalized—due largely to the sale of Defendants' interest in the company to the ESOP—holding only approximately $7 million in liquid assets as of January 31, 2024. (Dkt. 115-1 at 17.) As such, Ice Legal's intervention in this case would have little impact on its ultimate prospect of recovery, even assuming it was able to establish its position as an unsecured creditor.

## II. The Court Should Deny Ice Legal's Application for Permissive Intervention.

As explained above, Ice Legal's motion to intervene is untimely and should be denied on that basis. Further, as stated above, it will prejudice the existing parties by raising collateral issues and causing delay. "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like." *First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. at 364. This case has seen multiple motions by multiple parties demanding multiple forms of relief and remains technically in a preliminary stage prior to the entry of case management order. Further delay would prejudice all the parties' interest in a resolution of the complex

9

issues already before the Court. Accordingly, this Court should likewise deny Ice Legal's motion for permissive intervention.

## III. The Court Should Deny Ice Legal's Request for the Appointment of a Special Receiver

Ice Legal argues that it must be allowed to intervene so it can move for a new, *ad litem*, Receiver. Ice Legal asserts that this relief is needed because the Receiver appointed by this Court is unable to handle the "inherent conflict" between Ice's position as a purported creditor of the Receivership estate and its position as a defendant in the Ice Litigation. (Proposed Motion to Appoint Special Receiver, Dkt. 680-3 at 20.) Ice Legal claims that a "special receiver" would resolve this conflict.[2]

To the contrary, it is the outcome of the Ice Litigation that will resolve that conflict. Whether Ice Legal is properly a creditor or a judgment debtor is the very subject of the Receiver's litigation against Ice Legal. If Ice Legal did indeed breach its fiduciary duty to Strategic, engage in professional negligence, and/or receive a voidable or fraudulent transfer from Strategic, as the Receiver alleges, then it is not properly a creditor at all and has no claim to the Receivership Estate.

If, on the other hand, the court dismisses the Receiver's complaint and finds that Ice Legal is properly a creditor, then Ice Legal will simply take its place in line

---

[2] Ice Legal cites only one case for the proposition that the appointment of a receiver *ad litem* would solve the "conflicts" Ice Legal asserts exist here. *See* Dkt. 680-3 at 21, citing *Commodity Futures Trading Comm'n v. Eustace*, No. CIV.A.05-2973, 2007 WL 1314663 at *11-13 (E.D. Pa. May 3, 2007). But in the *Eustace* case, both plaintiff CFTC and defendants agreed that the court-appointed Receiver had a potential conflict due to his undisclosed *prior legal representation* of entities that could possibly become third-party defendants in the action, and the court agreed. *Eustace* is entirely inapposite to the facts of this case.

10

with other unsecured creditors after Strategic's secured creditors. It would be a waste of Receivership resources—not to mention judicial resources—to engage a separate receiver simply to handle litigation regarding one unsecured creditor's claim who is unlikely to recover. Ice Legal's request for intervention for the purpose of bringing a motion for a receiver *ad litem* should be denied.

## CONCLUSION

For all the foregoing reasons, this Court should deny Ice Legal's motion to intervene.

Dated:      May 22, 2025              Respectfully submitted,

Attorneys for Plaintiffs

PHILIP J. WEISER
Attorney General State of Colorado

*/s/ Kevin J. Burns*
Kevin J. Burns, CO Reg. No. 44527
*(pro hac vice)*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial
Center Consumer Protection Section
1300 Broadway, 9th Floor
Denver, CO 80203
Phone: (720) 508-6110
Kevin.Burns@coag.gov

*Attorney for Plaintiff State of Colorado,
 ex rel. Philip J. Weiser, Attorney General*

LETITIA JAMES
Attorney General of the State of New York

*/s/ Genevieve S. Rados*
Christopher L. Boyd
Genevieve S. Rados
Assistant Attorney General

350 Main Street, Suite 300A
Buffalo, NY 14202
Phone: (716) 853-8457
Email: Christopher.Boyd@ag.ny.gov

*Attorneys for the State of New York*

KATHLEEN JENNINGS
Attorney General State of Delaware

*/s/ Maryanne Donaghy*
Marion M. Quirk (*pro hac vice*)
Director of Consumer Protection
Deputy Attorney General
Maryanne Donaghy (*pro hac vice)*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8843
Maryanne.donaghy@delaware.gov

*Attorneys for State of Delaware,*
*ex rel. Kathleen Jennings, Attorney General*

KWAME RAOUL
Attorney General State of Illinois

By: */s/ Matthew Davies*
Greg Grzeskiewicz, Chief,
Consumer Fraud Bureau
*Pro hac vice application*
*forthcoming, if required*
Amanda E. Bacoyanis,
Assistant Attorney General,
Consumer Fraud Bureau
*(pro hac vice)*
Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau
*(pro hac vice)*
Office of the Illinois Attorney
General 115 S. LaSalle St.,
26th Floor
Chicago, Illinois 60603
(312) 814-2218

12

Greg.Grzeskiewicz@ilag.gov
Amanda.Bacoyanis@ilag.gov
Matthew.Davies@ilag.gov

*Attorneys for the People of the State of Illinois*

KEITH ELLISON
Attorney General of Minnesota

*/s/ Evan Romanoff*
Evan Romanoff *(pro hac vice)*
Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
Telephone: (651) 728-4126
evan.romanoff@ag.state.mn.us

*Attorney for the State of Minnesota*

JEFF JACKSON
Attorney General of North Carolina
*/s/  M. Lynne Weaver*
M. Lynne Weaver (*pro hac vice*)
Special Deputy Attorney General
N.C. State Bar No. 19397
114 W. Edenton Street
Raleigh, NC 27602
Telephone: (919) 716-6039
lweaver@ncdoj.gov

*Attorney for the State of North Carolina*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Lewis W. Beilin*
Lewis W. Beilin *(pro hac vice)*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-1221

Lewis.Beilin@wisdoj.gov

13

*Attorney for State of Wisconsin*

14