UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. <br><br> Defendants, and <br><br> STRATEGIC ESOP, et al., <br><br> Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**RECEIVER'S OPPOSITION TO ICE LEGAL'S MOTION TO INTERVENE**

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1
II. ARGUMENT .......................................................................................................... 3
    A. Ice Legal's Request to Intervene is Not Timely ........................................ 3
    B. Ice Legal Has Not Identified a Direct, Substantial, and Legally Protectable Interest ......................................................................................................... 4
        1. Ice Legal's "Objections" to the Fee Application Do Not Create A Protectable Interest ......................................................................... 6
    C. Ice Legal's Request to Appoint A Special Receiver Does Not Establish a Cognizable Interest and Is Futile ............................................................... 9
        1. The Receiver did not attempt a ruse to obtain pre-suit discovery ............. 10
        2. Ice Legal's Status as a Putative Creditor Does Not Create A Protectable Interest in the Litigation ............................................ 11
    D. This Lawsuit Will Not Impair or Impede Ice Legal's Interests. .......................... 13
    E. The Court Should Not Exercise its Discretion and Allow Permissive Intervention ............................................................................................... 14
III. CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*,
  No. 15-CV-044, 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) .................................. 2

*Gale v. Stallone*,
  No. 91-Civ.-3467 (JFK), 1993 WL 410162 (S.D.N.Y. Oct. 154, 1993) ................ 11

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
  2008 WL 2594819 (S.D.N.Y. June 26, 2008) ........................................................ 2

*Kamdem-Ouaffo v. Pepsico, Inc.*,
  314 F.R.D. 130 (S.D.N.Y. 2016) ............................................................................ 3

*Madison Stock Transfer, Inc. v. Netco Invs., Inc.*,
  No. CV 06-3926, 2007 WL 2902960 (E.D.N.Y. Sept. 27, 2007) ........................... 5

*Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) ................................................................................ 14

*New York News, Inc. v. Kheel*,
  972 F.2d 482 (2d Cir. 1992) .................................................................................. 4

*New York v. Abraham*,
  204 F.R.D. 62 (S.D.N.Y. 2001) ........................................................................... 14

*Oneida Indian Nation v. New York*,
  732 F.2d 261 (2d Cit. 1984) .................................................................................. 9

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J. P. Morgan Acceptance Corp. I*,
  2011 WL 6182090 (E.D.N.Y. Dec. 13, 2011) ....................................................... 3

*SEC v. American Board of Trade, Inc.*,
  830 F.2d 431 (2d Cir. 1987) .................................................................................. 9

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ...................................................................................... 3

*United States v. Yonkers Bd. of Educ.*,
  801 F.2d 593 (2d Cir.1986) ................................................................................... 3

I.      INTRODUCTION

Ice Legal, P.A. and its two attorneys, Thomas Ice and Ariane Ice (collectively "Ice Legal"), have been aware of this regulatory enforcement action since shortly after the Temporary Restraining Order was entered on January 11, 2024 and definitely as of May 2024.  Over the last sixteen months the parties have engaged in extremely active litigation involving almost seven hundred docket entries.  Ice Legal did not seek to intervene in the case.

The Receiver recently sued Ice Legal for, among other things, the return of more than $2.5 million the firm improperly received from Receivership Defendants and breaches of fiduciary duties.[1]  Almost immediately, Ice Legal file a motion to intervene.  The firm's request to intervene is not driven by the existence of a legitimate interest in this case, but rather, it is part of a frantic reaction to the Receiver's lawsuit, as one of eight motions that Ice Legal has filed in the three weeks since making an appearance.[2]  That is before counting the two motions attached to its motion to intervene that Ice Legal requests to file if intervention is granted (Dkt. Nos. 680-2 & 680-3) and also does not account for its apparent desire to intervene "for other purposes, including potential challenges to the Preliminary Injunction or the appointment of the Receiver." Dkt. No. 680-1 at 6.  Ice Legal's barrage of motions, including this one, are designed to create

---

[1] Case No. 1:25-cv-00275-EAW (W.D.N.Y.).

[2] Six motions were filed in 66-page Joined Rule 12 Motions, including:

- a. Motion for More Definite Statement;
- b. Motion to Dismiss for Lack of Jurisdiction and Insufficient Process;
- c. Motion to Dismiss on the Grounds that Claims Must Be Arbitrated;
- d. Motion to Dismiss for Failure to State a Claim;
- e. Motion to Strike; and
- f. Motion to Stay (Dkt. No. 18).

Defendants then separately filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Dkt. Nos. 22 & 22-1.

1

chaos in these proceedings, cause the Receiver to waste resources, and attempt to delay an adjudication of the claims on the merits and judgment against the firm. It will not succeed.

Intervention under Rule 24(a)(2) as of right is granted when the four following conditions are satisfied:

(1) The motion is timely;

(2) The applicant asserts an interest relating to the property or transaction that is the subject of the action;

(3) The applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and

(4) The applicant's interest is not adequately represented by the other parties.

*See Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.,* No. 15-CV-044, 2016 WL 792411, at *4 (E.D.N.Y. Feb. 29, 2016) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Id.*

Ice Legal's motion is untimely – presented as it was more than sixteen months after the case was initially filed. Ice Legal has no protectable interest *in this case.* This is evidenced by the frivolity of the arguments presented in the motion, such as disagreeing with the word choice (not the reasonableness of the fees) in the Receiver's Fee Application and arguing it should be allowed to intervene so it can receive E-Filing notices in the case. Ice Legal can adequately protect any interest it does have by defending itself in the Receiver's lawsuit. Because Ice Legal fails to meet any of the intervention requirements, the motion must be denied. It should also be denied on futility grounds.[3]

---

[3] *See generally In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008) ("In determining whether the proposed intervention is futile, the court must view the application on the tendered pleadings—that is, whether those pleadings

2

Finally, this is not a situation where the Court should exercise its discretion and allow Ice Legal to permissively intervene. Allowing intervention at this late stage would greatly prejudice the parties to this lawsuit, given the age of the case and Ice Legal's apparent litigation strategy.

## II. ARGUMENT

### A. Ice Legal's Request to Intervene is Not Timely

Determining if a motion to intervene is timely rests with the sound discretion of the trial court. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). "Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.* "While courts use these four factors as a guide, the determination of whether a motion to intervene is timely must be 'evaluated against the totality of the circumstances before the court.'" *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001)); *see also United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir.1986) (timeliness requirement "flexible" and "decision is one entrusted to the district judge's sound discretion.").

Here, intervention is not timely, and the delayed request, if granted, will prejudice existing parties. This regulatory enforcement action has been pending for more than sixteen

---

allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits.") (internal citation and quotation marks omitted); *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J. P. Morgan Acceptance Corp. I,* 2011 WL 6182090, at *1 (E.D.N.Y. Dec. 13, 2011) (same).

3

months  The parties in this lawsuit have engaged vigorous litigation during almost the entire period, resulting in almost seven hundred docket entries.

Ice Legal has been aware of the lawsuit since shortly after the TRO was entered.  Despite knowledge of the lawsuit, the Receiver's appointment, and the intervention by the Strategic-related law firms immediately after the TRO, Ice Legal made no effort to participate in the case.  It was only after Ice Legal was recently sued by the Receiver in a separate action for, among other things, payments the firm improperly received from Receivership Defendants that Ice Legal sought to intervene.  But the lawsuit against Ice Legal did not trigger or create an interest in this regulatory enforcement action.

And beyond this, on October 16, 2024, *see* Dkt. No. 680-3 at 32, the Receiver reached out to Ice Legal and informed Ice Legal that, "the Receiver intends to bring a lawsuit against Ice Legal, and consistent with that, the Receiver is denying Ice Legal's request to be paid any further amounts."  *Id.*  Even after learning that information, Ice Legal sat on the sidelines.  That six-month delay alone renders its motion untimely.

In short, the request to intervene is not timely.

**B.    Ice Legal Has Not Identified a Direct, Substantial, and Legally Protectable Interest**

An interest sufficient to support intervention as of right exists where a proposed intervenor possesses an interest that is "direct, substantial, and legally protectable." *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992).  Ice Legal has not identified any such interests.  The firm offers three purported grounds to intervene: 1) it wishes to object to the Receiver's Fee Application (not to any of the fee requests themselves, but as to narrative descriptions about Ice Legal); 2) it seeks to have a special receiver appointed to evaluate and conduct the Receiver's lawsuit against it; and 3) it seeks to intervene "for other purposes,

4

including potential challenges to the Preliminary Injunction or the appointment of the Receiver, as well as the purpose of receiving E-Filing Notices from this case." Dkt. No. 680-1 at 6. None of these satisfies Rule 24.

In support of its first two purported interests Ice Legal attaches two proposed briefs it will file should it be allowed intervene: "Objections" to the Receiver's Fee Application narrative about Ice Legal (Dkt. No. 680-2), and a Motion to Appoint a Special Receiver to evaluate and conduct the lawsuit the Receiver filed against Ice Legal (Dkt. No. 680-3). As detailed below, neither of these purported grounds constitutes a legally protectable interests compelling intervention.

Ice Legal's third purported interest merits little discussion. Even at this late date, Ice Legal can only hypothesize that it seeks to intervene because it may "have potential challenges to the Preliminary Injunction or the appointment of the Receiver." The Receiver was appointed temporarily on January 11, 2024 in the TRO; the designation was made permanent when the Preliminary Injunction was entered on March 4, 2024. The Preliminary Injunction was granted after a two-day evidentiary hearing, extensive briefing and oral argument from the parties and the Strategic-related law firms, which were allowed to intervene shortly after the TRO.

Although sixteen months have elapsed, Ice Legal still cannot identify anything other than it may have "potential" challenges. That is hardly the direct, substantial and legally protectible interest necessary to intervene. *See Madison Stock Transfer, Inc. v. Netco Invs., Inc.*, No. CV 06-3926, 2007 WL 2902960, at *3 (E.D.N.Y. Sept. 27, 2007). Ice Legal's claim that it should be allowed to intervene so it can get E-Filing Notices is even more trivial than its "potential" claims grounds. The lack of substance to any of Ice Legal's intervention arguments, in combination

5

with filing of 10 motions in three weeks, adds needless delay and serves to burden the Court, the Receiver, and parties having to address immaterial matters.

> 1. Ice Legal's "Objections" to the Fee Application Do Not Create A Protectable Interest

As to the supposed "Objections" to the Fee Application, Ice Legal complains about the Receiver's description of the Ice Legal lawsuit contained in one paragraph of the Fee Application, which stated:

> The Receiver's team also investigated legal malpractice and other claims against a law firm (named Ice Legal, P.A.), which had charged numerous Receivership Defendants (StratFS, Lit Def Strategies, and Hedgewick) and a tribal entity called MEC Development LLC more than $2.5 million dollars in legal fees, while providing approximately 60 hours of work. The Receiver attempted to resolve matters without resorting to litigation and entered into a Tolling Agreement with Ice Legal during those discussions. The discussions were ultimately not successful, and a lawsuit to recover the fees has been filed in the Western District of New York.

Dkt. No. 669-1 at 12-13. Ice Legal claims that this narrative was not "circumspect and balanced" and was designed to "surreptitiously" "prejudice the Court against Ice Legal." Dkt. No. 680-2 at 7.

Ice Legal's requested relief is for that portion of the report to "be rewritten to comport with McNamara's duty of honesty and full disclosure," "to admonish McNamara and instruct him that, going forward, he should present both sides of this any other third-party litigation in future fee applications and reports so that the Court may evaluate his decision to expend funds of the receivership estate on such litigation." Dkt. No. 680-2 at 13.

There was nothing "surreptitious" or *ex parte* about the Receiver acting as an agent appointed by the Court providing descriptions of matters he and his team worked on in a Fee Application: this was filed on a public docket, which Ice Legal can and did access. Moreover, the description did not paint Ice Legal in a false light. Ice Legal's "Objections" to word choice

6

do not substantively address the merits of the Fee Application, much less provide a basis to deny any aspect of it; thus, it fails on grounds of futility and trivialness.

The same is true with Ice Legal's claim that "McNamara's statement that he attempted to resolve matters through 'discussions' before resorting to litigation' [is a] self-laudatory statement that is simply untrue." Dkt. No. 680-2 at 7. We are unclear how reporting to the Court that unsuccessful "discussions" took place is either self-laudatory or untrue. As Ice Legal confirms, it is undeniable that rather than filing his lawsuit, between October 2024 and March 2025, the Receiver attempted to resolve matters by sharing an initial draft of the Complaint, proposing and entering into a Tolling Agreement, discussing the possibility of pre-suit mediation (including proposing names of mediators), attempting unsuccessfully to obtain Ice Legal's client file (which Ice Legal refused to provide, despite fiduciary obligations to do so), and held other substantive discussions. Ice Legal may not like the outcome of those "discussions," but there is nothing false about the fact that "discussions" took place.[4]

Offering a draft complaint and suggesting mediation was done out of a sincere effort to avoid litigation. However, the Receiver ultimately concluded that the parties simply were too far apart for *voluntary* mediation to be fruitful, and the decision was made to proceed with litigation.

Ice Legal's next objection to the Fee Application narrative is the "implication that the retainer agreement was an hourly contract." Dkt. No. 680-2 at 10. The description included basic and brief facts that Ice Legal was paid more than $2.5 million while providing approximately 60 hours of work. That is undeniably true. Whether Ice Legal has a defense will be a matter resolved in the Receiver's lawsuit against the firm, and it will have a fulsome

---

[4] Ice Legal counsel states in her declaration, "In our telephone *conversations*…:" Dkt. No. 680-4 ¶ 5.

7

opportunity to present its arguments in its own word choice.  Ironically, it is Ice Legal in its "Objections," which is arguing and mischaracterizing facts.

Ice Legal's next criticism of the Fee Application is equally frivolous and similarly fails to establish a viable interest.  Ice Legal argues that "Ice Legal charged their retainer fee to three (so-called numerous) Receivership Defendants when only two of them are, in fact, Receivership Defendants."  Dkt. No. 680-2 at 11.[5]  But, there were in fact three Receivership Defendants who signed the Engagement Agreement, because Hedgewick Consulting is a Receivership Defendant, having been designated by the Receiver as such in August of 2024.  While Ice Legal is wrong, and simply did not know that fact, it is the trivial nature of its critique regarding utterly immaterial matters that reveals the frivolous nature of Ice Legal's objections.  And Ice Legal goes a step further, claiming that the statement "falsely implies that Ice Legal's contract was primarily with Receivership Defendants when in, fact, they made up less than a third of Ice Legal's clients under the retainer."  *Id.*  But, as will be addressed in the case against Ice Legal, while Ice Legal nominally had hundreds, if not thousands, of "clients" on paper, in reality, it only had an actual attorney-client relationship with Receivership Defendants.  That too is a factual matter for the lawsuit against Ice Legal that this Court need not wade into.

Lastly, Ice Legal's claim is that in his Fee Application, the Receiver "impl[ies] that MEC," which is a non-party, is "an entity whose attorney-client relationship with Ice Legal is the subject of the Third-Party case."  Dkt. No. 680-2 at 11.  Ice Legal then claims that the Receiver is attempting to "further[] the illusion that most of Ice Legal's former clients are now under his

---

[5] Ice Legal further claimed, "This [description] is simply inaccurate as to the identification of the parties for which McNamara has the power to institute a claim."  *Id.*

8

control." Dkt. No. 680-2 at 11. The Receiver nowhere claims that he is bringing any claims on behalf of any Non-party, including MEC, and Ice Legal's grievance on this point is trivial.

None of Ice Legal's "Objections" establishes any cognizable interest which must be protected in this lawsuit.

        **C.    Ice Legal's Request to Appoint A Special Receiver Does Not Establish a Cognizable Interest and Is Futile**

In managing the Receivership Estate, the Court has broad discretion regarding the management of this equitable receivership and has established by court order the Receiver's duties and responsibilities in this case. In an obvious effort to avoid the Receiver's lawsuit, Ice Legal asks the Court appoint a "special or 'ad litem' receiver on the grounds that McNamara has repeatedly failed to comply with the Requirements of his office as Receiver in dealings with Ice Legal and the Third-Party case." Dkt. No. 680-3 at 8. This claim is baseless and not supported by any facts. For that reason, intervention should be denied on futility grounds. *Cf. SEC v. American Board of Trade, Inc.,* 830 F.2d 431, 443 (2d Cir. 1987)("[T]he court was not required to grant leave to intervene to file a clearly meritless complaint"); *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cit. 1984) (no right to intervene to add "frivolous" claim).

As to the merits of Ice Legal's arguments to appoint a special receiver, there is no conflict necessitating appointment of a Special Receiver. We strongly disagree with Ice Legal's characterizations and contentions in the proposed Motion to Appoint, but will resist the urge to rebut every point. Contrary to Ice Legal's characterizations, the Receiver and his counsel have undertaken their obligations to the Court, consumers, creditors, and the parties seriously and aim to treat all, including Ice Legal, with respect, fairness, and civility. We will continue to do so.

We are forced to address a couple of particularly egregious Ice Legal arguments.

9

1. <u>The Receiver did not attempt a ruse to obtain pre-suit discovery.</u>

Ice Legal claims a special receiver should be appointed only as to Ice Legal because "McNamara breached his fiduciary duty to Ice Legal as a creditor by misrepresenting his purpose in seeking documents from Ice Legal. He purposefully abused the receiver-creditor relationship (and a purported attorney-client relationship) by seeing them as a pretext to obtain pre-suit discovery against Ice Legal while keeping Ice Legal in the dark about his intention to bring a lawsuit." Dkt. No. 680-3 at 8.

This grievance is meritless. The Receiver requested a copy of the client file from Ice Legal to evaluate Ice Legal's claim. It is hardly surprising, and in fact, mandatory that when evaluating any purported claims by Ice Legal, the Receiver must also investigate what claims, if any, the Receivership Estate might have against a putative creditor, as Ice Legal claimed to be. And, if it had turned out that Ice Legal had completed uncompensated work, especially pre-receivership, then that would have informed the Receiver's thinking.

Beyond this, however, Ice Legal glosses over a key fact that the Receiver, standing in the shoes of the Receivership Defendants, was and is entitled to receive a copy of the client file – and that isn't a matter of pre-suit discovery. Upon request, a client, even a joint client, is of course entitled to request a copy of the client file, which belongs to the client, and the lawyer has a fiduciary duty to provide a copy of the client file to the client. Thus, Ice Legal gets this issue backwards: the existence of the attorney-client relationship required Ice Legal to produce the client file to the Receiver and other joint clients.

In response, Ice Legal claimed that "he had concerns about McNamara's claim of client status in a proceeding that was outside the scope of the engagement" and "also asserted that the ethics rules would require Ice Legal to bow out of and such attorney-client relationship because it would be adverse to other clients in the same engagement." Dkt. No. 680-3 at 11. In another

10

email, Mr. Ice once again refused to produce the client file, disregarding provided case law showing that the Receiver stands in the shoes of the Receivership Defendants, and instead claiming "[the caselaw] does not address our responsibilities to all the former clients in our engagement, some of which appear to have adverse interests." *Id.* at 12. But these concerns of supposed "adverse interests" do not address or explain how Ice Legal could not produce a single page from the client file to all of their joint clients.

Left without any cooperation from Ice Legal, the Receiver was required to expend resources to assemble relevant documents, including invoices, from Receivership records and carried out his investigation thereafter. Based on that investigation, the Receiver concluded not only that Ice Legal was not a creditor, but also that there were serious and substantial claims to pursue against Ice Legal.

### 2. Ice Legal's Status as a Putative Creditor Does Not Create A Protectable Interest in the Litigation

Ice Legal repeatedly claims it is a "creditor." *See*, *e.g.*, Dkt. No. 680-3 at 6. It is not; and its self-proclaimed (and incorrect) claim that it is a creditor of the Receivership Estate does not confer any right to participate in this regulatory enforcement action. Certain creditors, for instance, judgment creditors or secured creditors like the banks that intervened in this case, have legally cognizable interests (*see, e.g., Gale v. Stallone*, No. 91-Civ.-3467 (JFK), 1993 WL 410162, at *1 (S.D.N.Y. Oct. 154, 1993). Given the undercapitalization of the Strategic business, there is little hope that unsecured creditors will receive payment and secured creditors, like the banks here, will likely receive pennies on the dollar. As a result, Ice Legal's claim of creditor status does not establish any cognizable right to mandate intervention; in fact, it has a forum where that matter will be determined – the Receiver's lawsuit against the firm.

11

In May 2024, Mr. Ice reached out to the Receiver, demanding that Ice Legal be paid its two unpaid invoices, totaling $625,000. Dkt. No. 680-3 at 29-30. He demanded the money be paid out of Receivership Estate funds in advance of other creditors, including any potential consumer victims. Mr. Ice took credit for "spearhead[ing] far-ranging multistate litigation against these entities" and highlighted the purported "successful settlements for each of our consumer clients." *Id.* In other words, Defendants attempted to justify further payments from their Receivership Defendant clients (after Strategic was no longer operational and a Preliminary Injunction was in place) on the grounds that Ice Legal had successfully sued these very same clients years ago. Mr. Ice then vaguely claimed that "[a]fter these settlements, we were engaged by the Defendants in a multiyear retainer agreement (2021-2024) to directly do what our consumer litigation had indirectly done — help them comply with consumer-oriented 'state and federal laws and regulations.'" *Id.* Specifically, Mr. Ice claimed that "[u]nder this agreement, we provided, and have been available to provide, legal advice that would ultimately benefit the consumer." *Id.*

The investigation into Mr. Ice's request over the coming months revealed he omitted several key facts. He did not mention that Ice Legal *had not done any legal work for any client under this Engagement Agreement for more than three years (since December 2021);* and he did not mention that Ice Legal had only performed about 60 hours of work over the course of nearly three years for which the firm had been paid more than $2.5 million, with approximately 50 of those hours occurring within the first two months of the representation.

Instead, Mr. Ice had explained to the Receiver that Ice Legal's clients "have missed their first two 2024 payments." He then went further and made a remarkable request: "***Due to the nature of our work, we ask for the prioritization of the payment of this and the remainder of***

12

*the 2024 fees*, either through the captive insurance policy … or the receivership estate" (emphasis added).

Mr. Ice was requesting that his firm be paid *before all other potential creditors, including the consumers*. And Mr. Ice did this, even though he knew they had performed no legal work at all in 2022 through 2024 – and he also knew that there no legal work that could now be done in the future, given that the debt relief enterprise that had been shuttered after this lawsuit.

After an examination of Ice Legal's claim was conducted, the firm was ultimately notified through counsel that it was not a creditor in this case and its claim was denied. In fact, the investigation revealed the Receivership Estate had paid more than $2.5 million in fees alone to Ice Legal and concluded that a lawsuit should be brought, as detailed in the Receiver's Complaint.

Moreover, to the extent that Ice Legal claims any interest in this case based on its rights as a supposed creditor, its motion is untimely. It was informed of the Receiver's determination that Ice Legal was not a creditor on October 16, 2024. More than seven months have elapsed and Ice Legal has not challenged the creditor determination; this constitutes impermissible delay should it wish to challenge the determination in this lawsuit.[6]

### D. This Lawsuit Will Not Impair or Impede Ice Legal's Interests.

Ice Legal can protect any rights it has in the lawsuit filed against it by the Receiver. It is not situated such that without intervention, its interests may be impaired or impeded in this case.

---

[6] Of course, this does not mean that Ice Legal lacks a forum to raise its supposed entitlement to be paid any amounts it claims to be owed. In fact, while actions against the Receivership Estate by a creditor would ordinarily be subject to an automatic stay, the fact that Ice Legal has been sued by the Receiver in a separate case will actually enable it to raise its arguments that it is a putative creditor in the context of a counterclaims or a setoff defense. But the parties in this regulatory enforcement action and the Court, and the Receiver, should be spared from the litany of grievance briefs Ice Legal seems intent on filing.

*Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). Indeed, since making an appearance in the Ice Legal lawsuit earlier this month (on May 1st), the firm has already filed seven separate motions in that case (a 66-page joint motion compiling six separate motions), then another motion to dismiss for lack of subject matter jurisdiction, and it has even served a Rule 11 letter upon the Receiver. Not a single of the motions has merit – and the Rule 11 letter is frivolous. But, for purposes of intervention in this case, the fact remains that each of these motions will be heard and can be addressed in the context of that case.

> **E.   The Court Should Not Exercise its Discretion and Allow Permissive Intervention**

The Court has the discretion to permit intervention under Rule 24(b)(2). The rule provides that "the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. In making its decision, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *New York v. Abraham*, 204 F.R.D. 62, 66 (S.D.N.Y. 2001).

As discussed above, Ice Legal does not meet the requirements for intervention by right. Ice Legal offers no reason for the Court to exercise its discretion and allow permissive intervention. Allowing Ice Legal to intervene at this stage will prejudice the parties who have been involved since January of 2024. That is particularly true given Ice Legal's scattershot strategy and frivolous grievance motions the firm appears intent on filing.

14

### III.   CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court deny Ice Legal's motion to intervene.

Dated: May 22, 2025

                **MCNAMARA SMITH LLP**

                By:  */s/ Logan D. Smith*
                Logan D. Smith  (*Pro Hac Vice*)
                Alexander D. Wall (*Pro Hac Vice*)
                McNamara Smith LLP
                655 West Broadway, Suite 900
                San Diego, California 92101
                Telephone:  (619) 269-0400
                Facsimile:  (619) 269-0401
                Email:  lsmith@mcnamarallp.com;
                awall@mcnamarallp.com

                *Attorneys for Court-appointed Receiver,*
                *Thomas W. McNamara*