UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

             Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

             Defendants, and

DANIEL BLUMKIN, et al.,

             Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

**REPLY MEMORANDUM IN SUPPORT OF THIRD-PARTY
MOTION TO INTERVENE FOR PURPOSES OF FILING AN OBJECTION TO
RECEIVER'S REPORT
AND A MOTION TO APPOINT SPECIAL RECEIVER
AND FOR OTHER PURPOSES**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorney for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

DEFINED TERMS ..................................................................................................................... iv

REPLY IN SUPPORT OF MOTION TO INTERVENE ............................................................ 1

    I.    Preliminary Rebuttals ................................................................................................ 1

        A.    The State AGs jump into the fray with the surprising claim that they would protect Ice Legal's interests. ........................................................... 1

        B.    McNamara represents that Ice Legal's pre-answer motions were completely without merit or proper purpose, without telling the Court that, less than two hours later, he would amend the Complaint because of them. ......... 2

        C.    McNamara is seeking his own fees in the Third-Party case. .................................. 4

        D.    The tendered motions must be evaluated with the same standard as adjudicating a motion to dismiss for failure to state a claim. ................................ 4

        E.    McNamara's statements about pre-filing settlement discussions are unsupported by declarations. ................................................................................. 5

    II.    Ice Legal is Entitled to Intervene as of Right ................................................................. 6

        A.    Ice Legal's motion to intervene is timely. ............................................................. 6

        B.    Ice Legal has an interest in the action. .................................................................. 7

        C.    Ice Legal's interests will be impacted by the Court's decisions. ........................... 8

        D.    Ice Legal's interests are not adequately protected by any other parties to the litigation. ......................................................................................................... 8

    III.    In any event, the court should exercise its discretion to permit Ice Legal to intervene under Rule 24(b)(1)(B) Fed. R. Civ. P. because the requirements of that rule are less stringent than the supplemental jurisdiction statute .......................... 8

    IV.    Conclusion ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
   464 F.3d 328 (2d Cir. 2006) .................................................................................. 9

*Fed. Trade Comm'n v. Apex Capital Grp.*,
   No. 22-55342, 2023 WL 8592870 (9th Cir. Dec. 12, 2023) ...................................... 7

*Oneida Indian Nation of Wisconsin v. State of N.Y.*,
   732 F.2d 261 (2d Cir. 1984) .................................................................................. 4

**Statutes and Regulations**

28 U.S. Code § 3103(d) .................................................................................................. 7

28 U.S.C. § 1367(a) .................................................................................................. 8, 9

**Rules**

Rule 24(a)(2) Fed. R. Civ. P. .................................................................................. 1, 10

Rule 24(b)(1)(B) Fed. R. Civ. P. ...................................................................... 1, 8, 9, 10

Rule 7(a)(3) L. R. Civ. P. .................................................................................................. 5

**DEFINED TERMS**

| | |
|---|---|
| Ice Legal | Ice Legal, P.A. and its two attorneys (the defendants in the Third-Party case) |
| McNamara Fee App | Receiver's Third Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated April 23, 2025 (Dkt. 669-1) |
| Third-Party case | *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.) |
| Third-Party Complaint | The Complaint in the Third-Party case. |
| Rule 12 Memo | In Third-Party case: Memorandum in Support of Joined Rule 12 Motions: Motion for More Definite Statement; Motions to Dismiss for Lack Of Personal Jurisdiction and Insufficient Process, on The Grounds that Claims Must be Arbitrated, and Failure to State a Claim; and Motion to Strike; and in the Alternative, Motion to Stay the Proceedings (Exhibit 1 to Ice Legal's Objections to Fee Applications filed with the original Motion to Intervene) (Dkt. 18-1). |
| Intervention Memo | Memorandum in Support of Third-Party Motion to Intervene for Purposes of Filing an Objection to Receiver's Report and a Motion to Appoint Special Receiver and for Other Purposes (Dkt. 680-1). |
| State AGs | The "et al." Plaintiffs: the State of New York, the State of Colorado, the State of Delaware ex rel. Kathleen Jennings, Attorney General, the People of the State of Illinois, the State of Minnesota, the State of North Carolina, and the State of Wisconsin |
| AGs' Opp. | Plaintiff States' Response in Opposition to Non-Party Ice Legal's Motion to Intervene (Dkt. 693) |
| McNamara Opp. | Receiver's Opposition to Ice Legal's Motion to Intervene (Dkt. 694). |

REPLY IN SUPPORT OF MOTION TO INTERVENE

Pursuant to Rules 24(a)(2) and 24(b)(1)(B) Fed. R. Civ. P., Ice Legal specially appeared[1] and moved for limited intervention in this matter as of right or, in the alternative, by permission. The motion was opposed by the Plaintiff State Attorneys General (the "State AGs)[2] and the Receiver.[3] This Reply Memorandum addresses both.

I. **Preliminary Rebuttals**

    A. **The State AGs jump into the fray with the surprising claim that they would protect Ice Legal's interests.**

The most puzzling of the two opposition memoranda is that of the State AGs who would seemingly have "no dog in this fight." The primary goal of the motion to intervene—the appointment of a Special Receiver to handle the case against Ice Legal—would not increase the State AGs' costs or time for litigating their case. Nor would it interfere with McNamara's other functions as a receiver. Contrary to their dire predictions of "distraction and impediment to the progression of this case," Ice Legal has not asked to participate in discovery or trial.

One might view the State AGs' opposition as an unthinking knee-jerk impulse to defend their hand-picked receiver—a view that would be supported by their proffer of a patently self-contradicting argument. Specifically, the State AGs invoke the doctrine of *parens patriae* to

---

[1] Ice Legal has objected to the imposition of personal jurisdiction over the defendants in the supplemental case in which McNamara has sued Ice Legal. It expressly preserves this jurisdictional objection here and does not waive it by filing this motion in the same court (but different case). *See*, jurisdictional arguments in the Rule 12 Memo.

[2] Plaintiff States' Response in Opposition to Non-Party Ice Legal's Motion to Intervene (Dkt. 693) ("AGs' Opp.").

[3] Receiver's Opposition to Ice Legal's Motion to Intervene ("McNamara Opp.") (Dkt. 694).

1

suggest that Ice Legal must show that the State AGs are "ill-equipped or unwilling to protect [Ice Legal's] interests."[4] The State AGs say this in the same breath as they say (only pages before) that they find McNamara's allegations credible when he claims that Ice Legal's retainer fee was "illegal."[5] The State AGs quickly follow this volunteered and uninformed opinion with a reprise of McNamara's accusations of purported $40,000-per-hour fees and his "money for nothing" refrain. To paraphrase the old adage: with "*parens*" like these, who needs enemies? The State AGs, therefore, have demonstrated by their own argument that they are "ill-equipped or unwilling to protect [Ice Legal's] interests."[6]

### B. McNamara represents that Ice Legal's pre-answer motions were completely without merit or proper purpose, without telling the Court that, less than two hours later, he would amend the Complaint because of them.

Turning to McNamara's opposition, he begins by discussing Ice Legal's "barrage" of eight pre-answer motions, which he pejoratively labels as "a frantic reaction to [his] lawsuit."[7] Then turning to an *ad hominem* attack (a common theme in his filings), he ascribes to Ice Legal not one, but three improper purposes for filing the motions: "to create chaos in these proceedings, cause the Receiver to waste resources, and attempt to delay an adjudication of the

---

[4] AGs' Opp., p. 8 (internal quotes omitted).

[5] *Id*. at 6.

[6] The State AGs argue in a footnote that "non-parties can sign up to receive case notifications in the WDNY using CM/ECF" (AGs' Opp., p. 6, n. 1). Ice Legal only brought this to the Court's attention after the Court's Clerk told Ice Legal the opposite.

[7] McNamara's Opp., p. 1.

2

claims on the merits and judgment against the firm."[8]  Later, he states "[n]ot a single of the [pre-answer] motions has merit – and the Rule 11 [safe harbor] letter is frivolous."[9]

Thus, McNamara boldly, and repeatedly, denigrates the pre-answer motions as completely meritless and Ice Legal's motives as sanctionably unethical.  But what McNamara does <u>not</u> tell the Court (or anyone reading his invective) is that, less than two hours after presenting this disparagement in these proceedings, he would file a new, significantly longer complaint (with 67 more paragraphs) in his case against Ice Legal and a letter to the Judge saying that "[t]he amended allegations … address and negate the numerous arguments made by Defendants in their pre-answer motions."[10]  As for the "frivolous" Rule 11 safe harbor letter, McNamara's amended complaint tries to address all of the four points raised there either by dropping the unfounded allegation or by providing additional supporting allegations.

McNamara's apparent inability to be candid with this Court about his true assessment of the merits of Ice Legal's pre-answer motions (and Rule 11 motion) shows that he cannot separate his role as a litigant from that of an asset custodian and arm of the Court.  It is precisely the sort of sanctionable behavior identified in Ice Legal's tendered Objections to the McNamara Fee App.—behavior that not only deserves admonishment, but his replacement with an *ad litem* receiver.

---

[8] *Id*. at 1-2.

[9] *Id*. at 14.

[10] Receiver's First Amended Complaint in the Third-Party case (Dkt. 24); Letter to Judge Wolford from Logan Smith, dated May 22, 2025 (Dkt. 25).

3

### C. McNamara is seeking his own fees in the Third-Party case.

In McNamara's new Complaint, he asserts that his own fees are now part of the damages that his Claimants are seeking from Ice Legal.[11] This new claim underscores Ice Legal's interests in this case generally and in the conduct of the Receiver specifically. At a minimum, this damages claim entitles Ice Legal to contest, if necessary, any of the fee requests submitted by McNamara and his counsel and to ask this Court to curtail any of their activities that are not required by the Preliminary Injunction.

### D. The tendered motions must be evaluated with the same standard as adjudicating a motion to dismiss for failure to state a claim.

Additionally, McNamara expends considerable ink calling Ice Legal's Objections to the McNamara Fee App. "frivolous,"[12] but pages earlier, in a footnote,[13] he admits that the Court must consider such tendered pleadings under the same standard as when considering a motion to dismiss for failure to state a claim—i.e. for purposes of the intervention motion, it must consider all the statements in Ice Legal's Objections to the McNamara Fee App. and the Motion for Appointment of Special Receiver as true. Argument and evidence on the factual veracity (or legal sufficiency) of the tendered motion and objection must be reserved until such time as they are actually filed and briefed. *Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) ("[E]xcept for allegations frivolous <u>on their face</u>, an application to intervene

---

[11] Receiver's First Amended Complaint in the Third-Party case (Dkt. 24), ¶ 227. ("Defendants proximately caused [the Claimants] to suffer harm, including increased regulatory exposure and liability and the costs of defending and participating in the actions brought by the federal and state regulators (<u>including the resulting receivership</u>)") (emphasis added).

[12] McNamara Opp., p. 8.

[13] *Id*. at 2, n. 3.

4

cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." (emphasis added)).[14]

### E. McNamara's statements about pre-filing settlement discussions are unsupported by declarations.

Neither the State AGs nor McNamara support their opposition with a declaration, affidavit, or affirmation as required by Rule 7(a)(3) L. R. Civ. P.  Under that Rule, the failure to provide such sworn support is grounds for resolving the motion against them.

The Rule is particularly applicable to McNamara's improper attacks on the yet-to-be-filed Motion to Appoint a Special Receiver where he represents through unsworn argument that he did not attempt a ruse to obtain pre-trial discovery and that he did conduct "<u>substantive</u> discussions" with Ice Legal before filing the case.[15]  At a minimum, McNamara needed a declaration to counter that supplied with Ice Legal's motion.[16]  McNamara's representation that "<u>the parties simply were too far apart</u> for ***voluntary*** mediation to be fruitful"[17] is disingenuous at best since neither party had proposed an amount that would settle the case.  And nowhere—not even in unsworn argument—does he deny that his counsel told Ice Legal's attorney that he was not interested in hearing any of Ice Legal's defenses at mediation.

---

[14] To be clear, Ice Legal objects to McNamara's continued mischaracterization of Ice Legal's contract and denies the many accusations he sprinkles throughout his opposition memorandum. Ice Legal will address them in detail when it is actually appropriate for McNamara to present his defenses to Ice Legal's Motion to Appoint Special Receiver.

[15] *Id*. at 7, 10-11 (emphasis added).

[16] Declaration of Amanda Lundergan, dated May 7, 2025 (Dkt. 680-4) identifying the email from McNamara's attorney where he unilaterally, and without explanation, withdrew from the parties' agreement to mediate and also stating that McNamara's attorney had earlier told her that his client was not interested in a mediation where Ice Legal's defenses would actually be discussed.

[17] *Id*. at 7 (odd emphasis on "voluntary" in original; other emphasis added).

5

## II.   Ice Legal is Entitled to Intervene as of Right

### A. Ice Legal's motion to intervene is timely.

Both the State AGs and McNamara assert that Ice Legal's motion should have been filed back when it learned of this litigation over a year ago. The argument assumes, without explanation or case law, that merely learning of the existence of a regulatory action in which one may later become a creditor (because the appointed receiver stops paying one's bills) is enough to justify intervening in that action. However, creditors don't normally intervene in regulatory actions just to have their interests protected as a creditor. Indeed, it is McNamara's duty under the Preliminary Injunction to "protect the interests of…third-party creditors who have transacted business with the Receivership Defendants;"[18] so intervention at that time would have been denied on the grounds Ice Legal's interests as a creditor were already protected in this case.

Likewise, Ice Legal would have no reason to intervene just because McNamara threatened litigation. Such an inchoate interest would have been attacked as too speculative.

Ice Legal's interest in intervening was triggered by the filing of the lawsuit against Ice Legal—an exercise of the powers McNamara was purportedly granted in this case and an exercise of the Court's subject matter jurisdiction that purportedly originates from this case. Even McNamara concedes that, after he filed the lawsuit, "[a]lmost immediately, Ice Legal file[d] a motion to intervene."[19]

The State AGs also claim that Ice Legal is challenging "long-settled issues, such as the Preliminary Injunction and the Appointment of a Receiver"[20] But the Preliminary Injunction and

---

[18] Preliminary Injunction March 4, 2024 (Dkt. 184), p. 19.

[19] McNamara Opp., p. 1.

[20] AGs' Opp., p. 5.

the Appointment of a Receiver are hardly "long-settled" given that the Preliminary Injunction order is still on appeal. And despite the length of time that has passed, the pleadings have not yet closed. The State AGs even admit that "[t]his case…remains technically in a preliminary stage prior to the entry of [a] case management order."[21]

Lastly, the State AGs argue that the Court should follow *Fed. Trade Comm'n v. Apex Capital Grp.,* No. 22-55342, 2023 WL 8592870, at *1 (9th Cir. Dec. 12, 2023) to conclude Ice Legal's motion was untimely because "like Ice Legal's motion here, Wells Fargo's motion to intervene was untimely."[22] They do not mention that Wells Fargo's motion to intervene was brought when "the proceedings had reached the post-judgment stage." *Id*. at *2.

### B. Ice Legal has an interest in the action.

#### 1. Ice Legal did not argue that its interest in the action status was that of a creditor.

Both the State AGs and McNamara make extensive "straw man" arguments that Ice Legal's status as a potential creditor does not support intervention—an argument Ice Legal never made. Ice Legal's creditor status was mentioned in connection with McNamara's fiduciary duties to Ice Legal and in a footnote regarding McNamara's sparse and belated accounting of the receivership assets.[23]

---

[21] AGs' Opp., p. 9.

[22] *Id*. at 7.

[23] Intervention Memo, p. 5, n. 7. Coincidentally, the State AGs cite to report that is more than a year old for the conclusion that Defendants' liquid assets are approximately $7 million (State AGs' Opp., p. 9). Furthermore, despite several requests, McNamara has not, as of the date of this writing, opened his accounts for inspection by Ice Legal as required by 28 U.S. Code § 3103(d). And despite the State AGs purported interest in containing costs, they have not complained about McNamara's meager reporting.

7

>   **2. The opponents of the intervention motion appear to claim that the receiver appointed in this case can be replaced by the judge in another case.**

The opponents of the intervention motion assert that everything that Ice Legal seeks can be granted by the court in the Third-Party case. They do not explain how a motion to replace the Court-appointed receiver with an *ad litem* receiver—or any other issues regarding the appropriateness of the Preliminary Injunction—can be resolved by motion in the separate, subordinate Third-Party case. Perhaps the fallacy of their statement would be clearer if McNamara had brought his case in state court or a different federal district. Obviously, even if the same judge presides over both cases, a decision in the Third-Party case that affects the Preliminary Injunction in this case would be *ex parte* to everyone in this case.

>   **C. Ice Legal's interests will be impacted by the Court's decisions.**

McNamara has now clarified in his First Amended Complaint that he seeks as damages the "liability and the costs of defending and participating in the actions brought by the federal and state regulators…" Now, there can be no question that the decisions in this case impact Ice Legal.

>   **D. Ice Legal's interests are not adequately protected by any other parties to the litigation.**

*See,* discussion of the State AGs' *parens patria* argument, above, at p. 1.

**III.    In any event, the court should exercise its discretion to permit Ice Legal to intervene under Rule 24(b)(1)(B) Fed. R. Civ. P. because the requirements of that rule are less stringent than the supplemental jurisdiction statute.**

 Neither of the opposition memoranda address Ice Legal's point that, by relying upon the supplemental jurisdiction statute (28 U.S.C. § 1367(a)) to stretch this Court's jurisdiction to cover the adjudication of his state law claims, McNamara is, in effect, representing that his case

8

against Ice Legal is "so related to claims in the action within such original jurisdiction [i.e. this case] that they form part of the same case or controversy…". This wording demands an even closer relationship between the cases than that of the permissive intervention rule which requires only that "a claim or defense…share[] with the main action a common question of law or fact." Rule 24(b)(1)(B) Fed. R. Civ. P. Thus, if this Court has jurisdiction to entertain McNamara's state law claims in a separate proceeding—because it is part of the same case or controversy—then it may exercise its discretion to allow Ice Legal to intervene.

      This conclusion is amplified by the Second Circuit's opinion in *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) which held that, despite the wording of the statute to the contrary, supplemental jurisdiction under § 1367 could be used to provide jurisdiction in an entirely separate proceeding. If *Achtman* had not broadened the statute to cover separate proceedings—and if McNamara wanted (as he does now) to travel under the jurisdictional umbrella of this proceeding by way of § 1367—he would be required, if he could, to join Ice Legal <u>in this case</u>. Accordingly, *Achtman's* broadening § 1367 to separate proceedings warrants a concomitant loosening of the boundaries between those proceedings—i.e. that parties in a case, whose jurisdiction is supplemental to the original jurisdiction of another case, should be, almost routinely, allowed to intervene in the case with original jurisdiction.

      Stated differently, McNamara has borrowed the jurisdiction from this proceeding to: 1) give this court—in a different case—jurisdiction to hear state law claims; and 2) give himself standing to sue on behalf of Receivership Defendants. Having exercised, and continuing to exercise, the powers arising from this proceeding, he should not now be allowed to throw up barriers between the two cases. This is particularly true when it is for the apparent purpose of obstructing Ice Legal's due process right to contest those very powers.

## IV.    Conclusion

For the foregoing reasons, Ice Legal respectfully requests that the Court grant it the right to intervene in this matter on a limited basis under Rule 24(a)(2) Fed. R. Civ. P., or alternatively, by permission under Rule 24(b)(1)(B) Fed. R. Civ. P. and order any further relief that the Court deems necessary and just.

Dated: May 25, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*