UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.

                Plaintiffs,

      v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), et al.,

                Defendants.

Case No.: 1:24-cv-00040-EAW-MJR

---

# MEMORANDUM OF LAW IN SUPPORT OF FIDELIS LEGAL SUPPORT SERVICES, LLC, THE BUSH LAKE TRUST, TWO SQUARE ENTERPRISES, INC., BDC GROUP, LLC, AND VETERIS CAPITAL LLC'S MOTION FOR A STAY PENDING APPEAL

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................2

I.  THE MOVANTS ARE LIKELY TO PREVAIL ON APPEAL UNDER
    LONGSTANDING SECOND CIRCUIT PRECEDENT .....................................................3

II. THE MOVANTS WILL SUFFER IRREPARABLE HARM WITHOUT A STAY ..........7

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY ..............8

CONCLUSION ...............................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Burton v. Schamp*,
    25 F.4th 198 (3d Cir. 2022) ...............................................................................................4

*Caprera v. Jacobs*,
    790 F.2d 442 (5th Cir. 1986) .............................................................................................3

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012)............................................................................................7

*Havens v. James*,
    76 F.4th 103 (2d Cir. 2023) ...............................................................................................6

*Hilton v. Braunskill*,
    481 U.S. 770 (1987)...........................................................................................................3

*Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. &
    Bartenders Int'l Union, AFL-CIO*,
    417 U.S. 249 (1974)...........................................................................................................5

*In re Kidd*,
    2020 WL 3035960 (D. Conn. June 5, 2020) .....................................................................9

*Kim v. Hanlon*,
    99 F.4th 140 (3d Cir. 2024) ...............................................................................................9

*Mark I, Inc. v. Gruber*,
    38 F.3d 369 (7th Cir. 1994) ............................................................................................4, 5

*Murret v. Kenner*,
    894 F.2d 693 (5th Cir. 1990) .............................................................................................4

*New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*,
    996 F.2d 21 (2d Cir. 1993).....................................................................................1, 3, 4, 5

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................................................................3

*Sheet Metal Workers Int'l Ass'n, Loc. No. 359, AFL-CIO v. Arizona Mech. &
    Stainless, Inc.*,
    863 F.2d 647 (9th Cir. 1988) .............................................................................................5

*Utah Licensed Beverage Ass'n v. Leavitt*,
    256 F.3d 1061 (10th Cir. 2001) .........................................................................................9

*Yeldon v. Fisher*,
   710 F.3d 452 (2d Cir. 2013)..................................................................................................4

**Rules/Statutes**

28 U.S.C. § 636(b)(1)(A)..............................................................................................................3

Fed. R. App. P. 8(a)(1).................................................................................................................1

Fed. R. Civ. P. 62(c)(1) & (d)......................................................................................................2

Fed. R. Civ. P. 65.....................................................................................................................5, 6

Local Rule 73(c) ..........................................................................................................................4

**Other Authorities**

12 Fed. Prac. & Proc. Civ. § 3071.2 (3d ed.)................................................................................4

14 Moore's Federal Practice - Civil § 73.03 (2025) .....................................................................4

There is a significant legal wrong being committed in this case which is actively damaging legitimate companies and the lives of real people. Fidelis Legal Support Services, LLC, The Bush Lake Trust, Two Square Enterprises, Inc., BDC Group, LLC, and Veteris Capital LLC (the "Movants") respectfully move for this Court to stay the Report, Recommendation, and Order and Decision and Order ("Orders," Dkts. 646 & 692) designating them as "Receivership Defendants." In the alternative, they request that this Court enter a short-term stay to allow them to seek a stay pending appeal in the Second Circuit, with the stay to expire upon the Second Circuit's decision on that motion. Because they face irreparable harm from the Magistrate Judge's Orders, and because all parties to this case have previously briefed whether the Orders should be stayed pending this Court's consideration of their (now mooted) objections to the Orders, Movants respectfully request that this Court decide this motion for a stay before June 23, 2025. Movants will seek a stay pending appeal and an administrative stay from the Second Circuit, but of course wish to first comply with their obligation to "ordinarily move first in the district court." *Cf.* Fed. R. App. P. 8(a)(1) (providing that parties seeking a stay pending appeal should "ordinarily move first in the district court").

A stay is proper because the Second Circuit is likely to vacate the Orders for lack of jurisdiction and remand with instructions to the District Court to consider the Movants' objections. The Second Circuit has already squarely held that even when all the *original* parties consent to a Magistrate Judge's jurisdiction, that consent does *not* bind anyone else. *See New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21 (2d Cir. 1993). Absent consent from the new parties, the Magistrate Judge's "order" must be vacated for lack of jurisdiction. It does not matter, *New York Chinese TV Programs* held, if the new parties joined to the case are closely affiliated with the original parties that consented. In any case, as with any jurisdictional question, what

1

matters is *who decides* whether the Movants are sufficiently controlled by the original Defendants to be bound by their prior consent. The Movants did *not* consent to a Magistrate Judge making that decision in this case, and thus they are not bound by his findings.

The Movants will also suffer irreparable harm without a stay pending appeal (or, at minimum, an administrative stay pending the Second Circuit's resolution of their forthcoming motion). Before the purported Orders issued, Fidelis was able to continue its business in the ordinary course. After they issued, the Receiver took over Fidelis and ultimately ceased all of its operations. Fidelis's clients have abandoned the company. Even though it is undisputed that Fidelis's operations, at the time the Receiver took over, were lawful and useful, Fidelis's business reputation is being severely damaged every day that it remains under the Receiver's control. Every day the Orders remain in effect, Fidelis's prospects of reopening and operating as a business in the future irreparably declines.

The remaining stay factors also favor a stay. Fidelis's operation for a year before the Magistrate Judge subjected it to the injunctive relief applicable to "Receivership Defendants" shows there is no risk of it dissipating assets or acting wrongfully. And the public interest disfavors unconstitutional orders.

This Court should thus stay the Orders pending appeal or, at minimum, until the Second Circuit can decide whether to grant a stay pending appeal.

## ARGUMENT

This Court has authority to stay or modify the Orders pending appeal. *See* Fed. R. Civ. P. 62(c)(1) & (d). Whether to grant a stay hinges on "four factors": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

All four stay factors favor a stay pending appeal, or, at minimum, a stay pending the Movants seeking a stay pending appeal from the Second Circuit.

## I. THE MOVANTS ARE LIKELY TO PREVAIL ON APPEAL UNDER LONGSTANDING SECOND CIRCUIT PRECEDENT

The Movants are likely to prevail on appeal because it is black letter law that the Magistrate Judge did not have jurisdiction. Magistrate judges are not empowered under 28 U.S.C. § 636(b)(1)(A) to decide any "motion for injunctive relief." Magistrate Judge Roemer thus did not have jurisdiction to expand the preliminary injunction (Dkt. 184) to cover the Movants. Judge Roemer conceded that he lacked jurisdiction under Section 636(b)(1)(A) but ruled that he had authority under Section 636(c) because, in February 2024, "the parties to this action consented to" his jurisdiction over the preliminary injunction motion. Dkt. 692 at 17.

This ruling will almost certainly be reversed because the Movants *were not parties* at the time and did not consent. *See* Dkt. 158 at 5, 7-8. Fidelis did not even appear in this case until March 2024, Bush Lake was not named as a relief defendant until May 2024, and the remaining Movants entered in April 2025. The Court's jurisdiction to issue the Orders thus turns on the argument that, because *the original parties* consented to Judge Roemer's jurisdiction, their consent can be imputed to defendants later added to the case.

The Second Circuit is likely to reject that argument under longstanding precedent. In *New York Chinese TV Programs*, 996 F.2d 21, the Court held that Section 636(c)(1) requires "explicit consent" to a magistrate judge's jurisdiction from "all parties," and that the "original parties' consent did not bind defendants added to" the case later. *Id.* at 24 (quoting *Caprera v. Jacobs*, 790 F.2d 442, 446 (5th Cir. 1986)). Thus, the fact that intervenors "were not parties to the action when

3

the original consents to referral were executed," and never "consented to exercise of plenary jurisdiction by the magistrate judge," was dispositive, and deprived the magistrate judge of jurisdiction. *Id.*

The leading treatises on federal procedure agree that "[w]hen additional parties are added after the original parties to an action have consented to trial before a magistrate judge, consent of the new parties is also required." 14 Moore's Federal Practice - Civil § 73.03 (2025); *see* 12 Fed. Prac. & Proc. Civ. § 3071.2 (3d ed.). So do the other Circuits. *See, e.g.*, *Burton v. Schamp*, 25 F.4th 198, 209 (3d Cir. 2022) ("Section 636(c)(1)'s reference to the consent by the 'parties' [] require[s] the consent *by any party directly affected by an order or a judgment issued by that magistrate judge*") (emphasis removed and added); *Mark I, Inc. v. Gruber*, 38 F.3d 369, 371 (7th Cir. 1994); *Murret v. Kenner*, 894 F.2d 693, 695 (5th Cir. 1990) (per curiam). And rightly so. Failure to require consent of these new parties "would not adequately protect the constitutional right to be heard by an article III judge." *New York Chinese TV Programs*, 996 F.2d at 24. So important is this right that the Second Circuit has since reaffirmed that "lack of consent" to a magistrate judge by any party "is a jurisdictional defect that cannot be waived." *Yeldon v. Fisher*, 710 F.3d 452, 453 (2d Cir. 2013) (per curiam). This constitutional requirement works no injustice either. Local Rule 73(c) requires that any time a new party is "added to an action after the original parties' consent is approved," the Clerk of Court must notify it of its "right to consent to proceed before the Magistrate Judge." "If the new party does not consent to the Magistrate Judge's jurisdiction," as here, "the action *shall be* returned to the District Judge for further proceedings." *Id.* (emphasis added). Yet this case was *not* returned to the District Judge. The Orders' jurisdictional defect follows from the Court's failure to follow its own rules.

4

The fact that the Magistrate Judge's Orders state that the Receiver Defendants "are controlled by defendants" does not matter. The Courts of Appeals require an actual veil-piercing inquiry, under the relevant law of incorporation, to impute the consent of one party to another party, and the Orders made no such findings here. *See Mark I*, 38 F.3d at 371 ("R.G. International was incorporated in Connecticut. Mark I has not argued that Connecticut law freely permits the attribution of corporate acts to managers and investors; indeed, it has not cited any state case on this subject."); *cf. Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 261 & n.5 (1974) (successor companies that are not alter egos are not bound by arbitration clauses they did not sign or otherwise agree to). This demanding inquiry requires far more than the alleged (and highly disputed) "control" claimed here. Indeed, in *Chinese TV Programs*, the non-parties who were deemed not bound by the original parties' consent were the Plaintiff's controlling shareholders, each holding 20% of the company. *See* 996 F.2d at 22. Their consent to magistrate judge jurisdiction could not "be inferred from the intervenors' earlier role as majority shareholders of the plaintiff corporation," the Court explained, "for they now seek to protect different interests." *Id.* at 24. So too here.

The Second Circuit is also likely to adhere to this ruling on appeal for a more basic reason: The Magistrate Judge lacked jurisdiction when it found that the Movants were "controlled by defendants." The Movants did not consent to the Magistrate Judge making that determination and thus are not bound by it. The Magistrate Judge cannot bootstrap his own jurisdiction by declaring that a nonconsenting party is no different than a consenting party. *Cf. Sheet Metal Workers Int'l Ass'n, Loc. No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) (arbitrator lacks jurisdiction to decide whether a party is an "alter ego" bound by an arbitration agreement it did not sign).

5

Finally, as the Movants have previously explained, adding them as Receivership Defendants also plainly violates Rule 65(d).  Injunctions are entered against parties, and third parties that aid and abet a named party in violating an injunction may be held in contempt for doing so.  But injunctions cannot be entered against nonparties without giving them "the opportunity to argue" that their conduct should not be enjoined.  *Havens v. James*, 76 F.4th 103, 122 (2d Cir. 2023); *see* Dkt. 649 at 21-25; Dkt. 668 at 4-5.  A court must find that the *Winter* factors are established before entering an injunction against a nonparty, and cannot circumvent those requirements by finding that the nonparty is subject to a defendant's (partial) control.  Here, the Movants are being roped into the dictates of the preliminary injunction on the basis of a mechanism in the preliminary injunction made up from whole cloth that requires none of this.  Under this mechanism, none of the elements normally required for a preliminary injunction need be met, nor are Rule 65(d)'s requirements satisfied.  The impropriety of this mechanism is demonstrated by the procedural history of this case.  Only after the Magistrate Judge expressed doubt about whether the Plaintiffs could satisfy the requirements of Rule 65 to obtain a preliminary injunction over Fidelis (because, notably, they could not demonstrate irreparable harm from Fidelis' continued operation, given that the Receiver himself continued to send customers to the undeniably legitimate company), did the Magistrate Judge instead achieve the same result by rubberstamping the Receiver's designation of Fidelis as a "Receivership Defendant."

This is simply wrong.  The requirements of Rule 65 and the traditional preliminary-injunction factors exist for a reason.  Preliminary injunctions are extraordinary relief, the granting of which can have devastating effects on real people's lives and businesses—as is happening here.  This violation only compounds the lack of due process accorded the Movants before having their businesses decimated.

For all these reasons, the Movants have a strong likelihood of success on the merits of their appeal.

## II. THE MOVANTS WILL SUFFER IRREPARABLE HARM WITHOUT A STAY

"[L]oss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (collecting authorities). That is especially the case here because the Court did not require Plaintiffs to post a bond, *see* Dkt. 184 at 3, the Plaintiffs are government agencies and/or States entitled to sovereign immunity from whom the Receiver Defendants cannot recover money damages, and the Receiver's bond is limited to $50,000, *id.* at 31.

There is substantial evidence that the Movants will suffer all of these species of irreparable harm without a stay. Fidelis sustained its business after the Preliminary Injunction issued in March 2024, and after it was named as a defendant in Plaintiffs' suit. But once the first of the Orders entered, Fidelis's clients have all terminated their relationship with the company. Dkt. 668 at 5-6. The other, more recently designated, Movants are beginning to experience similar adverse consequences. For example, the Receiver's effort to freeze the assets of the Bush Lake Trust are interfering with a legitimate construction project in Florida. A construction company involved in that project has placed a lien on the property and is threatening litigation against the Trust should it fail to receive payments it is owed. There is no risk that this asset will be dissipated. It is valuable real estate, being made more valuable by the construction now underway. The receiver's action threatens to derail this project.

The Receiver is using the expansive authority granted to him by the Magistrate Judge in other extraordinarily aggressive and harmful ways. The Receiver has made a series of legally dubious discovery demands of the Receiver Defendants' accountant, who is seven months' pregnant, and obtained an *ex parte* Writ of Possession and threatened to raid her offices with U.S.

7

marshals *only three days* after serving her with those discovery requests (during tax season)—*after* she indicated her intent to comply. To put this into context, this is a third-party accountant who just happened to be retained by a company (Fidelis) that itself is, at most, a peripheral business several levels removed from the core allegations in this case. We understand the Receiver only backed down from his threat to send in federal marshals when the accountant's attorneys questioned whether he had properly complied with his obligations under 28 U.S.C. § 754 and advised him that they intended to challenge the writ on the basis that, among other things, it was obtained on an *ex parte* basis in the absence of exigent circumstances. The Receiver, of course, profits from this meritless aggression. He bills by the hour, and refers legal actions to his own law firm, pocketing both receivership fees and legal fees for defending his actions as a receiver. In this way, he has billed well over two million dollars over the past year, at a run rate of approximately $150,000 per month.

But the targets of his aggression are less fortunate. The Receiver has frozen the personal bank accounts of Cameron Christo, Fidelis's manager, despite having no legal authority to do so. Mr. Christo engaged attorneys to challenge that freeze. The freeze was later apparently withdrawn, but Mr. Christo has continued to experience difficulties with his bank as a result, including as recently as the last few days.

These are merely examples. In short, for whatever reason, the Receiver is using the power over the Movants improperly granted to him by the Magistrate Judge in ways that are harming real people and legitimate business interests every day.

## III.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY

A stay will not substantially injure any other party. With the knowledge and consent of all concerned, Fidelis continued normal operations from February 2024 (when the Receiver informed it of his intent to bring the company within the injunctive demands placed upon "Receivership

Defendants" under the preliminary injunction) through its loss of control of the business to the Receiver a year later. The Receiver sent over 6,000 new litigation files to Fidelis during this time. Dkt. 668 at 5. There are no allegations in this case that Fidelis' operations during that time were in any way unlawful. Accordingly, "a stay in this case would simply maintain the status quo existing prior to the district court's order and thus not generate an appreciable harm." *In re Kidd*, 2020 WL 3035960, at *4 (D. Conn. June 5, 2020) (cleaned up); *see* Dkt. 649 at 26.

Finally, because the Orders are unconstitutional intrusions on the Movants' right to an Article III judge, *supra*, pp. 3-5, a stay is in the public interest. "[R]emedying an unconstitutional practice is always in the public interest." *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024); *see, e.g.*, *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) ("enjoining" an unconstitutional statute is "not adverse to the public interest"). Additionally, a stay is in the public interest because Fidelis provides services that help consumers, which is why the Receiver continued to direct consumers to Fidelis for assistance. *See* Dkt. 649 at 26-27.

## CONCLUSION

For all these reasons, this Court should grant a stay pending appeal, or, in the alternative, grant a stay that will expire upon the Second Circuit's consideration and resolution of the Movants' forthcoming motion for a stay pending appeal. Absent a stay, the Receiver will continue to decimate peripheral operating businesses several levels removed from the core allegations of this case without due process.

Dated:        Buffalo, New York
                 June 3, 2025

                                       Respectfully submitted,

                                       By: s/Timothy W. Hoover
                                            Timothy W. Hoover
                                            Spencer L. Durland
                                     HOOVER & DURLAND LLP
                                     561 Franklin St.
                                     Buffalo, NY 14202
                                     (716) 800-2600
                                     *thoover@hooverdurland.com*
                                     *sdurland@hooverdurland.com*

                                     Stephen E. Frank (*pro hac vice* pending)
                                     Alex H. Loomis (*pro hac vice* pending)
                                     QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
                                     111 Huntington Ave., Suite 520
                                     Boston, MA 02199
                                     (617) 712-7100
                                     *stephenfrank@quinnemanuel.com*
                                     *alexloomis@quinnemanuel.com*

                                     Alec A. Levy (*pro hac vice* pending)
                                     QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
                                     1300 I St NW, Suite 900
                                     Washington, DC 20005
                                     (202) 538-8000
                                     *aleclevy@quinnemanuel.com*

                                     Michael J. Brady
                                     Daniel J. Brady
                                     HAGERTY & BRADY
                                     69 Delaware Ave., Suite 1010
                                     Buffalo, NY 14202
                                     (716) 856-9443
                                     *mbrady@hagerty-brady.com*
                                     *dbrady@hagerty-brady.com*

                                     *Counsel for Movants*