**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), *et al.*, <br><br> Defendants, and <br><br> STRATEGIC ESOP, *et al.*, <br><br> Relief Defendants. | Case No.: 1:24-cv-00040-EAW-MJR |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF FIDELIS LEGAL SUPPORT SERVICES, LLC, THE BUSH LAKE TRUST, TWO SQUARE ENTERPRISES, INC., BDC GROUP, LLC, AND VETERIS CAPITAL LLC'S MOTION FOR A STAY PENDING APPEAL**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................2

I. THE STATES' AND RECEIVER'S LIKELIHOOD-OF-SUCCESS ARGUMENTS ARE WRONG.......................................................................2

    A. The States' And Receiver's Defense Of This Court's Jurisdiction Is Circular And Invites This Court To Commit Additional Error ..............................2

    B. The States And Receiver Ignore That Designating The Movants As Receivership Defendants Subjected Them To A "Preliminary Injunction" ............4

    C. The Receiver's Challenge To Appellate Jurisdiction Is Wrong For The Same Reason ..................................................................................6

II. THE RECEIVER LARGELY DOES NOT DISPUTE THAT HIS ACTIONS ARE CAUSING IRREPARABLE HARM .......................................................7

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY ............10

CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ................................................................................................8

*Florida v. United States*,
    285 F.2d 596 (8th Cir. 1960) ....................................................................................7

*Havens v. James*,
    76 F.4th 103 (2d Cir. 2023) ......................................................................................5

*Kim v. Hanlon*,
    99 F.4th 140 (3d Cir. 2024) ....................................................................................10

*Monsanto v. United States*,
    348 F.3d 345 (2d Cir. 2003) .....................................................................................3

*Netsphere, Inc. v. Baron*,
    799 F.3d 327 (5th Cir. 2015) ....................................................................................7

*NML Cap., Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012) .....................................................................................6

*NML Cap., Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) .....................................................................................6

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*,
    996 F.2d 21 (2d Cir. 1993) .......................................................................................3

*Roell v. Withrow*,
    538 U.S. 580 (2003) .................................................................................................3

*SEC v. Black*,
    F.3d 188, 194 (3d. Cir. 1998) ...................................................................................7

*SEC v. Complete Bus. Sols. Grp.*,
    44 F.4th 1326 (11th Cir. 2022) .................................................................................7

*SEC v. Credit Bancorp, Ltd.*,
    290 F.3d 80 (2d Cir. 2002) .......................................................................................6

*SEC v. Torchia*,
    922 F.3d 1307 (11th Cir. 2019) ................................................................................7

*United States v. Solco I, LLC*,
  962 F.3d 1244 (10th Cir. 2020) ............................................................................................7

*Utah Licensed Beverage Ass'n v. Leavitt*,
  256 F.3d 1061 (10th Cir. 2001) ..........................................................................................10

## **Statutes**

28 U.S.C. § 1292(a)(1)..................................................................................................................6

28 U.S.C. § 1292(a)(2)..................................................................................................................7

## **Rules**

Fed. R. Civ. P. 65(d) ...............................................................................................................1, 4, 5

Fed. R. Civ. P. 66..........................................................................................................................5

## **INTRODUCTION**

It is telling that the Consumer Financial Protection Bureau—the lead plaintiff—does not oppose the Movants' motion for a stay. The Receiver and Plaintiff States' Oppositions make no persuasive arguments against a stay.

On subject-matter jurisdiction, their arguments are circular. They claim that this Court has already found that the Movants are "controlled by" Jason Blust. They have no answer to the fact that (1) without jurisdiction, this Court's findings on this issue carry no legal weight; and (2) in any case, a finding of "control" or even successorship alone does not suffice to impute Mr. Blust's consent to the Movants. Their other argument—that as long as the original parties consented, subsequent parties are also bound—ignores this Court's Local Rules, and the most fundamental principles of Due Process. It is also obviously wrong. By the States' and the Receiver's logic, the Magistrate Judge could also designate Amazon and Microsoft as Receivership Defendants simply because the original parties consented. No case supports that view.

Their arguments that this Court had authority to bind the Movants simply ignores the legal effect of the orders on appeal ("Orders"). They paint the Orders as mere expansions of a receivership estate, and the appointment of the Receiver as having nothing to do with injunctive relief. This is rich: The original order appointing the Receiver is literally entitled a "Preliminary Injunction," and its provisions not only appoint a Receiver, but also "enjoin" the Receivership Defendants from conducting any business and freeze their assets. Dkt. 184. The Orders thus may expand the receivership, but they also expand the "Preliminary Injunction" and thus must comply with Rule 65(d). They do not. Rule 65(d) does not authorize an Article III judge (let alone a Magistrate Judge) to bind third parties to an injunction unless it finds either that (1) the *Winter* factors are satisfied or (2) the third parties aided and abetted the original defendant's contempt of the injunction.

These facts in turn refute the Plaintiff States' and Receiver's argument that the Second Circuit has no appellate jurisdiction over an order expanding a receivership. The Orders do not just appoint a receiver, they also enjoin the Movants. The Plaintiff States and Receiver know this full well: When Fidelis appealed the Order designating it as a Receivership Defendant, they both said "Fidelis's recourse from Magistrate Judge Roemer's Order is to the Court of Appeals, not to the District Judge." Dkt. 677 at 8; *see* Dkt. 681 at 1, 3, 24.

On the equities, the Plaintiff States and Receiver are just as blasé. When confronted with his freezing Cameron Christo's personal bank accounts, the Receiver confesses error but shirks blame. When asked to address his needless harassment of a seven-months pregnant accountant by threatening to send armed federal Marshals into her home, the Receiver blithely asserts that he acted responsibly. When addressing his needless and harmful freezing of a real-estate construction project (on which he has already placed a lien), the Receiver does not deny that he is causing irreparable harm; he just says that this is a business decision for him to make. The Receiver then purports to show that the Movants engaged in fraudulent transfers by pointing to transactions made largely *before* the Movants were on notice that they might be subjected to the Preliminary Injunction—and in some cases, before the Preliminary Injunction even issued.

The Plaintiff States and Receiver have led this Court to error. The Second Circuit is likely to reverse, but the Movants will suffer irreparable harm in the interim. A stay is warranted.

## ARGUMENT

I. **THE STATES' AND RECEIVER'S LIKELIHOOD-OF-SUCCESS ARGUMENTS ARE WRONG**

    A. **The States' And Receiver's Defense Of This Court's Jurisdiction Is Circular And Invites This Court To Commit Additional Error**

The Receiver's and Plaintiff States' jurisdictional argument is circular. They state: "Each of the entities now challenging Magistrate Judge Roemer's jurisdiction has already been found to

2

be under the control (directly or indirectly) of Jason Blust, a defendant who consented to Judge Roemer deciding the PI." Dkt. 717 at 9. They ignore that jurisdiction, as always, poses a question of *who decides* whether these parties are controlled by Jason Blust. *See* Dkt. 703-1 at 1-2. Here, the Magistrate Judge is the one who made this determination. Absent jurisdiction, he did not have authority to make that finding. Plus, they have no answer to the fact that a generic finding of control does not suffice to impute Jason Blust's consent to the Movants. Otherwise, a company's consent would always bind its corporate owners—a proposition the Second Circuit rejected in *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 22, 24 (2d Cir. 1993). Actual veil-piercing is required before this Court imputes such consent. *See* Dkt. 703-1 at 5.

Recognizing this fact, the Plaintiff States suggest that this Court can just ignore *New York Chinese TV Programs*, but this is downright irresponsible. Dkt. 717 at 8-9. District courts are required to follow Second Circuit precedent, even if they are in "tension" with Supreme Court precedent, "unless and until that case is reconsidered by our court sitting en banc (or its equivalent) or is rejected by a later Supreme Court decision." *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003). That plainly did not happen. Nor is *Roell v. Withrow*, 538 U.S. 580, 590 (2003), even in tension with *New York Chinese TV Programs*, because *Roell* held only that a party's "implied consent" is permissible. Here, the Movants *never* consented, impliedly or otherwise, to the Magistrate Judge's jurisdiction. Blust did. Dkt. 692 at 18-19. *Roell* has nothing to do with imputing prior parties' consent to new parties later joined to the case.

The Plaintiff States purport to distinguish the Movants' cases on their facts, but have no answer to the fact that every single authority cited in the Movants' opening brief (Dkt. 703-1 at 3-4)—*including this Court's own local rules*—acknowledges that whenever a new party is added to the case, its consent is required.

3

Last, the Plaintiff States' assertion that this Court has "inherent power to oversee the administration of a receivership" is nonresponsive. Dkt. 717 at 10. *The Court* does. But the Magistrate Judge does not.

### B. The States And Receiver Ignore That Designating The Movants As Receivership Defendants Subjected Them To A "Preliminary Injunction"

The Receiver and Plaintiff States contend that the Orders do not violate Fed. R. Civ. P. 65(d) because "injunctions and receiverships are two distinct forms of relief." Dkt. 717 at 13; *see* Dkt. 718 at 8. They ignore, though, that the Orders, combined with the Preliminary Injunction, *do* have the effect of granting injunctive relief.

Designating the Movants as Receivership Defendants subjects them to a flood of injunctive provisions. The original order authorizing the Receiver to designate additional receivership defendants is literally called a "***Preliminary Injunction***." Dkt. 184 at 1 (emphasis added). This Court also stated, in its Order, that it was designating Fidelis "as a receivership defendant ***pursuant to the preliminary injunction***." Dkt. 646 at 1 (emphasis added). The second Order does not contain similar language, but it has the same effect on the other Movants.

This is not loose language. Both orders on appeal (Dkts. 646 & 692) designate the Movants as "Receivership Defendants," which immediately subjects them to injunctive provisions under the "Preliminary Injunction." For example, the Preliminary Injunction "***enjoined***" all Receivership Defendants—including, now, the Movants—to provide the Receiver access to their business premises; identify all such business premises; turn over documents, passwords, and computers; give the Receiver all sorts of information if he asks for it; direct everyone who owes them money to pay the Receiver instead; turn over all their assets to the Receiver, and so forth. Dkt. 184 at 23-29 (emphasis added). The Preliminary Injunction also "***enjoined***" the Movants from "[t]ransacting any business," "using" consumer information covered by the Preliminary Injunction, and

4

destroying business documents.  *Id.* at 26, 32, 34 (emphasis added).  The Preliminary Injunction underscores that these are injunctive provisions by specifying that they apply not just to the Receivership Defendants, but also to "their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other Persons directly or indirectly in whole or in part, under their control, and all other Persons in active concert or participation with them."  *E.g.*, *id.* at 22.  That, of course, is ***language lifted from Fed. R. Civ. P. 65(d) governing injunctions***.  It does not appear in Fed. R. Civ. P. 66 governing receiverships.

The Receiver's statement that "adding an entity as a receivership defendant is not the same thing as issuing an injunction" may be true in other cases, but it not is not true in this one.  Dkt. 718 at 8.  Plaintiff States and the Receiver wrongly assume that Rule 65(d) permits a court to bind *anyone else* (plus their agents, officers, lawyers, and so on) if it finds that they are "in active concert" with the original bound parties.  The Rule does no such thing.  Instead, Rule 65(d) provides only that third parties who *aid and abet a named party in violating an injunction* may be held in contempt for doing so.  This "aiding-and-abetting theory" of contempt requires showing first, that the original party to the injunction "committed contempt," and second, that "the challenged action of the nonparty was taken" to help the "party subject to the decree in violating the injunction."  *Havens v. James*, 76 F.4th 103, 112 (2d Cir. 2023) (cleaned up).  *Havens* **rejected** the argument that a court can decline to consider "whether the nonparty acted to benefit or to assist the enjoined party in violating the injunction" before issuing contempt sanctions.  *Id.* at 114.  Here, the Orders violate these precepts by simply adding the Movants as new parties to the injunction, instead of imposing contempt against them for allegedly aiding and abetting the original parties' contempt.  (Nor would such a finding have been remotely justified on the facts.)  Rule 65(d), and the traditional equitable jurisprudence it incorporates, does not permit that.

*NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013), is not to the contrary. The injunction there did not make the third parties (various financial institutions) into new parties with duties under the injunction independent of those of the original defendant (Argentina). *Id.* Instead, it merely barred those financial institutions from *assisting* Argentina from violating the injunction. *Id.* The injunction identified the third parties only because the Second Circuit expressed concern in a prior appeal that third-party financial institutions' obligations would be unclear absent greater specificity. *See NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012). *NML* thus does not stand for the proposition that *any* third party (plus all its agents) may be enjoined without joining them to the case.

### C. The Receiver's Challenge To Appellate Jurisdiction Is Wrong For The Same Reason

The Receiver proclaims (Dkt. 718 at 5) that the Movants "have *zero* likelihood of success on the merits" because the Second Circuit lacks jurisdiction over the Movants' appeal (emphasis added). The Receiver then fails to cite a single controlling case and relies exclusively on inapplicable out-of-circuit precedent.

To be clear, the Second Circuit has jurisdiction at least under 28 U.S.C. § 1292(a)(1), which grants the U.S. Courts of Appeals jurisdiction over "[i]nterlocutory orders … granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." For the reasons explained *supra*, Part I.B, the Orders did not just expand a receivership but also modified injunctions to subject new defendants to injunctive provisions contained within the Preliminary Injunction. That alone means that the Orders are appealable. "Appellate review under section 1292(a)(1) … extends to all matters inextricably bound up with the preliminary injunction." *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 86-87 (2d Cir. 2002) (cleaned up); *see,*

*e.g.*, *SEC v. Black*, 163 F.3d 188, 194 (3d Cir. 1998) (same, and holding that "modification of the freeze order" is appealable for that reason).

*SEC v. Torchia*, 922 F.3d 1307 (11th Cir. 2019), is precisely on point. There, the Eleventh Circuit held that an order "requiring the Sutherlands to either remit the purported fictitious profits or assign the Martin policy to the receiver" was injunctive—even though it involved a receivership—because "it commands an action concerning the merits of the relief requested by the receiver." *Id.* at 1314-15 (cleaned up).

In contrast, the Receiver's cases are all distinguishable. In *SEC v. Complete Business Solutions Group*, 44 F.4th 1326 (11th Cir. 2022), the order did not include similar injunctive provisions as in *Torchia* and here. So, too, in *United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020), and *Florida v. United States*, 285 F.2d 596 (8th Cir. 1960). *Netsphere, Inc. v. Baron*, 799 F.3d 327, 332-33 (5th Cir. 2015), held only that an order *awarding receivership fees* to a receiver and his counsel is not appealable. *Netsphere* also recognized that any order that allows a receiver to "wrest management and control from those entrusted by the owners" over property is separately appealable under 28 U.S.C. § 1292(a)(2). *Id.* (citation omitted). By that logic, the Orders are appealable under Section 1292(a)(2) as well. The Movants are thus all but certain to prevail on appeal.

**II.  THE RECEIVER LARGELY DOES NOT DISPUTE THAT HIS ACTIONS ARE CAUSING IRREPARABLE HARM**

The Plaintiff States and Receiver all but concede that the Movants face irreparable harm without a stay. The Movants outlined the serious interference in their businesses by the Receiver, citing, as an example, the Receiver's needless interference with a construction project in Florida. *See* Dkt. 703-1 at 7. The Receiver does not dispute that this is irreparable harm; he just says that "whether to proceed … is now a business decision for [him] to make." Dkt. 718 at 11. That is a

7

truism, not an argument. The Receiver is the one making business decisions for the Movants, and his decisions are causing irreparable harm to their business.

The Receiver then tries to distract from the issue by claiming that "$13 million" was fraudulently transferred to the Bush Lake Trust in January and February 2024, which the Bush Lake Trust used to buy the Florida real estate. Dkt. 718 at 11-12. This is nonsense: None of the Movants was even designated as a Receivership Defendant at the time; their pre-designation ordinary business activity is hardly evidence that they were trying to circumvent an injunction to which they were not bound. The Receiver then asserts that it is suspicious that the original agreement to purchase the property involved "an individual named Thomas Macey," who purportedly once worked with Jason Blust at a different company and is not a party to this case. Dkt. 718 at 12. This is pure guilt by association, and it does not support the Receiver's rank speculation that "Bush Lake Trust is acting as some sort of a middleman entity for purposes of transferring a Receivership Estate asset to a third-party individual (Macey), who in turn appears to be building a personal home on the property." Dkt. 718 at 13. (And, of course, the Receiver's contention that a "Receivership Estate asset" was transferred is false. Neither the property nor the money used to buy it was a Receivership Estate asset at the time. And the Receiver, in any event, now has a lien on the property, ensuring that it cannot be dissipated.).

More broadly, this tenuous argument illustrates the misalignment of the Receiver's incentives. A Receiver paid by the hour has every reason to "arrange th[e] facts on a corkboard and—with a jar of pins and a pool of string—create an eye-catching conspiracy web" to justify more and more asset seizures. *Dep't of Com. v. New York*, 588 U.S. 752, 797 (2019) (Thomas, J., concurring in part and dissenting in part). The Receiver takes umbrage with the Movants' pointing to his adverse incentive and insists (Dkt. 718 at 14) that he made "every effort to avoid unnecessary

8

legal expenses and proceed efficiently"—despite his filing an Opposition that simply rehashes arguments in the Plaintiff States' own Opposition. If the Receiver seeks to avoid unnecessary legal expenses and proceed efficiently, why did he not just rely on Plaintiff States' brief rather than file a redundant 20-page brief of his own? This financial incentive has caused the Receiver to pursue a series of unduly aggressive actions that have caused the Movants irreparable harm.

On the other irreparable harm points, the Receiver acknowledges that his actions resulted in a bank "inadvertently" freezing Cameron Christo's personal accounts. Dkt. 718 at 14 n.5. He claims it was a mistake, but it was a mistake that he caused, and did not timely rectify. And such mistakes will continue to happen. When addressing his harassment of a seven-months pregnant accountant, *see* Dkt. 703-1 at 7-8, the Receiver does not deny that he threatened to send armed federal marshals into her home, or that he withdrew this threat only after her counsel threatened to move to quash the *ex parte* writ of possession the Receiver had obtained. He responds only: "The Receiver acted well within his authority under the PI to obtain discovery, protect assets, and preserve documents." Dkt. 718 at 14.

Finally, the Receiver claims that the only reason Fidelis lost business is because Jason Blust stopped sending business its way. Dkt. 718 at 9-10. That is untrue, as the Movants have previously shown. *See* Dkt. 668 at 6-7. It is also irrelevant. Fidelis provides administrative support to law firms defending debtors against creditor lawsuits. Dkt. 190-4 ¶ 17. Between February 2024 and February 2025, the Receiver himself referred Fidelis over 6,000 new case files, acknowledging the necessity of Fidelis's operations. Dkt. 668 at 5. And a significant share of Fidelis's pre-Receivership business indisputably derived from services *that are not implicated* by this litigation, and that no one disputes were lawful. That business is now gone.

9

**III.     THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY**

On the balance of the equities, the Plaintiff States and the Receiver again fall short. Their list of evidence of the Movants purportedly dissipating assets consists mainly of transfers made *before* they were even on notice that they might be designated as Receiver Defendants. *See, e.g.*, Dkt. 717 at 11-13. And they do not show that these transactions lacked a valid business purpose. They also claim, without citation, that the Movants "have ignored and defied responsibilities they have under the PI Order." *Id.* at 18. That, of course, is untrue, which is why the Plaintiff States and Receiver have brought no contempt actions against the Movants.

Finally, the Plaintiff States and Receiver do not dispute that "remedying an unconstitutional practice is always in the public interest." *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024); *see, e.g.*, *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) ("enjoining" an unconstitutional statute is "not adverse to the public interest"). Nor do they dispute that a stay is in the public interest because Fidelis provides services that help consumers, which is why the Receiver directed consumers to Fidelis for assistance. *See* Dkt. 649 at 26-27; Dkt. 668 at 5.

## CONCLUSION

For all these reasons, this Court should grant a stay pending appeal, or, in the alternative, grant a stay that will expire upon the Second Circuit's consideration and resolution of the Movants' forthcoming motion for a stay pending appeal.

| | |
|---|---|
| Dated: Buffalo, New York<br>June 19, 2025 | Respectfully submitted,<br><br>By: /s/ Alec A. Levy<br>Alec A. Levy (*pro hac vice*)<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>1300 I St NW, Suite 900<br>Washington, DC 20005<br>(202) 538-8000<br>*aleclevy@quinnemanuel.com*<br><br>Stephen E. Frank (*pro hac vice*)<br>Alex H. Loomis (*pro hac vice*)<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>111 Huntington Ave., Suite 520<br>Boston, MA 02199<br>(617) 712-7100<br>*stephenfrank@quinnemanuel.com*<br>*alexloomis@quinnemanuel.com*<br><br>Timothy W. Hoover<br>Spencer L. Durland<br>HOOVER & DURLAND LLP<br>561 Franklin St.<br>Buffalo, NY 14202<br>(716) 800-2600<br>*thoover@hooverdurland.com*<br>*sdurland@hooverdurland.com*<br><br>Michael J. Brady<br>Daniel J. Brady<br>HAGERTY & BRADY<br>69 Delaware Ave., Suite 1010<br>Buffalo, NY 14202<br>(716) 856-9443<br>*mbrady@hagerty-brady.com*<br>*dbrady@hagerty-brady.com*<br><br>*Counsel for Movants* |