## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

               Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

               Defendants, and

DANIEL BLUMKIN, et al.,

               Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

## PROPOSED INTERVENORS, ICE LEGAL'S, OBJECTIONS TO THE RECEIVER'S FOURTH INTERIM APPLICATION FOR ORDER APPROVING FEES AND EXPENSES OF THE RECEIVER AND PROFESSIONALS

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorney for Proposed Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

OBJECTIONS.................................................................................................................. 3

    I.     McNamara did not break down the fees and expenses associated with his third-party actions. ................................................................................................. 3

          A.   A detailed bill that categorizes the fees and costs spent in pursuing third-party claims is necessary to assist the Court in monitoring McNamara's actions as Receiver.................................................................................. 3

          B.   McNamara's conflict when using his own firm to prosecute third-party actions requires a higher level of scrutiny. ............................................. 4

    II.    Even without greater detail in the invoices, the fee application reveals possible billing abuses. ...................................................................................................... 6

    III.   The rates being charged for attorneys' fees are higher than McNamara represented they would be and higher than those for similar work in other cases. ...................................................................................................................... 7

    IV.   McNamara has not produced receipts for his expenses—some of which appear to be duplications. ...................................................................................................... 8

CONCLUSION.............................................................................................................. 10

**INTRODUCTION**

Proposed Intervenors[1] (Ice Legal, P.A. and its two attorneys, Thomas Ice and Ariane Ice; collectively, "Ice Legal"). specially appear[2] and object to the Receiver's fourth application for fees and expenses ("McNamara Fee App)"[3] and state as follows:

**Ice Legal's interest in these proceedings
and, in particular, the Receiver's expenses**

Aside from being a creditor of the receivership estate, Ice Legal, along with its two attorneys, are defendants in the case of *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.)—a case which the Receiver alleges is sufficiently related to this case as to support this Court's supplemental jurisdiction ("*McNamara* case").[4]

---

[1] On May 7, 2025, Ice Legal moved this Court to intervene (Dkt. 680).  The motion has been fully briefed since May 25, 2025.  Given the time-sensitivity of the issues raised herein, Ice Legal files this motion now with the expectation that it can be addressed when (and if) the Court grants Ice Legal's motion to intervene.

[2] Ice Legal has objected to the imposition of personal jurisdiction over the defendants in the case in which McNamara has sued Ice Legal.  It expressly preserves this jurisdictional objection here and does not waive it by filing this motion in the same court (but different case). *See*, jurisdictional arguments in the memorandum submitted in support of them in the *McNamara* case which are adopted herein, (Dkt. 30-1, p. 24).

[3] Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals, dated July 17, 2025 (Dkt. 744).

[4] In reality, these six claims are not "so related to claims in the [CFPB] action…that they form part of the same case or controversy…" in order to vest this Court with supplemental jurisdiction under 28 U.S.C. § 1367(a).  Moreover, the state law claims substantially predominate over the claims made in the CFPB action, such that the Court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2).  For the purposes of this motion only, Ice Legal assumes *arguendo* that the cases are sufficiently "related" to support McNamara's claim of supplemental jurisdiction.

1

After Ice Legal filed its motion to intervene in this case, McNamara amended his complaint in his case to clarify what had previously only been implied: <u>that as damages in his case, he claims that Ice Legal is responsible to pay all the "liability and the costs of [incurred by the Receivership Defendants in] defending and participating in the actions brought by the federal and state regulators (including the resulting receivership)."</u>[5]

The notion that Ice Legal alone would be financially responsible for all the consequences of the sprawling conspiracy of wrongdoing alleged in this case—much of which pre-dated Ice Legal's retainer—fails to meet the *Twombly*[6] plausibility test (or even the straight face test). However, as long as the allegation remains, Ice Legal has an independent interest in the liability and expenses being incurred by the Receivership Defendants in <u>this</u> case—especially those being incurred as a result of McNamara's actions as the Receiver.

Additionally, it is assuredly not lost upon the Court that the fees and costs that McNamara intends to shift to Ice Legal include those for his direct services as a Receiver, as well as those of his own law firm which he hired to bring his case against Ice Legal without explicit approval by the Court.  Thus, these objections regarding McNamara's conflict of interest are also relevant to Ice Legal's Motion to Appoint Special Receiver.[7]

---

[5] *McNamara* First Amended Complaint, ¶227.

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[7] Dkt. 680-3—one of two proposed motions (and one objection) awaiting this Court's ruling on the Motion to Intervene.

## OBJECTIONS

I.   **McNamara did not break down the fees and expenses associated with his third-party actions.**

   A.  **A detailed bill that categorizes the fees and costs spent in pursuing third-party claims is necessary to assist the Court in monitoring McNamara's actions as Receiver.**

In the billing that McNamara supplied the Court, he did not identify what expenses were attributable to his third-party actions—lawsuits that he filed without ever seeking permission from this Court.  By intermingling these expenses in the records he has provided, he is preventing the Court from evaluating whether these lawsuits will likely benefit the receivership estate.

McNamara knows how to present the third-party lawsuit expenses separately—he did so in another CFPB debt-relief case just two years ago:[8]

| Summary of McNamara Smith LLP Invoices for 6th Fee Application | | | | |
|---|---|---|---|---|
| McNamara Smith LLP | Invoice # | Fees thru 05/31/2023 | Expenses thru 05/31/2023 | Subtotal |
| SLAM Receivership | 11638 | $  47,798.50 | $       565.14 | $    48,363.64 |
| McNamara v. NMC, et. al. | 11639 | $  253,753.00 | $    73,980.38 | $    327,733.38 |
| | | $  301,551.50 | $    74,545.52 | $    376,097.02 |

---

[8] *Bureau of Consumer Financial Protection v. Consumer Advocacy Center Inc.*, Case No., 8:19-cv-01998-MWF (KSx) (C.D. Cal.) (Dkt. 459-3, p. 2)—a case remarkably similar to the *Main Case* here in that the CFPB and various states alleged that the defendants violated the TSR by taking advance fees ("*Bureau Case*")

**B. McNamara's conflict when using his own firm to prosecute third-party actions requires a higher level of scrutiny.**

This same third-party case of *McNamara v. National Merchant Center, Inc.*[9] ("*NMC Case*") is a cautionary tale that the CFPB did not mention when it recommended that this Court appoint McNamara as the Receiver. In that case, after "all pre-litigation settlement efforts failed,"[10] McNamara filed a Complaint against third parties alleging seven state law violations and damages in the "tens of millions."[11] Over the following eighteen months, McNamara and his counsel expended well over half a million dollars[12] before settling the case for $350,000 (and an additional $75,000 that was uncollectible).[13] Thus, the estate lost over $200,000 while McNamara's firm pocketed over $420,000.

This demonstrates the inherent conflict that constitutes, at a minimum, the appearance of impropriety—specifically, that when McNamara hires his own firm to bring third-party lawsuits (without input from the Court or the Plaintiffs), he financially benefits even if the cases do not

---

[9] Case No. 8:21-cv-01122-MWF-KS (C.D. Cal).

[10] McNamara made the same claim with respect to Ice Legal, but in fact, he abandoned the pre-suit mediation to which the parties had agreed without articulating a reason or ever making a settlement demand. This evidences McNamara's preference for starting litigation that will generate more billing for his firm.

[11] *NMC Case*, Complaint, dated June 28, 2021 (Dkt. 1), p. 3

[12] *Bureau Case*, Receiver's Fee Applications: 3rd (Dkt. 294-3); 4th (Dkt. 347-2, 347-3); 5th (Dkt. 392-2, 392-3); 6th (Dkt. 459-2, 459-3).

[13] *Bureau Case*, Motion to Approve Settlement Agreements with Non-Parties (1) National Merchant Center, Inc. and (2) Shih-Hao Lai Aka Jimmy Lai and Swift Payments, dated February 17, 2023 (Dkt. 426-1).

bring value to the Estate.[14]  Leaving aside the first question for the Court (whether initiating the case financially benefits the Estate), the second question for the Court is whether it was appropriate for McNamara to select his California law firm to litigate claims pled under New York state law.  This substantially increases the costs of research about New York law that a local firm may already be familiar with.  A New York firm would not need local counsel and the resulting duplication of efforts—such as attendance at hearings, settlement conferences, and strategy meetings.  All the travel expenses from California could also be avoided.[15]  Given the firm already involved in the case as local counsel, Hodgson Russ LLP, is well respected and capable, the question becomes: why were they not selected as primary counsel, instead of McNamara's firm?

To summarize, there can be no question that McNamara has an inherent conflict and that the conflict merits a greater-than-usual scrutiny by the Court.  The ability of the Court—and all other parties interested in protecting the Receivership Estate's assets—to monitor and constrain this inherent conflict is hampered by the absence of documentation detailing the fees and expenses attributable to the third-party actions.

---

[14] As cogently stated in the Fidelis Legal Support Services, LLC, the Bush Lake Trust, Two Square Enterprises, Inc., BDC Group, LLC, and Veteris Capital LLC's Motion for a Stay Pending Appeal (Dkt. 703-1), p. 8:

> [McNamara] bills by the hour, and refers legal actions to his own law firm, pocketing both receivership fees and legal fees for defending his actions as a receiver. In this way, he has billed well over two million dollars over the past year, at a run rate of approximately $150,000 per month.

[15] While the Receiver has kept his promise not to charge for his or his firm's travel time, he is charging the Estate for airfare, accommodations, and other travel expenses.

**II.**      **Even without greater detail in the invoices, the fee application reveals possible billing abuses.**

The total fees attributable to the litigation against the Proposed Intervenors is—to the extent that the Proposed Intervenors can identify them with reasonable certainty—roughly $150,000 (just under $112,000 in his Fourth Interim Fee Application).  While McNamara's declaration states that "[s]ubstantial time was devoted to address numerous pre-answer motions,"[16] the amounts billed so far do not include fees for producing the 85 pages of opposition to pre-answer motions filed against the Amended Complaint because McNamara's fee request only goes through May 31, 2025.

Viewing the billing at a more granular level reveals troubling expenditures of time by multiple attorneys that are not justified by the issue at stake or the resulting work product.  For example, McNamara, his California firm, and his New York counsel collectively billed over $17,700 to oppose Ice Legal's Motion to Intervene in this case—a fifteen-page response, some of which duplicated the arguments interposed by the State AGs.[17]

Accordingly, Ice Legal submits that the Court should require McNamara to provide more detailed billing which clearly discloses what is being spent on third-party cases.  This information is needed so that the Court may evaluate the wisdom of charging the Estate for this litigation and whether McNamara should be permitted to self-select his own California firm to litigate third-party cases in New York.[18]

---

[16] Declaration of Thomas W. McNamara in Support of Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 744-1), p. 6.

[17] Receiver's Opposition to Ice Legal's Motion to Intervene (Dkt. 694).

[18] Requiring that McNamara retain counsel for the third-party claims under a contingency agreement would conserve the Estate's funds in the event the claims are unsuccessful. Additionally, acceptance of the case by contingency counsel would provide the Court with some measure of confidence that the merits of the case have been evaluated by an attorney with a self-

**III.    The rates being charged for attorneys' fees are higher than McNamara represented they would be and higher than those for similar work in other cases.**

In his Declaration, McNamara represents that his local counsel, James Thoman, "agreed to discount his firm's rates in this receivership matter."[19]  Yet, in a recent application for fees in a bankruptcy case, Thoman charged less than he is charging in this case—despite representing to the court in that case that this lesser amount was "the regular hourly rate ordinarily charged by [his firm] to non-bankruptcy clients":[20]

| Professional | *In re: Against the Grain Holdings LLC* | In this case |
|---|---|---|
| James Thoman | $445 | $460 |
| Christine Napiersky | $220 | $235 |

Not only did he not discount his normal fees in this case, if his assertion in *In re: Against the Grain Holdings LLC* is to be believed, he is actually charging the Receivership Estate more than his regular hourly rate.

In his Declaration, McNamara also represents that his own fees and that of his counsel (his own firm) are reduced "as reflected in our Statement of Interest and Qualification filed with the Court (Dkt. No. 4-1)"—in which he describes his rate as "steeply discount[ed]."[21]  In this document, McNamara's resulting discounted rate is $565 per hour.  Yet only four months earlier,

---

interest in winning.  In short, retaining contingency counsel would eliminate McNamara's conflict and ensure that his unsupervised decision to sue is not based upon the fact that his own firm financially benefits even if it loses.

[19] Declaration of Thomas W. McNamara in Support of Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 744-1), p. 6, n. 1).

[20] *In re: Against the Grain Holdings LLC*, Case No. 24-10151 (CLB) Notice of First and Final Application for Allowance of Compensation for Fees and Reimbursement of Expenses for Hodgson Russ LLP, as Counsel to the Debtors (Dkt. 205).

[21] Declaration of Thomas W. McNamara in Support of Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 744-1), p. 6; Statement of Interest and Qualification filed with the Court (Dkt. No. 4-1).

he agreed to charge another receivership estate a discounted rate of only $495 per hour.[22]

Similarly, the rate McNamara charged in that case for his legal analyst, Keegan Galvin, was

$145 per hour, but he has been charging the Estate here $195 per hour for his services.

Moreover, McNamara's associate, Alexander Wall is being billed to the Estate at $495

per hour to work on the garden variety state law malpractice claims against Ice Legal.  This is

more than the "regular hourly rate" of James Thoman, a partner of Hodgson Russ with a decade

more experience.  Similarly, McNamara is charging the Estate $595 per hour for the services of

California attorney, Logan Smith on these third-party matters.  For purposes of comparison,

Dennis Vacco, the Former New York State Attorney General with over two decades more

experience, was billing only $580 per hour to represent the defendants in this far more

complicated case brought by the government.[23]

To the extent that these higher fees for McNamara's firm are attributable to generally

higher fees for attorneys in California, that is but another argument that McNamara should be

choosing New York-based counsel for his third-party claims.


**IV.    McNamara has not produced receipts for his expenses—some of which appear to be duplications.**

On page 16 of the invoices of McNamara Smith LLP (Dkt. 744-3), McNamara lists two

charges of $405.00 for the Court's fee for filing the Complaint against Ice Legal:

| 03-26-2025 | KT | Court fees: Filing Fee re: Ice Legal Complaint | 405.00 |
|---|---|---|---|
| 03-27-2025 | KT | Filing Fees re: Ice Legal Complaint (WDNY) | 405.00 |

---

[22] *FTC v. Intercontinental Solutions LLC*, Case No. 23-01495, FTC's Recommendation for a Receiver (Dkt. 12), attached letter from Regulatory Resolutions, dated July 26, 2023, p. 3.

[23] Redacted Invoice (Dkt. 433-2).

To Ice Legal's knowledge, there was only one Complaint and only one filing fee charged by the

Court.  Just above these entries are two charges for JAMS fees for arbitration in the *Monevo*

case:

| 03-26-2025 | JEJ | Other:  JAMS fees re: Monevo Arbitration | 2,000.00 |
| 03-26-2025 | KT | Court fees: JAMS Fees for Monevo Arbitration | 2,059.80 |

While there may be an explanation for the expenditure of $4,059.80 for JAMS filing fees,

according to the JAMS' schedule of arbitration fees and costs, "[f]or two-party matters, the

Filing Fee is $2,000."[24]

On pages 21 and 22 of the invoices of McNamara Smith LLP (Dkt. 744-3), McNamara

lists three fees for serving the Complaint on Ice Legal, P.A. and its two attorneys:

| 04-30-2025 | KT | First Legal Service of process of records re: Ice Legal Complaint | 366.70 |
| 04-30-2025 | KT | First Legal Service of process of records re: Ice Legal Complaint | 309.45 |
| 04-30-2025 | KT | First Legal Service of process of records re: Ice Legal Complaint | 190.20 |

But there were only two occasions when the complaint was served: 1) at Ice Legal, P.A.'s

registered agent in Florida; and 2) at the Ices' residence in New Hampshire.  In Ice Legal's

experience, it is not typical for process servers to separately invoice the simultaneous service of

two people at the same residence.  And their charge for the second person is normally a small

fraction of the fee for serving the first person, on the order of $50.00.  The three charges—all for

different amounts—should be proven by invoice, and even then, disallowed if they greatly

exceed standard industry practices for service of process.

---

[24] JAMS' website, https://www.jamsadr.com/arbitration-fees.

## CONCLUSION

For the reasons discussed above, the Proposed Intervenors asks the Court to require that McNamara provide:

1) a more detailed accounting of the fees and costs submitted in his Fourth Fee Application, showing which are attributable to the third-party claims;

2) the receipts and invoices for costs;

3) a more detailed explanation of the attorney fee rates being charged for his services and those of his California counsel, McNamara Smith LLP, and his New York counsel, Hodgson Russ LLP—including each professional's normal rate and the "discounted" rate to which it has been reduced;

The Proposed Intervenors also request any further relief that the Court deems necessary and just.

Dated: July 21, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

10