# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

                 Plaintiff,

vs.

STRATFS, LLC (f/k/a STRATEGIC
FINANCIAL SOLUTIONS, LLC), et al.

             Defendants, and

DANIEL BLUMKIN, et al.,

             Relief Defendants.

Case No. 1:24-cv-00040-EAW-MJR

---

**PROPOSED INTERVENORS, ICE LEGAL'S, OBJECTIONS TO
REPORT, RECOMMENDATION AND ORDER:**

**RECOMMENDING DENIAL OF MOTION TO INTERVENE FOR PURPOSES
OF FILING AN OBJECTION TO RECEIVER'S REPORT AND A MOTION TO
APPOINT SPECIAL RECEIVER AND FOR OTHER PURPOSES**

**--AND--**

**DENYING PROPOSED MOTION TO MODIFY OR DISSOLVE THE
PRELIMINARY INJUNCTION (AND APPOINTMENT OF RECEIVER)
ON THE GROUNDS THAT THE CONSUMER FINANCIAL
PROTECTION BUREAU HAS ABANDONED ITS CASE**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorney for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

I.    Introduction ............................................................................................................ 1

II.    Background ............................................................................................................. 3

III.    The proposed motions ............................................................................................ 4

    A.   Objections to 3rd Fee App ........................................................................... 4

    B.   Motion to Appoint Special Receiver ........................................................... 4

    C.   Motion to Dissolve Injunction .................................................................... 5

    D.   Objections to 4th Fee App ........................................................................... 5

ICE LEGAL'S OBJECTIONS TO THE MAGISTRATE'S RECOMMENDATION TO
DENY THE MOTION TO INTERVENE ...................................................................... 6

I.    In recommending denial of the Motion to Intervene, the Magistrate
improperly considered the merits of the proposed motions and never found
they were "frivolous on their face." ....................................................................... 6

    A.   Summary of the objection ............................................................................ 6

    B.   The Magistrate decided the Motion to Intervene on his premature finding
that Ice Legal's allegations in its proposed motions were "without merit." ........... 7

    C.   The Magistrate's finding that all of Ice Legal's proposed motions are
without merit makes its ability to have them addressed in the *McNamara*
case illusory. ............................................................................................... 10

    D.   The Magistrate's decision to address the merits of the proposed motions
not only defied Second Circuit authority, but it undermined basic
principles of due process .............................................................................. 11

    E.   Conclusion .................................................................................................. 12

II.    The Magistrate's findings on the criteria for granting a motion to intervene are
equally unfounded...................................................................................................... 13

    A.   Ice Legal's Motion to Intervene was timely ............................................... 13

    B.   Ice Legal has a legally protectible interest in this lawsuit. ......................... 17

C.  Ice Legal's interests will be impaired or inadequately protected absent intervention. .................................................................................... 23

D.  Ice Legal's interest is not adequately protected by the parties to the action ......... 24

E.  The Magistrate did not consider granting intervention on a limited basis ............ 25

F.  Conclusion ........................................................................................ 26

III.  In the alternative, the Court should find, *de novo*, that Ice Legal is entitled to permissive intervention. ...................................................................... 26

A.  A finding that intervention by right should be denied does not support denial of permissive intervention. ........................................................ 26

B.  The motion to intervene by permission was not untimely. .................................... 27

C.  There is no prejudice to the parties that would outweigh the liberal policy in favor of intervention. ...................................................................... 27

D.  The Magistrate did not rule on whether the McNamara case shares a common question of law or fact with this case. ....................................... 28

ICE LEGAL'S OBJECTION TO THE MAGISTRATE'S DENIAL OF THE MOTION TO MODIFY OR DISSOLVE THE PRELIMINARY INJUNCTION (AND APPOINTMENT OF RECEIVER) ON THE GROUNDS THAT THE CONSUMER FINANCIAL PROTECTION BUREAU HAS ABANDONED ITS CASE ............................... 30

I.  The Magistrate's denial of this proposed motion means that his recommendation to deny the Motion to Intervene must be rejected. .......................... 30

II.  If the Magistrate's recommendation to deny the Motion to Intervene is rejected, the Court should also overturn his ruling on the Motion to Dissolve Injunction ........................................................................................... 31

III.  The Magistrate ruled without permitting briefing of the motion. ............................... 31

IV.  The Magistrate's ruling is based solely on his factual conclusion that "the CFPB remains an active plaintiff in this lawsuit." ...................................... 34

V.  The Magistrate's factual conclusion that the CFPB is actively participating is clearly erroneous because it is not based on admissible evidence. ............................ 35

VI.  Conclusion ............................................................................................ 37

CERTIFICATION ....................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
  464 F.3d 328 (2d Cir. 2006) ........................................................................... 29

*Brennan v. N.Y.C. Bd. of Educ.,*
  260 F.3d 123 (2d Cir.2001) .............................................................................. 6

*Delaware Tr. Co. v. Wilmington Tr., N.A.,*
  534 B.R. 500 (S.D.N.Y. 2015)......................................................................... 28

*Floyd v. City of New York,*
  770 F.3d 1051 (2d Cir. 2014) .................................................................... 16, 17

*Granite State Ins. Co. v. KM Tactical,* LLC,
  No. 23 CIV.7769 (ALC) (GS), 2025 WL 1502019 (S.D.N.Y. May 27, 2025) ....................... 27

*Greene v. WCI Holdings Corp.,*
  956 F. Supp. 509 (S.D.N.Y. 1997) ................................................................... 10

*In re Bank of New York Derivative Litig.,*
  320 F.3d 291 (2d Cir. 2003) ............................................................................ 15

*Kearns v. Cuomo,*
  No. 1:19-CV-00902 EAW, 2019 WL 5060623 (W.D.N.Y. Oct. 9, 2019) ................................ 6

*Lang v. Clinton,*
  761 F.Supp.3d 595 (W.D.N.Y. 2024) ................................................................... 6

*Neitzke v. Williams,*
  490 U.S. 319 (1989)....................................................................................... 7

*Oneida Indian Nation of Wisconsin v. State of N.Y.,*
  732 F.2d 261 (2d Cir. 1984) ..................................................................... 6, 7, 8

*Pike Co., Inc. v. Universal Concrete Products, Inc.,*
  284 F. Supp. 3d 376 (W.D.N.Y. 2018) ............................................................... 15

*SEC v. American Board of Trade, Inc.,*
  830 F.2d 431 (2d Cir. 1987) ............................................................................. 8

*Sec. & Exch. Comm'n v. Callahan,*
  193 F. Supp. 3d 177 (E.D.N.Y. 2016) ............................................................... 17

*U S. Postal Serv. v. Brennan,*
    579 F.2d 188 (2d Cir. 1978) ................................................................ 16

*U.S. v. City of Detroit,*
    712 F.3d 925 (6th Cir. 2013) ............................................................... 25

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir.1994) ..................................................................... 16

*XL Specialty Ins. Co. v. Lakian,*
    632 Fed. Appx. 667 (2d Cir. 2015) ........................................................ 6

**Statutes and Regulations**

28 U.S.C. § 1367 ...................................................................................... 4, 29

**Rules**

Rule 2.(G)(iv) of the Administrative Procedures Guide for Electronic Filing
    for the United States District Court Western District of New York ................... 33, 36

Rule 2.(G)(v) of the Administrative Procedures Guide for Electronic Filing
    for the United States District Court Western District of New York ....................... 33

Rule 2.9 (A)(1)(a) Model Code of Judicial Conduct ................................................. 19

Rule 24(a)(2) ........................................................................................... 6

Rule 24(a)(2) Fed. R. Civ. P. ......................................................................... 24

Rule 24(b) Fed. R. Civ. P ............................................................................. 27

Rule 24(b)(1)(B) Fed. R. Civ. P ................................................................... 26, 28

Rule 7(a)(3) L. R. Civ. P. ............................................................................. 8

Rule 72 (c) L. Fed. R. Civ. P. ........................................................................ 38

Rule 72(a) Fed. R. Civ. P. ..................................................................... 1, 2, 3, 30

Rule 72(b) Fed. R. Civ. P. ............................................................................. 1

Rule 72(b)(2) Fed. R. Civ. P. ......................................................................... 2

Rule 72(b)(3) Fed. R. Civ. P. ......................................................................... 2

**Other Authorities**

7 Pt. 2 James Wm. Moore, Moore's Federal Practice, 1 72.04[10.–2] (1995)............................. 10

Reinert, Alexander, *Screening Out Innovation: The Merits of Meritless Litigation*,
　89 Indiana Law Journal 11922 (2014)................................................................... 6, 7

Rule 24 Fed. R. Civ. P., Advisory Committee's Note, 1966 Amendments................................. 25

**DEFINED TERMS**

| | |
|---|---|
| Ice Legal | Ice Legal, P.A. and its two attorneys (the defendants in the *McNamara* case) |
| *McNamara* case | *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.) |
| CFPB | Consumer Financial Protection Bureau |
| State AGs | The seven "et al." Plaintiffs: The People of the State of New York, by Letitia James, Attorney General of the State of New York; State of Colorado, Ex Rel. Philip J. Weiser, Attorney General; State of Delaware Ex Rel. Kathleen Jennings, Attorney General State of Delaware; the People of the State of Illinois, through Attorney General Kwame Raoul; the State of Minnesota, by its Attorney General Keith Ellison; the State of North Carolina, ex rel. Joshua H. Stein, Attorney General; and the State of Wisconsin |
| Magistrate's Report or Mag. Rep. | Report, Recommendation and Order of Magistrate Roemer (Dkt. 749) |
| Motion to Intervene | Memorandum in Support of Third-party Motion to Intervene for Purposes of Filing an Objection to Receiver's Report and a Motion to Appoint Special Receiver and for Other Purposes (Dkt. 680-1) |
| proposed motions | The four motions and objections that were filed contingent upon granting of the Motion to Intervene: 1) Objections to 3rd Fee App; 2) Motion to Appoint Special Receiver; 3) Motion to Dissolve Injunction; and 4) Objections to 4th Fee App |

- Objections to 3rd Fee App — Ice Legal's Objections to the Receiver's Fee Application (Dkt. 680-2)

- Motion to Appoint Special Receiver — Ice Legal's Memorandum in Support of its Motion to Appoint Special Receiver (Dkt. 680-3)

- Motion to Dissolve Injunction — Motion to Modify or Dissolve the Preliminary Injunction (and Appointment of Receiver) on the Grounds That the Consumer Financial Protection Bureau Has Abandoned Its Case (Dkt 721-1)

- Objections to 4th Fee App — Proposed Intervenors, Ice Legal's, Objections to the Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 746)

Receiver's Opp — Receiver's opposition to the Motion to Intervene (Dkt. 695)

Electronic Filing Guide WDNY — Administrative Procedures Guide for Electronic Filing for the United States District Court Western District of New York

**STATEMENT REGARDING PAGE LENGTH OF THESE OBJECTIONS**

The 25-page limit in Rule 7(a)(2)(C) L. Fed. R. Civ. P. applies only to "Memoranda in support of or in opposition to any motion," and therefore would not govern the page length of this 38-page Objections to the Magistrate's order.  In any event, the Magistrate's Order disposes of two motions, so to the extent these Objections may be considered continued support of Ice Legal's motions, the page limit under the local rule would be fifty.

**PROPOSED INTERVENORS, ICE LEGAL'S, OBJECTIONS TO REPORT, RECOMMENDATION [TO DENY MOTION TO INTERVENE] AND ORDER [DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION]**

Proposed Intervenors (Ice Legal, P.A. and its two attorneys, Thomas Ice and Ariane Ice; collectively, "Ice Legal") specially appear[1] and object to Magistrate Roemer's Report, Recommendations and Order, dated July 24, 2025 (Dkt. 749) ("Magistrate's Report" or "Mag. Rep.").

## I.    Introduction

While not expressed in the title, the Magistrate's Report, Recommendation and Order ("Magistrate's Report" or "Mag. Rep.") addresses three different motions.  He issues orders deciding two of the motions under Rule 72(a) Fed. R. Civ. P. (in the first and last sections of the Report) and a recommendation under Rule 72(b) Fed. R. Civ. P. (in the middle section):



---

[1] Ice Legal has objected to the imposition of personal jurisdiction over the defendants in the case in which McNamara has sued Ice Legal.  It expressly preserves this jurisdictional objection here and does not waive it by filing this motion in the same court (but different case). *See*, jurisdictional arguments in the memorandum submitted in support of them in the *McNamara* case which are adopted herein, (Dkt. 30-1, p. 24).

**First,** under Rule 72(b)(2) Fed. R. Civ. P., Ice Legal objects to the second section: the Magistrate's recommendation to deny the Motion to Intervene (including the one paragraph on page 9 of the first section that speaks to Ice Legal's objection to McNamara's third fee application).[2]  The Court's consideration of the Magistrate's recommendations will be *de novo*. Rule 72(b)(3) Fed. R. Civ. P.

**Second,** under Rule 72(a) Fed. R. Civ. P., Ice Legal objects to the Magistrate's order on its proposed Motion to Dissolve Preliminary Injunction—one of four requests for relief (motions or objections) that Ice Legal had either proposed to file once intervention had been approved or had tentatively filed contingent upon such approval ("proposed motions").  These four "proposed motions" are:

1) Ice Legal's Objections to the Receiver's Fee Application (Dkt. 680-2) **("Objections to 3rd Fee App")**;

2) Ice Legal's Memorandum in Support of its Motion to Appoint Special Receiver (Dkt. 680-3) **("Motion to Appoint Special Receiver")**;

3) Motion to Modify or Dissolve the Preliminary Injunction (and Appointment of Receiver) on the Grounds That the Consumer Financial Protection Bureau Has Abandoned Its Case (Dkt 721-1) **("Motion to Dissolve Injunction")**; and

---

[2] Except for this paragraph, the first nine pages of the Magistrate's Report appear to be misplaced given that the Magistrate granted McNamara's fees in a separate three-page order (Order Granting Receiver's Third Interim Application for Fees and Expenses of the Receiver and Professionals ([Dkt. 748]).

4) Proposed Intervenors, Ice Legal's, Objections to the Receiver's Fourth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals (Dkt. 746) (**"Objections to 4th Fee App"**).[3]

The Magistrate denied the proposed Motion to Dissolve Injunction without opening up the motion for briefing or argument by the parties. Any part of the Order denying the proposed Motion to Dissolve Injunction must be set aside if the Court finds it is clearly erroneous or contrary to law Rule 72(a) Fed. R. Civ. P.

## II.    Background

Aside from being a creditor of the receivership estate, Ice Legal, P.A., along with its two attorneys, are defendants in the case of *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.) ("*McNamara* case"). The *McNamara* case (and Ice Legal's status as a creditor) arise from an attorney retainer agreement between Ice Legal, P.A. and over one hundred clients, most of whom were other law firms and attorneys who are not entities in the Receivership Estate. On behalf of some unknown number of receivership entities, McNamara brought six state law claims against Ice Legal.

In the *McNamara* case, the Receiver is not claiming that Ice Legal participated in any alleged wrongdoing of the defendants in this case. Nor does he claim that Ice Legal's advice was wrong or caused his Claimants to violate state and federal laws. Instead, the Receiver is claiming that Ice Legal's advice was absolutely correct yet somehow not "sufficient" to make Ice Legal's clients stop violating some unspecified state and federal laws and regulations. He also

---

[3] The Magistrate not ruled on the Receiver's Fourth Fee application, so whether he will make it a clean sweep by finding that Ice Legal's proposed objections are also "meritless" remains to be seen. More importantly, he did not even mention them in the context of recommending denial of the Motion to Intervene even though they are relevant to Ice Legal's interests in intervening.

claims that Ice Legal's retainer—which was negotiated and drafted by his Claimants' lawyers, and which was paid without objection by his Claimants for years—was unconscionable.

McNamara has pled only one basis for the Court's jurisdiction in his case—supplemental jurisdiction under 28 U.S.C. § 1367, which requires that this case and the *McNamara* case be "so related … that they form part of the same case or controversy." Ice Legal has challenged the Court's jurisdiction in that case on the grounds that McNamara's state law claims against Ice Legal are not part of the same case and controversy as the Plaintiffs' claims against the Defendants in this case.

## III.    The proposed motions

### A.  Objections to 3rd Fee App

Ice Legal objected to McNamara's descriptions of his litigation against Ice Legal that were neither balanced nor correct as a form of *ex parte* communication designed to prejudice the Court against Ice Legal. Ice Legal also objected to the sparse and belated fee and expense reporting as keeping the creditors in the dark as to what remains in the Receivership Estate.

### B.  Motion to Appoint Special Receiver

Ice Legal sought the appointment of a "special" or "ad litem" receiver to handle the litigation against Ice Legal on the grounds that McNamara had breached his fiduciary duty to Ice Legal by: 1) using a ruse to attempt to obtain pre-suit discovery; 2) using the fee application as a means of communicating *ex parte* with the same judicial officer(s) who are presiding over the *McNamara* case;[4] and 3) breaching confidentiality agreements of Ice Legal's former clients.

---

[4] The *ex parte* communication concerned a mischaracterization of McNamara's dealing with Ice Legal prior to filing the complaint; providing a false impression of the compensation structure of Ice Legal's retainer, and providing inaccurate information about what entities were bringing the claims. Objections to 3rd Fee App and Motion to Appoint Special Receiver.

### C.  Motion to Dissolve Injunction

Ice Legal requested that the Court find that the Consumer Financial Protection Bureau ("CFPB") was no longer a real participant in this case and that the Court reassess the Preliminary Injunction in that light.  For example, the State AGs have no standing to pursue claims on behalf of consumers living outside their state.  Only the consumers in those seven states can be considered among those potentially harmed by the alleged taking of advance fees without an exception to the TSR.  It would also be improper to continue to enjoin the Receivership Defendants from doing business in the other 40 states.  Nor would it be proper to allow the Receiver to control the business of the Receivership Defendants in those 40 states  Moreover, without the CFPB, the State AGs would be required to post a bond for a preliminary injunction.

### D.  Objections to 4th Fee App

This Magistrate never ruled upon this motion or even mentioned it in connection with his recommended denial of Ice Legal's Motion to Intervene.  Ice Legal objected to: 1) specific expenses charged by McNamara that appear to be duplicates; 2) rates being charged by McNamara's counsel as being higher than promised; 3) the lack of detail that obscured how much the Receiver was spending on third-party actions; and 4) the depletion of the Estate's resources by ignoring the inherent conflict of allowing McNamara to hire his own firm, on an hourly basis (rather than contingency), to prosecute third-party actions that were never vetted by the Court.

**ICE LEGAL'S OBJECTIONS TO THE MAGISTRATE'S RECOMMENDATION TO
DENY THE MOTION TO INTERVENE**

I.    **In recommending denial of the Motion to Intervene, the Magistrate improperly
      considered the merits of the proposed motions and never found they were "frivolous
      on their face."**

      **A.  Summary of the objection**

      Under controlling Second Circuit law, "[e]xcept for allegations frivolous on their face, an

application to intervene cannot be resolved by reference to the ultimate merits of the claims

which the intervenor wishes to assert following intervention...." *Brennan v. N.Y.C. Bd. of Educ.,*

260 F.3d 123, 129 (2d Cir. 2001) (*quoting Oneida Indian Nation of Wisconsin v. State of N.Y.*,

732 F.2d 261, 265 (2d Cir. 1984)); *XL Specialty Ins. Co. v. Lakian*, 632 Fed. Appx. 667, 669 (2d

Cir. 2015)(unpublished)(same); *see also Kearns v. Cuomo*, No. 1:19-CV-00902 EAW, 2019 WL

5060623, at *3 (W.D.N.Y. Oct. 9, 2019) (Judge Wolford) (same).

      Here, the Magistrate used the wrong standard by relying on his opinion of the merits of

the proposed motions.  Indeed the Magistrate copiously characterizes all of Ice Legal's proposed

motions as "without merit" or "meritless."  But "[a]n interest that is otherwise sufficient under

Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or

factually weak.") (*quoting Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d at 130).

      The only exception to this rule is when the proposed motions are "frivolous on their face"

*Brennan*, at 129; *Oneida* at 265.  The Magistrate, however, never found that they were frivolous

("frivolous" and "meritless" are not the same[5]), let alone frivolous <u>on their face</u>.  Indeed, in one

_____

[5] "Frivolous claims rest on unrecognizable legal theories or fantastical factual allegations."
Reinert, Alexander, *Screening Out Innovation: The Merits of Meritless Litigation*, 89 Indiana
Law Journal 1192, 1192 (2014); *Lang v. Clinton*, 761 F.Supp.3d 595 (W.D.N.Y. 2024) (Judge
Wolford) (equating "frivolous" claims with those that  "are the product of delusion or fantasy").
"A meritless claim, by contrast to a frivolous one, is a claim in which a court determines, after

instance, he considered events that occurred after the motion was filed, thereby demonstrating unequivocally that he did not confine himself to what was "on the face" of the motion.

Nor could the Magistrate have reasonably found that the proposed motions were frivolous on their face.  The proposed motions did not present falsehoods, unrecognizable legal theories or fantastical factual allegations.  In the end, the Magistrate merely expressed his opinion about the probability of Ice Legal's success on the merits of its proposed motions—an opinion that is irrelevant under binding Second Circuit precedent.

### B.  The Magistrate decided the Motion to Intervene on his premature finding that Ice Legal's allegations in its proposed motions were "without merit."

Of the three (out of four) proposed motions that the Magistrate actually addresses, he uniformly—and improperly—considered the merits of each motion,[6] and uniformly finds that they are all meritless.

### Example 1 (Motion to Appoint Special Receiver):

Despite the Second Circuit's unambiguous prohibition, the Magistrate repeatedly references the merits of the proposed motions to support his opinion.  The first example is where he (ironically) cites *Oneida* as support for doing exactly what that case forbids:

---

adversarial briefing or discovery, that a plaintiff's theory of relief is insufficient or that a reasonable jury could not find facts that would allow a plaintiff to recover. Reinert, p. 1203; *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (superseded by statute on other grounds) (§ 1915 term "frivolous," when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.")

[6] *See*, Mag. Rep., p. 10 (explaining in a footnote to his statement that the motion to intervene "should be denied," that he considered "all the arguments raised" in the two proposed motions attached to the Motion to Intervene).

> The Court has reviewed these grievances [allegations that the Receiver breached his fiduciary duty in the Motion to Appoint Special Receiver] and finds them either to be without merit or insufficient to necessitate the appointment of a special or *ad litem* receiver. *See Oneida Indian Nation v. New York,* 732 F.2d 261, 265 (2d Cir. 1984) (no right to intervene to add "frivolous" claim).

(Mag. Rep., p. 14).

Moreover, the Magistrate's parenthetic description of *Oneida*—lifted word for word from the Receiver's opposition to the Motion to Intervene ("Receiver's Opp" Dkt. 694, p. 9)—leaves out the essential part of that holding—that the proposed motions be frivolous "on their face."

Likewise, the Magistrate cites *SEC v. American Board of Trade, Inc.,* 830 F.2d 431, 443 (2d Cir. 1987) for the proposition that "'[t]he court was not required to grant leave to intervene to file a clearly meritless complaint"—a quote that again exactly parrots the Receiver's parenthetical description of the case (Mag. Rep. pp. 13-15; Receiver's Opp, p. 9). And once again, the parenthetical leaves out the most essential part of the standard (that appears this time in the sentence that precedes the Magistrate/Receiver's quote)—that the court in that case found the proposed motions "frivolous on their face." *Id.*

Because the Magistrate weighed the merits of the proposed motions, it should be noted that the only facts that could be considered were those in Ice Legal's memorandum. Unlike Ice Legal, neither the State AGs nor McNamara supported their opposition with a declaration, affidavit, or affirmation as required by Rule 7(a)(3) L. R. Civ. P. Under that Rule, the failure to provide such sworn support is grounds for resolving the motion against them. The Rule is particularly applicable to McNamara's improper attacks on the never-filed Motion to Appoint a Special Receiver where he represented through unsworn argument that he did not attempt a ruse to obtain pre-trial discovery and that he did, in fact, conduct "substantive discussions" with Ice Legal before filing the case. (Receiver's Opp, pp., 7, 10-11). At a minimum, McNamara needed a declaration to counter that supplied with Ice Legal's motion. Yet, the Magistrate found "no

credible evidence" to support the claim that McNamara breached fiduciary duties to Ice Legal (Mag. Rep., p. 16).

**Example 2 (Motion to Appoint Special Receiver…again):** "Ice Legal repeatedly maintains that … certain of the Receiver's actions … constituted a breach or dereliction of his fiduciary duties as a court-appointed receiver in this case.  But the Court has reviewed all of the filings here and finds no *credible* evidence to support such claims." (Mag. Rep. p. 16) (emphasis added).  By weighing the credibility of evidence, the Magistrate is deciding the merits of the proposed motion.

**Example 3 (Motion to Appoint Special Receiver … yet again):** "For the reasons previously stated [regarding *ex parte* communications], these complaints are without merit and insufficient to support a request for intervention." (Mag. Rep., p. 15, n. 13).

**Examples 4 (Objections to McNamara's Third Fee Application):** "[E]ven if Ice Legal had standing, the Court has reviewed their objections [to the McNamara's fee application] and finds them to be without merit." (Mag. Rep., p. 9);

**Example 5 (Objections to McNamara's Third Fee Application … again):** "But for the reasons stated previously, Ice Legal's objections to the fee application are without merit. (Mag. Rep., p. 13);

**Examples 6 (Motion to Dissolve Injunction):** "As discussed *infra*, this motion [Motion to Dissolve Injunction] is without merit and cannot form the basis of a "direct, substantial, and legally protectable interest in this case." (Mag. Report, p. 17, n. 16).

The Magistrate's repeated failure to abide by the Second Circuit's most basic rule of decision for motions to intervene is sufficient, by itself, for this Court to refuse to adopt the

opinion as its own—particular when, under the *de novo* standard, it must independently determine this issue without any deference to the Magistrate's findings or recommendations. *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 514 (S.D.N.Y. 1997) ("Therefore, *de novo* review 'means reconsideration afresh by the district judge in this sense: no presumption of validity applies to the magistrate's findings or recommendations.'") (*quoting* 7 Pt. 2 James Wm. Moore, Moore's Federal Practice, 1 72.04[10.–2], at 72–96 (1995)).

### C. The Magistrate's finding that all of Ice Legal's proposed motions are without merit makes its ability to have them addressed in the *McNamara* case illusory.

Ruling upon the merits of the proposed motions creates another problem.  A large part of the Magistrate's rationale for recommending denial of the Motion to Intervene was that all the issues in those motions can, and should be, addressed in the *McNamara* case:

- "Indeed, none of Ice Legal's grievances or criticisms of the Receiver represent a legally protectable interest *in this case.* Instead, these are issues to be raised and litigated, if necessary, in the Ice Legal Lawsuit." (Mag. Rep., pp. 14-15) (emphasis original).

- "Should Ice Legal believe that certain documents in the Ice Legal Lawsuit should be redacted or filed under seal, they may make a motion in that case for such relief." (Mag. Rep. p. 15, n. 13) (emphasis added);

- "As explained previously, the entirety of Ice Legal's claims against the Receiver relate to the Receiver's conduct in the context of the Ice Legal Lawsuit … Ice Legal is free to pursue these arguments in the already existing, independent action." (Mag. Rep. p. 17) (emphasis added);[7]

- "Allowing Ice Legal to intervene, in order to raise collateral matters that are either meritless or can be adjudicated in their separate lawsuit with the Receiver… (Mag. Rep. p. 19) (emphasis added);

- "…Ice Legal would have a full and fair opportunity to contest fees and damages at that time, and in that separate action." (Mag. Rep., p. 17);

---

[7] This statement, if adopted by the Court, appears to give Ice Legal permission needed under the Barton Doctrine to countersue the Receiver.

- "Courts in this Circuit have 'denied motions for intervention by right from applicants who remain free to pursue adjudication of their rights in independent actions or in other proceedings." (Mag. Rep., p. 17);

- "Ice Legal is free to pursue these arguments in the already existing, independent action." (Mag. Rep., p. 17);

- "It would be a waste of both receivership resources and judicial resources to  appoint a special receiver to handle litigation regarding one unsecured creditor's claim, <u>when a separate lawsuit is now pending which will address this very issue</u>." (Mag. Rep., p. 15) (emphasis added).

But if this Court adopts the Magistrate's improper findings that all the issues in the proposed motions are "meritless," McNamara will no doubt argue in his case that these issues are foreclosed by *res judicata* and that the very filing of these motions is sanctionable.  And as it stands, he will be making that argument to the very same Magistrate who found them meritless. So the Magistrate's rationale for recommending denial of the Motion to Intervene—that the proposed motions can be addressed in the *McNamara* case—is non-existent for the very reason that he already improperly addressed the merits of the proposed motions.

### D. The Magistrate's decision to address the merits of the proposed motions not only defied Second Circuit authority, but it undermined basic principles of due process.

The Magistrate waded into an improper consideration of the merits of the proposed motions without allowing two of them to be fully briefed.  Specifically, he never set a separate briefing schedule for the proposed Motion to Appoint Special Receiver and the proposed Motion to Dissolve Injunction.  Instead, for the first of these (the Motion to Appoint Special Receiver) McNamara prematurely briefs the merits of the proposed motion in his memorandum opposing the Motion to Intervene.  Ice Legal objected and expressly reserved its reply arguments until the Motion to Intervene was granted and the proposed motion could become an actual motion:

> To be clear, Ice Legal objects to McNamara's continued mischaracterization of Ice Legal's contract and denies the many accusations he sprinkles throughout his

opposition memorandum. Ice Legal will address them in detail when it is actually appropriate for McNamara to present his defenses to Ice Legal's Motion to Appoint Special Receiver.

Ice Legal's Reply Memo,[8] p. 5, n. 14.  The Magistrate nevertheless proceeded on the path to his familiar finding that Ice Legal's proposed Motion to Appoint Special Receiver was without merit—without hearing Ice Legal's response to McNamara's arguments.  Worse, as discussed above (*supra*, p. 8), the Magistrate specifically relied upon (and even copied excerpts from) McNamara's unrebutted opposition to the <u>proposed</u> motion to support his recommendation to deny the <u>actual</u> motion at hand, the Motion to Intervene.  Thus, even if the Motion to Intervene could be determined by reference to the perceived merits of a proposed motion, evaluating such merits without Ice Legal's reply to McNamara's premature arguments is a procedural end run around Ice Legal's due process right to be heard.

This due process problem is particularly problematic with the Magistrate's disposal of the Motion to Dissolve Injunction (discussed in Ice Legal's objection to the Magistrate's ruling on this proposed motion, *infra*, p. 31).

### E.  Conclusion

The Magistrate's repeated use of the wrong standard for recommending how the Motion to Intervene should be decided is, if adopted by this Court, reversible error.  The Court should reject the Magistrate's Report and rule that the Motion to Intervene is granted.

---

[8] Reply Memorandum in Support of Third-party Motion to Intervene for Purposes of Filing an Objection to Receiver's Report and a Motion to Appoint Special Receiver and for Other Purposes (Dkt. 697) ("Ice Legal's Reply Memo").

## II.    The Magistrate's findings on the criteria for granting a motion to intervene are equally unfounded.

In addition to referencing his premature opinions on the merits of Ice Legal's proposed motions, the Magistrate recommended denial of the Motion to Intervene based on the three of the four criteria to be considered, namely, whether: 1) Ice Legal timely filed the motion; 2) Ice Legal has an interest in the action; 3) that interest may be impaired by the disposition of the action. The Magistrate never recommended how the Court should rule on the fourth criterion—whether Ice Legal's interest, if any, would be protected by another party to the litigation. The Court should reject the recommendations on the other three.

### A.    Ice Legal's Motion to Intervene was timely

#### 1.    The time must be measured from when Ice Legal had a protectable interest.

The Magistrate concludes that Ice Legal should have filed the Motion to Intervene when it learned of this case over a year ago. (Mag. Rep., p. 11). Ice Legal's interest at that time, however, was solely as a creditor. Creditors do not need to intervene to have their interests protected; that is the Receiver's responsibility (*see*, Mag. Rep., p. 8) ("the work of the Receiver and his team has … protected both consumers and creditors").

Next the Magistrate suggests that Ice Legal should have filed the Motion to Intervene when it learned that McNamara threatened a lawsuit. (Mag. Rep., p. 12). The Magistrate never explains how the threat of a lawsuit created a legally protectable interest such that a Motion to Intervene at that time would not have been met with sanctions against Ice Legal. At best, only one of McNamara's breaches of fiduciary duty—the attempted use of subterfuge to obtain documents in violation of ethics rules and the code of conduct for receivers (Ice Legal's Motion to Appoint Special Receiver)—had occurred at that time. And even then, it was only when

McNamara filed his third fee application in April that this ruse was confirmed by his own timesheets.

The other acts which Ice Legal enumerated as reasons that, <u>in combination</u>, justified the appointment of a special receiver did not occur until McNamara filed his case (lack of due diligence, revealing confidential information, indifference to inaccuracy) in late March of this year or until he filed his third fee application (violation of duty of honesty and full disclosure) in April of this year.

The interests pursued in the other three proposed motions were based upon events that had not yet occurred even at the time that McNamara brought suit against Ice Legal:

| MOTION/INTEREST TABLE | | |
|---|---|---|
| **Motion** | **Ice Legal's Primary Interests** | **Date Interest Arose** |
| Objections to 3rd Fee App | 1) Preventing McNamara's one-sided, prejudice-mongering descriptions of Ice Legal and its actions communicated in this case to the same Judge and Magistrate presiding in the *McNamara* case outside the presence of Ice Legal and its counsel.<br><br>2) Requiring McNamara to provide more frequent and more current spending reports to keep creditors advised of what remains in the Estate. | April 23, 2025 (date of filing of the 3rd fee app). **This is twelve days before Ice Legal filed the Motion to Intervene (5/7/25)** |
| Motion to Dissolve Injunction | 1) Eliminating the need for a receiver thereby returning the decision to prosecute claims against Ice Legal to the true owners of those purported claims; and<br><br>2) Obviating damages to the Defendants in this case (including fees to the Receiver)—for which McNamara alleges Ice Legal is responsible—by reducing the number of defendants and consumers whose interests can be resolved in this case. | End of March, 2025 (when it became apparent that the CFPB's promises to the Magistrate at the March 6th hearing [that the CFPB would be actively participating] were not being fulfilled). |

| MOTION/INTEREST TABLE | | |
|---|---|---|
| **Motion** | **Ice Legal's Primary Interests** | **Date Interest Arose** |
| Objections to 4th Fee App | Preventing the double counting of Receiver's expenses and higher-than-promised fees of McNamara's counsel—expenses for which McNamara alleges Ice Legal is responsible. | July 21, 2025  (date of filing of the 4th fee app). **This is a month and a half _after_ Ice Legal filed the Motion to Intervene.** |

Thus, the Magistrate's suggestion that "Ice Legal's interest in the instant litigation is the same as it was in October 2024, when the Receiver declined to pay Ice Legal's invoices and notified Ice Legal of the receivership's claims of professional negligence, breach of fiduciary duty, and fraudulent transfer" (Mag. Rep., p. 13) is simply, and categorically, mistaken.  Nor is it correct to say that Ice Legal waited "over sixteen months after this case began" (Mag. Rep., p. 12) when that date has no connection with any interest that would have justified Ice Legal's intervention.  Stated simply, the clock cannot begin before Ice Legal's interests in intervening arose.

> **2.  The timeliness criterion is concerned with whether the <u>delay in filing</u> prejudices the parties, not whether intervention to pursue "collateral issues" is prejudicial.**

Even if Ice Legal had waited "over sixteen months"—which it did not—the notion that the passage of time is sufficient by itself to warrant denial of a motion to intervene conflicts with this Court's discussion in, *Pike Co., Inc. v. Universal Concrete Products, Inc.*, 284 F. Supp. 3d 376, 395 (W.D.N.Y. 2018) (Judge Wolford):

> Although the passage of time must be considered by a court in determining the timeliness of the motion, the mere lapse of time does not render a motion to intervene untimely…. Indeed, it is firmly established that the most significant criterion in determining timeliness is whether <u>the delay in moving for intervention</u> has prejudiced any of the existing parties.

*Id.*  (cleaned up) (emphasis added). *See also*, *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (setting out the factors for determining timeliness as including "prejudice to existing parties <u>resulting from any delay</u>" in filing) (emphasis added) (*quoting*, *United States*

*v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (listing the factors as including "whether the intervention will unduly delay or prejudice the application of the rights of the original party").

The Magistrate, however, never identifies any prejudice to the other parties <u>as a result of the "delay" in filing</u>.  Instead he asserts that Ice Legal's <u>pursuit of "collateral issues"</u> will delay resolution of this case and prejudice the proper parties (Mag. Rep., p. 13)—i.e. that Ice Legal's participation would cause undue delay or prejudice even if had moved to intervene the moment this case was filed.  Thus, the Magistrate conflates the timeliness criterion with a prejudice criterion related to permissive intervention. *See U S. Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir. 1978).

But even if a "collateral issue" type of prejudice were applicable to a determination of timeliness, the Magistrate never explains how the resolution of Ice Legal's "collateral issues" interests in this case would delay the case or prejudice existing parties.  Moreover, if by "collateral issues" he means that the issues in the *McNamara* case are not part of the same case and controversy as being litigated in this case, then the Magistrate is saying that there is no basis to exercise supplemental jurisdiction over McNamara's claims in the first place.

Nor do the cases cited by the Magistrate support a finding of untimeliness.  The Magistrate cites *Floyd v. City of New York,* 770 F.3d 1051, 1059-60 (2d Cir. 2014) and describes it as  "denying [an] untimely motion to intervene where granting the motion would cause delay and prejudice to existing parties, and would undermine the orderly administration of justice.'" (Mag. Rep., p. 13).  The actual quote from the case is:

> <u>This resembles post-judgment intervention</u>, which is generally disfavored because it usually creates delay and prejudice to existing parties ... and undermines the orderly administration of justice

*Floyd v. City of New York*, 770 F.3d at 1059–60 (emphasis added).  There is nothing about this case that resembles post-judgment intervention.  In fact, this case is not even at issue.[9]  No scheduling order has been issued and discovery has not commenced.

Similarly, the Magistrate's only other untimeliness-due-to-prejudice case, *Sec. & Exch. Comm'n v. Callahan,* 193 F. Supp. 3d 177, 205 (E.D.N.Y. 2016) is inapposite.  Also a post-judgment intervention, the receiver and the court in that four-year-old case had worked for more than two years to resolve a claims process for investors of receivership entities.  Unlike this case, intervention there would have reopened the claims process thereby delaying distribution to other claimants.

Accordingly, the Magistrate's suggested conclusion that Ice Legal's Motion to Intervene was untimely is not just unsupported by the facts and the case law he cites, but it is so wildly contrary to the law and facts, that it would be an abuse of discretion to adopt the finding of untimeliness.  This Court should reject this recommendation and determine, *de novo*, that the Motion to Intervene was timely.

**B.  Ice Legal has a legally protectible interest in this lawsuit.**

**1.  Ice Legal's interest in objecting to McNamara's third fee application**

The Magistrate improperly brushes aside Ice Legal's interest in objecting to McNamara's third fee application by referencing the merits of the objections. (Mag. Rep., p. 13).  For the reasons discussed above, this defies Second Circuit precedent and cannot stand.

---

[9] (Mag. Rep. p. 19) (acknowledging that, as of the time of the Magistrate's Report, the Magistrate had yet to rule on one motion to dismiss).  He does not mention that at least ten parties are still waiting for final rulings from this Court on his recommended denials of motions to dismiss.

**Ice Legal's interest in preventing its opponent's *ex parte* contact with the
same Judge and Magistrate presiding over the *McNamara* case**

The Magistrate concludes that Ice Legal has no legal interest in "counter[ing] any

incorrect or inappropriate information about Ice Legal presented to the Judge in this case"

because such statements made in this case "have no *res judicata* or other legal effect as to the Ice

Legal Lawsuit." (Mag. Rep., p. 14). This statement is strangely misplaced since Ice Legal never

claimed that the communications had a "*res judicata* or other legal effect."

More disturbingly, the Magistrate next asserts point blank that Ice Legal has no right to

know what its opponent says to this Court about Ice Legal or the *McNamara* case behind Ice

Legal's back:

> Ice Legal has no legal right to intervene in this case for purposes of knowing what
> the Receiver may represent, to this Court, about its allegations against Ice Legal
> in a wholly separate matter.

(Mag. Rep., p. 14). The suggestion that Ice Legal has no legal interest in preventing or

ameliorating such *ex parte* contact by its adversary (with the very Judge and Magistrate presiding

over the *McNamara* case) is difficult to reconcile with the Magistrate's obligation to avoid the

appearance of impropriety (Canon 2 Code of Conduct for United States Judges).

Later, in a footnote, the Magistrate dismisses any concern about *ex parte*

communications, by simply stating that "these complaints are without merit and insufficient to

support a request for intervention," which again inappropriately references the merits of the

proposed motions (Mag. Rep., p. 15, n. 13). In another footnote that actually precedes the above

quote by several pages, the Magistrate suggests that an adversary's communication with the

presiding judge is not *ex parte*, as long as they occur in a "wholly separate lawsuit":

> Ice Legal also claims that the Receiver used the Third Fee Application to make *ex
> parte* submissions to the Court about the Ice Legal Lawsuit, which presented a
> "skewed, partisan impression of the compensation structure of Ice Legal's
> retainer" with Strategic. First, statements in the Receiver's Third Fee Application

18

do not qualify as *ex parte.* They were made in a wholly separate lawsuit to which Ice Legal is not a party.

(Mag. Rep., p. 10, n. 9). Again, the Magistrate appears to ignore the fact (or was misinformed) that the statements are being made to the same Judge and Magistrate presiding over the *McNamara* case.

And finally, the Magistrate reasons that such communications are not *ex parte* because they "were also made in a public document which Ice Legal can, and apparently did, access." (*Id*.) Putting aside that not all communications with the Court are in public documents (such as, at hearings or in unfiled letters to the Court), the notion that a judge may place the onus on a party to discover its adversary's *ex parte* communications by monitoring public documents runs afoul of the Code of Conduct for United States Judges, Canon 3(4). That section requires that, "[i]f a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." The Model Code of Judicial Conduct states that this duty to notify the parties applies even when "the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication." Rule 2.9 (A)(1)(a) Model Code of Judicial Conduct.

In any event, the Magistrate's discussion of whether the communications are *ex parte* is a prohibited reference to (and a ruling on) the merits of the proposed motion. Because it is not frivolous on its face to say that statements of an adversary to the presiding judicial officer about Ice Legal or the case against it—in the absence of Ice Legal—are *ex parte* communications, the allegation must be accepted as true for purposes of the Motion to Intervene.

### 2.  Other Ice Legal interests

***Motion to Appoint Special Receiver***: As mentioned above, the Magistrate did not rule that the interests expressed by Ice Legal were frivolous on their face, Instead, he improperly relied upon his opinion of the merits of the proposed motion, expressly finding that Ice Legal's "grievances" lacked merit. (Mag. Rep., p. 14)  Alternatively, he found the grievances "<u>insufficient</u> to necessitate the appointment of a special or *ad litem* receiver" (Mag. Rep., p. 14) (emphasis added), but "insufficiency" is still a ruling on the merits of the proposed motion.  On the issue of whether McNamara breached his fiduciary duties, the Magistrate says that he reviewed all of the filings here and finds no credible evidence to support such claims" (Mag. Rep., p. 16)—yet another improper decision on the merits.

As part of the merits decision, the Magistrate states, without explanation, that "[i]t would be a waste of both receivership resources and judicial resources to appoint a special receiver to handle litigation regarding one unsecured creditor's claim, when a separate lawsuit is now pending which will address this very issue." (Mag. Rep. pp. 15-16).  But the "issue" is the appointment of a special receiver, which the Court in the McNamara case cannot do.  Nor does it expend additional receivership or judicial resources simply to have McNamara's duties with respect to the Ice Legal litigation performed by someone else.  There would be no overlap of effort by the Receiver or the Court.

Next, the Magistrate proposes that "[t]he possibility that Ice Legal may be responsible for some or all of the Receiver's fees in this action, based on the outcome of the Ice Legal Lawsuit, is entirely speculative and does not constitute a direct, substantial, or legally protected interest in this litigation." (Mag. Rep., pp. 16-17).  Ice Legal agrees that a claim based on remote and contingent fees and costs in a separate action is "entirely speculative," but these are McNamara's claims against Ice Legal.  As long as McNamara is left in a position to create and inflate the very

damages he seeks to collect from Ice Legal, Ice Legal has an interest in intervening to combat that self-fulfilling damage claim.

Finally, the Magistrate states that Ice Legal's prediction that it would bring "potential challenges to the Preliminary Injunction or the appointment of the Receiver" is "entirely speculative and cannot support a request for intervention." (Mag. Rep., p. 17). Yet, in a footnote to that very statement, he acknowledges that Ice Legal did, in fact, bring a challenge to the Preliminary Injunction and the appointment of the Receiver—Ice Legal's Motion to Dissolve Injunction. (Mag. Rep., p. 17, n. 16). So, the Magistrate's own footnote demonstrates that what he says is "speculative," actually already occurred.

In that footnote, the Magistrate goes on to dismiss this Motion to Dissolve Injunction with the customary "without merit" finding. He also rails against the motion as demonstrating a "lack of a legitimate interest" and showing the prejudice intervention would have "on the proper parties." Ice Legal submits that the Defendants in this case are also "proper parties" who would be benefited, not prejudiced, by granting Ice Legal's Motion to Intervene and Motion to Dissolve Injunction. In his undeserved censure of Ice Legal, the Magistrate appears to be speaking only on behalf of Plaintiffs and the Receiver.

***Motion to Dissolve Injunction***: The Magistrate does not comment on the interests Ice Legal seeks to protect in its proposed Motion to Dissolve Injunction. Instead, he simply rules upon the merits of the proposed motion, treating it as an independent non-dispositive motion. The thrust of the motion is that, if the CFPB has abandoned the case (as evidenced by its lack of any substantive participation), then the preliminary injunction needs to be reevaluated. For one, because each State AG can only pursue the claims of that state's residents, the number of consumers whose claims can be considered in this case are greatly reduced. Also, since it

appears that not all defendants operated in states represented by the State AGs, some may be entitled to dismissal.

Thus, for this proposed motion, Ice Legal's interests include: 1) eliminating the need for a receiver thereby returning the decision to prosecute claims against Ice Legal to the true owners of those claims; and 2) obviating damages to the Defendants in this case (including fees to the Receiver)—for which McNamara alleges Ice Legal is responsible—by reducing the number of defendants and consumers whose interests can be resolved in this case.

***Objections to 4th Fee App***: The Magistrate does not address Ice Legal's Objections to the Receiver's Fourth Fee Application which questioned probable double counting of some of McNamara's expenses and higher-than-promised fees of McNamara's counsel.  It also questioned whether the surprising magnitude of such fees already expended in the fledgling case against Ice Legal was driven by McNamara's inherent conflict in hiring his own firm as counsel for that case.  These issues relate to at least two of Ice Legal's interests: 1) ensuring that McNamara does not overbill for his fees and costs that he alleges constitute damages that Ice Legal must pay; and 2) that the amount of fees being expended (and the litigation itself) is not being motivated by McNamara's self-interest rather than the merits of the case.

*    *    *

Accordingly, this Court should reject the idea that Ice Legal has no protectible interests in this litigation and determine, *de novo* (and based on the face of the proposed motions), that it does.

### C. Ice Legal's interests will be impaired or inadequately protected absent intervention.

The Magistrate's main point on this factor is that, in his view, Ice Legal's interests would be protected by raising them in the *McNamara* case. As discussed above, the notion that Ice Legal can have the issues in its proposed motions addressed in the *McNamara* case is illusory because the Magistrate would also have this Court conclude now (in this case) that they are meritless. The notion is also illusory because this Court, in the context of the *McNamara* case, cannot appoint a special receiver, prevent double billing of the Estate, dissolve the Preliminary Injunction, or provide any of the other relief requested.

***Objections to 4th Fee App***: Again, the proposed motions raise issues that can only be resolved in this case. For example, as suggested by the Magistrate (and McNamara), Ice Legal has sought the same relief in the *McNamara* case by re-filing its Objections to the Receiver's Fourth Fee Application in that forum. It asks the Court to reduce McNamara's bill to the Estate due to what appears to be the double counting of expenses and the charging of attorneys' fees higher than what was promised. It also asks the Court to consider McNamara's inherent conflict in hiring his own firm as counsel to prosecute the case against Ice Legal, especially in light of the magnitude of the fees already expended while the case is still in its infancy.

The Court, however, while sitting as the adjudicator in the *McNamara* case, has no power to adjust the Receiver's bill to the Estate in this case, especially without the presence of the other parties to this matter. Nor is it rational to believe that, if these claimed damages were ever to be assessed against Ice Legal, it conserves judicial resources (or benefits the Estate) for the Court in the *McNamara* case to be tasked with backing out the Receiver's improperly charged fees and costs that have already been reviewed and approved by this Court, and worse, paid by the Estate, years earlier.

Thus, Ice Legal's legally protected interests (*see*, partial list in Motion/Interest Table, *supra*, p. 14) will be impaired if intervention is disallowed.

**Objections to 3rd Fee App**: Again, the Court in the *McNamara* case could not strike portions of the fee application in this case.

**Motion to Dissolve Injunction**: Likewise, Ice Legal's interests in dissolving the preliminary injunction cannot be addressed in the *McNamara* case.  Only the Court <u>in this case</u> can dissolve the injunction. Again, Ice Legal's interests (*see*, partial list above in Motion/Interest Table) will be impaired if intervention is disallowed.

**Motion to Appoint Special Receiver**: Because McNamara is directing the companies in whose shoes he stands to bring claims against Ice Legal, Ice Legal has an interest in contesting his appointment under the Preliminary Injunction in this case, the powers granted him under that appointment, and the continuing validity of that appointment and attendant powers.  Again, only in this case, not the McNamara case, can the Court appoint a special receiver.

### D.  Ice Legal's interest is not adequately protected by the parties to the action.

The Magistrate did not address this fourth factor for determining whether Ice Legal may intervene as a matter of right under Rule 24(a)(2) Fed. R. Civ. P.  The State AGs were the only parties that claimed to be able to adequately protect Ice Legal's interests, but they demonstrated quickly by their own argument that they are "ill-equipped or unwilling to protect [Ice Legal's] interests." (*See* Ice Legal's Reply Memorandum,[10] pp. 1-2, 8).

---

[10] Reply Memorandum in Support of Third-party Motion to Intervene for Purposes of Filing an Objection to Receiver's Report and a Motion to Appoint Special Receiver and for Other Purposes (Dkt. 697).

Moreover, it is self-evident that McNamara's assertion that Ice Legal is liable for all the funds that the State AGs may eventually wrest from the Defendants on their TSR claims puts the State AG's interests adverse to those of Ice Legal. Specifically, Ice Legal has an interest in minimizing that amount, while the State AGs have an interest in maximizing it.

### E.  The Magistrate did not consider granting intervention on a limited basis.

Ice Legal specifically sought intervention on a "limited basis." (Ice Legal's Reply Memo, p. 10). Many of the Magistrate's concerns—such as future prejudice to the parties caused by disruption and delay in the resolution of the case (Mag. Rep., p. 13)—can be eliminated by granting intervention limited to the concerns raised by Ice Legal in its Motion to Intervene (as elaborated in the proposed motions). Yet, the Magistrate ignored this option.

Courts are not faced with an all-or-nothing choice between granting or denying a motion to intervene. Rule 24 also provides for limited-in-scope intervention. *See* Rule 24 Fed. R. Civ. P., Advisory Committee's Note, 1966 Amendments ("Intervention of right ... may be subject to appropriate conditions or restrictions responsive  among other things to the requirements of efficient conduct of the proceedings."); *U.S. v. City of Detroit*, 712 F.3d 925, 927 (6th Cir. 2013) ("While concerns of delay and re-litigation are serious, they can be alleviated by limiting the scope of intervention instead of outright denial.").

Accordingly, if the Court shares any of the Magistrate's concern about Ice Legal's mere presence in the case being a threat to its efficient resolution, it should reject the Magistrate's recommendation in favor of granting intervention on a specified limited basis.

### F. Conclusion

For the reasons above, the Court should reject the Magistrate's unsound analysis of the factors to be considered when deciding a request to intervene as of right and instead grant Ice Legal's Motion to Intervene.

III.   **In the alternative, the Court should find, *de novo*, that Ice Legal is entitled to permissive intervention.**

A.  **A finding that intervention by right should be denied does not support denial of permissive intervention.**

The Magistrate begins by regurgitating the text of McNamara's opposition word for word, including McNamara's mis-citation of the Rule (except that the Magistrate mis-cites it twice):

| Magistrate Roemer | McNamara |
|---|---|
| The Court has the discretion to permit intervention under Rule 24(b)(2). The rule provides that "the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). <br><br> Mag. Rep., p. 18 | The Court has the discretion to permit intervention under Rule 24(b)(2). The rule provides that "the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.["] <br><br> Dkt. 694, p. 14 |

The correct Rule numbering (for almost twenty years) is 24(b)(1)(B) Fed. R. Civ. P.

The Magistrate then states that permissive intervention should be denied for all the reasons he gave for recommending denial of intervention by right (Mag. Rep., p. 18).  But this view is fundamentally flawed because, if the denial of intervention by right is enough to require denial of intervention by permission, then there would be no need for two rules.

Unlike intervention by right, intervention by permission is left to the broad discretion of the court which changes how the factors are to be considered. In *Granite State Ins. Co. v. KM*

*Tactical*, LLC, No. 23 CIV.7769 (ALC) (GS), 2025 WL 1502019 (S.D.N.Y. May 27, 2025) the court found:

> In the context of permissive intervention, … district courts in the Second Circuit have recognized that the four factors [considered when deciding intervention as of right] should be considered as a whole, rather than focusing narrowly on any one of the criteria, and that application of the factors is flexible and discretionary.")

*Id*. at *4 (cleaned up). The court went on to say that the arguments against intervention by right "carry considerably less weight under the more flexible and liberal Rule 24(b) standard." *Id*. at *6. Thus, if any of the four factors would prevent mandatory intervention, the Court may still grant permissive jurisdiction if, on the whole, justice would be served.

### B. The motion to intervene by permission was not untimely.

Next, the Magistrate again asserts that the Motion to Intervene was untimely and the parties in this case have, as a result, been prejudiced (Mag. Rep., pp. 18-19). As proof of this unspecified prejudice, he points to the facts that no scheduling order has been entered and no discovery has been initiated.—as though they establish anything other than the fact that the case is still in its infancy. As mentioned above, this case is not at issue and many motions to dismiss still await this Court's final disposition (*supra*, p. 17).

### C. There is no prejudice to the parties that would outweigh the liberal policy in favor of intervention.

In the end, the Magistrate never identifies any specific prejudice to the parties caused by untimeliness. Instead, he wraps up his analysis of permissive jurisdiction by citing a case for the idea that "[a]dditional parties always take additional time" even if they have no witnesses. This self-evident truth, however, counsels against ever permitting any kind of intervention, an approach which does not square with the liberal policy in favor of permissive intervention.

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) "([Rule 24(b)] is to be liberally construed in favor of intervention.") (cleaned up).

### D. The Magistrate did not rule on whether the McNamara case shares a common question of law or fact with this case.

Rule 24(b)(1)(B) Fed. R. Civ. P. requires that the intervenor have "a claim or defense that shares with the main action a common question of law or fact."  Ice Legal contended that McNamara's claim that the Court in his case had supplemental jurisdiction more than satisfied this requirement for as long as that allegation (with which Ice Legal vehemently disagrees) was allowed to stand.  That is because supplemental jurisdiction requires that his case be "so related to claims in [this case] that they form part of the same case or controversy…" Thus, if this Court has jurisdiction to entertain McNamara's state law claims in a separate proceeding because it is part of the same case and controversy being litigated here, then that case "shares with the main action a common question of law or fact" and Ice Legal qualifies to intervene by permission.

The Magistrate made no comment on the subject other than mentioning the existence of the "common question of law or fact" rule (Mag. Reg., p. 18).  He did, however, repeatedly refer to the *McNamara* case as "wholly" or "entirely" separate" from this case:

- [Statements of the Receiver] were made in a <u>wholly separate lawsuit</u> [this case] to which Ice Legal is not a party. (Mag. Rep., p. 10) (emphasis added);

- Ice Legal has no legal right to intervene in this case for purposes of knowing what the Receiver may represent, to this Court, about its allegations against Ice Legal <u>in a wholly separate matter</u>. (Mag. Rep., p. 14) (emphasis added);

- Finally, unlike Ice Legal's claims, the validity of the banks' interest in receivership assets is not the subject of <u>an entirely separate litigation</u>. (Mag. Rep., p. 17) (emphasis added).

Yet, in his case, McNamara scoffed at the idea that these cases do not share a common nucleus of operative fact. Receiver's Opposition to Defendants' Motion to Dismiss for Lack of

Subject Matter Jurisdiction (*McNamara* case, Dkt. 37, p. 3) ("Ice Legal incredibly argues that this action does not share a "***common nucleus of operative fact***" with the Main Case [and the claim] that the Receiver cannot meet [this] test [is] a contention which does not pass the straight-face test…") (emphasis original).  The Court should not permit McNamara to have his cake and eat it too.  Either the cases are sufficiently related to support both the Court's jurisdiction and Ice Legal's intervention, or they are not, and McNamara's case should be dismissed.

Also unmentioned by the Magistrate is Ice Legal's discussion of the Second Circuit's opinion in *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), which is largely responsible for this conundrum.  *Achtman* held that, despite the wording of the statute to the contrary, supplemental jurisdiction under 28 U.S.C. § 1367 could be used to provide jurisdiction in an entirely separate proceeding—just as McNamara is attempting to do in his case.  If *Achtman* had not ignored the plain text of the statute—and if McNamara wanted (as he does now) to travel under the jurisdictional umbrella of this proceeding by way of § 1367—he would be required to join Ice Legal in this case, thereby obviating the intervention issue.  Accordingly, *Achtman's* broadening of § 1367 to separate proceedings should, therefore, be interpreted as approving near automatic intervention by any party in a case whose jurisdiction is supplemental to the case where intervention is sought.  The Court should grant intervention based directly on this case, or at a minimum, grant heavy—even conclusive—weight to this case when exercising its discretion.

**ICE LEGAL'S OBJECTION TO THE MAGISTRATE'S DENIAL OF THE MOTION TO MODIFY OR DISSOLVE THE PRELIMINARY INJUNCTION (AND APPOINTMENT OF RECEIVER) ON THE GROUNDS THAT THE CONSUMER FINANCIAL PROTECTION BUREAU HAS ABANDONED ITS CASE**

While the Magistrate should not have addressed the merits of any proposed motion, he carved out Ice Legal's Motion to Dissolve Injunction for special treatment—an <u>actual ruling</u> on the merits.  Ice Legal objects to this ruling under Rule 72(a) Fed. R. Civ. P.

This proposed motion was premised upon the undeniable fact that the CFPB's participation in this case has greatly diminished since this case was filed.  The Magistrate found no merit in Ice Legal's assertion that the CFPB was no longer actively participating in the case (even though the Magistrate had raised the question himself in March).

**I.    The Magistrate's denial of this proposed motion means that his recommendation to deny the Motion to Intervene must be rejected.**

Before considering whether the Magistrate's erred in denying this motion, the Court should consider the effect of this ruling on the Motion to Intervene.

***First***, as pointed out in Ice Legal's Objections to the Magistrate's Recommendation to Deny the Motion to Intervene, it is reversible error to consider the merits of the claims which the intervenor wishes to assert following intervention (*supra*, p. 6).  <u>There can be no better example of impermissibly considering the merits of a proposed motion than actually issuing a ruling on that motion.</u> (Mag. Rep., p. 17, n. 16; Magistrate explicitly references his ruling on the Motion to Dissolve Injunction as support for his conclusion that Ice Legal has no legally protectable interest in this case to justify intervention).

***Second,***  as discussed in more detail below (*infra*, p. 32), the Magistrate ruled that this motion was without merit by referencing facts not cited by anyone but himself—facts that did not exist until after Ice Legal filed the proposed motion (Mag. Rep. 20).  It cannot be denied that

the Magistrate improperly considered the merits of the proposed motions (rather than determining whether they were "frivolous on their face") when he relied on facts that are nowhere to be found in the proposed motions—"on their face" or otherwise.

## II.    If the Magistrate's recommendation to deny the Motion to Intervene is rejected, the Court should also overturn his ruling on the Motion to Dissolve Injunction

The primary reason that the Magistrate offers for denying the proposed Motion to Dissolve Injunction is because he finds that Ice Legal's motion to intervene should be denied, and therefore, Ice Legal lacks standing to bring the motion seeking reconsideration of the Preliminary Injunction. (Mag. Rep., p. 19)  If the Court determines that Ice Legal should not intervene, the remainder of Magistrate's order on the Motion to Dissolve Injunction should be stricken as pure dicta.

Conversely, if the Court determines that intervention should be permitted, the Magistrate's entire order should be reversed on the grounds that: 1) Ice Legal would have standing to bring the motion to reassess the injunction; and 2) the remainder of the order—which addresses the merits of that motion before briefing—was premature.  Stated differently, it was clear error to dispose of this proposed motion before it was ripe.

## III.    The Magistrate ruled without permitting briefing of the motion.

The Motion to Dissolve Injunction was a later-filed proposed motion that was expressly anticipated by the Motion to Intervene.[11]  Because it was presented separately from the Motion to Intervene, Ice Legal filed a Notice of Motion and a supporting memorandum explaining that

---

[11] As the Magistrate acknowledges, Ice Legal sought "to intervene for purposes of 'potential challenges to the Preliminary Injunction or the appointment of the Receiver.'" (Mag. Rep., p. 17).

Ice Legal anticipated that the motion "can be addressed when (and if) the Court grants Ice Legal's motion to intervene." (Dkt. 721-1, p. 1, n. 1) . The Notice of Motion explicitly included, both a statement of intent to file a reply and a request for oral argument (Dkt. 721).  Without comment, the Magistrate ruled upon the motion without scheduling briefing, without a hearing— and without any input from the parties.

Had the normal briefing by the parties been required, the CFPB's level of current and anticipated participation would have become evident through the Plaintiffs' responses.  The CFPB would have been required to take a position on the issue.  And even the State AGs' responses would have had to reveal the extent that they are now carrying the CFPB in order to retain the benefits that the CFPB's presence as a Plaintiff provides them.  And finally, responses by the Defendants may have provided further support for the motion.  The Magistrate's precipitous denial of this proposed motion, therefore, impinges on Ice Legal's procedural due process rights.

The due process problems do not end there. As mentioned before, the Magistrate relied upon facts that did not exist when Ice Legal filed its motion:

1) The Magistrate mentions that the CFPB was present at the status conference before the Court on July 2, 2025 (a week after, and perhaps as a result of, Ice Legal's Motion to Dissolve Injunction).  Ice Legal, therefore, was never given the opportunity to point out that, at the status conference, counsel for the CFPB said nothing (other than announcing his presence).[12]

---

[12] Notice of Filing of Official Transcript of Proceeding (Status Conference) held on 7/2/25 (Dkt. 736).  Notably, despite the fact that Ice Legal's proposed Motion to Dissolve Injunction was already filed, the Magistrate did not take the opportunity to question CFPB counsel (as he had in March) about whether the CFPB intended to actively participate.

2) In further support of his conclusion that the CFPB is actively participating in this case, the Magistrate also proffered that the "CFPB was also a signatory to the renewed motion for a preliminary injunction as to relief defendant Cameron Cristo, filed on July 16, 2025 [after Ice Legal filed the proposed motion]." (Dkt. No. 743)" (Mag. Rep. 20). That document was filed by counsel for the New York AG where the CFPB's signature is simply the typed "/s/"—something which might be considered a dubious example of "active" participation.

3) The Magistrate also calls attention to two joint stipulations for entry of stipulated preliminary injunction orders entered after Ice Legal's motion (one for Defendant Michelle Gallagher and one for Richard Gustafson) (Mag. Rep., p. 20). Again, the Magistrate does not mention that these stipulations—like that for Timothy Burnette discussed in Ice Legal's motion—were filed by the Attorney General for Wisconsin with the undated "/s/" signature for the CFPB.

With respect to Burnette's stipulation, Ice Legal had pointed out that, "because the document is a stipulation requiring two or more signatures, [the filing attorney is required] to obtain the actual signatures of all parties and retain the document containing those signatures for one year." (Dkt. 721-1, p. 6, n. 7[13]).  But by skipping the briefing and hearing process, the Magistrate ensured that the filing attorney was

---

[13] *Citing*, Rules 2.(G)(iv) and (v) of the Administrative Procedures Guide for Electronic Filing for the United States District Court Western District of New York ("Electronic Filing Guide WDNY").

<u>never required to produce original stipulations to confirm whether and when the CFPB actually signed them.</u>[14]

Had the Motion to Intervene been granted and the Motion to Dissolve Injunction been scheduled for briefing and argument, Ice Legal could have addressed these new facts in an amended supporting memorandum or a reply.

## IV. The Magistrate's ruling is based solely on his factual conclusion that "the CFPB remains an active plaintiff in this lawsuit."

The Magistrate did not mention any disagreement with any of the facts or law that would require a reassessment of the Preliminary Injunction should it be found that the CFPB is no longer an active participant (or that the appearance of "participation" is being improperly buoyed by the State AGs).  In other words, he did not take issue with the propositions that:

- the State AGs will have no standing to pursue claims on behalf of consumers living outside their state (Dkt. 721-1, p. 7);

- the activities of Receivership Defendants that do no business in the seven states represented by the State AGs cannot serve as a basis for the Preliminary Injunction or a damages award (Dkt. 721-1, p. 9);

- in the absence of the CFPB, the States would be required to post security for the Preliminary Injunction (Dkt. 721-1, p. 13);

- an abandonment of the case by the CFPB would be a change in circumstances that merits modifying or dissolving the Preliminary Injunction (Dkt. 721-1, p. 14).

---

[14] To the extent that the Court is relying on post-motion developments regarding the CFPB's participation, it should be noted that, of the three CFPB attorneys remaining in this case after the March exodus of counsel, one additional attorney, Akash Desai, has left the CFPB to work at King & Spaulding (LinkedIn profile of Akash Desai, https://www.linkedin.com/in/akash-desai-7b748b16/)—despite that he is still listed as a "lead attorney" in the docket.

Accordingly, the Magistrate's factual conclusion that the CFPB is actively participating—a conclusion reached without full briefing, proffered evidence, or a hearing—is the pivotal, and only, finding to be reviewed for clear error.

## V.    The Magistrate's factual conclusion that the CFPB is actively participating is clearly erroneous because it is not based on admissible evidence.

Starting in February of this year, the CFPB's involvement in this case decreased dramatically. It sought a stay of the proceedings and an extension of time to oppose a motion, and for several weeks did not sign or join papers being filed by the Plaintiffs. (Dkt. 598-1, 609-1, 623, 627, 629; *see*, details in Motion to Dissolve Injunction, Dkt. 721-1, pp. 3-4) It filed a letter to the Court stating that "Acting Director Vought reiterated Secretary Bessent's instruction to all CFPB staff not to make or approve filings or appearances by the Bureau in any litigation, other than to seek a pause in proceedings." (Dkt. 627).

In March, the Magistrate himself asked counsel for the CFPB, "What is the status of the CFPB? Are you in or are you out?" Counsel represented that "as of today we've been told that we are fully authorized to prosecute" and that they were "absolute" going to be actively participating in the case moving forward (Dkt. 639, p. 67; Motion to Dissolve Injunction, Dkt. 721-1, p. 5). The next memorandum filed by the Plaintiffs made a similar representation in a footnote, but the State AGs nevertheless "designated the State of Wisconsin as a point of contact for requests to unfreeze assets by a Defendant" (Dkt. 641, n. 1, p. 2), presumably because the CFPB was no longer fulfilling this role.

Since then, the CFPB has not filed a motion or a response to a motion—not even one which adopts or joins a motion or response filed by the other Plaintiffs. (*see*, 3/17/25 Dkt. 651 [(New York AG only]; 4/14/25 Dkt. 662 [filed by New York AG]; 4/17/25 Dkt. 666 [filed by

New York AG]; 5/7/25 Dkt 676 [filed by Illinois AG]; 5/7/25 Dkt. 677 [filed by Wisconsin AG]; 5/22/25 Dkt. 693 [filed by Colorado AG]; 6/17/25 Dkt. 717 [filed by New York AG]).[15]

The Magistrate's finding of active participation is based upon: 1) a CFPB attorney's attendance at a status conference where he did nothing more than answer roll call; and 2) a selection of five documents filed with the Court—all of which were filed by the State AGs and all of which bear only the "s-signature" (the typed "/s/") of a CFPB attorney:

1. Response in Opposition to Defendants' Renewed Cross-Motion to Stay the Preliminary Injunction Pending Appeal (Dkt. 641);

2. Joint Stipulation for Entry of Proposed Stipulated Preliminary Injunction as to Defendant Timothy F. Burnette (Dkt. 720; 6/25/25);

3. Joint Stipulation for Entry of Proposed Stipulated Preliminary Injunction as to Defendant Michelle Gallagher (Dkt. 722; 6/26/25);

4. Joint Stipulation for Entry of Proposed Stipulated Preliminary Injunction as to Defendant Richard Gustafson II (Dkt. 734; 7/2/25).

(Mag. Rep., p. 20). But the s-signature is not an actual signature. It is the hearsay statement of the filing attorney that the CFPB attorney has indicated that "the document is acceptable." Rule 2.(G)(iv) Electronic Filing Guide WDNY. Because it is hearsay, it was clearly erroneous for the Magistrate to suggest there was evidence that the "CFPB was a signatory" on these five documents (Mag. Rep., p. 20). This is especially true given that Ice Legal told the Magistrate that Rule 2.(G)(iv) Electronic Fing Guide WDNY requires the filing attorney to keep the original

---

[15] The Magistrate footnotes his idea that Ice Legal argued that a party must sign every document filed by other plaintiffs or be deemed to have abandoned the case (Mag. Rep., p. 20, n. 17). Ice Legal never made such an argument. It said then, as it says here, that for a period of time, the CFPB did not file anything itself—and did not even join filings by the other plaintiffs.

document with the actual signatures of anyone else who signed the document. (Dkt. 721-1, p. 6, n. 7).  Therefore, the Magistrate—or Ice Legal, if a hearing had been held—had a means of obtaining non-hearsay evidence to prove the CFPB attorney's signatures, but the Magistrate chose to proceed without it.

Even if the s-signatures were not hearsay, the fact that a CFPB attorney is blessing the work of the State AGs is hardly evidence of active participation, particularly if this arrangement is designed to create the illusion of CFPB participation.  Given that there would be far-reaching consequences if the CFPB were not a Plaintiff, the Court is faced with a situation susceptible to manipulation by the State AGs.  As such, it is clearly erroneous to find active participation based simply on half-hearted coattail riding by the CFPB.

## VI.    Conclusion

The Court should find that the Magistrate's decision to deny the Motion to Dissolve Injunction is clearly erroneous because it was premature and based on evidence that was either inadmissible or was not legally sufficient for the Magistrate to conclude that the CFPB is actively participating in this case.  The Magistrate should be directed to hold an evidentiary hearing on the CFPB's participation.

Dated: August 1, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*

Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

## CERTIFICATION

Pursuant to Rule 72 (c) L. Fed. R. Civ. P., I certify that the objections do not raise new legal or factual arguments, except: 1) those directed to unique statements of law and fact made by the Magistrate, such as his use of post-motion events to decide the merits of Ice Legal's proposed Motion to Dissolve Injunction; and 2) those that would have been raised in reply memoranda had the Magistrate permitted them before ruling.

Dated: August 1, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*

Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*