**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | **CASE NO. 24-cv-40-EAW-MJR** |
| Plaintiffs, | |
| v. | **STIPULATION AND ORDER** |
| STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. | |
| Defendants, and | |
| STRATEGIC ESOP, et al., | |
| Relief Defendants. | |

## STIPULATION AND ORDER

**WHEREAS**, on January 10, 2024, the Consumer Financial Protection Bureau, and the States of New York, Colorado, Delaware, Illinois, Minnesota, North Carolina, and Wisconsin filed a lawsuit against StratFS, LLC (f/k/a Strategic Financial Solutions, LLC) and affiliated companies (collectively, the "Strategic Corporate Defendants") and certain related individuals (collectively, the "Strategic Individual Defendants"; the Strategic Corporate Defendants and the Strategic Individual Defendants, are collectively, the "Defendants") in the United States District Court for the Western District of New York (the "Court"), Case No. 1:24-cv-00040-EAW-MJR, alleging they operated a consumer debt-relief business which collects unlawful advance fees;

**WHEREAS**, on January 11, 2024, the Court entered a Temporary Restraining Order (the "January 2024 TRO") against the Defendants and their assets, which among other things,

prohibited the Defendants from taking advance fees, froze the Defendants' assets and appointed the Receiver to take temporary control over the Strategic Corporate Defendants;

**WHEREAS**, on March 4, 2024, the Court entered a Preliminary Injunction (the "Preliminary Injunction") against the Defendants, which among other things, (a) preliminarily determined that the Defendants and related law firms took unlawful advance fees from consumers in violation of the Telemarketing Sales Rule (16 CFR Part 310), and (b) confirmed the Receiver's authority over the Strategic Corporate Defendants (the "Receivership"), as those entities are defined in the Preliminary Injunction;

**WHEREAS**, Strategic Family, Inc., StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), Fusion Client Services, LLC and Strategic Interactive, LLC (collectively, the "Borrowers"), CIBC and Valley National Bank as successor to Bank Leumi ("Valley" and collectively with CIBC, the "Secured Lenders") are parties to that certain Amended and Restated Credit Agreement dated as of November 10, 2020 (as amended from time to time, the "Credit Agreement");

**WHEREAS,** the Secured Lenders and Receiver have agreed to the terms of the Settlement Agreement annexed hereto as Schedule 1 which provides for the use of the Secured Lenders' Collateral in the operation of the Atlas Business[1]; and,

**WHEREAS**, the undersigned Plaintiffs do not object to the terms of the Agreement; and,

**IT IS THEREFORE STIPULATED AND ORDERED** that the Agreement is hereby approved and the Court shall retain jurisdiction to resolve any dispute between the Receiver and the Secured Lenders with respect to the Agreement.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Agreement.

**FOR PLAINTIFFS:**

**CONSUMER FINANCIAL PROTECTION BUREAU**

*/s/ V a n e s s a  B u c h k o*
Vanessa Buchko
E-mail: vanessa.buchko@cfpb.gov
Phone: 202-295-7246
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

**THE PEOPLE OF THE STATE OF NEW YORK**

LETITIA JAMES
Attorney General of the State of New York

*/s/ Genevieve S. Rados*
Christopher L. Boyd
Genevieve S. Rados
Assistant Attorneys General
350 Main Street, Suite 300A
Buffalo, NY 14202
Phone: (716) 853-8457
Email: Genevieve.rados@ag.ny.gov

*Attorneys for the State of New York*

**STATE OF COLORADO,** *ex rel*. **Philip J. Weiser, Attorney General**

PHILIP J. WEISER
Attorney General State of Colorado

*/s/K e v i n  J.  B u r n s*
Kevin J. Burns, CO Reg. No. 44527
*(pro hac vice)*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center Consumer
Protection Section
1300 Broadway, 9th Floor Denver, CO 80203 Phone:
(720) 508-6110
Kevin.Burns@coag.gov

*Attorney for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**STATE OF DELAWARE**

KATHLEEN JENNINGS
Attorney General State of Delaware

*/s/ Maryanne Donaghy*
Marion M. Quirk (*pro hac vice*)
Director of Consumer Protection
Maryanne Donaghy *(pro hac vice)*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8843
Maryanne.donaghy@delaware.gov

*Attorneys for State of Delaware, ex rel.*
*Kathleen Jennings, Attorney General*


**STATE OF ILLINOIS**

KWAME RAOUL

Attorney General State of Illinois

*/s/Amanda E. Bacoyanis*
Greg Grzeskiewicz, Chief, Consumer Fraud Bureau *(pro hac vice application forthcoming, if required)*
Amanda E. Bacoyanis (*pro hac vice*)
Assistant Attorney General, Consumer Fraud Bureau
Matthew Davies *(pro hac vice)*
Supervising Attorney, Consumer Fraud Bureau
Office of the Illinois Attorney General
115 S. LaSalle St., 26th Floor
Chicago, Illinois 60603

*Attorneys for the People of the State of Illinois*

**STATE OF WISCONSIN**

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/Lewis W. Beilin*
Lewis W. Beilin *(pro hac vice)*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-1221
Lewis.Beilin@wisdoj.gov

*Attorney for State of Wisconsin*

**STATE OF MINNESOTA**

KEITH ELLISON
Attorney General of Minnesota

*/s/ Evan Romanoff*
Evan Romanoff *(pro hac vice)*
Assistant Attorney General
Sarah Keller Doktori (*pro hac vice*)
445 Minnesota Street, Suite 600 St.
Paul, Minnesota 55101-2130
Telephone: (651) 728-4126
evan.romanoff@ag.state.mn.us
*Attorney for the State of Minnesota*

**STATE OF NORTH CAROLINA,** *ex rel*. **Jeff Jackson, Attorney General**

JEFF JACKSON
Attorney General of North Carolina

*/s/M. L y n n e  W e a v e r*
M. Lynne Weaver (*pro hac vice*)
Special Deputy Attorney General
N.C. State Bar No. 19397 114
W. Edenton Street Raleigh,
NC 27602
Telephone: (919) 716-6039
lweaver@ncdoj.gov

*Attorney for the State of North Carolina*

**RECEIVER**:

**HODGSON RUSS LLP**

<u>/s/ James C. Thoman</u>
James C. Thoman, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
Facsimile: (716) 849-0349
Email: jthoman@hodgsonruss.com

**MCNAMARA SMITH LLP**

<u>/s/Logan D. Smith</u>
Logan D. Smith (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 269-0400
Facsimile: (619) 269-0401
Email: lsmith@mcnamarallp.com;
awall@mcnamarallp.com

*Attorneys for Court-appointed Receiver,*
*Thomas W. McNamara*

**CIBC BANK USA:**

**DYKEMA GOSSETT PLLC**

<u>/s/Melanie J. Chico</u>
Melanie J. Chico (*Pro Hac Vice*)
Dykema Gossett PLLC
10 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 627-2558
Email: mchico@dykema.com;

*Attorneys for CIBC Bank USA as agent for*
*Secured Lenders*

IT IS SO ORDERED, this _____ day of _____, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

Schedule1

Execution Version

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "<u>Agreement</u>") is dated as of the Effective Date (as defined below), and is entered into by and between CIBC Bank USA ("<u>CIBC</u>"), as agent for the Secured Lenders (defined below) on the one hand, and Thomas W. McNamara (the "<u>Receiver</u>"), as the Court-appointed Receiver (as described below).  For purposes of this Agreement, CIBC and the Receiver are each referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## RECITALS

**WHEREAS**, on January 10, 2024, the Consumer Financial Protection Bureau, and the States of New York, Colorado, Delaware, Illinois, Minnesota, North Carolina, and Wisconsin filed a lawsuit against StratFS, LLC (f/k/a Strategic Financial Solutions, LLC) and affiliated companies (collectively, the "<u>Strategic Corporate Defendants</u>") and certain related individuals (collectively, the "<u>Strategic Individual Defendants</u>"; the Strategic Corporate Defendants and the Strategic Individual Defendants, are collectively, the "<u>Defendants</u>") in the United States District Court for the Western District of New York (the "<u>Court</u>"), Case No. 1:24-cv-00040-EAW-MJR, alleging they operated a consumer debt-relief business which collects unlawful advance fees;

**WHEREAS**, on January 11, 2024, the Court entered a Temporary Restraining Order (the "<u>January 2024 TRO</u>") against the Defendants and their assets, which among other things, prohibited the Defendants from taking advance fees, froze the Defendants' assets and appointed the Receiver to take temporary control over the Strategic Corporate Defendants;

**WHEREAS**, on March 4, 2024, the Court entered a Preliminary Injunction (the "<u>Preliminary Injunction</u>") against the Defendants, which among other things, (a) preliminarily determined that the Defendants and related law firms took unlawful advance fees from consumers in violation of the Telemarketing Sales Rule (16 CFR Part 310), and (b) confirmed the Receiver's authority over the Strategic Corporate Defendants (the "<u>Receivership</u>"), as those entities are defined in the Preliminary Injunction;

**WHEREAS**, Strategic Family, Inc., StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), Fusion Client Services, LLC and Strategic Interactive, LLC (collectively, the "<u>Borrowers</u>"), CIBC and Valley National Bank as successor to Bank Leumi ("<u>Valley</u>" and collectively with CIBC, the "<u>Secured Lenders</u>") are parties to that certain Amended and Restated Credit Agreement dated as of November 10, 2020 (as amended from time to time, the "<u>Credit Agreement</u>");

**WHEREAS**, the Borrowers and the certain companies affiliated with the Borrowers listed on companies **Schedule 1** annexed hereto (collectively, the "<u>Guarantors</u>"; the Borrowers and the Guarantors are collectively the "<u>Obligors</u>") and CIBC are parties to that certain Guaranty and Collateral Agreement dated as of November 10, 2020 (as amended from time to time, the "<u>Security Agreement</u>");

**WHEREAS**, pursuant to the Security Agreement, each of the Obligors (including Versara Lending, LLC and Fusion Client Services, LLC) granted to CIBC for the ratable benefit

of the Secured Lenders a security interest on substantially all of their assets, but specifically excluding each subsidiary of Versara Lending, LLC (collectively, the "Collateral");

WHEREAS, substantially all of the Collateral is subject to the Receivership, including, but not limited to the funds being held in various deposit accounts of the Obligors with CIBC and Valley as set forth on **Schedule 2** annexed hereto (collectively, the "Corporate Bank Accounts"), which have been and shall continue to be used during the pendency of the Receivership;

WHEREAS, as of September 2, 2025, the unpaid principal that is due and owing by the Borrowers to the Secured Lenders was $34,569,540.07 (such amount, along with interest, fees, costs and expenses shall be collectively referred to as the "Secured Obligations");

WHEREAS, as of September 2, 2025, the Corporate Bank Accounts had available funds as set forth on **Schedule 2**;

WHEREAS, certain disputes and controversies have arisen among the Parties, regarding their competing claims to assets of the Receivership as well as potential claims that the Receiver has against CIBC. The Parties' respective claims, allegations, assertions, and defenses, and each of them, with respect to these matters shall constitute the "Dispute".

WHEREAS, having engaged in settlement discussions and desiring to avoid the risk, inconvenience, and expense of litigation, the Parties have agreed to fully and fairly resolve their Dispute and any and all claims that the Parties may have against each other arising prior to the Effective Date.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the settlement of the Dispute on the terms and conditions below, all of which shall be considered material to this Agreement.

1. **RECITALS.**

The Parties acknowledge that the Recitals set forth above are true and correct in all material respects. The Recitals set forth above constitute an integral part of this Agreement and are hereby incorporated into this Agreement by reference.

2. **CONDITIONS TO EFFECTIVENESS.**

Although this Agreement follows a good faith, arm's length pre-litigation negotiation, this Agreement shall become effective on such date (the "Effective Date") each of the following conditions precedent have been satisfied:

(a)    the Parties shall have each executed and delivered a copy of this Agreement; and

2

(b)     the Court enters an order approving this Agreement.

**3.  TERMS OF AGREEMENT.**

3.1     On the Effective Date:

(i)     CIBC shall be entitled to withdraw $1,500,000.00 from Corporate Bank Account ending in x0577 to be applied to the Secured Obligations; and

(ii)    The Receiver shall withdraw $1,100,000.00 from Corporate Bank Account ending in x0577 to be applied and held by the Receiver, subject to Court approval, to outstanding professional fees and expenses of the Receivership estate.

3.2     The remainder of funds in the Corporate Bank Accounts shall continue to be held in the Corporate Bank Accounts, and shall be used for the purpose of continuing to operate and fund the Receivership Defendants' Direct-to-Consumer debt settlement business currently operated through Atlas Client Services, LLC, Atlas Debt Relief, LLC and Timberline Financial, LLC (collectively, the "Atlas Business").  The Receiver shall use the Corporate Bank Accounts in connection with the operation of the Atlas Business, and shall cause all revenue and income related to the Atlas Business to be deposited into the Corporate Bank Accounts.  The Receiver shall pay all ordinary expenses related to the Atlas Business with available funds from the Corporate Bank Accounts.  The Receiver shall also pay fees and expenses of the Receivership ("Receivership Expenses") from the Corporate Bank Accounts, but not in excess of amounts provided for in the Approved Atlas Forecast (as defined below) on an aggregate rolling twelve month basis, absent written consent of CIBC or an order of the Court approving such fees and expenses.  The accrued Receivership Expenses shall be accrued pending Court approval and segregated in a separate operating account pending application and approval of the Court.

3.3     The Receiver shall operate the Atlas Business in all states where the Receiver, in his sole discretion, has determined that it is lawful to do so.  The Receiver will in good faith maintain a sufficient level of staff to continue existing operations of the Atlas Business.

3.4     The Parties understand and agree that:

(a)     neither the Receiver nor the Atlas Business shall market or sell its debt settlement services to any new customers;

(b)     the Receiver shall continue the Atlas Business for the express purpose of servicing current customers by resolving existing customers' outstanding debts while the Atlas Business is operated;

(c)     as the consumer debts are resolved, the Receiver shall use his business judgment to correspondingly reduce staffing levels and operations of the Atlas Business, as appropriate;

(d)     the Receiver shall use his business judgment to determine when to cease all operations of the Atlas Business;

(e)     the Atlas Business is in a highly-regulated business of debt settlement, and there remains a risk that operations in certain states may be altered or discontinued (for instance, the Atlas Business could lose its State license or there could be an adverse change in existing regulations or laws preventing the Atlas Business from servicing customers or changing the amount that the Atlas Business can charge);

(f)     the customers of the Atlas Business may elect to discontinue services from the Atlas Business;

(g)     such changes could substantially adversely impact the revenues of the Atlas Business;

(h)     there are no guarantees that the Atlas Business will operate consistent with the projections set forth in the Approved Atlas Forecast (as defined below);

(i)     there is no guarantee that the Atlas Business will continue to be profitable, and there is no guarantee that the Atlas Business will continue to have sufficient funds to make any payments to CIBC or the Secured Lenders, or have any surplus amount remaining in the Corporate Bank Accounts;

(j)     any and all amounts remaining in the Corporate Bank Accounts when the Atlas Business is shut down are the property of, and belong exclusively to, CIBC for the benefit of the Secured Lenders, and CIBC is authorized to sweep all available funds in the Corporate Bank Accounts, less the Wind-Down Reserve (defined below) upon the Receiver's written confirmation that the operations of the Atlas Business have ceased;

(k)     the Receiver is authorized to transfer the Wind-Down Reserve to an account controlled by the Receiver upon the shut-down of operations with any remaining balance after application of wind down costs and Receivership Expenses turned over to CIBC for the benefit of Secured Lenders; and

(l)     none of the Defendants nor the Receiver, on their behalf, shall be entitled to any amounts remaining in the Corporate Bank Accounts upon the wind down of the Atlas Business.

3.5     Attached hereto as **Schedule 3** is a financial forecast for the Atlas Business (the "Approved Atlas Forecast").  The Receiver shall deliver to the Secured Lenders, the following:

(a)     At least 5 days prior to the execution of this Agreement, a report with respect to the months ending January 31, 2025, February 28, 2025, March 31, 2025, April 30, 2025, May 31, 2025, June 30, 2025, July 31, 2025 and August 31, 2025, that reflect, on a line-item basis, the actual revenues and expenses with respect to the Atlas Business for such months and the actual cash receipts and cash disbursements with respect to the

Corporate Bank Accounts for such months, the dollar variance and the percentage variance of such actual amounts from the budgeted amounts reflected in the Approved Atlas Forecast for such months.

(b)     Within 15 days following the end of each month (commencing with the month ending September 30, 2025), a report with respect to such month that reflects, on a line-item basis, the actual revenues and expenses with respect to the Atlas Business for such month and the actual cash receipts and cash disbursements with respect to the Corporate Bank Accounts for such month, the dollar variance and the percentage variance of such actual amounts from the budgeted amounts reflected in the Approved Atlas Forecast for such month.

3.6     On the 20th day of each month, the Receiver shall pay CIBC for the benefit of the Secured Lenders, the following from funds in the Corporate Bank Accounts available after operating expenses of the business and Receivership Expenses as set forth in Section 3.2 above:

First, to the payment of the reasonable expenses of the Secured Lenders;

Second, to the payment of the accrued and unpaid interest on the Secured Obligations; and

Third, to the payment of principal on the Secured Obligations to the extent that available funds in the Corporate Bank Accounts exceed $1,835,042.00 (the "Wind-Down Reserve").

3.7     In the event the Receiver files a complaint to recover monies from non-defendant parties and funds such litigation with proceeds from Secured Lenders' Collateral, the Secured Lenders and Receiver would share any such proceeds as follows:

First, to cover all of the Receiver's expenses in bringing such claims;

Second, to replenish the amount of legal expenses and fees drawn from the Corporate Bank Accounts used in pursuing such claims (which is 100% for the benefit of the Secured Lenders); and

Third, such excess is split 50% to the Receivership estate, which such portion shall not be subject to any liens or claims of the Secured Lenders and 50% for the benefit of the Secured Lenders.

For the avoidance of doubt the assets of any additional entities or individuals made subject to the Receivership estate shall not entitle the Secured Lenders to have any lien, claim or encumbrance on such assets unless the Secured Lenders had a duly perfected lien on the assets made subject to the Receivership estate prior to entry of the January 2024 TRO.

3.8     On a monthly basis, the Receiver shall provide CIBC with updated information regarding the secured loans Versara DST 2019-2, a Delaware statutory trust ("Versara DST"), has with its lenders.

## 4.  RESERVATION OF RIGHTS.

4.1     Except as set forth in Section 3 of this Agreement, the Parties and each of their respective current and former officers, directors, agents, shareholders, partners, insurers, heirs, relatives, representatives, employees, successors, assigns, and attorneys reserve all rights, claims and remedies, both in law and equity related to or arising from all acts, occurrences, costs, proceedings, obligations, claims, debts, demands, and liabilities, and any and all other claims of every kind, nature, and description whatsoever, whether known or unknown, whether suspected or unsuspected, whether accrued or un-accrued, whether now or heretofore existing, whether premised on contract, statute, tort or other theory of recovery, for any compensatory, punitive, penalty, statutory, contract or tort damages, with respect to the Dispute, including without limitation, claims that were or could have been asserted in, the Dispute.

4.2     Notwithstanding other provisions of this Agreement, the Parties each expressly reserve all rights and claims regarding Versara DST, Versara Lending, LLC or Fusion Client Services, LLC.  This Agreement does not cover any claims or, potential claims, of the Parties related to (a) Versara DST, Versara Lending, LLC, or Fusion Client Services, LLC, or (b) any distributions or payments made or to be made from Versara DST to Versara Lending, LLC, Fusion Client Services, LLC or any other Obligor.

## 5.  REPRESENTATIONS AND WARRANTIES.

The Parties to this Agreement represent, warrant, and agree as follows:

5.1     Each Party has received independent legal advice from their attorney with respect to the rights, obligations, and advisability of entering into the settlement pursuant to this Agreement and with respect to the rights, obligations, and advisability of executing this Agreement.

5.2     Each Party hereto declares that it has fully reviewed this Agreement prior to signing it, knows and understands its contents, and that it has executed this Agreement voluntarily.

5.3     Each Party has investigated the underlying facts related to the Dispute, the settlement, and this Agreement to their satisfaction.

5.4     Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it is empowered to do so and thereby binds his, her, or its respective Party.

5.5     Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of herein.

5.6    Each Party acknowledges that no other person, nor any attorney of any other person, has made any promise, representation or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to execute or authorize the execution of this Agreement, and acknowledges that it has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein.  No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated herein.

5.7    This Agreement effects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by any Party of any liability of any kind to any other party.  This Agreement shall not be admissible as evidence in any proceeding other than a proceeding to enforce an obligation of a Party hereto.

## 6.   MISCELLANEOUS.

6.1    This Agreement shall be governed by, binding under and construed in accordance with the internal laws of the State of New York, without regard to conflict of law principles.

6.2    This Agreement is the complete and entire agreement by and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement(s), representation(s), negotiation(s), and/or discussion(s).

6.3    This Agreement shall not be modified by any Party by any oral representation(s) made before or after the Effective Date of this Agreement.  This Agreement may be amended or modified only by an agreement in writing signed by the Parties.

6.4    This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective officers, directors, agents, parents, subsidiaries, shareholders, partners, insurers, heirs, relatives, representatives, affiliates, employees, successors, assigns, and attorneys.

6.5    Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any Party.

6.6    The Parties agree, for their respective selves, principals, agents, representatives, employees, attorneys, successors, and assigns, that they will abide by the terms of this Agreement, which terms are meant to be contractual, and further agree that they will do such acts and prepare, execute, file, and/or deliver such documents as may reasonably be required in order to carry out the purposes and intent of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts that may become necessary by order of the Court or otherwise, to effectuate this Agreement and its terms.

6.7    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition

or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

6.8    Any notices required or permitted to be given pursuant to this Agreement shall be given in writing to the Parties and their respective counsel and shall be delivered via email.  The Parties should be notified as follows:

| | |
|---|---|
| In the case of CIBC: | CIBC Bank USA<br>120 S. LaSalle Street<br>Chicago, Illinois 60603<br>Attention: David Gozdecki, Managing Director<br>Telephone:  (312) 564-2660<br>Email:  david.gozdecki@cibc.com |
| with copy to (which will not constitute notice): | Dykema Gossett PLLC<br>10 South Wacker Drive, Suite 2300<br>Chicago, Illinois 60606<br>Attention:  Gary Segal<br>Email:  gsegal@dykema.com |
| In the case of the Receiver: | Thomas W. McNamara<br>McNamara Smith LLP<br>655 W. Broadway, Suite 900<br>San Diego, CA 92101<br>Telephone: 619-269-0499<br>Email:  tmcnamara@mcnamarallp.com |
| with copy to (which will not constitute notice): | Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, NY 14202<br>Attention:  James C. Thoman<br>Telephone: (716) 856-4000<br>Email: JThoman@hodgsonruss.com |

6.9    This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.  Signatures may be transmitted electronically via PDF and will have the same force and effect as an original.

[Remainder of page is intentionally blank; signature page follows]

Execution Version

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first set forth above.

CIBC BANK USA

By: ___/s/ David Gozdecki_____
   David Gozdecki, Managing Director


By:___/s/ Thomas W. McNamara_____
   Thomas W. McNamara, as the Court-appointed Receiver

Execution Version

SCHEDULE 1
LIST OF GUARANTORS

STRATEGIC CLIENT SUPPORT, LLC
STRATEGIC CONSULTING, LLC
STRATEGIC CS, LLC
BEDROCK CLIENT SERVICES, LLC
T FIN, LLC
BCF CAPITAL, LLC
ANCHOR CLIENT SERVICES, LLC
BOULDER CLIENT SERVICES, LLC
PIONEER CLIENT SERVICING, LLC
HARBOR CLIENT SERVICES, LLC
TIMBERLINE FINANCIAL, LLC
STRATEGIC FS BUFFALO, LLC
STRATEGIC NYC, LLC
ROYAL CLIENT SERVICES, LLC
ROCKWELL CLIENT SERVICES, LLC
STONEPOINT CLIENT SERVICES, LLC
CANYON CLIENT SERVICES, LLC
CAROLINA CLIENT SERVICES, LLC
SUMMIT CLIENT SERVICES, LLC
GREAT LAKES CLIENT SERVICES, LLC
HEARTLAND CLIENT SERVICES, LLC
WHITESTONE CLIENT SERVICES, LLC
GARDNER CLIENT SERVICES, LLC
OPTION 1 CLIENT SERVICES, LLC
MONARCH CLIENT SERVICES, LLC
NORTHSTAR CLIENT SERVICES, LLC
CHINN CLIENT SERVICES, LLC

SPRING CLIENT SERVICES, LLC
NEWPORT CLIENT SERVICES, LLC
GRAMERCY LENDING, LLC
PEERFORM, INC.
STRATEGIC LD, LLC
SETL, LLC
ATLAS CLIENT SERVICES, LLC
ATLAS DEBT RELIEF, LLC
VALUED CREDIT, LLC
STRATEGIC ID, LLC
GRAMERCY, INC.
GOOD DOMAINS LLC
GUIDESTONE CLIENT SERVICES, LLC
HALLOCK CLIENT SERVICES, LLC
PINNACLE EQUITY HOLDINGS, LLC
HONEYFI, INC.
ACORN 21 SERVICES, LLC
CS0621JADE, LLC
CS 0821 CREEK, LLC
CSETERNAL1121, LLC
CSSTORM1121, LLC
CSGOLDENBEAR1121, LLC
VERSARA LENDING, LLC

Execution Version

SCHEDULE 2
CORPORATE BANK ACCOUNTS

| Bank | Account No. | Account Owner | Balance as of 9/2/2025 |
|---|---|---|---|
| Valley National Bank | xxxx7000 | Versara Lending LLC | $62,246.40 |
| Valley National Bank | xxxx4800 | Versara Lending LLC | $308,882.75 |
| Valley National Bank | xxxx7500 | Versara Lending LLC | $2,996,747.50 |
| Valley National Bank | xxxx2900 | Strategic Ld, LLC | $4,265.22 |
| Valley National Bank | xxxx0900 | Versara Lending LLC | $52,302.30 |
| Valley National Bank | xxxx9100 | Versara Lending LLC | $29,409.52 |
| Valley National Bank | xxx8695 | Versara Lending LLC | $10.00 |
| Valley National Bank | xxxx7400 | Versara Lending LLC | $10.00 |
| Valley National Bank | xxxx3201 | Versara Lending LLC | $311.96 |
| Valley National Bank | xxxx7565 | Peerform Inc. | $5,885.30 |
| Valley National Bank | xxxx0602 | Versara Lending LLC | $10.00 |
| Valley National Bank | xxxx3001 | Versara Lending LLC | $4,295.89 |
| Valley National Bank | xxxx6601 | Versara Lending LLC | $468.82 |
| Valley National Bank | xxxx2300 | Versara Lending LLC | $909.59 |

| Bank | Account No. | Account Owner | Balance as of 9/2/2025 |
|---|---|---|---|
| CIBC | xxx0008 | Atlas Client Services | $529.77 |
| CIBC | xxx5152 | Atlas Debt Relief | $2,342,384.21 |
| CIBC | xxx8690 | BCF Capital LLC | $172.50 |
| CIBC | xxx6383 | CS 2 PAAS Services | $34,383.15 |

| CIBC | xxx8807 | Csgoldenbear1121 LLC | |
|------|---------|----------------------|------|
| CIBC | xxx2266 | Csstorm1121 LLC | $297,384.98 |
| CIBC | xxx4001 | Good Domains, LLC | $977.39 |
| CIBC | xxx5412 | Gramercy Inc | $6,243.85 |
| CIBC | xxx0514 | Gramercy Lending | $20.00 |
| CIBC | xxx1097 | Pinnacle Equity Holdings | $2,921.04 |
| CIBC | xxx6099 | Royal Client Services | $128,375.56 |
| CIBC | xxx4322 | Setl LLC | $41.00 |
| CIBC | xxx0601 | Strategic Client Support | $3,731.02 |
| CIBC | xxx0596 | Strategic Client Support | $21,805.90 |
| CIBC | xxx8711 | Strategic Consulting LLC | $13,883.14 |
| CIBC | xxx6207 | Strategic Consulting LLC | $126,685.21 |
| CIBC | xxx2687 | Strategic CS LLC | $19,925.22 |
| CIBC | xxx0180 | Strategic CS LLC | $24,707.71 |
| CIBC | xxx2064 | Strategic Family Inc. | $31,218.53 |
| CIBC | xxx0577 | Strategic Family Inc. | $103,160.80 |
| CIBC | xxx0202 | Strategic FS Buffalo LLC | $901.66 |
| CIBC | xxx3939 | Strategic Id LLC | $21.00 |
| CIBC | xxx8467 | Strategic Interactive LLC | $2,991.30 |
| CIBC | xxx2128 | Strategic NYC LLC | $10,131.50 |
| CIBC | xxx3439 | Stratfs, LLC | $2,371.10 |

104085.000595  4877-7086-8692.10

| CIBC | xxx7047 | T Fin LLC | $28,510.33 |
| CIBC | xxx2406 | Timberline Financial, LLC | $1,359,783.74 |

104085.000595  4877-7086-8692.10

SCHEDULE 3
SUMMARY OF APPROVED ATLAS FORECAST

104085.000595 4877-7086-8692.10
65454139v17

Forecast for Operations
August 1, 2025 through July 31, 2029

| | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DTC Results** | | | | | | | | | | | | |
| *DTC Cash - SFS* | $ 821,355 | 862,340 $ | 838,114 $ | 812,337 $ | 783,116 $ | 750,594 $ | 716,096 $ | 682,417 $ | 653,597 $ | 627,547 $ | 604,236 $ | 581,094 |
| **Hybrid Results** | | | | | | | | | | | | |
| *Hybrid Cash - SFS* | $ 2,900 | 2,900 $ | 2,784 $ | 2,668 $ | 2,556 $ | 2,450 $ | 2,347 $ | 2,249 $ | 2,155 $ | 2,065 $ | 1,979 $ | 1,897 |
| **Other Revenues** | | | | | | | | | | | | |
| *Ancillary Cash - SFS* | $ 5,800 | 4,176 $ | 2,401 $ | 1,369 $ | 1,328 $ | 1,288 $ | 1,249 $ | 1,212 $ | 1,175 $ | 1,140 $ | 1,280 $ | 1,068 |
| Total Cash - SFS | $830,055 | $869,415 | $843,298 | $816,374 | $787,000 | $754,331 | $719,692 | $685,878 | $656,927 | $630,752 | $607,495 | $584,058 |
| **Expenses** | | | | | | | | | | | | |
| **Payroll Expenses** | | | | | | | | | | | | |
| Payroll Expense - Law Firm - CS | $ (36,598) | (36,598) $ | (19,215) $ | (19,215) $ | (19,215) $ | (16,335) $ | (16,335) $ | (16,335) $ | (8,962) $ | (8,962) $ | (8,962) $ | (6,160) |
| Payroll Expense - Contingency - CS | $ (37,412) | (37,412) $ | (28,457) $ | (28,457) $ | (28,457) $ | (21,403) $ | (21,403) $ | (21,403) $ | (21,403) $ | (21,403) $ | (18,683) $ | (15,288) |
| Payroll Expense - Contingency - Negotiations Support | $ (18,353) | (18,353) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) $ | (13,649) |
| Payroll Expense - Contingency - Negotiations | $ (50,787) | (50,787) $ | (50,787) $ | (50,787) $ | (50,787) $ | (45,987) $ | (45,987) $ | (45,987) $ | (45,987) $ | (45,987) $ | (45,987) $ | (45,987) |
| Payroll Expense - IT | $ (17,298) | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (17,298) $ | (7,298) |
| Payroll Expense - Sr. Leadership | $ (35,332) | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) |
| **Salesforce** | | | | | | | | | | | | |
| Salesforce | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Debt Settlement - Salesforce Service Cloud | $ (65,866) | (65,866) $ | (65,866) $ | (65,866) $ | (65,866) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) |
| Debt Settlement - Marketing Cloud | $ (9,820) | (9,820) $ | (9,820) $ | (9,820) $ | (9,820) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) |
| Debt Settlement - Mulesoft | $ (41,760) | (41,760) $ | (41,760) $ | (41,760) $ | (41,760) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) |
| Versara - Service Cloud | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Versara - Marketing Cloud | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Other Technology Costs** | | | | | | | | | | | | |
| 8x8 | $ (76,275) | (76,275) $ | (76,275) $ | (76,275) $ | (76,275) $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| AWS | $ (910) | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) |
| Atlassian | $ (22) | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) |
| Github | $ (288) | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) |
| GoDaddy | $ (400) | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) |
| Heroku | $ (168) | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) |
| Make.com | $ (34) | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) |
| OpsGenie | $ (211) | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) |
| Slack | $ (30) | (30) $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Twilio | $ (191) | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) |
| Workplace | $ (20) | (20) $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Keeper | $ - | - $ | - $ | - $ | - $ | - $ | - $ | (1,154) $ | - $ | - $ | - $ | - |
| SentinelOne/NetCov *formerly Lloyd Group* | $ (32,000) | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (39,500) $ | (32,000) $ | (32,000) |
| HOV Services, Inc./Exela | $ (5,500) | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) |
| Lloyd | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Adobe | | | | | | | | | | | | |
| ALLG | $ (11,000) | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) |
| Global Holdings | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Zoho | $ (766) | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) |
| State bonds | $ - | - $ | (6,750) $ | - $ | (1,500) $ | (1,500) $ | - $ | - $ | - $ | - $ | (750) $ | - |
| Language Service Associates | $ (750) | (600) $ | (540) $ | (513) $ | (487) $ | (463) $ | (444) $ | (427) $ | (414) $ | (401) $ | (393) $ | (386) |
| Perimeter 81 | $ (3,400) | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Nintex | $ - | - $ | (5,000) $ | - $ | - $ | (5,000) $ | - $ | - $ | - $ | (5,000) $ | - $ | (5,000) |
| Ring Central | $ (2,500) | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) |
| **Receiver Costs** | $ (100,000) | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) |
| **External Contractors** | $ (6,000) | (6,000) $ | (6,000) $ | (6,000) $ | (6,000) $ | - $ | - $ | - $ | - $ | - $ | - $ | (2,000) |
| **Other AP** | | | | | | | | | | | | |
| Legal Fees | $ (10,000) | (10,000) $ | (10,000) $ | (10,000) $ | (10,000) $ | (10,000) $ | (10,000) $ | - $ | - $ | - $ | - $ | - |
| Tax Preparation | $ (10,000) | (10,000) $ | (10,000) $ | (10,000) $ | (10,000) $ | (10,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| Payroll Taxes | $ (13,705) | (13,705) $ | (11,532) $ | (11,532) $ | (11,532) $ | (10,500) $ | (10,500) $ | (10,500) $ | (9,984) $ | (9,984) $ | (9,794) $ | (8,660) |
| Benefits | $ (7,831) | (7,831) $ | (6,589) $ | (6,589) $ | (6,589) $ | (6,000) $ | (6,000) $ | (6,000) $ | (5,705) $ | (5,705) $ | (5,596) $ | (4,949) |
| Client Refunds | $ (5,000) | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| *Total Monthly Expenses* | $ (600,227) | (596,677) $ | (573,860) $ | (563,583) $ | (563,557) $ | (403,930) $ | (393,912) $ | (385,048) $ | (380,697) $ | (383,184) $ | (373,407) $ | (361,671) |
| *Net Operating Cash Flow +/-* | $ 229,828 | 272,738 $ | 269,438 $ | 252,790 $ | 223,443 $ | 350,401 $ | 325,781 $ | 300,830 $ | 276,231 $ | 247,568 $ | 234,088 $ | 222,388 |

Forecast for Operations
August 1, 2025 through July 31, 2029

| | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DTC Results** | | | | | | | | | | | | |
| *DTC Cash - SFS* | $ 558,285 | 536,104 | 516,393 | 496,885 | 478,912 | 461,203 | 443,978 | 428,139 | 412,813 | 399,551 | 386,851 | 375,497 |
| **Hybrid Results** | | | | | | | | | | | | |
| *Hybrid Cash - SFS* | $ 1,817 | 1,742 | 1,669 | 1,599 | 1,532 | 1,468 | 1,407 | 1,348 | 1,292 | 1,238 | 1,187 | 1,137 |
| **Other Revenues** | | | | | | | | | | | | |
| *Ancillary Cash - SFS* | $ 1,035 | 1,004 | 974 | 945 | 917 | 889 | 863 | 837 | 812 | 787 | 764 | 741 |
| **Total Cash - SFS** | $561,138 | $538,850 | $519,036 | $499,429 | $481,361 | $463,560 | $446,248 | $430,324 | $414,917 | $401,577 | $388,802 | $377,374 |
| **Expenses** | | | | | | | | | | | | |
| **Payroll Expenses** | | | | | | | | | | | | |
| Payroll Expense - Law Firm - CS | $ (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) | (6,160) |
| Payroll Expense - Contingency - CS | $ (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) | (15,288) |
| Payroll Expense - Contingency - Negotiations Support | $ (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) | (13,649) |
| Payroll Expense - Contingency - Negotiations | $ (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) | (45,987) |
| Payroll Expense - IT | $ (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) | (7,298) |
| Payroll Expense - Sr. Leadership | $ (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) | (35,332) |
| **Salesforce** | | | | | | | | | | | | |
| Salesforce | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Debt Settlement - Salesforce Service Cloud | $ (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) | (32,933) |
| Debt Settlement - Marketing Cloud | $ (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) | (4,910) |
| Debt Settlement - Mulesoft | $ (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) | (15,129) |
| Versara - Service Cloud | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Versara - Marketing Cloud | $ - | - | - | - | - | - | - | - | - | - | - | - |
| **Other Technology Costs** | | | | | | | | | | | | |
| 8x8 | $ - | - | - | - | - | - | - | - | - | - | - | - |
| AWS | $ (910) | (910) | (910) | (910) | (910) | (910) | (910) | (910) | (910) | (910) | (910) | (910) |
| Atlassian | $ (22) | (22) | (22) | (22) | (22) | (22) | (22) | (22) | (22) | (22) | (22) | (22) |
| Github | $ (288) | (288) | (288) | (288) | (288) | (288) | (288) | (288) | (288) | (288) | (288) | (288) |
| GoDaddy | $ (400) | (400) | (400) | (400) | (400) | (400) | (400) | (400) | (400) | (400) | (400) | (400) |
| Heroku | $ (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) |
| Make.com | $ (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) |
| OpsGenie | $ (211) | (211) | (211) | (211) | (211) | (211) | (211) | (211) | (211) | (211) | (211) | (211) |
| Slack | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Twilio | $ (191) | (191) | (191) | (191) | (191) | (191) | (191) | (191) | (191) | (191) | (191) | (191) |
| Workplace | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Keeper | $ - | - | - | - | - | - | - | - | (1,154) | - | - | - |
| SentinelOne/NetCov *formerly Lloyd Group* | $ (32,000) | (32,000) | (32,000) | (32,000) | (32,000) | (32,000) | (32,000) | (32,000) | (32,000) | (39,500) | (32,000) | (32,000) |
| HOV Services, Inc./Exela | $ (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) |
| Lloyd | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Adobe | | | | | | | | | | | | |
| ALLG | $ (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) |
| Global Holdings | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Zoho | $ (766) | (766) | (766) | (766) | (766) | (766) | (766) | (766) | (766) | (766) | (766) | (766) |
| State bonds | $ - | - | (6,750) | (1,500) | (1,500) | - | - | - | - | (750) | - | - |
| Language Service Associates | $ (378) | (370) | (363) | (363) | (363) | (363) | (363) | (363) | (363) | (363) | (363) | (363) |
| Perimeter 81 | $ (3,400) | - | - | - | - | - | - | - | - | - | - | - |
| Nintex | $ - | - | (5,000) | - | - | - | - | - | - | - | - | - |
| Ring Central | $ (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) |
| **Receiver Costs** | $ (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) |
| **External Contractors** | $ (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | - |
| **Other AP** | | | | | | | | | | | | |
| Legal Fees | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Tax Preparation | $ (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Payroll Taxes | $ (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) | (8,660) |
| Benefits | $ (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) | (4,949) |
| Client Refunds | $ (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| ***Total Monthly Expenses*** | $ (360,063) | (356,655) | (368,398) | (358,148) | (358,148) | (356,648) | (356,648) | (357,802) | (356,648) | (364,148) | (357,398) | (354,648) |
| ***Net Operating Cash Flow +/-*** | $ 201,075 | 182,195 | 150,638 | 141,281 | 123,213 | 106,912 | 89,600 | 72,522 | 58,269 | 37,429 | 31,404 | 22,726 |

Forecast for Operations
August 1, 2025 through July 31, 2029

| | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DTC Results** | | | | | | | | | | | | |
| *DTC Cash - SFS* | $ 364,292 | 355,719 $ | 347,742 $ | 339,147 $ | 330,345 $ | 321,801 $ | 312,111 $ | 300,236 $ | 286,364 $ | 270,837 $ | 255,176 $ | 238,508 |
| **Hybrid Results** | | | | | | | | | | | | |
| *Hybrid Cash - SFS* | $ 1,090 | 1,044 $ | 1,000 $ | 959 $ | 919 $ | 880 $ | 844 $ | 808 $ | 775 $ | 742 $ | 711 $ | 682 |
| **Other Revenues** | | | | | | | | | | | | |
| *Ancillary Cash - SFS* | $ 718 | 697 $ | 676 $ | 656 $ | 636 $ | 617 $ | 598 $ | 581 $ | 563 $ | 546 $ | 530 $ | 514 |
| Total Cash - SFS | $366,100 | $357,460 | $349,419 | $340,762 | $331,900 | $323,298 | $313,553 | $301,624 | $287,702 | $272,126 | $256,418 | $239,704 |
| **Expenses** | | | | | | | | | | | | |
| **Payroll Expenses** | | | | | | | | | | | | |
| Payroll Expense - Law Firm - CS | $ (6,160) | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (6,160) $ | (3,440) $ | (3,440) |
| Payroll Expense - Contingency - CS | $ (15,288) | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (15,288) $ | (9,160) $ | (9,160) |
| Payroll Expense - Contingency - Negotiations Support | $ (13,649) | (10,359) $ | (10,359) $ | (10,359) $ | (10,359) $ | (4,038) $ | (4,038) $ | (4,038) $ | - $ | - $ | - $ | - |
| Payroll Expense - Contingency - Negotiations | $ (45,987) | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) $ | (44,067) |
| Payroll Expense - IT | $ (7,298) | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) |
| Payroll Expense - Sr. Leadership | $ (35,332) | (35,332) $ | (35,332) $ | (35,332) $ | (35,332) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) |
| **Salesforce** | | | | | | | | | | | | |
| Salesforce | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Debt Settlement - Salesforce Service Cloud | $ (32,933) | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | (32,933) $ | - $ | - |
| Debt Settlement - Marketing Cloud | $ (4,910) | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | (4,910) $ | - $ | - |
| Debt Settlement - Mulesoft | $ (15,129) | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | (15,129) $ | - $ | - |
| Versara - Service Cloud | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Versara - Marketing Cloud | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Other Technology Costs** | | | | | | | | | | | | |
| 8x8 | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| AWS | $ (910) | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) |
| Atlassian | $ (22) | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) |
| Github | $ (288) | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) |
| GoDaddy | $ (400) | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) |
| Heroku | $ (168) | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) |
| Make.com | $ (34) | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) |
| OpsGenie | $ (211) | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) |
| Slack | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Twilio | $ (191) | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) |
| Workplace | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Keeper | $ - | - $ | - $ | - $ | - $ | - $ | - $ | (1,154) $ | - $ | - $ | - $ | - |
| SentinelOne/NetCov *formerly Lloyd Group* | $ (32,000) | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (39,500) $ | (32,000) $ | (32,000) |
| HOV Services, Inc./Exela | $ (5,500) | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) |
| Lloyd | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Adobe | | | | | | | | | | | | |
| ALLG | $ (11,000) | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | (11,000) $ | - $ | - $ | - $ | - $ | - $ | - |
| Global Holdings | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Zoho | $ (766) | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) |
| State bonds | $ - | - $ | (6,750) $ | (1,500) $ | (1,500) $ | - $ | - $ | - $ | - $ | - $ | (750) $ | - |
| Language Service Associates | $ (363) | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) |
| Perimeter 81 | $ (3,400) | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Nintex | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Ring Central | $ (2,500) | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) $ | (2,500) |
| **Receiver Costs** | $ (100,000) | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) $ | (100,000) |
| **External Contractors** | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Other AP** | | | | | | | | | | | | |
| Legal Fees | $ - | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Tax Preparation | $ (5,000) | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| Payroll Taxes | $ (8,660) | (8,295) $ | (8,295) $ | (8,295) $ | (8,295) $ | (6,616) $ | (6,616) $ | (6,616) $ | (6,334) $ | (6,334) $ | (5,714) $ | (5,714) |
| Benefits | $ (4,949) | (4,740) $ | (4,740) $ | (4,740) $ | (4,740) $ | (3,781) $ | (3,781) $ | (3,781) $ | (3,619) $ | (3,619) $ | (3,265) $ | (3,265) |
| Client Refunds | $ (5,000) | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| *Total Monthly Expenses* | $ (358,048) | (348,865) $ | (355,615) $ | (350,365) $ | (350,365) $ | (322,240) $ | (311,240) $ | (312,394) $ | (306,757) $ | (314,257) $ | (244,714) $ | (243,964) |
| *Net Operating Cash Flow +/-* | $ 8,052 | 8,595 $ | (6,197) $ | (9,603) $ | (18,466) $ | 1,058 $ | 2,313 $ | (10,769) $ | (19,055) $ | (42,131) $ | 11,704 $ | (4,260) |

Forecast for Operations
August 1, 2025 through July 31, 2029

| | | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DTC Results** | | | | | | | | | | | | | |
| *DTC Cash - SFS* | $ | 223,193 $ | 207,336 $ | 188,725 $ | 172,691 $ | 158,065 $ | 144,681 $ | 132,431 $ | 121,218 $ | 110,955 $ | 101,560 $ | 92,961 $ | 85,091 |
| **Hybrid Results** | | | | | | | | | | | | | |
| *Hybrid Cash - SFS* | $ | 653 $ | 626 $ | 600 $ | 575 $ | 551 $ | 528 $ | 506 $ | 485 $ | 464 $ | 445 $ | 426 $ | 409 |
| **Other Revenues** | | | | | | | | | | | | | |
| *Ancillary Cash - SFS* | $ | 499 $ | 484 $ | 469 $ | 455 $ | 441 $ | 428 $ | 415 $ | 403 $ | 391 $ | 379 $ | 368 $ | 357 |
| **Total Cash - SFS** | | $224,345 | $208,446 | $189,794 | $173,721 | $159,057 | $145,637 | $133,352 | $122,106 | $111,810 | $102,384 | $93,756 | $85,856 |
| | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Payroll Expenses** | | | | | | | | | | | | | |
| Payroll Expense - Law Firm - CS | $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) $ | (3,440) |
| Payroll Expense - Contingency - CS | $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) $ | (9,160) |
| Payroll Expense - Contingency - Negotiations Support | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Payroll Expense - Contingency - Negotiations | $ | (44,067) $ | (44,067) $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Payroll Expense - IT | $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) $ | (7,298) |
| Payroll Expense - Sr. Leadership | $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) $ | (17,666) |
| **Salesforce** | | | | | | | | | | | | | |
| Salesforce | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Debt Settlement - Salesforce Service Cloud | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Debt Settlement - Marketing Cloud | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Debt Settlement - Mulesoft | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Versara - Service Cloud | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Versara - Marketing Cloud | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Other Technology Costs** | | | | | | | | | | | | | |
| 8x8 | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| AWS | $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) $ | (910) |
| Atlassian | $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) $ | (22) |
| Github | $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) $ | (288) |
| GoDaddy | $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) $ | (400) |
| Heroku | $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) $ | (168) |
| Make.com | $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) $ | (34) |
| OpsGenie | $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) $ | (211) |
| Slack | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Twilio | $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) $ | (191) |
| Workplace | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Keeper | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | (1,154) $ | - $ | - $ | - $ | - |
| SentinelOne/NetCov *formerly Lloyd Group* | $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (32,000) $ | (39,500) $ | (32,000) $ | (32,000) |
| HOV Services, Inc./Exela | $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) $ | (5,500) |
| Lloyd | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Adobe | | | | | | | | | - $ | - $ | - $ | - $ | - |
| ALLG | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Global Holdings | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Zoho | $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) $ | (766) |
| State bonds | $ | - $ | - $ | (6,750) $ | (1,500) $ | (1,500) $ | - $ | - $ | - $ | - $ | - $ | (750) $ | - |
| Language Service Associates | $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) $ | (363) |
| Perimeter 81 | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Nintex | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Ring Central | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Receiver Costs** | $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) $ | (75,000) |
| **External Contractors** | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Other AP** | | | | | | | | | | | | | |
| Legal Fees | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Tax Preparation | $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| Payroll Taxes | $ | (5,714) $ | (5,714) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) $ | (2,629) |
| Benefits | $ | (3,265) $ | (3,265) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) $ | (1,503) |
| Client Refunds | $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) $ | (5,000) |
| **Total Monthly Expenses** | $ | (216,464) $ | (216,464) $ | (174,299) $ | (169,049) $ | (169,049) $ | (167,549) $ | (167,549) $ | (168,703) $ | (167,549) $ | (175,049) $ | (168,299) $ | (167,549) |
| | | | | | | | | | | | | | |
| *Net Operating Cash Flow +/-* | $ | 7,881 $ | (8,018) $ | 15,495 $ | 4,672 $ | (9,992) $ | (21,912) $ | (34,197) $ | (46,597) $ | (55,739) $ | (72,665) $ | (74,543) $ | (81,693) |