UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., <br><br> Plaintiff, <br><br> vs. <br><br> STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al. <br><br> Defendants, and <br><br> DANIEL BLUMKIN, et al., <br><br> Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**REPLY MEMORANDUM IN SUPPORT OF PROPOSED
INTERVENORS, ICE LEGAL'S, MOTION FOR RECONSIDERATION
OF ORDER APPROVING SETTLEMENT (DKT. 805)**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorney for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*

## TABLE OF CONTENTS

                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I.     The Court sought input from the parties, but no one has explained the abandonment of the Plaintiff's (and McNamara's) strong opposition to CIBC's claims. ........................................................................................................ 1

        A.    Neither McNamara nor the CIBC support their opposition with affidavits, despite their heavy reliance on conclusory facts. ................................................... 1

        B.    The Plaintiffs did not explain their "no objection" to the Settlement even though it completely contradicts their previous position. ...................................... 3

II.    Ice Legal has standing to bring this motion, and even if it did not, the Court can, *sua sponte*, order a hearing on whether the Settlement should be approved. ............................................................................................................... 4

III.   The proceeds from third-party cases that were assigned to CIBC are not capped. ................................................................................................................ 5

IV.   Whether the assignment of half of the litigation proceeds in exchange for funding of that litigation is champertous under New York law raises issues of fact that preclude approval of the settlement without an evidentiary hearing. ............. 6

V.    McNamara has still not shown that the Settlement benefits the Estate. ....................... 7

VI.   The parties to the Settlement did not address most of the points in Ice Legal's motion. ................................................................................................................ 8

VII.  Conclusion .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
  731 N.E.2d 581 (N.Y. 2000) ............................................................................... 7

*CIBC Bank and Tr. Co. (Cayman) Ltd. v. Banco Cent. do Brasil*,
  886 F. Supp. 1105 (S.D.N.Y. 1995) ................................................................... 7

*Elliott Associates, L.P. v. Republic of Peru*,
  948 F. Supp. 1203 (S.D.N.Y. 1996) ................................................................... 6

*Fairchild Hiller Corp. v. McDonnell Douglas Corp.*,
  270 N.E.2d 691 (N.Y. 1971) ............................................................................... 7

*Securities and Exch. Comm'n v. Morgan*,
  No. 1:19-CV-00661 EAW, 2020 WL 6536894, at *5 (W.D.N.Y. Nov. 6, 2020) ...................... 4

## DEFINED TERMS

| | |
|---|---|
| Ice Legal | Ice Legal, P.A. and its two attorneys (the defendants in the *McNamara as the Court-Appointed Receiver v. Ice Legal P.A. et al.*, Case No. 1:25-CV-00275 (W.D.N.Y.)) |
| Settlement | Settlement Stipulation between CIBC Bank USA and Thomas W. McNamara, as the Court-appointed Receiver (Dkt. 802-1) |
| Stip. Order or Order (unless otherwise indicated) | Order approving the Settlement entered by Magistrate Roemer on September 25, 2025 (Dkt. 805) |
| CFPB | Consumer Financial Protection Bureau |

| Term | Definition |
|---|---|
| State AGs | The seven "et al." Plaintiffs: The People of the State of New York, by Letitia James, Attorney General of the State of New York; State of Colorado, Ex Rel. Philip J. Weiser, Attorney General; State of Delaware Ex Rel. Kathleen Jennings, Attorney General State of Delaware; the People of the State of Illinois, through Attorney General Kwame Raoul; the State of Minnesota, by its Attorney General Keith Ellison; the State of North Carolina, ex rel. Joshua H. Stein, Attorney General; and the State of Wisconsin. |
| CIBC | CIBC Bank USA ("CIBC") as agent for secured lenders, CIBC and Valley National Bank as successor to Bank Leumi. These are sometimes described as "Secured Lenders" or "Creditor" in the various memoranda. |
| Atlas | The Atlas and Timberline (contingency fee model) business lines. |
| Motion to Intervene | Memorandum in Support of Third-party Motion to Intervene for Purposes of Filing an Objection to Receiver's Report and a Motion to Appoint Special Receiver and for Other Purposes (Dkt. 680-1) |
| Ice Legal Motion | Memorandum in Support of Proposed Intervenors, Ice Legal's, Motion for Reconsideration of Order Approving Settlement (Dkt. 805) (Dkt. 808-1) |
| Receiver's Opp. | Receiver's Opposition to "Proposed Intervenors'" Motion for Reconsideration of Order Approving Settlement (Dkt. 817) |
| CIBC's Opp. | Secured Lenders' Opposition to Proposed Intervenors' Motion for Reconsideration of Order Approving Settlement and Joinder with the Receiver's Opposition (Dkt. 818) |

I.  **The Court sought input from the parties, but no one has explained the abandonment of the Plaintiff's (and McNamara's) strong opposition to CIBC's claims.**

No one filed a brief opposing the relief requested by Ice legal during the default period for filing them. Afterwards, when this Court entered a scheduling notice for briefing,[1] the only responses were from the two parties to the Settlement. The Plaintiffs, who, along with McNamara, had vehemently opposed this same relief when CIBC moved to lift the stay,[2] remained silent. The Court, therefore, has been left with no explanation for this about-face by the Plaintiffs and McNamara.

   A.  **Neither McNamara nor the CIBC support their opposition with affidavits, despite their heavy reliance on conclusory facts.**

McNamara urges this Court to find that the settlement is "fair and reasonable," but does little to support that claim other than repeatedly saying that the transaction was negotiated at "arm's length."[3] This is hardly comforting given that "arm's length" simply means that the parties worked independently to benefit their own self-interest.[4] McNamara needed to show that the deal <u>benefited the Estate</u>, but his opposition brief never even tries to do so.

---

[1] Scheduling Notice, October 12, 2025.

[2] *See*, Ice Legal's Memorandum in support of this motion, p. 10.

[3] Receiver's Opp., pp. 1, 4, and 7.

[4] "Arm's length" is an expression commonly used to refer to transactions in which two or more unrelated and unaffiliated parties agree to do business, acting independently and in their self-interest. Wex, Legal Information Institute ("arm's length") available at: https://www.law.cornell.edu/wex/arm%27s_length#:~:text=%E2%80%9CArm's%20length%E2%80%9D%20is%20an%20expression,the%20case%20of%20Abbas%20v.
.

McNamara also relies on "facts" that are not supported by an affidavit, declaration or affirmation as required by Rule 7(a)(3). Perhaps the most glaring example is his statement that "[t]he Settlement does not provide for a distribution of even a majority of estate assets." Yet, as stated in Ice Legal's Motion, "McNamara has never, since his initial report, given this Court (nor the Parties) an accounting of what remains in the Estate."[5] Thus, this "fact" is not only unsworn, but conclusory.

CIBC's response also asks the Court to find that the deal is "fair and reasonable." It also is unsupported by an affidavit, declaration or affirmation. Instead, CIBC expressly asks this Court to make a reasonableness determination from the face of the Settlement coupled with the assumption that the Estate does, in fact, owe CIBC $34.5 million.[6] Ironically, it asks the Court to rule that this assumption is valid based on affidavits filed in support of its March request to lift the stay[7]—which was opposed by McNamara[8] and already denied by this Court.[9]

In fact, McNamara originally opposed the CIBC's motion to do what this Settlement accomplishes because it would not meet the "status quo" requirement of the Preliminary Injunction and because CIBC had not established a substantial injury:

> If the stay is lifted the status quo will be upended and if the stay remains [CIBC] will not suffer a substantial injury. [CIBC] fail[s] the first *Wencke* factor and their

---

[5] Ice Legal Motion, p. 8.

[6] CIBC Opp. Memo, p. 4.

[7] Embedded in its motion to intervene. Secured Lender's Motion to Intervene (Dkt. 213-1).

[8] Receiver's Memorandum of Law in Opposition to Nonparties CIBC Bank USA and Valley National Bank's Motion to Intervene and Lift Stay (Dkt. 266).

[9] Order (Minute Entry for Proceedings Held Before Hon. Michael J. Roemer (Dkt. 325); Transcript of Hearing on April 22, 2024 (Dkt. 351, pp. 54-56; "Transcript") (See, discussion in Ice Legal's Motion, p. 10).

attempt to modify the Preliminary Injunction and lift the stay is unsupported, without merit, and must be denied.[10]

McNamara supported this position with a declaration.[11] Now, without a declaration—or even a mention of its prior position—McNamara asks this Court to find the opposite.

McNamara, like CIBC, assumes that the entirety of CIBC's claim (which he says is $34 million—not $34.5 million) is owed to it as a secured creditor. Yet, the Plaintiffs strenuously argued the opposite when CIBC moved to lift the stay. McNamara does not explain why the Plaintiffs were wrong or what, if anything, changed to justify a contrary conclusion.

### B. The Plaintiffs did not explain their "no objection" to the Settlement even though it completely contradicts their previous position.

Likewise, because the Plaintiffs filed nothing in response to the Court's invitation to do so, they offered no explanation as to why their original position regarding CIBC would not still be valid. This silence supports Ice Legal's contention that the apparent abandonment of their prior arguments against CIBC could be due to the "the de-facto absence of the main proponent of those arguments, the CFPB."[12]

Early in this litigation, this Court expressed frustration that some State AGs "had never had a meaningful appearance" and that they were "kind of absentee plaintiffs."[13] The Court stated that "it seems that they are really not interested in the litigation, other than how it may enure to their benefit if there is some resolution or order in their favor."[14] The Court further

---

[10] Receiver's Memorandum of Law in Opposition to Nonparties CIBC Bank USA and Valley National Bank's Motion to Intervene and Lift Stay (Dkt. 266), p. 6.

[11] Declaration of Thomas W. McNamara in Opposition to Motion to Intervene (Dkt. 266-1).

[12] Ice Legal Motion, p. 10.

[13] Transcript of Hearing February 15, 2024 (Dkt. 163), pp. 24, 25.

[14] Transcript of Hearing February 15, 2024 (Dkt. 163), pp., 25.

3

suggested that dismissal for "failure to prosecute" could be the result of a continued lack of active participation.[15]

The Court should deem the Plaintiff's failure to oppose Ice Legal's motion, not only as expressing that they have no objection to Ice Legal's requested relief—essentially a hearing as to whether the Settlement actually benefits the estate—but also as signaling a grave problem with the prosecution of this case that needs the Court's intervention.

II.     **Ice Legal has standing to bring this motion, and even if it did not, the Court can, *sua sponte*, order a hearing on whether the Settlement should be approved.**

*First,* McNamara incorrectly states that "the Court denied" Ice Legal's Motion to Intervene pursuant to a Report, Recommendation and Order.[16] In reality, the Magistrate <u>recommended</u> denial and Ice Legal's objection to that recommendation is still pending. McNamara characterizes this motion as "a prime example of the meritless pleadings Ice Legal continues to file." even though McNamara conceded that Ice Legal was correct in pointing out his duplication of over $2,400 of expenses in one of these "meritless pleadings."[17]

*Second*, Ice Legal is entitled as a creditor to bring McNamara's preferential treatment of CIBC to the Court's attention. *Securities and Exch. Comm'n v. Morgan*, No. 1:19-CV-00661 EAW, 2020 WL 6536894, at *5 (W.D.N.Y. Nov. 6, 2020) (Judge Wolford). Ice Legal's status

---

[15] Transcript of Hearing February 15, 2024 before the Honorable Elizabeth A. Wolford (Dkt. 163), pp., 20.

[16] Receiver's Opp., p. 1.

[17] Reply in Support of Receiver's Fourth Interim Application for Fees and Expenses of Receiver and Professional (Dkt. 766, pp. 3-4). Despite that McNamara is an arm of the court—a relationship governed by equity—the Magistrate did not address other discrepancies identified by Ice Legal (which McNamara did not admit or deny) because "Ice Legal is not presently a party to this action" and therefore, has no standing to point out errors in McNamara's fee request. Decision and Order (Dkt. 814), p. 2., fn. 1.

4

as a creditor seems to be undisputed by McNamara (finally) and CIBC—although the latter seems to argue that Ice Legal should not be heard because it is merely an unsecured creditor who is owed far less than CIBC.[18]

***Third,*** Ice Legal is implicated in the champertous agreement to fund McNamara's litigation against third parties. Conspicuous by its absence is any representation that McNamara would not use the assignment and to fund litigation against Ice Legal.

***Fourth and lastly***, the standing of a person or entity who points out potential wrongdoing of the Receiver—the equity-driven arm of the Court—should be of little import. The Court has an independent duty to protect creditors and consumers. It can *sua sponte* reexamine an order approving a receiver's significant settlement with a purported creditor, especially one that was entered without a motion, without input from the parties, and without any representation (supported by a declaration or not) that the settlement benefits the estate.

### III. The proceeds from third-party cases that were assigned to CIBC are not capped.

Both McNamara and CIBC claim that the funds that CIBC will receive under the agreement are capped at the amount that CIBC is owed.[19] Leaving aside that the amount actually owed by the Estate has never been determined, neither McNamara nor the CIBC have

---

[18] CIBC Opp., pp. 3-4. McNamara claims that Ice Legal improperly burdens this Court with "unauthorized" motion practice that asks the Court to supervise his actions in this case. But because Ice Legal is entitled to bring this motion regardless of its status as an intervenor—and because McNamara has already confessed to a billing mistake identified by Ice Legal (and no one else)—McNamara's request that Ice Legal be silenced (Receiver's Opp., p. 2, n. 2) is revealed for what it is, a bid to eliminate Ice Legal as a watchdog over his activities.

[19] **McNamara:** explaining, not without considerable condescension, that "[a] lender is only repaid what it is owed pursuant to the underlying loan documents." (Receiver's Opp., p. 3); **CIBC:** "the amount owed to the Secured Lenders is contractually based and limited by the relevant agreements between the Secured Lenders and the Obligors" (CIBC Opp., p. 4). It is the self-evident truth of these statements that makes the unlimited compensation under Paragraph 3.7 of the Settlement improper.

pointed out where such a limitation is in the assignment paragraph (Paragraph 3.7)—or anywhere else in the Settlement.

### IV. Whether the assignment of half of the litigation proceeds in exchange for funding of that litigation is champertous under New York law raises issues of fact that preclude approval of the settlement without an evidentiary hearing.

Neither McNamara nor CIBC address Ice Legal's primary argument—that, champertous or not, an "arm of the court" should not be fomenting litigation between creditors such as CIBC and Ice Legal. All creditors are equally entitled to the fiduciary protections owed to them by a receiver.

McNamara and the CIBC do attempt to address Ice Legal's point that the assignment of proceeds from claims against third parties is champertous, but in doing so, they only further entangle themselves in facts that are unsworn or contrary to Plaintiffs' previous factual assertions, or both. For example, both the parties to the Settlement claim that the primary purpose of the assignment was not to be able to bring suit, but to pay for a debt "antecedently contracted."[20] But that assumes as true their premise that the Estate owes something to CIBC (i.e. that its debts are secured and that it did not knowingly participate in the alleged scheme of the Defendants).

Even the two cases cited by McNamara, establish that a factual inquiry will need to be made here. *Elliott Associates, L.P. v. Republic of Peru*, 948 F. Supp. 1203, 1208 (S.D.N.Y. 1996) held that the question of champertous intent is a fact-intensive inquiry that would preclude, at the preliminary stage of the proceedings, a prejudgment attachment. (*citing*, *CIBC Bank and Tr. Co. (Cayman) Ltd. v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1110 (S.D.N.Y.

---

[20] Receiver's Opp., p. 6 (joined by CIBC).

1995) (quoting *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 270 N.E.2d 691, 693 (N.Y. 1971) ("[T]he question of intent and purpose of the purchaser or assignee of a claim is usually a factual one to be decided by the trier of facts...")). Likewise, McNamara's other case, *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581 (N.Y. 2000) did not hold that the agreement in that case was <u>not</u> champertous as a matter of law, but rather, that a question of fact prevented a holding that it <u>was</u> champertous as a matter of law.

McNamara also claims to fit within an exception to champerty for "persons in charge of the administration, settlement or compromise of any estate, through court actions, proceedings or otherwise."[21] But this "settlement or compromise" of the Estate did not occur as the result of a court action or proceeding, but as a result of McNamara's own independent actions—actions which have the unmistakable taint of self-interest.

In summary, McNamara's cases and statutes do not support Court approval of this agreement without an evidentiary hearing—they require the exact opposite.

**V.    McNamara has still not shown that the Settlement benefits the Estate.**

In keeping with his policy of leaving no opportunity for *ad hominem* disparagement behind, McNamara indignantly states that the very notion that Ice Legal would substitute its judgment for that of the Receiver and CIBC is "preposterous."[22] Ice Legal, however, never asked that its judgment be substituted for that of anyone else. Ice Legal merely asked the Court to exercise its own judgment when McNamara made no representation—much less a showing—that the Settlement benefits the Estate. McNamara has still not done so.

---

[21] Receiver's Opp., p. 6.

[22] Receiver's Opp., p. 5.

7

**VI.  The parties to the Settlement did not address most of the points in Ice Legal's motion.**

The following are additional points or questions that neither McNamara nor CIBC deigned to address:

- The Settlement violates the "status quo" requirement of the Preliminary Injunction.

- McNamara and is not authorized to liquidate the Estate.

- The Settlement accelerates CIBC's debt without lifting the Preliminary Injunction's prohibition against such acceleration.

- CIBC's $1.5 million, along with $1.1 million earmarked for McNamara, is purportedly being withdrawn from an account which, as of September 2, 2025, had only $103,160.80.

- The Settlement uses a financial "forecast" for a time period in the past.

- The Settlement does not identify what litigation McNamara is planning to bring with CIBC's funds.

- The Settlement is an end run around the Court's previous ruling not to lift the stay such that CIBC can "sweep" the accounts.

- If Atlas is no longer profitable enough to be self-sustaining, it should simply be shut down.

- The Stipulation purports to settle some unidentified "disputes" between the Creditor and McNamara,[23] but Section 4 of the Stipulation says that nothing has been settled other than the outlined mechanism to prematurely pay the Creditor's claim.

- McNamara has a "disconcertingly blatant conflict of interest" in that he personally benefits from the Settlement because it sets aside millions of dollars to ensure that his

---

[23] WHEREAS clause, Dkt. 802-1, p. 9.

8

fees and those of his firm will be paid for the pursuit of third-party claims regardless of the likelihood of success.

- McNamara is impermissibly administering the liquidation of the Receivership Estate—actions that are not authorized by the Preliminary Injunction

- Paragraph 3.2 of the Stipulation appears to give the CIBC the same power as the Court to approve Receivership expenses.

- The Court abused its discretion by approving a settlement between a receiver and a creditor without inclusive procedures to evaluate the fairness of the settlement.

- McNamara has never, since his initial report, given this Court (nor the Parties) an accounting of what remains in the Estate.

- In the last two years of the Settlement's financial forecast, Atlas is projected to lose $456,067 (but only because, during that same time $2.1 million is being set aside for McNamara's "fees and expenses").

- McNamara does not explain how he can operate Atlas after discontinuing the use of core technology services (Salesforce, and 8x8).

- If McNamara can do without these technology services, he should not be paying for these services today.

- If McNamara does not spend the fees allotted to him, the unused portion of the outlays will benefit CIBC, not the Estate.

- Assigning third-party claims of the Estate to creditors is highly unusual.

- There is no disclosure as to who will control the litigation against third-parties when McNamara and CIBC have an equal financial stake in the outcome.

- Paragraph 6.3 provides that the Settlement can be amended or modified "by an agreement in writing signed by the Parties," which means that McNamara and the

9

Creditor can change the Settlement completely without having to obtain further approval from the Court.

## VII. Conclusion

For the reasons above, the Order approving the Settlement should be vacated under Rule 54(b) Fed. R. Civ. P. to correct a clear error and prevent manifest injustice.

Ice Legal, therefore requests that the Court: 1) vacate the Order approving the Settlement and enter an Order denying approval of the agreement; or in the alternative, 2) hold an evidentiary hearing on whether the Settlement should be approved.

Dated: November 6, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Proposed Intervenors,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*