UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CONSUMER FINANCIAL PROTECTION,            24-CV-40-EAW-MJR
BUREAU, *et al.*,                                DECISION AND ORDER

Plaintiffs,

v.

STRATFS, LLC (f/k/a STRATEGIC FINANCIAL
SOLUTIONS, LLC), *et al.*,

Defendants, and

STRATEGIC ESOP, *et al.*,

Relief Defendants.

_____

On February 10, 2026, the Court-appointed receiver Thomas W. McNamara (the "Receiver") filed a "Fifth Interim Application for Order Approving Fees and Expenses of the Receiver and Professionals" that have rendered services on the Receiver's behalf ("Fifth Fee Application"). (Dkt. No. 832) For the following reasons, the Receiver's Fifth Fee Application is granted.

The Receiver was initially appointed by District Judge Lawrence J. Vilardo, pursuant to the Temporary Restraining Order ("TRO"), on January 11, 2024. (Dkt. No. 12) The Receiver's appointment was confirmed pursuant to the Preliminary Injunction ("PI") entered on March 4, 2024. (Dkt. No. 184) On June 2, 2025, the Second Circuit affirmed the PI issued by this Court. *See Consumer Fin. Prot. Bureau v. Sasson*, 24-CV-697, 2025 U.S. App. LEXIS 13336 (2d Cir. June 2, 2025). The Receiver has continued to serve in this capacity from March 4, 2024 through the present.

On May 22, 2024, this Court granted the Receiver's First Fee Application, for the period of January 11, 2024 through February 29, 2024. (Dkt. No. 358) On November 13, 2024, this Court granted the Receiver's Second Fee Application, for the period of March 1, 2024 through July 31, 2024. (Dkt. No. 488) On July 24, 2025, this Court granted the Receiver's Third Fee Application, for the period of August 1, 2024 through January 31, 2025. (Dkt. No. 749) On October 21, 2025, this Court granted the Receiver's Fourth Fee Application, for the period of February 1, 2025 through May 31, 2025. (Dkt. Nos. 814, 815) The Fifth Fee Application seeks fees and expenses for services rendered by the Receiver and other professionals from June 1, 2025 through December 31, 2025 (the "Application Period"). (Dkt. No. 832) This Decision and Order assumes familiarity with the Court's prior decisions granting the Receiver's First, Second, Third, and Fourth Fee Applications, the PI, and the other prior proceedings and filings in this case.[1]

---

[1] On February 27, 2026, the Blust Family Irrevocable Trust (the "Blust Trust") filed a response in opposition to the Receiver's Fifth Fee Application. (Dkt. No. 843) Consistent with its objections to the prior Fee Applications, the Blust Trust partially opposed the Fifth Fee Application to the extent that assets of the Blust Trust may be used to pay the fees and expenses of the Receiver and his team. (*Id.*) The Blust Trust also argued that because its various appeals of this Court's Decisions and Orders granting the Receiver's prior Fee Applications remained pending, funds from the Blust Trust should not be dissipated. (*Id.*) On March 2, 2026, the Second Circuit Court of Appeals granted plaintiffs' motion to dismiss (1) the Blust Trust's appeal of this Court's order denying the Blust Trust's request to modify to PI and (2) the Blust Trust's appeal of this Court's order approving the Receiver's First Fee Application. (Dkt. No. 868) The Second Circuit held that because the Blust Trust was essentially seeking to relitigate the PI, it lacked jurisdiction over the appeal. (*Id.*) ("The Trust's objection to the placement of its assets into receivership is a challenge it already raised -- and lost -- in its appeal of the preliminary injunction[.]"). The Intervening Law Firms also partially oppose the Receiver's Fifth Fee Application. (Dkt. No. 844) The Law Firms do not challenge the amount or bases of the fees, but rather submit that such fees should not be paid from Cell Gramercy 2 of Contego Insurance, Inc., a captive insurance company organized under the laws of Utah ("Cell Gramercy"). (*Id.*) The Court has already determined that Cell Gramercy, whose insurance reserves were funded by defendant Strategic Financial Solutions, LLC, is a proper receivership defendant. (Dkt. No. 607) In addition, the Court previously denied a motion by the Law Firms to modify the PI to allow Cell Gramercy to process and pay insurance claims submitted by the Law Firms. (Dkt. No. 299) To that end, the Court noted that the Cell Gramercy insurance policy is an asset under the receivership estate, that the Strategic entities may have competing rights to draw on the policy funds, and that any funds not paid on valid claims may revert back to Strategic. (*Id.*)

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citations omitted). "This presumption of reasonable compensation extends to a receiver's counsel and professionals." *SEC v. Platinum Mgmt. (NY) LLC*, 16-CV-6848, 2018 U.S. Dist. LEXIS 165797 (E.D.N.Y. Sept. 26, 2018). Here, the PI specifically provides that the "Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in possession or control of, or which may be received by the Receivership Defendants."[2] (Dkt. No. 184, Section XV)

The Court considers several factors in determining a reasonable fee, including "(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented." *Platinum Mgmt. (NY) LLC*, 2018 U.S. Dist. LEXIS 165797, *12 (quotations omitted). The Court may also consider "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed." *SEC v. Amerindo Inv. Advisors Inc.*, 05 Civ. 5231, 2015 U.S. Dist. LEXIS 197890 (S.D.N.Y. Sept. 14, 2015) (citations omitted).

The Court previously noted that, during the time period of the First, Second, Third, and Fourth Fee Applications, the Receiver faced extremely complex factual, legal, and

---

[2] The PI further authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities[.]" (Dkt. No. 184, Section IX(I))

administrative issues in performing his duties.[3] (Dkt. Nos. 358, 488, 749, 814) These challenges have remained throughout the present Application Period. The debt-relief operations run by defendant StratFS, LLC and its related entities (collectively referred to as "Strategic") were sweeping in scale and complexity. During the Application Period, the Receiver has continued to oversee Atlas and Timberline, Strategic's business lines encompassing contingency fee debt-relief. While these business lines are not enrolling new customers, they are continuing to resolve accounts of consumers enrolled at the time the TRO was entered. The continued operation of Atlas and Timberline require the Receiver and his team to regularly coordinate and communicate with CIBC and Valley Bank, Strategic's primary secured lenders. Also during the Application Period, the Receiver and his team have continued to receive and process remittances on existing consumer loans previously serviced by Versara Lending, another division of Strategic's debt-relief business.[4]

Further, the Receiver's internal accountants have engaged in significant work to support the receivership estate during the Application Period. This work has included, *inter alia*, reviewing and processing of vendor invoices; working with outside accountants to complete annual tax returns for various receivership defendants; addressing numerous employment related matters, including management of employee benefits; participating in regular meetings with lenders and monitoring of loans; preparing monthly asset reports; addressing issues related to the captive insurance policy; monitoring daily bank

---

[3] The Receiver was assigned extensive duties under the PI, including managing all receivership assets; identifying any additional receivership defendants not already part of the lawsuit; managing defendants' large and multi-layered debt-relief business; making disbursements from the receivership estate as necessary; and maintaining a chain of custody of defendants' significant records and data. (Dkt. No. 358, pgs. 3-4; Dkt. No. 184, Section IX)
[4] The Receiver previously migrated the servicing of these loans from Versara Lending to third-party servicer Vervent. (Dkt. No. 814)

transactions; and maintaining records reflecting receipts and disbursements. The Receiver and his team have also continued to analyze assets and conduct asset-tracing review regarding recently-added receivership defendants.

Since his appointment and continuing through the Application Period, the Receiver and his legal team have engaged in comprehensive and sophisticated legal work both in conjunction with the pending lawsuit and to benefit the receivership estate. The Receiver has engaged in extensive litigation regarding the designation of Fidelis Legal Support Services, LLC, as well as other related entities, as receivership defendants. The Receiver's counsel prepared appellate briefs and participated in oral arguments before the Second Circuit Court of Appeals to defend various challenges to these designations. The Second Circuit ruled in favor of the Receiver in January of 2026.

The Receiver and his team have also continued to investigate and pursue the recovery of assets from third parties. The Receiver has continued his lawsuit against Monevo, a British-based company that apparently owes Strategic hundreds of thousands of dollars in unpaid commissions, pursuant to a contract. (*See McNamara v. Monevo, Inc.*, Case No. 24-CV-977). During the Application Period, the Receiver's counsel has engaged in discovery and settlement discussions. The Receiver also continued to pursue various claims against Ice Legal, P.A, Thomas Ice, and Ariana Ice ("Ice Legal"). (*See McNamara v. Ice Legal, P.A., et al.*, Case No. 25-CV-275) During the Application Period, the Receiver's counsel responded to a number of lengthy motions by Ice Legal, and ultimately negotiated and entered into a successful settlement agreement.

The Receiver has continued to investigate and collect assets held by individuals which belong to the receivership estate. In that regard, the Receiver and his team have

traced assets of individual defendants Cameron Christo, Ryan Sasson, and Ian Behar, as well as non-party Thomas Macey. Due to a lack of cooperation from various individuals and entities, the Receiver and his team have spent a significant amount of time issuing subpoenas, preparing a motion to compel and demand letters, negotiating with outside counsel, and preparing potential litigation.

The Receiver has participated in court proceedings, including hearings and a settlement conference before this Court. In advance of the conference, the Receiver prepared a confidential memorandum to assist the Court in understanding the large and complicated scope of assets held by the receivership estate. The Receiver has also responded to requests by both plaintiffs and defendants for information relating to specific assets, and has responded to requests by plaintiffs for information on consumer data. The Receiver and his team have also handled requests for information from state regulators, private litigants, and consumers.

Next, the Court finds that the Receiver, his counsel, and the other professionals retained by the Receiver have continued to perform high quality work, which has benefited the receivership estate. The Receiver and his counsel engaged in extensive negotiations with counsel for secured lenders CIBC and Valley Bank, and ultimately reached a settlement. This settlement has enabled the business of the receivership estate, including Timberline, Atlas, and Versara, to continue. Since restarting operations in January 2024, through the end of January 2026, Atlas and Timberline have generated a monthly average revenue of $1,078,893.73, with a total of $26,972,343 in revenues. These monthly revenues have allowed the Receiver to continue paying CIBC and Valley Bank interest of approximately $300,000 per month. Moreover, during the Application Period, Versara

6

Lending completed the payoff of the entire principal balance of its Credit Suisse (UBS) warehouse loan, which was $83,333,333 at the time the TRO was issued. Versara has begun to make payments to its secondary lender, Zais Group LLC. The principal amount owed to Zais is $16,666,667, along with interest and penalties. As of January 31, 2026, $2,600,130 had been paid to Zais.

The time records submitted by the Receiver, his counsel, and the other professionals continue to be extremely detailed.[5] The Court finds that the entries justify the fees, costs, and expenses incurred. The nature and extent of the work performed by the Receiver, his counsel, and the other professionals during the Application Period continues to be reasonable and necessary here, in order to continue to operate the large receivership estate and all of its attendant issues; identify and pursue receivership assets; and respond to the frequent litigation demands which continue to arise in this case.

In the Decision and Order granting the First Fee Application, the Court found the hourly rates of the Receiver, his counsel, and the other professionals used to provide

---

[5] Consistent with time records and bills from the prior Fee Applications, time records and bills from the Fifth Fee Application include (1) work performed by the Receiver and his staff; (2) legal work performed by the Receiver's counsel at McNamara Smith LLP and Hodgson Russ LLP; (3) forensic accounting performed by Mercadien; and (4) forensic data consulting performed by Ankura. (Dkt. No. 832-2) The McNamara Smith attorneys are experienced in regulatory receiverships, and have been extensively involved in the myriad of litigation activity that has arisen with regard to the pending lawsuit and the receivership estate. (*Id.* at ¶¶ 11-13) Hodgson Russ has been involved with negotiating with creditors of the receivership defendants and parties to the pending litigation, assisting with litigation, counseling the Receiver on labor issues, and managing communication with counsel for secure creditors. (*Id.* at ¶¶ 14-16) Time records and bills from the Fifth Fee Application include legal work performed by Hilgers Graben. (*Id.* at ¶¶ 17-18) The Receiver indicates that Hilgers Graben was retained to represent the receivership estate in two lawsuits pending in the Chicago area. (*Id.* at ¶ 18) Time records and bills from the Fifth Fee Application also include legal work performed by Rachlis Duff & Peel, LLC. (*Id.* at ¶¶ 19-20) According to the Receiver, Rachlis was retained to replace Hilgers Graben in the two pending lawsuits in Chicago. (*Id.*) Time records and bills from Fifth Fee Application include legal work performed by Sallah Astarita & Cox, LLC. (*Id.* at ¶¶ 21-22) The Receiver indicates that Sallah was retained to represent the receivership in the disposition of receivership assets and discovery issues in Florida. (*Id.* at ¶ 22) Time records and bills from the Fifth Fee Application include legal work performed by Mojdehi Galvin Rego, LLP (*Id.* at ¶¶ 23-24) According to the Receiver, this firm was retained to pursue discovery from individuals in Florida, but little progress was made due to lack of cooperation from those individuals. (*Id.*)

services to the receivership estate to be reasonable. (Dkt. No. 358, pgs. 8-9) Those rates remained the same in the Second, Third, and Fourth Fee Applications, and they remain the same in the instant application. (Dkt. No. 832-1, pg. 3) Moreover, the hourly rates of the Receiver, his counsel, and his accountants were presented to the Court in a Statement of Interest and Qualification prior to Judge Vilardo's appointment of the Receiver pursuant to the TRO. (Dkt. No. 4-1) The receivership company, counsel, and accountants agreed to discount their normal rates in this receivership as reflected in the Statement of Interest and Qualification.[6] (Dkt. No. 832-2, ¶ 6) Further, the Receiver affirms that he examined his bills, and the bills of his counsel and other professionals, and that some charges of the receivership team and counsel were removed prior to presenting the fee application to the Court. (*Id.*)

For all of these reasons, as well as for the reasons stated in the Memorandum in Support and the Declaration of Thomas W. McNamara and its accompanying exhibits (Dkt. No. 832), the Court grants the Receiver's Fifth Fee Application.


**SO ORDERED.**


Dated:    May 19, 2026
          Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge

---

[6] Although not reflected in the Statement of Interest, Hodgson Russ agreed to discount their typical rate in this matter. (Dkt. No. 832-2, ¶ 6, n. 1) Similarly, Ankura, the data forensics firm, also agreed to discount its standard rates. (*Id.*)